# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T

| | |
|---|---|
| **JZ BUCKINGHAM INVESTMENTS LLC,** | * |
| Plaintiff, | * |
| v. | * |
| **THE UNITED STATES,** | * |
| Defendant. | * |

## JOINT PRELIMINARY STATUS REPORT

Pursuant to the Rules of the United States Court of Federal Claims ("RCFC"), Appendix A, paragraph 4 and the Honorable Judge Damich's Special Procedure Order filed on April 18, 2005, the Parties file this Joint Preliminary Status Report.

**(a) Jurisdiction.**

This action is a Tax Partnership action for readjustment of the JBJZ Partners partnership items for the tax year ending December 27, 1999. The Parties agree that jurisdiction, to the extent it exists, is founded upon 28 U.S.C. § 1508, which affords the Court of Federal Claims jurisdiction to hear and render judgment upon a petition under 26 U.S.C. § 6226.

**(b) Case Consolidation.**

The Parties do not anticipate this case to be consolidated with any other case. However, as discussed in section (l), below, the Parties anticipate that they will attempt to coordinate third-party discovery in this case with a number of other pending cases which involve similar transactions.

**(c) Bifurcation of Liability and Damages.**

There is no issue for trial as to damages insofar as this is a tax partnership item readjustment action in which jurisdiction is expressly limited to readjustment of the JBJZ Partners partnership items. *See* 26 U.S.C. § 6226(e).

**(d) Deferral, Transfer, Remand and Related Cases.**

The Office of the United States Attorney for the Southern District of New York has a pending criminal investigation with respect to these transactions. Counsel for Plaintiff has received no indication that the investigation involves the Taxpayers in this case, Jerry Zucker and Jim Boyd ("Taxpayers"). Counsel for Plaintiff believes that the Taxpayers have fully cooperated with the IRS. The Office of the United States Attorney for the Southern District of New York has asked that it be kept apprised of any discovery in this action in order to ensure that this action does not adversely affect its pending criminal investigations. In the event that it does, the United States anticipates that it will seek either a protective order, or other such relief, including a stay if necessary, to protect the important interests of law enforcement. Counsel for the United States has notified petitioners that, in addition to Rule 6(e) of the Federal Rules of Criminal Procedure which protects grand jury information, the IRS criminal files are also privileged and not subject to discovery at this time.

**(e) Removal or Suspension.**

*See* answer to (d) above.

**(f) Joinder of Additional Parties.**

Pursuant to 26 U.S.C. § 6226(c)(1), each person who was a partner of the JBJZ Partners for the tax year ending December 27, 1999, is deemed to be a party to this action. Pursuant to 26 U.S.C. § 6231(a)(2), which defines the term "partners," this includes any partner in the partnership and any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership. At this time, neither Party anticipates that any additional party will be joined.

**(g) Anticipated Motions Pursuant to RCFC 12(b), 12(c) or 56**

The Parties anticipate filing cross-motions under RCFC 56 with respect to the sufficiency of the FPAA. Plaintiff contends that the Notice of Final Partnership Administrative Adjustments is for tax year ending December 27, 2000, not the tax year ending December 27, 1999, and therefore may not make adjustments to the Partnership's 1999 tax year. *See* Complaint ¶ 56.

Defendant admits that the face of the FPAA contains a scrivener's error which references the wrong tax year, but contends that the FPAA, taken in its entirety, was adequate to place Plaintiffs on notice that the adjustments set forth in the FPAA were for the tax year ending December 27, 1999. Defendant contends that this is evidenced, at least in part, by the following uncontested facts: 1) Plaintiff had actual notice by certified mail dated March 31, 2003, that the year under examination was the year ended December 27, 1999; 2) that on January 5, 2003, Jerry Zucker, on behalf of the

partnership, executed a Form 872-1, Consent to Extend the Time to Assess Tax As Well as Tax Attributable to Items of a Partnership, for the 1999 tax year; 3) that the Schedule of Adjustments within the FPAA reflects that the adjustments are for the year ending December 27, 1999; and 4) JBJZ Partners was not in existence for the year ending December 27, 2000.

These cross-motions will be filed by October 1, 2005.

In addition, Plaintiff anticipates filing motions for partial summary judgment pursuant to RCFC 56 on the grounds that Treas. Reg. § 1.752-6 and its predecessor Temp. Treas. Reg. § 1.752-6T (collectively the "752 Regulation") and Treas. Reg. § 1.701-2 (collectively the "Treasury Regulations"), upon which Defendant partially relies, are invalid.

Plaintiff's challenge to the 752 Regulation will be based, in part, on the following:

1) Section 309 of the Community Renewal Tax Relief Act of 2000 (the "2000 Act") provides the Treasury with authority to adopt rules strictly for the purpose of preventing the acceleration or duplication of losses. The 752 Regulation improperly goes beyond the scope of this authority.

2) Section 309 of the 2000 Act authorizes the adoption of rules similar to those in 26 U.S.C. § 358(h), but only with respect to transactions involving partnership shareholders rather than to transactions involving purely partnerships. The 752 Regulation improperly extends the 26 U.S.C. § 358(h) rules to transactions involving only partnerships.

3) The 752 Regulation improperly denies the exceptions set forth in 26 U.S.C. § 358(h) to Notice 2000-44 transactions.

4) The 752 Regulation should not be upheld under the general authority vested in the Treasury to adopt regulations set forth in 26 U.S.C. § 7805(a).

5) The 752 Regulation improperly applies retroactively.

6) The 752 Regulation represents an impermissible use of rulemaking authority drafted solely for the purpose of bolstering the IRS' litigating position with respect to Notice 2000-44 transactions.

Plaintiff's challenge to Treas. Reg. § 1.701-2 (the "701 Regulation") will be based on the following:

1) The 701 Regulation exceeds the Treasury's authority under both Subchapter K and section 7805 of the Internal Revenue Code.

2) The 701 Regulation violates the separation of powers doctrine.

3) The 701 Regulation is unconstitutionally vague.

These motions would be filed after discovery is completed regarding the Treasury Regulations. Plaintiff notes that two other cases pending before the Court of Federal Claims involved requests for similar information regarding the Treasury Regulations. Defendant has responded with privilege claims. *See Marriott International Resorts, LP v. United States*, Misc. 779 (Fed. Cir. January 26, 2005); *Jade Trading LLC v. United States*, No. 03-2164T (Ct. Cl. April 22, 2005). This Court granted the Plaintiff's request for documents in both cases. Currently, Defendant is appealing to the Federal Circuit Court of Appeals on this Court's decision concerning invocation of the privilege in *Marriott*.

Plaintiff's counsel is aware of a case in the United States District Court for the Southern District of Indiana in which the same Treasury Regulations are at issue. In response to Plaintiff's discovery requests, the Defendant prepared and provided privilege logs comprising over 226 pages. Plaintiff expects the Defendant to use the same strategy in this case, and Plaintiff plans to challenge the Defendant's claim of privilege. Based on the foregoing, Plaintiff does not anticipate filing the partial motions for summary judgment regarding the 752 Regulation until, at the earliest, April 1, 2006.

**(h) Factual and Legal Issues**

**1) <u>Plaintiff's Position</u>**

Plaintiff brings this case under 26 U.S.C. § 6226 for redetermination of partnership items. On December 9, 2004, the IRS issued the FPAA against JBJZ Partners for the tax year ending December 27, 2000, disallowing all tax benefits arising from certain transactions (the "Transactions"). Plaintiff believes these adjustments are improper and that the Court should reverse the adjustments in the FPAA and refund Plaintiff's deposit. The primary legal issues in this case are: (1) whether the FPAA is valid because it covers the wrong tax year; and (2) whether the Taxpayers correctly reported the tax consequences of the Transactions on their federal income tax returns.

According to conferences with the Government and its position as articulated in this JPSR, the Government intends to try the entire tax shelter industry in this case. Much of the Government's intended discovery and resulting evidence is irrelevant to the case at hand. The only inquiry into any person's subjective intent is whether the Taxpayers had a non-tax business

purpose for entering into the Transactions. Other than that, this is simple case about whether, as a matter of law, the Transactions properly effectuated the tax result the Taxpayers reported on their income tax returns.

Transaction Details.

On November 23, 1999, the Taxpayers, through their wholly-owned limited liability companies, entered into certain over-the counter, non-publicly traded European-style foreign currency option positions on the Euro and the Yen (collectively the "Options") with Deutsche Bank AG New York Branch (the "Bank"). Each Taxpayer purchased a long option (the "Long Options") and sold a short option (the "Short Options"). (Exhibit 19)

On November 24, 1999, the Taxpayers each contributed their Options to the Partnership as contributions to capital. On December 22, 1999, the Partnership's option positions terminated pursuant to a termination agreement. During the month of December 1999, the Partnership invested in Canadian Dollars (the "Foreign Currency"). On December 22, 1999, 5,000 shares of Cisco Systems, Inc. were contributed to the Partnership (collectively the "Shares"). Four thousand five hundred shares had been held for investment for more than one year (the "Long Term Shares"), while 500 shares had been held for investment for less than six months (the "Short Term Shares"). On December 27, 1999, the Taxpayers contributed their interests in the Partnership to JBJZ Investors, Inc., a Delaware corporation. As a result of those contributions, the Partnership was dissolved and liquidated. Upon liquidation, all of the Foreign Currency and the Shares were distributed to JBJZ Investors, Inc., which sold the Foreign Currency and the Shares on December 28, 1999.

Tax Treatment of the Transactions.

As the various tax professionals involved in the Transactions opined (Exhibits 12-18, 20-25), JBJZ Investors, Inc.'s sale of its investments in the Foreign Currency and the Shares triggered a loss that was reported on JBJZ Investors, Inc.'s IRS Form 1120S and the corresponding Schedules K-1 for the 1999 tax year. (Exhibit 8) The total ordinary loss was $29,446,675, and the total capital loss was $20,197,439. Generally speaking, this loss arose because the Short Options do not constitute liabilities under 26 U.S.C. § 752 and, consequently, did not reduce the Taxpayers' basis in their partnership interests.

The Partnership and JBJZ Investors, Inc. timely filed their federal income tax returns. (Exhibits 4, 8, 9) The Taxpayers also timely filed their respective federal income tax returns for the 1999 tax year, which included their respective shares of income, losses, and deductions from JBJZ Investors, Inc. (Exhibits 1, 2, 4 and 5) The loss generated by JBJZ Investors, Inc.'s sale of the Foreign Currency and the Shares was allocated to the Taxpayers through their limited liability companies on their respective Schedules K-1 for the 1999 tax year as follows: (1) $26,502,007 ordinary loss and $18,177,695 capital loss was allocated to Jerry Zucker and (2) $2,944,668 ordinary loss and $2,019,744 capital loss was allocated to James Boyd.

IRS Adjustments Are Improper and Should Be Reversed.

As a preliminary matter, Plaintiff believes the FPAA is invalid on its face because it covers an incorrect tax year. Therefore, because the FPAA is flawed the IRS's resulting adjustments cannot stand because the faulty FPAA has denied Plaintiff its rights to procedural due process. Furthermore, because the FPAA is invalid and issued for the wrong year, the Court is without jurisdiction to consider any proposed adjustments included therein.

With regard to the substantive merits of this case, the IRS disallowed all the tax benefits associated with the Transactions described above on various theories articulated in the FPAA. Each of these theories is erroneous and cannot form the basis of the adjustments proposed. The Partnership was not a sham and did not lack economic substance or a valid, non-tax business purpose. The Short Options were properly treated on the tax returns for the Partnership and the Taxpayers because the Short Options were not liabilities under 26 U.S.C. § 752, as interpreted by regulatory and common law authorities. Therefore, the Taxpayer's basis in the Partnership should not be reduced by the amount of the Short Option obligation assumed by the Partnership.

Plaintiff also argues that the 752 Regulation is not applicable because it is invalid and illegal. Even if the 752 Regulation is valid, it cannot be applied retroactively to this particular case.

**2) Defendant's Position**

i) Nature of this tax shelter strategy

This case arises out of a complex abusive tax shelter strategy developed in the mid 1990's by the Chicago law firm of Jenkens & Gilchrist, a Professional Corporation ("J&G") and others. The scheme, sometimes with minor variations, was marketed under various names. In late 1999 J&G arranged for the accounting firm of Ernst & Young, LLP (E&Y), to market the shelter product under the name Currency Options Bring Reward Alternatives, or "COBRA." The IRS identified the COBRA product as a potentially abusive tax shelter in IRS Notice 2000-44. (Notice 2000-44, Exhibit 98). E&Y's involvement in the development and marketing of potentially abusive tax shelters, including the COBRA product, is detailed in a report prepared by the Senate Permanent Subcommittee on Investigations, entitled "The Role of Professional Firms in the U.S. Tax Shelter Industry." S.Rept. 109-54, pp. 77-87. (Exhibit 97). The COBRA strategy was essentially based on the purchase by wealthy taxpayers of what were characterized as option contracts, but which in reality were nothing more than private wagering arrangements. The contracts were not sold on any exchange. Nor was there any real possibility of foreign currency ever exchanging hands on the transactions. The strategy called for the purchase of purported offsetting currency positions, but which had no reasonable possibility of a profit in excess of the enormous fees on the transactions. These fees were based on a fixed percentage of the taxable income or capital gains that were eliminated by the strategy. The Deutsche Bank A.G. ("DB") was recruited by J&G to serve as the financial counter party to the private wagering contracts. (Coplan Declaration, Exhibit 100). E&Y allegedly also participated in the development of the strategy. (Coplan Declaration, Exhibit 100). This scheme has resulted in

many hundreds of taxpayers claiming billions of dollars in improper and illegal tax benefits. The facts of this case involve one such illegal COBRA transaction.

ii) Summary of Facts as to The Marketing of the Strategy

According to allegations in a class action suit that was brought against the promoters of this strategy, E&Y presented the tax strategy to petitioners by the use of power point displays and represented that it devised the tax strategy, when in fact it was merely the marketing agent of J&G. See Second Amended Complaint, Exhibit 99). E&Y apparently also indicated that the IRS would never be able to find the transaction on the multiple tax returns used to report the transaction, but that if it did, an "independent" law firm, J&G, would, as insurance against the possible imposition of penalties, prepare an "independent" opinion letter confirming the propriety of the strategy. As added protection, E&Y allegedly stated that a second "independent" law firm, Brown & Wood LLP ("B&W"), would also provide an opinion on the transaction. In actuality, B&W, like J&G, was a co-promoter of the scheme. Their opinion letters were canned and prefabricated and J&G and B&W needed only to fill in several blanks for each of the many clients for which they rendered these opinions.

In the marketing of COBRA, potential purchasers were required by E&Y and J&G to sign a confidentiality agreement and were also not allowed to retain any of the marketing materials used by E&Y to explain the complex series of transactions.

The fees to purchase the COBRA product were pre-set by the promoters as percentage of the amount of the income to be eliminated. It appears that E&Y recommended that participants not eliminate their entire income, so as to avoid flagging the transaction to the IRS. E&Y thereafter "picked" the loss Zucker and Boyd needed to generate and Zucker and Boyd then signed form documents generated by J&G to effectuate the transaction. JBJZ Partners was created as an integral part of this transaction for purposes of generating the losses that had been "picked."

By certified mail dated March 31, 2003, ZBJZ Partners was notified by the IRS that its Form 1065, U.S. Partnership return, for the year ended December 27, 1999 was under examination. On January 5, 2003, Zucker, on behalf of the partnership, executed a Form 872-1, Consent to Extend the Time to Assess Tax As Well as Tax Attributable to Items of a Partnership, for the 1999 tax year. On December 9, 2004, the IRS issued an FPAA against JBJZ Partners for the tax year ending December 27, 1999, in which the Schedule of Adjustments reflects that the adjustments are for the year ending December 27, 1999. As detailed in the FPAA, the Service disallowed, upon multiple grounds, the stepped-up basis purportedly generated in the partnership.

iii) Relevant Factual and Legal Issues

Plaintiff's complaint identifies the following factual and legal issues with respect to the adjustments in the FPAA, which are denied:

a) The ordinary income of the Partnership should be decreased by $625,000 ending December 27, 1999.

b) The Commissioner erred in determining that the tax-exempt interest income of the Partnership should be decreased by $670 for tax year ending December 27, 1999.

c) The capital contributions to the Partnership in the amount of $51,529,750 should be disallowed for tax year ending December 27, 1999.

d) The net short-term capital loss of the Partnership should be decreased by $2,305 for tax year ending December 27, 1999.

e) Neither JBJZ Partners nor its Partners have established the existence of JBJZ Partners as a partnership as a matter of fact.

f) Even if JBJZ Partners existed as a partnership, it was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its Partners.

g) The information of JBJZ Partners, the acquisition of any interest in the partnership by the Partners, the purchase of offsetting options, the transfer of offsetting options to the Partnership in return for a partnership interest, the purchase of assets by the Partnership, and the distribution of those assets to JBJZ Investors, Inc., a corporation controlled by the Partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate at a loss, all within a period of less than two months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes.

h) The Partnership and the Transactions shall accordingly be disregarded in full and (1) any purported losses resulting from these Transactions are not allowable as deductions; (2) increases in basis of assets are not allowed to eliminate gain for federal income tax purposes.

I) JBJZ Partners was a sham, lacked economic substance, and, under Treas. Reg. § 1.701-2, was formed and availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of its Partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.

j) JBJZ Partners is disregarded and that all transactions engaged in by the Partnership are treated as engaged in directly by its Partners. This includes the determination that the assets purportedly acquired by JBJZ Partners, including, but not limited to, the Options, were acquired directly by the Partners.

k) The Options contributed to or assumed by JBJZ Partners, are treated as never having been contributed to or assumed by the Partnership and any gains or losses realized by JBJZ Partners on the Options are treated as having been realized by its Partners.

l) The Partners of JBJZ Partners should be treated as not being partners in JBJZ Partners.

m) Contributions to JBJZ Partners will be adjusted to reflect clearly the Partnership's or Partners' income.

n) The obligations under the Short Options (written call options) transferred to JBJZ Partners constitute liabilities for purposes of Treas. Reg. § 1.752-6T, the assumption of which by JBJ Partners shall reduce the Partners' bases in JBJZ Partners in the amount of $42,750,000 and $4,750,000 respectively, but not below the fair market value of the partnership interest.

o) Neither JBJZ Partners' nor its Partners entered into the Options or the investments in Foreign Currency or the Long and Short Term Shares with a profit motive for purposes of Code Section 165(c)(2).

p) Even if the Options are treated as having been contributed to JBJZ Partners, the amount treated as contributed by the Partners under Code Section 722 is reduced by the contributing Partners from the contemporaneous sales of the Short Options to he same counter-party.

q) The basis of the Options is reduced, both in the hands of the contributing Partners and JBJZ Partners. Consequently, any corresponding claimed increases in the outside basis in JBJZ Partners resulting from the contributions of the Options are disallowed.

r) The adjusted bases of the Long Options (purchased call options), zero coupon notes, and other contributions made by the Partners to JBJZ Partners have not been established under Code Section 723.

s) The Partners of JBJZ Partners have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

t) In the case of a sale, exchange, or liquidation of JBJZ Partners, the Partners' partnership interests, neither the Partnership nor its Partners have established that the bases of the Partners' partnership interests were greater than zero for purposes of determining gain or loss to such Partners from the sale, exchange, or liquidation of such partnership interest.

**(i) Settlement / ADR**

Plaintiff:

Plaintiff is open to settlement offers and/or the following alternative dispute resolution methods described in the Special Order: settlement judge, third party neutral, and mediation. The IRS made a global settlement that required the Plaintiff to concede 100% of the tax benefits of the transaction. Plaintiff rejected this offer.

Defendant:

This transaction was identified by the IRS in Notice 2000-44 as a potentially abusive tax shelter, subject to the imposition of penalties. No penalties were asserted in this instance because the individual participants voluntarily disclosed their participation in the transaction in April 2002 pursuant to IRS Announcement 2002-2. However, the individual participants subsequently elected not to participate in an IRS global settlement initiative. Under the IRS' global settlement initiative, the IRS offered to compromise penalties, but not tax. In light of global settlement initiative, this case is not susceptible to ADR. Defendant objects to any effort to conduct any form of ADR.

**(j) Joint Proposed Scheduling Plan** The Parties agree on the following deadlines:

i. **Date for Joinder of Additional Parties:** The deadline within which to join any additional Parties is October 1, 2005.

ii. **Discovery Plan**

1. **Initial Disclosure under Rule 26**. The Parties made their RCFC 26 initial disclosure on or before August 11, 2005 and will exchange the documents referenced therein on or before August 31, 2005.

2. **Possibility of dispositive motions following limited discovery.** Plaintiff and Defendant anticipate that they will file cross-motions for summary judgment by October 1, 2005, with respect to the jurisdiction of the court. It is recommended that discovery not be stayed pending resolution of this issue.

3. **Phased discovery.** It is not recommended that discovery be phased insofar as this case is similar to a number of other pending cases and the Parties wish to attempt to coordinate third party discovery in this case with those cases.

   There is no issue for trial as to liability or damages insofar as this is a tax partnership item readjustment action in which jurisdiction is expressly limited to readjustment of the JBJZ Partners partnership items for the tax year ending December 27, 1999. *See* 26 U.S.C. § 6226(e).

4. **Deadline for fact discovery.** Fact discovery will be completed by October 2, 2006.

5. **Three alternate dates and times to hold status conference following close of discovery.** The Parties propose the following dates: October 10-12, 2006 at 10 a.m. EST.

6. **Intent to file motion for summary judgment.**

   The Parties represent that they will file cross-motions for summary judgment with respect to Petitioners' argument regarding the sufficiency of the FPAA that was sent to Plaintiff to provide them with adequate notice of the adjustments, Complaint, Count IX, ¶64-66.

   a. These cross-motions will be filed by October 1, 2005.

   b. The Parties rely upon the following legal theories:

i. Plaintiff: Plaintiff contends that the FPAA is invalid insofar as it references the wrong tax year.

ii. Defendant: The FPAA was adequate, as a matter of due process, to place plaintiff on notice of the partnership adjustments at issue for the tax year ending December 27, 1999.

c. Any dispositive motion must be filed on or before October 9, 2006.

Plaintiff further anticipates filing a partial motion for summary judgment pursuant to RCFC 56 on the grounds that the Treasury Regulations upon which Defendant partially relies, are invalid, but will defer doing so until there has been a ruling on their first motion.

7. **Disclosure of Experts**.

a. **Plaintiff's Expert Disclosure**. Plaintiff shall serve an Expert Witness List, accompanied by a written expert report prepared and signed by the each expert witness by May 1, 2006, and shall make its expert witnesses available for deposition.

b. **Defendant's Expert Disclosure**. Defendant shall serve an Expert Witness List, accompanied by a written expert report prepared and signed by each expert witness by June 1, 2006, and shall make its expert witnesses available for deposition.

8. **Expert Discovery.** Expert discovery (on the particular issue(s)) will be completed by October 2, 2006.

9. **Number of depositions and interrogatories allowed per side.**

<u>Plaintiff:</u> Plaintiff believes the presumptive limits for depositions and interrogatories are appropriate in this case, with each party keeping open the opportunity to file for leave for additional discovery.

<u>Defendant:</u> Due to the nature of this case, the United States requests that the number of interrogatories per side be increased to 100 and that the number of depositions per side be increased to 25.

10. **Physical or mental examinations.** It is not anticipated that there will be any need to conduct any mental or physical examinations.

11. **Discovery deadline.** All discovery will be completed by October 2, 2006. Within 15 days after the close of discovery, the Parties shall file a JSR, containing, *inter alia*, a proposed schedule for further proceedings.

12. **Other matters pertinent to the completion of discovery in this case.**

a. Counsel for plaintiff has filed two other cases for clients involving the same tax strategy, in the Southern District of Texas. The cases are expected to be consolidated into one action. These cases appear to involve the same third Parties, i.e., Ernst &Young, Deutsche Bank, Jenkens & Gilchrist, and Brown & Wood. These cases will therefore involve nearly identical third party discovery. Accordingly, the United States plans to file a motion with the Panel for Multi District Litigation, pursuant to 28 U.S.C. § 1407, to consolidate or coordinate the identical third party discovery in the different district courts. Plaintiff is agreeable to coordinating the discovery in these various actions to avoid duplication and reduce costs, however, Plaintiff would like this Court to retain jurisdiction over discovery in this case to resolve any discovery disputes. While 28 U.S.C. § 1407 does not cover cases before the Court of Federal Claims, the United States will seek to allow, by stipulation or court order, the third party discovery taken in the Multi District Litigation to apply to the Court of Federal Claims cases. Coordinating identical third party discovery will be beneficial to all Parties, as well as to this Court and the other courts in these different cases, since it will obviate the need for duplicative discovery.

b. The Office of the United States Attorney for the Southern District of New York has a pending criminal investigation with respect to these transactions. Plaintiff's counsel does not believe the investigation involves the Taxpayers in this case. Plaintiff's counsel believes Taxpayers have fully cooperated with the IRS. The Office of the United States Attorney for the Southern District of New York has asked that it be kept apprised of any discovery in this action in order to ensure that this action does not adversely affect its pending criminal investigations. In the event that it does, the United States anticipates that it will seek either a protective order, or other such relief, including a stay if necessary, to protect the important interests of law enforcement. Counsel for the United States has notified Plaintiff that, in addition to Rule 6(e) of the Federal Rules of Criminal Procedure which protects grand jury information, the IRS criminal files are also privileged and not subject to discovery at this time.

iii. **Ready for Trial**: The earliest date by which this case should reasonably be expected to be ready for trial is November 2006.

iv. **Estimated Length of Trial**. Plaintiff estimates it will take 5 days (one week) for it to put on its case, and Defendant estimates it will take 15 days (three weeks) for it to put on its case.

v. **The requested place of any trial:** Washington, D.C.

vi. **Any other matters for scheduling:** None.

**(k) Electronic Case Management**

This case has been designated for ECF filing.

**(l) Joint representation:** On August 5, 2005, counsel held a meeting, as required in Appendix A ¶3.

1. Plaintiff estimates the anticipated litigation costs (1) through discovery, (2) by the end of trial, and (3) through appeal, if any, are in the amounts of $150,000 to $300,000, $500,000 to $750,000, and $300,000, respectively. Plaintiffs' counsel certifies that estimates or their time and expenses have been provided to plaintiffs.

2. Defendants estimate the anticipated litigation costs (1) through discovery, (2) by the end of trial, and (3) through appeal, if any, are in the amounts of $2 million, $2.5-3.0 million, and $2.55-3.55 million, respectively. Plaintiffs' counsel certifies that estimates or their time and expenses have been provided to plaintiffs.

**(m) Status Conference**

The Court has scheduled the telephonic status conference for September 1, 2005, at 11:00 a.m.

**(n) Appendix**

The Parties are submitting the Appendix to the JPSR via CD-Rom. By making this submission, the Parties are not stipulating to the authenticity or admissibility of any document submitted in the Appendix.

| Exhibit No. | Trial Exhibit List |
|---|---|
| 1 | Jerry and Anita Zucker's 1999 Form 1040 * [1] |
| 2 | Jerry and Anita Zucker's 1999 Application for Tentative Refund * |

[1] The "*" symbol indicates that the Parties intend to file these documents under seal because they are tax returns or reflect personal financial information.

| | |
|---|---|
| 3 | Jerry and Anita Zucker's 2000 Form 1040 * |
| 4 | James and Hazel Boyd's 1999 Form 1040 * |
| 5 | James and Hazel Boyd's 1999 Application for Tentative Refund * |
| 6 | James and Hazel Boyd's 2000 Form 1040 * |
| 7 | James and Hazel Boyd's 2000 1040X * |
| 8 | JBJZ Investors Form 1120S for year end 12/31/99 * |
| 9 | JBJZ Partners' Form 1065 for year end 12/27/99 * |
| 10 | JBJZ Investors, Inc.'s 2000 Annual Report for Corporations * |
| 11 | Form W-9 for JGB Bohicket Investments, LLC * |
| 12 | Ernst & Young Engagement Letter |
| 13 | Opinion Letter from Jenkens & Gilchrist to Deutsche Bank |
| 14 | Jenkens & Gilchrist Engagement Letter |
| 15 | Jenkens & Gilchrist Opinion Letter to Jerry Zucker |
| 16 | Jenkens & Gilchrist Opinion Letter to James Boyd |
| 17 | Brown & Wood Opinion Letter to Jerry Zucker |
| 18 | Brown & Wood Opinion Letter to James Boyd |
| 19 | Closing Binder |
| 20 | Jenkens & Gilchrist invoice * |
| 21 | Jenkens & Gilchrist invoice * |
| 22 | Transfer Authorization Letter * |
| 23 | Transfer Authorization Letter * |
| 24 | Wire Transfer * |
| 25 | Wire Transfer * |
| 26 | Letter requesting transfer of funds * |
| 27 | Authorization to transfer funds * |
| 28 | Wire Transfer * |
| 29 | Wire Transfer * |
| 30 | Letter confirming transfer of funds * |
| 31 | Letter confirming transfer of funds * |
| 32 | Wire Transfer * |
| 33 | Fax Cover Sheet - Correspondence relating to purchase of Cisco stock * |
| 34 | Letter dated 4/25/00 * |
| 35 | 1999 Activity Spreadsheet * |
| 36 | 1999 Activity Spreadsheet * |
| 37 | Account Agreement * |

| | |
|---|---|
| 38 | Non-Corporate Resolution * |
| 39 | Guaranty Agreement * |
| 40 | Non-Corporate Resolution * |
| 41 | Account Agreement * |
| 42 | Guaranty Agreement * |
| 43 | Partnership Account Authorization and Indemnity * |
| 44 | Account Agreement * |
| 45 | Account Agreement * |
| 46 | Officer's Certificate * |
| 47 | Buy confirmation * |
| 48 | Buy confirmation * |
| 49 | Buy confirmation * |
| 50 | Cancellation of previous buy * |
| 51 | Buy confirmation * |
| 52 | Sell confirmation * |
| 53 | Sell confirmation * |
| 54 | Sell confirmation * |
| 55 | Sell confirmation * |
| 56 | Buy confirmation * |
| 57 | Sell confirmation * |
| 58 | Sell confirmation * |
| 59 | Brokerage Statement dated 11/30/99 * |
| 60 | Brokerage Statement dated 12/31/99 * |
| 61 | Brokerage Statement dated 3/31/00 * |
| 62 | Brokerage Statement dated 4/30/00 * |
| 63 | Brokerage Statement dated 5/31/00 * |
| 64 | Brokerage Statement dated 11/30/99 * |
| 65 | Brokerage Statement dated 12/31/99 * |
| 66 | Brokerage Statement dated 3/31/00 * |
| 67 | Brokerage Statement dated 6/30/00 * |
| 68 | Brokerage Statement dated 9/30/00 * |
| 69 | Brokerage Statement dated 13/31/00 * |
| 70 | Brokerage Statement dated 3/31/00 * |
| 71 | Brokerage Statement dated 6/30/01 * |
| 72 | Brokerage Statement dated 9/30/01 * |

| | |
|---|---|
| 73 | Brokerage Statement dated 12/31/01 * |
| 74 | Brokerage Statement dated 1/31/02 * |
| 75 | Brokerage Statement dated 3/31/02 * |
| 76 | Brokerage Statement dated 6/30/02 * |
| 77 | Brokerage Statement dated 9/30/02 * |
| 78 | Brokerage Statement dated 12/31/02 * |
| 79 | Brokerage Statement dated 2/28/02 * |
| 80 | Brokerage Statement dated 2/28/03 * |
| 81 | Brokerage Statement dated 3/31/03 * |
| 82 | Brokerage Statement dated 6/30/03 * |
| 83 | Brokerage Statement dated 9/30/03 * |
| 84 | Brokerage Statement dated 12/31/99 * |
| 85 | Brokerage Statement dated 13/31/99 * |
| 86 | Brokerage Statement dated 1/31/00 * |
| 87 | Brokerage Statement dated 12/31/99 * |
| 88 | Brokerage Statement dated 12/31/99 * |
| 89 | Brokerage Statement dated 1/31/00 * |
| 90 | Brokerage Statement dated 2/29/00 * |
| 91 | Brokerage Statement dated 3/31/00 * |
| 92 | Brokerage Statement dated 4/30/00 * |
| 93 | Brokerage Statement dated 5/31/00 * |
| 94 | Temp. Treas. Reg. § 1.752-6T |
| 95 | Treas. Reg. § 1.752-6 |
| 96 | Treas. Reg. § 1.701-2 |
| 97 | S.Rept. 109-54 dated April 13, 2005, "The Role of Professional Firms in the U.S. Tax Shelter Industry" |
| 98 | IRS Notice 2000-44 |
| 99 | Second Amended Complaint in Camferdam, et al. v. Ernst & Young, et al., Case No. 02 Civ. 10100 (USDC SDNY) |
| 100 | Coplan Declaration |

Respectfully submitted,

**FOR PLAINTIFF**

/s/ Joel N. Crouch
Joel N. Crouch

Meadows, Owens, Collier, Reed,
Cousins & Blau, L.L.P.
901 Main Street
Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowsowens.com

**FOR DEFENDANT**

/s/ John Arthur Lindquist
John Arthur Lindquist

Trial Attorney
U.S. Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Stn.
Washington, D.C. 20044
(202) 307-6561 Telephone
(202) 514-5238 Facsimile
John.A.Lindquist@usdoj.gov