IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

The United States, by its undersigned counsel, submits this Memorandum of Law in opposition to Plaintiff's motion.

**INTRODUCTION**

Plaintiff, JZ Buckingham Investments LLC, contends that the United States has in bad faith denied or pled lack of knowledge to certain allegations in its complaint. Plaintiff argues that "[w]hile the Parties may certainly disagree about the *characterization* of the transactions, there can be little dispute about the details about what actually happened." Motion at 11. (Emphasis added.)

Plaintiff's motion is utterly lacking in merit. Plaintiff seeks to have the United States concede the very *characterization* of the transactions that plaintiff admits are in dispute. Specifically, plaintiff wants the United States to concede that the transactions (which the Service determined to be an abusive tax shelter and to have created artificial tax losses) took place

exactly as described in the documents drafted by the promoters and marketers of this abusive tax shelter. Yet it is the position of the United States that the form of the transactions do not reflect their real economic substance, and possibly not even their actual factual substance. That is, the United States is not confident that the transactions as described in the documents even actually occurred. Moreover, the United States is also asserting that the various entities formed to execute these transactions should not be respected for federal income tax purposes.

Obviously, the United States is not required to concede in its answer that the form of the transactions as described in the transactional documents reflect their economic or factual substance. The United States' answers denying or pleading lack of knowledge to the core transactional allegations were clearly proper. Plaintiff's motion betrays a fundamental lack of understanding as to some of the basic issues presented in this litigation. Accordingly, we respectfully submit that in the circumstances of this litigation, this motion is patently frivolous and should be summarily denied.

## QUESTION PRESENTED

Whether the United States is required to admit allegations in the petition describing the form of the transactions used to implement a tax strategy generating massive artificial tax losses and also required to admit to the existence of entities used to execute these transactions where the United States is taking the position that these transactions are without economic, and even possibly without factual, substance, and also where it is asserting that the entities used to execute these transactions should not be respected for federal income tax purposes.

## STATEMENT

### A. Nature of this Litigation

Plaintiff filed its complaint on February 18, 2005. In its Complaint, Plaintiff asks that the Court set aside the adjustments set forth in a Notice of Final Partnership Administrative Adjustment (the "FPAA") which the IRS issued on December 9, 2004. The adjustments in the FPAA relate to an abusive tax shelter known as COBRA which Jerry Zucker and James Boyd purchased in late 1999 through the accounting firm of Ernst & Young, LLP ("E&Y"). The COBRA transaction appears to have been a sham transaction which was implemented for the sole purpose of eliminating millions of dollars in tax due. The United States filed its Answer to the Complaint on June 20, 2005. Plaintiff and the United States jointly submitted a Joint Preliminary Status Report ("JPSR") on August 11, 2005.

As detailed in the JPSR, the subject transaction is an abusive tax shelter known as "COBRA." It was identified by the IRS as an abusive tax shelter in IRS Notices 99-59 and 2000-44 . See IRS Notice 2000-44, attached to JPSR as Appendix Ex. 98. The COBRA product was a pre-arranged multi-step transaction requiring the formation of a number of different entities, including LLCs for each of the individual participants, a purported partnership, and also a so-called Subchapter "S" corporation. Pursuant to what were characterized as digital option transactions, the participants thereupon purportedly entered into a series of offsetting currency transactions, which were designed to generate artificial tax losses having no relationship whatsoever to the economic risks or costs on the alleged transactions.

On December 20, 2002 the COBRA participants filed a class action against the promoters and marketers of the COBRA transaction describing the sham nature of the product.

*See,* Plaintiffs' Second Amended Complaint and Original Class Action Complaint, (hereinafter "Class Complaint") *Camferdam, et al. v. Ernst & Young, et al.*, Case No. 02 Civ. 10100 (USDC SDNY), attached to JPSR as Appendix Ex. 99. This class action, later consolidated with a similar action by other disgruntled tax strategy participants, sought damages, including the penalties and interest at issue here, for various violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"). Class Complaint ¶ 59. The Class Complaint further alleges that the promoters are also liable for damages arising out of fraud, civil conspiracy, negligent misrepresentation, breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, unjust enrichment, professional malpractice, and unethical, excessive and illegal fees.

In the FPAA dated December 9, 2004, the IRS made a number of adjustments to the partnership's return, including disallowing the artificially inflated bases of the individual participants' partnership interests which had been dramatically increased due to purported currency transactions. The IRS based this disallowance on a variety of differing grounds, including the fact that transactions were shams for federal income tax purposes and that the entities implementing the transactions should be disregarded for tax purposes. *See*, FPAA, attached to Complaint as Ex. A; Answer (hereinafter "Ans") ¶ 41.

The sham nature of the COBRA transaction has since been further detailed in a recent state court action brought by a number of COBRA participants against non-settling COBRA class defendants. *See*, First Amended Petition (hereinafter "Petition") *Henry Camferdam, et al. v. Deutsche Bank AG., et al.*, 017 212033 05 (District Court of Texas, Tarrant County), attached hereto as Govt. Ex. 1. The Petition details *inter alia*, not only the role of Deutsche Bank in co-

developing and promoting the COBRA transaction, but how the COBRA transactions were rigged and manipulated, including alteration of the trade confirmations. Petition, ¶103-125.

## ARGUMENT

## I

## THE GOVERNMENT IS NOT REQUIRED TO ADMIT ALLEGATIONS WHERE THE ALLEGED TRANSACTIONS ARE SHAMS

### A. Plaintiff Seeks to Bind the United States to the Form of Their Transactions.

Plaintiff complains that the Government failed to admit its allegations regarding the basic details of the transaction, at ¶s 17-35, arguing that the Government had access to all of the transactional documents and tax returns during audit, and accordingly could easily have confirmed these elementary facts. Motion at 11.

It is black letter law that '" a party is bound by what it states in its pleadings."' *Help at Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001)(quoting *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)). Morever, "'[j]udicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them.'" *Id.* (Quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)). Thus, Plaintiff seeks to bind the United States to the form of the transactions as described in the transactional documents. Critically, however, the United States contends that the substance of the transactions are not consistent with their form.

### B. The Sham Transaction Doctrine

The sham transaction doctrine originated with the Supreme Court decision of *Gregory v. Helvering*, 293 U.S. 465 (1935). In *Gregory*, the Court affirmed the Commissioner in denying

deductions claimed by taxpayers for losses and expenses incurred in a corporate reorganization. Although the taxpayers had followed each step required by the Internal Revenue Code for the reorganization, the Court nonetheless held these losses nondeductible, reasoning that the transaction was a "mere device" for the "consummation of a preconceived plan" and not a reorganization within the intent of the Code as it then existed. *Id.* at 469. Because the transaction lacked economic substance, as opposed to formal reality, it was not "the thing which the statute intended." *Id.* The principle, as applied by this Court and the Federal Circuit, is illustrated by *Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463, 1469 (Fed. Cir. 1997)("It has been recognized that for tax purposes the substance rather than the form of a transaction is controlling." )

The sham transaction doctrine requires a thorough examination by courts of the challenged transaction as a whole, as well as each step thereof, to determine if the substance of the transaction is consistent with its form. *See ACM Partnership v. Commissioner,* 157 F.3d 231, 246 (3d Cir.1998), *cert. denied,* 526 U.S. 1017 (1999). *See also, Muhich v. Commissioner,* 238 F.3d 860, 864 (7th Cir. 2001) ("[i]t is well-established that the Commissioner is not required to recognize, for tax purposes, those transactions which lack economic substance.") If a transaction's form complies with the Code's requirements for deductibility, but the transaction lacks the factual or economic substance that the form represents, then expenses or losses incurred in connection with the transaction are not deductible. *See Knetsch v. United States,* 364 U.S. 361, 365-66 (1960). *See also, Grojean v. Commissioner*, 248 F.3d 572, 576 (7th Cir. 2001) and *Continental Illinois Corp. v. Commissioner*, 998 F.2d 513, 519 (7th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994). "To permit the true nature of a transaction to be disguised by mere

formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334 (1945).

Courts have recognized two basic types of sham transactions: shams in fact and shams in substance. *See ACM,* 157 F.3d at 247 n. 30 (citing *Kirchman v. Commissioner,* 862 F.2d 1486, 1492 (11th Cir.1989)) "[S]hams in fact" are transactions that never occurred in reality, that is, transactions that have been created on paper but which never took place. *See id.* "[S]hams in substance," or "economic shams" are transactions that actually occurred but are devoid of economic substance. *See id.*

Accordingly, where courts determine that a transaction is a sham, they are exceedingly careful not to characterize the transaction as it is described in the transactional documents. For example, in *CMA Consolidated, Inc. v. Commissioner* , T.C. Memo. 2005-16, 2005 WL 209951 (2005), the Tax Court recently held that a so-called lease-strip tax shelter transaction was an economic sham. As a result, the court took pains to emphasize that not even the basic terms used by it to describe the lease strip transactions were intended to have significance for tax purposes (*Id* at n.3):

> The parties disagree over whether two lease strip deals involving petitioner that are discussed more fully *infra* had economic substance and should be respected for tax purposes. The terms “sale”, “sold”, “lease”, “purchase”, “income”, “interest”, “invest”, “note”, “obligation”, “lien”, and other similar terms are used herein for convenience and are not intended as ultimate findings or conclusions concerning the validity for tax purposes of the deals and/or underlying transactions in dispute.

 

### C. The United States Is Arguing That the Transactions at Issue Are Shams.

#### 1. The COBRA Tax Strategy Was an Economic Sham

In determining whether the Commissioner is required to respect the form chosen by the taxpayer, courts will "analyze two aspects of [the]... transaction to determine if it has economic substance: its objective economic substance and the subjective motivation behind it." *See e.g. Internal Revenue Service v. CM Holdings, Inc.* , 301 F.3d 96, 102 (3d Cir. 2002). In upholding the Commissioner's determination that the transaction there was an economic sham, the Third Circuit stated (*Id* at 108):

> [the]. . .COLI plan lacked economic substance. It fails the objective prong because, outside of tax considerations, the transaction had no net economic effect. . . . It fails the subjective prong because at the time the plan was under consideration and agreed on, all parties focused solely on the tax benefits the plan provided. Ultimately the most damning piece of evidence against [the taxpayer] is that the marketing information presented to its executives showed that, absent tax deductions, the plan would lose money. [The taxpayer] agreed to the plan knowing the tax deductions were the only thing that made it worthwhile.

Similarly, the Government takes the position that the form of the transactions in this case should also be disregarded to reflect their economic substance. In fact, in their class action suit, the COBRA participants have themselves alleged that there was no chance of their making a pre-tax profit on these transactions. *See,* Class Complaint ¶ 112. Indeed, the COBRA participants have further alleged that they had no business purpose for entering into the transactions other than to achieve tax benefits, and claim that they asked their accountant to figure out a separate business purpose for appearance's sake. Class Complaint ¶ 88. They allege that their tax advisors marketed the subject transactions merely as a tax saving scheme. Class Complaint ¶¶

84-88. Thus, the COBRA participants have themselves alleged that their own transactions were economic shams or shams in substance.

Yet Plaintiff seeks to have the Government bound by the form of the very transactions that the individual participants assert were without economic substance. Apart from being duplicitous, this argument ignores the fundamental tax law principle that "[r]egardless of its form, a transaction that is 'devoid of economic substance' must be disregarded for tax purposes" and cannot form the basis of a tax deduction. *ACM Partnership*, 157 F.3d at 247; (internal citations omitted). Or, as the Seventh Circuit aptly put it, "[t]he freedom to arrange one's financial affairs does not include the right to engage in financial fantasies with the expectation that the IRS and the courts will play along." *Saviano v. Commissioner*, 765 F.2d 643, 654 (7th Cir. 1985).

**2. COBRA May Also Have Been a Factual Sham**.

Moreover, it appears that the COBRA transactions may also have been factual shams. "Factual shams are 'transactions' that never actually occurred." *American Electric Power v. United States*, 326 F.3d 326 F.3d.737, 745 (6th Cir. 2003) *cert. denied*, 540 U.S. 1104 (2004); (internal quotation marks and citation omitted). The factual sham inquiry, however, goes beyond the paper documenting the transactions and looks to whether the transactions have reality apart from their documentation. In factual shams, "taxpayers claim deductions for transactions *that have been created on paper* but which never took place." *Kirchman*, 862 F.2d at 1492 (emphasis added.) *See also*, *Horn v. Comm'r*, 968 F.2d 1229, 1236 n.8 (10th Cir. 1992) (Factual shams are "transactions which did not occur, did not occur as reported . . . .")

In their class action suit, the COBRA participants allege fraud and civil conspiracy on the part of the promoters. Specifically, they assert that the transactions at issue here amounted to private wagering contracts and "made no investment sense. . . ." Class Complaint ¶s 58, 292. According to their class action complaint ¶ 58 n. 4, "neither party had any rights to take possession of the 'underlying currency.' As a result, the [foreign exchange] Contracts amounted, in actuality, to a contractual wager (*i.e.* a 'bet') based on movements in foreign currency prices, without any real possibility of foreign currency ever changing hands between the parties." In addition, the Petition recently filed by a number of COBRA participants details not only the role of Deutsche Bank in co-developing and promoting the COBRA transaction, but how the COBRA transactions were rigged and manipulated by Deutsche Bank, including alteration of the trade confirmations. Petition, ¶103-125. Thus, there appears to be an issue as to whether these transactions were fictitious or had any reality apart from their documentation.

**3. The COBRA Entities Should Not Be Recognized for Tax Purposes.**

Relatedly, Plaintiff complains that the Government failed to admit the existence of the entities created to implement the COBRA transaction. Motion at 12. Just as the Government may disregard the form of a transaction, it may also determine that an entity should not be recognized for federal income tax purposes. *See e.g., Andantech L.L.C. v. Commissioner*, 331 F.3d 972, 978 (D.C. Cir. 2003), where the D.C. Circuit stated that the "basic inquiry in which we engage when determining whether a partnership is valid for tax purposes is 'whether, all facts considered, the parties intended to join together as partners to conduct business activity for a purpose other than tax avoidance.'" (internal citation omitted.) *See also Commissioner v. Culbertson*, 337 U.S. 733, 742-43 (1949).

In addition, contrary to plaintiff's assertion, the United States has answered the complaint in good faith. For instance, even though paragraph 1 of plaintiff's complaint, set forth below, contained a material typographical error, the United States answered the substance of the allegations:

> 1. Plaintiff JZ Buckingham Investments, LLC ("JZ") is a limited liability company formed under Delaware law. Its employer identification number is 57-1088088, and its principal place of business is 16 Buckingham Dr., Charleston, SC 29047.
>
> Answer: Defendant admits that JZ Buckingham Investments LLC purports to be a single member limited liability company that was formed by Jerry Zucker under Delaware law, that it was, upon application to the Internal Revenue Service, assigned the employer identification number 57-1088088, and that its purported principal place of business was 16 Buckingham Dr., Charleston, SC 29407. The remaining allegations contained in paragraph 1 are denied.

There is in fact no comma (",") in plaintiff's name. This is confirmed by the formation documents. See Certificate of Formation for JZ Buckingham Investments LLC, Govt. Ex. 2. It further appears that all the LLCs created to implement the COBRA transactions were created using a naming convention which intentionally omitted the comma. See Certificate of Formation for JGB Bohicket Investments LLC, Govt. Ex. 3. It appears that the names of the LLCs created to implement the COBRA transactions were each composed of the individual participants' initials, followed by the name of the participants' home street, followed by the phrase "Investments LLC," with no comma. This naming convention is indicative of the fact that the COBRA transactions were all cookie-cutter transactions. Plaintiff's naming error is repeated by reference in paragraphs 2-3 and 17-20, 23-24, 27, 32. On this basis alone, the allegations in these paragraphs were all properly denied.[1]

---

[1] Discovery will have to be taken to determine if the omission of the commas in these entities' names was deliberate and was done for a purpose, such as to make it more difficult for

In otherwise answering, the United States expressly asserted that the entities created to implement the transactions were shams. See, e.g. Ans. ¶¶32 - 35. See also Ans. ¶50. The United States need not concede the reality of these entities. Incredibly, the COBRA participants used this same qualifying language in their Class Complaint, stating that "BAMC, Inc is purportedly an 'S' corporation." See Class Complaint ¶ 12. If the COBRA participants are not sure just what their own entities are, then how can the Government possibly be expected to know either, at this stage of the litigation?

## II.

## PLAINTIFF'S REMAINING CLAIMS OF IMPROPER ANSWERS ARE EQUALLY MERITLESS

### A. The Issuance of an FPAA Does Not Foreclose Discovery by the Government

Plaintiff contends that, if the Government is in fact without sufficient knowledge to admit or deny the transactional allegations, the Service should not have issued the FPAA. Motion at 11. This argument simply misperceives the legal significance of a FPAA or a notice of tax deficiency. If the United States were required to admit allegations regarding alleged transactions merely because the Service issued a FPAA or a deficiency notice, then there would be little reason for discovery and parties would then, presumably, move directly to summary judgment or, quite possibly, judgment on the pleadings.

The courts have long held, however, that an action contesting a tax deficiency requires a trial *de novo*. *See, Greenberg's Express v. Commissioner*, 62 T.C. 324, 328 (1974) (and cases cited therein). *See also*, *United States v. Nordberg*, 1996 W.L. 170119, *2 (D. Mass 1996). A

---

the IRS to identify these transactions.

court's "determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level." *Greensberg's Express*, 62 T.C. 328. Courts generally will not look behind a notice of a deficiency to examine the evidence used or the propriety of the Service's motives or the administrative policy or procedure involved in making its determination. *Id*. "An FPAA is somewhat analogous to a tax deficiency notice for an individual." *See, PAA Management, Ltd., v. United States*, 962 F.2d 212, 213 (2d Cir. 1992).

Contrary to Plaintiff's contention, the issuance of an FPAA in no way means that the Service has finished developing the facts of a case. Nor does it foreclose the Service from further investigation, much less the United States from conducting discovery with respect to the underlying transaction to ensure itself that the Service's determinations are indeed correct. In *PAA Management*, the Second Circuit made clear that an FPAA does not determine partnership items with finality, *id*. at 217, and that further investigation is permissible:

> In short, an FPAA appears to be "final" under the Code only in the sense that the IRS generally may not send more than one FPAA. The FPAA is not "final" in the sense that its issuance necessarily obviates the need for further information, brings the curtain down on the IRS's administrative or investigative role, or muzzles the IRS from requesting that the court invoke its authority finally to determine partnership items.

*Id.* at 219. Plaintiff's argument that the United States should be bound by whatever information and belief that the Service had on December 9, 2004, when it issued the FPAA, is without foundation. This argument is particularly flawed here where the full extent of the collusion between the COBRA participants and the promoters is still in the process of being uncovered. *See*, Petition, Govt. Ex. 1.

## III

## PLAINTIFF'S RELIANCE UPON WRIGHT & MILLER AND *AMERICAN PHOTOCOPY EQUIPMENT* IS MISPLACED

Plaintiff relies heavily on Wright & Miller, who, in fact, make clear that "there is a general antipathy toward motion practice that is designed simply to polish the pleadings. . . .", and further state that "it usually is not productive to try to police the pleadings by motion. . . ." *See*, 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1281 at 709; § 1261 at 531 (3d ed. 2004). Motion at 7.

The only case cited by Plaintiff in support of the Motion, *American Photocopy Equipment Co. v. Rovico, Inc.*, 359 F.2d 745 (7th Cir. 1966), is clearly inapposite. In that case, the District Court granted the plaintiff's request for a preliminary injunction, which the Seventh Circuit reversed on the grounds that the plaintiff's assertion of lack of knowledge was not in fact a denial because the plaintiff, as patent owner and manufacturer, must have been in possession of the answer to the allegation. The Court of Appeals also made clear that there was already a full record on the issues presented there due to previous litigation and an unchallenged affidavit filed in the current litigation. Therefore, the Court of Appeals treated the plaintiff's plea of lack of knowledge as an admission and ordered the matter to proceed to trial. *Id*. at 748.

That case has absolutely no relevance to the case at bar. Unlike there, the United States is not the party who purportedly entered into these transactions. That would be James Boyd and Jerry Zucker. Nor is there any record here from prior litigation establishing Plaintiff's allegations. Finally, and most fundamentally, unlike there, the United States is contending here that the allegations in the pleadings were the product of sham transactions, whose form do not

reflect their actual substance. *American Photocopy Equipment Co.* has nothing to do with this case.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Deem Certain Allegations Admitted or, in the Alternative, for a more Specific Answer should be denied, and the United States should be awarded its costs for being required to defend a motion that contains wholly improper allegations regarding the good faith of counsel.

Respectfully submitted,

Respectfully submitted on September 19, 2005,

/S/ John A. Lindquist
JOHN A. LINDQUIST
Attorney of Record
U.S. Department of Justice - Tax Division
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2005, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Owens, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

/S/ John A. Lindquist
John A. Lindquist
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561