**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,** | § § § § § | |
| **Plaintiff,** | § | **CASE NO. 05-231 T** **Chief Judge Edward J. Damich** |
| **v.** | § § | |
| **United States of America,** | § § | |
| **Defendant.** | § | |

**<u>PLAINTIFF'S REPLY TO UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION TO DEEM CERTAIN ALLEGATIONS ADMITTED</u>**

Plaintiff JZ Buckingham Investments LLC ("Plaintiff") files this reply to the United States' Opposition to Plaintiff's Motion to Deem Certain Allegations Admitted or, in the Alternative, for a More Specific Answer ("Government's Opposition") and respectfully requests the Court to deem admitted by Defendant United States of America ("the Government") Paragraphs 1-4, 6, and 17-35 of Plaintiff's Complaint for Readjustment of Partnership Items Under 26 U.S.C. § 6226 (the "Complaint"), or, in the alternative, order the Government to provide a more specific answer to those allegations as required by Rule 8(b) of the Rules of the Court of Federal Claims ("RCFC").

## I. INTRODUCTION

The Government's Opposition demonstrates that it has missed the proverbial forest for the trees and only heightens Plaintiff's concerns about the Parties' extraordinarily divergent views on the proper scope of discovery. The Government is plainly interested in pursuing its own agenda to try the tax professionals and their firms rather than addressing the precise legal and factual issues before the Court in this case. Despite its bluster, the Government could not (and, in fact, did not) deny that: (1) the Internal Revenue Service ("IRS") conducted a lengthy audit; (2) the IRS received voluminous documents from Plaintiff, related taxpayers, and their advisors; (3) Plaintiff and related taxpayers fully disclosed their involvement in these transactions to the IRS under IRS Notice 2002-2 and complied with its terms by responding to all requests for information;[1] (4) the taxpayers extended the statute of limitations for assessment to permit the IRS to conclude its examination;[2] or (5) it has enjoyed an extension of time to answer the Complaint in this case. In short, it *never once* credibly denied having enough knowledge or information to form a belief about the truth of Plaintiff's allegations.

---

[1] *See* Letters from Jerry and Anita Zucker to the IRS, dated April 20, 2002 and Letter from James and Hazel Boyd to the IRS, dated April 17, 2002, electing to disclose their involvement in the Transactions under IRS Announcement 2002-2, attached as Exhibits A and B, respectively.

[2] *See* IRS Form 872-I executed by Jerry and Anita Zucker on January 5, 2003, attached as Exhibit C; *see also* IRS Forms 872-I executed by James and Hazel Boyd on January 9, 2003 and September 18, 2004, attached as Exhibit D.

The Government's Opposition attempts to complicate the issues before the Court and mask the undeniable fact that it has sufficient information to answer properly, yet chose not to do so. The Government's Opposition repeatedly cites to other unrelated taxpayers' allegations but does not clearly point out that the statements of the other taxpayers cannot be attributed to Plaintiff under any factual circumstance or legal theory. The Government simply groups Plaintiff with other taxpayers without any concern for the individualized facts of this case that give economic substance to Plaintiff's Transactions. The Government also failed to note that the allegations in the malpractice action are simply allegations—not proven facts—that the professionals have denied. Based on the Government's Opposition, it does not appear that the Government has taken the first step to verify the allegations on which it is relying, something it could have easily done during the two years of the IRS examination. None of the documents the Government produced in its FED. R. CIV. P. 26 disclosures or in response to Plaintiff's Freedom of Information Act ("FOIA") request even raise the issue that the Transactions did not actually occur. In short, the Government's allegations that Plaintiff perpetrated a "sham in fact" are simply a red herring designed to distract from the issue at hand, which is whether it answered the Complaint accurately and in good faith.

Moreover, the Government's Opposition demonstrates its willingness to make arguments that reach the height of bad faith. For instance, the Government

goes on at relative length about a "material typographical error"—that Plaintiff included a comma in its name in certain paragraphs of the Complaint when the formation documents did not contain a comma. *See* Government's Opposition at 11. The Government audaciously claims that the presence of the comma in the Complaint legitimized the Government's denials of each and every paragraph containing Plaintiff's name. *Id*. The Government even goes so far to suggest that discovery is necessary to determine whether the absence of a comma was designed to hide the transactions from the IRS. *Id.* at n.1. This is simply preposterous, especially when Plaintiff disclosed its involvement in the Transactions and directed all of its advisors to provide all necessary materials to the IRS. *See, e.g*., Letters from Jerry Zucker to Jenkens & Gilchrist, dated July 9, 2003, August 13, 2003, and to Sidley Austin Brown & Wood LLP, dated January 15, 2004, attached as Exhibit E. In this way, the Government's Opposition has confirmed that the Motion pending before this Court is the only way[3] to obtain relief from the Government's

[3] The Parties attempted to resolve this dispute in accordance with the Court's wishes as expressed at the preliminary status conference. During these discussions, the Government suggested that it could resolve the matter by simply denying all the allegations instead of claiming a lack of knowledge or belief. Plaintiff rejected this simplistic approach because wholesale denials are contrary to the requirements of not only RCFC 8(b), but also RCFC 11, which requires that a party's "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Plaintiff believes that wholesale denials are improper in light of the evidence in the hands of the IRS, which the Government plainly has at its disposal. It would only be reasonable to believe that the IRS gave the administrative files to the Government's counsel, especially where the IRS managed to provide the administrative file to counsel for Plaintiff.

abusive answer and to avoid the needless expense and delay of engaging in discovery about matters such as commas.[4]

Instead of answering properly, the Government argues it cannot provide an appropriate answer because it is asserting that the sham transaction doctrine disallows Plaintiff's tax benefits and that the entities are not valid for tax purposes. Because of these legal positions, the Government argues, it cannot admit or deny the form of the underlying Transactions or whether the entities involved were actually valid and existing under state law. In an effort to defend its wholly indefensible Answer, it is the Government who has elevated form over substance. By doing this, the Government has violated the RCFC, this Court's Special Procedures Order, and RCFC, Appendix A ¶1, which require each party to promote inexpensive, efficient, and just litigation by identifying material issues early, minimizing cost, and enhancing the possibility of settlement. As it stands, the Answer will force the Parties to litigate issues that are truly not in dispute, at incredible cost and inconvenience to both Parties, but particularly to Plaintiff.

---

[4] Exactly how the presence or absence of a comma: (1) could hide a transaction from the IRS or (2) make any difference to the ultimate resolution of this case is completely beyond Plaintiff's comprehension. As discussed at the preliminary status conference, Plaintiff suspects the Government intends to engage in wild goose chases of the highest order during discovery. The very suggestion that discovery over the presence or absence of a comma is truly valuable or relevant betrays the Government's true agenda here: to try the tax advisors and not the Transactions at issue and to make this litigation as inefficient and expensive for the taxpayers as possible.

## II. ARGUMENTS & AUTHORITIES

### A. The Government Must Admit the Form of the Transactions Even Where It Is Alleging the Sham Transaction Doctrine Applies.

The Government has suggested that Plaintiff is trying to trick it into admitting the tax treatment and characterization of the Transactions by demanding that the Government plainly admit or deny the nuts and bolts of the Transactions. *See* Government's Opposition at 2. This suggestion misses the entire point of Plaintiff's Motion. *Petitioners simply want the Government to admit that the various Transactions actually took place, not the ultimate conclusions about their legal effect.* Petitioners fully understand the Government is alleging that several legal theories, including the sham transaction doctrine explained at length in the Government's Opposition, prohibit Plaintiff's tax treatment of the Transactions.

While the Government's Opposition articulates its views of the contours of the sham transaction doctrine, it does *nothing* to defend the portions of its Answer where it refuses to admit or deny that the underlying Transactions actually took place. Instead, the Government's lengthy dissertation only establishes it should have admitted that the underlying Transactions actually occurred. The sham transaction doctrine is a judicially-created doctrine that generally provides that a transaction is taxed based on its substance and not its form. *See Gregory v. Helvering*, 293 U.S. 465, 469 (1935). The phrase "sham in substance" describes transactions that "*actually* occurred but that lack the substance their form

represents." *See ACM P'ship v. Commissioner*, 157 F.3d 231, 247 n.30 (3rd Cir. 1988) *citing Kirchman v. Commissioner*, 862 F.2d 1486, 1490, 1492 (11th Cir. 1989) (emphasis added).

None of the cases the Government cited support its position that where there is an allegation of a "sham in substance," it is proper to deny that the underlying transactions actually occurred. In fact, the Government did not cite a single case approving the way it responded to the Complaint.

Moreover, the cases the Government cited demonstrate that the sham transaction doctrine is designed to address the tax characterization of a set of transactions that actually occurred. In other words, asserting that the sham transaction doctrine works to invalidate a taxpayer's tax treatment of a transaction is not inconsistent with admitting the form of the transactions. Consequently, the Government is capable of admitting the form of the Transactions while denying the Plaintiff's tax treatment of the Transactions.

**B. <u>There Is No Evidence of a Factual Sham.</u>**

For the first time in over two years of examination by the IRS and in this litigation, the Government raises the exceptionally-hedged allegation that the foreign currency contracts did not actually exist. *See* Government's Opposition at 9-10. The IRS never raised the theory that the foreign currency contracts did not actually exist in its Notice of Final Partnership Administrative Adjustment

("FPAA"), and the portions of the IRS's administrative file Plaintiff's received in response to its FOIA request do not betray any allegation or even suspicion that the foreign currency contracts were factual shams. Consequently, the Government's desperate allegations of a factual sham are nothing more than a tactic to convince the Court that the Government's Answer, where it claims not to have sufficient knowledge or information to adequately respond, was correct in the face of Plaintiff's Motion.

The Government's Opposition relies heavily on allegations that unrelated taxpayers have made against Ernst & Young, LLP and Jenkens & Gilchrist P.C. in an unrelated malpractice action. Plaintiff and related taxpayers—the only taxpayers before this Court in this case—are *not* parties to that litigation and have not brought any malpractice action against Ernst & Young, LLP or Jenkens & Gilchrist, P.C. Therefore, *none* of the allegations made by the taxpayers in the malpractice action or their lawyers prosecuting that suit can be attributed to Plaintiff.

The Government's quotation from the action filed by *other taxpayers* does nothing more than describe the nature of the digital option contract and does not admit that the contracts did not exist. *See* Government's Opposition at 9-10 (quoting from class action complaint: "'neither party had any rights to take possession of the 'underlying currency.' As a result, the [foreign exchange]

Contracts amounted, in actuality, to a contractual wager (*i.e.* a 'bet') based on movements in foreign currency prices, without any real possibility of foreign currency ever changing hands between the parties.'"). Notably, Plaintiff has not alleged that the taxpayers actually purchased foreign currency. Instead, as the Government well knows, the profitability of the contracts depended on the movement of foreign currency spot prices and not the actual acquisition of foreign currency. The IRS has spent hundreds, if not thousands, of hours having its Financial Product Specialist agents analyze the type of contracts at issue in this case. The portions of the administrative file produced in response to Plaintiff's FOIA request evidences a detailed review of the Transactions by Financial Product Specialist agents.

And, most importantly, the Government has the documentation showing the existence of the contracts at issue in this case. The contracts relevant to this case are attached as Exhibit F to this Reply. These same contracts appear over and over again in the documents Plaintiff has received from the Government. That the contracts exist should be positively beyond dispute. The Government's counsel cannot answer simply based on their personal knowledge: counsel has the obligation to ascertain facts and knowledge within its client's (the IRS's) possession and answer accordingly. The Government's counsel had 120 days to consult with the IRS, but apparently failed to do so in any meaningful manner.

### C. **The Government Must Admit the Entities Exist as a Matter of State Law.**

The Government argues it cannot admit the existence of the entities involved in this case because it would be admitting their validity for tax purposes. *See* Government's Opposition at 10-11. Of course, the Government is ignoring one key issue: whether the entities are valid and existing under state law is a different question than whether they are valid for federal tax purposes. Plaintiff fully expects the Government to claim the entities are not valid for tax purposes (*i.e.*, that the entities could not be used the way they were used to obtain the tax benefits claimed), but the Government *must* admit the entities were valid and existing under state law. The formation documents simply speak for themselves, and it cannot be denied that the entities were valid and existing in light of the certificates from the Secretary of State. *See*, *e.g.*, Delaware Secretary of State Certificate of Formation of JZ Buckingham Investments LLC and JGB Bohicket Investments LLC, attached as Exhibits 2 and 3 to the Government's Opposition.

Additionally, the Government claims not to know whether JBJZ Investors, Inc. is an S corporation under the Internal Revenue Code because other taxpayers alleged in the malpractice action that "BAMC, Inc. is purportedly an S corporation" in their class action complaint. *See* Government's Opposition at 11. Of course, this allegation cannot be attributed to nor does it relate to Plaintiff in any way. Furthermore, Plaintiff has not made any allegation anywhere that it

questions whether JBJZ Investors, Inc. is, in fact, an S corporation. Once again, the Government should simply admit that the entity exists.

### D. **At a Minimum, the Government Must Know What the IRS Knew When It Issued the FPAA.**

The Government misconstrues Plaintiff's Motion when it states that Petitioners have "misperceive[d] the legal significance of a FPAA or a notice of tax deficiency." *See* Government's Opposition at 12. Plaintiff understands this is a trial de novo of the IRS's various determinations in the FPAA. *See Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (1974). Plaintiff also understands that Plaintiff and Defendant are entitled to conduct reasonable discovery into relevant matters.

In its Motion, Plaintiff simply argues that the Government should have enough information to adequately answer the allegations in the Complaint because the IRS had enough information to issue the FPAA. The Government should, at a minimum, understand the factual and legal underpinnings of this case because the IRS had enough information to issue the FPAA. In fact, the IRS's administrative file indicates that Plaintiff and related taxpayers complied fully with the terms of IRS Notice 2002-2 by disclosing all materials relating to the Transactions to the IRS. *See* various materials from the IRS's administrative files evidencing satisfaction with the disclosures made, attached as Exhibit G. Because the FPAA was issued in the first place and the IRS, by law, had to have a reasonable basis for

issuing the FPAA, the Government must consult its client, review the materials in the IRS's possession, and properly answer.

### E. ***Rovico, Inc.*** **Is Exactly On Point Here Because It Addresses the Precise Situation Before the Court Today.**

Plaintiff's Motion is not designed to simply "polish the pleadings" as the Government blithely accuses. *See* Government's Opposition at 14. The Government's pleading tactics necessitated this Motion because they are contrary to the RCFC and will prejudice Plaintiff as the litigation proceeds. By answering the way it did, the Government is refusing to stake out an actual position in this litigation, one of the first cases of its type to reach judicial review. By doing this, the Government is subjecting Plaintiff to needless expense and inconvenience. If the Government would properly (and accurately) answer the Complaint, the factual issues in this case would be simplified and would enable the Court and the parties to focus on the true legal controversies at hand: whether the Plaintiff can properly claim tax benefits from the Transactions.

The Government cannot successfully distinguish the *Rovico, Inc.* case—or any other case where allegations were deemed admitted—from this one.[5] *See American Photocopy Equip. Co. v. Rovico, Inc.*, 359 F.2d 745 (7th Cir. 1966). Like the plaintiffs in *Rovico, Inc.*, the Government's claims that it basically knows

---

[5] Contrary to the Government's accusation, Plaintiffs cited many more cases than just *American Photocopy Equip. Co. v. Rovico, Inc.* in support of its Motion.

nothing about this case are positively unbelievable. *Rovico, Inc.* is not a singular case; other courts have determined that where a litigant claims to be lacking sufficient knowledge or information to answer and "its assertion of ignorance is obviously [a] sham," then "the facts alleged in the complaint stand admitted." *See Harvey Aluminum (Inc.) v. National Labor Relations Bd.*, 335 F.2d 749, 758 (9th Cir. 1964); *see also Greenbaum v. United States*, 360 F. Supp. 784, 788 (E.D. Pa. 1973) ("Defendant in this action failed to undertake even a minimal investigation and should be held to admit facts about which it had information. The Government will be held to an admission …"); *Crompton & Knowles Corp. v. Crown Prods. Corp.*, 58 F.R.D. 444, 446 (E.D. Pa. 1973) (finding improper a claim of ignorance about the terms of a sales agreement arising from a transaction to which the litigant was a party and deeming the allegations admitted).

The point of the *Rovico, Inc.* case (and other cases that reach the same conclusion cited in Plaintiff's Motion) is that a litigant must not hide behind a claim of ignorance in abuse of the Federal Rules of Civil Procedure, which tracks the language of the RCFC. The ability to claim lack of knowledge or information should not be used with impunity, and it certainly should not be used to obstruct or needlessly complicate a judicial proceeding, which is exactly what the Government is doing here.

## III. PRAYER

Plaintiff respectfully requests that the Court grant this Motion and order that Paragraphs 1-4, 6, and 17-35 of the Complaint are admitted by the Government or order the Government to respond to the Complaint more specifically within fourteen days of the Court's Order on this Motion. Plaintiff requests that the Court deny Defendant's request for costs because this Motion is not frivolous in light of the factual circumstance and legal authorities in support of Plaintiff's contentions. Plaintiff requests all such further and additional relief to which it may be entitled.

Respectfully submitted on September 28, 2005,

/s/ Joel N. Crouch
Joel N. Crouch
M. Todd Welty
David E. Colmenero
Lezlie B. Willis

MEADOWS, OWENS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

ATTORNEYS FOR PLAINTIFF
JZ BUCKINGHAM INVESTMENTS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2005, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Dennis M. Donohue
John A. Lindquist, III
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington DC 20044

/s/ Joel N. Crouch
JOEL N. CROUCH