IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION FOR ENLARGEMENT OF DISCOVERY LIMITS**

JOHN A. LINDQUIST
Attorney of Record
U.S. Department of Justice - Tax Division
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief

# Table of Contents

A. Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

B. Question Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

C. Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D. Argument

**THE DISCOVERY LIMITS SHOULD BE ENLARGED DUE TO THE MASSIVE AMOUNT OF PROMOTER DISCOVERY THAT MUST BE TAKEN IN THIS AND THE OTHER COBRA CASES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. The discovery sought is not unreasonably cumulative or duplicative, nor obtainable from some other source that is more convenient, less burdensome, or less expensive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2. The United States has not had ample opportunity by discovery in this action to obtain the information sought . . . . . . . . . . . . . . . . . . . . . . . . 11

3. The burden or expense of the proposed discovery does not outweigh the likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

E. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

F. Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# Table of Authorities

## Cases

*ACM Partnership v. Commissioner*, 157 F.3d 231 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999) . . . . . 8

*American Electric Power Co. v. United States*, 191 F.R.D. 132 (S.D.Ohio 1999) . . . . . 10

*Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578 (D.Minn.1999) . . . . . 7

*Brown v. Comm'r of Internal Revenue*, 85 T.C. 968 (1985) . . . . . 10

*Doe v. Ernst & Young LLP*, No. 02-6306 slip op. (N.D. Ill. Sept. 18, 2002) . . . . . 2

*Doe v. Wachovia*, 268 F.Supp. 2d 627 (W.D.N.C. 2003) . . . . . 5

*Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463 (Fed. Cir. 1997) . . . . . 8

*Florsheim Shoe Co. v. U.S.*, 744 F.2d 787 (Fed. Cir. 1984) . . . . . 7

*Gregory v. Helvering*, 293 U.S. 465 (1935) . . . . . 8

*Jade Trading, LLC v. United States*, 65 Fed.Cl. 188 (2005) . . . . . 10

*Kirchman v. Commissioner*, 862 F.2d 1486, 1490 (11th Cir. 1989) . . . . . 8

*Rose v. Commissioner*, 868 F.2d 851 (6th Cir. 1989) . . . . . 9

*Sochin v. Commissioner*, 843 F.2d 351 (9th Cir. 1988) . . . . . 9

*United States v. Jenkens & Gilchrist*, No. 03-5693 slip op. (N.D. Ill. May 14, 2004) . . . . . 2

*United States v. Jenkens & Gilchrist*, No. 03-5693 slip op., 2005 WL 1300768 (N.D. Ill. March 10, 2005) . . . . . 5

*Wilk v. AMA*, 635 F2d.1295 (7th Cir. 1981) . . . . . 3

## Rules

RCFC 26(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7
RCFC 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6
RCFC 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Treatise

8A *Wright, Miller & Marcus, Federal Practice and Procedure* § 2163 (2nd ed.1994) . . . . . . . 7

## IRS Notices and Releases

IRS Notice 99-59, 1999-52, I.R.B. 761 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4
IRS Notice 2000-44, 2000-36 I.R.B 255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

## Question Presented

Whether the presumptive limits upon the number of interrogatories and depositions should be enlarged to allow the United States to serve 150 interrogatories and to take 60 depositions in order to staunch an abusive tax shelter developed by at least five promoters in an attempt to eliminate $834 million in taxable income.

This memorandum is being filed in support of the United States' motion, pursuant to Rule 26(b)(2) of Rules of the Court of Federal Claims ("RCFC"),[1] for an enlargement of the number of depositions and interrogatories and makes the following particularized showing of need. In particular, the United States requests leave to serve 150 interrogatories and to take a minimum of 60 depositions.

**Statement of the Case**

In the fall of 1999, the accounting firm of Ernst & Young, LLP ("E&Y") promoted a tax product known as COBRA, an acronym for "Currency Options Bring Reward Alternatives," which appears to have been co-developed by E&Y, the Deutsche Bank AG ("DB"), and three law firms, Jenkens & Gilchrist ("J&G"), Brown & Wood ("B&W") and Scheef & Stone ("S&S"). As detailed *infra*, the COBRA product appears to involve a highly complex pre-arranged multi-step transaction requiring the formation of a number of differing entities, including LLC's for the individual participants, a partnership, and also a Subchapter "S" corporation, with the participants engaging in offsetting European-style digital option transactions through DB.

In Notices 99-59, 1999-52, I.R.B. 761 and 2000-44, 2000-36 I.R.B 255,[2] the IRS determined that transactions similar to COBRA which are designed to generate tax losses through artificially high bases were potentially abusive tax shelters and therefore qualified as "listed transactions" for purposes of Section 6111 and the regulations promulgated thereunder.

---

[1] The Rules of Court of Federal Claims generally parallel the structure and content of the Federal Rules of Civil Procedure. *See, e.g.*, Committee Notes to RCFC 26 and RCFC 30.

[2] A copy of IRS Notice 2000-44 is marked as Joint Appendix Exhibit 98.

After extensive litigation to enforce various summons served upon E&Y and the other co-promoters, the IRS was able to identify the taxpayers engaging in the COBRA transactions.[3] Upon audit of these taxpayers' returns, the IRS disallowed the tax benefits claimed on the COBRA transactions.

Apart from this case,[4] there are now three pending district court cases in which the partnerships, through the taxpayer-partners, as here, are contesting the Commissioner's disallowance of the claimed tax benefits from the COBRA product. There cases are *Carmel Partners, et al., v. United States*, Case No. 1:04 CV 1661-JDT-WTL (S.D. Ind.), *Gary Woods as TMP of SA Tesoro Investment Partners v. United States*, 05 CA 0217 (W.D. Tex.) and *Gary Woods as TMP of Tesoro Drive Partners v. United States*, 05-CV-216 (W.D. Tex.).[5]

To prevent duplicative discovery in these district court actions, the United States filed a motion with the Panel for Multi District Litigation requesting that the two *Gary Woods* cases be transferred to the Southern District of Indiana. The purpose of this motion is to allow the massive amount of discovery involving the co-promotion of COBRA to be consolidated and also to minimize the burden on numerous non-parties who would otherwise be compelled to produce identical sets of voluminous documents and to testify on the same complex subject matters in three different actions. Because the multi district litigation statute (28 U.S.C. § 1407) does not

---

[3] *See, Doe v. Ernst & Young LLP*, No. 02-6306 slip op. (N.D. Ill. Sept. 18, 2002); *United States v. Jenkens & Gilchrist*, No. 03-5693 slip op. (N.D. Ill. May 14, 2004).

[4] We also anticipate additional COBRA cases will be filed in the Court of Federal Claims. Upon the filing of these cases, we will immediately so inform the Court.

[5] By agreement, the two *Gary Woods* cases were recently consolidated for purposes of discovery and trial.

apply to Court of Federal Claims cases, the parties in this litigation have tentatively agreed to coordinate all promoter discovery in this case with the three district court cases, and also, by stipulation, to permit such discovery to be used in this case. *See*, *Wilk v. AMA*, 635 F2d.1295, 1297 n 4 (7th Cir. 1981). Moreover, even if the Panel for Multi District litigation denies the United Motion's motion for transfer, the parties in the three district court cases have nevertheless agreed to consolidate all identical promoter discovery.

Thus, the bulk of the additional interrogatories and depositions requested on this motion are relevant not only to this case but also to the three pending district court COBRA cases. Moreover, it is anticipated that the parties in any future Court of Federal Claims COBRA cases filed during the pendency of this suit will also agree that such identical promoter discovery can be used in those cases.

The principal architects of the COBRA tax product appear to have been J&G, [6] DB,[7] S&S,[8] and E&Y. E&Y appears to have generally limited the marketing of COBRA only to very

---

[6] In its initial disclosures the United States identified the following J&G attorneys as having participated in the development and marketing of the tax shelter: Paul Daugerdas, Donna Guerin, Erwin Mayer, and Patrick O'Daniel. In addition, these J&G attorneys also participated in the implementation and reporting of the COBRA transactions.

[7] In its initial disclosures the United States identified the following DB employees: Don Brooks, Todd Clendening, Sandra Burnside, David Parse, Craig Brubaker and Carl Roark. The extensive role played by DB has been detailed in some of the more recent COBRA investor lawsuits against the promoters. *See Henry Camferdam, et al. v. Deutsche Bank, et al.*, 017-12033-05 (Tarrant Cnty, TX), First Amended Complaint ¶¶ 35, 39, 49, 59-60, 67-106; *Garrett Snook v. Deutsche Bank, et al.*, Case no. 2004-40204, Harris Cnty., TX); *David Martin, et al. v. Jenkens & Gilchrist*, et al., Case no. 2004-14400 (Harris Cnty., TX). Each of these pleadings is over 100 pages. For the convenience of the Court, the first amended petition in *Henry Camferdam, et al. v. Deutsche Bank, et al*., 017-212033-05 (Tarrant Cnty, TX), is attached hereto as Exhibit A.

[8] In its initial disclosures the United States identified S&S lawyers Grady Dickens and Charles Helms, who recruited E&Y on behalf of J&G.

wealthy taxpayers who recently had realized a large ordinary or capital gain (over $50 million). The developers of COBRA characterized these transactions as option contracts, but the transactions appear in reality to be nothing more than private wagering arrangements. Apart from being a co-developer of the product, DB also served as the financial counter party to these private wagering contracts. In addition to participating extensively in the development of the product, J&G also prepared a boilerplate legal opinion for the COBRA investors blessing the tax benefits of the transaction. Because of J&G's involvement in the development of the product, it appears that E&Y recruited the law firm of Brown & Wood ("B&W") to write a second "prefabricated" and "canned"[9] legal opinion in an attempt to insulate the COBRA taxpayers against the imposition of penalties should the transaction ever be discovered by the IRS.

As detailed in IRS Notices 1999-59 and 2000-44, this tax strategy was designed to generate an artificially inflated basis which was then used to offset, and thereby eliminate, otherwise taxable income. To achieve this end, the strategy required the formation of a partnership, to which a participant would contribute through a limited liability company (" LLC") offsetting currency positions that had been purchased through DB. These contracts were not sold on any exchange. Nor was there any real possibility of foreign currency ever exchanging hands on the transactions. As even the investors now allege, these purported

[9] This is how the COBRA investors characterized the J&G and B&W legal opinions in their suits against the promoters. *See, e.g.*, *Henry Camferdam*, *et al. v. Deutsche Bank*, *et al.*, 017-212033-05 (Tarrant Cnty, TX), First Amended Complaint ¶¶ 57, 161, 213.

offsetting currency positions had no reasonable possibility of a profit in excess of the enormous fees on the transaction.[10]

The promoters appear to have spent a substantial amount of time negotiating the enormous fees to be charged each client and how the fees would be split among them. They decided that each client would pay a fee based on a fixed percentage (9.5 %) of the tax loss generated on the COBRA transaction: 1.5 % to E&Y, 3% to J&G, and 5 % to DB. Both B&W and S&S were to be paid out of J&G's split. In their litigation, the investors allege that DB's fee of 5% was set based on E&Y's belief that in order for the transaction to have economic substance, the amount at risk on the contract (the 5% paid to DB) had to be greater than the 4.5% total fees paid to E&Y and J&G.[11] It appears that E&Y and J&G also spent considerable time developing sales materials for the product, including a power point presentation to be used by E&Y's tax products group (known as "VIPER" apparently standing for "Value Ideas Produce Extraordinary Results" ) to market the product.[12]

Both E&Y and J&G required potential investors to sign non-disclosure agreements ("NDAs"). The J&G NDA expressly disclosed J&G's role as a promoter and expressly disclaimed any fiduciary relationship with the target. *See, e.g., Doe v. Wachovia,* 268 F.Supp. 2d 627, 634 (N.D.N.C. 2003) (holding that the terms of J&G's NDA vitiated any attorney-client

---

[10] *See, e.g., Henry Camferdam, et al. v. Deutsche Bank, et al.*, 017-212033-05 (Tarrant Cnty, TX), First Amended Complaint ¶¶37, 264.

[11] *See, e.g., Henry Camferdam, et al. v. Deutsche Bank, et al.*, 017-212033-05 (Tarrant Cnty, TX), First Amended Complaint ¶¶39.

[12] *See, e.g., Henry Camferdam, et al. v. Deutsche Bank, et al.*, 017-212033-05 (Tarrant Cnty, TX), First Amended Complaint ¶¶53, 54, 59, 67, 70, 72, 75, 81, 85, 86, 87, 94, 96, 110, 112, 114, 121-125.

relationship with investors); *United States v. Jenkens & Gilchrist*, Slip Copy, 2005 WL 1300768 (N.D. Ill.). In addition to having to sign NDAs, investors were not allowed to retain any of the marketing materials. Both of these limitations appear to have been imposed upon potential investors in order to minimize the possibility that the COBRA transactions might be disclosed to the IRS. In addition, it appears that E&Y represented to potential investors that E&Y and J&G would coordinate the preparation of the tax returns reporting the transaction so that the IRS would never be able to find the COBRA transaction.

During its first season, E&Y marketed 15 COBRA transactions which all appear to have been "cookie-cutter" transactions. In the aggregate, these 15 COBRA transactions not only purported to eliminate, but also purported to conceal $834 million in taxable income. The COBRA transaction with Jerry Zucker and James Boyd was for the elimination of $50 million. In its initial disclosures, the United States has identified over 120 individuals who played a material role in facilitating this sham. In their litigation against the promoters, the investors have also identified many of these same individuals who participated in the development, marketing or implementation of the product.

## ARGUMENT

I

### THE DISCOVERY LIMITS SHOULD BE ENLARGED DUE TO THE MASSIVE AMOUNT OF PROMOTER DISCOVERY THAT MUST BE TAKEN IN THIS AND THE OTHER COBRA CASES

RCFC Rules 33 and 30 presumptively limit the number of interrogatories that may be served, and the number of depositions that may be taken. Rule 33 presumptively limits the number of interrogatories that may be served by a party to twenty-five (25). RCFC 33(a). Rule

30 presumptively limits the number of depositions that may be taken by a party to ten (10). Under Rule 26(b)(2), these presumptive limits may be enlarged upon a particularized showing of need. Rule 26(b)(2) governs the Court's determination on whether leave will be granted to enlarge these presumptive limits.

Under RCFC 26(b)(2), courts look at three discretionary factors to determine whether to limit discovery: (I) whether the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) whether the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) whether the burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. This Court is afforded extremely broad discretion in determining the appropriate scope and conduct of discovery. *See Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). A party seeking leave must set forth a "particularized showing" of need. *See, e.g. Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 586 (D.Minn.1999). The Court makes a case by case analysis in determining whether enlarge these limits. 8A *Wright, Miller & Marcus, Federal Practice and Procedure* § 2163 (2nd ed.1994).

**1. The discovery sought is not unreasonably cumulative or duplicative, nor obtainable from some other source that is more convenient, less burdensome, or less expensive**

The instant case is one of 15 COBRA transactions which the United States contends were “cookie-cutter” abusive sham tax shelter transactions. In the aggregate, these transactions involved an attempt not only to eliminate, but to conceal the elimination of $834 million in

otherwise taxable income. Each of these transactions involved multiple parties and the same identical multiple promoters. Apart from this action, there are three other suits by COBRA partnerships seeking review of their IRS audit adjustments. The parties in this litigation, as well as the parties in those suits, have already agreed to coordinate the identical promoter discovery in these cases. The additional discovery sought in this suit will therefore also be equally applicable to these other COBRA cases. Thus, the discovery sought here is not unreasonably cumulative or duplicative. Indeed, the United States has gone to great lengths, including filing a motion for a transfer with the Panel for Multi District Litigation, seeking to prevent cumulative and duplicative discovery. Nor is the discovery sought here obtainable from some other source that is more convenient, less burdensome, or less expensive

Moreover, this promoter discovery is clearly relevant to one of the bedrock issues in this litigation as to whether COBRA, as designed, developed, and marketed was a factual and/or economic sham. It is fundamental that the substance, not the form, of a transaction controls for tax purposes. *Gregory v. Helvering*, 293 U.S. 465 (1935). *See also*, *Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463, 1469 (Fed. Cir. 1997).

Courts have recognized two types of sham transactions: shams in fact and shams in substance. *ACM Partnership v. Commissioner*, 157 F.3d 231, 247 n.30 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999). Shams in fact are transactions that are created on paper but in reality never occur. Shams in substance, or economic shams, are transactions that actually occur but lack non-tax economic substance. *Ibid.* If a transaction lacks either the factual or economic substance that its form represents, then purported losses claimed on the transaction are not deductible. *Kirchman v. Commissioner*, 862 F.2d 1486, 1490 (11th Cir. 1989).

The test for whether a transaction is an economic sham is "whether the transaction had any practicable economic effect other than the creation of income tax losses." *See* e.g., *Rose v. Commissioner*, 868 F.2d 851, 853 (6th Cir. 1989). This analysis is guided by the related factors of whether the transaction had economic substance beyond the generation of tax benefits (*an objective analysis*) and whether the taxpayer possessed a non-tax business purpose (a subjective analysis). *Id*. at 853; *accord Sochin v. Commissioner*, 843 F.2d 351, 354 (9th Cir. 1988). As stated by the Third Circuit in ACM Partnership:

> The inquiry . . . turns on both the 'objective economic substance of the transactions' and the 'subjective business motivation' behind them. However, these distinct aspects of the economic sham inquiry do not constitute discrete prongs of a 'rigid two-step analysis,' but rather represent related factors both of which inform the analysis of whether the transaction had sufficient substance, apart from its tax consequences, to be respected for tax purposes.

*ACM*, 157 F.3d at 247 (citations omitted).

Thus, the determination of whether the COBRA tax product would produce an economic profit absent tax benefits is an objective inquiry, requiring a full analysis as to how the product was designed, developed, marketed and implemented. In their lengthy complaints in the state court litigation, the investors provide a detailed description of the design and development of this tax product, thereby confirming the need for the discovery sought here. Critically, the investors allege in these suits that there were a variety of essential design features that virtually guaranteed that the COBRA purchasers were predestined to lose money (absent tax benefits) on these transactions.[13]

---

[13] *See, e.g., Henry Camferdam, et al. v. Deutsche Bank, et al*., 017-212033-05 (Tarrant Cnty, TX), First Amended Complaint ¶¶59-60, 79, 103-106, 170, 173, 176, 179.

As noted in the Statement, at least five entities were involved in the design, development, marketing and implementation of each of these 15 COBRA transactions: J&G, SAB&W, S&S, DB, and E&Y. Each of these entities collected millions in fees and had multiple people involved in the promotion. In its initial disclosures the United States has identified over 120 individuals from within these organizations who were involved in the promotion. The role played by many of these individuals is described in some detail in the in recent string of state court lawsuits that have been filed by COBRA investors against the promoters. *See* e.g. *Henry Camferdam, et al. v. Deutsche Bank, et al*., 017-212033-05 (Tarrant Cnty, TX) attached hereto as Exhibit A.

In addition to determining how the product was designed, developed and marketed, the United States is seeking discovery to determine whether COBRA was structured identically for all participants. Such pattern evidence is particularly relevant to prove the existence of a sham. As recently recognized by this Court in *Jade Trading, LLC v. United States*, 65 Fed.Cl. 188 (2005), one of the indicia of a sham transaction is the fact that a transaction has been structured identically for all participants:

> In *Brown v. Comm'r of Internal Revenue*, the IRS disallowed claimed losses under 26 U.S.C. § 165 finding that the forward contract transactions between the petitioners and the broker-dealer/promoter were shams and mere window dressing, "generated in form without any substance." 85 T.C. 968, 971-72, 1985 WL 15423 (1985). Importantly for purposes of the present motion, the Tax Court held that evidence of the promoters' dealings with participants other than the petitioners was "admissible in order to determine whether the transactions with petitioners [were] bona fide." *Id.* at 972 n. 6. In analyzing whether the transactions at issue were shams, the Court noted that the contracts at issue operated identically for all other participants. *Id.* at 988.

*Jade Trading, LLC v. United States*, 65 Fed.Cl. 188. 191 (2005). *Accord, American Electric Power Co. v. United States*, 191 F.R.D. 132, 140-41 (S.D.Ohio 1999) (refusing to quash a government subpoena seeking names of nonparty clients of insurance broker noting that Fed. R.

Civ. P. 26(b) permitted discovery of the identity of persons having knowledge of any discoverable matter and that the clients' identity could be adequately protected under an agreement). There were a total of 43 individual investors in the 15 COBRA transactions.

In sum, given the scope and the magnitude of the COBRA promotion and the fact that pattern evidence is relevant to show that the COBRA transactions were all cookie-cutter transactions, we respectfully submit that the requested enlargement is clearly justified. This is particularly evident because most of this discovery will also be used not just in this case but also in three other COBRA cases.[14]

**2. The United States has not had ample opportunity by discovery in the action to obtain the information sought**

The United States makes this motion timely, at the beginning of discovery, in order to ensure that it has an ample opportunity to depose the witnesses that it believes at this stage of the litigation have evidence relevant to the critical issues. Given the scope of the discovery required in this and the related COBRA cases, absent such an enlargement at the beginning of discovery, the United States would not be allowed to develop the case before the taking the deposition of the critical witnesses.

---

[14] The United States plans to file similar discovery enlargement motions in these other cases once the Panel for Multi District Litigation decides our pending motion to transfer. Accordingly, the 50 additional depositions sought here must also be allocated to these three other pending COBRA cases, thereby making this motion an actual request for less than 20 additional depositions.

**3. The burden or expense of the proposed discovery does not outweigh the likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.**

The United States is firmly committed to vigorously litigating the merits of this type of abuse and unearthing the full extent of this sham. Jerry Zucker and James Boyd sought to avoid over $10 million in tax by eliminating $50 million in taxable income. Yet this is but a small part of the billions of dollars that certain wealthy taxpayers sought to avoid through abusive tax shelters. In 1999 the IRS issued Notice 99-59 in an attempt to staunch this type of abuse. In 2000 the IRS issued Notice 2000-44, in a second attempt to warn-off taxpayers. Zucker and Boyd not only disregarded both of these published warnings, but also refused to participate in the global settlement initiative that was offered to them. See IR-2004-64, Govt. Ex. B. This settlement initiative has generated in excess of $3.2 billion in revenue from other taxpayers who agreed to concede on the merits. See IR-2005-37, Govt. Ex. C. The United States is therefore fully committed to litigating these actions and, as detailed in the JPSR, has committed substantial funds to the litigation of this action. Here, an enlargement of the discovery limits is necessary for the United States to develop the facts of this case and the related COBRA cases.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the discovery limits be enlarged to allow the United States 150 interrogatories and 60 depositions.

Respectfully submitted on October 3, 2005,

/S/ John A. Lindquist
JOHN A. LINDQUIST
Attorney of Record
U.S. Department of Justice - Tax Division
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief

## Appendix

Copies of the following documents, which are referenced herein, are being filed herewith in support of the United States' Motion for Enlargement of the Number of Depositions and Interrogatories:

Govt. Ex. A *Henry Camferdam, et al. v. Deutsche Bank, et al.*, 017-212033-05 (Tarrant Cnty, TX), First Amended Complaint

Govt. Ex. B IR-2004-64

Govt. Ex. C IR-2005-37

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2005, I electronically filed the foregoing brief with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Owens, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

/S/ John A. Lindquist
John A. Lindquist
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561