**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,** | § | |
| | § | |
| **Plaintiff,** | § | **CASE NO. 05-231 T** |
| **v.** | § | **Chief Judge Edward J. Damich** |
| | § | |
| **United States of America,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**PLAINTIFF'S OPPOSITION TO UNITED STATES' MOTION FOR ENLARGEMENT OF THE NUMBER OF DEPOSITIONS AND INTERROGATORIES**

Plaintiff JZ Buckingham Investments LLC ("Plaintiff") opposes the United States' Motion for Enlargement of the Number of Depositions and Interrogatories ("Government's Motion") and disagrees with the Government's arguments as outlined in the Memorandum of Law in Support of the Government's Motion ("Government's Memorandum"). In support of this Opposition, Plaintiff will show the Court as follows:

## I. SUMMARY OF ARGUMENT

The Government's Motion and Memorandum have established beyond a doubt that the Government is seeking discovery not for this specific case but instead about the conduct of the tax professionals to further its own agenda and for the benefit of other cases. The Government did not make any particularized showing of need for more discovery regarding the substantive issues relevant to the factual and legal questions that will actually resolve this case. Instead, the Government is interested in obtaining discovery "to develop the facts of this case *and the related COBRA cases*." *See* Government's Memorandum at 12 (emphasis added). Of course, "the related COBRA cases" are pending in district courts in two different jurisdictions, not before this

Court. Notably, the Government only names taxpayers related to this litigation by name *twice* in its twelve-page submission to the Court.

The Government never mentioned that *before* the Government filed its Motion, Plaintiff offered to *double* the presumptive discovery limits set forth in the Rules of the Court of Federal Claims ("RCFC") so that each party can take *twenty* depositions and require responses to *fifty* interrogatories. *See* Letter from Joel N. Crouch to John A. Lindquist, III, and Dennis Donohue dated September 30, 2005, attached as Exhibit A. In response, the Government filed its Motion, increasing the number of requested depositions from twenty-five in the Joint Preliminary Status Report ("JPSR") to sixty, and the number of interrogatories from one hundred in the JPSR to one hundred fifty. *See* JPSR at 11.

The Government's Motion wrongly claims that this case and two other filed cases are similar (which they are not), that the conduct of the tax professionals will determine the outcome of this case (which it will not), and that the statements made by other taxpayers are somehow attributable to the parties interested in the outcome of this case (which they are not). But, even if its assertions were true, the Government has not made the requisite particularized showing that it is entitled to more discovery at this point. Instead, it has demonstrated its plain intentions to engage in irrelevant discovery at Plaintiff's expense and detriment. Plaintiff respectfully requests that the Court deny the Government's request for sixty depositions and one hundred fifty interrogatories and order that each party may notice twenty depositions and serve fifty interrogatories without leave of court.

## II. ISSUE PRESENTED

Plaintiff disagrees with the Government's formulation of the issue before the Court today because: (1) it ignores Plaintiff's agreement to double the presumptive limits on the number of

depositions and interrogatories; (2) discovery in this case should not be used to "staunch" anything but to resolve the merits of this action; (3) whether or how many tax professionals were involved is legally irrelevant; and (4) the amount at controversy in this particular case[1] is but a fraction of the amount the Government claims to have been lost.

Instead, this case is about taxpayers who were approached by Ernst & Young ("EY"), their long-time financial and tax advisors, in late 1999 about the transactions at issue. After EY's presentation, the taxpayers participated in the transactions and reported the results on their 1999 tax returns, as EY and other tax professionals advised. When the taxpayers subsequently learned the IRS was questioning the tax reporting of the transactions, they disclosed their transactions to the IRS and fully cooperated with the IRS in its two-year examination. The taxpayers also specifically instructed EY and the other professionals to cooperate with the IRS. It is the taxpayers' understanding that EY and the other professionals did cooperate and provide numerous records to the IRS.

Therefore, in accordance with RCFC 5.2(a)(2), Plaintiff submits that the issue for this Court's determination is:

> Whether the Government is entitled to more than twenty depositions and fifty interrogatories in a case where the only substantive issue to be resolved by the Court is whether Plaintiff is entitled to the tax benefit of certain transactions, which will be determined by factual testimony from individuals and entities actually involved in the transactions and by expert testimony about the specific transactions.

---

[1] The Government claims that this and other cases involved an effort to eliminate $834 million in taxable income. *See*, *e.g.*, Government's Memorandum at v. Of course, the actual tax at issue here is 0.01% of $834 million. Furthermore, the taxes at issue in other cases are wholly irrelevant to the amount involved in this case. The Government has engaged in nothing more than wild exaggeration in its discussion of the amount in controversy here.

## III. ARGUMENTS & AUTHORITIES

### A. The Government's Motion Is Not Ripe for Review.

Consideration of the Government's Motion is premature because the parties have not commenced discovery. To date, the Government has not served a single interrogatory or noticed the first deposition. Consequently, at the moment, the Government is *far* from exceeding the proposed limits of twenty depositions and fifty interrogatories. The Government's Motion and Memorandum are replete with generalities, which is not surprising, given that the case has really not yet taken shape. The Government has only specifically named twelve individuals who it may seek to depose. *See* Government's Memorandum at 3 ns. 6, 7, 8. Not surprisingly, the Government has failed to provide the Court with a list of individuals and entities to be deposed or any particularized reasons why discovery from those specific individuals or entities fulfills the standards required by RCFC 26(b)(2).

Right now, it is impossible to say whether the twenty-first deposition or the fifty-first interrogatory are warranted or not. Whether the Government can meet the standards of RCFC 26(b)(2) for the twenty-first deposition or the fifty-first interrogatory will depend on the discovery conducted at the time the Government seeks to notice an additional deposition or serve additional interrogatories. Furthermore, in determining whether additional discovery is warranted, the Court should also consider whether and to what extent the parties have utilized other methods of discovery, such as requests for production under RCFC 34, requests for admission under RCFC 36, and third-party subpoenas for documents under RCFC 34 and 45. The Court should also consider all the depositions taken at the time of the request because *each party* has the right to notice twenty depositions; as a result, the Government could potentially examine *forty* witnesses during discovery. Consequently, the Court should deny the

Government's Motion unless and until it can meet the burden of RCFC 26(b)(2) with a much greater degree of specificity once it has reached the outer bounds of the proposed discovery limits.

**B. <u>Enlarging Discovery at This Early Stage Will Only Encourage an Expensive and Inefficient Litigation.</u>**

Granting the Government's Motion at this stage of the litigation will provide the wrong incentive by encouraging expensive and inefficient discovery. As it is, the Plaintiff has proposed twenty depositions and fifty interrogatories. This case can easily be tried with that amount of discovery if the litigants make sound strategic choices about the discovery needed. The Government should at least attempt to try this case with the fewest possible depositions and interrogatories, which is the only way to fulfill the goals of the RCFC "to secure the just, speedy, and inexpensive determination of every action." *See* RCFC 1.

**C. <u>The Government Has Not Met Its Burden to Increase the Proposed Discovery Limits.</u>**

The Government has fallen far short of making a particularized showing of need under RCFC 26(b)(2) to enlarge the already-doubled discovery limitations. RCFC 26(b)(2) [2] provides that the Court may "alter the limits in these rules on the number of depositions and interrogatories" if the discovery is necessary, the party seeking the discovery has had an opportunity to obtain the discovery, and the benefit of the discovery outweighs the burden. *See* RCFC 26(b)(2). The Government's Motion and Memorandum do not make any particularized showing of need why the discovery limits should be enlarged beyond twenty depositions and fifty interrogatories per side. The Government's Motion did not provide the following necessary

[2] While RCFC 30 and 33 direct a Court to consider the principles of RCFC 26(b)(2) in increasing the number of depositions and interrogatories, that standard outlined in Rule 26(b)(2), as written, is awkward under the circumstances before the Court because RCFC 26(b)(2) appears to have been designed to limit, not extend, discovery.

information: (1) a list of persons or entities whose depositions it considers necessary; (2) a description of why any particular person should be deposed; or (3) a justification for the deposition of any particular person under the standards of RCFC 26(b)(2). In order to obtain the relief it is seeking, the Government must make this kind of particularized showing. Its failure to do so, coupled with its hyperbole and illogical arguments, only highlights the fact that it wants to engage in an expensive and inefficient fishing expedition that will not serve to resolve this case.

### 1. The evidence the Government seeks is irrelevant.

Much of the discovery the Government demands will not be relevant to the resolution of the case before this Court, despite the Government's claims that "the bulk of the additional interrogatories and depositions requested on this motion are relevant not only to this case but also to the three pending district court COBRA cases."[3] *See* Government's Memorandum at 3. This statement is simply not true. In the other cases pending in district courts, the taxpayers are defending against the application of penalties, which will require discovery on whether the taxpayers reasonably relied in good faith on their various advisors. Here, penalties are not at issue.[4] Even if penalties were at issue, the inquiry should still be limited to the conduct of the tax professionals involved in the transactions.

Instead, the only issue here is whether Plaintiff is entitled to the tax benefits claimed on its tax return, which will include an analysis of whether Plaintiff can establish that the unique transactions involved have a non-tax business purpose, economic substance, and do not violate

---

[3] The Government also notes that it has "gone to great lengths" to prevent cumulative and duplicative discovery by filing a motion for transfer with the Panel for Multidistrict Litigation. *See* Government's Memorandum at 8. The Government failed to note for the Court that all taxpayers involved in those cases have opposed transfer because facts unique to each case, not those they have in common, will predominate discovery and determine the outcome of the cases.

[4] Penalties are not at issue because the taxpayers voluntarily disclosed the transactions to the IRS in response to IRS Notice 2002-2 and directed their advisors to cooperate with the IRS. Any suggestion that the taxpayers here sought to hide these transactions from the IRS is inaccurate.

the step transaction doctrine. *See Compaq Computer Corp. v. Commissioner*, 277 F.3d 778 (5th Cir. 2001); *Wheeler v. United States*, 116 F.3d 749 (5th Cir. 1997). Therefore, discovery about any tax professional's conduct, especially those who were not directly involved with Plaintiff's transactions, is irrelevant to these issues.

The list of witnesses with legally relevant information is much more circumscribed than the Government's Motion and Memorandum depict.[5] First, discovery about whether Plaintiff had a non-tax business purpose for entering into the transactions is likely to derive from Plaintiff, related taxpayers, and professionals who discussed this issue with Plaintiff and related taxpayers. Second, discovery about whether the transactions had economic substance is largely a question of profit potential.[6] This will likely be a matter for an expert's consideration in light of historical currency market analysis at the time the taxpayers engaged in the transactions. Finally, whether the step transaction doctrine applies to negate the tax benefits claimed is a matter for expert discovery and for tax professionals who were involved in the specific transactions. What other tax professionals who did not have contact with Plaintiff or related taxpayers knew, thought, said, or did will not be relevant to the resolution of these issues.

---

[5] To justify its scatter-shot approach to discovery, the Government repeatedly claims that "the investors" are making certain allegations in attendant civil malpractice suits. *See* Government's Memorandum at 4, 9, 10. The Government never noted for the Court that Plaintiff and related taxpayers are not parties to any malpractice suit. They have not made any allegations that the tax professionals involved engaged in any type of misconduct. By mentioning the civil malpractice suits that other taxpayers have brought is misleading and improper. The allegations made by other taxpayers cannot be attributed to Plaintiff or any related taxpayer under any legal or factual theory.

[6] The cases do share common *legal* issues of whether the transactions and entities have a non-tax business purpose and economic substance. Of course, discovery concerns the *factual* development of the case. The cases all involve different trades of distinct currencies reflected in option contracts with unique terms including different "spot rates" and termination dates. These unique facts will determine whether there was a profit potential, which is a matter for expert testimony. The Government has illogically alleged that "the determination of whether the COBRA tax product would produce an economic profit absent tax benefits is an objective inquiry, *requiring a full analysis as to how the product was designed, developed, marketed and implemented*." *See* Government's Memorandum at 9 (emphasis added). This makes no sense whatsoever: whether a transaction had a potential for profit is determined by whether the taxpayer could have made money. How the transactions at issue were "designed, developed, marketed, and implemented" are *irrelevant* to whether a taxpayer could make money.

The Government's Motion demonstrates that its discovery objectives go far beyond the issues relevant to the resolution of this case. For instance, the Government writes at length about how the professionals negotiated their fees, developed marketing materials, and used nondisclosure agreements. *See* Government's Memorandum at 5-6. Despite the Government's vitriol about these topics, none of them is relevant to whether Plaintiff's tax reporting of the transactions should be sustained.

**2. Even if the discovery sought is relevant, it is likely to be cumulative, duplicative, or is available from other sources or in other means.**

The Government should be able to obtain the discovery it is seeking from the individuals involved in this case and any experts retained to opine on the issues presented here in the course of twenty depositions and fifty interrogatories. For instance, if the Government is seeking discovery on whether other taxpayers engaged in the same or similar transactions, the professionals involved with Plaintiff's transactions are likely to be a source of this evidence or it could be obtained in the course of a single deposition of the professional firm in question under RCFC 30(b)(6). The same information might be obtained in the business records of the professional firms involved, which could be subpoenaed from the firms under RCFC 45.

Importantly, the Government has the benefit of information from many different sources, including the IRS's lengthy audit of the specific transactions at issue and summonses served on the professional advisors.[7] While the parties have a right to conduct discovery and have a de novo trial regarding the IRS's adjustments, the Government cannot credibly claim that it is completely in the dark about the factual underpinnings of this case. The Government's Memorandum itself evidences fairly detailed knowledge about the individuals involved, fee

[7] Counsel received two boxes full of documents in response to a Freedom of Information Act request which demonstrate that the transactions involved in this case received full analysis from the IRS.

negotiations, nondisclosure agreements, the number of other transactions, and the aggregate taxable income involved. The Government's Memorandum reflects a disregard for efficient litigation and a refusal to consider a reasonable and effective strategy for litigating this case.

**3. With the proposed discovery limits, the Government will have ample opportunity to conduct any necessary discovery.**

Even if the Court determines that some discovery about the conduct of the tax professionals is likely to lead to relevant evidence, this discovery should be limited to the proposed limits of twenty depositions and fifty interrogatories per party. If the Government is seeking discovery about the conduct of tax professionals involved in Plaintiff's transactions,[8] then the current limits on the number of depositions should be sufficient to obtain the testimony of those professionals, especially since the Government specifically named only twelve professionals. *See* Government's Memorandum at 3 ns. 6, 7, 8.

**4. In light of the limited issues before the Court in this particular case, the burden to Plaintiff of extending discovery beyond the proposed limits will far outweigh any benefit.**

Plaintiff is vehemently opposed to the Government's effort to engage in costly discovery about topics that are plainly irrelevant to the resolution of its particular case. Permitting sixty or more depositions to proceed will create an enormous financial burden for Plaintiff in terms of legal fees and expenses. The Government has claimed that it will devote millions of dollars to litigate this case.[9] Plaintiff believes this is wholly unnecessary.

[8] If the Government is seeking discovery about the conduct of tax professionals who were *not* directly involved with Plaintiff *and* the Court considers this type of discovery permissible, it could easily do so by noticing the various professional firms for a deposition under RCFC 30(b)(6), which permits depositions of corporations, partnerships, associations, or government agencies. These depositions under RCFC 30(b)(6) could also be accomplished within the twenty depositions per party limit.

[9] The Government's cost estimates are purely outlandish and must include other litigation: "Defendants estimate the anticipated litigation costs (1) through discovery, (2) by the end of trial, and (3) through appeal, if any, are in the amounts of $2 million, $2.5-3.0 million, and $2.55-3.55 million, respectively." *See* JPSR at 13.

Plaintiff simply wants to conduct the appropriate amount of discovery to enable *this matter* to proceed to trial and judgment. Plaintiff and related taxpayers should not be required to finance the Government's broader agenda. The only issue that should be litigated here is whether the specific transactions deserve the tax treatment Plaintiff and related taxpayers claimed on their income tax returns.

## IV. PRAYER

Plaintiff respectfully requests that the Court deny the Government's request for sixty depositions and one hundred fifty interrogatories, order that each party may notice twenty depositions and serve fifty interrogatories without leave of court, and grant Plaintiff such further relief to which it may be entitled.

Respectfully submitted on October 17, 2005,

/s/ Joel N. Crouch
Joel N. Crouch
M. Todd Welty
David E. Colmenero
Lezlie B. Willis
MEADOWS, OWENS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

ATTORNEYS FOR PLAINTIFF
JZ BUCKINGHAM INVESTMENTS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2005, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of such filing to Dennis M. Donohue, U.S. Department of Justice—Tax Division, P.O. Box 55, Ben Franklin Station, Washington DC 20044.

/s/ Joel N. Crouch
JOEL N. CROUCH