IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

REPLY BRIEF OF UNITED STATES' IN FURTHER SUPPORT OF ITS MOTION FOR ENLARGEMENT OF THE DISCOVERY LIMITS

---

Plaintiff's opposition to our motion for expanded discovery is rife with inaccuracies. Contrary to plaintiff's contention, the United States did make a particularized showing of its need for expanded discovery. This case involves the design, marketing and implementation of a generic tax shelter product to eliminate taxes for the wealthy. The United States identified five promoters that were involved in the design, development and implementation of these transactions. Two of these promoters are major law firms. One is a major accounting firm.

Attached to our opening memorandum was a 146-page suit filed by the purchasers of this tax shelter product which described in excruciating detail the activities of many of the individuals of these five promoters who were involved in various facets of the design, marketing

and implementation of this shelter.[1] Counsel for the United States also obtained from the Senate Permanent Subcommittee on Investigations substantially more information concerning the individuals of the five promoters who were involved in the design, marketing and implementation of the COBRA transaction as a generic product.[2] In all, well over sixty witnesses were identified that had involvement in the development, marketing and implementation of the COBRA transactions. For the Court's convenience, attached hereto as Govt. Ex. D is a list of these individuals. Thus, given the magnitude of the required discovery in this case, plaintiff's offer to simply allow us ten additional depositions bears no meaningful relationship to the number of witness that the United States has identified which were involved in the design, development, marketing and implementation of this highly-complex tax shelter transaction.

Moreover, our motion is ripe for review. As emphasized in our opening memorandum (at 11), the United States needs to have a ruling on our motion for enlargement before starting third-party discovery because, without a ruling, the United States would not be allowed to develop fully the case before the taking the deposition of the critical witnesses. Given our and the investors' identification of well over 60 individuals involved in the design, marketing and implementation of the COBRA transaction as a generic tax product, and the dollars at issue, it is neither premature nor unreasonable for the United States to seek an enlargement to 60 depositions and 150 interrogatories at the beginning of discovery. Indeed, that is the very reason

---

[1] *See*, The First Amended Petition in *Henry Camferdam, et al. v. Deutsche Bank, et al.*, 017-212033-05 (Tarrant Cnty, TX), Govt. Exhibit A, to our opening memorandum.

[2] *See*, *The Role of Professional Firms in the U.S. Tax Shelter Industry, U.S. Senate Permanent Subcommittee on Investigations,* S. Rep. No. 109-54, at 1 (2005).

why we moved to transfer the two Texas COBRA cases to Indiana even before the promoter discovery began. Our MDL motion is based on the recognition that there is a massive amount of promoter discovery that is required in these COBRA cases, and that the District Court COBRA cases should therefore be consolidated before such discovery begins. Thus our motion here, as well as the motion to transfer the District Court COBRA cases for purposes of discovery, are not premature.

Plaintiff also argues that the evidence we are seeking regarding the design, marketing and implementation of the COBRA tax shelter is irrelevant because the COBRA option transaction in this case is unique. This argument is specious. COBRA was a generic tax product sold to multiple investors. The predominant factual issue in all of the COBRA cases is whether this generic tax product had objective economic substance and/or was a factual sham for federal income tax purposes. These issues will turn on a highly complex set of facts common to all of these cases. The common factual issue in all of the COBRA cases is whether the COBRA transaction had objective economic substance. As noted by this Court in *Transpac Drilling Venture, 1983-2 by Dobbins v. United States*, 32 Fed.Cl. 810 (Fed.Cl.,1995), the sham transaction doctrine requires an *objective* inquiry as to whether there was a reasonable possibility that the transaction would produce an economic profit absent tax benefits:

> Under the sham transaction doctrine, a transaction is disregarded for tax purposes if (1) there is no business motive for the transaction aside from the tax benefits and (2) the transaction has no economic substance, **which is an objective inquiry into whether a reasonable possibility of profitability existed apart from tax benefits**. *Rice's Toyota World Inc. v. Commissioner*, 752 F.2d 89, 91 (4th Cir.1985); *see Frank Lyon Co. v. United States*, 435 U.S. 561, 573, 98 S.Ct. 1291, 1298, 55 L.Ed.2d 550 (1978); *Lerman v. Commissioner*, 939 F.2d 44, 52-53 (3d Cir.), cert. denied, 502 U.S. 984, 112 S.Ct. 590, 116 L.Ed.2d 615 (1991); *Johnson v. United States*, 11 Cl.Ct. 17, 25 (1986); *Hawley v. Commissioner*, 55 T.C.M. 217, 223, 1988 WL 12766 (CCH 1988). In regards to a transaction executed by a

> partnership, the business motives and the reasonable possibility of profit are determined at the partnership level. *See Tallal v. Commissioner*, 778 F.2d 275, 276 (5th Cir.1985); *Hawley*, 55 T.C.M. at 223.

*Transpac Drilling Venture, 1983-2 by Dobbins v. United States*, 32 Fed.Cl. 810, 820 (Fed.Cl.,1995), *aff'd* 83 F.3d 1410 (Fed.Cir. 1996)(emphasis added.) Plaintiff argues that such an objective inquiry is illogical. Op. Memo. at 7 fn.6. As noted above, plaintiff's view is contrary to the precedent of this Court, not to mention virtually every court of appeals as well as the Tax Court.

Accordingly, the initial determination here will be whether the COBRA tax product has objective economic substance. This issue will require a determination as to whether there was a reasonable possibility that the transaction would produce an economic profit absent tax benefits. As noted by this Court in *Transpac Drilling Venture*, this inquiry is strictly objective and, contrary to plaintiff's contention, will require a full and extensive analysis as to how the product was designed, developed, marketed and implemented. This type of design evidence is especially critical in determining whether a generic tax shelter product such as COBRA is an economic sham. In a case involving a generic corporate tax shelter called COLI, designed by the promoters to achieve positive annual cash flows principally derived from artificial tax benefits, the District Court took pains to emphasize the importance of the plan's design features:

> The COLI VIII policies were designed to be owned on a broad base of employees, to be financed through a highly leveraged transaction, and to provide the policyholder with a positive cash flow in every year of the policy. To achieve these design goals, the designers of the COLI VIII policies incorporated several innovative features in an attempt to comply with the Internal Revenue Code governing life insurance. In doing so, the designers obviously inched toward that invisible line which separates true life insurance from tax driven or tax sheltering investments.

*IRS v. C.M. Holdings, Inc.*, 254 B.R. 578, 620-44 (D. Del. 2000), *aff'd*, 301 F.3d 96 (3d Cir.

2002). The court then went on to recount in detail the numerous generic design features that conclusively demonstrated that the product was not legitimate insurance but instead a tax-driven product that lacked objective economic substance. *Id.* at 586-87, 594, 611, 615, 627, 630-31. *See also*, *American Electric Power v. United States*, 136 F. Supp.2d 766, 788 (S.D. Ohio 2001) *aff'd,* 326 F.3d 737 (6th Cir. 2003), *cert. denied*, 124 S.Ct.1043 (2004) ("The COLI program was designed to maximize the tax benefits of the deductibility of interest on the policy loans, the deferral of taxation on the increase in cash value, and the ultimate non-taxability of the death benefits.")

In their lengthy complaints in the promoter litigation, the investors[3] provide a detailed description of the design and development of the COBRA tax product. Critically, the investors allege in these suits that there were a variety of essential design features that virtually guaranteed that the COBRA purchasers were predestined to lose money (absent tax benefits) on these transactions.[4] Thus, there can be no real dispute that the this design evidence is highly relevant to

---

[3] Plaintiff argues that the partners in *JZ Buckingham* are not parties to any of the investors suits against the promoters; and thus, the investors' allegations cannot be attributed to them. Op. Memo at 7, fn. 5. To begin with, plaintiff ignores the fact that the investors' class action suit sought to include all COBRA investors. More importantly, however, is that the investors' allegations in these suits highlight critical facts which, if true, would demonstrate conclusively the sham nature of the COBRA tax product. Thus, these allegations are highly significant for purposes of our discovery regardless of whether or not these allegations can be attributed to the partners of plaintiff.

[4] In an attempt to obscure the fact that these cases involve virtually identical transactions, as well as a tremendous amount of nearly identical third-party discovery, plaintiff argues that its own particular currency option transaction will determine whether JZ Buckingham had a reasonable possibility of profit. Op. Memo at 7 fn. 6. However, the investors made the exact opposite allegation in their class action suit, wherein they asserted:

> Neither the dates nor the currencies are believed to be material to the transactions, as it was represented that such would not affect the outcome of the transaction.

whether plaintiff's COBRA transaction had objective economic substance.

Finally, we note that the United States' MDL motion for the coordination of discovery of the District Court COBRA cases has been set for oral argument on November 17, 1995. Since counsel for *JZ Buckingham* is making many of the same meritless arguments on behalf of its clients in the two District Court *Tesoro*[5] cases that they are advancing in this litigation, the Court may want the benefit of the MDL Panel's ruling on our MDL motion before deciding the instant motion. One thing is now clear, however. Given that the 50 additional depositions sought here must also be allocated to these three other pending COBRA cases, the actual additional number of depositions sought here is not that great.

---

Appendix Exhibit A, Class Complaint ¶ 61

[5]*Gary Woods as TMP of SA Tesoro Investment Partners v. United States*, 05 CA 0217 (W.D. Tex.) and *Gary Woods as TMP of Tesoro Drive Partners v. United States*, 05-CV-216 (W.D. Tex.)

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the discovery limits be enlarged to allow the United States 150 interrogatories and 60 depositions.

Respectfully submitted,

/s Dennis M. Donohue
DENNIS M. DONOHUE
Attorney of Record

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2005, I electronically filed the foregoing brief with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Owens, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

/S/ John A. Lindquist
John A. Lindquist
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561