**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,** | § | |
| | § | **CASE NO. 05-231 T** |
| **Plaintiff,** | § | **Chief Judge Edward J. Damich** |
| **v.** | § | |
| | § | |
| **United States of America,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REVISE SCHEDULING ORDER**

Plaintiff JZ Buckingham Investments, LLC ("Plaintiff") files this Response in Opposition to Defendant's Motion to Revise the Scheduling Order (the "Motion"). In support of same Plaintiff would show the Court as follows:

**I.**

On October 4, 2006, this Court, after hearing argument from counsel, denied Defendant's motion to revise the scheduling order in this case to comport with the schedule in the three consolidated Murphy cases — MURFAM Farms, LLC, et al. v. United States, Fed. Cl. No. 06-245T, PSM Farms, LLC, et al. v. United States, Fed. Cl. No. 06-246T, and Murphy Pork Partners, LLC, et al., v. United States, Fed. Cl. No. 06-247T (the "Murphy Cases").[1] The Defendant has now filed this motion asking the Court to reconsider its decision, raising no new arguments, and only rehashing the same arguments. Plaintiff asks the Court to again deny the motion for the same reasons it did during the status conference on October 4, 2006.

[1] The Murphy Cases were consolidated by Order of this Court on October 5, 2006.

## II.

It is axiomatic to the efficient administration of justice for parties to commit to and comply with discovery schedules and deadlines. See e.g., B.F. Goodrich v. Betkoski, 99 F.3d 505, 523-24 (2d Cir. 1996). Plaintiff has been working continuously to abide by the agreed-upon and court-ordered discovery schedule. Plaintiff and this Court have, respectively, agreed to and granted Defendant's pleas for more time, more resources, and more flexibility. And yet, Defendant continually asks for more. The discovery process is liberal, but it has a limit. Hickman v. Taylor, 329 U.S. 495, 507-8 (1947); see also B.F. Goodrich, 99 F.3d at 523-24.

From the onset of this Case on February 17, 2005 — over a year and a half ago — the Government has continually requested and obtained more time, more depositions, and more interrogatories. (See Dkt. # 1.)

- The Government's response to Plaintiff's initial pleading was due on April 19, 2005. (See Dkt. # 6.) A mere six days before it was due, the Government requested more time. (See Dkt. # 6.) Plaintiff opposed the request, but it was granted. (See Dkts. # 9, 10.)
- Discovery is limited to 10 depositions and 25 interrogatories per party. See R.C.F.C. 31 and 33. On October 3, 2005, Defendant requested 60 depositions and 150 interrogatories. (See Dkt. # 29.) Plaintiff initially opposed the request, but did not oppose Defendant's request for more time in which to reply. (See Dkts. # 33, 34.) Ultimately, Defendant was granted 99 depositions and 100 interrogatories. (See Dkt. # 54.)
- This Court entered a Scheduling Order on September 2, 2005. (See Dkt. # 23.) In the Spring of 2006, Defendant requested, and Plaintiff agreed, that the Scheduling

Order should be revised to conform to litigation instituted in the Southern District of Indiana. (See Dkt. # 55.) The Court granted the request. (See Dkt. # 55.)

- In every stage of written discovery, Defendant has requested more time from Plaintiff and Plaintiff has granted it.

Despite these grants of additional time and additional discovery, Defendant has accomplished very little in this Case. Although Defendant has had plenty of time to conduct depositions, it has taken only six. Those depositions were taken in July 2006 and were of lower level employees at Deutsche Bank — only one of whom appeared on the list of the 99 depositions that the Defendant filed with the Court. None of the six deponents had any specific knowledge of the particular transaction at issue in this case.

Now with the discovery deadline less than four months away, the Defendant has noticed the depositions of 22 former or current employees of the accounting firm of Ernst & Young. Plaintiff anticipates that only one of these individuals will have any information about Plaintiff's transaction. According to counsel for Ernst & Young, Defendant has been notified that the majority of these individuals do not have any relevant information and that the depositions will be a waste of the parties' time and resources. However, the Defendant has ignored this information and has refused any assistance from Ernst & Young's counsel in identifying individuals with actual knowledge.

## III.

Defendant, in its Motion, even attempts to place the burden of delay and disorganization on Plaintiff. It implies that Plaintiff did not give Defendant enough time before the status conference to prepare a formal presentation to the Court:

> [C]ounsel for JZ Buckingham informed us shortly prior to the October 4, 2006 scheduling conference that they would now not agree to synchronize the JZ Buckingham Discovery dates with the dates agreed upon in the Murphy cases. Given the short notice, the United States [sic] was unable to prepare a formal motion prior to the scheduling conference . . . The United States was therefore constrained to make an oral request.

(See Dkt. # 58.) Plaintiff, however, notified Defendant on Wednesday, September 27, 2006 — a full week before the status conference telephone call — that it would oppose any request to extend any deadlines in this case. Plaintiff fails to see where it is to blame for Defendant's failure to be adequately prepared. Further, Defendant makes no different arguments in its Motion than it did at the status conference.

## IV.

Defendant's statement that Plaintiff will not be prejudiced by a revision of the scheduling order is incorrect. At the status conference in the Murphy Cases, both the Court and Defendant were made aware of information particular to this case, which makes any changes to the scheduling order highly prejudicial to Plaintiff (and for privacy concerns, the specifics of which need to remain off-the-record). In addition, the transaction at issue took place over seven years ago, in 1999. Memories fade and further delays will be highly prejudicial to Plaintiff.

**V.**

The Defendant's Motion speaks of nothing but the factual discovery that it may or may not engage in the Murphy Cases. The fact of the matter is that if the Murphy Cases were not present, the Defendant would still be facing over 90 depositions and less than four months in which to take them.

Further, it is not even certain that the discovery in the Murphy Cases will be duplicative of this case. The Defendant even admitted as much in its Motion:

> We have not yet obtained all the documentary evidence regarding the Murphy family's COBRA transactions or the differences between their COBRA programs, which took place in 2000, and all of the other COBRA transactions, which took place in 1999. [FN 2] [W]hile the United States has located significant documentation of the 1999 COBRA transactions, our information is yet too sparse to effectively depose the third party witnesses regarding the COBRA transactions in the Murphy cases.

Notably, the Defendant noticed the deposition of Mike Dell for October 31, 2006. Mr. Dell is among the group of 28 depositions the Defendant claims cannot effectively take at this time. That obviously is not correct.

It is also important to note that there are significant differences between the Murphy Cases and this case. First, in the present case, tax opinions were written by two law firms — Jenkens & Gilchrist and Brown & Wood. In the Murphy Cases, there is one tax opinion written by the law firm of Proskauer & Rose. In the present case and those that are in the MDL proceeding, the transactions took place in the last two months of 1999. In the Murphy Cases, the transactions took place in the year 2000. Third, there are significant differences in the type of currencies at issue, strike prices, and the market at the time during which the transaction in this Case was entered.

In any event, the fact of this potentially duplicative discovery does not justify extending this case any longer than it has already been extended. The United States Court of Appeals for the Second Circuit faced the same issue in B.F. Goodrich v. Betkoski, 99 F.3d 505 (2d Cir. 1996). B.F Goodrich involved complex multi-party litigation. See id. at 523. There were 18 plaintiffs and roughly 94 defendants. See id. at 505. On appeal, plaintiffs contended that the trial court's use of strict limitations on discovery deadlines was an abuse of discretion. See id. at 523. The Second Circuit disagreed, pointing out that measures such as time limits, discovery schedules, and discovery limitations are acceptable options for controlling discovery in multi-party litigation. See id. Further, the Second Circuit refused to be persuaded by plaintiffs' contentions that more factual discovery was necessary. See id. It pointed out that in cases as large as B.F. Goodrich, there would always be more factual discovery needed – but discovery had to end at some point:

> Doubtless, more discovery might have been helpful, but in a case this complex the information falling within the broad purview of federal discovery is almost without limit. In this light it is hard to fault the district court for placing limitations on discovery. Given the circumstances of the case, we see no abuse of discretion.

The Second Circuit's determination in B.F. Goodrich regarding discovery hits the very foundations of Defendant's Motion. In a case as large as Defendant is making this one out to be, there may always be more factual discovery to be done. Discovery has to come to an end at some point.

## VI.

Alternatively, if this Court believes that Defendant should be granted some measure of relief, Plaintiff suggests, without waiving its opposition to any revisions to the Scheduling Order, that this Court limit the relief to Defendant's actual complaint in its Motion – time to notice and

to take the potential 28 depositions. To allow the Government another 6-8 months of carte blanche discovery would be to invite the same motion to be filed in 6-8 months.

**PRAYER**

Plaintiff prays that this Court enter an order denying Defendant's Motion to Revise Scheduling Order. Plaintiff also prays for any other legal or equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

By: s/Joel N. Crouch
Joel N. Crouch
Texas State Bar No.05144220
M. Todd Welty
Texas State Bar No. 00788642
Tara C. Campbell
Texas State Bar No. 24043452

MEADOWS, OWENS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowsowens.com
twelty@meadowsowens.com
tcampbell@meadowsowens.com

ATTORNEYS FOR PLAINTIFF
JZ BUCKINGHAM INVESTMENTS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of October, 2006, I served the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Revise Scheduling Order to counsel listed below via electronic means.

Dennis M. Donohue, Esq.
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 26
Ben Franklin Station
Washington DC 20044

***Attorneys for the United States of America***

s/Joel N. Crouch
Joel N. Crouch