IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

**OPPOSITION TO PLAINTIFF'S MOTION CHALLENGING THE SUFFICIENCY OF DEFENDANT'S RESPONSES TO THE FIRST SET OF REQUESTS FOR ADMISSIONS**

Respectfully submitted,

Dennis M. Donohue
Senior Litigation Counsel
U.S. Department of Justice
Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492 Telephone
(202) 307-2504 Facsimile
Dennis.Donohue@USDOJ.gov

ATTORNEY FOR DEFENDANT
UNITED STATES OF AMERICA

# TABLE OF CONTENTS


ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PLAINTIFF'S MOTION IS UTTERLY WITHOUT MERIT . . . . . . . . . . . . . . . . . . . . . 2

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The COBRA Tax Product . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. The Documents In Question Are Rife With Suspicion . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. Plaintiff Has Misstated The Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V. The Cases Which Plaintiff Cites Are Inapposite . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI. There Is No Legal Jurisdiction For The Relief Requested By Plaintiff . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Exhibit A–December 14, 1999, letter from J&G to Jerry Zucker . . . . . . . . . . . . . . App. 1

Exhibit B–November 26, 1999, fax from J&G to Jerry Zucker . . . . . . . . . . . . . . . App. 2

Exhibit C–November 26, 1999, fax from J&G to James Boyd . . . . . . . . . . . . . . . . App. 9

Exhibit D–November 30, 1999, cover letter sending Zucker and Boyd's returning J&G's documents as executed to J&G . . . . . . . . . . . . . . . . . . . . . . . . . . App. 16

Exhibit E–Executed documents dated November 24, 1999, faxed to Deutsche Bank by J&G on December 7, 1999. . . . . . . . . . . . . . . . . . . . . . . . . . . App. 17

Exhibit F–Deposition of Jeanette Michaels, pages 70-75. . . . . . . . . . . . . . . . . . . . App. 19

Exhibit G–Deposition of Jeanette Michaels, page 103 . . . . . . . . . . . . . . . . . . . . . App. 25

Exhibit H--Deutsche Bank Termination Agreement bearing purported signature of Perry Parker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 26

Exhibit I–Deutsche Bank Confirmation bearing purported signature of Perry Parker in different hand than that in Exhibit H . . . . . . . . . . . . . . . . . . . App. 28

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

E.E.O.C. v. E.J. Sacco,
102 F. Supp. 2d 413 (E.D.Mich. 2000) ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Foretich v. Chung, et al.,
151 F.R.D. 3, 5 (D.D.C. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Francis v. Bryant,
2006 WL 947771 (E.D.Cal. April 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

.Francis v. Bryant,
2006 WL 1627917 (E.D.Cal. June 7, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Henry v. Champlain Enterprises, Inc.,
212 F.R.D. 73, 77 (N.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 17

IBP, Inc. v. Mercantile Bank of Topeka, Inc.,
179 F.R.D. 316 (D.Kansas 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.,
174 F.R.D. 38 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

Uniden America Corp. v. Ericsson,
181 F.R.D. 302 (M.D.N.C. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13, 20, 21

United States of America v. J.M. Taylor,
166 F.R.D. 356, 364 (M.D.N.C. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Universal Life Church, Inc. v. United States,
14 Cl. Ct. 343 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

## RULES OF THE COURT OF FEDERAL CLAIMS

RCFC 36(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 17, 19
RCFC 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17, 18, 19, 22
RCFC 37(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17
RCFC 36(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**FEDERAL RULES OF CIVIL PROCEDURE**

FRCP 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11,13,15, 16, 18, 20, 21, 22
FRCP 36(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18
FRCP 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
FRCP 37(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

**OPPOSITION TO PLAINTIFF'S MOTION CHALLENGING THE SUFFICIENCY OF DEFENDANT'S RESPONSES TO THE FIRST SET OF REQUESTS FOR ADMISSIONS**

The United States, by its undersigned counsel, hereby opposes Plaintiff's Motion to Challenge the Sufficiency of Defendant's Responses to its First Set of Requests for Admissions. Plaintiff's motion and request for relief is utterly without foundation both factually and legally. Plaintiff argues that this case involves "complex nuances of federal tax law," P. Brief at 1, and that the documents in question are simply the "fundamental transaction documents" relating to this "nuanced tax controversy." P. Brief at 2. Nothing could be further from the truth. This case is anything but a routine tax dispute. Rather it involves a highly-abusive generic tax shelter product called COBRA which was designed, developed and marketed by a group of nationwide accounting and law firms. These firms then worked closely in concert to implement the series of preplanned tax-driven transactions underlying COBRA, and to conceal the unlawful tax benefits derived from these transactions from the Internal Revenue Service. The documents in question were prepared by this group of promoters who are now, as we have previously informed the Court, under criminal investigation for their role in this abusive tax shelter enterprise. Given

these circumstances, and in strict compliance with RCFC 36(a), we responded to the plaintiff's requests to admit that we cannot now admit or deny the authenticity of the documents in question. These responses are both factually and legally proper. For the reasons set forth below, the United States respectfully requests that the Court deny plaintiff's motion and to award us our costs in defending this frivolous motion.

## ARGUMENT

## PLAINTIFF'S MOTION IS UTTERLY WITHOUT MERIT

### I. Introduction

Rule 36(a) of the RCFC directs a party upon whom a request has been served to serve upon the requesting party "a written answer or objection addressed to the matter. . . . If objection is made, the reasons therefore shall be stated." The Rule goes on to state that "[a]n answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny." The Advisory Committee Note to the 1970 amendments states that "Rule 36 requires only that the party state that he has taken these steps. The sanction for failure of a party to inform himself before he answers lies in the award of costs after trial, as provided in Rule 37(c)."[1]

In our responses to plaintiff's requests, the United States either denied the request or expressly responded that it has taken the necessary steps required by the rule and Advisory Committee Notes but could not either admit or deny the request. Specifically, the United States

[1]As plaintiff concedes, general federal law interpreting this provision can be persuasive. P. Brief at 4, n.1.

responded that it had not as yet taken the depositions of the persons who can establish whether the documents in question were authentic, and also pointed out that despite having made reasonably inquiry, the information known or reasonably available to us is insufficient for us to admit or deny the authenticity of the documents. The United States further explained its reasons for these responses in its letter to plaintiff's counsel dated September 11, 2006. Appendix to Plaintiff's Motion, tab 4. Indeed, in that letter, the United States pointed out that based on the investigation that we have conducted thus far, we have concluded that these documents do not appear to be authentic. Appendix to Plaintiff's Motion, tab 4, Ltr. at 2.

## II. The COBRA Tax Product

As discussed in earlier papers filed in this case, in the fall of 1999, the accounting firm of Ernst & Young, LLP ("E&Y") promoted a tax product known as COBRA, an acronym for "Currency Options Bring Reward Alternatives," which appears to have been co-developed by E&Y, the Deutsche Bank AG ("DB"), and three law firms, Jenkens & Gilchrist ("J&G"), Brown & Wood ("B&W") and Scheef & Stone ("S&S"). The COBRA product involved a highly complex pre-arranged multi-step transaction requiring the formation of a number of differing entities, including LLCs for the individual participants, a partnership, and also a Subchapter "S" corporation.

The tax strategy required the implementation of a whole series of steps in a precise order of sequence in a time period of little more than 30 days. J&G allegedly first formed single member limited liability companies (LLCs) for the taxpayers, which LLCs then allegedly acquired through DB purported offsetting European-style digital options with a 30-day term. The taxpayers – through their single member LLCs, which are disregarded for tax purposes – then

allegedly transferred the purported offsetting options to a purported partnership. To achieve their desired tax benefits, the taxpayers claimed that their tax basis in the alleged partnership was solely based on the nominal premium of the purchased option without reduction for the nominal premium received for the sold option. This had the effect of artificially hyper-inflating the basis of purported partners' interest in their alleged partnership.

On the next step of the transaction, the options expired or were terminated, sometimes with a partial payment on the options, but never enough to cover the taxpayers' transaction costs. Then the taxpayers allegedly transferred their purported partnership interests to a newly-formed Subchapter S Corporation with their stock interests therein apparently being in the same proportion as their interests in the purported partnership. This caused a technical termination of the purported partnership for tax purposes.

Allegedly simultaneous with the transfer of their purported partnership interests to the Subchapter S corporation, the taxpayers would cause the partnership to be liquidated. The purported partnership's cash and assets – consisting of foreign currency if an ordinary loss was desired and stock or bonds if a capital loss was desired – would then be distributed to the Subchapter S corporation. The taxpayers took the position that their basis in the capital and/or ordinary assets distributed to the Subchapter S corporation was equal to the inflated basis of their former partnership interests. These assets were then sold to generate a massive noneconomic tax loss. To complete the tax strategy, this artificially-generated tax loss was reported on the returns of the entities and the individual returns of the taxpayer-participants in a manner so as to conceal its origin and source as well as to conceal the huge transaction-related costs. Significantly, except for the reporting of the illegal tax benefits, this transaction had to take place within a very highly-

choreographed sequence of steps – all occurring within a period of little over 30 days, with the last step of selling the assets with the inflated bases being completed before the close of the 1999 tax year.

This tax strategy was thus designed to generate an artificially inflated basis in a very short time period which was then used to generate noneconomic tax losses, which losses would offset, and thereby eliminate, otherwise taxable income.[2] The principal architects of the COBRA tax product appear to have been J&G, DB, S&S, and E&Y. E&Y appears to have generally limited the marketing of COBRA only to very wealthy taxpayers who recently had realized a large ordinary or capital gain (over $50 million). Apart from being a co-developer of the product, DB also served as the financial counter party to what we believe the evidence will show were – to the extent they even existed – nothing more than private wagering contracts.

For its part, J&G also appears to have participated extensively in the development and implementation of the product as well as to have prepared and issued a boilerplate legal opinion for the COBRA taxpayers blessing the tax benefits of the transaction. Specifically, J&G appears to have been involved in the formation of the various entities, the preparation of the various required underlying legal documentation, and also appears to have acted as a liaison with the participants and DB in setting up the various entity bank accounts and arranging for and coordinating the precise sequence of payments and distributions that the tax strategy required.

For its part, E&Y appears to have prepared and/or coordinated the preparation of the

[2] In Notices 99-59, 1999-52, I.R.B. 761 and 2000-44, 2000-36 I.R.B 255, the IRS determined that transactions similar to COBRA which are designed to generate tax losses through artificially high bases were potentially abusive tax shelters and therefore qualified as "listed transactions" for purposes of Section 6111 and the regulations promulgated thereunder.

various returns reporting the COBRA tax consequences, as well as assisted in the design and marketing of the product – *i.e.*, the taxpayers were its clients. Particularly significant, E&Y appears to have deliberately prepared or coordinated the preparation of the various entity and individual returns to conceal the origin and source of the artificially-generated tax losses and the huge transaction costs.

As we previously informed the Court, the promoters of the COBRA product are under criminal investigation for their role in developing, marketing and implementing this fraudulent tax shelter product. Nevertheless, and even before the first depositions by the United States were taken, plaintiff served its extensive requests to admit, seeking to have us admit to the authenticity of the various so-called "fundamental transaction documents." Our refusal to do so was based, not only on the fact that the Government is under no obligation to admit to the authenticity of documents not its own, but also on our extensive document discovery which has shown that these documents are highly dubious in numerous respects.

**III The Documents in Question are Rife with Suspicion**

Based on our discovery thus far, we believe that documents of the type in question were prepared by J&G, who would then send packets of these materials to the taxpayer-clients at various points in the marketing and implementing process. In particular, it appears that all COBRA participants, including Zucker and Boyd, were directed not to fill in *any dates*, as well any other blanks, when signing the implementation documents:

> Please do not fill in any blanks which appear in these documents at this time (i.e. dates). We will be providing you in January 2000, with copies of all of your transaction documents for your records.

*See e.g.*, letter to Zucker dated December 14, 1999 marked as Exhibit A. [**JG-CL0147800**].

Given that the illegal tax benefits of the offsetting option tax strategy were in the first instance critically dependent upon the steps of the transaction being implemented in a very precise order, this general instruction alone would cause us to question the authenticity of such documents.

Indeed, it appears our suspicions are well founded. For example, some of the documents in question are dated November 24, 1999. They were not, however, faxed from J&G until November 26, 1999. Specifically, Zucker and Boyd received authorization forms from J&G which were **pre-dated** **–** and which were coincidentally dated November 24, 1999. S*ee* J&G facsimile to Zucker dated November 26, 1999, Exhibit B [**JG-CL0147876 through JG-CL0147882**]; J&G facsimile to Boyd dated November 26, 1999, Exhibit C **[JG-CL0147892 through JG-CL0147898]**; and letter dated November 30, 1999, returning executed documents to J&G, Exhibit D **[JG-CL0147874],** all of which the Government has received through discovery from J&G. That is, the pre-dated forms were **back dated** since they were not even faxed from JG until after the date on the document, which is shown by the fact that they bear the fax date of November 26, 1999.

This is all the more suspicious because it appears that some of these documents, see *e.g.*, Exhibit E, which the United States received through discovery from DB, were then not faxed by J&G to DB until weeks later. *See* Exhibit E **[DB COBRA 00307 and DB COBRA 00308]** which bears a J&G fax stamp dated December 7, 2006. This indicates that critical information in these documents may not have been inserted until weeks later. That is, that the transaction may not have become finalized until weeks after the date on the document. Obviously, the promoters were acutely aware that the timing of the steps of the transaction within a very short time period was critical to their clients' claimed tax benefits. That appears to be the reason that they did not

tempt fate and made sure that some of the documents were pre-dated to coincide with the meticulously pre-arranged steps of the transaction.

Moreover, to the extent that the United States has since our receipt of the requests deposed witnesses with any familiarity with the documents in question, such testimony has failed to establish their authenticity. For example, the United States has questioned the signature of Perry Parker, apparently a director at DB, on the documents referenced in almost half of plaintiff's requests which it now seeks to have deemed admitted, specifically Requests Nos. 62, 65, 71, 79, 82, 88, 97, 100, and 106. We believe there is strong evidence to indicate that more than one person may have signed that name.

Nonetheless, plaintiff is highly critical of our refusal to admit to the authenticity of these documents allegedly signed by Perry Parker. P. Brief at 9-10. Plaintiff cites the United States' deposition of Jeanette Michaels, an Assistant Vice-President at DB who identified her signature on some of the documents allegedly signed by Perry Parker. Apart from the fact that plaintiff misquotes the deposition regarding Ms. Michael identifying her signature,[3] Jeanette Michaels did not co-sign the documents referenced in Requests Nos. 65, 82 and 88, or 100 and 106.

Even more importantly, even with regards to the documents that Jeanette Michaels co-signed, the authenticity of these documents is clearly dependent upon the signature of Perry Parker. As a director, Perry Parker far outranked Ms. Michaels. *See* Michaels Dep. at 73, 103, Exhibits F and G. The only reason that Ms. Michaels signed these documents is that someone

[3] Plaintiff quotes Jeanette Michaels identifying her signature on some of the documents, citing to this quotation, twice, as Michaels Dep. 117:10-15. In fact, the exchange to which plaintiff cites is at Michaels Dep. 118:10-15. Moreover, Requests Nos. 82 and 88 reference the same document. The same is true of Requests Nos.100 and 106.

whom she does not recall asked her to do so. She did not review the documents and did not know their contents. *Id.* at 72-73, Exhibit F. Perry Parker's signature was clearly crucial but, as can be seen in Exhibit H and Exhibit I, one need have no expertise in handwriting to discern that two different individuals signed Perry Parker's name. This becomes even more problematic because, despite the fact that Jeanette Michaels signed both these documents, she could not identify which, if any, of these two signatures was in fact Perry Parker's. *Id.* at 70-71. Therefore, the authenticity of these documents on their face appear highly questionable.

Understandably, plaintiff would like to characterize this highly-egregious abusive tax shelter case as a routine tax controversy. It asserts that we have engaged in wide-ranging document discovery and claims that we should therefore have more than enough information to authenticate what its refers to as the "fundamental transaction documents." P. Brief at 2-3. To the contrary, as shown above, our document discovery has led us to strongly question the authenticity of these core documents. In short, the United States believes that some, or perhaps many, of the documents in question may have been backdated to give the appearance that events occurred before they in fact did occur, if they occurred at all. That is, the COBRA transaction here may well have been a sham in fact, *i.e.*, that it either did not occur at all or did not occur in the manner that plaintiff and the COBRA promoters say that it did

However, as next discussed, even if we had not conducted any discovery relating to the documents in question and thus had no basis at this point to question their authenticity, our responses would nonetheless still be perfectly proper. This is because the applicable law does not require a party to admit to the authenticity of documents which were prepared by persons whose interests are not parallel with, and *a fortiori* adverse to, that party.

**IV. Plaintiff has Misstated the Law.**

Unlike the documents in the cases which plaintiff cites, the documents whose authenticity plaintiff would have the Government admit are not documents prepared by the United States or by parties with aligned interests. Rather, they are documents prepared by third-party promoters of the COBRA tax shelter with interests wholly diverse from those of the United States.

Plaintiff's motion is similar to that discussed in *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38 (S.D.N.Y. 1997). In that case, the moving party argued that the requested party's responses that it could not admit or deny various actions taken by a third party bank were inappropriate because the requests were supported by uncontroverted pre-trial evidence and deposition testimony. The Court found that the requested party's responses were appropriate, and that Rule 36 did not even require that the requested party issue subpoenas to the bank to investigate the facts underlying the requests because "[g]enerally, a 'reasonable inquiry' is limited to review and inquiry of those persons and documents that are within the responding party's control." *Id.* at 43. The Court stated that "[a]lthough, under certain circumstances, parties may be required to inquire of third parties in order to properly respond to requests to admit, . . . such a requirement is far from absolute." *Id.*

The Court acknowledged the case law holding that a party may be required to make inquiry of other persons in order to respond to Rule 36 requests, but noted that those were instances in which the requested party had parallel interests with the third party, such as when the third party was a co-defendant or, if a non-party, had interests which coincided with those of the requested party. *Id.* That, however, was not in the case in *T. Rowe Price* and *a fortiori* is not the case in this matter, especially in light of the ongoing criminal investigation. Therefore, the Court

held that “it was appropriate to respond that it had made reasonable inquiry and it was unable to admit or deny the requests.” *Id.* at 44.

Plaintiff appears to argue that the United States should be required to authenticate the documents because it is in possession of copies thereof. This is ludicrous. If possession of copies of documents, regardless of their source, was all that was needed to authenticate, then no party would have any choice but to admit to authenticity in any case because Rule 36 itself requires that “[c]opies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying.” The requested party, however, is not under any obligation to even investigate a document’s authenticity if the original was not sent to or did not originate from the requested party, or perhaps a closely related party or one with parallel interests. For example, one court held that, if the documents on their face appeared to originate from the requested party or a subsidiary thereof, it was not proper to deny knowledge of the documents’ authenticity unless the party stated that it had searched its files and had failed to find them therein. Therefore, the court requested the party to serve amended answers. *United States of America v. J.M. Taylor*, 166 F.R.D. 356, 364 (M.D.N.C. 1996). The documents in question in this matter, however, were neither prepared by the United States nor by any party with parallel interests thereto.

Perhaps the most expansive interpretation of a party’s obligation to investigate documents not emanating from the requested party is found in *Uniden America Corp. v. Ericsson*, 181 F.R.D. 302 (M.D.N.C. 1998). That court stated that, while it was generally the case that the authentication of documents did not require investigation of third-parties, “a party must make inquiry of a third party when there is some identity of interest manifested. . . .” *Id.* at 304. There

is no identity of interest between the creators of the documents in question and the United States.

In sum, the rule is that, if the documents in question appear to emanate from the requested party, such party will have to examine its own files. A requested party may be required to inquire of a co-party to the litigation if such party has parallel interests to the requested party. See *Uniden America Corp.*, 181 F.R.D. at 304. Moreover, in certain cases, "[t]he inquiry may require venturing beyond the parties to the litigation and include, **under certain limited circumstances**, non-parties, but surely not strangers." *Champlain Enterprises,* 212 F.R.D. at 78 (emphasis added). For example, the requested party may have to make "an investigation and inquiry of employees, agents, and others, 'who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.'" *Champlain Enterprises*, 212 F.R.D. at 78 (quoting *T. Rowe Price*, 174 F.R.D. at 43-44). This is not the case, however, when such person has an adverse interest. *See Uniden America Corp.*, 181 F.R.D. at 304.

It is clear that "Requests for Admission are not a discovery device ...like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them." *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003). Put another way, plaintiff may not affirmatively use Rule 36 to direct the course and nature of the discovery of the United States. This is especially true here because, as stated above, the requested party is not even required to investigate third parties or parties with interests adverse to those of the United States to respond to Rule 36 requests. Nevertheless, to the extent that the United States is able in the future to depose the individuals who created and signed the documents in question, it will do

so.[4] The United States has not yet, however, deposed such necessary witnesses and it is simply impossible for the Government to admit or deny the requests prior to such depositions.

**V. The Cases Which Plaintiff Cites are Inapposite.**

The cases cited by plaintiff are inapposite. Plaintiff relies on *E.E.O.C. v. E.J. Sacco*, 102 F. Supp. 2d 413 (E.D.Mich. 2000), P. Brief at 4, a case in which the Court found the stated reasons for the EEOC's alleged inability to admit or deny the defendant's Rule 36 requests inadequate and awarded Rule 37 monetary sanctions. Just what the Rule 36 requests were is not clear from the opinion. What is clear, however, is that the requests came after discovery was concluded and after persons with information as to the requests had been examined. *Id.* at 415. In this case, the United States has not yet examined a sufficient number of those with knowledge of the documents in question. Moreover, it is clear that the court found the actions of the EEOC to be horrendous. The court stated that the case was "a groundless prosecution based on demonstrably false claims made by a powerful government agency. Wholly illusory racial discrimination charges were filed by the [EEOC] against a small business . . . in the wake of an attempted embezzlement of store proceeds. . . ." *Id.* at 414. The court explained that the facts of the case were uncomplicated and uncontroverted, but that the EEOC, with no evidence, filed a complaint against the business, falsely claiming that it had accused two African-American employees of theft, and had then fired one of the employees, when in fact the employee had elected not to return to work and there had been no accusations. *Id.* at 418. In sum, *E.E.O.C.* is inapposite to the case at bar, in which the United States has not brought any complaint against

[4]Given the ongoing criminal investigation, however, some of these depositions may not take place. Or, equally possible, some of the deponents may assert their Fifth Amendment right not to testify.

anyone, false or otherwise, and has not behaved in any manner remotely similar to that of the agency in *E.E.O.C.*

Plaintiff relies on *Universal Life Church, Inc. v. United States*, 14 Cl. Ct. 343 (1988), P.Brief at 10, for the proposition that it is improper for a requested party to respond vaguely and evasively. First, the United States has responded explicitly. Moreover, the case is wholly inapposite. The substantive issue in the case was whether the Internal Revenue Service erred in determining that the Universal Life Church could not continue as a tax-exempt organization because it was operated for the substantial purpose of disseminating tax-related information. To support the IRS's determination, the United States requested the Church to admit that it failed to exercise control over the bank accounts of its chartered congregations. The Church denied the request, and also denied a request that it admit that it sent letters to the IRS disputing the disallowance of tax-exempt status without investigating whether Church activities justified the IRS's disallowance.

The United States then sent interrogatories requesting that the Church disclose the information on which it based its denials. The Church's responses to the interrogatories were inadequate, and the United States moved to compel, which the court granted. The Church's interrogatory responses remained inadequate and the Church failed to produce any evidence to support its Rule 36 denials during the summary judgment phase. After the Court granted summary judgment to the United States, the Government moved for sanctions under Rule 37(c), which the Court granted.

*Universal Life Church* has no relation to this case. The United States in the case a bar is not denying allegations about its own conduct and then failing to support such denials. Rather,

the United States is stating that it is not now in a position to admit or deny the authenticity of documents relating to the activities of other parties with whom the Government has no common interest.

Surprisingly, plaintiff relies on *Francis v. Bryant*, 2006 WL 947771 (E.D.Cal. April 12, 2006), P. Brief at 6, for its very brief holding that granted the motion of a plaintiff, an incarcerated person proceeding *pro se* and *in forma pauperis*. The *pro se* litigant moved under Rule 36 for an order that the defendants, a retired California Department of Corrections ("CDC") official and a current CDC official, be required to admit or deny the authenticity of documents in the CDC file. Defendants had claimed that they did not have possession, custody or control of the documents and could not admit or deny authenticity. As discussed below, this case stands for the proposition that, under Rule 36(a), if the court determines that an objection based upon the inability to admit or deny is found to be unjustified, the first step is for the court to compel an answer, not to have the matter deemed admitted.

More importantly, plaintiff here neglects to point out that the Court, on reconsideration, reversed itself and denied the motion to compel an answer. *Francis v. Bryant*, 2006 WL 1627917 (E.D.Cal. June 7, 2006). It did so because the documents were in the possession, custody and control of the CDC and not the defendants. Defendants did have the ability to procure the documents and did procure some other documents from the CDC, but did not request all of them and refused to admit to the authenticity of such documents that the defendants did not request. The court recognized that it therefore had erred in its initial decision because the defendants were not "'legally obligated' to obtain the requested documents to . . . authenticate them. . . ." *Id.* at 2.

In sum, the case law cited by plaintiff teaches that even parties who have some affiliation

with a non-party still have no legal obligation to take steps to authenticate the non-party's documents. Thus, this case law is not even remotely applicable here since the United States not only has no common interest with the preparers of the documents but, in fact, has interests which are totally adverse to such persons. What is more, the United States is highly suspect that the documents in question are not what they purport to be.

## VI. There is No Legal Justification for the Relief Requested by Plaintiff.

Finally, plaintiff not only misstates the law and relies upon inapposite case law, but also requests relief that is totally at variance with RCFC 36(a). Specifically, plaintiff asks that its requests here be deemed admitted. It is true that RCFC 36(a) specifies that the Court may order amended responses and, ultimately, if even the amended responses do not comply with Rule 36(a), that a matter be deemed admitted. However, RCFC 36(a) is equally clear that such relief is available only if the answers do not on their face comply with the Rule.

As explained above, the Government's responses comply with the requirements of Rule 36(a). In strict compliance with the Rule, our responses not only state that we cannot now admit or deny the authenticity of the documents in question, but also that we have made reasonable inquiry of the information known or reasonable available and also detail the specific reason why we are unable to admit or deny the authenticity of these documents. These are not United States documents. Rather, they are documents from third-parties with no parallel interests to those of the United States – and, in fact, have interests totally contrary to those of the United States in this litigation. Thus, our responses are in exact conformity with RCFC 36(a).

Even if the Government's statements were not legally sufficient, however, there is no legal basis for the relief requested by plaintiff. Plaintiff has asked that the Court deem these

requests admitted in the first instance. There is no legal justification for such relief. According to RCFC 36(a), once the requesting party has moved, "[u]nless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served." It is clear, therefore, that if a response fails to comport with RCFC 36(a), the initial relief is to order the requested party to serve an amended response. This is true even if the requested party has shown a complete lack of good faith. For example, in *Champlain Enterprises*, the court found the requested party's responses:

> [N]on-responsive, evasive, convoluted and an effrontery to the dictates of Rule 36. A trial judge would be driven to distraction attempting to parse the viability and value of such responses. This Court wonders if the Defendants intended to waste everyone's time trying to decipher what is meant by the responses. Clever, obtuse responses like these are abusive and could very well lead to sanctions or costs under Rules 36(b) and 37(c).

212 F.R.D. at 81. Nevertheless, the court ordered that the defendants serve amended responses; it did not deem the requests admitted. *Id.* at 82.

Plaintiff did not cite a single case in which the court ordered that requests be deemed admitted. Rule 36(a) does not contemplate that relief in the first instance. Such relief is very rare and would be entirely inappropriate even assuming, *arguendo*, the United States' responses did not comport with RCFC 36(a). In the case of *IBP, Inc. v. Mercantile Bank of Topeka, Inc.*, 179 F.R.D. 316 (D.Kansas 1998), a defendant served Rule 36 requests on the plaintiff, requesting that IBP admit that it did not perform certain actions. Notwithstanding that defendant was asking about IBP's own actions and not those of some other party, IBP claimed that after reasonable inquiry it could not admit or deny. The defendant argued that IBP should have sufficient

information to admit or deny and that IBP's statement that it could not contradicted other admissions made by IBP. The court agreed that IBP's responses were insufficient because they did not technically comport with the rule, *i.e.*, IBP did not state why it could not answer the requests and, moreover, IBP did not specifically state the "the information known or readily obtainable by plaintiff is insufficient to enable it to admit or deny the requests." *Id.* at 318. The court held that IBP need only amend its responses, but refused to compel IBP to admit or deny. *Id.* at 319. The court went on to state:

> [T]he court does not adopt the position urged by defendant that plaintiff must necessarily admit or deny any of these three requests. Defendant has cited no law to suggest a party has a duty to admit or deny a fact merely because it seems logical to do so or because other responses appear inconsistent. Defendant in essence argues with the response much as an attorney on cross-examination sometimes tries to argue with a witness. Discovery often produces all kinds of inconsistencies, whether in sworn testimony, admissions and denials of parties, documents, or otherwise. In the course of discovery the court can compel a party to respond, consistent with the Federal Rules of Civil Procedure. Under the guise of a discovery ruling, however, it generally does not propose to shape the substance of the response. At trial defendant and the other parties will have the opportunity to argue how the evidence, with all its inconsistencies, supports their respective positions. In ruling upon this motion, therefore, the court compels plaintiff to serve supplemental responses, whether they be denials, admissions, or detailed explanations for neither denying or admitting.

*Id.*

As explained above, the United States has fully complied with RCFC 36(a). Plaintiff does not specifically deny this. Rather, plaintiff contends that the Government's claim that it cannot at this stage admit or deny the authenticity of the documents in question is factually incorrect under the circumstances. As the United States has explained, this is patently untrue. Even if, *arguendo,* plaintiff were correct, deeming the requests as admitted would be improper. Plaintiff is essentially asking the Court to make a factual determination that the United States has sufficient

information to admit to the authenticity of the documents in question. As one court stated in a case in which the requesting parties moved to have responses deemed admitted:

> The [requesting parties] are incorrect in their assumption that the right to challenge the "sufficiency" of a response is the equivalent of the right to challenge the veracity of a denial. According to Wright and Miller, a response may be considered insufficient where it "is not 'specific' or . . . the explanation for failure to admit or deny is not 'in detail' as the rule requires." *Id.* at section 2263. Where a response is "insufficient" in this matter, the rule authorizes the Court to either treat the matter as admitted (essentially treating the insufficient answer as nonresponsive) or order that "an amended answer be served." . . . According to the advisory committee notes to Rule 36, the purpose of allowing motions to challenge the sufficiency of responses is to clarify how an ambiguous response will be treated so that each party is aware, as the litigation progresses, whether or not a particular issue has been admitted or is still in dispute.

*Foretich v. Chung, et al.*, 151 F.R.D. 3, 5 (D.D.C. 1993).

As explained above, there is absolutely nothing ambiguous about the Government's responses. Even if, *arguendo*, the United States already knew, or were in a position to ascertain with the material that it already has, whether the documents in question are authentic, then the proper relief would lie in Rule 37(c):

> Rule 37(c) of the Federal Rules provides additional support for the conclusion that [Plaintiff is] seeking improper relief through this motion. Rule 37(c) provides that a party who refuses to admit a certain matter in response to a Rule 36 request can, under certain circumstances, be held liable for expenses incurred by the opposing party in proving that particular matter at trial.

*Foretich*, 151 F.R.D. at 5.

Plaintiff has not cited to a single case in which a court actually ordered a request deemed admitted. In the cases plaintiff cites, the courts either ordered an amended response or awarded monetary sanctions under Rule 37(c). There is nothing nonresponsive about the Government's

responses. Plaintiff simply contends that, as a factual matter, the Government already has sufficient information to admit to the authenticity of the documents in question. Even if this were true, and it is not, plaintiff is seeking the wrong relief because "[u]nder [plaintiff's] theory the Court could be called upon to decide each and every factual issue presented by a request for admission, adding yet another arrow in the quiver of those who seek to delay litigation." *Foretich*, 151 F.R.D. at 5. Essentially, plaintiff is trying to circumvent its own obligation to authenticate documents it seeks to rely upon by having the Court rule, as a factual matter, that the documents are deemed authentic. Such tactics are a totally improper use of Rule 36.

Although plaintiff did not cite any cases in which the court deemed requests admitted, the United States has. The court in *Uniden America Corp., supra*, did deem one request admitted. In that case the plaintiff requested that the defendant admit to the authenticity of a letter sent by a third party to the plaintiff, and the defendant stated that it could not admit or deny. As previously stated, *Uniden* professes what is probably the most "liberal" of the interpretations of Rule 36. Even in that case, however, the court indicated that under most circumstances, the requested party need not admit to authenticity of documents emanating from other parties. In that particular case, however, the defendant's Executive Vice-President had himself already positively identified both the letterhead and the signature as being authentic. Moreover, the letter's third-party author had been cooperating with the defendant during the litigation and apparently had similar interests. 181 F.R.D. at 304-05. Such is not the case, however, in the matter at bar. The United States has yet to depose the preparers of the documents in question and most certainly does not have parallel interests with them. The United States has already deposed Jeannette Michaels, one of the individuals who signed some of the documents in question. However, as explained above, her

testimony failed to establish that any of the documents were authentic. As such, plaintiff's motion is utterly without merit, both legally and factually.

## CONCLUSION

The United States has unambiguously responded to plaintiff's requests and has satisfied the requirements of RCFC 36. The basis of plaintiff's motion is particularly groundless in this case where plaintiff seeks to have the United States authenticate documents prepared by tax shelter promoters who are under criminal investigation. The Government's responses to requests to admit to the authenticity of documents prepared for and sent by and to non parties who do not have parallel interests with those of the United States are fully in line with the Rule. Should it turn out that the facts are such that the United States' concerns with respect to some or all of the documents here at issue are resolved, we will amend our answers or enter into a stipulation as to the authenticity of these documents. At this juncture in our discovery, however, that is not possible. Plaintiff's motion seeking such relief is utterly without merit and should be denied. Finally, the United States should be awarded its costs for having to defend such a frivolous motion.

Respectfully submitted,

s/ Dennis M. Donohue
DENNIS M. DONOHUE
Attorney of Record

Senior Litigation Counsel
U.S. Department of Justice - Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2006, I electronically filed the foregoing Memorandum with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Owens, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner
David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892