# In the United States Court of Federal Claims

No. 05-231 T

(Filed: April 27, 2007)

| | | |
|---|---|---|
| **JZ BUCKINGHAM INVESTMENTS LLC,** Plaintiff, v. **THE UNITED STATES,** Defendant. | * | Motion challenging sufficiency of responses to requests for admission; RCFC 36(a); deemed admitted; cannot admit or deny; reasonable inquiry; sufficient information; good faith; genuineness of documents; tax partnership; FPAA; non-publicly traded foreign currency options; tax shelter; COBRA |

*Joel N. Crouch*, of Meadows, Owens, Collier, Reed Cousins & Blau, L.L.P., Dallas, TX, for Plaintiff.

*Dennis M. Donahue*, Senior Litigation Counsel, Tax Division, United States Department of Justice, Washington, DC, for Defendant.

---

**OPINION AND ORDER**

---

**DAMICH**, Chief Judge.

Before the Court, in this tax partnership case, is Plaintiff's Motion Challenging the Sufficiency of Defendant's Responses to the First Set of Requests for Admission. In the motion, Plaintiff asks the Court to deem admitted its requests for admission regarding the genuineness of certain transactional documents. For the reasons set forth below, Plaintiff's motion is DENIED.

## I. Background

JZ Buckingham Investments, LLC ("JZ") and JGB Bohicket Investments, LLC ("JGB"), both Delaware limited liability companies, were partners in JBJZ Partners, a South Carolina general partnership, for the tax year ending December 27, 1999. Compl. ¶ 1, 2, 4. JZ is the tax matters partner of JBJZ Partners. *Id*. 3. JBJZ Partners filed its federal tax return with the

Internal Revenue Service ("IRS") for the tax year ending December 27, 1999. *Id*. ¶ 6. On December 9, 2004, the Commissioner of the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") against JBJZ Partners for that tax year. *Id*. ¶ 7.[1] JZ filed this case under 26 U.S.C. § 6226(a) to request redetermination of final partnership administrative adjustments as set forth by the Commissioner in the FPAA. *Id*. ¶ 11.

In its Complaint, JZ alleges as follows: JZ and JGB entered into non-publicly traded foreign currency option positions on the Euro and Yen with Deutsche AG New York Branch, each purchasing a long option and selling a short option. *Id*. ¶ 17-26. On November 24, 1999, JZ and JGB contributed the options to JBJZ Partners, and on December 22, 1999, the option positions terminated in accordance with their terms. *Id*. ¶ 27-28. During December 1999, JBJZ Partners purchased Canadian Dollars as an investment and, on December 22, 1999, forty-five hundred long-term shares and five hundred short-term shares of Cisco Systems, Inc. ("Cisco") were contributed to JBJZ Partners. *Id*. ¶ 29-31. On December 27, 1999, JZ's and JGB's interests in JBJZ Partners were each contributed to JBJZ Investors, Inc. ("JBJZ Investors"), a Delaware corporation. *Id*. ¶ 32-33. JBJZ Partners was dissolved and liquidated, and all the foreign currency and shares were distributed to JBJZ Investors. *Id*. ¶ 34. Finally, on December 28, 1999, JBJZ Investors sold all its investments in the foreign currency and shares. *Id*. ¶ 35.

During fact discovery, Plaintiff served on Defendant its First Set of Requests for Admission. App. to Pl.'s Mot. ("Pl.'s App.") at 1-59. Of relevance to Plaintiff's motion are Requests for Admission Nos. ("RFAs") 4, 20, 39, 42, 44,[2] 51-52, 54-55, 57-58, 60-62, 65, 71, 79, 82, 88, 97, 100, 106, 116-117, 125, and 127.

RFA 4 states:

> Attached is a true and correct copy of the Form SS-4, *Application for Employer Identification Number*, which was filed by JZ Buckingham on November 19, 1999. See document number Z001279.

*Id*. at 7 (emphasis in original).

---

[1] Although the FPAA is dated for tax year 2000, the parties agree that it was intended to apply to tax year 1999. *See* Court order issued September 2, 2005.

[2] Although Plaintiff does not list RFA 44 on the first page of its motion, it appears that Plaintiff intends to refer to the request on page 2 of its brief in support of its motion, where it lists "Stock certificate of JBJZ Investors issued to James Boyd." Plaintiff inadvertently labels the request as RFA 42, yet the Court understands Plaintiff to be referring to RFA 44.

The other requests for admission similarly request that Defendant admit the authenticity of certain documents as follows:[3]

| RFA | Document |
|---|---|
| 20 | Agreement of General Partnership of JBJZ Partners |
| 39 | Bylaws of JBJZ Investors |
| 42 | Stock certificate issued to Jerry Zucker for JBJZ Investors common stock |
| 44 | Stock certificate issued to James Boyd for JBJZ Investors common stock |
| 51 | Account Agreement between JGB and BT Alex.Brown |
| 52 | Non-Corporate Resolution of JGB |
| 54 | Account Agreement between JZ and BT Alex.Brown |
| 55 | Non-Corporate Resolution of JZ |
| 57 | Account Agreement between JBJZ Partners and BT Alex.Brown |
| 58 | Partnership Account Authorization and Indemnity for JBJZ Partners |
| 60 | Account Agreement between JBJZ Investors and BT Alex.Brown |
| 61 | Corporate Account Authorization of JBJZ Investors |
| 62 | Foreign Exchange Digital Option Transaction Agreement between JGB and Deutsche Bank AG (JGB Euro Contract) |
| 65 | Assignment Agreement between JGB, Deutsche Bank AG, and JBJZ Partners (JGB Long Option) |
| 71 | Assignment Agreement between JGB, Deutsche Bank AG, and JBJZ Partners (JGB Short Option) |
| 79 | Foreign Exchange Digital Option Transaction Agreement between JZ and Deutsche Bank AG (JZ Euro Contract) |
| 82 | Assignment Agreement between JZ, Deutsche Bank AG, and JBJZ Partners (JZ Euro Long Option) |
| 88 | Assignment Agreement between JZ, Deutsche Bank AG, and JBJZ Partners (JZ Euro Short Option) |
| 97 | Foreign Exchange Digital Option Transaction Agreement between JZ and Deutsche Bank AG (JZ Yen Contract) |
| 100 | Assignment Agreement between JZ, Deutsche Bank AG, and JBJZ Partners (JZ Yen Long Option) |

[3] Notably, RFAs 82 and 88 refer to the same document number, although the document referenced in RFA 82 is described as the assignment agreement transferring the long option, whereas the document referenced in RFA 88 is described as the assignment agreement transferring the short option. The same is true for RFAs 100 and 106.

| | |
|---|---|
| 106 | Assignment Agreement between JZ, Deutsche Bank AG, and JBJZ Partners (JZ Yen Short Option) |
| 116 | BT Alex.Brown Client Statement (for Acct. No. 222-10153-12) |
| 117 | BT Alex.Brown Client Statement (for Acct. No. 222-10154-11) |
| 125 | BT Alex.Brown Client Statement (for Acct. No. 222-10155-10) |
| 127 | BT Alex.Brown Client Statement (for Acct. No. 222-10156-19) |

*Id*. at 11, 15-21, 23-25, 27-29, 32-34.

In response to the Requests for Admission No. 4, Defendant answered:

> Denies and notes that the attached document does not appear to be signed or dated.

*Id*. at 64. In response to the other requests for admission, Defendant answered:

> Defendant cannot admit or deny this request because it has not yet taken depositions of the persons who prepared and the persons who signed this document and thus cannot yet establish whether this document is authentic; and thus, despite having made reasonable inquiry, the information known or currently available to the Defendant is insufficient for the Defendant to admit or deny this request. See General Objection No. 2.[4]

---

[4] General Objection No. 2 stated:

> Defendant objects to these requests for admissions [sic] because they are served long before defendant has completed its factual discovery and also before it has taken any depositions in this litigation. As a consequence, defendant is unable to determine the authenticity of many, if not most, of the documents referred to in the requests. The normal time to request a defendant to admit to the authenticity of documents which were allegedly created by, or at the alleged request of, the plaintiff or which were in the plaintiff's possession and/or control prior to the litigation is after the defendant has had the full opportunity through discovery to establish the authenticity of the documents. See generally *Caruso v. Coleman Co.*, 1995 U.S. Dist. LEXIS 7934 (E.D. Pa. June 7, 1995). This is especially true when the requesting party has not indicated what documents it intends to introduce at trial. *In re Gulf Oil/Cities Serv. Tender Offer Lit., et al.*

*Id*. at 68, 74-76, 78-83, 85-86, 88-89, 92, 95-96, 99, 102-103, and 106-07.[5]

On August 25, 2006, Plaintiff sent a letter to Defendant challenging Defendant's objections to the requests for admission. *Id*. at 147-48. In response, Defendant reiterated and attempted to clarify its position in a letter dated September 11, 2006. *Id*. at 149-52. Specifically, Defendant explained:

> Many of the documents to which you refer in your letter appear to be selected portions of a large faxed document. The United States is not required to admit to the authenticity of documents taken out of a complete document. *See Caruso v. The Coleman Co.*, 1995 U.S. Dist. LEXIS 7934 at 24 (E.D. Penn. June 7, 1995).
>
> The documents referred to in Request 51 and 52 are undated under the signature line.
>
> The document referred to in Request 54 bears a handwritten date of November 18, 1999, but was not stamped until December 15, 1999, and something appears scratched out in the Social Security line, as is also the case with the documents referred to in Request 57 and Request 60.
>
> The document referred to in Request 55 bears two different dates.
>
> The document referred to in Request 58 is dated November 18, 1999, but is not stamped until December 15, 1999.
>
> The documents referred to in Requests 62, 79, and 97 appear to be signed by Perry Parker of Deutsche Bank. But at the deposition of Jeannette Michaels, who worked closely with Mr. Parker, she was unable to identify the signature as his.
>
> The document [sic] referred to in Requests 65, 82 and 88 also appear to have Perry Parker's name on one of the signature lines, but in

---

> *v. Chevron U.S.A. Inc.*, 1990 U.S. Dist. LEXIS 8649 (S.D.N.Y. July 16, 1990).

Pl.'s App. at 60-61.

[5] Defendant's Answer to RFAs 42 and 44 differed from Defendant's Answers to the other requests for admission only in that Defendant substituted "Zucker and Boyd" for "the persons who prepared and the persons who signed this document." *Id*. at 75-76.

> handwriting very different from that on the document [sic] in Requests 62, 79 and 97.
>
> The client statements referred to in Requests 116 and 117 do not appear complete. Moreover, the United States does not believe that these are documents kept in the regular course of business of BT Alex Brown.

*Id*. at 150-51. Plaintiff's Motion Challenging the Sufficiency of Defendant's Responses to the First Set of Requests for Admission followed.

## II. Analysis

### A. Plaintiff's Arguments

Plaintiff asserts that RCFC 36(a) allows a party to request admission regarding the authenticity of documents and that certain requests in its First Set of Requests for Admission asked Defendant to admit to the authenticity of transactional documents.[6] Plaintiff argues that these documents are fundamental transaction documents about which there should be no disagreement regarding their authenticity. Plaintiff avers that Defendant failed in its duty of good faith by its inaccurate portrayal of the law and misrepresentation of the facts in its September 11, 2006, letter to Plaintiff. Plaintiff further avers that Defendant failed to exercise good faith in its responses to the requests for admission, both by making baseless objections and by not responding to the requests.

First and foremost, Plaintiff contends that Defendant has made inaccurate and misleading allegations questioning the authenticity of the documents.[7] According to Plaintiff, Defendant's attempt to poke holes in the documents due to technical failures or inconsistencies is disingenuous. Plaintiff argues that any differences in dates on the documents were due to differences between when a party received a document or filed it with its own records and that the use of fax machines to transmit documents does not render the documents invalid. Further, Plaintiff avers that scrivener's errors are a normal occurrence in the work environment and for Defendant to focus on scratched-out text is ludicrous. Plaintiff contends that although Defendant questions the signature of Perry Parker on several documents, Defendant ignores the testimony of Jeanette Michaels, who identified her own signature on the documents referenced in RFAs 62,

---

[6] Specifically, Plaintiff refers to RFAs 4, 20, 39, 42, 44, 51-52, 54-55, 57-58, 60-62, 65, 71, 79, 82, 88, 97, 100, 106, 116-117, 125, and 127 of its First Set of Requests for Admission.

[7] Here, Plaintiff apparently refers not to Defendant's responses to the requests for admission, but rather to the statements made by Defendant in its September 11, 2006, letter to Plaintiff. *See* Pl.'s App. at 149-52.

71, 79, and 97.[8] Moreover, Plaintiff contends that the documents considered to be suspicious by Defendant, i.e., the authorization forms, the facsimile, and the documents included with the facsimile, are not the ones at issue in the requests for admission.

Plaintiff contends that Defendant has failed to exercise good faith by not admitting the authenticity of the documents even though Defendant has had more than enough time to authenticate these basic transactional documents. According to Plaintiff, the transactions at issue in this case were disclosed to the Internal Revenue Service ("IRS") over four years ago and all documentation was provided by Plaintiff to the IRS during its examination. Plaintiff asserts that Defendant has a continuing duty to update its discovery responses to the extent that additional information has become available to Defendant since its original responses. By having the documents for so long and failing to admit to their authenticity, Plaintiff avers that Defendant has not complied with its duty of good faith.

Plaintiff also argues that Defendant has failed in its duty of good faith because it has engaged in fact discovery for over a year. According to Plaintiff, Defendant has received numerous sources, documents, witness interviews, deposition transcripts, and written discovery, which should be more than enough to allow Defendant to authenticate these transactional documents. In addition, Defendant has actively engaged in depositions, internal investigations, document subpoenas, and written discovery. In fact, Plaintiff contends that Defendant took the depositions of six Deutsche Bank employees and asked questions regarding the very documents at issue in this motion. Plaintiff argues that the court in *Francis v. Bryant*, No. CV F 04 5077 REC SMS P, 2006 WL 947771 (E.D. Cal. April 12, 2006), found that because the party was able to set forth specific facts about the case, the party had sufficient access to the documents to admit to their authenticity. Similarly here, Plaintiff asserts that Defendant has sufficient control over the documents and knowledge of the facts to admit to Plaintiff's document authentication requests. According to Plaintiff, Defendant is asking the Court to find that the presence of a third party negates Defendant's duty to conduct a reasonable inquiry and to authenticate documents when it has the information available to do so. Contrary to Defendant's allegation, Plaintiff argues that it is not trying to conduct discovery, but rather is trying to streamline the litigation.

Plaintiff relies on *Universal Life Church, Inc. v. United States*, 14 Cl. Ct. 343 (1988), and *EEOC v. E.J. Sacco, Inc.*, 102 F. Supp. 2d 413 (E.D. Mich. 2000), for the proposition that when a party responds vaguely and evasively to a written discovery request, the court may find a violation of the duty of good faith and awarded sanctions to the opposing party. Plaintiff contends that Defendant, by distorting facts and deposition testimony, creating inconsistencies, and citing to illusory concerns, has not exercised good faith in responding to Plaintiff's requests

---

[8] Although Plaintiff argues that Defendant's reference to RFAs 82, 88, 100, and 106 is misplaced because Plaintiff's mention of the Jeannette Michaels testimony is not directed to those RFAs, the Court finds that the authenticity of the signatures on the documents referenced in RFAs 82, 88, 100, and 106 is still relevant to the Court's determination of whether Defendant properly responded to those requests for admission.

for admission and therefore the Court should similarly grant relief. Plaintiff points to the decision of the Ninth Circuit in *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242 (9th Cir. 1981), to argue that the Court may indeed find responses to requests for admission to be insufficient, and deem the matters admitted, if the Court finds that the responding party did not act in good faith because either it had sufficient information or it did not make a reasonable inquiry. Here, Plaintiff contends that Defendant did have sufficient information because if it had made a reasonable inquiry it could not possibly have come up empty-handed. Plaintiff argues that, as in *Asea*, the Court has authority to determine that Defendant did have sufficient information or did not conduct a reasonable inquiry, and therefore did not act in good faith.

**B. Defendant's Arguments**

Defendant counters that, for each of the requests for admission, it has either denied the request or taken the steps required by the rule when it could not admit or deny the request. Specifically, Defendant avers that although it made a reasonable inquiry, it has not yet taken depositions of the persons who can establish the authenticity of the documents[9] and information known or reasonably available is insufficient for Defendant to admit or deny the authenticity of the documents. Defendant further avers that it is under no obligation to admit to the authenticity of documents not its own and that its discovery efforts have in fact suggested that the authenticity of the documents is highly dubious. Therefore, Defendant contends that its responses to Plaintiff's requests for admission were proper under RCFC 36(a).

As background, Defendant explains that the transactions were all part of a highly complex pre-arranged multi-step tax strategy co-developed and sold as the tax product known as "COBRA"[10] by Deutsche Bank AG, an accounting firm (Ernst & Young, LLP), and three law firms (Jenkens & Gilchrist, Brown & Wood, and Scheef & Stone). Defendant believes that the transaction documents referenced in Plaintiff's requests for admission were prepared by Jenkens & Gilchrist and that they directed the COBRA participants not to fill in any blanks or dates. This is because the alleged illegal tax benefits of the offsetting option tax strategy were critically dependant on implementation of the transactions in a precise order. Because the documents appear to have been predated, Defendant questions their authenticity.[11] Moreover, Defendant argues that many of the documents were purportedly signed by Perry Parker; however, there are at least two different Perry Parker signatures and it is not yet clear if either is the true signature of Perry Parker. Although some of the documents were cosigned by Jeannette Michaels, Defendant

---

[9] According to Defendant, Plaintiff filed its motion even before the first depositions were taken by Defendant.

[10] "COBRA" is the acronym for Currency Options Bring Reward Alternatives.

[11] The evidence of backdating suggests to Defendant that the COBRA transactions were a sham in fact, i.e., they either did not occur or did not occur in the manner that Plaintiff says that they did.

contends that the authenticity of the documents is dependent on the signature of Perry Parker. For these reasons, Defendant strongly questions the authenticity of the transaction documents referenced in Plaintiff's requests for admission.

Defendant contends that the requests for admission ask it to admit to the authenticity of documents which were not prepared by Defendant or by parties with interests aligned with Defendant, but rather which were prepared by third-party promoters of the COBRA tax shelter product with interests wholly diverse from Defendant. According to Defendant, a reasonable inquiry does not encompass inquiry of such parties. Defendant cites *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38 (S.D.N.Y. 1997), *Uniden Am. Corp. v. Ericsson, Inc.*, 181 F.R.D. 302 (M.D.N.C. 1998), and *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73 (N.D.N.Y. 2003), for the proposition that a reasonable inquiry is generally limited to documents and persons within the requested party's control and may extend only to third parties with parallel interests. While inquiry may be required of non-parties to the lawsuit, it is not required of those with adverse interests. Defendant asserts that for it to be required to authenticate documents simply because it is in possession of the documents would effectively eliminate the option of denying the authenticity of documents because RCFC 36 requires that copies of any referenced documents be provided along with the requests for admission. Further, Defendant contends that requests for admission are not discovery devices and are not a means for Plaintiff to direct the course and the nature of discovery by Defendant. Until Defendant has deposed the necessary witnesses it is impossible for Defendant to admit or deny the requests for admission.

Defendant argues that the cases cited by Plaintiff are inapposite. In *E.E.O.C.*, the requests for admission were served after the end of discovery and after the relevant depositions had been taken, whereas here, Defendant avers, it has not yet had a chance to depose those with knowledge of the documents referred to in the requests for admission. In *Universal Life Church*, the church denied a request to admit that it did not exercise control over the bank accounts of its chartered congregations and failed to support its denial with evidence, yet here, Defendant asserts, it is not denying any requests for admission concerning its own conduct and has not failed to support such denials. According to Defendant, *Francis* stands for the proposition that if a court finds that an objection based upon the inability to admit or deny a request for admission is unjustified, the first step is for the court to compel an answer, not to deem the matter admitted. Further, Defendant points out that Plaintiff neglected to mention the subsequent opinion, *Francis v. Bryant*, No. CV F 04 5077 AWI SMS P, 2006 WL 1627917 (E.D. Cal. June 7, 2006), wherein the court reversed itself upon reconsideration and did not compel an answer to the request for admission because the documents were not in the possession of defendants, but rather the California Department of Corrections. The court held that the defendants were not required to obtain the documents from the California Department of Corrections, a non-party with some affiliation to defendants, in order to authenticate them. Here, Defendant not only has no common interest with, but has interests totally adverse to, the preparers of the documents and, therefore, should not be expected to inquire of the preparers of the documents.

Lastly, Defendant asserts that Plaintiff incorrectly requests the Court to issue an order deeming admitted the matters set forth in Plaintiff's requests for admission while such relief is appropriate only if the responses do not comply on their face with RCFC 36(a). Defendant contends that its responses to the requests for admission were in compliance with the rule in that they stated that Defendant could not admit or deny the authenticity of the documents, detailing the reasons therefor, and they stated that Defendant had made a reasonable inquiry prior to determining that it could not admit or deny their authenticity. Here, Defendant argues, if the Court is dissatisfied with Defendant's responses, then the proper course of action, under RCFC 36(a), is for the Court to order Defendant to serve amended responses to the requests for admission, not for the Court to deem the matter admitted. Defendant cites *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316 (D. Kan. 1998), and *Foretich v. Chung*, 151 F.R.D. 3 (D.D.C. 1993), to support its argument that for the Court to deem the requests to be admitted would be improper. Defendant further avers that Plaintiff does not point to any cases where the court deemed requests to be admitted. In fact, Defendant contends that the only case cited by either party where the court deemed a matter admitted, a case cited by Defendant, is where sufficient discovery had been completed such that the evidence showed that the responding party had improperly stated that it could not admit or deny the matter. According to Defendant, Plaintiff is trying to circumvent its own obligation to prove the authenticity of the documents by asking the Court to make a factual determination before trial. Instead, Defendant contends that RCFC 37(c) specifically provides an alternative remedy, i.e., the award of sanctions, if Plaintiff successfully proves the documents to be authentic at trial and the Court determines that Defendant's earlier refusal to admit the authenticity of the documents was not justified.

### C. The Court's Determination

The purpose served by requests for admission is to establish facts about which there is no real dispute in order to expedite litigation and save the time and money that would otherwise be spent on unnecessary discovery and proof of facts at trial. Fed. R. Civ. P. 36, Advisory Committee Notes, 1970 Amendment, reprinted in Thomson/West, Federal Judicial Procedure and Rules, at 192 (2005); *see Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992); *Asea*, 669 F.2d at 1245; *Printy v. Crochet & Borel Servs.*, 196 F.R.D. 46, 49 (E.D. Tex. 2000); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998); *T. Rowe Price Small-Cap Fund*, 174 F.R.D. at 42-43; *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 123 F.R.D. 97, 102 (D. Del. 1988); *Kershner v. Beloit Corp.*, 106 F.R.D. 498, 499 (D. Me. 1985); 7 James Wm. Moore, Moore's Federal Practice § 36.02[1], at 36-7 to -9 (3d ed. 2006). RCFC 36 provides guideposts for the parties regarding the proper procedure for and substance of requests for admission, as well as responses thereto:

> A party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of RCFC 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, *including the genuineness of any documents described in the request*. . . .

> . . . The matter is admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . . If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and *when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested*, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for *failure to admit or deny* unless the party states that *the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny*. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of RCFC 37(c), deny the matter or set forth reasons why the party cannot admit or deny it.
>
> The party who has requested the admissions may move to determine the sufficiency of the answers or objections.

RCFC 36(a) (emphases added).[12] Pursuant to the rule, therefore, the propounding party can indeed request admission as to the genuineness or authenticity of documents. *See*, *e.g.*, *Caruso v. Coleman Co.*, No. 93-CV-6733, 1995 WL 347003, at *6 (E.D. Pa. June 7, 1995); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, Nos. 82 Civ.5253(MBM), 87 Civ. 8982 (MBM), 1990 U.S. Dist. LEXIS 8649, at *2 (S.D.N.Y. July 16, 1990). The rule also expressly sets forth a good faith requirement when the responding party qualifies an answer or denial to a request for admission. *See*, *e.g.*, *S.A. Healy Co. v. United States*, 37 Fed. Cl. 204, 206 (1997). Further, if the responding party cannot admit or deny a request for admission, it must state that it has made a reasonable inquiry and information known or readily obtainable is insufficient to allow it to admit or deny.

In ruling on a motion challenging the sufficiency of responses to requests for admission, the Court has a number of options:

> Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served. The

[12] RCFC 36 is identical to Fed. R. Civ. P. 36 and interpretation of Fed. R. Civ. P. 36 informs the Court's analysis. *See* Rules Committee Note, 2002 Revision, Rules of the United States Court of Federal Claims (as amended June 20, 2006), at 1, 44.

> court may, in lieu of these orders, determine that final disposition of the request be made at a pre-trial conference or at a designated time prior to trial.

RCFC 36(a). Hence, the Court may order an answer, deem the matter admitted, or defer a determination until closer to trial.

By the clear language of RCFC 36, if the responding party does not serve an answer, the court may deem the matter to be admitted. RCFC 36(a) ("The matter is admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . . ."); *see Herrera v. Scully*, 143 F.R.D. 545, 550 (S.D.N.Y. 1992); *Asea*, 669 F.2d at 1245. Here, however, Defendant answered all of the requests for admission, though it also expressed an objection. The Court, therefore need not deem the requests admitted.

Nevertheless, where a federal court finds a lack of good faith on the part of the responding party, it may deem the matter admitted. *See*, *e.g.*, *Asea*, 669 F.2d at 1247 (concluding that trial court could properly deem matters admitted if evidence revealed that the responding party had knowledge sufficient to admit to matters set forth in the requests for admission and had failed to make reasonable inquiry, but remanding for factual determination on these issues). Typically, courts have ordered matters admitted either when the evidence shows that it should have been admitted, *Uniden Am.*, 181 F.R.D. at 304-05 (M.D.N.C. 1998) (deeming matter admitted when deposition testimony confirmed the authenticity of document); *Caruso*, 1995 WL 347003, at *2 (deeming matter admitted when qualified answer implied that admission was appropriate), or when the court finds the responding party's conduct in answering the requests for admission to be reprehensible. *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 256-58 (C.D. Cal. 2006) (deeming requests for admission admitted when responding party gave evasive answers and court had previously sanctioned responding party for failing to make a reasonable inquiry); *Cochrane v. IRS*, 107 T.C. 18, 26 (T.C. 1996) (taking as established facts set forth in requests for admission when responses were evasive, incomplete and not in good faith despite prior court order); *Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 97 (W.D. Mo. 1973) (deeming requests for admission admitted when responding party's answers were evasive and focused on the accuracy of the requests rather then on the truth of the matters set forth therein).

More typically, when the responding party's answer to requests for admission is deemed to be noncompliant with Rule 36, federal courts order the responding party to serve a supplemental answer. *See*, *e.g.*, *A. Farber & Partners*, 237 F.R.D. at 257-58 (ordering responding party to supplement its responses when court determined that responses were evasive and the party did not make a reasonable inquiry, but the party had not previously been admonished by the court for failing to do so); *IBP*, 179 F.R.D. at 319 (ordering supplemental responses when responding party did not state in detail why it could not admit or deny the matters and did not state that it lacked sufficient information to admit or deny the matters). In fact, many federal courts are disinclined to deem matters admitted when they find the responding party's answers to requests for admission to be deficient. *See*, *e.g.*, *Kendrick v. Sullivan*, No. 83-

3175(CRR), 1992 WL 119125, at *5 (D.D.C. May 15, 1992) (declining to deem matters admitted when responding party made good faith effort and responses were only deficient technically); *Thalheim v. Eberheim*, 124 F.R.D. 34, 38 (D. Conn. 1988) (declining to order requests admitted even though answers by the responding party were disingenuous, insufficient, and lacking in good faith, but awarding monetary sanctions for the cost of filing the motion). Even the Ninth Circuit in *Asea* indicated that deeming a matter admitted is not ordinarily the first course of action the court should pursue and not one to be taken lightly:

> Although the [trial] court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed, this determination, like most involved in the oversight of discovery, is left to the sound discretion of the [trial] judge. The general power of the [trial] court to control the discovery process allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a).

*Asea*, 669 F.2d at 1247 (9th Cir. 1981) (citations omitted).

Furthermore, several courts have held that a motion to determine the sufficiency of responses to requests for admission is not the time or place for cross-examination; rather, if the parties cannot agree on a matter, then they should await the opportunity to present evidence at trial. *IBP*, 179 F.R.D. at 319; *Foretich*, 151 F.R.D. at 5; *Kendrick*, 1992 WL 119125, at *3. If, at trial, the propounding party subsequently succeeds in proving the matter set forth in the request for admission and the court determines that the responding party was not justified in refusing to admit the matter, the court may award monetary sanctions to the propounding party equivalent to the cost of proving the matter at trial. RCFC 37(c)(2);[13] *see Chem. Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1575 (Fed. Cir. 1986) (affirming trial court's award of sanctions when party

---

[13] RCFC 37(c)(2) states in relevant part:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under RCFC 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the *reasonable expenses incurred in making that proof, including reasonable attorney's fees*. The court shall make the order unless it finds that (A) the request was held objectionable pursuant to RCFC 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

(emphasis added).

refused to admit that the accused device did not raise the pH of the water, which was subsequently proved by experts at trial); *Pioneer Title Ins. Co. v. Andrews*, 652 F.2d 439, 443 (5th Cir. 1981) (finding no abuse of discretion when trial court imposed sanctions on the responding party after it refused to admit to the genuineness of an important document, forcing the propounding party to have to prove its genuineness at trial); *Universal Life Church*, 14 Cl. Ct. at 350 (awarding sanctions after party propounding requests for admissions later proved the matters by uncontroverted evidence). Hence, another arrow in the Court's quiver is the award of sanctions to the party propounding the requests for admission if the Court determines at trial that there was no reasonable basis for the responding party not to admit to the matters set forth in the requests. The Court has significant discretion in choosing the appropriate remedy should it find that Defendant has improperly responded to Plaintiff's requests for admission.

Prior to determining the appropriate remedy, however, the Court must first determine whether Defendant's responses to the requests for admission were deficient pursuant to RCFC 36(a). In each of the responses to the requests for admission, Defendant stated that it could not admit or deny the request. Central to the determination of whether the responses were adequate is whether Defendant made a reasonable inquiry and whether information known or readily available to Defendant was insufficient to enable it to admit or deny the requests. The reasonable inquiry requirement was introduced with the 1970 Amendment and explained as follows:

> The rule as revised adopts the majority view, as in keeping with a basic principle of the discovery rules that a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process. It has been argued against this view that one side should not have the burden of "proving" the other side's case. The revised rule requires only that the answering party *make reasonable inquiry and secure such knowledge and information as are readily obtainable by him*. In most instances, the investigation will be necessary either to his own case or to preparation for rebuttal. Even when it is not, the information may be *close enough at hand to be "readily obtainable."* Rule 36 requires only that the party state that he has taken these steps. *The sanction for failure of a party to inform himself before he answers lies in the award of costs after trial, as provided in Rule 37(c).*

Fed. R. Civ. P. 36, Advisory Committee Notes, 1970 Amendment, reprinted in Thomson/West, Federal Judicial Procedure and Rules, at 193 (2005) (emphases added). Hence, a reasonable inquiry is limited to inquiry of documents and persons readily available and within the responding party's control. *See*, *e.g.*, *T. Rowe Price Small-Cap Fund*, 174 F.R.D. at 43; *United States v. Taylor*, 166 F.R.D. 356, 363-64 (M.D.N.C. 1996) (reasonable inquiry requires responding party to check own files for documents sent by or to responding party to determine their authenticity). Further, the contemplated sanction for failure to make a reasonable inquiry is the cost to prove the matter at trial, pursuant to Rule 37(c).

A reasonable inquiry may encompass inquiry of a third party if there is an "identity of interest" between the responding party and the third party—i.e., when they are both parties to, or actively cooperating, in the litigation, or when they have a present or prior relationship of mutual concern—not if there is a manifest or potential conflict between the responding party and the third party. *Uniden Am.*, 181 F.R.D. at 304 (reasonable inquiry may include inquiry of party cooperating in the litigation); *accord A. Farber & Partners*, 237 F.R.D. at 254 (reasonable inquiry includes inquiry of co-defendants represented by the same counsel); *see also T. Rowe Price Small-Cap Fund*, 174 F.R.D. at 43 (reasonable inquiry may require inquiry of information readily available from non-hostile third party).

> Such reasonable inquiry includes an investigation and inquiry of employees, agents and others, "who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response." The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties, but surely not strangers.

*Henry*, 212 F.R.D. at 78 (citations omitted). If a reasonable inquiry doesn't provide sufficient information to answer a request for admission, the responding party may state that it cannot admit or deny the request. *Francis*, 2006 WL 1627917, at *2 (finding that responding party had no legal obligation to obtain the documents, and hence lacked sufficient information to authenticate them, even though responding party could still have requested the documents); *cf. EEOC*, 102 F. Supp. 2d at 415-17 (finding sufficient information available when responding party had ample opportunity to conduct necessary discovery, ignored sworn testimony, and chose to amend its responses upon the filing of the motion for sanctions by the propounding party).

Here, there is no question that the transactional documents themselves were in the possession of Defendant and hence readily available to Defendant. However, in this tax partnership case, the financial transactions are central to the dispute and the transactional documents serve as proof of the transactions. One of the legal theories advanced by Defendant is that the transactions constituted either a factual or economic sham. Thus, partially at issue is whether or not the transactions actually occurred. Defendant raises sufficient concerns regarding the authenticity of the transactional documents such that the Court cannot determine, based on the evidence before it, that there is no possibility that Plaintiff may ultimately fail to prove the genuineness of the transactional documents and hence that the financial transactions occurred in fact. Moreover, the Court cannot conclude that Defendant has sufficient information before it to admit or deny the authenticity of the documents. In order to prove the genuineness of the documents, Defendant will need to inquire of third parties that were engaged in the transactions. These are not parties with common interests to Defendant, but rather parties with adverse interests. Additional deposition testimony will be required to respond conclusively to the requests for admission. Currently, discovery is not scheduled to close until August. Under the circumstances, the Court cannot find that Defendant's failure to admit or deny the authenticity of the documents is unreasonable. Although the Court finds Defendant's responses to be somewhat

deficient in that Defendant does not give specific details for why it cannot admit or deny each of the requests for admission—i.e., what testimony or other information is lacking that Defendant needs to determine the genuineness of each of the documents—the Court does not believe that deeming the matters admitted is the proper course of action at this point in the proceeding. Further, "it would be unreasonable to require [Defendant] to expend time and effort to determine the authenticity of documents not now intended to be used at trial." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 1990 U.S. Dist. LEXIS 8649, at *2-3. The Court, therefore, defers a determination until closer to trial, when the parties know which documents will indeed be used at trial. The Court will order Defendant to serve amended, more detailed, answers to the requests for admission upon the close of discovery. In the meantime, Defendant is reminded of its obligation to supplement/amend its answers to the requests for admission as new information becomes available during discovery. *See* RCFC 26(e)(1), (2). If, at that end of discovery, Defendant again answers that it cannot admit or deny the requests, and Plaintiff ultimately succeeds in proving the matters at trial, the Court will award sanctions equal to the amount of proving the matter at trial.

## III. Conclusion

Plaintiff's Motion Challenging the Sufficiency of Defendant's Responses to the First Set of Requests for Admission is DENIED. The Court declines to award sanctions at this time.

The Court ORDERS Defendant to serve Plaintiff with amended responses to RFAs 4, 20, 39, 42, 44, 51-52, 54-55, 57-58, 60-62, 65, 71, 79, 82, 88, 97, 100, 106, 116-117, 125, and 127 within two weeks after the close of discovery. If, in its amended responses, Defendant denies the requests or states that it cannot admit or deny the requests, Defendant shall explain in detail for each response the reasons therefor.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge