IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, | § | |
| Plaintiff, | § | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, | § | |
| Defendant. | § | |

**NON-PARTY JENKENS & GILCHRIST'S MOTION TO QUASH AND MOTION FOR PROTECTION FROM PLAINTIFF'S SUBPOENA FOR A RULE 30(b)(6) DEPOSITION AND FOR PRODUCTION OF DOCUMENTS**

Non-party Jenkens & Gilchrist, a Professional Corporation (Texas) ("J&G"), moves pursuant to the Rules of the Court of Federal Claims 26(b)(2) and 45(c)(3)(A) to quash the subpoena served by Plaintiff JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership and for a protective order under Rules 26(c) and 45(c)(3)(A). *See Attachment 1 to J&G's Brief in Support of Motion to Quash and Motion for Protection* (App. 2-11 ). These motions are based upon the following grounds.

In March 2007, J&G stopped offering legal services. John Gilliam, J&G's in-house counsel since 2004, is the only remaining lawyer employed by J&G. The firm now continues to operate solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. J&G has limited financial resources and is attempting to conserve them for the benefit of its creditors. To that end, J&G has kept only enough staff to quickly and efficiently wind down the affairs of the Firm.

At the end of March 2007, J&G entered into settlement agreements with the Department of Justice through the United States Attorney's Office for the Southern District of New York

("DOJ") and the Internal Revenue Service ("IRS"), which resolved government investigations into J&G's involvement in certain tax shelters. The settlement agreement with the IRS ("Closing Agreement") is subject to a confidentiality agreement.

Shortly after the government announced the settlements, Plaintiff served the subpoena, which requires the production of the Closing Agreement and information relating to that settlement. The subpoena specifically seeks:

- testimony about and a copy of the Closing Agreement and other documents relating to the Closing Agreement (Subpoena No. 1(a))(App. 7);
- testimony and documents about the IRS's legal and factual positions on the calculation of penalties under certain sections of the Internal Revenue Code (Subpoena No. 1(b)) (App. 7);
- testimony and documents on whether the IRS assessed, threatened to assess or provided computations of a potential penalty under I.R.C. § 6707 prior to J&G's agreement to settle (Subpoena No. 1(c)) (App. 8);
- testimony and documents on the IRS's position as to whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to its payment (Subpoena No. 1(d)) (App. 8); and
- testimony and documents on whether J&G concluded it had to pay a penalty under I.R.C. § 6707 prior to challenging it in court (Subpoena No. 1(d)) (App. 8).

The subpoena should be quashed and a protective order should be granted because responding to the subpoena would be unduly burdensome and would require J&G to disclose the terms of the Closing Agreement along with confidential documents and information relating to the Closing Agreement, all of which are irrelevant to Plaintiff's claims. To the extent J&G has information other than the Closing Agreement that is responsive to the subpoena, that information is protected from disclosure by the attorney-client privilege and attorney work product exemption.

For the foregoing reasons, which are discussed in J&G's brief in support of its motion, J&G requests that the Court grant the motion to quash and motion for protection and grant J&G such other relief to which it is entitled.

Respectfully submitted,

By: S/ Robert J. Wagman, Jr.

Robert J. Wagman, Jr.
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400
robert.wagman@bakerbotts.com
202.639.7700
202.639.7890 (telecopy)

COUNSEL FOR JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (TEXAS)

Dated: May 16, 2007

IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as<br>Tax Matters Partner of JBJZ Partners,<br>a South Carolina general partnership,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |

**NON-PARTY JENKENS & GILCHRIST'S BRIEF IN SUPPORT OF MOTION TO QUASH AND MOTION FOR PROTECTION FROM PLAINTIFF'S SUBPOENA FOR A RULE 30(b)(6) DEPOSITION AND FOR PRODUCTION OF DOCUMENTS**

Non-party Jenkens & Gilchrist, a Professional Corporation (Texas) ("J&G"), moves pursuant to Rules of the Court of Federal Claims 26(b)(2) and 45(c)(3)(A) to quash the subpoena served by Plaintiff JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership and for a protective order under Rules 26(c) and 45(c)(3)(A). The subpoena, *see Attachment 1* (App. 2-11), should be quashed and protection should be granted because responding to the subpoena would be unduly burdensome and would require J&G to disclose the terms of a confidential settlement agreement with the Internal Revenue Service ("Closing Agreement") along with confidential documents and information relating to the Closing Agreement, all of which are irrelevant to Plaintiff's claims.

## I. Introduction

Amid the reports of office closings and lawyers leaving, it became common knowledge in recent months that J&G was close to dissolution. In March 2007, J&G stopped offering legal services. *See* Declaration of John Gilliam ¶ 2 (attached as Attachment 2) ("Gilliam Decl.")

(App. 12-45). John Gilliam, J&G's in-house counsel since 2004, is the only remaining lawyer employed by J&G. *Id.*

The firm now continues to operate solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. Gilliam Decl. at ¶ 3 (App. 13-14). J&G has limited financial resources and is attempting to conserve them for the benefit of its creditors. To that end, J&G has kept only enough staff to quickly and efficiently wind down the affairs of the Firm. In addition to Gilliam, J&G has a President, Roger Hayse, who is not a lawyer, and about 15 administrative employees, who are assisting in the process of liquidating the firm. *Id.*

At the end of March 2007, J&G entered into settlement agreements with the Department of Justice through the United States Attorney's Office for the Southern District of New York ("DOJ") and the Internal Revenue Service ("IRS"). The settlements resolved government investigations into J&G's involvement in certain tax shelters. *See* Gilliam Decl. ¶ 7 (App. 14-15) and Exhibits 1 - 3. These settlements were announced by the DOJ and IRS on March 29, 2007. Gilliam Decl. at Exhibits 1 and 3 (App. 20-23 and App. 44-45).

Shortly after the announcement, Plaintiff served the subpoena, which requires the production of the settlement agreement with the IRS ("Closing Agreement") and information relating to that settlement. Gilliam Decl. ¶ 11 (App. 16-17). Specifically, the subpoena seeks:

- testimony about and a copy of the Closing Agreement and other documents relating to the Closing Agreement (Subpoena No. 1(a)) (App. 7);
- testimony and documents about the IRS's legal and factual positions on the calculation of penalties under certain sections of the Internal Revenue Code (Subpoena No. 1(b)) (App. 7);
- testimony and documents on whether the IRS assessed, threatened to assess or provided computations of a potential penalty under I.R.C. § 6707 prior to J&G's agreement to settle (Subpoena No. 1(c)) (App. 8);

- testimony and documents on the IRS's position as to whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to its payment (Subpoena No. 1(d)) (App. 8); and
- testimony and documents on whether J&G concluded it had to pay a penalty under I.R.C. § 6707 prior to challenging it in court (Subpoena No. 1(d)) (App. 8).

*See* Attachment 1 at ¶¶ 1 and 2 (App. 7-8).

The Court should quash the subpoena and grant J&G protection because responding to the subpoena would require the disclosure of irrelevant, protected information and would subject J&G to undue burden.

## II. ARGUMENT

J&G's motion to quash or for a protective order must be considered in light of the overarching policy that "'non-party status' is a significant factor . . . in determining whether the burden imposed by a subpoena is undue." *United States v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, *4-5 (N.D. Ill., Oct. 21, 2005); *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). "[C]oncern for the unwanted burden thrust upon non-parties is a factor [given] *special weight*" by courts in balancing the needs of the competing interests. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (emphasis added); *Gray v. Cottrell, Inc.*, 2006 WL 1663242, *1 (E.D. Mo. June 12, 2006). Limiting discovery is appropriate when the burden of providing the discovery outweighs the need for it. *Leake*, 231 F.R.D. at 51.

### A. The Closing Agreement with the IRS and negotiations of its terms are protected by confidentiality provisions.

J&G cannot give testimony about or produce the Closing Agreement or other documents relating to it because the agreement and its terms are confidential. Gilliam Decl. ¶¶ 8-9, 13 (App. 15, 17). J&G is prohibited from disclosing the agreement or any information relating to

the terms of the agreement. *Id.* Violating this prohibition could lead to an event of default under both the Closing Agreement and the settlement agreement with the DOJ and result in the termination of those agreements. The loss of these settlements would have serious adverse consequences to J&G. *Id.*

As demonstrated by the IRS's announcement, the Closing Agreement is not even relevant to Plaintiff's claim:

> The Internal Revenue Service today announced that it has reached a settlement with the law firm of Jenkens & Gilchrist, which agreed that they are subject to a penalty of $76 million. The penalty stems from the firm's promotion of abusive and fraudulent tax shelters and violations of the tax law concerning tax shelter registration and maintenance and turnover to the IRS of tax shelter investor lists.

Attachment 2 at Exhibit 3 (App. 45). According to this IRS announcement, the Closing Agreement relates to penalties for violations of tax laws in promoting tax shelters and failing to provide certain information to the IRS. Plaintiff seeks to overturn the IRS's disallowance of the benefit of Plaintiff's tax shelter, which has nothing to do with penalties assessable against J&G. J&G's settlement with the IRS, then, cannot possibly affect Plaintiff's claims. *See Gray*, 2006 WL 1663242, *1 (E.D. Mo. June 12, 2006) (quashing subpoena in part because discovery sought was irrelevant to plaintiffs' claims).

The only testimony Gilliam can provide about the Closing Agreement that is not privileged or confidential is testimony about Gilliam's discussions with the IRS, all of which were limited to J&G's need for a global settlement and J&G's financial situation, its continued viability, and its cooperation with the Government. Gilliam Decl. ¶ 8, 12 (App. 15, 17). Discovery of these matters will not further any claims or defenses in the case and are, thus, also irrelevant to Plaintiff's claim.

Several courts have held that negotiations leading up to a settlement with the Government are not discoverable. *See, e.g., United States v. Bleznak*, 153 F.3d 16, 20 (2d Cir. 1998) (settlement memorandum provided by DOJ to company under investigation not discoverable); *Clark v. Experian Info. Solutions, Inc*., No. 03, 7882, 2006 WL 626820, *6 (N.D. Ill. Mar. 8, 2006) (documents reflecting negotiations with FTC, including offers, counteroffers, acceptances, drafts of proposed agreed order, not discoverable because they "may contain the type of candid 'give and take discussion' that courts have protected from discovery"); *see also Allen County v. Reilly Indus*., 197 F.R.D. 352, 354 (N.D. Ohio 2000) (settlement negotiation letters with civil defendant not discoverable). The rationale behind these decisions is straightforward – requiring disclosure of negotiations with the government in later civil cases may chill settlement negotiations and settlements themselves. *Clark*, 2006 WL 626820, *3.

Accordingly, J&G should not be required to testify about or produce documents responsive to Numbers 1(a) and 1(c) of the subpoena.

**B. J&G does not have discoverable information on the remaining subject matters identified in the subpoena.**

Plaintiff seeks information about the method by which the IRS computed the penalty announced in the News Release, the IRS's position on challenges to the penalty, and J&G's conclusions about challenges to the penalty. *See* Attachment 1 at 1(b) - (e) (App. 7-8). None of the information J&G possesses about these matters is discoverable because it is protected by the attorney-client privilege and the work product exemption.

With respect to the information about the IRS's legal and factual positions on the calculation of the penalty – as described in Numbers 1(b) and (c) – the only knowledge J&G has about these matters is based on legal advice from its outside counsel, Davis Polk & Wardwell. Gilliam Decl. ¶ 13 (App. 17). The IRS never discussed the computation of the penalty or any of

the other matters described in Number 1(b) with J&G. *Id.* Likewise, the IRS never shared any documents with J&G on those subject matters. *Id.* The only documents responsive to Number 1(b) are protected from disclosure by the attorney-client privilege and work product exemption.

With respect to the information sought in Number 1(d) of the subpoena – the IRS's legal and factual position on whether a penalty under § 6707 could be challenged administratively or in court prior to its payment – the IRS never disclosed to J&G its position on this subject matter either orally or in writing. Gilliam Decl. ¶ 15 (App. 18). Any documents relating to the information in Number 1(d) would be protected from disclosure by the attorney-client privilege and work product exemption. *Id.* This information also is irrelevant to whether the IRS properly or lawfully disallowed Plaintiff's tax shelter.

With respect to the information sought in Number 1(e) of the subpoena – J&G's conclusions on challenges of penalties under § 6707 – the only information that J&G has is based upon discussions among Gilliam, as in-house counsel for J&G, members of J&G's Board of Directors, and J&G's outside counsel. Gilliam Decl. ¶ 16 (App. 18). Any documents relating to the matters described in Number 1(e) would be protected from disclosure by the attorney-client privilege and work product exemption. *Id.* Further, this information like the other information sought is irrelevant to Plaintiff's claims.

**C. J&G does not have the financial or staffing resources to respond to Plaintiff's subpoena.**

J&G's staff has been reduced to a skeleton crew who are focused on liquidating the firm's assets, satisfying obligations to creditors, and closing out all outstanding business matters. Gilliam Decl. ¶ 3 (App. 13-14). J&G's financial resources are limited and are being conserved for the benefit of creditors. *Id.* Preparing for a deposition and producing documents will tax J&G's staff and finances and hinder its ability to expeditiously wind up J&G's affairs. *Id.* The

effort to respond to the subpoena will be unduly burdensome to J&G and should not be required given the lack of relevance of the discovery sought. *See e.g., Gray*, 2006 WL 1663242, at *1.

## III. CONCLUSION

Requiring J&G to respond to the subpoena would inflict undue burden on J&G contrary to Rules 26 and 45. None of the information is relevant to Plaintiff's case and the non-privileged information in J&G's possession is confidential pursuant to the Closing Agreement with the IRS. For the foregoing reasons, the Court should grant J&G's motion to quash and motion for protection.

Respectfully submitted,

By: S/ Robert J. Wagman, Jr.
Robert J. Wagman, Jr.
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400
robert.wagman@bakerbotts.com
202.639.7700
202.639.7890 (telecopy)

COUNSEL FOR JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (TEXAS)

Dated: May 16, 2007

**NON-PARTY JENKENS & GILCHRIST'S**
**CERTIFICATE OF CONFERENCE**

The undersigned counsel certifies that a reasonable effort was made to reach agreement with counsel for Plaintiff on the matters set forth in Non-Party Jenkens & Gilchrist's Motion to Quash and Motion for Protection From Plaintiff's Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents. An agreement could not be reached. In particular, several conversations have occurred between Jenkens & Gilchrist's counsel, Mary Scott and Rod Phelan, and Plaintiff's counsel, Todd Welty and Joel Crouch between April 11 and May 10, 2007. The last conversations occurred on Thursday, May 10, 2007 between Jenkens & Gilchrist's counsel, Mary Scott, and Joel Crouch, counsel for Plaintiff.

Respectfully submitted,

By: S/ Robert J. Wagman, Jr.

Robert J. Wagman, Jr.
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400
robert.wagman@bakerbotts.com
202.639.7700
202.639.7890 (telecopy)

COUNSEL FOR JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (TEXAS)

Dated: May 16, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing documents were served through the Court of Federal Claims ECF System, on all counsel of record on May 16, 2007.

S/ Robert J. Wagman, Jr.
Robert J. Wagman, Jr.