IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as<br>Tax Matters Partner of JBJZ Partners,<br>a South Carolina general partnership,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |

**APPENDIX TO NON-PARTY JENKENS & GILCHRIST'S BRIEF IN SUPPORT OF MOTION TO QUASH AND MOTION FOR PROTECTION FROM PLAINTIFF'S SUBPOENA FOR A RULE 30(b)(6) DEPOSITION AND FOR PRODUCTION OF DOCUMENTS**

**Index**


| | |
|---|---|
| Attachment 1, Notice of Deposition & Subpoena | 001-011 |
| Attachment 2, Declaration of John Gilliam | 012-019 |
| Exhibit 1 to Gilliam Decl., Department of Justice Press Release | 020-023 |
| Exhibit 2 to Gilliam Decl., Non-Prosecution Agreement | 024-043 |
| Exhibit 3 to Gilliam Decl., IRS News Release | 044-045 |

# ATTACHMENT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,** | § | |
| | § | **CASE NO. 05-231 T** |
| **Plaintiff,** | § | **Chief Judge Edward J. Damich** |
| **v.** | § | |
| | § | |
| **United States of America,** | § | |
| | § | |
| **Defendant.** | § | |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Plaintiffs JZ Buckingham Investments, LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, will take the deposition of Jenkens & Gilchrist, P.C., pursuant to RCFC 30(b)(6) and 45. The deposition will be conducted on May 18, 2007 at 9:00 a.m., at the offices of Meadows, Collier, Reed, Cousins & Blau, L.L.P., 901 Main Street, Suite 3700, Dallas, Texas 75202, or at another location determined by the parties.

The deposition will be recorded by stenographic means and will continue from day to day until completed, subject to such adjournments as may be agreed upon by counsel.

The witness is being commanded to testify to the matters set forth in and to produce the materials listed on Exhibit A to the Subpoena attached hereto.



**ATTACHMENT 1**

Respectfully submitted,

By: [signature]

Joel N. Crouch
Texas State Bar No.05144220
M. Todd Welty
Texas State Bar No. 00788642
Michael E. McCue
Texas State Bar No. 13494150
Anthony P. Daddino
Texas State Bar No. 24036434

MEADOWS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
twelty@meadowscollier.com
mmccue@meadowscollier.com
adaddino@meadowscollier.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2007, I served the foregoing Notice of Deposition on the below-listed counsel:

David M. Steiner, Esq. *(via Certified Mail)*
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq. *(via Certified Mail)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F. Anthony Paganelli, Esq. *(via FedEx)*
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

JOEL N. CROUCH

351262

OAO88 (Rev. 1/94) SUBPOENA

Issued by the

# UNITED STATES COURT OF FEDERAL CLAIMS

JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership

**SUBPOENA**

V.

United States of America

Case Number:[1] **05-231 T**

TO: **JENKENS & GILCHRIST (as more fully defined in Exhibit A attached hereto)**

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

X YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above referenced case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Meadows, Collier, Reed, Cousins & Blau, 901 Main Street #3700, Dallas, TX 75202** | **May 18, 2007 at 9:00 a.m.** |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below.

**See Attached.**

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | | DATE |
|---|---|---|
| [signature] | Attorney for Plaintiffs | 4-25-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joel N Crouch, Esq
901 Main Street, Suite 3700, Dallas, TX 75248
(214) 744-3700

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev 1/94) SUBPOENA

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

RCFC 45

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include but is not limited to lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books papers documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued If objection has been made the party serving the subpoena may, upon notice to the person commanded to produce move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides is employed or regularly transacts business in person, except that subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research development or commercial information or
(ii) requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial the court may, to protect a person subject to or affected by the subpoena quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials the claim shall be made expressly and shall be supported by a description of the nature of the documents communications or things not produced that is sufficient to enable the demanding party to contest the claim

**Exhibit A**

THIS SUBPOENA NAMES JENKENS & GILCHRIST[1], AS THE DEPONENT.

1. Pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, JENKENS & GILCHRIST is directed to designate a person or persons to testify on its behalf regarding any or all transactions described in Internal Revenue Service ("IRS") Notice 2000-44, including but not limited to, transactions known as COBRA. Specifically, the designated person or persons is directed to testify as to matters, which include, but may not be limited to:
   a. JENKENS & GILCHRIST's settlement or closing agreement referenced in IRS News Release (IR-2007-71) regarding Jenkens & Gilchrist's agreement to a $76 million tax penalty for promoting tax shelters.
   b. The IRS' legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in the penalty described above are a single option or investment; whether for purposes of determining the "aggregate amount invested" under I.R.C. §6707, the IRS' position is that each of the sold and purchased digital option contracts is a separate option or investment rather than a single option or investment; and whether for purposes of computing the tax shelter ratio under I.R.C. §6111 (in effect prior to 2004) the IRS' position is that each sold and purchased digital option contract is a single option or investment rather than separate options or investments. This includes the Internal Revenue Service's position regarding the penalty, as expressed orally, in writing, or computationally.

[1] JENKENS & GILCHRIST is defined herein to include Jenkens & Gilchrist, a Professional Corporation, a Texas professional corporation (EIN 75-2204006), ("J&G Texas"); Jenkens & Gilchrist, a Professional Corporation, an Illinois professional corporation (EIN 36-426-3272) ("J&G Illinois"); Jenkens & Gilchrist LLP (EIN 95-4775690) ("J&G California"); Jenkens & Gilchrist Parker Chapin, LLP (EIN 13-4148545) ("J&G New York"); and JGPC Incorporated ("JGPC Inc") (EIN: 20-8614033).

c. Whether the IRS assessed or threatened to assess or provided computations of a potential penalty under § 6707 prior to JENKENS & GILCHRIST's agreement to any settlement or closing agreement.

d. The IRS' position as to whether the penalty under § 6707 could be challenged administratively or in court prior to its payment.

e. Whether JENKENS & GILCHRIST concluded that it had to pay any penalty assessed under § 6707 prior to challenging it in court.

Plaintiff requests that JENKENS & GILCHRIST provide to Plaintiff at least seven (7) days before the date of the deposition (1) the names and titles of the persons it will designate to give testimony and (2) summaries of the areas in which each designated person will give testimony.

2. Pursuant to Rule 45 of the Rules of the Court of Federal Claims, JENKENS & GILCHRIST is commanded to produce and to permit inspection and copying of all non-privileged documents, communications, or both relating to the matters listed in paragraph 1.

a. Please produce the documents in accordance with the following instructions:

i. The documents sought by this Subpoena shall include all documents (as defined herein) within your possession, custody, control or access, or within the possession, custody, control or access of any of your representatives (as defined herein).

ii. This Subpoena is continuing in nature, and if you or your agents or representatives acquire additional documents regarding this Subpoena, all such subsequently acquired documents should be made available to Plaintiff's counsel.

iii. If you at any time had possession or control of a document called for under this Subpoena, and if such document has been lost, destroyed or is not presently in your possession or control, you shall describe in writing, the document, the date of its

loss, destruction, purge or separation from possession or control, and the circumstances surrounding its loss, destruction, purge or separation from possession or control.

iv. The documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in this Subpoena.

v. The selection of documents and files and other sources shall be performed in such a manner as to insure that the file or other source from which a document is obtained may be identified.

vi. In the event that you contend that any document is privileged or otherwise not subject to production or inspection, you are requested to identify each such document, in writing, by date, author, addressee, and general subject matter, and to identify all persons who received any copy thereof or otherwise obtained access thereto. Also, you are requested to state the basis for your assertion of privilege or other grounds for exclusion with respect to each document claimed to be privileged or otherwise not subject to production.

vii. Whenever appropriate, the singular form of a word shall be interpreted as plural, and the masculine gender shall be deemed to include the feminine.

b. The requested documents should be construed using the following definitions:

i. "<u>Documents</u>" as used herein shall mean all writings and recordings, including the original and non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, minutes, contracts, reports, studies, checks,

statements, tags, labels, invoices, brochures, periodicals, telegrams, receipts, returns, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical, or electric records or representations of any kind (including without limitation, computer files and programs, tapes, cassettes, discs, recordings), including metadata, drafts, alterations, modifications, changes of memoranda, etc., to any of the foregoing.

ii. "<u>You</u>," "<u>your</u>," and "<u>yours</u>," as used herein shall refer to JENKENS & GILCHRIST as defined herein, and its representatives and all other past and present representatives of such in their representative capacity.

iii. "<u>Communication</u>" as used herein shall mean any contact between or among JENKENS & GILCHRIST, its employees, agents or representatives regarding the matters listed in paragraph 1. Further, Communication shall include but not be limited to, all documents (as defined above), telephone or personal conversations, meetings, conferences and discussions, at any time or place, and under any circumstances whatsoever, whereby information of any nature was stated or in any manner transmitted or transferred.

iv. "Entity" as used herein shall mean a corporation, partnership, association, agency, governmental body (or any division, department or unit thereof), or any other legal entity other than a natural person.

v. "Representative" as used herein shall mean any and all present or former agents, employees, servants, officers, directors, attorneys, accountants, consultants and other persons or entities acting or purporting to act on behalf of the person or entity referred to.

vii. "Person" as used herein shall mean a natural person other than an entity and shall be construed to include groups of natural persons.

viii. "Relate to," "relates to," and "relating to" mean, consist of, refer to, pertain to, reflect, evidence, or be in any way logically or factually connected with the matter discussed.

3. The deposition will be recorded stenographically and on audio tape. The deposition will be taken before an officer authorized to administer oaths and take testimony pursuant to Rule 28 of the Rules of the Court of Federal Claims and will continue from day to day during regular business hours until completed.

# ATTACHMENT 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, | § | |
| Plaintiff, | § | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, | § | |
| Defendants. | § | |

## DECLARATION OF JOHN GILLIAM

1. My name is John Gilliam. I am over the age of 18, of sound mind, and competent to make this affidavit. I have personal knowledge of the facts set forth in this affidavit, and they are true.

2. I am employed by Jenkens & Gilchrist, a Professional Corporation ("J&G"). From January 1, 1974 to January 1, 2004, I was a J&G shareholder practicing in the litigation department. On January 1, 2004, I ceased to be a shareholder and began to serve as in-house counsel or "risk manager" for J&G. I served as J&G's in-house counsel until it stopped offering legal services on March 31, 2007. I am now assisting in the liquidation of the firm. I am the only lawyer still employed by J&G. All other lawyers previously associated with the firm have left and joined other law firms or have pursued other options.

3. The firm continues to operate solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. J&G has limited financial resources and is attempting to conserve them for the benefit of its creditors. To that end, J&G has kept only enough staff to quickly and efficiently wind down the affairs of the Firm. In addition to me, J&G currently has a President, Roger Hayse, who is not a lawyer, and about 15



**ATTACHMENT 2**

administrative employees, who are handling various matters necessary to the liquidation of the Firm, including the disposition of approximately 150,000 boxes of client files, the administration of the accounts receivable and accounts payable, negotiations with J&G's landlords for its former offices, cancellation of employee benefit plans and resolution of all outstanding claims, general administrative tasks involving five of J&G's former offices, and the sale of J&G's assets in five cities. Preparing for a deposition and producing documents in response to the subpoena will tax J&G's very limited resources and interfere with J&G's ability to expeditiously wind up the business.

4. In my role as in-house counsel, I have overseen litigation against J&G involving tax opinions issued to former clients of our Chicago tax partners. No current J&G employee had any involvement with the tax strategies underlying these tax opinions, including Plaintiff's COBRA transaction.

5. I am not a tax lawyer. I had nothing to do with drafting or reviewing the tax opinion issued for Plaintiff's COBRA transaction or with any tax opinions for any tax transactions for any J&G clients. Any knowledge I have about the tax transactions has been acquired in my role as in-house counsel for J&G and in discussions with J&G's outside counsel.

6. J&G has no right or ability to force any of its former lawyers to assist it in providing testimony. J&G has no agreements of any kind with any former J&G lawyers that require them to testify on behalf of J&G or assist in preparing someone else to testify on behalf of J&G.

7. In my role as in-house counsel, I was involved in discussions with the Department of Justice through the United States Attorney for the Southern District of New York ("DOJ") and

the Internal Revenue Service ("IRS") in connection with the settlement of investigations by the DOJ and the IRS into J&G's involvement in certain tax shelters ("Government Investigations"). The Government Investigations were settled in March 2007. Attached as Exhibits 1, 2, and 3, respectively, are a true and correct copy of the press release issued by the DOJ, the Non-Prosecution Agreement with the DOJ and attachments, and the IRS News Release (IR-2007-71) announcing the settlement between J&G and the IRS ("News Release").

8. I have no personal knowledge about any of the tax shelters themselves or the legal opinions issued by J&G with respect to those shelters, except such knowledge as I may have acquired in discussions with J&G's outside counsel Davis, Polk & Wardwell. My communications with the DOJ and IRS were limited to discussions about J&G's need for a global resolution of the Government Investigations and J&G's financial situation, continued viability, and cooperation with the Government Investigations. I was not involved in conversations with the DOJ or IRS about the substance of the tax shelters, any claims or defenses relating to them, or any of the legal or factual positions the DOJ or IRS took with respect to the computation of any penalties.

9. I was present during meetings and discussions with J&G's outside counsel, Davis Polk & Wardwell, concerning the Government Investigations; however, all of these meetings were for the purpose of obtaining legal advice concerning the Government Investigations and the settlement of those Investigations. I also participated in various meetings with J&G's Board of Directors and key shareholders within J&G during which the Government Investigations were discussed, but only in the context of legal advice given by Davis Polk & Wardwell and me as J&G's in-house counsel. The legal advice I gave concerned non-tax-related issues arising as a result of the Government Investigations.

10. The only other J&G employee who had any involvement with the negotiations and settlement of the Government Investigations is Mr. Hayse, whose participation was limited to assisting in presenting the financial condition of J&G to the DOJ and IRS and discussing the Firm's viability.

11. J&G has the subpoena served on April 27, 2007 by Plaintiff JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership. Plaintiff has asked for a J&G designee to testify about:

- J&G's settlement agreement referenced in News Release ("Closing Agreement"), including the $76 million penalty referenced in the News Release (Subpoena No. 1(a));
- The IRS's legal and factual positions regarding digital options contracts, the IRS's position regarding determinations of the 'aggregate amount invested' under I.R.C. § 6707, the IRS's position regarding computations of the tax shelter ratio under I.R.C. § 6111, and the IRS's position regarding the penalty referenced in the IRS News Release (Subpoena No. 1(b));
- Whether the IRS assessed or threatened to assess or provided computations of a potential penalty under § 6707 prior to J&G's agreement to enter into the Closing Agreement (Subpoena No. 1(c));
- The IRS's position on whether a penalty under § 6707 could be challenged administratively or in court prior to payment (Subpoena No. 1(d)); and
- Whether J&G concluded it had to pay a penalty assessed under § 6707 prior to challenging it in court (Subpoena No. 1(e)).

Apart from the fact that J&G has no employee with the sort of non-privileged personal knowledge Plaintiff is seeking, J&G's settlement with the IRS is subject to continuing obligations of confidentiality. J&G is prohibited from disclosing the terms of the IRS settlement agreement ("Closing Agreement") to Plaintiff or the negotiations relating to those terms. Violating these prohibitions could lead to an event of default in the Closing Agreement and the

termination of that agreement and the Non-Prosecution Agreement with the DOJ, which would have serious adverse consequences to J&G.

12. I am unable to testify about matters relating to the Closing Agreement as described in Number 1(a) of the Notice because my knowledge is subject to the confidentiality agreement with the IRS and based upon legal advice rendered by J&G's counsel, Davis Polk and Wardwell. J&G is unable to produce the Closing Agreement or related documents as requested in Number 2 because they are subject to the confidentiality agreement with the IRS or are protected from disclosure by the attorney-client privilege and work product exemption.

13. I am unable to testify about the IRS's positions as described in Number 1(b) of the Notice because other than the IRS's statement that J&G admits that J&G is subject to a $76 million penalty described in the News Release, my direct communications with the IRS were limited to discussions about J&G's need for a global resolution of the Government Investigations and J&G's financial situation, continued viability, and cooperation with the Government Investigations. Any other knowledge I have about J&G's negotiations with the IRS is subject to the confidentiality agreement with the IRS and is based upon legal advice rendered by J&G's counsel, Davis Polk and Wardwell. To my knowledge, the IRS never discussed its computation of the penalty or any of the matters described in Number 1(b) with J&G. J&G never received any documents from the IRS that set out its legal or factual opinions about the matters described in Number 1(b). Any documents about these matters are subject to the confidentiality agreement and are protected from disclosure by the attorney-client privilege and the work product exemption.

14. I am unable to testify about the potential penalties under § 6707 as described in Number 1(c) of the Notice because other than the IRS's statement that J&G admits that J&G is subject to a $76 million penalty as described in the News Release, my direct communications with the IRS were limited to discussions about J&G's need for a global resolution of the Government Investigations and J&G's financial situation, continued viability, and cooperation with the Government Investigations. Any other knowledge I have about J&G's negotiations with the IRS is subject to the confidentiality agreement with the IRS and is based upon legal advice rendered by J&G's counsel, Davis Polk and Wardwell. Any documents relating to the matters described in Number 1(c) also are subject to the confidentiality agreement with the IRS and are protected from disclosure by the attorney-client privilege and the work product exemption.

15. The IRS never disclosed to J&G any position on whether a penalty under § 6707 could be challenged administratively or in court prior to its payment as described in Number 1(d) of the Notice. J&G never received any documents from the IRS that set out its legal or factual opinions about the matters described in Number 1(d). Any documents relating to the matters described in Number 1(d) would be protected from disclosure by the attorney-client privilege and the work product exemption.

16. I am unable to testify about J&G's conclusions with respect to challenges of penalties under § 6707 as described in Number 1(e) of the Notice because my knowledge regarding this subject matter is based upon discussions among members of J&G's Board of Directors, J&G's outside counsel, and me, in my role as legal counsel for J&G. Any documents relating to the matters described in Number 1(e) would be protected from disclosure by the attorney-client privilege and the work product exemption.

**Declaration**

I, John Gilliam, declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas, Texas on May 16, 2007.

John Gilliam

# EXHIBIT 1

**United States Attorney**
**Southern District of New York**

FOR IMMEDIATE RELEASE
MARCH 28, 2007

CONTACT: U.S. ATTORNEY'S OFFICE
YUSILL SCRIBNER,
REBEKAH CARMICHAEL
PUBLIC INFORMATION OFFICE
(212) 637-2600

## U.S. ENTERS NON-PROSECUTION AGREEMENT WITH JENKENS & GILCHRIST IN CONNECTION WITH ITS FRAUDULENT TAX SHELTER ACTIVITY

MICHAEL J. GARCIA, United States Attorney for the Southern District of New York, announced today that his Office has entered into a non-prosecution cooperation agreement (the "Agreement") with the law firm Jenkens & Gilchrist ("J&G") for criminal tax violations arising from J&G's tax shelter activities. In a statement to the United States Attorney's Office for the Southern District of New York (the "Office"), J&G admitted to developing and marketing fraudulent tax shelters, as well as to issuing fraudulent opinion letters.

This decision by the Office was based on four principal factors: J&G's inability to continue practicing law as a firm; J&G's acceptance of responsibility for developing and marketing fraudulent tax shelters, and for rendering fraudulent opinions in connection with those shelters; J&G's cooperation with the Government's investigation into the tax shelter activities of the firm and its individual lawyers; and J&G's entry into an agreement with the Internal Revenue Service ("IRS") to resolve the IRS's promoter penalty audit of J&G, including the payment of a civil penalty.

J&G has recognized, in its statements to this Office and in the Agreement, that its tax shelter practice has caused serious damage to its reputation, revenues and stability, and that as a result it ultimately cannot continue in business. It was once a thriving firm with over 600 attorneys and offices across the nation. Approximately two-thirds of those attorneys left, and its revenues declined sharply, as Government scrutiny of the firm's tax shelter practices intensified, as civil suits were filed, and as the firm's reputation was accordingly tarnished. The firm has advised the Office that it has recently

closed several of its offices, that it will be closing the last of its offices -- its flagship office in Dallas -- at the end of the month, and that J&G will no longer engage in the practice of law.

J&G made the following statement to the United States Attorney's Office concerning the criminal investigation:

> "We believe certain J&G attorneys developed and marketed fraudulent tax shelters, with fraudulent tax opinions, that wrongly deprived the U.S. Treasury of significant tax revenues. The firm's tax shelter practice was spearheaded by tax practitioners in J&G's Chicago office who are no longer with the firm. Those responsible for overseeing the Chicago tax practice placed unwarranted trust in the judgment and integrity of the attorneys principally responsible for that practice, and failed to exercise effective oversight and control over the firm's tax shelter practice. Unfortunately, that misplaced trust and reliance extended to our initial response to the IRS and led to public statements we issued in support of our legal opinions. Our prior support for the opinions adversely affected the efforts of the IRS to assess and collect tax revenues. We deeply regret our involvement in this tax practice, and the serious harm it caused to the United States Treasury.
>
> "The Chicago tax shelter practice seriously undermined this firm's long-standing reputation, revenues, and stability. We appreciate the willingness of the U.S. Attorney's Office and the IRS to consider those factors, as well as the cooperation we have provided to the Government since 2004, in determining an appropriate resolution of the grand jury and tax proceedings."

J&G has been cooperating with the Office since 2004. Under the terms of the Agreement, J&G Texas will remain in operation to wind up J&G's business affairs, and to ensure continuing cooperation with the Office, the IRS, and the Tax Division of the Department of Justice in ongoing criminal investigations and in any resulting prosecutions, as well as in civil tax matters.

The IRS announced today that it has entered into a settlement with J&G to resolve its promoter penalty audit of the firm.

Mr. GARCIA said, "Jenkens & Gilchrist lawyers designed, sold, implemented and provided legal opinions for illegal tax shelters. These fraudulent cookie-cutter shelters purported to generate well over a billion dollars in tax losses and eliminate hundreds of millions of dollars in taxes owed by wealthy clients. They sounded too good to be true, and they were too good to be true. The firm has acknowledged not only that its tax shelter practice was fraudulent and caused serious harm to the United States Treasury, but also that the practice caused such harm to the firm's reputation and revenues that it cannot survive as a going concern. The demise of Jenkens & Gilchrist demonstrates that a lucrative but fraudulent tax shelter practice may provide short-term financial rewards, but at a great long-term cost."

Mr. GARCIA praised the efforts of the Criminal Investigation Division of the IRS. Mr. GARCIA also noted that the investigation is continuing.

Assistant United States Attorneys DEBORAH E. LANDIS and JAIKUMAR RAMASWAMY are in charge of the investigation.

07-078 ###

# EXHIBIT 2

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 26, 2007

Robert B. Fiske, Jr., Esq.
James P. Rouhandeh, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

**Re: Jenkens & Gilchrist**

Dear Messrs. Fiske and Rouhandeh:

The protection against prosecution with respect to the tax offenses set forth below has been approved by the Tax Division, Department of Justice.

Pursuant to our discussions, the Office of the United States Attorney for the Southern District of New York ("this Office") and Jenkens & Gilchrist ("J&G"),[1] pursuant to the authority granted by the Boards of Directors or Management Committees of J&G Texas, J&G Illinois, J&G California, J&G New York, and JGPC, Inc., in the form of Resolutions for each of these entities (copies of which are attached hereto as Exhibit A), and represented by its undersigned attorneys, hereby enter into this Agreement.

[1] Jenkens & Gilchrist and J&G are defined herein to include Jenkens & Gilchrist, A Professional Corporation, a Texas professional corporation (EIN 75-2204006) ("J&G Texas"); Jenkens & Gilchrist, A Professional Corporation, an Illinois professional corporation (EIN 36-4263272) ("J&G Illinois"); Jenkens & Gilchrist LLP (EIN 95-4775690) ("J&G California"); Jenkens & Gilchrist Parker Chapin, LLP (EIN 13-4148545) ("J&G New York"); and JGPC Incorporated ("JGPC Inc.") (EIN: 20-8614033). In April 2005, all of the attorneys of J&G New York either retired or withdrew from that entity and joined Troutman Sanders LLP or other law firms.

03.03.03

fm

Robert B. Fiske, Esq.
James P. Rouhandeh, Esq.

This Office has been investigating the tax shelter activities engaged in by J&G during the period 1998 through 2004. According to representations made to this Office by and on behalf of J&G, J&G has suffered and continues to suffer significant financial hardship caused largely by its former tax shelter practice, including a significant loss of revenues associated with the departure of 397 attorneys since 2001, with the number of attorneys employed by the firm dropping from 605 attorneys in 2001 to 208 attorneys as of February 28, 2007. J&G has also represented to this Office: that as a result of its financial difficulties, J&G's offices have already been or will soon be closed, and J&G's lawyers have already joined or will join other law firms; that J&G Texas thereafter will remain in operation to wind up J&G's business affairs; that the purposes of this continuing entity will include continuing to cooperate with this Office by assisting in the ongoing criminal investigation of J&G's tax shelter activities and any resulting prosecutions, as well as paying a civil penalty to the Internal Revenue Service (the "IRS") pursuant to the terms of the Closing Agreement reached by J&G and the IRS to resolve the promoter penalty audit and other matters, and otherwise complying with the terms of the Closing Agreement; and that J&G will no longer be engaged in the practice of law. Since September 2004, J&G has cooperated with this Office's investigation. Moreover, J&G has provided a Statement of Responsibility (the "Statement") to this Office, acknowledging that certain J&G attorneys developed and marketed fraudulent tax shelters that wrongly deprived the U.S. Treasury of significant tax revenues. A copy of the Statement is attached hereto as Exhibit B. In consideration of the foregoing, this Office enters into this Agreement with J&G.

On the understandings specified below, this Office, and with respect to tax offenses, the Tax Division, Department of Justice, will not criminally prosecute J&G for crimes arising from J&G's tax shelter activities from 1998 through 2004, including but not limited to: the design, development, marketing, sale, and implementation of certain tax shelters commonly referred to as BOSS, BART, HOMER, and variants of the so-called "Son of BOSS" shelter that went by names including BEST, BEDS, BLISS, COBRA, the Short Option Strategy ("SOS"), and the Option Partnership Strategy ("OPS"); J&G's issuance of legal opinions supporting those tax shelters; J&G's assistance in the defense of those transactions against the IRS; and J&G's failure, at any time, to withhold taxes or file certain tax forms (including IRS Forms 1099 and W-2) with respect to compensation paid to "Paul M. Daugerdas, Chartered." This Agreement does not provide any protection against prosecution for any crimes except as set forth above. It is understood that this Agreement does not apply to any former or current shareholder, partner, associate, or employee of J&G, but only to J&G, as defined above.

It is further understood that J&G has entered into a Closing Agreement with the IRS in connection with the IRS's promoter penalty audit of J&G, and that the Closing Agreement will also resolve all other outstanding issues between J&G and the IRS upon such terms and



fm

Robert B. Fiske, Esq.
James P. Rouhandeh, Esq.

conditions as have been mutually agreed upon. It is understood that the resolution reached in the Closing Agreement is a condition precedent to this Agreement, and that J&G's commission of a Major Event of Default under the terms of the Closing Agreement shall constitute a violation of this Agreement. In view of J&G's agreement to resolve the IRS's promoter penalty audit, and J&G's financial condition, this Office will not seek any restitution or fine from J&G in connection with any of the conduct described in this Agreement.

It is further understood that J&G: (a) shall truthfully and completely disclose all information in its possession and control with respect to the activities of J&G, its current or former shareholders, partners, associates, and employees, concerning all matters about which this Office, the IRS (civil and criminal), and the Tax Division, Department of Justice (civil and criminal) ("Tax DOJ") inquires, which information can be used for any purpose; (b) shall cooperate fully with this Office, the IRS (civil and criminal), Tax DOJ, and any other law enforcement agency designated by this Office; (c) shall volunteer and provide to this Office any information and documents that come to J&G's attention that may be relevant to this Office's investigation; (d) shall use its best efforts to assemble, organize, and provide, in a responsive and prompt fashion, and upon request, in an expedited fashion, all documents, records, information, and other evidence in J&G's possession, custody or control as may be requested by this Office, the IRS (civil and criminal), Tax DOJ, or any other law enforcement agency designated by this Office; (e) shall use its best efforts to make available its present and former shareholders, partners, associates, and employees to provide information and/or testimony before a grand jury or in court proceedings, and in interviews with law enforcement authorities, and to identify witnesses who, to J&G's knowledge may have material information concerning this Office's investigation, including but not limited to the conduct described in the fourth paragraph of this Agreement and in J&G's Statement; (f) shall use its best efforts to provide testimony or establish the original location, authenticity, or other basis for admission in evidence of documents and/or physical evidence in any criminal proceeding as requested by this Office, the IRS (civil and criminal), or Tax DOJ; (g) shall bring to this Office's attention any crimes of which J&G becomes aware that J&G or its current and former shareholders, partners, associates, and employees have committed, and all administrative, civil or criminal proceedings, investigations, or prosecutions of which J&G becomes aware in which J&G, or any of its current and former shareholders, partners, associates, or employees have been or are a subject, target, party, or witness (excluding domestic disputes, traffic and personal injury proceedings, as well as any proceedings regarding real property owned by current and former shareholders, partners, associates, or employees in a personal capacity); and (h) shall commit no crimes whatsoever.

It is further understood that J&G shall maintain the originals of all documents, records, or other items of tangible evidence in its possession and control related to the conduct described in

Robert B. Fiske, Esq.
James P. Rouhandeh, Esq.

the fourth paragraph of this Agreement, at J&G's own expense, in a location or locations that shall be designated in writing to this Office and leased for a period of three years from the signing of this Agreement. J&G shall designate and train appropriate personnel, who will be available for a period of five years, to satisfy its obligations to provide materials under subsection (d) of the preceding paragraph. J&G shall also provide for payment to retain the services of such personnel to fulfill such obligations for a period of three years from the signing of this Agreement. After three years, this Office and/or the IRS shall pay for the storage of these documents and other materials, and for the retention of personnel designated and trained by J&G to satisfy its obligations under subsection (d) of the preceding paragraph. These documents, records and other items of tangible evidence include: (i) the firm's accounting ledgers and billing records pertaining in any manner to the conduct described in the fourth paragraph of this Agreement; (ii) the hard-copy originals of all client files pertaining in any manner to the conduct described in the fourth paragraph of this Agreement, to the extent they presently exist; (iii) the hard-copy originals of all "non-client" files pertaining in any manner to the conduct described in the fourth paragraph of this Agreement, to the extent they presently exist; (iv) electronic copies of all of the files in the firm's IManage database system pertaining in any manner to the conduct described in the fourth paragraph of this Agreement; (v) electronic copies of all of the e-mail currently present on or derived from the firm's e-mail servers contained in the e-mail accounts of certain current and former shareholders, partners, associates, and employees to be designated in writing by this Office upon consultation with J&G; and (vi) the hard drives of current and former shareholders, partners, associates, and employees to be designated in writing by this Office upon consultation with J&G, to the extent such hard drives presently exist.

It is further understood by this Office that by agreeing to take the actions indicated in the preceding two paragraphs, J&G is not waiving any attorney-client or work product privilege with respect to its representation in connection with this Office's criminal investigation, its representation in the IRS promoter penalty audit, and its representation in private civil litigation. It is the understanding of this Office, however, that following the 2004 court decision directing J&G to disclose the names of tax shelter clients, and in the course of complying with grand jury subpoenas issued by this Office, J&G has not maintained or asserted that its activities with respect to the design, development, marketing, sale, and implementation of tax shelters is covered by any attorney-client or work product privilege, or that it had any privileged communications with third parties with respect to such activities.

It is further understood that should J&G commit any crimes after the signing of this Agreement, or should this Office, in its sole discretion, determine that J&G, or any individual or

Robert B. Fiske, Esq.
James P. Rouhandeh, Esq.

entity authorized to act on behalf of J&G, has given false, incomplete, or misleading testimony or information, or should J&G otherwise violate any provision of this Agreement, J&G shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including perjury and obstruction of justice. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against J&G, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. It is J&G's intent by entering into this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that should J&G commit any crime after the signing of this Agreement, or should this Office determine that J&G, or any individual or entity authorized to act on behalf of J&G, has given false, incomplete, or misleading testimony or information, or should J&G otherwise violate any provision of this Agreement, (a) all statements made by shareholders, partners, associates, employees, and agents of J&G to this Office or other designated law enforcement agents, and any testimony given by shareholders, partners, associates, employees, and agents of J&G before a grand jury or other tribunal, whether prior to or subsequent to the signing of this Agreement, and any leads from such statements or testimony shall be admissible in evidence in any criminal proceeding brought against J&G; and (b) J&G shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is J&G's intent by entering into this Agreement to waive all rights in the foregoing respects.

It is further understood that this Agreement does not bind any federal, state or local prosecuting authority other than this Office and, to the extent set forth above, the Tax Division, Department of Justice. This Office will, however, bring the cooperation of J&G to the attention of other prosecuting offices, if requested by J&G.

It is further understood that this Office and/or J&G may disclose this Agreement to the public.

With respect to this matter, this Agreement supersedes all prior, if any, understandings, promises and/or conditions between this Office, the Tax Division, Department of Justice, and J&G. No additional promises, agreements, and conditions have been entered into other than



fm

Robert B. Fiske, Esq.
James P. Rouhandeh, Esq.

those set forth in this letter and none will be entered into unless in writing and signed by all parties.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By: ______________________
Jaikumar Ramaswamy/Deborah E. Landis
Assistant United States Attorneys
(212) 637-2204/2512

APPROVED:

______________________
SHIRAH NEIMAN
Chief Counsel to the United States Attorney

ACCEPTED AND AGREED BY:

Patrick E. Mitchell — 3-26-07

PATRICK E. MITCHELL, ESQ., — DATE
Authorized Signatory for:
J&G Texas
J&G Illinois
J&G California
J&G New York
JGFC, Inc.

Attorneys for Jenkens & Gilchrist:

______________________ 3/26/07
ROBERT B. FISKE, JR., ESQ. — DATE

James P Rouhandeh /RLL — 3/26/07
JAMES P. ROUHANDEH, ESQ. — DATE

Exhibit A

# UNANIMOUS CONSENT IN LIEU OF MEETING OF THE BOARD OF DIRECTORS OF JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION

Pursuant to the authority contained in Article 9.10B of the Texas Business Corporation Act, the undersigned, being all of the members of the Board of Directors of Jenkens & Gilchrist, A Professional Corporation, a Texas professional corporation (the "Company"), do hereby adopt the following recitals and resolutions with the same force and effect as though adopted at a special meeting of the Board of Directors duly called and held:

Resolutions Approving Settlement Agreements

**RESOLVED**, that the Board of Directors hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Company, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Board of Directors.

**RESOLVED**, in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Company, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Company as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED**, that all actions heretofore taken by the officers and directors of the Company in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07 Patrick E. Mitchell
Patrick E. Mitchell

Date: 3-26-07 Thomas H. Cantrill
Thomas H. Cantrill

Date: 3-26-07 John C. Eichman
John C. Eichman



DALLAS1 1119712v1 12520-00106

**UNANIMOUS WRITTEN CONSENT**
**OF THE MANAGEMENT COMMITTEE**
**OF**
**JENKENS & GILCHRIST, LLP,**

The undersigned being the Management Committee of Jenkens & Gilchrist, LLP, a California limited liability partnership (the "Partnership"), pursuant to the authority granted to them in the Partnership Agreement of the Partnership, do hereby take the following action and adopt the following resolutions:

**Resolutions Approving Settlement Agreements**

**RESOLVED**, that the Management Committee hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Partnership, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Management Committee.

**RESOLVED**, in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Partnership, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Partnership as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED**, that all actions heretofore taken by the representatives and members of the Management Committee of the Partnership in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.



DALLAS1 1119712v1 12510-00106

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: March 26, 2007 — Patrick E. Mitchell
Patrick E. Mitchell

Date: March 26, 2007 — Thomas H. Cantrill
Thomas H. Cantrill

**UNANIMOUS WRITTEN CONSENT
OF THE BOARD OF DIRECTORS OF
JENKENS & GILCHRIST,
A PROFESSIONAL CORPORATION
(ILLINOIS)**

The undersigned, being all of the directors of Jenkens & Gilchrist, a Professional Corporation, an Illinois professional corporation (the "Company"), do hereby consent and agree to the adoption of the following resolutions pursuant to Section 8.45 of the Business Corporation Act of the State of Illinois:

**Resolutions Approving Settlement Agreements**

**RESOLVED**, that the Board of Directors hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Company, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Board of Directors.

**RESOLVED**, in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Company, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Company as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED**, that all actions heretofore taken by the officers and directors of the Company in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07 Patrick E. Mitchell

Patrick E. Mitchell

Date: 3-26-07

Thomas H. Cantrill



DALLAS1 1119712v1 12520-00106

**UNANIMOUS WRITTEN CONSENT**
**OF THE MANAGEMENT COMMITTEE**
**OF**
**JENKENS & GILCHRIST PARKER CHAPIN LLP,**

The undersigned being the Management Committee of Jenkens & Gilchrist Parker Chapin LLP, a New York limited liability partnership (the "Partnership" or the "Firm"), pursuant to the authority granted to them in the Partnership Agreement of the Partnership, do hereby take the following action and adopt the following resolutions:

**Resolutions Approving Settlement Agreements**

**RESOLVED**, that the Management Committee hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Partnership, certain of its affiliates and certain agencies of the United States government, (the "Agreements") in the form presented to and reviewed by each of the members of the Management Committee.

**RESOLVED**, in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Partnership, to execute and delivered Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Partnership as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED**, that all actions heretofore taken by the representatives and members of the Management Committee of the Partnership in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07

Patrick E. Mitchell

Patrick E. Mitchell

Date: 3-26-07

Thomas H. Cantrill

Thomas H. Cantrill

**UNANIMOUS WRITTEN CONSENT**
**OF THE BOARD OF DIRECTORS OF**
**JGPC INCORPORATED**

The undersigned, being all of the directors of JGPC Incorporated, a New York corporation (the "Company"), do hereby consent and agree to the adoption of the following resolutions pursuant to applicable law:

**Resolutions Approving Settlement Agreements**

**RESOLVED**, that the Board of Directors hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Company, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Board of Directors.

**RESOLVED**, in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Company, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Company as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED**, that all actions heretofore taken by the officers and directors of the Company in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.



DALLAS1 1119712v1 12520-00104

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07 Patrick E. Mitchell

Patrick E. Mitchell

Date: 3-26-07

Thomas H. Cantrill



DALLAS1 1119712v1 12520-00106

Exhibit B

# Jenkens & Gilchrist

A PROFESSIONAL CORPORATION

## STATEMENT OF JENKENS & GILCHRIST

Jenkens & Gilchrist ("J&G") has agreed to resolve a criminal investigation conducted by the United States Attorney's Office for the Southern District of New York, as well as a civil promoter penalty audit undertaken by the IRS, in connection with tax shelters promoted by the firm's Chicago office to high net worth individuals, and legal opinions issued by the firm in support of those shelters, during the period from 1999 through 2003. Under the terms of the agreement with the United States Attorney's Office, the Government will not prosecute J&G, and J&G will fully cooperate with the United States Attorney's Office and the IRS. In final settlement of the promoter penalty audit, J&G has undertaken to pay a civil penalty to the IRS.

J&G has made the following statement to the United States Attorney's Office for the Southern District of New York concerning the investigation:

"We believe certain J&G attorneys developed and marketed fraudulent tax shelters, with fraudulent tax opinions, that wrongly deprived the U.S. Treasury of significant tax revenues. The firm's tax shelter practice was spearheaded by tax practitioners in J&G's Chicago office who are no longer with the firm. Those responsible for overseeing the Chicago tax practice placed unwarranted trust in the judgment and integrity of the attorneys principally responsible for that practice, and failed to exercise effective oversight and control over the firm's tax shelter practice. Unfortunately, that misplaced trust and reliance extended to our initial response to the IRS and led to public statements we issued in support of our legal opinions. Our prior support for the opinions adversely affected the efforts of the IRS to assess and collect tax revenues. We deeply regret our involvement in this tax practice, and the serious harm it caused to the United States Treasury.

"The Chicago tax shelter practice seriously undermined this firm's long-standing reputation, revenues, and stability. We appreciate the willingness of the U.S. Attorney's Office and the IRS to consider those factors, as well as the cooperation we have provided to the Government since 2004, in determining an appropriate resolution of the grand jury and tax proceedings."

# EXHIBIT 3

Internal Revenue Service
United States Department of the Treasury

## Jenkens & Gilchrist Admits It Is Subject to $76 Million IRS Penalty

IR-2007-71, March 29, 2007

WASHINGTON — The Internal Revenue Service today announced that it has reached a settlement with the law firm of Jenkens & Gilchrist, which agreed that they are subject to a penalty of $76 million. The penalty stems from the firm's promotion of abusive and fraudulent tax shelters and violation of the tax law concerning tax shelter registration and maintenance and turnover to the IRS of tax shelter investor lists.

"While it is unfortunate that the 56-year-old national firm of Jenkens & Gilchrist is terminating its legal practice, this should be a lesson to all tax professionals that they must not aid or abet tax evasion by clients or promote potentially abusive or illegal tax shelters, or ignore their responsibilities to register or disclose tax shelters," said IRS Commissioner Mark W. Everson. "Pursuing abusive tax shelters is a top priority for the IRS."

The firm aggressively marketed potentially abusive tax shelters to high-net-worth individuals. Some of the packages marketed to these individuals included listed transactions such as COBRA (Currency Options Bring Reward Alternatives); BEST (Short Option/Basis Enhancing Securities Transaction); BLISS (Basis Leveraged Investment Swap Spreads); OPS (Option Partnership Strategy); BEDS (Basis Enhancing Derivatives Structure); and BOSS (Bond & Option Sale Strategy).

The firm also marketed two transactions that are not listed transactions — HOMER (Hedge Option Monetization of Economic Remainders) and BART (Basis Adjustment Remainder Trusts).

The agency estimates that 1,400 investors are affected by the firm's advice and will owe interest and penalties on their underpayment of tax. Jenkens & Gilchrist, which was once a 600-lawyer national firm, is in the process of winding down its legal practice and business affairs.

The national law firm of Jenkens & Gilchrist is composed of a corporation in Dallas, Texas; a corporation in Chicago, Illinois; a partnership in Los Angeles, California; and a partnership in New York City.

**Related Items:**

- Department of Justice news release
- Abusive Tax Schemes
- Compliance & Enforcement

Subscribe to IRS Newswire