**IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership,** | § | |
| **Plaintiff,** | § | **Case No. 05-231 T** |
| | § | **Chief Judge Edward Damich** |
| **v.** | § | |
| **United States of America,** | § | |
| **Defendant.** | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS AND IN OPPOSITION TO J&G'S MOTION TO QUASH SUBPOENA**

Respectfully submitted,

Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

# TABLE OF AUTHORITIES

**Federal Cases**

Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007) ... 4
Clark v. Experian Info. Solutions, Inc., No. 3, 7882, 2006 WL 626820, *2 (N.D. Ill. Mar. 8, 2006) ... 12
Coefield v. City of LaGrange, Ga., 913 F. Supp. 608, 615 (D.D.C. 1996) ... 10
COLM Producer, Inc. v. United States, 460 F. Supp.2d 713, 716-17 & n.1 (N.D. Tex. 2006) ... 4
Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ... 9
Fid. & Deposit Co. of Md., 122 F.R.D. 447, 449 (S.D.N.Y. 1988) ... 12
GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003) ... 14
Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ... 8
Hickman v. Taylor, 329 U.S. 495, 507 (1947) ... 8, 18
In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001) ... 14
In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp.2d 201, 210 n. 14 (D.D.C. 2005) ... 11, 12
Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) ... 9
Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp.2d 608, 614-18 (E.D. Tex. 2006) ... 4, 5
Long Beach Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 189 F. Supp. 589 (S.D. Cal. 1960), rev'd on other grounds, 189 F.2d 403 (9th Cir. 1960) ... 15
Long v. Commissioner, 660 F.2d 416, 419 (10th Cir. 1981) ... 4
North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 50 (D.D.C. 2005) ... 9
Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n. 5 .. 12
Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987) ... 9
United States v. Amerigroup Illinois, Inc., No. 02-6074, 2005 WL 3111972, *2 (N.D. Ill. Oct. 21, 2005) ... 15

**Federal Statutes**

I.R.C. § 6111 ... 6
I.R.C. § 6707 ... 6, 7, 13, 15
I.R.C. § 752 ... 2, 3, 4, 5, 7

**Federal Regulations**

Treas. Reg. § 1.752-6 ... 4, 5
Treasury Regulation § 1.752-6T ... 4

**Other Authorities**

Chief Counsel Notices CC-2003-020 ... 4
Notice 2000-44 ... 5
W. Brazil, Protecting the Confidentiality of Settlement Negotiations, 39 Hastings L.J. 955, 956 (1988) (internal quotation marks omitted), affirmed, 439 F.3d 740 (D.C. Cir. 2006) ... 12

## TABLE OF CONTENTS

I. STATEMENT OF THE CASE .......... 2

A. Introduction .......... 2

B. The Transactions at Issue .......... 3

C. The Taxpayers' Reliance on and the IRS's Repudiation of the *Helmer* Line of Cases .......... 3

D. Recognizing the Weakness of Its Position Under § 752, the IRS Has Asserted that as a Factual Matter, the Options Are a "Single" Net Option .......... 5

E. In Its Zeal to Penalize Tax Advisors, the IRS Has Taken the Opposite Position - that as a Factual Matter, the Long and Short Options Are Not a Single Net Option – to Increase the Penalty for Failing to Register a Tax Shelter .......... 6

F. J&G Is Not a Mere Bystander .......... 6

G. Plaintiff's 30(b)(6) Subpoena and J&G's Motion to Quash .......... 7

II. ARGUMENT .......... 8

A. Fed. R. Civ. P. 45(c)(3)(A) Requires A Court To Balance Competing Interests In Deciding A Motion To Quash .......... 8

B. The Information Sought By Subpoena Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law. .......... 10

C. J&G Has Not Established a Right To Protection Under Its Confidentiality Agreement With The Government, The Attorney-Client Privilege Or The Work-Product Doctrine. .......... 11

1. There Is No Federal Settlement Privilege and Fed. R. Evid. 408 Is Inapplicable to the Information Sought .......... 11

2. Neither the Attorney-Client Privilege nor the Work-Product Doctrine Applies to the Information Sought .......... 13

D. J&G Has Not Established That Complying With Plaintiff's Subpoena Would Impose An Undue Burden. .......... 15

E. The Balance Of Factors Requires That J&G's Motion To Quash Be Denied And Plaintiff's Motion To Compel Be Granted. .......... 16

III. CONCLUSION .......... 18

IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments, LLC, as<br>Tax Matters Partner of JBJZ Partners,<br>A South Carolina general partnership, | §<br>§<br>§<br>§ | |
| Plaintiff, | § | Case No. 05-231 T |
| | § | Chief Judge Edward Damich |
| v. | § | |
| | § | |
| United States of America, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS AND IN OPPOSITION TO J&G'S MOTION TO QUASH SUBPOENA**

Plaintiff, JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, by its undersigned attorneys, files this Memorandum in Support of its Motion to Compel Jenkens & Gilchrist ("J&G") to Comply with Plaintiff's Subpoena for Rule 30(b)(6) Deposition and Production of Documents ("Motion to Compel") and in Opposition to J&G's Motion to Quash and Motion for Protection from Plaintiff's Subpoena ("Motion to Quash"). J&G's brief in support of its motion argues that responding to the subpoena "would be unduly burdensome and would require J&G to disclose the terms of a confidential settlement agreement with the Internal Revenue Service ('Closing Agreement') along with confidential documents and information relating to the Closing Agreement, all of which are irrelevant to Plaintiff's claims." (J&G Br. at 1.) Because this argument is without merit, J&G's Motion to Quash should be denied. Conversely, Plaintiff's Motion to Compel should be granted because the information sought by the subpoena is narrow, directly related to the fundamental issues in

this case, unprotected by any rule of privilege or confidentiality, and necessary for Plaintiff to prepare its case and this Court to determine the facts and the law.

## I. STATEMENT OF THE CASE

### A. Introduction

As the Court is aware, this case is related to several others, including Murfam Farms, LLC, v. United States, No. 06-247T (consolidated) (Fed. Cl.), and Woods v. United States, No. 05-216 (consolidated) (W.D. Tex.), MDL No. 1727 (S.D. Ind.). Discovery has been proceeding in this case and the Murfam and Woods cases for well over a year.[1] Plaintiff has served the IRS in this and the cases referenced above with Rule 30(b)(6) deposition notices that request information similar to that requested in the subpoena J&G has moved to quash. Plaintiff has received uniformly inadequate responses and objections to those notices.[2] As is more fully explained below, the uniform refusal by the IRS and J&G to provide information to which Plaintiff is entitled suggests a carefully thought-out and coordinated effort by the IRS to "hide the ball" from both the Plaintiff and the Court.

Plaintiff's discovery requests are directly aimed at two key issues before the Court, one legal and one factual. The legal question is what the received interpretation of I.R.C. § 752 was at the time of the transactions in dispute and whether the IRS's conduct in changing that interpretation in June 2003 and applying it retroactively to transactions going back to 1999 was proper. The factual issue is how the IRS has applied I.R.C. § 752 to the currency options in the disputed transactions. The IRS's position on these issues is

[1] Counsel for all parties to these cases have agreed that discovery may be exchanged and used in all of these related cases.

[2] See Objections of the United States to Plaintiffs' 30(b)(6) Deposition Notice, App. at 38. Plaintiffs will soon file motions to compel the government in this case.

consistent in one respect only: it changes depending on which interpretation will maximize revenue to the Treasury. It is inconsistent in every other material respect.

### B. The Transactions at Issue

The transactions in dispute in this case involve European style foreign currency digital options. The taxpayers in this case purchased a long option from Duetsche Bank that required Duetsche Bank to pay a fixed amount if the "spot" exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. At the same time, the taxpayers in this case sold a short option to Duetsche Bank that required the taxpayer to pay a fixed amount if the spot exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. The taxpayer then contributed both the purchased, long option and the sold, short option to a partnership, here, JBJZ Partners. For purposes of computing their basis in JBJZ partners, the taxpayers included the amount paid to Duetsche Bank for the long option (the "Long Premium") but did not reduce their basis by the amount received from Duetsche Bank from the sale of the short option (the "Short Premium"). Thus, the taxpayers calculated their basis in the JBJZ Partners by treating the long and short options as separate options instead of a single net option. As the short option was not "in-the-money" at the time it was contributed to JBJZ Partners, it was a contingent obligation. That is, there was no liability to Duetsche Bank unless and until the spot exchange rate exceeded the strike exchange rate.

### C. The Taxpayers' Reliance on and the IRS's Repudiation of the Helmer Line of Cases

The transactions at issue were undertaken in reliance on a line of case law that spans several decades. In fact, the taxpayers in the present case took the same position that the IRS had successfully espoused in prior cases *against* taxpayers: that under I.R.C. § 752,

contingent obligations, and more specifically short option positions, are not "liabilities" for tax purposes when they are assumed by a partnership. See Helmer v. Commissioner, 34 T.C.M. (CCH) 727 (1975); accord Long v. Commissioner, 660 F.2d 416, 419 (10th Cir. 1981); See also Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007); COLM Producer, Inc. v. United States, 460 F. Supp.2d 713, 716-17 & n.1 (N.D. Tex. 2006); Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp.2d 608, 614-18 (E.D. Tex. 2006). Under this line of authority, a partnership's assumption of a short option position has no effect on a partner's basis in the partnership. Applied to the currency options at issue here, the rule provided a favorable -- and entirely legitimate -- tax benefit to the taxpayers.

Plaintiff sought and received legal opinions, one from J&G and one from Brown & Wood, LLP, both of which supported the manner in which plaintiffs reported these transactions on their federal tax returns for 1999. In June 2003, however, the Treasury Department promulgated new regulations under I.R.C. § 752, which altered the definition of "liability" under that section by including contingent obligations. Treas. Reg. § 1.752-6T, App. at 16-20. Treasury Regulation § 1.752-6T purported to apply the new definition of “liability” to transactions going back to October 18, 1999. At about the same time that Treas. Reg. § 1.752-6T was issued, the IRS also released Chief Counsel Notices CC-2003-020, which sets forth the IRS’s litigation position with respect to the contingent obligation issue in cases involving COBRA and similar transactions, relying primarily on § 1.752-6T for authority, App. at 4-5.

At the same time, the IRS also issued a Notice of Proposed Rulemaking for a prospective, permanent rule addressing the contingent obligation issue, the preamble to

which expressly stated that the IRS would no longer follow Helmer. Assumption of Partner Liabilities, 68 Fed. Reg. 37434, 37436 (June 24, 2003), App. at 23-24. One court has already ruled that the retroactive aspect of the new regulations is invalid and that their application, at least to transactions occurring between October 18, 1999, and September 5, 2000, the date Notice 2000-44[3] was issued -- the relevant period in the present cases -- is an abuse of discretion. Klamath, 440 F. Supp.2d at 623.

**D. Recognizing the Weakness of Its Position Under § 752, the IRS Has Asserted That as a Factual Matter, the Options Are a "Single" Net Option**

In an effort to avoid the problems of logic inherent in its inconsistent positions with respect to whether a contingent obligation is a liability for tax purposes under I.R.C. § 752, and to establish an alternative theory should the retrospective application of regulation Treas. Reg. § 1.752-6 be invalidated, the IRS determined that *as a factual matter*, the long and short options that were contributed to the partnership in this case were a single net option rather than two options (one long and one short). The result of this *factual* determination is that the basis of the options contributed to JBJZ Partners is calculated under I.R.C. as the net premium paid (i.e., the Long Premium less the Short Premium) instead of the Long Premium unreduced by the Short Premium. *See* FPAA Determination 6, App. at 33, 34. Further, the government's expert, David DeRosa, opined on May 31, 2007 that the two options – one long and one short – are a single net option.[4]

[3] App. at 1-3.
[4] Expert Report of David F. DeRosa dated May 31, 2007 at 61-91. The report is not attached as it is approximately 125 pages long.

**E. In Its Zeal to Penalize Tax Advisors, the IRS Has Taken the Opposite Position - that as a Factual Matter, the Long and Short Options Are Not a Single Net Option – to Increase the Penalty for Failing to Register a Tax Shelter**

While the IRS's factual position as to Plaintiff and similarly situated taxpayers works to *increase* revenue for the Treasury, it also works to *reduce* potential I.R.C. § 6707[5] penalties against tax advisors that allegedly failed to properly register the transactions at issue as a tax shelter under I.R.C. § 6111.[6] The IRS has therefore taken the opposite position -- that the purchased, long option and sold, short option *are not* a single net option, but are instead *separate* options -- to calculate the penalty under I.R.C. § 6707, which is 1% of the aggregate amount invested in the transaction. Incredibly, this is the opposite of the IRS's litigation position against Plaintiff and actually *supports* Plaintiff tax treatment of the transactions. Indeed, the IRS's position that the long option and short option are separate is the foundation for a $76 million penalty against Jenkens & Gilchrist[7] and a $39 million penalty against Brown & Wood.[8] Although the IRS's inconsistent positions are relatively well-known among tax litigators,[9] Defendant is trying desperately to prevent discovery on this topic in this and related cases.

**F. J&G Is Not a Mere Bystander**

Plaintiffs in this case and in Woods engaged the J&G law firm, among others, to render tax opinions with respect to these transactions at issue. On March 28, 2007, the U.S. Attorney for the Southern District of New York issued a statement announcing that he had

---

[5] App. at 25.
[6] App. at 27-31.
[7] See J&G Brief, App. at 45.
[8] Brown & Wood has not yet been the subject of a discovery request. Like J&G, however, that firm recently settled its tax shelter registration dispute with the IRS, agreeing to pay a $39.4 million penalty. See IR-2007-103 (May 23, 2007), App. at 32.
[9] Indeed, this very topic was the subject of a January 2007 ABA Tax Section panel. App. at 43-59.

reached a "non-prosecution cooperation agreement" ("Settlement Agreement") with J&G in connection with its role in COBRA transactions and others not at issue here. J&G Br., Ex. 2, App. at 21. The details of the Settlement Agreement are contained in a March 26, 2007, letter from the Department of Justice ("DOJ") to J&G's counsel, Davis Polk & Wardwell. Id. at 25-30. Among the facts revealed in that letter is the existence of a "Closing Agreement" between the IRS and J&G resolving the IRS's promoter penalty audit of J&G, which is said to be a condition precedent to the Settlement Agreement. Id. at 26-27.

**G. Plaintiff's 30(b)(6) Subpoena and J&G's Motion to Quash**

Because the IRS's's factual position with respect to the purchase of long options and the sale of short options in calculating and imposing or threatening to impose I.R.C. § 6707 penalties is inconsistent with its position with respect to COBRA investors, including Plaintiff, and because the government has uniformly refused to produce Rule 30(b)(6) witnesses and documents seeking information on this issue,[10] Plaintiffs served a subpoena on J&G on April 25, 2007, seeking a Rule 30(b)(6) witness and documents narrowly confined to the issue of how the government calculated the I.R.C. § 6707 "civil penalty" J&G is said to have agreed to pay the IRS pursuant to the Closing Agreement. Id. at 26. J&G responded by serving the present motion to quash on May 16, 2007, claiming, *inter alia*, that a confidentiality agreement with the IRS precludes it from complying with the subpoena.

It therefore appears that the IRS is engaged in a concerted effort to prevent Plaintiff in this and related cases from gaining access to information that is crucial to their ultimate claim: that the IRS is taking not only inconsistent legal positions on I.R.C. §752, but also taking inconsistent factual positions on the long and short options at issue in this case. The

[10] See Objections of the United States to Plaintiff's 30(b)(6) Deposition Notices, App. at 38.

Federal Rules of Civil Procedure do not countenance such conduct. J&G's Motion to Quash should therefore be denied and Plaintiff's Motion to Compel should be granted.

## II. ARGUMENT

### A. Fed. R. Civ. P. 45(c)(3)(A) Requires A Court To Balance Competing Interests In Deciding A Motion To Quash.

Fed. R. Civ. P. 26(b)(1) and Rule 26 (b)1 of the Rules of the Court of Federal Claims provide in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The Federal Circuit has instructed that in considering a motion to compel, "a court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986). In fact, the very "[p]urpose of discovery is to provide a mechanism for making relevant information available to litigants." Fed. R. Civ. P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties is essential to proper litigation") (emphasis added)).

The scope of discovery is not unlimited, however. Fed. R. Civ. P. 45(c)(3)(A), which governs the application of Rule 26(c) to subpoenas, provides in pertinent part that a subpoena may be quashed or modified if it:

> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

In determining whether a subpoena should be quashed or modified, courts balance such factors as "relevance, the need of the party for the documents, the breadth of the document request, the particularity with which the documents are described and the burden imposed." North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 50 (D.D.C. 2005). "[A] court may consider as one factor [in assessing the burden of complying with a subpoena] that a deponent is not a party." Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987) (Markey, C.J.); Leake, 231 F.R.D. at 50 ("non-party status is also relevant in considering the burden") (citation omitted).

While some courts give a movant's non-party status special weight in balancing the relevant factors and competing interests, Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998), it is hardly the "overarching policy" of Rule 45. J&G Br. at 3. On the contrary, "[t]he administration of justice would not be aided . . . by a rule relieving [non-parties] from giving particular evidence." Truswal, 813 F.2d at 1210. Moreover, unlike the movants in the cases cited in J&G's Brief at 3, J&G is not exactly a "stranger" to the events underlying this litigation. *See* Cusumano, 162 F.3d at 717. In fact, it played a major role in those events, acting as Plaintiff's legal counsel in facilitating and implementing the transactions at issue and rendering a tax opinion with respect to those transactions -- a fact that vitiates the primary reason for giving any special weight to non-party status. In every case, the burden of persuasion is on the movant on a motion to quash. Truswal, 813 F.2d at 1210; Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003). As the following discussion demonstrates, J&G has failed to meet its burden, and its motion to quash should therefore be denied. In the following discussion, on the other hand, Plaintiff more than meets its burden with respect to its Motion to Compel, which should therefore be granted.

**B. The Information Sought By Subpoena Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law.**

Whether the information sought by subpoena is relevant is often the first factor courts consider in deciding motions to quash or to compel. For discovery purposes, information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This standard "is not a stringent one." Coefield v. City of LaGrange, Ga., 913 F. Supp. 608, 615 (D.D.C. 1996). Nevertheless, J&G asserts that the information sought in the subpoena is irrelevant to Plaintiff's case because J&G's settlement with the IRS "cannot possibly affect Plaintiff's claims" or "further any claims or defenses in the case." J&G Br. at 4. Given its familiarity with and participation in the very transactions at issue here and in related cases, J&G knows better. And as discussed in this motion on pages 2 through 6, the IRS's shifting legal and factual positions that are the subject of the subpoena are central to the issues in this case.

The IRS's position as to whether the currency options at issue are a single transaction or separate appears to depend entirely on which position is more advantageous to the IRS in any given context. It views the long and short options as a single transaction for purposes of reducing a taxpayer's partnership basis and thereby increasing its tax liability, but as separate for purposes of increasing the penalties for non-registration of a tax shelter to be assessed against the advisor that devised the transaction. The government cannot have it both ways: either the foreign currency options at issue are, as a factual matter, separate transactions or they are not. To treat them differently in different contexts is analytically incoherent. J&G's view of the issues in this case and of the relevance of the

information sought to those issues is at best simplistic and at worst disingenuous. In either event, its claim of irrelevancy is meritless.

### C. J&G Has Not Established a Right To Protection Under Its Confidentiality Agreement With The Government, The Attorney-Client Privilege Or The Work-Product Doctrine.

#### 1. There Is No Federal Settlement Privilege and Fed. R. Evid. 408 Is Inapplicable to the Information Sought

How the IRS calculates penalties in connection with the transactions that have given rise to this and related cases is a factual matter that lies at the very heart of Plaintiff's case. The Closing Agreement resolves the issues related to the IRS's promoter penalty audit of J&G and apparently imposes a $76 million civil penalty. J&G Br., Ex. 2, App. at 26, 45. Consequently, Plaintiff requested the Closing Agreement in paragraph 1(a) of its subpoena. According to J&G, however, it is precluded by a confidentiality agreement with the government from producing the Closing Agreement or disclosing any of its terms upon pain of having both the Closing Agreement and the Settlement Agreement terminated. J&G Br. at 3-4. The source of J&G's obligation of confidentiality is never explicitly stated, but presumably it is a confidentiality clause in the Closing Agreement. Similarly, the source of the legal authority upon which J&G rests its claim that the Closing Agreement and related documents and testimony are not discoverable is unclear, *see* J&G Br., Ex. 2, App. at 4-5, but there are only two possibilities: a federal "settlement privilege" or Fed. R. Evid. 408. Neither supports J&G's claim.

"The weight of authority suggests that there is no generalized privilege for settlement communications and that they are discoverable, at least after a showing of substantial need." In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp.2d 201, 210 n. 14 (D.D.C. 2005), *citing* W. Brazil, *Protecting the Confidentiality of*

*Settlement Negotiations*, 39 Hastings L.J. 955, 956 (1988) (internal quotation marks omitted), *affirmed*, 439 F.3d 740 (D.C. Cir. 2006). *Accord*, Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n. 5 (S.D.N.Y.) (Rule 408 does not create a settlement privilege).

Thus, the confidentiality issue turns on Rule 408, which provides in pertinent part:

> (a) Prohibited uses. -- Evidence of [compromise negotiations and settlement] is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount. . . .
>
> (b) Permitted uses. -- This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). . . .

It should be noted at the outset that by its terms, Rule 408 applies to the *admissibility* of evidence at *trial* and not to whether information is *discoverable*. Commodity Futures, 370 F. Supp.2d at 211.

> The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of [settlement] discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure. . . . Therefore, a party is not allowed to use Rule 408 as a screen for the curtailing of an adversary's right of discovery.

Id., *citing* 2 Weinstein's Federal Evidence ¶408.07 at 408-26 (2005). *Accord*, Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

Moreover, Rule 408 "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiation"; rather, the rule only excludes evidence used to prove liability for or invalidity of the claim or its amount, and does not apply to evidence offered for other purposes. Clark v. Experian Info. Solutions, Inc., No. 3, 7882, 2006 WL 626820, *2 (N.D. Ill. Mar. 8, 2006).

Rule 408 is clearly inapplicable to the information sought in the present case. See Exhibit A to Plaintiff's Subpoena, a copy of which is attached hereto as Exhibit 4. First, Plaintiff would have no standing to challenge the Closing Agreement even if it had an interest in doing so. Hence, the information sought cannot be offered for any of the purposes prohibited by Rule 408. Second, the Closing Agreement is likely to be directly probative of the calculations the IRS used to determine the penalty it assessed against J&G, and therefore of whether it treated the options at issue as a single option or as separate. These purely factual matters are necessary to Plaintiff's preparation of its case. Similarly, the documents and testimony related to the IRS's calculations will reveal whether the IRS assessed or threatened to assess additional penalties against J&G under I.R.C. §6707, and if so, how it calculated or intended or threatened to calculate them. The information Plaintiff seeks is likely to raise inferences about the IRS's intent and the propriety of how it is proceeding in this and related cases, evidence that is directly pertinent. Hence, the information sought is certainly discoverable and likely to be admissible at trial.

**2. Neither the Attorney-Client Privilege nor the Work-Product Doctrine Applies to the Information Sought**

Since Plaintiff's subpoena requests no information that is conceivably privileged, the attorney-client privilege and the work-product doctrine are irrelevant. Nevertheless, J&G asserts that "[n]one of the information [it] possesses" that is responsive to paragraphs 1(b)-(e) of the subpoena is discoverable because it "is protected by the attorney-client privilege and the work-product exemption." J&G Br. at 5. The subpoena asks neither about J&G's communications with its attorneys, nor about its attorneys' communications with J&G, nor about its attorneys' thoughts, impressions or opinions; it seeks only

information communicated by the IRS to J&G. Whether the IRS communicated directly with J&G or indirectly through J&G's outside counsel, the result is the same: no attorney-client privilege or work-product protection applies, the latter of which can in any case only be invoked by J&G's attorneys, and not by J&G. And the subpoena on its face only calls for production of "non-privileged documents." J&G Br., App. at 8.

J&G's claim that the IRS never discussed its computation of the penalty with J&G and that J&G has no documents related to that issue is so incredible that it gives rise to the suspicion that J&G is playing "pickle-in-the-middle" with this information -- and Plaintiff is "it." It is simply not possible that J&G agreed to pay a $76 million penalty, if that is the "civil penalty" referred to in the Settlement Agreement, with no information about how the IRS arrived at that figure. The only rational explanation for this assertion is that the information sought is in the possession or within the knowledge of its outside counsel rather than J&G.[11] Significantly, J&G has provided no log of responsive documents that it claims are privileged as required by Fed. R. Civ. P. 45 (d)(2)(A). Absent a privilege log, it is impossible to examine its claim; hence, its claim is entitled to no weight in the balance of factors relevant to its Motion to Quash. Indeed, "[failure to comply with [the rule] is deemed to waive the underlying privilege claim." GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003), *citing* In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001).

[11] Plaintiff does not believe that information in the possession of J&G's counsel is outside of J&G's control. Thus, this does not present a "technical" defense to the subpoena. But if need be, Plaintiff will serve J&G's outside counsel with a subpoena.

**D. J&G Has Not Established That Complying With Plaintiff's Subpoena Would Impose An Undue Burden.**

A mere assertion that compliance with a subpoena would be burdensome and onerous is not sufficient to establish this factor without showing the manner and extent of the burden. Long Beach Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 189 F. Supp. 589 (S.D. Cal. 1960), *rev'd on other grounds*, 189 F.2d 403 (9th Cir. 1960). "*Ipse dixits* will not suffice." United States v. Amerigroup Illinois, Inc., No. 02-6074, 2005 WL 3111972, *2 (N.D. Ill. Oct. 21, 2005). Rather, the movant must demonstrate with "affirmative and compelling proof" that the burden of producing in undue. Id.

Yet J&G makes no attempt to assess the burden of complying with the five narrowly drawn requests for documents in the subpoena. Instead of addressing the volume of documents sought and the cost of producing them, J&G pleads lack of financial and staffing resources to comply with the subpoena. J&G Br. at 6-7. It even claims that it "now continues to operate *solely*" to wind up its affairs. Id. at 2 (emphasis added). But its Settlement Agreement with the government tells a very different story. For example, the agreement states:

> that J&G Texas . . . will remain in operation to wind up J&G's business affairs; [and] that the purposes of this continuing entity will include continuing to cooperate with this Office . . . .

J&G's Ex. 2, App. at 26.

That cooperation includes the requirement that J&G "use its best efforts" to:

- assemble, organize, and provide, in a responsive and prompt fashion , . . . all documents, records, information, and other evidence in J&G's possession, custody or control as may be requested by this Office, the IRS (civil and criminal), Tax DOJ, or any other law enforcement agency designated by this Office;

- make available its present and former shareholders, partners, associates, and employees to provide information and/or testimony before a grand jury or in court proceedings, and in interviews with law enforcement authorities;

- identify witnesses who, to J&G's knowledge, may have material information concerning this Office's investigation; and

- provide testimony or establish the original location, authenticity, or other basis for admission in evidence of documents . . . as requested by this Office, the IRS (civil and criminal), or Tax DOJ.

Id. at 27. In addition, the agreement requires J&G to:

- maintain the originals of all documents and records in its possession and control that are relevant to the government's investigation, *at J&G's own expense*, in a location leased for three years from the signing of the agreement; and

- designate, train and *pay* appropriate personnel to satisfy its obligations to provide materials to the government for three years.

Id. at 3-4.

The IRS estimates that 1,400 investors are affected by J&G's advice. J&G's Br., Ex. 2 at App. 45. J&G is obligated to provide documents, testimony, and/or both, requested by the government in connection with its investigation of the transactions of those investors. If J&G has the resources to meet its obligations to the government, it certainly has the resources to comply with the five narrow requests in Plaintiff's subpoena. J&G has not met its burden with respect to its claim of undue burden.

**E. The Balance Of Factors Requires That J&G's Motion To Quash Be Denied And Plaintiff's Motion To Compel Be Granted.**

The last step in deciding a motions to quash and to compel is to balance the relevant factors. In this case, the balance weighs heavily against J&G's motion and in favor of requiring compliance with Plaintiff's subpoena. The information sought is clearly relevant to Plaintiff's case. In balancing the relevancy of and need for the information sought against the burden a subpoena imposes, courts sometimes look at whether the information is more readily available elsewhere. In this and related cases it is not, because although the

IRS is the source of the information sought, it has consistently objected to Plaintiffs' discovery requests on multiple grounds, adding, for example, prematurity and the "deliberative process privilege" to the usual objections. In short, the highly relevant and necessary information plaintiffs seek will be even more difficult to obtain from the IRS than from J&G.

Moreover, J&G's claim that it is precluded from complying with the subpoena by a confidentiality agreement with the IRS is unsubstantiated; indeed, it has not even clearly identified the source of its obligation. Perhaps informing the court that a confidentiality clause exists in the Closing Agreement would constitute a "Major Event of Default" that would allow the government to nullify the Closing and Settlement Agreements, a result that would admittedly have dire consequences for J&G if it occurred. But the Federal Rules of Civil Procedure require more than unsubstantiated claims of confidentiality and privilege. At the very least, J&G should be required to produce the Closing Agreement and related documents for an *in camera* review to determine whether they contain information relevant and necessary to Plaintiffs' claims as they have been described herein.

The same is true of the documents for which J&G claims attorney-client privilege and work-product protection. Until J&G produces the privilege log required by Rule 45(d)(2), its claims cannot even be tested. Moreover, it is insufficient for J&G to assert that it has no responsive documents and no one to produce as a Rule 30(b)(6) deponent with respect to information that common sense counsels must exist. J&G cannot hide behind its attorneys to avoid producing discoverable, unprivileged matter. At the very least, J&G should be required to identify which of its former partners, associates or employees have knowledge of the information sought. After all, the Settlement Agreement requires J&G to

identify witnesses, "to use its best efforts" to make its former personnel available to the government in its on-going investigation, and to provide requested documents in a timely fashion. The Federal Rules of Civil Procedure are "intended to provide a mechanism for making information available to litigants." Fed. R. Civ. P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947). They are not intended to be used to conceal vital information. Rather, they are designed to ensure the "[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties [that] is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947) (emphasis added).

Finally, while it is clear that J&G has fallen on hard times, it has not demonstrated that complying with Plaintiff's subpoena would be unduly burdensome. On the contrary, in light of what it has agreed to do for the government, the minimal requests in Plaintiff's subpoena, the necessity of the requested information in preparing Plaintiff's case, and the difficulty and uncertainty of success in extracting the information from the IRS, J&G's claim of undue burden is wholly unpersuasive. Thus, the balance of the relevant factors, as well as the principle of fair play and the interests of justice, all weigh in favor of granting Plaintiff's Motion to Compel and denying J&G's Motion to Quash.

## III. CONCLUSION

For all the reasons stated herein, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Compel and deny Jenkens & Gilchrist's Motion to Quash and Motion for Protection.

Respectfully submitted,

By: /s/ Joel N. Crouch
Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2007, I served the above and foregoing on the below-listed counsel:

David M. Steiner, Esq. *(via Certified Mail)*
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq. *(via Certified Mail)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F. Anthony Paganelli, Esq. *(via FedEx)*
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

Robert J. Wagman, Jr.
Baker Botts, L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400

***Attorney for Jenkens & Gilchrist***

/s/ Joel N. Crouch
JOEL N. CROUCH