**Federal Regulations**

# Reg § 1.752-6. Partnership assumption of partner's section 358 (h)(3) liability after October 18, 1999, and before June 24, 2003.

**(a) In general.** If, in a transaction described in section 721(a), a partnership assumes a liability (defined in section 358(h)(3)) of a partner (other than a liability to which section 752(a) and (b) apply), then, after application of section 752(a) and (b), the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount (determined as of the date of the exchange) of the liability. For purposes of this section, the adjusted value of a partner's interest in a partnership is the fair market value of that interest increased by the partner's share of partnership liabilities under §§1.752-1 through 1.752-5.

**(b) Exceptions.**

*(1) In general.* Except as provided in paragraph (b)(2) of this section, the exceptions contained in section 358(h)(2)(A) and (B) apply to this section.

*(2) Transactions described in Notice 2000-44.* The exception contained in section 358(h)(2)(B) does not apply to an assumption of a liability (defined in section 358(h)(3)) by a partnership as part of a transaction described in, or a transaction that is substantially similar to the transactions described in, Notice 2000-44 (2000-2 C.B. 255). See §601.601(d)(2) of this chapter.

**(c) Example.** The following example illustrates the principles of paragraph (a) of this section:

*Example.* In 1999, A and B form partnership PRS. A contributes property with a value and basis of $200, subject to a nonrecourse debt obligation of $50 and a fixed or contingent obligation of $100 that is not a liability to which section 752(a) and (b) applies, in exchange for a 50% interest in PRS. Assume that, after the contribution, A's share of partnership liabilities under §§ 1.752-1 through 1.752-5 is $25. Also assume that the $100 liability is not associated with a trade or business contributed by A to PRS or with assets contributed by A to PRS. After the contribution, A's basis in PRS is $175 (A's basis in the contributed land ($200) reduced by the nonrecourse debt assumed by PRS ($50), increased by A's share of partnership liabilities under §§1.752-1 through 1.752-5 ($25)). Because A's basis in the PRS interest is greater than the adjusted value of A's interest, $75 (the fair market value of A's interest ($50) increased by A's share of partnership liabilities ($25)), paragraph (a) of this section operates to reduce A's basis in the PRS interest (but not below the adjusted value of that interest) by the amount of liabilities described in section 358(h)(3) (other than liabilities to which section 752(a) and (b) apply) assumed by PRS. Therefore, A's basis in PRS is reduced to $75.

**(d) Effective date.**

*(1) In general.* This section applies to assumptions of liabilities occurring after October 18, 1999, and before June 24, 2003.

*(2) Election to apply §1.752-7.* The partnership may elect, under §1.752-7(k)(2), to apply the provisions referenced in § 1.752-7(k)(2)(ii) to all assumptions of liabilities by the partnership occurring after October 18, 1999, and before June 24, 2003. Section 1.752-7(k)(2) describes the manner in which the election is made.

---

T.D. 9207, 5/23/2004.

---

END OF DOCUMENT -

© 2007 Thomson/RIA. All rights reserved.

Westlaw.



PROPOSED RULES

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Part 1

[REG-106736-00]

RIN 1545-AX93

Assumption of Partner Liabilities

Tuesday, June 24, 2003

*37434 AGENCY: Internal Revenue Service (IRS), Treasury

ACTION: Notice of proposed rulemaking; notice of proposed rulemaking by cross-reference to temporary regulations; and notice of public hearing.

SUMMARY: This document contains proposed regulations relating to the definition of liabilities under section 752 of the Internal Revenue Code These regulations provide rules regarding a partnership's assumption of certain fixed and contingent obligations in exchange for a partnership interest and provide conforming changes to certain regulations. These regulations also provide rules under section 358(h) for assumptions of liabilities by corporations from partners and partnerships In addition, this document provides notice that the IRS and Treasury intend to issue supplemental guidance that may apply certain of the rules outlined in these proposed regulations to transactions involving corporations This document also provides notice of public hearing on the proposed regulations.

DATES: Written or electronic comments and requests to speak at the public hearing scheduled for Tuesday, October 14, 2003, must be received by September 22, 2003.

ADDRESSES: Send submissions to: CC:PA:RU (REG-106736-00), room 5226, Internal Revenue Service, POB 7604, Ben Franklin Station, Washington, DC 20044 Submissions may be hand-delivered between the hours of 8 a m. and 4 p.m to CC:PA:RU (REG-106736-00), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW., Washington, DC or sent electronically, via the IRS Internet site at: www.irs.gov/regs The public hearing will be held in the auditorium, Internal *37435 Revenue Building, 1111 Constitution Avenue, NW., Washington, DC

© 2007 Thomson/West. No Claim to Orig U S Govt Works

Rev Rul 95-26 (1995-1 C.B. 131)

Because these proposed regulations define a § 1.752-7 liability as a fixed or contingent obligation to make payment to which section 752 does not apply, Treasury and the IRS believe that it is appropriate to describe in these regulations the liabilities to which section 752 does apply. Therefore, following the principles set forth in § 1.752-1T(g) and Rev. Rul. 88-77, the proposed regulations provide that an obligation is a liability if and to the extent that incurring the obligation: (A) Creates or increases the basis of any of the obligor's assets (including cash); (B) gives rise to an immediate deduction to the obligor; or (C) gives rise to an expense that is not deductible in computing the obligor's taxable income and is not properly chargeable to capital An obligation for this purpose is any fixed or contingent obligation to make payment without regard to whether the obligation is otherwise taken into account for purposes of the Code Obligations include, but are not limited to, debt obligations, environmental obligations, tort obligations, contract obligations, pension obligations, obligations under a short sale, and obligations under derivative financial instruments such as options, forward contracts, and futures contracts. The definition of a liability contained in these proposed regulations does not follow Helmer v Commissioner, T.C Memo 1975-160. (The Tax Court, in Helmer, held that a partnership's issuance of an option to acquire property did not create a partnership liability for purposes of section 752.)

Treasury and the IRS are considering adopting the definition of liability proposed in these regulations as an appropriate interpretation of the term liability for purposes of subchapter C of chapter 1 of the Code Treasury and the IRS request comments on the scope and substance of such regulations, which will be retroactive to the extent necessary to prevent abuse

2. § 1.752-7--Partnership Assumption of Partner's § 1 752-7 Liability

In the corporate context, section 358(h) prevents the duplication and acceleration of loss with respect to obligations not encompassed by section 358(d) by reducing the transferor shareholder's basis in corporate stock received in the exchange. Treasury and the IRS do not believe that this is the best approach for partnerships given their passthrough nature. Ultimately, the partners' shares of a partnership's deductions are limited by the partners' bases in their partnership interests (their outside bases) If, at the time of an assumption of § 1.752-7 liability by a partnership from a partner (the § 1.752-7 liability partner), the partner's outside basis were reduced by the amount of the § 1.752-7 liability, then the partner would not have sufficient outside basis *37437 to absorb any deduction with respect to the § 1.752-7 liability that passed through the partnership.

For this reason, these proposed regulations do not reduce the outside basis of the § 1 752-7 liability partner upon the partnership's assumption of the § 1.752-7 liability. If the partnership satisfies the § 1.752-7 liability while the § 1.752-7 liability partner is a partner in the partnership, then the deduction with

26 U.S.C.A. § 6707

I.R.C. § 6707

**Effective: [See Notes] to October 22, 2004**

United States Code Annotated
Title 26. Internal Revenue Code
Subtitle F. Procedure and Administration
Chapter 68. Additions to the Tax, Additional Amounts, and Assessable Penalties
Subchapter B. Assessable Penalties
Part I. General Provisions

**→§ 6707. Failure to furnish information regarding tax shelters**

**(a) Failure to register tax shelter.**—

**(1) Imposition of penalty.**—If a person who is required to register a tax shelter under section 6111(a)—

**(A)** fails to register such tax shelter on or before the date described in section 6111(a)(1), or

**(B)** files false or incomplete information with the Secretary with respect to such registration,

such person shall pay a penalty with respect to such registration in the amount determined under paragraph (2) or (3), as the case may be. No penalty shall be imposed under the preceding sentence with respect to any failure which is due to reasonable cause.

**(2) Amount of penalty.**—Except as provided in paragraph (3), the penalty imposed under paragraph (1) with respect to any tax shelter shall be an amount equal to the greater of—

**(A)** 1 percent of the aggregate amount invested in such tax shelter, or

**(B)** $500.

**(3) Confidential arrangements.**—

**(A) In general.**—In the case of a tax shelter (as defined in section 6111(d)), the penalty imposed under paragraph (1) shall be an amount equal to the greater of—

**(i)** 50 percent of the fees paid to all promoters of the tax shelter with respect to offerings made before the date such shelter is registered under section 6111, or

**(ii)** $10,000.

Clause (i) shall be applied by substituting "75 percent" for "50 percent" in the case of an intentional failure or act described in paragraph (1).

**(B) Special rule for participants required to register shelter.**—In the case of a person required to register

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

such a tax shelter by reason of section 6111(d)(3)--

(i) such person shall be required to pay the penalty under paragraph (1) only if such person actually participated in such shelter,

(ii) the amount of such penalty shall be determined by taking into account under subparagraph (A)(i) only the fees paid by such person, and

(iii) such penalty shall be in addition to the penalty imposed on any other person for failing to register such shelter.

**(b) Failure to furnish tax shelter identification number.--**

**(1) Sellers, etc.**--Any person who fails to furnish the identification number of a tax shelter which such person is required to furnish under section 6111(b)(1) shall pay a penalty of $100 for each such failure.

**(2) Failure to include number on return.**--Any person who fails to include an identification number on a return on which such number is required to be included under section 6111(b)(2) shall pay a penalty of $250 for each such failure, unless such failure is due to reasonable cause.

CREDIT(S)

(Added Pub.L. 98-369, Div. A, Title I, § 141(b), July 18, 1984, 98 Stat. 680, and amended Pub.L. 99-514, Title XV, §§ 1532(a), 1533(a), Oct. 22, 1986, 100 Stat. 2750; Pub.L. 105-34, Title X, § 1028(b), (d), Aug. 5, 1997, 111 Stat. 927, 928.)

1997 Acts. Amendments by section 1028 of Pub.L. 105-34 to apply to any tax shelter (as defined in section 6111(d) of this title) interests in which are offered to potential participants after the Secretary of the Treasury prescribes guidance with respect to meeting requirements added by such amendments see section 1028(e) of Pub.L. 105-34, set out as a note under section 6111 of this title.

26 U.S.C.A. § 6707, 26 USCA § 6707

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.



26 U.S.C.A. § 6111

I.R.C. § 6111

**Effective: August 05, 1997 to October 22, 2004**

United States Code Annotated
Title 26. Internal Revenue Code
Subtitle F. Procedure and Administration
Chapter 61. Information and Returns
Subchapter B. Miscellaneous Provisions

**→§ 6111. Registration of tax shelters**

**(a) Registration.**--

**(1) In general.**--Any tax shelter organizer shall register the tax shelter with the Secretary (in such form and in such manner as the Secretary may prescribe) not later than the day on which the first offering for sale of interests in such tax shelter occurs.

**(2) Information included in registration.**--Any registration under paragraph (1) shall include--

(A) information identifying and describing the tax shelter,

(B) information describing the tax benefits of the tax shelter represented (or to be represented) to investors, and

(C) such other information as the Secretary may prescribe.

**(b) Furnishing of tax shelter identification number; inclusion on return.**--

**(1) Sellers, etc.**--Any person who sells (or otherwise transfers) an interest in a tax shelter shall (at such times and in such manner as the Secretary shall prescribe) furnish to each investor who purchases (or otherwise acquires) an interest in such tax shelter from such person the identification number assigned by the Secretary to such tax shelter.

**(2) Inclusion of number on return.**--Any person claiming any deduction, credit, or other tax benefit by reason of a tax shelter shall include (in such manner as the Secretary may prescribe) on the return of tax on which such deduction, credit, or other benefit is claimed the identification number assigned by the Secretary to such tax shelter.

**(c) Tax shelter.**--For purposes of this section--

**(1) In general.**--The term "tax shelter" means any investment--

(A) with respect to which any person could reasonably infer from the representations made, or to be made, in connection with the offering for sale of interests in the investment that the tax shelter ratio for any investor as of the close of any of the first 5 years ending after the date on which such investment is offered for sale may be greater than 2 to 1, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(B) which is--

(i) required to be registered under a Federal or State law regulating securities,

(ii) sold pursuant to an exemption from registration requiring the filing of a notice with a Federal or State agency regulating the offering or sale of securities, or

(iii) a substantial investment.

(2) **Tax shelter ratio defined.**--For purposes of this subsection, the term "tax shelter ratio" means, with respect to any year, the ratio which--

(A) the aggregate amount of the deductions and 350 percent of the credits which are represented to be potentially allowable to any investor under subtitle A for all periods up to (and including) the close of such year, bears to

(B) the investment base as of the close of such year.

(3) **Investment base.**--

(A) **In general.**--Except as provided in this paragraph, the term "investment base" means, with respect to any year, the amount of money and the adjusted basis of other property (reduced by any liability to which such other property is subject) contributed by the investor as of the close of such year.

(B) **Certain borrowed amounts excluded.**--For purposes of subparagraph (A), there shall not be taken into account any amount borrowed from any person--

(i) who participated in the organization, sale, or management of the investment, or

(ii) who is a related person (as defined in section 465(b)(3)(C)) to any person described in clause (i),

unless such amount is unconditionally required to be repaid by the investor before the close of the year for which the determination is being made.

(C) **Certain other amounts included or excluded.**--

(i) **Amounts held in cash equivalents, etc.**--No amount shall be taken into account under subparagraph (A) which is to be held in cash equivalent or marketable securities.

(ii) **Amounts included or excluded by Secretary.**--The Secretary may by regulation--

(I) exclude from the investment base any amount described in subparagraph (A), or

(II) include in the investment base any amount not described in subparagraph (A),

if the Secretary determines that such exclusion or inclusion is necessary to carry out the purposes of this section.

(4) **Substantial investment.**--An investment is a substantial investment if--

(A) the aggregate amount which may be offered for sale exceeds $250,000, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(B) there are expected to be 5 or more investors.

**(d) Certain confidential arrangements treated as tax shelters.**--

**(1) In general.**--For purposes of this section, the term "tax shelter" includes any entity, plan, arrangement, or transaction--

(A) a significant purpose of the structure of which is the avoidance or evasion of Federal income tax for a direct or indirect participant which is a corporation,

(B) which is offered to any potential participant under conditions of confidentiality, and

(C) for which the tax shelter promoters may receive fees in excess of $100,000 in the aggregate.

**(2) Conditions of confidentiality.**--For purposes of paragraph (1)(B), an offer is under conditions of confidentiality if--

(A) the potential participant to whom the offer is made (or any other person acting on behalf of such participant) has an understanding or agreement with or for the benefit of any promoter of the tax shelter that such participant (or such other person) will limit disclosure of the tax shelter or any significant tax features of the tax shelter, or

(B) any promoter of the tax shelter--

(i) claims, knows, or has reason to know,

(ii) knows or has reason to know that any other person (other than the potential participant) claims, or

(iii) causes another person to claim,

that the tax shelter (or any aspect thereof) is proprietary to any person other than the potential participant or is otherwise protected from disclosure to or use by others.

For purposes of this subsection, the term "promoter" means any person or any related person (within the meaning of section 267 or 707) who participates in the organization, management, or sale of the tax shelter.

**(3) Persons other than promoter required to register in certain cases.**--

**(A) In general.**--If--

(i) the requirements of subsection (a) are not met with respect to any tax shelter (as defined in paragraph (1)) by any tax shelter promoter, and

(ii) no tax shelter promoter is a United States person,

then each United States person who discussed participation in such shelter shall register such shelter under subsection (a).

**(B) Exception.**--Subparagraph (A) shall not apply to a United States person who discussed participation in a tax shelter if--

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(i) such person notified the promoter in writing (not later than the close of the 90th day after the day on which such discussions began) that such person would not participate in such shelter, and

(ii) such person does not participate in such shelter.

**(4) Offer to participate treated as offer for sale.**--For purposes of subsections (a) and (b), an offer to participate in a tax shelter (as defined in paragraph (1)) shall be treated as an offer for sale.

**(e) Other definitions.**--For purposes of this section--

**(1) Tax shelter organizer.**--The term "tax shelter organizer" means--

**(A)** the person principally responsible for organizing the tax shelter,

**(B)** if the requirements of subsection (a) are not met by a person described in subparagraph (A) at the time prescribed therefor, any other person who participated in the organization of the tax shelter, and

**(C)** if the requirements of subsection (a) are not met by a person described in subparagraph (A) or (B) at the time prescribed therefor, any person participating in the sale or management of the investment at a time when the tax shelter was not registered under subsection (a).

**(2) Year.**--The term "year" means--

**(A)** the taxable year of the tax shelter, or

**(B)** if the tax shelter has no taxable year, the calendar year.

**(f) Regulations.**--The Secretary may prescribe regulations which provide--

**(1)** rules for the aggregation of similar investments offered by the same person or persons for purposes of applying subsection (c)(4),

**(2)** that only 1 person shall be required to meet the requirements of subsection (a) in cases in which 2 or more persons would otherwise be required to meet such requirements,

**(3)** exemptions from the requirements of this section, and

**(4)** such rules as may be necessary or appropriate to carry out the purposes of this section in the case of foreign tax shelters.

CREDIT(S)

(Added Pub.L. 98-369, Div. A, Title I, § 141(a), July 18, 1984, 98 Stat. 677, and amended Pub.L. 99-514, Title II, § 201(d)(13), Title XV, § 1531(a), Title XVIII, § 1899A(54), Oct. 22, 1986, 100 Stat. 2142, 2749, 2961; Pub.L. 105-34, Title X, § 1028(a), Aug. 5, 1997, 111 Stat. 926.)

1997 Acts. Section 1028(e) of Pub.L. 105-34 provided that:

"**(1) In general.**--Except as provided in paragraph (2), the amendments made by this section [amending this section and sections 6707 and 6662 of this title] shall apply to any tax shelter (as defined in section 6111(d) of the Internal Revenue Code of 1986, as amended by this section) [subsec. (d) of this section] interests in which are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

offered to potential participants after the Secretary of the Treasury prescribes guidance with respect to meeting requirements added by such amendments.

"(2) **Modifications to substantial understatement penalty.**--The amendments made by subsection (c) [amending sections 6707 and 6662 of this title] shall apply to items with respect to transactions entered into after the date of the enactment of this Act [Aug. 5, 1997]."

26 U.S.C.A. § 6111, 26 USCA § 6111

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

Internal Revenue Service (I.R S )

News Release

SIDLEY & AUSTIN LLP PAYS IRS $39.4 MILLION PENALTY

For Release: May 23, 2007

WASHINGTON -- The Internal Revenue Service today announced that it has reached a settlement with the law firm of Sidley Austin LLP, the successor firm of the merger in 2001 between Sidley & Austin and Brown & Wood LLP, which has paid a civil tax shelter promoter penalty of $39.4 million. The penalty stems from the firm's promotion of abusive tax shelters and a failure to comply with tax shelter registration requirements.

"Sidley Austin has paid a significant penalty for its role in promoting abusive tax shelters," said IRS Acting Commissioner Kevin M. Brown. "The firm has also taken concrete steps to prevent a recurrence of this behavior in the future, which they have agreed to maintain going forward. We appreciate their actions and their cooperation in our ongoing investigations."

The firm issued opinions in connection with potentially abusive tax shelters to over 700 high-net worth individuals and corporations. Some of the packages marketed to these individuals included listed transactions such as BOSS (Bond & Option Sale Strategy), variants of the so-called "Son of BOSS" shelter that went by names of COBRA (Currency Options Bring Reward Alternatives), BLIPS (Bond Linked Issue Premium Structure) and COINS (Currency Option Investment Strategy), and others that went by the names of FLIP (Foreign Leveraged Investment Program), OPIS (Offshore Portfolio Investment Strategy) and POPS (Partnership Option Portfolio Securities)

The firm also issued tax opinions in connection with certain potentially abusive non-listed transactions involving distressed assets, bond and equity strips and lease strips.

Sidley Austin LLP has offices in Beijing, Brussels, Chicago, Dallas, Frankfurt, Geneva, Hong Kong, London, Los Angeles, New York, San Francisco, Shanghai, Singapore, Tokyo and Washington, D C.

Media Contact: Tel. (202) 622-4000

Copies: Tel. (202) 622-4040

IR-2007-103, 2007 WL 1491285 (I R S.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Internal Revenue Service**
**JFK P.O. Box 9112, Stop 41100, Boston, MA 02203**

**Department of the Treasury**

Refer To:
SE:S:E:TS:NAA:1:JH
Taxpayer Identifying Number:
57-1088088
Name of Partnership:
JBJZ Partners
Partnership Identifying Number:
57-1088089
Tax Year Ended:
December 27, 2000
Date FPAA Mailed to Tax Matters Partner:
December 9, 2004
Person to Contact:
Mr. J. Heinlin
Employee Identification Number: 04-03576
Contact Hours:
8:00 AM - 4:30 PM (Monday - Friday)
Contact Telephone Number:
(617) 316-2421

Date: December 9, 2004

JZ Buckingham Investments LLC
Tax Matters Partner
JBJZ Partners
16 Buckingham Drive
Charleston, SC 29407

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Partners partnership in the amounts of $42,750,000.00 and $4,750,000.00, respectively, but not below the fair market value of the purported partnership interest.

5. It is determined that neither JBJZ Partners partnership nor its purported partners entered into the option(s) positions or purchase the foreign currency or stock with a profit motive for purposes of § 165(c)(2).
6. It is determined that, even if the foreign currency option(s) are treated as having been contributed to JBJZ Partners partnership, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partners and JBJZ Partners partnership. Consequently, any corresponding claimed increases in the outside basis in JBJZ Partners partnership resulting from the contributions of the foreign currency option(s) are disallowed.
7. It is determined that the adjusted bases of the long call positions (purchased call options), zero coupon notes, and other contributions purportedly contributed by the partners to JBJZ Partners partnership has not been established under I.R.C. § 723. It is consequently determined that the partners of JBJZ Partners partnership have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).
8. It is further determined that, in the case of a sale, exchange, or liquidation of JBJZ Partners, the partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest.

9. Accuracy-Related Penalties:

No penalties are asserted as JBJZ Partners partnership and partners along with JBJZ Investors, Inc. (corporation controlled by partners) filed a disclosure with the IRS pursuant to Announcement 2002-2 and provided all information requested by the service.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.

Information Regarding Additions to Tax (Penalties) and Affected Items

The Internal Revenue Code provides, in appropriate cases, for the application of accuracy related penalties under Internal Revenue Code Section 6662,

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

**OBJECTIONS OF THE UNITED STATES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

The defendant, the United States of America, by its undersigned counsel, hereby objects to Plaintiff's subpoena commanding that the United States produce a witness or witnesses pursuant to Rule 30(b)(6) of the United States Court of Federal Claims on the grounds that each and every matter listed on Exhibit A of the Subpoena is an improper subject for such testimony.

At the outset, the United States points out that, when a Rule 30(b)(6) subpoena is procedurally deficient in its entirety, as is Plaintiff's, it is procedurally preferable for the requested party to serve objections which the parties may then discuss, rather than immediately requesting judicial intervention by means of a protective order. If the parties cannot come to an accommodation and judicial intervention becomes the only alternative, the requesting party may then move to compel and the requested party may cross-move for a protective order. *See, e.g., Boston Edison Co. v. United States*, 2007 U.S. Claims LEXIS 54 at 28 (Feb. 26, 2007).

2452757.1

**Specific Objections**

**Matters 1.a. and 1.b.**

Matter 1.a. requests:

> Defendant's legal and factual position with regard to the issuance of Treas. Reg. § 1.752-6T on June 23, 2003, and the promulgation of Treas. Reg. § 1.752-6 on May 23, 2004; the specific application of Treas. Regs §§ 1.752-6T and 1.752-6 to the above-styled litigation; whether prior to the issuance of these regulations there was substantial authority for the reporting position that a contingent obligation did not constitute a liability within the meaning of I.R.C. § 752; and separately, whether these regulations were issued to enhance Defendant's litigation position with respect to transactions described in Notice 2000-44.

Matter 1.b. requests "Defendant's legal and factual position with regard to Treas. Reg. § 1.701-2 and its specific application to the above-styled litigation."

Plaintiff's requests in these matters are improper as they are pure issues of law for the Court to decide in its analysis and application of the governing legal authorities. *See Neptune v. United States*, 38 Fed. Cl. 510, 513 (1997), *aff'd* 178 f.3d 1306 (Fed. Cir. 1998). Moreover, the thoughts of those responsible for the promulgation of regulations has, as this Circuit has ruled, nc probative value. *Honeywell, Inc. v. United States*, 661 F.2d 182, 185 (Ct. Cl. 1982). The meaning and reasons for promulgation of regulations are not a proper subject for deposition because "the IRS must speak with a single voice, that is, through formal statements of policy such as regulations and revenue rulings. . . . Accordingly, statements by individual IRS

employees cannot bind the Secretary." *Sidell v. Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000) *See also Connecticut General Life Insurance Co. v. Commissioner*, 177 F.3d 136, 145 (3d Cir), *cert. denied*, 528 U.S. 1003 (1999); *Armco Corp. v. Commissioner*, 87 T.C. 865, 867-68. The testimony of individual officials does not represent agency interpretations. *Vons Cos. v. United States*, 51 Fed. Cl. 1, 21 (2001). Consequently, the views of IRS employees are irrelevant in construing Treasury Regulations; and, as a consequence, the depositions of the IRS employees on such subjects can not lead to the discovery of relevant information.

Nor can a party somehow elide these basic principles of law by requiring a party to designate a witness pursuant to Rule 30(b)(6) to testify on such irrelevant subject matter. In a case involving a tax shelter similar to this one, the Court of Federal Claims recently granted a protective order barring the deposition of three IRS officials involved in the drafting of certain IRS Treasury Regulations and Notices on subjects very similar to those set forth here, holding that testimony on such subject matter is not probative and therefore was irrelevant. *See* Order of the Court of March 19, 2007, in *Evergreen Trading v. United States*, No. 06-123 T. A copy of this order is attached.

Even if such testimony were relevant, deliberative process privilege would bar testimony regarding the promulgation and application of regulations because "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705 (1974). Therefore, privilege protects the details of such decision making from disclosure. *See generally Marriott International Resorts, LP v. United States*, 437 F.3d 1302 (Fed. Cir. 2006).

**Matter 1.c.**

> Defendant's legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in this case (Attachments 1, 2, and 3) are a single option or investment; and separately, whether for purposes of determining the "aggregate amount invested" under I.R.C. § 6707, Defendant is taking the position that each digital option contract, such as those involved in this case, are separate options or investments rather than a single option or investment.

The United States objects to this matter because it is premature. Whether or not the United States will be taking the position that the options were a single option or investment for purposes of any legal issue presented in this case will be the subject of expert testimony, and initial expert reports are not due until May 15. Moreover, to the extent the subject matter of this request seeks to inquire into the legal contentions of the United States, it is equally improper since discovery into the contentions of parties are properly examined through contention interrogatories, not Rule 30(b)(6) depositions. *See Exxon Research Engineering Co. v. United States*, 44 Fed. Cl. 597 (August 27, 1999).

**Matter 1.d.**

> The names of tax advisors and firms that issued tax opinions regarding transactions that are the same as, or substantially similar to, those set forth in I.R.S. Notice 2000-44, 2000-2 C.B. 255 (August 14, 2000) and whose opinions concluded that there was substantial authority for, or that taxpayers would more-likely-than-not prevail on the merits if challenged by the Internal Revenue Service on, the position that contingent obligations are not liabilities within the meaning of I.R.C. § 752. This request is limited to those advisors or firms whose opinions Defendant has rejected as a basis for the reasonable cause defense to I.R.C. § 6662 penalties.

The United States objects to this matter on the grounds that it is not a proper subject for inquiry, is irrelevant to any issue in this litigation, is protected from disclosure by 26 U.S.C. § 6103(a) and also is protected from disclosure by one or more privileges, including the attorney client and the deliberative process privilege.

The legal opinions that are the subject matter of this request were not prepared, reviewed or signed by the United States. We have already provided you with any legal opinions involving COBRA transactions obtained by us through discovery. To the extent that there may be legal opinions involving non COBRA transactions in the possession, custody, or control of the United States or any of its various agencies, including the IRS, the names and firms that issued such non COBRA tax opinions cannot possibly lead to any relevant evidence. Moreover, to the extent tha such information would be in the possession of the IRS, this information would be protected from disclosure by 26 U.S.C. § 6103(a). Finally, to the extent this subject matter seeks testimony as to the names and firms which issued legal opinions that the United States, and specifically the IRS, have determined not to have constituted a basis for a reasonable cause defense for accuracy related penalties under Section 6662, it is equally improper. This is because it would be seeking testimony that is irrelevant, protected from disclosure under 26 U.S.C. § 6103(a), and also subject to one or more privileges, including the attorney client and the deliberative process privilege.

<u>**Matter 1.e.**</u>

The determination to impose I.R.C. § 6662 penalties in this case.

The United States objects to this matter on the grounds that whether the IRS properly imposed penalties according to I.R.C. § 6662 requires a trial *de novo*. *See Estate of Kluener v. Commissioner*, 154 F.3d 630, 637 (6th Cir. 1998). A review of audit determinations has no relevance. In *Nordberg v. United States*, 1996 U.S. Dist. LEXIS 5259; 96-1 U.S. Tax Cas. (CCH) P50,295; 77 A.F.T.R.2d (RIA) 2158 (D.Mass. 1996) (copy attached), the court articulated in some detail why inquiry into the reasoning of the IRS for its determinations is not at all relevant in any ensuing tax litigation:

> The discovery does not relate to the facts existing during 1987, upon which the IRS determinations were based. In light of the principle that a challenge to a tax determination results in a trial de novo rather than a review by this Court of an existing administrative record, the defendants' discovery requests fail to satisfy the mandate of *Fed.R.Civ.P. 26(b)* that information sought to be discovered be relevant or "reasonably calculated to lead to the discovery of admissible evidence." See, e.g., *Lewis v. Reynolds, 284 U.S. 281, 283, 76 L. Ed. 293, 52 S. Ct. 145 (1932); Ruth v. United States, 823 F.2d 1091, 1094 (7th Cir. 1987)* ("courts conduct a de novo review of the... assessment"); *Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974)* (a court's determination as to a taxpayer's liability "must be based on the merits of the case and not any previous record developed at the administrative level").
>
> The information sought by defendants which forms the basis for the motion to compel is, therefore, evidence which would not be relevant to determining their 1987 tax liability. Information about people who participated in the audit is not relevant, nor are notes made by IRS employees during the audit. Indeed, the audit of the Nordbergs' 1987 tax return took place well after the tax year at issue. In short, the information requested by defendants has no bearing on the sole issue in the case at bar because the Nordbergs' ultimate tax liability is not influenced by the IRS' conduct or findings during the audit. In rejecting a similar argument, one District Court denied a motion to compel upon observing that:
>
>> the opinions, impressions, conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment against [the taxpayer] ....Resolution of the[] issues depends solely on application of the pertinent law to the facts of [the] case... The opinions of individual IRS agents regarding their propriety are immaterial.

*Garity v. United States, 81-2 U.S. Tax Cas. (CCH) P 9599, 1980 WL 1765* at *2 (E.D. Mich. May 20, 1980).

**Matter 1.f.**

Defendant's discovery responses in the above-styled litigation.

The United States objects to this matter because RCFC requires that the requestor "describe with reasonable particularity the matters on which examination is requested." Plaintiff has not given any indication what it wants to ask in respect to Defendant's discovery responses.

## CONCLUSIONS

As the subpoena is completely improper, the United States objects to it in its totality and will not provide a witness or witnesses as all matters listed by Plaintiffs are improper as a subjec of a RCFC 30(b)(6) deposition.

DENNIS M. DONOHUE
Attorney of Record

Chief Senior Litigation Counsel
U.S. Department of Justice - Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

2452757.1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2007, a copy of the foregoing OBJECTIONS OF THE UNITED STATES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE was mailed by First Class U.S. mail postage paid, and properly addressed to the following:

F. Anthony Paganelli, Esq.
SOMMER BARNARD, P.C.
One Indiana Square, Suite 3500
Indianapolis, IN 46204

Joseph Pitzinger, Esq.
United States Department of Justice
717 N. Hardwood St., Suite 400
Dallas, TX 75201

Jonathan Blacker, Esq.
United States Department of Justice
717 N. Hardwood St., Suite 400
Dallas, TX 75201

Joel N. Crouch, Esq.
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

DAVID M. STEINER
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892