IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, | § | |
| Plaintiff, | § | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, | § | |
| Defendants. | § | |

**NON-PARTY JENKENS & GILCHRIST'S RESPONSE TO PLAINTIFFS' CROSS-MOTION TO COMPEL AND REPLY IN SUPPORT OF MOTION TO QUASH AND MOTION FOR PROTECTION FROM, PLAINTIFFS' SUBPOENA FOR A RULE 30(b)(6) DEPOSITION AND FOR PRODUCTION OF DOCUMENTS**

Jenkens & Gilchrist ("J&G") submits this Response to Plaintiffs' Cross-Motion to Compel and Reply in support of its Motion to Quash and Motion for Protection (Doc. No. 91).

## INTRODUCTION

Long on supposition and short on facts, Plaintiffs urge this court to disregard John Gilliam's Declaration because Plaintiffs are "suspicious" that J&G and the IRS are playing a game with Plaintiffs. *Plaintiffs' Brief at 14*. Plaintiffs rely on nothing but an argument that it is "not possible" that J&G did not discuss with the IRS how it arrived at the $76 million number announced in its press release. *Id.* Plaintiffs' unfounded suspicions do not warrant requiring J&G to spend the time and money preparing someone to appear at a deposition to state yet again that the firm has none of the information Plaintiffs have requested. J&G's motion to quash should be granted.

## ARGUMENT

### A. The Court should quash Plaintiffs' subpoena because J&G does not have the information Plaintiffs seek.

Plaintiffs say the only discovery they want is "narrowly confined to the issue of how the government calculated the I.R.C. § 6707 'civil penalty' J&G is said to have agreed to pay." *Plaintiffs' Brief at 7.* Testimony and documents from J&G will not get them this information. J&G does not have it. J&G never discussed the calculation with the IRS and there are no documents that describe the calculation used. *See Gilliam Declaration (Attachment 2 to Brief in Support of Motion to Quash (Doc. No. 85)) at ¶ 13 and Supplemental Declaration of John Gilliam (Attachment 1 to this Brief) (App. 1-4) at ¶¶ 5-7.*

J&G has undertaken a review of electronic and hard copy documents from the files of John Gilliam, Roger Hayse, Patrick Mitchell, and Tom Cantrill, the four J&G persons primarily involved in the discussions and negotiations with the DOJ and IRS, and found no documents describing or referring to the calculation used by the IRS to derive the $76 million. *Gilliam Suppl. Decl. ¶¶ 5-6, App. at 2.* Messrs. Mitchell and Cantrill have advised J&G that they were never told how the IRS calculated the $76 million. *Id.* at ¶ 7, *App. at 2-3.* It simply was a subject that was not discussed with the IRS. Likewise, no current J&G employee, including John Gilliam, J&G's in-house counsel, was ever told how the IRS calculated the $76 million. *Id.*

Plaintiffs reject the idea that J&G has no documents or information about the IRS calculation because, they say, it defies common sense. *Plaintiffs' Brief at 17.* Without providing any controverting documents or facts, Plaintiffs argue that "it is insufficient for J&G to assert that it has no responsive documents and no one to produce as a Rule 30(b)(6) deponent." *Id.* But, J&G cannot give Plaintiffs what it does not have.

Plaintiffs have provided no reasoned basis for requiring J&G to respond to the subpoena. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("[R]equested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation."). The subpoena should be quashed.

1. J&G has not waived any privileges.

Plaintiffs go to great lengths to explain why the attorney-client privilege and attorney work product exemption do not apply here and then argue that J&G has waived their privileges by not providing a privilege log. *Plaintiffs' Brief at 13-14.* The subpoena requests only non-privileged documents, and therefore, J&G was not required to prepare a privilege log. *(Attachment 1 to J&G's Brief in Support of Motion to Quash).*

J&G asserted privileges in its motion out of an abundance of caution because it was unclear to J&G how broadly the subpoena would be interpreted by this Court, not because J&G has any responsive documents relating to the IRS's calculation. *Gilliam Suppl. Decl. ¶ 9, App. at 3.* The privileges were also relevant to this Court's analysis on whether the discovery should go forward considering the very limited information and documents the discovery would elicit. Now that Plaintiffs have declared with certainty that the only information they seek is the IRS's calculation of the $76 million penalty, it is clear that J&G has no responsive documents or other information.

**B. None of Plaintiffs' authorities support production of the Closing Agreement.**

Plaintiffs rely on several cases they contend support production of the Closing Agreement; however, all of them are based on the underlying premise that the settlement agreement or related documents under consideration have some relevance to the issues in the

litigation. *See e.g., Primetime 24 Joint Venture v. Echostar Communications Corp.*, 2000 WL 97680, *4, n.5 (S.D.N.Y. Jan. 28, 2000) (noting courts are disinclined to require disclosure of settlement negotiations "absent a substantial showing of need"); *MorseDiesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y 1988) (discussing interaction between FED. R. CIV. P. 26(b)(1) and FED. R. EVID. 408). Plaintiffs argue the Closing Agreement is relevant because it "is likely to be directly probative of the calculations the IRS used to determine the penalty it assessed against J&G, . . ." *Plaintiffs' Brief at 13*. To the contrary, the Closing Agreement does not reference or describe the IRS's method or manner of calculating the $76 million at all. *Gilliam Suppl. Decl.* ¶ *7, App. at 2-3*. There is nothing in the Closing Agreement about the calculation. As Plaintiffs have offered no other justification supporting disclosure of the Closing Agreement, J&G's motion to quash the subpoena request for the Closing Agreement and testimony about it should be granted.

J&G is willing to submit the Closing Agreement to the Court for an in camera review if the Court determines that such a review is necessary to confirm the fact that the Closing Agreement does not contain information about the method or manner of the IRS's calculation.

**C. Plaintiffs have conceded that the information requested in Numbers 1(d) and 1(e) are not relevant to this action.**

By their failure to address the motion to quash on Numbers 1(d) and 1(e) of the subpoena, Plaintiffs have conceded that the information sought in these discovery requests is irrelevant and unnecessary. Accordingly, J&G's motion to quash the subpoena as to those subject matters should be granted.

**D. Any balancing of factors must come down on the side of quashing Plaintiffs' subpoena.**

In addition to weighing the burden the subpoena imposes on J&G – a non-party here – courts also weigh heavily the relevance of the discovery to the litigation. *See Micro Motion*, 894 F.2d at 1328 ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery."); *Gray v. Cottrell, Inc.*, 2006 WL 1663242, *2 (E.D. Mo. June 12, 2006) (quashing subpoena when plaintiff failed to establish the information sought was relevant); *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 52 (D.D.C. 2005) (quashing subpoena when discovery requested was irrelevant). The only document Plaintiffs have specifically targeted that J&G has is the Closing Agreement. Production of that Agreement is not warranted because it will not further Plaintiffs' aims as it does not contain the information Plaintiffs says they need. *Morrow v. Air Ride Tech., Inc.*, 2006 WL 559288, *2 (S.D. Ind. Mar. 6, 2006) (quashing subpoena that facially posed undue burden on third party in part because discovery not relevant to claims).

Plaintiffs' argument that it is no burden to J&G to respond to the subpoena because it is contractually obligated to provide information to the DOJ in the future also falls short. *Plaintiffs' Brief at 15-16.* J&G already has produced over 1 million pages of documents to the DOJ. *Gilliam Suppl. Decl. ¶ 4, App. 1-2.* J&G does not know whether or when it might be called upon to provide additional information to the DOJ, but it is certain that any additional information provided will not be related to the IRS's calculation of the $76 million penalty. In any event, J&G's plans for supporting its future obligations are the assignment of one person to be a contact person for the DOJ and one technical person, who will work on a contract basis as needed. *Id.* J&G does not intend to keep a workforce in place to respond to the government. *Id.*

Considering J&G's circumstances and utter lack of knowledge about the IRS's method for calculating the $76 million, any effort and cost required of J&G to prepare for and attend a deposition is unduly burdensome. *See Watts v. Securities & Exchange Comm'n*, 482 F.3d 501, 509 (D.C. Cir. 2007 ("The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."); *Gray*, 2006 WL 1663242, *1 ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *Morrow*, 2006 WL 559288 at *2 ("expense is but a part of the burden") (citation omitted).

**CONCLUSION**

For the reasons and arguments set out in J&G's Motion and this Reply, J&G requests that the Court deny Plaintiffs' Cross-Motion to Compel, quash Plaintiffs' subpoena and grant such other relief to which J&G is entitled.

Respectfully submitted,

By: s/ Robert J. Wagman, Jr.

Robert J. Wagman, Jr.
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400
robert.wagman@bakerbotts.com
202.639.7700
202.639.7890 (telecopy)

COUNSEL FOR JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (TEXAS)

Of Counsel:
Rod Phelan
Mary L. Scott
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
214.953.6500
214.953.6503 (telecopy)

Dated: June 25, 2007

IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as<br>Tax Matters Partner of JBJZ Partners,<br>a South Carolina general partnership,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |

**APPENDIX TO NON-PARTY JENKENS & GILCHRIST'S RESPONSE TO PLAINTIFFS' CROSS-MOTION TO COMPEL AND REPLY IN SUPPORT OF MOTION TO QUASH AND MOTION FOR PROTECTION FROM, PLAINTIFFS' SUBPOENA FOR A RULE 30(b)(6) DEPOSITION AND FOR PRODUCTION OF DOCUMENTS**

**INDEX**

| Attachment | Title | Pages |
|---|---|---|
| 1. | Supplemental Declaration of John Gilliam | 1-4 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, Plaintiff, | § | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, Defendants. | § | |

**SUPPLEMENTAL DECLARATION OF JOHN GILLIAM**

1. My name is John Gilliam. I am over the age of 18, of sound mind, and competent to make this declaration. I have personal knowledge of the facts set forth in this declaration, and they are true.

2. This Declaration is filed in support of Non-Party J&G's Response to Plaintiffs' Cross-Motion to Compel and Reply in Support of Motion to Quash and Motion for Protection from Plaintiffs' Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents.

3. Since filing its Motion to Quash and Motion for Protection, J&G has continued to reduce its staff as it has proceeded through the liquidation process. J&G currently has 13 employees. By the end of July 2007, J&G will have 7 employees, one of whom will be part-time.

4. In the course of the government's investigation into J&G's involvement in certain tax shelters, J&G produced over 1 million pages of documents to the DOJ in response to document requests. J&G does not know if it will ever be required to produce additional documents or information to the DOJ pursuant to the Non-Prosecution Agreement. J&G's plans

for supporting its future obligations of cooperation, as described in the Non-Prosecution Agreement, are the assignment of one person to be a contact person for the DOJ and one technical person, who will work on a contract basis as needed. J&G has no plans to keep a workforce in place to respond to the government's future requests.

5. I have reviewed my and Roger Hayse's file materials, both electronic and hard copy, relating to the settlement negotiations and discussions with the DOJ and IRS. There are no documents containing a description of, or even referencing, the calculation, method of calculation or formula used by the IRS in deriving the $76 million penalty referred to in the IRS News Release about the J&G settlement.

6. The former J&G shareholders who were the primary J&G participants in the settlement discussions and negotiations with the DOJ and IRS were Tom Cantrill and Patrick Mitchell. At my request, Cantrill and Mitchell permitted me to review the hard copy file materials that they had in their possession relating to the discussions and negotiations with the DOJ and IRS. I also reviewed documents from Cantrill's and Mitchell's electronic files that still reside with J&G. In my review of all of these materials, I did not find any description of, or even a reference to, the calculation, or method of calculation or the formula that was used by the IRS in arriving at the $76 million penalty referenced in the IRS News Release.

7. I specifically asked Cantrill, Mitchell and Hayse if anyone from the IRS ever told them how the IRS was calculating the $76 million and was told by each of them that the method or manner of calculation by the IRS was never disclosed or discussed with them. Based on my discussions with Cantrill, Mitchell and Hayse, and from my own recollection of the settlement discussions and negotiations in which I participated, I do not believe that the IRS ever told J&G

of the manner or method of calculation or the formula the IRS used to calculate the $76 million penalty. Also, without disclosing the terms of the Closing Agreement with the IRS, which would violate the confidentiality agreement contained in the Closing Agreement, I can state that the Closing Agreement does not reveal the method or manner used by the IRS in calculating the $76 million.

8. I have read Plaintiffs' Cross-Motion to Compel J&G to Comply with Subpoena for Rule 30(b)(6) Deposition and Production of Documents and the supporting Memorandum. Plaintiffs have acknowledged that the subpoena is narrowly focused on the manner or method by which the IRS calculated the $76 million. Because J&G and its former shareholders have no such information, taking a deposition of J&G or any of those who were involved in the discussions with the IRS would be a waste of time, money and judicial resources.

9. Paragraphs 13 and 14 of my prior declaration refer to documents that are protected by the attorney-client privilege and attorney work product exemption. J&G asserted privileges in its motion out of an abundance of caution because it was unclear to J&G how broadly the subpoena would be interpreted by the Court, not because J&G has any responsive documents relating to the IRS's calculation. Now that Plaintiffs have declared with certainty that the only information they seek is the calculation used by the IRS, it is now clear that J&G has no responsive documents or other information.

**Declaration**

I, John Gilliam, declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas, Texas on June 25, 2007.

John Gilliam

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2007 the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to the following attorneys of record:

Dennis M. Donohue
U. S. Department of Justice
Tax Division, Claims Court Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044-0026
Email: dennis.donohue@usdoj.gov

Joel N. Crouch
Meadows, Collier, Reed, Cousins
& Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202
Email: jcrouch@meadowscollier.com

I hereby certify that on June 25, 2007 the foregoing document was served by first-class mail, postage prepaid, to the following:

David M. Steiner, Esq.
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq.
United States Department of Justice
Tax Division
717 North Harwood, Suite 400
Dallas, Texas 75201

F. Anthony Paganelli, Esq.
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

s/ Robert J. Wagman, Jr.
Robert J. Wagman, Jr.