**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **IN RE COBRA TAX SHELTER LITIGATION** | § | |
| | § | |
| **THIS DOCUMENT RELATES TO:** | § | **1:05-ml-09727-JDT-WTL** |
| | § | |
| **1:06-CV-8000** | § | |
| **1:06-CV-8002** | § | |

**REPLY TO J&G'S RESPONSE TO PLAINTIFFS' CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS**

Plaintiffs Tesoro Drive Partners and SA Tesoro Investment Partners, by their undersigned attorneys, file this Reply to J&G's Response to Plaintiffs' Cross-Motion to Compel J&G to Comply with Subpoena for Rule 30(b)(6) Deposition and Production of Documents. In its Response, J&G has shifted its primary argument from the focus of its Memorandum in Support of its Motion to Quash -- from objections based on confidentiality, relevance and burdensomeness -- to the claim that it does not have the information Plaintiffs seek in their 30(b)(6) subpoena. J&G's argument rests on two equally unwarranted assumptions: first, that Plaintiffs seek *only* the Closing Agreement and the calculation the government used to determine the penalty assessed against J&G; and second, that information in the possession or within the knowledge of its outside counsel, Davis Polk & Wardwell, is not subject to Plaintiffs' subpoena.

A fair reading of Plaintiffs' subpoena and Memorandum in Support of their Cross-Motion to Compel reveals the distortion inherent in the first assumption, while J&G's total

silence with respect to the issue raised in Plaintiffs' Memorandum as to whether J&G's outside counsel has the information Plaintiffs seek casts serious doubt on J&G's protestation of utter ignorance of the reasoning the government used to arrive at the $76 million penalty J&G agreed to pay. Because J&G's other arguments in its Response are equally baseless, J&G's Motion to Quash should be denied and Plaintiffs' Cross-Motion to Compel should be granted.

## ARGUMENT

### I. Plaintiffs Seek Information Regarding The IRS's Positions As To Whether The Currency Options At Issue Constitute A Single Net Transaction Or Separate Transactions.

J&G's primary argument for quashing Plaintiffs' Cross-Motion to Compel -- that J&G does not have the information Plaintiffs seek -- depends on a distortion of Plaintiffs' subpoena requests and Memorandum in Support of their Cross-Motion. J&G asserts that "Plaintiffs have declared with certainty that the only information they seek is the IRS's calculation of the $76 million penalty." Resp. at 3. Plaintiffs have done nothing of the sort, however, as any fair reading of their subpoena and Memorandum in Support demonstrates. To the contrary, they submitted an 18-page brief that details what information they seek and how it relates to the central issues in their case. Nevertheless, J&G attempts to reduce Plaintiffs' requests for information regarding the IRS's legal and factual positions in different contexts regarding whether the currency options at issue constitute a single net transaction or separate transactions[1] to a mere "calculation." Resp. at 2, 3 *et passim*. Given its unwarranted limitation of the information Plaintiffs seek to "the calculation," J&G's claim that it has no responsive information or documents rings hollow. Likewise, its

[1] See Exhibit A to Plaintiffs' 30(b)(6) Subpoena, Attachment 1 to J&G's Brief in Support of Motion to Quash (Docket Report # 41).

assertion that "no *current* J&G employee . . . was ever told how the IRS calculated the $76 million," id. at 2 (emphasis added), leaves unanswered the question of whether a *former* employee has that information. Such calculatedly incomplete statements are insufficient grounds to quash Plaintiffs' subpoena.

J&G also attempts to reduce Plaintiffs' requests for documents to the Closing Agreement, noting that it is the "only document Plaintiffs have specifically targeted that J&G has." Resp. at 5. Plaintiffs requested the Closing Agreement because it is the only potentially relevant document of whose existence Plaintiffs have specific knowledge; obviously, they cannot target documents they have no knowledge of. Plaintiffs served the subpoena to discover what documents exist that shed light on the IRS's underlying legal and factual positions, reasoning and conduct with respect to its assessment of a penalty against J&G. In light of J&G's unwarranted limitation of Plaintiffs' requests to "the calculation," Resp. at 4, its assertion that "[t]here is nothing in the Closing Agreement about the calculation" does not inspire confidence that the document is devoid of information concerning the IRS's underlying legal and factual positions regarding the transactions at issue. Hence, J&G's offer to submit the Closing Agreement for an *in camera* inspection to determine whether it contains information relevant to Plaintiffs' case should be accepted.

## II. Because J&G Fails To Address Whether Its Outside Counsel Has The Information Plaintiffs' Seek, Its Assertion That It Does Not Have That Information Is Entitled To No Weight.

In its Response, J&G wholly ignores the question of whether J&G's outside counsel, Davis Polk & Wardwell ("Davis Polk"), has the information Plaintiffs seek, an issue that Plaintiffs raised in their Memorandum in Support of their Cross-Motion. Pltfs'

Mem. at 13-14. Studiously avoiding that issue, J&G instead denigrates Plaintiffs' resort to the common sense proposition that "[i]t is simply not possible that J&G agreed to pay a $76 million penalty . . . with no information about how the IRS arrived at that figure." Pltfs' Mem. at 13-14. But the law does not require that common sense be checked at the courthouse door. Moreover, it would be startling for legal counsel as competent as Davis Polk to negotiate a settlement involving a $76 million penalty without inquiring as to the basis for such a figure. Ignoring the fact that the purpose of discovery is to obtain relevant documents and facts unknown to the discovering party, J&G twits Plaintiffs for their lack of the very information J&G refuses to produce. Resp. at 2-3.

But Plaintiffs' requests are not "based on . . . mere suspicion or speculation," id. at 3, or even on "mere" common sense. On or about April 3, 2007, shortly after the public announcement of J&G's settlement with the government, Plaintiffs' counsel, M. Todd Welty of Meadows, Collier, Reed, Cousins & Blau, L.L.P., telephoned J&G's outside counsel, Robert B. Fiske, Jr. of Davis Polk.[2] Mr. Welty introduced himself to Mr. Fiske and advised him that he represented several taxpayers who had received J&G tax opinions related to their investments in what are known as COBRA transactions. Id. Mr. Welty also advised Mr. Fiske that he was calling because it appeared that the IRS was taking inconsistent positions as to whether the long and short options involved in COBRA transactions should be treated as a single net option or as separate options, depending on whether the IRS was seeking to assess taxes against taxpayers or to impose I.R.C. §6707 penalties against tax advisors. Id.

[2] See Welty Affidavit at 1, attached hereto as Appendix Vol. 2.

Mr. Fiske indicated that he understood that the IRS has been taking inconsistent positions on these issues, id. at 1-2, treating the long and short options as a single net option when calculating assessments against taxpayers, but, he confirmed, treating the long and short options as separate when calculating I.R.C. §6707 penalties on the aggregate investment against tax advisors for failing to register COBRA transactions as tax shelters under I.R.C. §6111. Id. at 2. Mr. Welty then asked Mr. Fiske if he would accept service of a Rule 30(b)(6) subpoena on behalf of J&G. Id. Mr. Fiske said that he was not authorized to do so, but would let Mr. Welty know whom he should serve. Id. At a later date, Mr. Welty was informed that he should serve John Gilliam at J&G. Id.

Mr. Fiske appears to possess the information Plaintiffs seek. That information is crucial to Plaintiffs' case, as demonstrated in their Memorandum in Support of their Cross-Motion. The information cannot be privileged, especially since J&G has so clearly asserted that its employees possess no such information; it therefore cannot have been the subject of J&G's communications with its outside counsel. Information within the knowledge or possession of its outside counsel is within J&G's control, however, and is therefore subject to discovery. Nevertheless, if the Court deems it necessary, Plaintiffs will subpoena Davis Polk & Wardwell to obtain the information it clearly possesses, which Plaintiffs need to make their case and which this Court needs to determine the facts and the law. It is high time that the government's game of "hide the ball" and J&G's game of "pickle-in-the-middle" come to an end.

## III. J&G Has Conceded The Relevance Of The Information Requested.

J&G has apparently conceded the relevance of the information Plaintiffs seek in their subpoena. It has not returned to its argument in its opening brief that its settlement

with the IRS "cannot possibly affect Plaintiffs claims" or "further any claims or defenses in the case," J&G Br. at 4, perhaps because that argument does not pass the straight-face test in light of Plaintiffs' explication of the relevance of the information they seek in their Memorandum in Support. Instead, J&G suggests that the authorities Plaintiffs cited in their Memorandum are inapposite because "all of them are based on the underlying premise that the settlement agreement or related documents under consideration have some relevance to the issues in the litigation." Id. That, of course, is precisely why Plaintiffs cited the cases. Since J&G's relevance objection depends on its unilateral and unwarranted limitation of Plaintiffs' requests to the Closing Agreement and "the calculation," and since J&G offers no counterargument to Plaintiffs' explanation of the relevance of the information it actually seeks, the objection is meritless.

Equally baseless is J&G's assertion that Plaintiffs failed "to address the motion to quash on Numbers 1(d) and (e) and therefore "conceded that the information sought in these discovery requests is irrelevant and unnecessary." J&G's primary objections to these requests were attorney-client privilege and work-product protection, J&G Br. at 5-6, which J&G concedes Plaintiffs addressed at 'great length[]" in their Memorandum in Support of their Cross-Motion. Resp. at 3. J&G also objected that the information requested in 1(d) "is irrelevant to whether the IRS properly or lawfully disallowed Plaintiff's tax shelter," J&G Br. at 6, and that the information sought in request 1(e), "like the other information sought[,] is irrelevant to Plaintiff's claims." Id. The relevance of the information Plaintiffs seek was addressed at pages 2-7 and 9-10 in Plaintiffs' Memorandum in Support of their Cross-Motion. The IRS's shifting positions are central to Plaintiffs' case, and J&G has offered no argument to the contrary. Its relevance objection is merely *pro forma* and is

therefore entitled to no weight in balancing the factors relevant to determining the motions to quash and to compel.

### IV. The Balance Of Factors Weighs Heavily In Favor Of Granting Plaintiffs' Cross-Motion To Compel.

Finally, J&G asserts that "*any* effort and cost required of J&G to prepare for and attend a deposition is unduly burdensome." Resp. at 6 (emphasis added). In light of its insistence that it has no responsive documents and no knowledge of the information Plaintiffs seek, all that J&G need do to comply with Plaintiffs' subpoena is produce the person or persons at Davis Polk who do have that knowledge and ask that they produce all unprivileged documents in their possession that are responsive to the subpoena. Presumably J&G can accomplish this through a telephone call to its outside counsel. Even in J&G's present circumstances, that is not an undue burden. *Likewise, J&G could lessen any burden on it by simply waiving the applicable limitations, if any, under I.R.C. § 6103 to remove the IRS's stated objection for not disclosing its penalty computation methodology to Plaintiffs*. Moreover, all of the other factors weigh heavily in favor of granting Plaintiffs' Cross-Motion and denying J&G's Motion to Quash. The information Plaintiffs seek is narrow, if not as narrow as J&G pretends; directly related to the fundamental issues in this case; unprotected by any rule of privilege or confidentiality; and necessary for Plaintiffs to prepare their case and for this Court to determine the facts and the law.

## CONCLUSION

For all of the reasons stated herein, as well in their Cross-Motion to Compel J&G to Comply with Subpoena for Rule 30(b)(6) Deposition and Production of Documents and in their Memorandum in Support of their Cross-Motion, Plaintiffs respectfully request that this

Court grant Plaintiffs' Cross-Motion to Compel and deny Jenkens & Gilchrist's Motion to Quash and Motion for Protection.

Respectfully submitted,

By: /s/ Joel N. Crouch
Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2007, I served the above and foregoing on the below-listed counsel via the means indicated:

David M. Steiner, Esq. *(via Electronic Mail)*
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq. *(via Electronic Mail)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F. Anthony Paganelli, Esq. *(via Electronic Mail)*
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

Rod Phelan, Esq. *(Via Certified Mail)*
Mary L. Scott, Esq.
Baker Botts, LLP
2001 Ross Avenue
Dallas, Texas 75201-2980

***Attorney for Jenkens & Gilchrist***

/s/ Joel N. Crouch
JOEL N. CROUCH