IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

## SECOND AMENDED ANSWER AND COUNTERCLAIM

Defendant, United States of America, hereby restates its prior Amended Answer to plaintiff's Complaint for Readjustment of Partnership Items, denying each and every allegation therein, as restated herein, unless expressly admitted below, and amends its prior amended answer to assert a counterclaim for accuracy related penalties, as detailed herein:

I.

1. Plaintiff JZ Buckingham Investments, LLC ("JZ") is a limited liability company formed under Delaware law. Its employer identification number is 57-1088088, and its principal place of business is 16 Buckingham Dr., Charleston, SC 29047.

Answer: Defendant admits that JZ Buckingham Investments LLC purports to be a single member limited liability company that was formed by Jerry Zucker under Delaware law, that it was, upon application to the Internal Revenue Service, assigned the employer identification

number 57-1088088, and that its purported principal place of business was 16 Buckingham Dr., Charleston, SC 29407. The remaining allegations contained in paragraph 1 are denied.

2. JZ is a 90% partner in JBJZ Partners ("JBJZ Partners" or the "Partnership), a South Carolina general partnership, for tax year ending December 27, 1999.

Answer: Defendant admits that JBJZ Partners ("JBJZ Partners" or the "Partnership) purports to have been a South Carolina general partnership for tax year ending December 27, 1999. It is further admitted that JZ Buckingham Investments LLC purports to have been a 90% partner in JBJZ Partners. The remaining allegations contained in paragraph 2 are allegations of law to which no response is required. To the extent that a response is required, the allegations are denied.

3. JZ is the tax matters partner of JBJZ Partners.

Answer: Defendant admits that JBJZ Partners purports to have been a South Carolina general partnership for tax year ending December 27, 1999 and that JZ Buckingham Investments LLC is the tax matters partner of JBJZ Partners. The remaining allegations contained in paragraph 3 are allegations of law to which no response is required. To the extent that a response is required, the allegations are denied.

4. JGB Bohicket Investments LLC ("JGB") is a limited liability company formed under Delaware law. JGB is a 10% partner in JBJZ Partners for tax year ending December 27, 1999. Its employer identification number is 57-1088055, and its principal place of business is 3520 Bohicket Rd., Johns Island, SC 29445.

Answer: Defendant admits that JGB Bohicket Investments LLC ("JGB") purports to be a limited liability company formed under Delaware law, that it was, upon application to the Internal Revenue Service, assigned the employer identification number 57-1088055, and that its purported principal place of business is 3520 Bohicket Rd., Johns Island, SC 29445. It is further

admitted that JBJZ Partners purports to have been a South Carolina general partnership for tax year ending December 27, 1999 and that JGB purports to have been a 10% partner in JBJZ Partners for tax year ending December 27, 1999. The remaining allegations contained in paragraph 4 are allegations of law to which no response is required. To the extent that a response is required, the allegations are denied.

5. JZ and JGB are collectively referred to as the "Partners" or the "Limited Liability Companies" in this Complaint.

Answer: No response is required with respect to the allegations contained in paragraph 5.

6. JBJZ Partners is a South Carolina general partnership with employer identification number 57-1088089. Its principal place of business is 16 Buckingham Dr., Charleston, SC 29407. For the year ending December 27, 1999, JBJZ Partners filed its federal tax return with the Internal Revenue Service at Cincinnati, OH 45999-0011.

Answer: Defendant states that JBJZ Partners purported to be a South Carolina general partnership and is also disregarded for federal income tax purposes, but admits that JBJZ Partners, upon application to the Internal Revenue Service, was assigned the employer identification number 57-1088089, and that its purported principal place of business is 16 Buckingham Dr., Charleston, SC 29407. It is further admitted that JBJZ Partners filed a federal tax return for the year ending December 27, 1999, but it is denied that the return was filed with the Internal Revenue Service at Cincinnati, OH 45999-0011. The remaining allegations contained in paragraph 6 are allegations of law to which no response is required. To the extent that a response is required, the remaining allegations contained in paragraph 6 are denied.

7. On December 9, 2004, the Commissioner of Internal Revenue (the "Commissioner") issued a Notice of Final Partnership Administrative Adjustment ("FPAA") against JBJZ Partners for tax year ending December 27, 2000. The Commissioner issued the FPAA from the Internal Revenue Service ("IRS") office at P.O. Box 9112, Stop 41100, Boston, Massachusetts 2203-9112. A copy of the FPAA is attached to this Complaint as Exhibit "A."

Answer: Defendant admits that on December 9, 2004, a Notice of Final Partnership Administrative Adjustment ("FPAA") was sent by certified mail to the purported partners of JBJZ Partners, but states that it was for tax year ending December 27, 1999, not the tax year ending December 27, 2000. It is further admitted that the FPAA was sent by the Internal Revenue Service ("IRS") from its offices with the postal address of P.O. Box 9112, Stop 41100, Boston, Massachusetts 2203-9112, and that a copy of one of the FPAAs sent by the Internal Revenue Service is attached to the Complaint marked as Exhibit "A." Defendant objects to the remaining allegations contained in paragraph 7 upon the ground that they are vague and/or ambiguous. To the extent a response is required to the remaining allegations contained in paragraph 7, they are denied.

8. Plaintiff is filing this Complaint within ninety days after the day on which the FPAA was mailed to the tax matters partner, JZ.

Answer: Defendant admits that on December 9, 2004 the FPAA was sent by certified mail to the tax matters partner of JBJZ, that plaintiff, JZ Buckingham Investments LLC, filed the complaint in the above-captioned action on February 18, 2005, and that the complaint was filed within 90 days after the day on which the FPAA was mailed.

9. According to Sections 6226(a), 6226(c), and 6226(d) of the Internal Revenue Code (the "Code"), plaintiff has standing to bring this Complaint.

Answer: Defendant admits that plaintiff, JZ Buckingham Investments LLC, has standing to bring this action. The remaining allegations contained in paragraph 9 are allegations of law to which no response is required

II.

10. Defendant is the United States of America and will be served in accordance with Rule 4 of the rules of the United States Court of Federal Claims.

Answer: Defendant admits that it is the United States of America and states that no response is required to the remaining allegations contained in paragraph 10.

III.

11. This is a civil action arising under Section 6226(a) of the Code for the redetermination of final partnership administrative adjustments to JBJZ Partners' Form 1065 income tax return for the tax year ended December 27, 2000, as set forth by the Commissioner in the FPAA.

Answer: Defendant admits that this is a civil action arising under Section 6226(a) of the Code for the redetermination of final partnership administrative adjustments to JBJZ Partners' Form 1065 income tax return for the tax year ended December 27, 1999, as set forth by the Commissioner in the FPAA. The remaining allegations contained in paragraph 11 are denied.

12. The Commissioner erroneously and illegally determined that : (a) the form of the transactions at issue should be recharacterized or disregarded under a number of different theories; (b) JBJZ Partners should be disregarded as a partnership for federal income tax purposes; and (c) several corresponding adjustments should be made to Plaintiff's tax liabilities.

Answer: Defendant admits that the Commissioner determined, inter alia, that : (a) the form of the transactions at issue should be recharacterized or disregarded under a number of different theories; (b) JBJZ Partners should be disregarded as a partnership for federal income tax

purposes; and (c) several corresponding adjustments should be made to Plaintiff's tax liabilities.

It is denied that these determinations were erroneous and/or illegal.

IV.

13. Code Sections 6226(a) and 6226(c) and 28 U.S.C. § 1346(a)(1) confer jurisdiction on this Court.

Answer: Jurisdiction, to the extent it exists, is founded upon 28 U.S.C. § 1508

14. For jurisdiction purposes, JZ has complied with the requirements of Code Section 6226(e) by depositing the amount by which the federal income tax liability of its sole owner would be increased if treatment of the Partnership items on his tax returns for the tax years at issue were made consistent with the treatment of partnership items on JBJZ Partners' tax returns as adjusted by the Commissioner in the FPAA.

Answer: Defendant admits that JZ Buckingham Investments LLC has, to date, made a good faith attempt to satisfy the deposit requirement, but states that the deposit is $51,153 less than that required by Section 6226(e) and that this amount must be promptly deposited with the Internal Revenue Service in order to comply with the requirements of § 6226(e). The remaining allegations contained in paragraph 14 are denied.

15. JZ, as tax matters partner, has made a deposit of $10,561,570 for tax years 1997, 1999 and 2000 with the Internal Revenue Service in Austin, Texas on February 2, 2005. A copy of the check and the remittance letter is attached as Exhibit "B."

Answer: Defendant admits that JZ Buckingham Investments LLC, as tax matters partner, has made a deposit of $10,561,570 for tax years 1997, 1999 and 2000 with the Internal Revenue Service in Austin, Texas on February 2, 2005, and that a copy of the check and the remittance letter is attached as Exhibit "B." The remaining allegations contained in paragraph 15 are denied.

V.

16. This action is based on the following transactions (the "Transaction").

Answer: No response is required with respect to the allegations contained in paragraph 16. To the extent a response is required, Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 16.

17. On November 23, 1999, JZ and JGB entered into certain over-the-counter, non-publicly traded European-style foreign currency option positions on the Euro and Yen (collectively the "Options") with Deutsche Bank AG New York Branch (the "Bank").

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

18. JZ and JGB each purchased a Long Option and sold a Short Option.

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.

19. JZ bought digital options on the Euro/U.S. Dollar exchange rate at a strike price of U.S. $1.0123 per 1.0 Euro with an expiration date of December 22, 1999, a settlement date of December 27, 1999 and a payoff amount of $40,000,000, and paid a premium of $20,000,000.

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

20. JZ also bought digital options on the Japanese Yen/U.S. Dollar exchange rate at a strike price of 106.19 Japanese Yen per U.S. $1.00 with an expiration date of December 22, 1999, a settlement dale of December 27, 1999 and a payoff amount of $50,000,000, and paid a premium of $25,000,000.

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21. JGB bought digital options on the Euro/U.S. Dollar exchange rate at a strike price of U.S. $1.013 per 1.0 Euro with an expiration date of December 22, 1999, a settlement date of December 27, 1999 and a payoff amount of $10,000,000, and paid a premium of $5,000,000.

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22. The options described in paragraphs 20 through 22 are referred to as the "Long Options."

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.

23. JZ sold a digital option on the Euro/U.S. Dollar exchange rate at a strike price of U.S. 1.0121 per Euro and received a premium of $19,000,000 with an expiration date of December 22, 1999, a settlement date of December 27, 1999, and a payoff amount of $37,500,000.

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23.

24. JZ also sold a digital option on the Japanese Yen/U.S. Dollar exchange rate at a strike price of 06.21 Japanese Yen per U.S. $1.00 and received a premium of $23,7500,000, with an expiration date of December 22, 1999, a settlement date of December 27, 1999, and a payoff amount of $46, 75,000.00.

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.

25. JGB sold a digital option on the Euro/U.S. Dollar exchange rate at a strike price of U.S. $1.0121 per 1.0 Euro and received a premium of $4,750,000 with an expiration date of December 22, 999, a settlement date of December 27, 1999, and a payoff amount of $9,375,000.

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26. The options described in paragraphs 24 through 26 are referred to as the "Short Options." Together the Long Options and the Short Options are referred to as the "Options."

Answer: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26.

27. November 24, 1999, JZ and JGB contributed the Options to JBJZ Partners as contributions to capital.

Answer: Defendant states that JBJZ Partners purports to be a South Carolina general partnership and is also disregarded for federal income tax purposes and is presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 27.

28. On December 22, 1999, JBJZ Partners' option positions terminated in accordance with their terms.

Answer: Defendant states that JBJZ Partners purports to be a South Carolina general partnership and is also disregarded for federal income tax purposes and is presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28.

29. During December 1999, JBJZ Partners purchased Canadian Dollars (the "Foreign Currency") as an investment.

Answer: Defendant states that JBJZ Partners purports to be a South Carolina general partnership and is also disregarded for federal income tax purposes and is presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 29.

30. On December 22, 1999, 4,500 shares of Cisco Systems, Inc. which were held for investment for more than one year ("Long Term Shares") were contributed to JBJZ Partners.

Answer: Defendant admits that on December 22, 1999, Jerry Zucker purported to contribute 4,500 shares of stock in Cisco Systems, Inc. to JBJZ Partners which purported to be a South Carolina general partnership, but states that JBJZ Partners is a factual sham and that, even if it did exist, this entity is disregarded for federal income tax purposes because it had no business

purpose, and also states that JBJZ Partners, even if it did exist, was created as a sham entity as a step in a prearranged plan and is thus also disregarded for federal income tax purposes under the step transaction doctrine, and also states that this entity, if it did exist, was created for a purpose which was inconsistent with the intent of Subchapter K of the Internal Revenue Code.

31. December 22, 1999, 500 shares of Cisco Systems, Inc. which were held for investment for less than six months ("Short Term Shares") were contributed to JBJZ Partners.

Answer: Defendant admits that on December 22, 1999, James Boyd purported to contribute 500 shares of stock in Cisco Systems, Inc. to JBJZ Partners which purported to be a South Carolina general partnership, but states that JBJZ Partners is a factual sham and that, even if it did exist, this entity is disregarded for federal income tax purposes because it had no business purpose, and also states that JBJZ Partners, even if it did exist, was created as a sham entity as a step in a prearranged plan and is thus also disregarded for federal income tax purposes under the step transaction doctrine, and also states that this entity, if it did exist, was created for a purpose which was inconsistent with the intent of Subchapter K of the Internal Revenue Code.

32. On December 27, 1999, JZ's interest in TBJZ Partners was contributed to JBJZ Investors, Inc., a Delaware corporation.

Answer: Defendant admits that JBJZ Investors, Inc. purports to be a Delaware corporation and JZ purports to have contributed its interest in JBJZ Partners to JBJZ Investors, Inc. on December 27, 1999, but states that both JBJZ Partners and JBJZ Investors, Inc. were created as steps in a prearranged plan to engage in transactions that are inconsistent with the intent of Subchapter K of the Internal Revenue Code and also were shams that were availed of solely for the purpose of effecting sham transactions and denies the remaining allegations contained in paragraph 32.

33. On December 27, 1999, JGB's interest in JBJZ Partners was contributed to JBJZ Investors, Inc.

Answer: Defendant admits that JBJZ Investors, Inc. purports to be a Delaware corporation and JGB purports to have contributed its interest in JBJZ Partners to JBJZ Investors, Inc. on December 27, 1999, but states that both JBJZ Partners and JBJZ Investors, Inc. were created as steps in a prearranged plan to engage in transactions that are inconsistent with the intent of Subchapter K of the Internal Revenue Code and also were shams that were availed of solely for the purpose of effecting sham transactions and denies the remaining allegations contained in paragraph 33.

34. On December 27, 1999, JBJZ Partners was dissolved and liquidated because the partnership interests in JBJZ Partners were contributed to JBJZ Investors, Inc. Upon liquidation, all of the Foreign Currency and Shares were distributed to JBJZ Investors, Inc.

Answer: The allegations contained in paragraph 34 are allegations of law to which no response is required. To the extent a response is required, Defendant states that both JBJZ Partners and JBJZ Investors, Inc. were created as steps in a prearranged plan to engage in transactions that are inconsistent with the intent of Subchapter K of the Internal Revenue Code and also were shams that were availed of solely for the purpose of effecting sham transactions and denies the remaining allegations contained in paragraph 34.

35. JBJZ Investors, Inc. sold all of its investments in the Foreign Currency and the Shares on December 28, 1999.

Answer: Defendant admits that the Foreign Currency and the 5,000 shares of Cisco Systems, Inc. were sold, but denies the remaining allegations contained in paragraph 35.

36. JBJZ Investors, Inc.'s sale of its investment in the Foreign Currency and the Shares triggered a loss that was reported on JBJZ Investors, Inc.'s 1120S and the corresponding

Schedule K-1s for the 1999 tax year. The total ordinary loss was in the amount of $29,446,675. The total capital loss was in the amount of $20,197,439.00.

Answer: Defendant admits that JBJZ, Inc. filed a Form 1120S for the tax year beginning November 12, 1999 and ending December 31, 1999, upon which it reported an ordinary income loss in the amount of $29,446,675 and a capital loss in the amount of $20,197,439. The remaining allegations are allegations contained in paragraph 36 are allegations of law to which no response is required. To the extent a response is required, the remaining allegations contained in paragraph 36 are denied.

VI.

37. JBJZ Partners timely filed its Form 1065 for the short tax year ending December 27, 1999, the date of JBJZ Partners' dissolution. Ernst & Young LLP prepared JBJZ Partners' tax return.

Answer: Defendant admits that JBJZ Partners was dissolved on December 27, 1999, that Form 1065 filed by JBJZ Partners for the tax year ending December 27, 1999, indicates that it was prepared by Ernst & Young LLP, that the tax year ending December 27, 1999 was a short tax year, and that the Form 1065 filed on behalf of JBJZ Partners for the year ending December 27, 1999, was timely filed with the Internal Revenue Service on April 15, 2000. Defendant otherwise states that JBJZ Partners is disregarded for federal income tax purposes and is presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 38.

38. JBJZ Investors, Inc. timely filed a Form 1120S for the tax year ending December 31, 1999. Ernst & Young LLP prepared JBJZ Investors, Inc.'s tax return.

Answer: Defendant admits that the Form 1120S tax return filed by JBJZ Investors, Inc., for the tax year ending December 31, 1999, indicates that it was prepared by Ernst & Young LLP, and that the Form 1120S of JBJZ Investors, Inc., for the tax year ending December 31, 1999 was

timely filed with the Internal Revenue Service, with extension, on March 30, 2000. Defendant states that it is presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 38.

39. The loss generated by JBJZ Investors Inc.'s sale of the Foreign Currency and the Shares was allocated to the limited liability companies on their respective K-1s for the 1999 tax year as follows: (a) $26,502,007 ordinary loss and $18,177,695.00 capital loss was allocated to JZ; and (b) $2,944,668 ordinary loss and $2,019,744.00 capital loss was allocated to JGB.

Answer: Defendant admits that the Form 1120S for JBJZ Investors, Inc., for the tax year ending December 31, 1999, reported an ordinary loss in the amount of $29,446,675 and a capital loss in the amount of $20,197,439, which were allocated on the return as follows: (a) $26,502,007 ordinary loss and $18,177,695 capital loss to JZ; and (b) $2,944,668 ordinary loss and $2,019,744 capital loss to JGB.

VII.

40. Plaintiff incorporates paragraphs 1 through 39 as though fully set forth here.

Answer: Defendant incorporates its answers to paragraphs 1 through 39 of the Complaint as though fully set forth herein.

41. The Commissioner erred in determining that:

a) The ordinary income of the Partnership should be decreased by $625,000 ending December 27, 1999.

b) The Commissioner erred in determining that the tax-exempt interest income of the Partnership should be decreased by $670 for tax year ending December 27, 1999.

c) The capital contributions to the Partnership in the amount of $51,529,750 should be disallowed for tax year ending December 27, 1999.

d) The net short-term capital loss of the Partnership should be decreased by $2,305 for tax year ending December 27, 1999.

e) Neither JBJZ Partners nor its Partners have established the existence of JBJZ Partners as a partnership as a matter of fact.

f) Even if JBJZ Partners existed as a partnership, it was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its Partners.

g) The information of JBJZ Partners, the acquisition of any interest in the partnership by the Partners, the purchase of offsetting options, the transfer of offsetting options to the Partnership in return for a partnership interest, the purchase of assets by the Partnership, and the distribution of those assets to JBJZ Investors, Inc., a corporation controlled by the Partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate at a loss, all within a period of less than two months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes.

h) The Partnership and the Transactions shall accordingly be disregarded in full and (1) any purported losses resulting from these Transactions are not allowable as deductions; (2) increases in basis of assets are not allowed to eliminate gain for federal income tax purposes.

I) JBJZ Partners was a sham, lacked economic substance, and, under Treas. Reg. § 1.701-2, was formed and availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of its Partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.

j) JBJZ Partners is disregarded and that all transactions engaged in by the Partnership are treated as engaged in directly by its Partners. This includes the

determination that the assets purportedly acquired by JBJZ Partners, including, but not limited to, the Options, were acquired directl by the Partners.

k) The Options contributed to or assumed by JBJZ Partners, are treated as never having been contributed to or assumed by the Partnership and any gains or losses realized by JBJZ Partners on the Options are treated as having been realized by its Partners.

l) The Partners of JBJZ Partners should be treated as not being partners in JBJZ Partners.

m) Contributions to JBJZ Partners will be adjusted to reflect clearly the Partnership's or Partners' income.

n) The obligations under the Short Options (written call options) transferred to JBJZ Partners constitute liabilities for purposes of Treas. Reg. § 1.752-6T, the assumption of which by JBJ Partners shall reduce the Partners' bases in JBJZ Partners in the amount of $42,750,000 and $4,750,000 respectively, but not below the fair market value of the partnership interest.

o) Neither JBJZ Partners' nor its Partners entered into the Options or the investments in Foreign Currency or the Long and Short Term Shares with a profit motive for purposes of Code Section 165(c)(2).

p) Even if the Options are treated as having been contributed to JBJZ Partners, the amount treated as contributed by the Partners under Code Section 722 is reduced by the contributing Partners from the contemporaneous sales of the Short Options to he same counter-party.

q) The basis of the Options is reduced, both in the hands of the contributing Partners and JBJZ Partners. Consequently, any corresponding claimed increases in the outside basis in JBJZ Partners resulting from the contributions of the Options are disallowed.

r) The adjusted bases of the Long Options (purchased call options), zero coupon notes, and other contributions made by the Partners to JBJZ Partners have not been established under Code Section 723.

s) The Partners of JBJZ Partners have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

t) In the case of a sale, exchange, or liquidation of JBJZ Partners, the Partners’ partnership interests, neither the Partnership nor its Partners have established that the bases of the Partners’ partnership interests were greater than zero for purposes of determining gain or loss to such Partners from the sale, exchange, or liquidation of such partnership interest.

Answer: Denied.

42. The Commissioner erred in making each and every other adjustment in the FPAA.

Answer: Denied.

**VII.**

43. Plaintiff incorporates paragraphs 1 through 42 as though fully set forth here.

Answer: Defendant incorporates its answers to paragraphs 1 through 42 of the Complaint as though fully set forth herein.

44. All items of income, losses, deductions, and credits of JBJZ Partners for the tax year ending December 27, 1999 were properly determined.

Answer: Denied.

45. The amount of basis in the partnership interests in JBJZ Partners for the tax year ending December 27, 1999 was properly calculated and reported.

Answer: Denied.

46. The net short term capital loss of JBJZ Partners in the amount of $2,305 for tax year ended December 27, 1999 was properly calculated and reported.

Answer: Denied.

47. The ordinary income of JBJZ Partners in the amount of $625,000 for tax year ending December 27, 1999 was properly calculated and reported.

Answer: Denied.

48. The tax-exempt interest income of JBJZ Partners in the amount of $670 for tax year ending December 27, 1999 was properly calculated and reported.

Answer: Denied.

49. The Partner's outside basis in JBJZ Partners for tax year ending December 27, 1999 was properly determined.

Answer: Denied.

50. JBJZ Partners is a partnership validly created, existing, and recognized for all state and federal law purposes, including federal income tax purposes for tax year ending December 27, 1999.

Answer: Denied.

51. JBJZ Partners was not a sham for federal income tax purposes for tax year ending December 27, 1999.

Answer: Denied.

52. JBJZ Partners did not lack economic substance for federal income tax purposes for tax year ending December 27, 1999.

Answer: Denied.

53. No part of the Transactions may be recharacterized, ignored, or disregarded on the basis that they lacked economic substance, business purpose, or otherwise constituted a sham for federal income tax purposes.

Answer: Denied.

54. The losses and other benefits claimed by the Partners on their federal tax returns cannot be disallowed on the basis that either the Transactions or any of the entities involved constituted shams or lack economic substance because neither of these doctrines is incorporated into or otherwise a part of the Internal Revenue Code.

Answer: Denied.

55. Disallowance of the losses or other benefits claimed by the Partners in this case on the basis of either the sham transaction or economic substance theories asserted by the Service would violate the separation of powers provisions of the United States Constitution.

Answer: The allegations contained in paragraph 55 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 55 are denied.

56. JBJZ Partners was not formed or availed of in connection with a transaction or transactions in a manner inconsistent with the intent of Subchapter K of the Code and may not otherwise be disregarded, nor may any of its transactions be recharacterized, in whole or in part, under the authority of Treasury Regulation § 1.701-2 for tax year ending December 27, 1999.

Answer: The allegations contained in paragraph 56 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 56 are denied.

57. Treasury Regulation § 1.701-2 is invalid.

Answer: The allegation contained in paragraph 57 is an allegation of law to which to response is required. To the extent a response is required, the allegation contained in paragraph 57 is denied.

58. The obligations under the Short Options sold do not constitute liabilities under Code Section 752. Consequently, JBJZ Partners' assumption of those obligations are not regarded as a distribution of money to the Partners under the Code for tax year ending December 27, 1999.

Answer: The allegations contained in paragraph 58 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 58 are denied.

59. Even if the Options do constitute liabilities under Section 752 and the applicable Regulations, the amount of the "liability" transferred the Partnership under the Options is $0. As such, the Partners' bases in the Partnership cannot be reduced by any part of the Options transferred to the partnership.

Answer: The allegations contained in paragraph 59 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 59 are denied.

60. Temporary Treasury Regulation 1.752-6T is invalid and inapplicable to the facts of this case.

Answer: The allegations contained in paragraph 60 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 60 are denied.

61. Code Section 165(c)(2) does not operate to disallow the losses or other tax benefits claimed by the Partners in this case for tax year ending December 27, 1999.

Answer: The allegations contained in paragraph 61 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 61 are denied.

62. Professional fees paid were properly included in the outside bases of JBJZ Partners and are also deductible under the Code.

Answer: It is denied that the sales commissions paid by the individual participants to the promoters were properly reported. The remaining allegations contained in paragraph 62 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 62 are denied.

63. The basis of the Foreign Currency and the Shares transferred from JBJZ partners to JBJZ Investors, Inc. for tax year ending December 27, 1999 was properly determined and reported.

Answer: Denied.

IX.

64. The Commissioner is without jurisdiction to make any adjustment to the Partner's 1999 return.

Answer: The allegations contained in paragraph 64 are allegations of law to which to response is required. To the extent a response is required, the allegations contained in paragraph 64 are denied.

65. The Internal Revenue Code required the Commissioner to issue a Notice of Final Partnership Administrative Adjustments for the Partnership's 1999 tax year in order to make any adjustments to that year. The Commissioner has failed to do so.

Answer: On December 9, 2004, the Commissioner of Internal Revenue (the "Commissioner") issued a Notice of Final Partnership Administrative Adjustment ("FPAA") against JBJZ Partners for tax year ending December 27, 1999, a copy of which is attached to the Complaint as Exhibit "A." The remaining allegations contained in paragraph 65 are allegations of law to which to response is required. To the extent a response is required, the remaining allegations contained in paragraph 65 are denied.

66. The Commissioner has instead issued a Notice of Final Partnership Administrative Adjustments for tax year ending December 27, 2000 attempting to make adjustments to the Partnership's 1999 tax year. Not only does the FPAA fail to cover the proper tax year, it covers a year during which the Partnership was no longer in existence.

Answer: Defendant admits that JBJZ Partners was not in existence for the year ending December 27, 2000 and that the FPAA references both the year ending December 27, 2000 and the year ending December 27, 1999, but denies that Commissioner issued the FPAA for the tax year ending December 27, 2000, and states that JZ Buckingham Investments LLC was on notice of the fact that the FPAA was for the year ending December 27, 1999 insofar as: 1) it had actual notice by certified mail dated March 31, 2003, that the applicable year under examination was the year ended December 27, 1999; 2) that on January 5, 2003, Jerry Zucker executed a Form 872-1, Consent to Extend the Time to Assess Tax As Well as Tax Attributable to Items of a

Partnership, for the 1999 tax year; 3) the Schedule of Adjustments attached to the FPAA reflects that the adjustments were for the year ending December 27, 1999; and 4) JBJZ Partners was not in existence for the year ending December 27, 2000.

X.

[67]. Defendant has the burden of proof under Section 7491 of the Code.

Answer: The allegations contained in paragraph 67 are allegations of law to which to response is required. To the extent a response is required, the remaining allegations contained in paragraph 67 are denied.

**COUNTERCLAIM FOR PENALTIES**

The United States hereby asserts the following counterclaim for accuracy related penalties:

1. This counterclaim is brought pursuant to Section 7401 of the Internal Revenue Code (26 U.S.C.), at the direction of the Attorney General of the United States and with the authorization of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury.

2. This court has jurisdiction over this counterclaim for penalties pursuant to Section 6226(f) of the Internal Revenue Code (26 U.S.C.).

3. Pursuant to Section 6229(d)(1) of the Internal Revenue Code (26 U.S.C.), the applicable statute of limitations was stayed by the filing of this action.

4. The accuracy-related penalty under Code Section 6662(a) applies to all underpayments of tax attributable to adjustments of partnership items of the Plaintiff, and that penalty should be imposed on the components of underpayment as follows:

a. A 40% penalty should be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Code Section 6662(a), 6662(b)(3), 6662(e), and 6662(h).

b. A 20% penalty should be imposed on the portion of the underpayment attributable to negligence or disregard of the rules and regulations as provided by Code Section 6662(a), 6662(b)(1) and 6662(c).

c. A 20% penalty should be imposed on the underpayment attributable to the substantial understatement of income tax as provided by Code Sections 6662(a), 6662(b)(2), and 6662(d).

d. A 20% penalty should be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Code Sections 6662(a), 6662(b)(3), and 6662(e).

WHEREFORE, defendant prays that plaintiff's complaint for readjustment be denied and that defendant's counterclaim should be granted, along with such other and further relief as the Court deems to be just and appropriate.

Respectfully submitted,

7/16/2007
Date

s/ Dennis M. Donohue

DENNIS DONOHUE
Attorney of Record
U.S. Department of Justice - Tax Division
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561

RICHARD MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section