IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT COUNTERCLAIM FOR PENALTIES**

DENNIS M. DONOHUE
Chief Senior Litigation Counsel
U.S. Department of Justice, Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

## TABLE OF CONTENTS

**Page(s)**


Statement of Facts . . . . . . . . . . 2

A. Failure to Disclose Relevant Documents . . . . . . . . . . 3

B. Making of False and Fraudulent Statements . . . . . . . . . . 7

Argument:

I. The United States' Motion For Leave To Amend Should Be Granted . . . . . . . . . . 12

II. The Proposed Counterclaim Is Not Time Barred And Is Therefore Not Futile . . . . . . . . . . 13

III. The Proposed Amendment Is Timely . . . . . . . . . . 14

Conclusion . . . . . . . . . . 16

Certificate of Service . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alfa Laval Separation, Inc. v. United States*, 47 Fed. Cl. 305 (2000) . . . . . . . . . . . . . . . . . . . . . 15

*Colestock v. C.I.R.*, 102 T.C. 380 (U.S.Tax Ct.,1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed. Cl.122 (1996) . . . . . . . . . . . . . . . . . 15

*Foman v. Davis*, 371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Rockwell Automation, Inc. v. United States*, 70 Fed. Cl. 114 (2006) . . . . . . . . . 12, 14, 15

*Rodriguez v. United States*, 69 Fed. Cl. 487 (Fed.Cl.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. Commissioner*, 925 F.2d 250 (8th Cir.1991), *affg.*,
T.C.Memo. 1989-432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948
F.2d 1258 (Fed.Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*Teitelbaum v. Commissioner*, 346 F.2d 266 (7th Cir.1965), affg.,
T.C. Memo.1964-141, *Colestock v. Commissioner*.,
102 T.C. 380, 384 (U.S.Tax Ct.,1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) . . . . . . . . . . . . . . . . . . . . 12

**Rules Statutes**

RCFC 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26 U.S.C. § 6662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF
UNITED STATES' MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT
COUNTERCLAIM FOR PENALTIES**

This memorandum is being filed in support of the United States' motion for leave to amend its answer to assert a counterclaim for penalties. As detailed herein, the United States' motion is based upon recently discovered evidence showing that the plaintiff's two partners, Jerry Zucker and James Boyd, failed to comply with their disclosure obligations for the waiver of penalties under IRS Announcement 2002-2. Specifically, this evidence shows that Zucker and Boyd withheld material documents and also made false and/or fraudulent statements in their disclosure presentations to the Internal Revenue Service which were signed under penalties of perjury.

**Statement of Facts**.

The United States relies upon the following facts in support of its motion to amend:[1]

On December 9, 2004, the Commissioner mailed a Final Partnership Administrative Adjustment ("FPAA") to Plaintiff's tax matters partner, Jerry Zucker, with respect to the 1999 Form 1065 filed by JBJZ Partners, LLC. Penalties were not asserted in the FPAA because Zucker and Boyd, plaintiff's two partners, previously had entered into an agreement with the Service under IRS Announcement 2002-2, under which the Service agreed not to assert penalties in exchange for the partners' agreement to fully disclose their tax shelter transaction. Under the terms of the settlement initiative, Zucker and Boyd were under a duty to disclose any requested information relating to the tax shelter and also to sign a statement under penalties of perjury that the disclosure made by them contained all relevant facts and was true, correct, and complete.

On February 18, 2005, the tax matters partner brought the above-referenced TEFRA action seeking readjustment of partnership items adjusted by the Service and also seeking to recover $10,561,570, paid as income tax for the years 1997, 1999 and 2000. The tax shelter at issue is known as COBRA and was designed, marketed and implemented by the nationwide accounting firm of Ernst & Young (E&Y), Deutsche Bank (DB), and the law firms of Jenkens & Gilchrist (J&G) and Brown and Wood (B&W). These law firms also furnished legal opinions to the purchasing taxpayers to be used as penalty insurance in the event the tax shelter was detected by the Service on audit.

In the course of this litigation the United States has recently discovered that the individual partners materially breached their disclosure obligations under this contract by failing

[1]The United States is concurrently filing the declaration of David Steiner in support of this statement of facts, to which are attached copies of the referenced exhibits.

to produce requested marketing materials and personal notes, by omitting relevant facts as to the shelter and also by making false and fraudulent statements.

Significantly, as detailed in the recent indictment against Robert Coplan, Richard Shapiro, Martin Nissenbaum and Brian Vaughn, E&Y was intimately involved in assisting its tax-shelter clients in meeting the requirements of the penalty amnesty program. E&Y also represented their tax-shelter clients before the Service on the disclosure initiative. However, rather than attempting to comply in good faith with the disclosure initiative, E&Y and their clients simply regurgitated many of the same false and fraudulent statements that had previously been included in their transactional documents and also omitted to disclose many of the material facts and documents necessary for a full and complete understanding of the tax shelter transaction. *See, also, allegations in* Indictment, ¶¶ 48-49, Govt. Ex. A. The apparent objective of this deceit was to ensure that E&Y's tax shelter-clients would be able to have their penalties waived but without their disclosing some of the more highly-sensitive facts of the shelter, as, for example, that the promoters' fees were based on a percentage of the clients' desired tax loss. As detailed below, that clearly occurred in this case.

**A. Failure to Disclose Relevant Documents.**

Pursuant to the terms of the amnesty program, plaintiff's partners were under a duty to disclose all relevant facts of the COBRA transaction and to produce any information requested by the Service. As summarized in Appendix A, the IRS issued four document requests to Boyd and Zucker for records relating to their participation in the COBRA shelter. Appendix B shows that the taxpayers failed to disclose significant COBRA-related documents to the IRS. There were certainly very compelling reasons for the partners (and E&Y) not to produce many of these

documents. These documents make crystal clear that tax evasion or avoidance was the real purpose of the COBRA transaction. Given that Zucker and Boyd ultimately intended to litigate the merits of the shelter, they therefore had a powerful incentive not to disclose such highly-sensitive documents. One of the most telling and sensitive features of the COBRA shelter was the manner in which E&Y's and J&G's fees were calculated. E&Y's and the law firms' fees were pre-structured as fixed percentages (1.5% and 3%, respectively) of the taxpayers' desired tax loss. E&Y was so sensitive to this fee-calculation that it instructed its personnel in its template engagement letter to insert a fixed dollar amount for the fee in the letter – and not to refer to the fee as being 1.5% of the taxpayer's desired loss. See E&Y email forwarding template engagement letter, Govt. Ex 562. While E&Y's COBRA PowerPoint presentation did refer to the fees owing to the promoters as a percentage of the long option (which equated to the desired loss), the sales force were told not to leave these materials with the client. See COBRA Action Workplan Govt. Ex. 541. Indeed E&Y's Brian Vaughn even went so far as to lie to the IRS during the promoter penalty investigation rather than to acknowledge that E&Y's fees were based on a percentage of the taxpayer's desired tax loss. *See, also, allegations in* Indictment, Govt. Ex. A, ¶ 76, p. 31, line 13 (b) and (c), p. 84, line 4, (k), (l), and (m).[2] Another highly-sensitive feature of COBRA was that the taxpayers, through their single-member LLCs, were to contribute cash equal to 2% of their desired loss to the partnership, which was, in turn, to be used to invest in safe short-term securities. Thus, these funds were never exposed to any real risk of

---

[2] See especially Indictment, Govt. Ex. A, ¶ 76, p. 84, line 4, (m):

> Q None of that fee was ever based on tax savings..
> A. No. .... We don't take a percentage of tax savings.

loss. The purpose of these safe investments was to foster the wholly-deceitful appearance that the partnership had a legitimate business purpose.

With this background, the United States has recently learned that, despite Zucker and Boyd's promise to produce all relevant documents and despite the IRS information and document requests (See Steiner Declaration and Govt. Exhibits ## 169, 170 and 171 annexed thereto) plaintiff and its partners failed to disclose to the Service highly-revealing documents concerning the terms and nature of the COBRA strategy, including the following:

a. Zucker and Boyd previously failed to disclose, as required under IRS Announcement 2002-2, a two page fax dated November 22, 1999, from Ray Knight of E&Y to Zucker and Boyd . This memo expressly disclosed that E&Y's fee was a fixed percentage (1½ percent) and that the law firms's fee was also a fixed percentage (3%). The highly-relevant memo also revealed that 2% of the transaction was "not-at-risk" The fax was located by counsel for the United States only on July 14, 2007, within files maintained on this transaction by Charlotte Crosby, the taxpayers' personal assistant, at the taxpayers' offices. A copy of this fax was also not previously produced by Plaintiff or E&Y. See Steiner Declaration and Govt. Ex. 2252 attached thereto.

b Zucker and Boyd previously failed to disclose, as required under IRS Announcement 2002-2, a five page fax dated 11/12/99 from Jerry Zucker to Ray Knight of E&Y specifying that the transaction was in fact for a $100 million loss, the total cost of the transaction, and the proposed allocation of loss as between Zucker and Boyd. The fax was located by counsel for the United States only on July 14, 2007, within files maintained on this transaction by Charlotte Crosby, the taxpayers' personal assistant, at the taxpayers' offices. A copy of this fax

was also not previously produced by Plaintiff or E&Y. See Steiner Declaration and Govt. Ex. 2257 attached thereto.

c. Zucker and Boyd previously failed to disclose, as required under IRS Announcement 2002-2, their retained copy of their response to a J&G letter dated December 14, 1999, in which J&G had requested that they execute numerous documents, but not "fill in any blanks which appear in those documents at this time (i.e. dates)." This retained copy was located by counsel for the United States on July 14, 2007, within files maintained on this transaction by Charlotte Crosby, the taxpayers' personal assistant, at the taxpayers' offices. A copy of this fax was also not previously produced by Plaintiff or E&Y. See Steiner Declaration and Govt. Ex. 2260 attached thereto.

d. Zucker and Boyd previously failed to disclose, as required under IRS Announcement 2002-2, E&Y's 5-page fax dated November 15, 1999, also disclosing that E&Y's fee on the transaction was a fixed percentage (1½ percent) and that the law firms's fee was also a fixed percentage (3%). In fact, the E&Y engagement letters attached to this memo make clear that these percentages were based on the taxpayer's "desired loss." Moreover the memo indicates that, as amended, the "amount of loss is $50 million" (reduced from $100 million) with 60% to be ordinary loss and 40% to be long term capital loss. The memo discloses that the allocation of the partnership interests and therefore the losses was now to be "90/10" (not 98/2) with 10% allocated to Boyd. Finally, the memo bears a handwritten note from Zucker to James Boyd stating:

> "Jim, In view of the fact that I am agreeing to the enclosed on behalf of both of us, please review and approve or comment ..."

This fax was not produced to the IRS and was only produced by Plaintiff in response to the United States' discovery requests. See Steiner Declaration and Govt. Ex. 1104 attached

e. Zucker and Boyd failed to disclose, as required under IRS Announcement 2002-2, their retained copies of revised engagement letters dated 11/15/99 that they executed with E&Y. Govt. Ex. 1029A. A copy of the revised engagement letter signed by Zucker was subsequently produced by Plaintiff only in response to the United States' discovery requests. See Steiner Declaration and Govt. Ex. 1104 attached thereto.

**B. Making of False and Fraudulent Statements**

In addition to the taxpayer's failure to produce requested information, as required under the terms of the disclosure initiative, a critical portion of the disclosure statements made by the partners were themselves false and fraudulent. As detailed in the recently unsealed indictment against Robert Coplan, Richard Shapiro, Martin Nissenbaum and Brian Vaugh, the information contained in the initial disclosure statements submitted to the Service by E&Y on behalf of their clients were simply a template disclosure letter that recited many of the same false and fraudulent statements there were contained in the transactional documents drafted by the promoters.

> 48. In or about December 2001, the IRS announced a program under which taxpayers who had engaged in tax shelters could voluntarily disclose those transactions to the IRS, in exchange for amnesty from penalties that might otherwise be imposed if the IRS were to audit the transactions and find a tax underpayment. In order to qualify for the program, taxpayers were required to disclose the transaction to the IRS, and to include in their disclosure, among other things, a statement describing the "material facts" of the transaction; the names and addresses of parties who had promoted, solicited or recommended the transaction to the taxpayer, and parties who had collected fees from the transaction; a statement agreeing to provide various documents and materials relating to the transaction, including marketing materials and legal opinions; and a statement signed by the taxpayers, under penalties of perjury, that the taxpayers had examined the disclosure, and that to the best of their knowledge and belief, the disclosure contained all the relevant facts and was true, correct and complete.

> 49. During 2002, defendants ROBERT COPLAN, MARTIN NISSENBAUM and RICHARD SHAPIRO prepared, and assisted in preparing, templates that could be used by E&Y clients who had engaged in tax shelters, and who wished to participate in the IRS's voluntary disclosure initiative in order to eliminate the possibility of IRS penalties. Although the defendants knew that participation in the program required submission of a "true, correct and complete" disclosure to the IRS of "all relevant facts" in a statement that would subject their clients to penalties of perjury, the defendants drafted template disclosure letters that contained many of the same false and fraudulent statements that had previously been included in transaction documents and opinion letters, and omitted many of the same material facts. Tax shelter clients who participated in the voluntary disclosure initiative thereafter submitted false, fraudulent and incomplete statements to the IRS.

This allegation in the indictment is well supported by the facts. For example, by email dated April 3, 2002, Robert Coplan of EY sent an e-mail to Paul Daugerdas of J&G, stating:

> Do you have a handy electronic copy of the final version of your opinion letter that you used in our transactions? We would like to use the facts section to make sure we are in line with it in creating a template for COBRA amnesty disclosures. We have a few clients (e.g., already under CA audit and even under federal audit with nothing to lose to try) who want to disclose. The sooner the better. Thanks. Either a generic version or a redacted actual is OK.

See Steiner Declaration and Govt. Ex.1109 attached thereto.

In their election letters of April 17 and 20, 2002, after paraphrasing the facts from their J&G opinion letter, the taxpayers then attested under penalties of perjury that:

> [t]he tax year affected by this transaction is calendar year 1999, and we wish to reiterate that the transaction was *properly reported on the partnership's return, the S Corporation's return and our individual Form 1040*.

See Steiner Declaration and Govt. Ex. 169 and 170 attached thereto. (Emphasis added.) This representation was patently false. The returns for the entities and individuals on the COBRA transaction were replete with numerous material errors and omissions. Significantly, all or most of these errors were deliberatively designed to conceal the true nature of the COBRA transaction,

its huge promoter fees, and its massive tax benefits. These errors were discovered by one of the Government's expert witnesses who only recently submitted an expert witness report in this case on June 1, 2007. Amongst the more glaring errors are the fact the taxpayers deducted twice their advisory fees to E&Y in the total amount of $750,000. They deducted these amounts on their individual returns on Schedule A as miscellaneous deductions and also buried these amounts as unidentified components of the bases of the Cisco stock and Canadian currency that were sold to generate the capital and ordinarily losses on the transactions.

Moreover, the taxpayers improperly capitalized the J&G fees in the amount of $1.4 million in the basis of their partnership interests. This fee has been paid by the S Corporation in the COBRA strategy, JBJZ Investors Inc., on December 29, 1999, two days after the termination and liquidation of JBJZ Partners. Thus, this fee had to be retroactively added to the taxpayers' outside bases in their terminated partnership. This retroactive inclusion in basis was done so that the J&G fee could carry over to the Cisco stock and Canadian currency on the termination of the partnership which occurred when the taxpayers contributed their taxpayers' partnership interests to the S Corporation on December 27, 1999.[3] E&Y was well aware that its and J&G's huge promoter fees could be a red flag on the taxpayers returns, prompting an audit and thus took affirmative steps to conceal these fees. See Appendix C, LaRue Report, ¶s135, fn. 238, 142.

Moreover, the taxpayers also improperly buried the unrealized appreciation of their Cisco stock and Canadian currency as unidentified components in the basis of their partnership interests. This caused an improper increase in the basis of their partnerships' interest in the

[3]See Table 2 in Dr. LaRue's report at page 62. See also ¶s 130-143, 154-156, 193, 200-205.

amount of $443,731. See Steiner Declaration, Appendix C, LaRue Report, ¶126, fn. 220. Of this amount, $419,775 was attributed to the unrealized appreciation for Zucker's 450 shares of Cisco stock, which he improperly included in the basis of his partnership interest. Steiner Declaration, Appendix C, LaRue Report, ¶ 120, fn. 202.[4] In addition, on their Subchapter S return the taxpayers simply arbitrarily and improperly allocated all of the COBRA-related short term capital loss of $2,019,659 to Boyd and all of the long term capital loss of $18,177,695 to Zucker. See Steiner Declaration, Appendix C, LaRue Report, ¶ 188.

Equally important, both taxpayers reported erroneous social security numbers on their tax filings with respect to the COBRA transaction. First, the signed SS-4 Applications for Employer Social Security Number on behalf of Zucker's single member LLC, JBJZ Partners, and JBJZ Investors, Inc, all reported an erroneous social security number for Zucker. See Govt. Ex. 2259. The error in Zucker's social security was a transposition of two numbers. The 1999 Form 1120S for JBJZ Investors, Inc., incorporated this same error on the K-1 for Zucker. The 1999 form 1120S for JBJZ Investors, Inc., also included an erroneous social security number for Boyd. The

---

[4]It would have been proper to include this appreciation in the outside bases of the taxpayers' partnership interests if the taxpayers had paid tax on these amounts, which the taxpayer-shareholders of JBJZ Investors, Inc. should in fact have done with respect to the appreciation attributable to Zucker's 4,500 shares of Cisco stock. This is because his Cisco stock had actually been transferred by the Subchapter S – rather than, as planned, by Zucker's single member LLCs – to the partnership. Apparently, Boyd had mistakenly transferred Zucker's shares of Cisco stock to the account of the Subchapter S entity. When the error was belatedly discovered, on December 22, 1999 the shares were then transferred by the Subchapter S entity to the partnership. However, that transfer by the Subchapter S entity to the partnership constituted a taxable distribution to JBJZ Investors, Inc, which, in turn, should have passed through to the taxpayer-shareholders. See Code Section 311(b)(1). Pointedly, only five days later, on December 27, 1999, the 4500 shares were then transferred back to the Subchapter S entity on the liquidation of the partnership and four days after that, on December 31, 1999, the stock was then sold by the Subchapter S entity to generate the artificial loss. See Appendix C, LaRue Report ¶s 110-17.

error in Boyd's SSN was a missing digit. See LaRue Report at ¶ 188. At their depositions, both taxpayers claimed that they first learned of these errors in reporting their social security numbers only recently from their counsel. *See* Steiner Declaration and Zucker Dep. 267; Boyd Dep. 154-55 annexed thereto. We have found no similar errors in reporting social security numbers in our other COBRA cases.

In sum, this newly discovered evidence makes eminently clear that the plaintiff's partners materially breached their disclosure obligations under IRS Announcement 2002-2. This evidence shows that they failed to disclose highly relevant documents regarding the COBRA transactions, some of which were only produced in the last few days. In addition, this evidence also shows that the taxpayers also wrongly and falsely represented that the COBRA transaction was properly reported on the partnership's return, the S Corporation's return and their individual Forms 1040. Based upon this newly discovered evidence, on July 14, 2007, the Service authorized a counterclaim against the plaintiff for penalties. The proposed counterclaim is detailed in the proposed Second Amended Complaint and Counterclaim which has been filed herewith as an attachment to a proposed Order granting this motion.[5]

[5] The proposed amendment is styled as a Second Amendment and Counterclaim because the Court previously ordered the United States' to amend its answer to clarify its answers to paragraphs 6 and 27-31.

## ARGUMENT

## I

## THE UNITED STATES' MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED

Amendment of pleadings is addressed by Rule 15(a) of the Rules of the Court of Federal Claims ("RCFC"). In pertinent part, that Rule provides that a party may amend its pleading "once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend ... only by leave of court or by written consent of the adverse party." RCFC 15(a). The decision whether to grant leave to amend is within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321 (1971) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

It is black letter law that the court should freely grant leave to amend under Rule 15(a) "when justice so requires. " *Foman*, 371 U.S. at 182. It is equally well settled that absent undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of the amendment, the amendment should be permitted. *Id*. (interpreting Fed.R.Civ.P. 15(a), which parallels RCFC 15(a); *Rockwell Automation, Inc. v. United States*, 70 Fed.Cl. 114, 122 (2006). See also, *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260-61 (Fed.Cir.1991); *Rodriguez v. United States*, 69 Fed.Cl. 487, 494-95 (Fed.Cl.2006). As the Supreme Court has emphasized, "[i]f the underlying facts or circumstances relied upon by a [party] may be a proper [claim], [it] ought to be afforded an opportunity to [present its claim] on the merits." *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

In the instant case the United States seeks leave to amend its answer to assert a counterclaim for penalties. Penalties were not previously asserted because Zucker and Boyd,

plaintiff's two partners, previously had entered into an agreement with the Service under IRS Announcement 2002-2, under which the Service agreed not to assert penalties in exchange for the partners' agreement to fully disclose their COBRA transactions. On July 14, 2007, the Service authorized a counterclaim for penalties against the plaintiff upon newly discovered evidence that Zucker and Boyd materially breached their agreements. This claim for penalties for the use of a partnership in a highly-abusive tax shelter transaction is therefore manifestly proper. Moreover, there is good cause for the United States to move now to amend it answer to assert this counterclaim for penalties. Accordingly, the United States ought to be afforded the opportunity to present its claim on the merits.

**II**

**THE PROPOSED COUNTERCLAIM IS NOT TIME BARRED AND IS THEREFORE NOT FUTILE**

Pursuant to §6229(f), upon plaintiff's filing of this action the Court of Federal Claims obtained jurisdiction to determine all partnership items of the partnership, including the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item. Given that penalties could have been asserted at the time the FPAA adjustment action was filed, there is no applicable statute of limitations barring the assertion of penalties in this matter. By analogy, in a deficiency procedure before the Tax Court, the respondent generally may claim an increased deficiency any time at or before trial in the Tax Court if such deficiency could have been included in the original notice of deficiency mailed to the taxpayer. *Colestock v. C.I.R.*, 102 T.C. 380, 384 (U.S.Tax Ct.,1994); *Smith v. Commissioner*, 925 F.2d 250, 254 (8th Cir.1991), *affg*. T.C.Memo. 1989-432; *Teitelbaum v. Commissioner*, 346

F.2d 266, 267 (7th Cir.1965), *affg.* T.C.Memo.1964-141.[6] Accordingly, the statute of limitations has been suspended and the United States' proposed counterclaim for penalties is not time barred.

**III**

**THE PROPOSED AMENDMENT IS TIMELY**

As noted in *Rockwell Automation, Inc.*, 70 Fed.Cl. at 122, the liberal pleading standard under Rule 15(a) "does not bestow on a litigant the privilege of neglecting [its] case for a long period of time:

> A court may deny a party's motion to amend a pleading if that pleading "could have been cured by [an] earlier amendment." *Te-Moak Bands*, 948 F.2d at 1261. In Te-Moak Bands, the Federal Circuit denied plaintiffs leave to file two additional exceptions to a governmental agency's report in 1982 because those amendments were based on facts known to plaintiffs when they filed their original petition in 1951, when they filed their first eleven exceptions in 1969, and when they supplemented their pleadings with three additional exceptions in 1973. Id. at 1261-62. Consequently, the court held that the plaintiffs could have filed the two further exceptions on three different occasions. Id. at 1262; see Foman, 371 U.S. at 182, 83 S.Ct. 227 (stating that one reason to deny a motion to amend is a party's failure to correct a deficiency in a pleading when an amendment was previously allowed).

---

[6]As noted in *Colestock v. Commissioner.*, 102 T.C. 380, 384 (U.S.Tax Ct.,1994), under § 6214 the Tax Court is authorized to redetermine a deficiency greater than that set forth in the deficiency notice mailed to the taxpayer. Section 6214(a) provides in pertinent part:

> SEC. 6214(a). Jurisdiction as to Increase of Deficiency, Additional Amounts, or Additions to the Tax.-Except as provided by section 7463, the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing.

> A court may also deny a party leave to amend its pleading if the motion "w[as] filed after a period of undue delay." *Te-Moak Bands*, 948 F.2d at 1261. In this respect, the movant "bears the burden of showing that the delay [in filing an amendment to a pleading] was justified." *Alfa Laval Separation, Inc. v. United States*, 47 Fed.Cl. 305, 313 (2000); *see Te-Moak Bands*, 948 F.2d at 1263. In *Te-Moak Bands*, the court held that plaintiffs had not met their burden of showing why there was an eight-year delay between a pertinent supplemental agency report and the filing of plaintiffs' amendments. 948 F.2d at 1263; *see also Alfa Laval*, 47 Fed.Cl. at 314 ("Merely proving that other cases allowed longer delays ... does not suffice to demonstrate entitlement to amendment. Delay must be justified.") (*citing Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed.Cl.122, 132 (1996)).

*Rockwell Automation, Inc. v. United States*, 70 Fed.Cl. 114, 122 (2006).

In this case, there has been no delay whatsoever, much less undue delay, in bringing this motion. The above-referenced facts, justifying the assertion of a counterclaim for penalties, have only just been uncovered as a result of the United States' continuing and extensive discovery. Nor should plaintiff be heard to claim that it would somehow be prejudiced by the granting of this motion given that it is plaintiff that withheld material documents not only from the Service, but also from the United States in this litigation.

## CONCLUSION

The Court should grant the Government's RCFC Rule 15(a) motion to assert counterclaims for accuracy related penalties according to IRC § 6662.

Respectfully submitted,

s/ Dennis M. Donohue
DENNIS M. DONOHUE
Attorney of Record

Chief Senior Litigation Counsel
U.S. Department of Justice - Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17th, 2007, I electronically filed the foregoing Motion with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner
David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892