Form **SS-4**
(Rev. February 1998)
Department of the Treasury
Internal Revenue Service

# Application for Employer Identification Number

(For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, certain individuals, and others. See instructions.)

► Keep a copy for your records.

EIN

OMB No. 1545-0003

**Please type or print clearly.**

**1** Name of applicant (legal name) (see instructions)
JBJZ INVESTORS INC.

**2** Trade name of business (if different from name on line 1)

**3** Executor, trustee, "care of" name

**4a** Mailing address (street address) (room, apt., or suite no.)
16 BUCKINGHAM DRIVE

**4b** City, state, and ZIP code
CHARLESTON, SC  29407

**5a** Business address (if different from address on lines 4a and 4b)

**5b** City, state, and ZIP code

**6** County and state where principal business is located
CHARLESTON COUNTY, SC

**7** Name of principal officer, general �575 owner, or trustor — SSN or ITIN may be required (see instructions) ►
JERRY ZUCKER, SSN ▮▮▮▮▮

**8a** Type of entity (Check only one box.) (see instructions)

**Caution:** *If applicant is a limited liability company, see the instructions for line 8a.*

- [ ] Sole proprietor (SSN) _____
- [ ] Partnership
- [ ] REMIC
- [ ] State/local government
- [ ] Church or church-controlled organization
- [ ] Other nonprofit organization (specify) ►
- [ ] Other (specify) ►

- [ ] Personal service corp.
- [ ] National Guard
- [ ] Farmers' cooperative

- [ ] Estate (SSN of decedent)
- [ ] Plan administrator (SSN) _____
- [X] Other corporation (specify) ► S CORP
- [ ] Trust
- [ ] Federal government/military

_____ (enter GEN if applicable)

**8b** If a corporation, name the state or foreign country (if applicable) where incorporated

State
DELAWARE

Foreign country

**9** Reason for applying (Check only one box.) (see instructions)
- [X] Started new business (specify type) ► S CORP
- [ ] Hired employees (Check the box and see line 12.)
- [ ] Created a pension plan (specify type) ►

- [ ] Banking purpose (specify purpose) ►
- [ ] Changed type of organization (specify new type) ►
- [ ] Purchased going business
- [ ] Created a trust (specify type) ►
- [ ] Other (specify) ►

**10** Date business started or acquired (month, day, year) (see instructions)
NOVEMBER 16 , 1999

**11** Closing month of accounting year (see instructions)
DECEMBER

**12** First date wages or annuities were paid or will be paid (month, day, year). **Note:** *If applicant is a withholding agent, enter date income will first be paid to nonresident alien. (month, day, year)* .................................................................. ► N/A

**13** Highest number of employees expected in the next 12 months. **Note:** *If the applicant does not expect to have any employees during the period, enter -0-. (see instructions)* ..................... ►

| | Nonagricultural | Agricultural | Household |
|---|---|---|---|
| | 0 | 0 | 0 |

**14** Principal activity (see instructions) ► INVESTMENTS

**15** Is the principal business activity manufacturing? ......................................................
If "Yes," principal product and raw material used ►    [ ] Yes   [X] No

**16** To whom are most of the products or services sold? Please check one box.
- [ ] Public (retail)
- [ ] Other (specify) ►
- [ ] Business (wholesale)

**17a** Has the applicant ever applied for an employer identification number for this or any other business? ................. [ ] Yes  [X] No   [X] N/A
**Note:** *If "Yes," please complete lines 17b and 17c.*

**17b** If you checked "Yes" on line 17a, give applicant's legal name and trade name shown on prior application, if different from line 1 or 2 above.
Legal name ►                    Trade name ►

**17c** Approximate date when and city and state where the application was filed. Enter previous employer identification number if known.
Approximate date when filed (mo., day, year) | City and state where filed | Previous EIN

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.

Business telephone number (include area code)

Fax telephone number (include area code)

Name and title (Please type or print clearly.) ► JERRY ZUCKER

Signature ►

Date ► 11/18/55

Note: *Do not write below this line. For official use only.*

| Please leave blank ► | Geo. | Ind. | Class | Size | Reason for applying |
|---|---|---|---|---|---|

For Paperwork Reduction Act Notice, see page 4.
STF FED7769F

ISA

Form **SS-4** (Rev. 2-98)

2259

Form **8821**

(Rev. September 1998)

Department of the Treasury
Internal Revenue Service

# Tax Information Authorization

▶ **IF THIS AUTHORIZATION IS NOT SIGNED AND DATED, IT WILL BE RETURNED.**

OMB No. 1545-1165

**For IRS Use Only**
Received by:
Name _____
Telephone ( ) _____
Function _____
Date ___ / ___ / ___

### 1  Taxpayer information.

Taxpayer name(s) and address (please type or print)

JBJZ INVESTORS INC.
16 BUCKINGHAM DRIVE
CHARLESTON, SC   29407

Social security number(s)
_____

Daytime telephone number

Employer identification number

Plan number (if applicable)

### 2  Appointee.

Name and address (please type or print)

LAURA LIGHTHOLDER, JENKENS & GILCHRIST
225 WEST WASHINGTON, SUITE 2600
CHICAGO, IL   60606

CAF No. _____
Telephone No. 312-425-3928
Fax No. 312-425-3909
Check if new:     Address ☐
                 Telephone No. ☐

### 3  Tax matters. The appointee is authorized to inspect and/or receive confidential tax information in any office of the IRS for the tax matters listed on this line.

| (a) Type of Tax (Income, Employment, Excise, etc.) | (b) Tax Form Number (1040, 941, 720, etc.) | (c) Year(s) or Period(s) | (d) Specific Tax Matters (see instr.) |
|---|---|---|---|
| FEIN | SS-4 | | |
| | | | |
| | | | |
| | | | |

### 4  Specific use not recorded on Centralized Authorization File (CAF). If the tax information authorization is for a specific use not recorded on CAF, check this box. (See the instructions on page 2.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
If you checked this box, skip lines 5 and 6.

### 5  Disclosure of tax information (you **must** check box 5a or b unless box 4 is checked):
**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**b** If you do not want any copies of notices or communications sent to your appointee, check this box . . . . . . . . . . . . . . ▶ ☐

### 6  Retention/revocation of tax information authorizations. This tax information authorization automatically revokes all prior authorizations for the same tax matters you listed above on line 3 unless you checked the box on line 4. If you do not want to revoke a prior tax information authorization, you MUST attach a copy of any authorizations you want to remain in effect AND check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
To revoke this tax information authorization, see the instructions on page 2.

### 7  Signature of taxpayer(s). If a tax matter applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters/periods covered.

Signature _____  Date 11/18/99

Print Name  JERRY ZUCKER        Title (if applicable)

Signature _____  Date _____

Print Name _____        Title (if applicable)

## General Instructions

*Section references are to the Internal Revenue Code unless otherwise noted.*

**Change To Note.** New column (d) is added to line 3 for specific tax matters. Use column (d) to specify tax information that is to be provided by the IRS. See the line 3 instructions on page 2.

**Purpose of form.** Form 8821 authorizes any individual, corporation, firm, organization, or partnership you designate to inspect and/or receive confidential information in any office of the IRS for the type of tax and the years or periods you list on this form.

Form 8821 does not authorize your appointee to advocate your position with respect to the Federal tax laws; to execute waivers, consents, or closing agreements; or to otherwise represent you before the IRS. If you want to

authorize an individual to represent you, use **Form 2848,** Power of Attorney and Declaration of Representative, instead of Form 8821. You may file your own tax information authorization without using Form 8821, but it must include all the information that is requested on the form.

**Taxpayer identification numbers (TINs).** TINs are used to identify taxpayer information with corresponding tax returns. It is important that you furnish correct names, social security numbers (SSNs), individual taxpayer identification numbers (ITINs), or employer identification numbers (EINs) so that the IRS can respond to your request.

**Fiduciaries.** A fiduciary (trustee, executor, administrator, receiver, or guardian) stands in the position of a taxpayer and acts as the taxpayer. Therefore, a fiduciary does not act as an appointee and should not file Form 8821. File **Form 56,** Notice Concerning Fiduciary Relationship, to notify the IRS of the existence of a

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**

ISA
STF FED7149F.1

Form **8821** (Rev. 9-98)

Form **2553**

(Rev. September 1997)

Department of the Treasury
Internal Revenue Service

# Election by a Small Business Corporation

**(Under section 1362 of the Internal Revenue Code)**
▶ For Paperwork Reduction Act Notice, see page 2 of instructions.
▶ See separate instructions.

OMB No. 1545-0146

Notes: 1. This election to be an S corporation can be accepted only if all the tests are met under **Who May Elect** on page 1 of the instructions; all signatures in Parts I and III are originals (no photocopies); and the exact name and address of the corporation and other required form information are provided.

2. Do not file **Form 1120S**, U.S. Income Tax Return for an S Corporation, for any tax year before the year the election takes effect.

3. If the corporation was in existence before the effective date of this election, see **Taxes an S Corporation May Owe** on page 1 of the instructions.

## Part I    Election Information

**Please Type or Print**

Name of corporation (see instructions)
JBJZ INVESTORS INVESTORS INC.

Number, street, and room or suite no. (If a P.O. box, see instructions.)
16 BUCKINGHAM DRIVE

City or town, state, and ZIP code
CHARLESTON, SC  29407

**A** Employer identification number

**B** Date incorporated
NOVEMBER 16, 1999

**C** State of incorporation
DELAWARE

**D** Election is to be effective for tax year beginning (month, day, year) . . . . . . . . . . . . . . . . . . . . ▶ 11/16/99

**E** Name and title of officer or legal representative who the IRS may call for more information
DONNA M. GUERIN, ESQ.

**F** Telephone number of officer or legal representative
312-425-3939

**G** If the corporation changed its name or address after applying for the EIN shown in **A** above, check this box . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**H** If the election takes effect for the first tax year the corporation exists, enter month, day, and year of the **earliest** of the following: (1) date the corporation first had shareholders, (2) date the corporation first had assets, or (3) date the corporation began doing business . . . . . . . . . . . . . . . . . . . . ▶ 11/16/99

**I** Selected tax year: Annual return will be filed for tax year ending (month and day) ▶ 12/31

If the tax year ends on any date other than December 31, except for an automatic 52-53-week tax year ending with reference to the month of December, you **must** complete Part II on the back. If the date you enter is the ending date of an automatic 52-53-week tax year, write "52-53-week year" to the right of the date. See Temporary Regulations section 1.441-2T(e)(3).

| J Name and address of each shareholder; shareholder's spouse having a community property interest in the corporation's stock; and each tenant in common, joint tenant, and tenant by the entirety. (A husband and wife (and their estates) are counted as one shareholder in determining the number of shareholders without regard to the manner in which the stock is owned.) | K Shareholders' Consent Statement. Under penalties of perjury, we declare that we consent to the election of the above-named corporation to be an S corporation under section 1362(a) and that we have examined this consent statement, including accompanying schedules and statements, and to the best of our knowledge and belief, it is true, correct, and complete. We understand our consent is binding and may not be withdrawn after the corporation has made a valid election. (Shareholders sign and date below.) | | L Stock owned | | M Social security number or employer identification number (see instructions) | N Share-holder's tax year ends (month and day) |
|---|---|---|---|---|---|---|
| | Signature | Date | Number of shares | Dates acquired | | |
| JERRY ZUCKER 16 BUCKINGHAM DRIVE CHARLESTON, SC  29407 | | | | | | |
| JAMES G. BOYD 3520 BOHICKET ROAD JOHNS ISLAND, SC  29455 | | | 90 | 11/16/99 | ▮ | 12/31 |
| | | | 10 | 11/16/99 | ▮ | 12/31 |

Under penalties of perjury, I declare that I have examined this election, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Signature of officer ▶                        Title ▶                        Date ▶ 11/18/8?

BY: JERRY ZUCKER

See Parts II and III on back.
ISA
STF FED4589F.1

Form **2553** (Rev. 9-97)

# ▲ BT Alex. Brown

## NEW ACCOUNT INFORMATION
### (PLEASE COMPLETE THIS FORM IN FULL)

**NAME(S):**
List title of trust
or both names if
joint account

JBJZ INVESTORS INC.

**ADDRESS:**

16 BUCKINGHAM DRIVE

CHARLESTON, SC  29407

**PHONE:**    **(WK)** 843-744-5174      **(HM)**

**(FAX)** 843-747-4092

**SOCIAL SECURITY/ TAX I.D. #:**_____ **DATE OF BIRTH:**_____

**EMPLOYER:**

**EMPLOYER ADDRESS:**

**JOB TITLE/ NATURE OF BUS.**

**# of Years Employed**

**NAME OF SPOUSE:**

**EMPLOYER:**

**EMP. ADDRESS:**

**OCCUPATION:**

**DEPENDENTS:**

**(Names & Ages)**

**BANK REFERENCE:**
**BRANCH (CITY, STATE):**

**APPROX. ANNUAL HOUSEHOLD INCOME:**_____ **FED. TAX BRACKET:**_____
**APPROX. NET WORTH (EXCLUDING RESIDENCE)**_____

**INVESTMENT EXPERIENCE (Years):**

| | |
|---|---|
| x | Options |
| x | Stocks |
| | Bonds |
| | Real Estate |

**INVESTMENT OBJECTIVES:**
**(Check as many as applicable)**

- [x] Aggressive Growth
- [x] Growth
- [ ] Growth & Income
- [ ] Income
- [ ] Tax Reduction
- [ ] Capital Preservation

Account Number_____

## Corporate Account Authorization
## Officer's Certificate

BT Alex Brown Incorporated
Baltimore, Maryland

I, __JERRY ZUCKER_____, the duly elected and
acting __PRESIDENT_____ of __JBJZ INVESTORS INC_____, ("the Corporation") hereby certify that:

1.  At the meeting of the Board of Directors of the Corporation held on the day __16__ day of __NOV_____, 19_99_,
    at which a quorum was a present and acting throughout, the following resolutions were adopted:

RESOLVED, that any persons designated by the __OFFICERS_____ of the corporation are authorized
on behalf of the Corporation to:

**(DELETE ANY INAPPLICABLE POWERS)**

(A) Open and maintain one or more brokerage accounts for and in the name of the Corporation at BT Alex Brown
    Incorporated ("BT Alex Brown");
(B) Deposit, deliver, assign, withdraw and transfer funds, instruments and securities of any type;
(C) Sell any securities (including put and call options) short in margin account owned by the Corporation;
(D) Buy any securities (including put and call options) in a cash account;
(E) Buy, sell, and sell securities (including put and call options) short in margin account; and
(F) Execute all documents, and exercise and direct the exercise of all duties, rights and powers, and take all actions
    necessary or appropriate to perform the powers enumerated above.

FURTHER RESOLVED, that the __OFFICERS_____ of the Corporation shall certify in writing any
changes in the powers, office or identify of those persons authorized to perform the powers enumerated above. BT
Alex Brown may rely upon any such certificate of authority furnished by the Corporation until written certification
of any change in authority shall have been received by BT Alex. Brown. Any past action in accordance with this
resolution is hereby ratified and confirmed. Powers previously certified by the Corporation shall not be affected by
the dispatch or receipt of any other form of notice nor by any change in the position with the Corporation held by
any person so empowered. Any officer of the Corporation is hereby authorized to certify these resolutions to whom
it may concern.

FURTHER RESOLVED: that any person designated by the __OFFICERS_____ of this corporation are
hereby authorized to sell, assign, transfer and deliver stocks, bonds, evidences of interest and/or indebtedness, rights
and options to acquire the same, and all other securities, corporate or otherwise, now or hereafter held by this
corporation in it's own right or in fiduciary capacity, and to execute any and all instruments necessary, proper or
desirable for the purpose; further, that any past action in accordance herewith is hereby ratified and confirmed; and
further, that any officer of this corporation is hereby authorized to certify this resolution to whom it may concern.

2.  Each of the following are authorized to perform the powers enumerated in the foregoing resolutions:

JERRY ZUCKER
_____
Name

PRESIDENT
_____
Position

JAMES G. BOYD
_____
Name

SECRETARY-TREASURER
_____
Position

_____
Name

_____
Position

3.  The Corporation is duly organized and existing under the laws of the State of  DELAWARE  and has the power to take the actions authorized by the resolutions certified herein.

4.  No action has been taken to rescind or amend said resolutions, and they are now in full force and effect.

5.  No one other than the Corporation shall have any interest in any account opened and maintained in the name of the Corporation.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of the Corporation this  16  day of  NOV , 19 99 .

SEAL

Signature of Designating Officer

JERRY ZUCKER
Name of Designating Officer

PRESIDENT
Corporate Title of Designating Officer

# BT Alex. Brown Account Agreement

Name(s)    JBJZ INVESTORS INC.

Adress    16 BUCKINGHAM DRIVE

City    CHARLOTTE        State    SC  29407

**⚓ BT Alex. Brown**

P.O. Box 515
Baltimore, MD 21203

Account Number

**IMPORTANT:  PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of BT Alex. Brown Incorporated ("BT Alex. Brown") accepting the account(s) of the undersigned, and agreeing to act as my broker, I agree to the following with respect to any of my accounts with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "You" and "your" refer to BT Alex. Brown, its subsidiaries, affiliates, officers, directors, agents and employees. BT Alex. Brown is a subsidiary of Bankers Trust New York Corporation. As used herein, the term "affiliate of BT" means Bankers Trust New York Corporation and its subsidiaries and affiliates, including, without limitation, BT Alex. Brown and Bankers Trust Company. Each of BT and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. Where the context requires, the singular shall be plural and the plural shall be singular.

1.  Representations

Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through my account. I also represent that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk and I represent to you that I knowingly and willingly assume such risk.

2.  Applicable Rules and Regulations

All transactions in my account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3.  Confirmations, Statements and Written Communications

I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in my account. In the absence of such written notification, I agree that all transactions for my account will be final and binding on me. Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4.  Aggregation of Orders and Average Prices

I authorize you, at your discretion, to aggregate orders for my account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5.  Short and Long Orders; Deliveries and Settlements

I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in my account, without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to my account. I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of my accounts with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

6.  Authority to Borrow

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

7  Interest Charges

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

8.  Credit Information and Investigation

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of BT (including, without limitation, Bankers Trust Company) to share such information and any other confidential information you and such affiliate(s) may have about me and my account(s).

9.  Satisfaction of Indebtedness

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

10. Liens

I hereby grant to you and all affiliates of BT a security interest in all securities and other property in your possession or in the possession of any affiliate of BT in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of BT. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

11. Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions

If I engage in margin transactions, I will maintain such securities and other property in my account for margin purposes as you shall require from time to time. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of my accounts with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

12. Loan or Pledge of Securities and Other Property

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that in the event securities held for my account are loaned out, I may lose certain voting rights attendant to such securities.

13. Correspondent Account; No Agency

If my account has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for my account, on margin or otherwise, and (ii) any other instructions concerning my account. I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

14. Joint Accounts

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

15. Foreign Securities

With respect to debt or equity securities of foreign issuers or debt or deposit instruments of foreign banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on any U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety or risks in addition to those typically faced in the case of U.S. securities and issuers, including, inter alia, currency risk, exchange controls, confiscatory taxation, withholding.

limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc., (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be subject to; and (vii) such securities are not suitable for all investors.

I authorize BT Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of BT. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to BT Alex. Brown's relationship with me.

### 16. Acknowledgment of Possible Conflicts of Interest

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at BT Alex. Brown and/or affiliates of BT, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at BT Alex. Brown and affiliates of BT are seldom of one view as to an investment strategy and will often pursue strategies which are not disclosed to other persons or groups within BT Alex. Brown or affiliates of BT. Your employees shall have no obligation to recommend to me the purchase or sale of any security which any individual or group at BT Alex. Brown may recommend for its own account or for the account of any other client or for the account of any affiliates of BT or for the accounts of any of their clients. I also acknowledge that:

BT Alex. Brown and affiliates of BT may perform services for or solicit business from issuers whose securities are recommended by your employees;

BT Alex. Brown and affiliates of BT may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation those for acting as investment advisor, administrator, custodian and transfer agent; and

BT Alex. Brown and affiliates of BT act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

### 17. No FDIC Insurance, Not Obligations of Bankers Trust Company

I understand that the assets in my account are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in my account (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Bankers Trust Company, are not guaranteed by Bankers Trust Company and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Bankers Trust Company is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Bankers Trust Company states in writing that a particular product is subject to FDIC insurance.

### 18. Miscellaneous

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer my account. This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that BT Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by BT Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

### 19. Paragraph Headings

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

### 20. Certification - Taxpayer Identification Number

Certification Instructions: I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____ (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a BT Alex. Brown Investment Representative.)

Under penalties of perjury, I certify that: (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

By signing below I acknowledge that I have received, read and agree to the terms of this Agreement.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL [████] RED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BAN[████] [IN]CLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

Signature _____                    Date 11/18/95

Social Security or Employer ID No. _____

Signature _____                    Date _____

Social Security or Employer ID No. _____

Signature _____                    Date _____

Social Security or Employer ID No. _____

Certification of Foreign Status

*A non-resident alien individual or an exempt foreign person must check the applicable box(es) and sign this section.*

Under penalties of perjury, I certify that:

☐ For interest payments, I am not a U.S. citizen or resident (or I am filing for a foreign corporation, partnership, estate, or trust).

☐ For dividends, I am not a U.S. citizen or resident (or I am filing for a foreign corporation, partnership, estate, or trust).

☐ For Broker transactions or Barter exchange, I am an exempt foreign person as defined on IRS Form W-8. *(A copy of IRS Form W-8 can be obtained from a BT Alex. Brown Investment Representative.)*

Signature_____ Date _____

Permanent Address  _____

_____ Country _____

Note:  *Beneficial owners of certain types of income (or owners' trustees or agents) may use IRS Form 1001 to report to a withholding agent both the ownership of the income and the reduced rate of tax or exemption from tax on the income under tax conventions or treaties. Such form can also be used to claim a release of tax withheld at source. For a copy of IRS Form 1001, please call a BT Alex. Brown Investment Representative.*

## PLEASE  READ  AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.

- I will be obligated to pay interest on all sums I borrow from you.

- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.

- By using a margin account to leverage my investments, I increase my risk of loss.

- BT Alex. Brown will deduct all interest charges from my account.

BT Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement BT Alex. Brown sends to me.

- BT Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to BT Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

Signature_____ Date 11/18/55

Signature_____ Date _____

Signature_____ Date _____

Paragraph 20 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If BT Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

Branch Manager approval for margin accounts:                    **FOR OFFICE USE ONLY**

Signature_____ Date _____

AA1 (8/98)              © 1998 Bankers Trust New York Corporation and its affiliated companies.

# GUARANTY AGREEMENT

BT Alex. Brown Incorporated
Attn: Retail Credit
1290 Avenue of the Americas, 10th Floor
New York, NY 10104

Gentlemen:

1.    In consideration of your opening, and/or continuing, an account or accounts (which separately or jointly, with any and all renewals thereof, are hereinafter referred to as "said guaranteed account") with, or otherwise giving credit in said guaranteed account to _____including with respect to accounts bearing account number 2 -         . (hereinafter collectively referred to as the "Customer"), on such terms and conditions as may, from time to time, be agreed to between you and the Customer (notice of which is hereby waived), the undersigned (hereinafter referred to as the "Guarantor") hereby unconditionally agrees to pay to you, on demand, any indebtedness which may now or hereafter be owing you by the Customer on said guaranteed account.

2.    The Guarantor agrees that this guaranty shall be effective not only with respect to said guaranteed account but also with respect to any and all renewals thereof; that said guaranteed account may be changed from time to time by the purchase or sale or exchange of securities or other property, or by payments or by deliveries of securities or other property by or to or upon the order of the Customer; and that said guaranteed account may be closed out by you at any time; and that in general, you may deal with and accept the orders of the Customer with respect to transactions in said guaranteed account, without notice to the Guarantor, the same as if this guaranty had not been given.

3.    The Guarantor agrees that to secure said guaranteed account or to pay any indebtedness due therein, the Guarantor hereby grants to you a security interest in such money, securities or other property you may at any time hold or have in any account or accounts of the Guarantor, or in which the Guarantor may have an interest; that you may pledge and repledge any of such securities or other property, either separately or with any other securities or property, for such sum or a greater sum than may be due you in said guaranteed account, and without retaining the possession or control for delivery of a like amount of similar securities or property; that you may proceed at any time, in your discretion, and without prior demand or notice, to enforce said lien by the sale of any such securities or property of the Guarantor, in any manner and upon such terms as you may determine. At any such sales or other disposition you may yourself purchase the whole or any part of the collateral sold, free from any right of redemption on the part of the undersigned, which right is hereby waived and released. The undersigned further agrees that enforcement by you of said lien in any manner, in whole or in part, shall not in any way affect the continuing liability of the Guarantor for any indebtedness in said guaranteed account; that any demand on the Guarantor to perform the obligation of the guaranty, or any action or proceedings brought to enforce the liability of the Guarantor hereunder shall not release or otherwise affect said lien; and that you shall at all times have both the liability of the Guarantor and said lien to secure to you payment of any indebtedness in said guaranteed account, enforcement of both of which may be pursued concurrently or separately.

4.    By written notice to you, the Guarantor may at any time terminate its obligations and rights hereunder in respect to future transactions in said guaranteed account; but notwithstanding such termination as to future transactions the obligations of the Guarantor hereunder with respect to any indebtedness in said guaranteed account, including any losses incurred in liquidating said guaranteed account during a reasonable time subsequent to the receipt of such notice, shall continue in full force and effect until such indebtedness, including all interest due on said indebtedness, has been paid in full to you.

5.    The undersigned hereby agrees that this guaranty shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any collateral for said guaranteed accounts, or by failure to exercise, delay in the exercising or waiver of, or forebearance with respect to, any right or remedy available to you.

6    The undersigned hereby acknowledges that it has derived or expects to derive a financial or other advantage from each and every extension of credit granted to this Customer.

7.    The undersigned agrees to pay on demand all expenses (including reasonable expenses for legal services of any kind and cost of any insurance and payment of taxes or other charges) of, or incidental to, the custody, care, sales or collection of, or realization upon, any collateral in said guaranteed account or in any way relating to the enforcement or protection of your rights hereunder.

8.    This guaranty shall continue to be effective or be reinstated, as the case may be, if at any time all or any part of any payment is rescinded or must be restored or returned by you whether under any insolvency, bankruptcy or reorganization proceeding or otherwise.

9.    This guaranty is a guaranty of payment and not of collection, and you shall be under no obligation to take any action against the Customer or any other person liable with respect to said guaranteed account or resort to any collateral security held by you as a condition precedent to the undersigned being obligated to perform as agreed herein. The undersigned hereby waives any rights to interpose any defense, counterclaim or offset of any nature and description which it may have or which may exist between and among you, the Customer and/or the undersigned.

10.    The undersigned hereby waives any rights to be subrogated to your rights with respect to the Customer and the undersigned waives any right to and agrees that it will not institute or take any action against the Customer seeking reimbursement or indemnification with respect to any payments made to you by the undersigned on behalf of the Customer or in respect to any indebtedness or other obligations of the Customer to you.

11.    This guaranty shall be binding upon the Guarantor and any permitted assigns and shall inure to your benefit and the benefit of any successor firm or firms. This guaranty shall be construed in accordance with the laws of the State of Maryland.

2

12.    This guaranty embodies the entire agreement and understanding between you and the undersigned with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

<u>Guarantors:</u>
# 2 -

**THE EXACT NAME OF THE GUARANTOR**                    WITNESS:

Signed, _____                    Signed, _____

Dated, _____11/18/55_____                    Dated, _____11/18/99_____

Signed, _____                    Signed, _____

Dated, _____11/18/93_____                    Dated, _____

3