**Melinda S. Merk**
11/10/1999 01 08 PM

To Robert L Carson/NewEngland/TAX/EYLLP/US@EY-NAmerica, Andrew Kyriacou/NewEngland/TAX/EYLLP/US@EY-NAmerica, Glenn H Hascher/Connecticut/TAX/EYLLP/US@EY-NAmerica, David Carson/NewYork/TAX/EYLLP/US@EY-NAmerica, Charles R Cangro/NewYork/TAX/EYLLP/US@EY-NAmerica, Michael F Bearer/Washington/TAX/EYLLP/US@EY-NAmerica, Charles W. Paul/Washington/TAX/EYLLP/US@EY-NAmerica, James A Hutchinson/Philadelphia/TAX/EYLLP/US@EY-NAmerica, Charles R Kowal/Southeast/TAX/EYLLP/US@EY-NAmerica, Michael K Szalkowski/Southeast/TAX/EYLLP/US@EY-NAmerica, Ray Knight/Carolinas/TAX/EYLLP/US@EY-NAmerica, Richard W. Jones/GulfCoast/TAX/EYLLP/US@EY-NAmerica, Robert Johnson/GulfCoast/TAX/EYLLP/US@EY-NAmerica, Richard J Joyner/Southwest/TAX/EYLLP/US@EY-NAmerica, Victoria R Matalon/Southwest/TAX/EYLLP/US@EY-NAmerica, David G Johnson/NOhioEMichigan/TAX/EYLLP/US@EY-NAmerica, William P Murphy/NOhioEMichigan/TAX/EYLLP/US@EY-NAmerica, Mark A. Troncone/Pittsburgh/TAX/EYLLP/US@EY-NAmerica, Carl A Rhodes/SOhioKentuckyIndiana/TAX/EYLLP/US@EY-NAmerica, Robert C Schlemmer/SOhioKentuckyIndiana/TAX/EYLLP/US@EY-NAmerica, Brian W Upchurch/SOhioKentuckyIndiana/TAX/EYLLP/US@EY-NAmerica, Richard F. Kraner/MissouriKansas/TAX/EYLLP/US@EY-NAmerica, Michael Reed/MissouriKansas/TAX/EYLLP/US@EY-NAmerica, Sylvia J Pozarnsky/Chicago/TAX/EYLLP/US@EY-NAmerica, Jeff Brodsky/Chicago/TAX/EYLLP/US@EY-NAmerica, Gary M Duboff/Chicago/TAX/EYLLP/US@EY-NAmerica, Allan M Harbour/Chicago/TAX/EYLLP/US@EY-NAmerica, Michael S. Fredlender/SCalifornia/TAX/EYLLP/US@EY-NAmerica, James A Cox/NCalifornia/TAX/EYLLP/US@EY-NAmerica, Robert M. Haynie/NCalifornia/TAX/EYLLP/US@EY-NAmerica, Robert B Coplan/National/TAX/EYLLP/US@EY-NAmerica, Martin Nissenbaum/NewYork/TAX/EYLLP/US@EY-NAmerica, Melinda S. Merk/National/TAX/EYLLP/US@EY-NAmerica, Peter D. Lucido/NewYork/TAX/EYLLP/US@EY-NAmerica, Richard J Shapiro/NewYork/TAX/EYLLP/US@EY-NAmerica, Robert J Garner/NewYork/TAX/EYLLP/US@EY-NAmerica

cc

Subject Revised COBRA Engagement Letter

The 3rd paragraph of the attached COBRA Engagement Letter has been revised so that it states that the client, not the Partnership, will be invoiced after the option contracts and cash have been contributed to the Partnership

COBRA Engagement Letter rev111099

2003EY003744

PENGAD-Bayonne, N. J.
GOVERNMENT EXHIBIT
562

*PERSONAL AND CONFIDENTIAL*

[redacted]

[Client Name and Address]

Dear Client,

This letter will confirm our engagement to provide tax advice to you concerning the implementation of the COBRA strategy we have discussed with you This strategy will involve the creation of a Partnership by you and third parties Our work will include assisting in the tax planning aspects of this transaction, working with counsel and other third parties in reviewing the tax aspects of the entities and other consulting services as required. If necessary, we also agree to represent you before the Internal Revenue Service with respect to tax issues associated with this strategy up to and including the appellate level. If you would like us to represent you with regard to other tax issues in the event of an audit, we would charge our normal fees for time and expenses in connection with such representation

In this engagement, we will be using information provided by you and the Partnership and will be relying upon you and the Partnership for the accuracy and completeness of this information. We will maintain the information provided to us in confidence within our firm and will not disclose to others such confidential information except with your consent or as required by law or permitted under professional standards

Our fee for providing the professional services referred to above will be $**[Insert amount equal to 1.50 % of the desired loss to be generated. If the size of transaction is not certain at the time this letter is signed, add "based on a total investment in the Partnership by you and other individual(s) in the amount of $ million." Investment in partnership = Cost of long option contract equal to 5% of desired loss, plus cash equal to 2% of the desired loss]**. We will invoice you for our fee after the foreign currency option contracts and required amount of cash have been contributed to the Partnership. In the event you later decide not to implement the technique described above, our fee will be paid by you and will be limited to our time incurred from the date this letter is signed up to the date we receive written notification of your decision not to proceed, and will be billed at our standard hourly rates. In addition to bills for our hourly fees, an administrative expense charge of 8.5% of our standard fees will be billed at the same time

All advice and other services we provide pursuant to this arrangement are intended to be solely for your benefit and that of the Partnership and are not for the benefit of anyone else. Accordingly, our advice may not be relied upon by any other person or persons, used in connection with any other transaction, or used for any other purpose without our prior written consent. Furthermore, the content

of any oral or written communication made by us in connection with this engagement shall not be communicated to the public or otherwise publicized in any manner without our prior written consent.

Ernst & Young LLP will not be liable for any claim for damages arising out of or in connection with any tax services provided to you in an amount greater than the amount of fees actually paid to Ernst & Young LLP with respect to the services directly relating to and forming the basis of such claim.

Any controversy or claim arising out of or relating to tax and tax-related services now or hereafter provided by us to you (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Attachment to this letter. Judgment on any arbitration award may be entered in any court having proper jurisdiction.

Except as expressly provided herein, this engagement letter does not modify the terms or provisions of any engagement letter for other professional services which were agreed to prior to the date noted below.

Information relating to federal tax advice we provide to you, including communications between us and material we create in the course of providing that advice, may be privileged and protected from disclosure to the Internal Revenue Service. Should the Internal Revenue Service seek disclosure from you or us of written or oral communications relating to such advice, we will discuss with you whether and how you assert, or waive, the privilege.

If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this letter shall remain in effect.

If these arrangements are acceptable, please sign one copy of this letter and return it to me in the enclosed self-addressed envelope.

If you have any questions concerning our engagement, please call me at ________________
We appreciate the opportunity to work with you.

Very truly yours,

**Agreed to by:**

Name: ______________________

Date: ______________________

2003EY003746

Attachment

2003EY003747

**Dispute Resolution Procedures**

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in our engagement letter of July 23, 1998. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

*Mediation*

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

*Arbitration*

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA as in effect on the date of the engagement letter ("AAA Rules"). In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the AAA Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No

2003EY003748

potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

No discovery will be permitted in connection with the arbitration unless it is expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction.

2003EY003749