# In The
# United States
# Court of Federal Claims

# JZ Buckingham Investments, LLC
### as Tax Matters Partner of
### JBJZ Partners,
### a South Carolina General Partnership,

### Plaintiff

### v.

# United States of America,

### Defendant

## Case No. 05-231T

-----

# Expert Report
# of
# David W. LaRue, Ph.D.
## McIntire School of Commerce
## University of Virginia

## June 1, 2007

David W. LaRue, Ph.D.

b)   **December 22, 1999:**
     **Additional Contributions to the Capital of the**
     **Partnership**
     **[The "Cisco Stock"]**

     (1)   **JZ (Zucker)**

110.  On December 22, the Partnership received 4,500 shares of stock in Cisco Systems, Inc. **["Cisco Stock"]** as "a contribution to its capital from JZ Buckingham Investments, LLC."[180]

- However, these shares where actually transferred from *JBJZ's* Alex Brown Account 222-10156-19, not from *JZ's* Alex Brown Account 222-10153-12

- JBJZ had received these shares on December 7, presumably directly from Mr. Zucker.

- There is no indication on either the November 1999 or the December 1999 *Alex Brown Client Statements* that JZ ever received or held any Cisco Stock.[181]

- A December 21 Fax from J&G to Ray Knight at E&Y refers to the "misplacement of the Cisco stock."[182]

  o  Attached to this fax is a letter signed by Mr. Zucker conveying the Cisco Stock from JBJZ to the Partnership.[183]

  o  One of the four pages referred to on the fax coversheet appears to be missing from the documents I have reviewed. The third page of this fax, however, states that the contribution of the 500 shares of Cisco Stock transferred from Mr. Boyd to JBJZ on December 8 had been made in error. Presumably, the missing fourth page similarly

---

[180]   Bates: 0297 & 00000131.  See Table 2, Columns C & D, Rows 6 & 7.
[181]   Bates: 2089 through 2093 (November) and 2094 through 2099 (December).
[182]   Bates: 00000132.
[183]   Bates: 00000132.

--- 42 ---

David W. LaRue, Ph.D.

stated that the 4,500 shares of Cisco Stock transferred from Mr. Zucker to JBJZ on December 7 had been made in error.[184]

111. It is my understanding that the Cisco Stock contributed by JZ (Zucker) had been purchased by Mr. Zucker in 1996 for $57,000 and that this basis would have carried over to become the Partnership's tax basis in that Stock.[185]

o  Note, however, that in computing the tax bases that JZ (Zucker) claimed to have had in its/his Partnership interest (and that JBJZ subsequently claimed to have had in the Cisco Stock and the Canadian Currency it received from the Partnership upon the Partnership's termination and liquidation), the $476,775 *fair market value* of that stock, not JZ (Zucker)'s $57,000 *tax basis*, was used.[186]

112. The Cisco Stock contributed by JZ (Zucker) on December 22 was ultimately distributed (back) to JBJZ and then sold by JBJZ on December 31 for $476,756.  JBJZ recognized and reported a $18,177,695 long-term capital loss on this sale.[187]

### (2)   JGB (Boyd)

113. On December 22, the Partnership received 500 shares of stock in Cisco Stock as "a contribution to its capital from JGB Bohicket Investments, LLC."[188]

•  However, these shares where actually transferred from *JBJZ's* Alex Brown Account 222-10156-19, not from *JGB's* Alex Brown Account 222-10154-11.

---

[184]   Bates: 00000132 & 00000134.

[185]   I.R.C. Section 723. As noted at ¶157, *et seq.,* the Partnership's 1999 Form 1065 (including the accompanying forms, schedules, statements, and attachments) did not disclose any information regarding the Cisco Stock received from JZ (Zucker).

[186]   See the spreadsheet prepared by Amy Keating of E&Y dated March 8, 2000. Bates: 0288. See also Table 2, Columns C & D, Rows 6 & 7, and the "Proof/Reconciliation" in Rows 24 through 27 (which incorporate the fair market value amount on Column D, Row 6).

[187]   Bates: 1074.

[188]   Bates: 0297 & 00000131.  See Table 2, Columns E & F, Rows 6 & 7.

--- 43 ---

- JBJZ had received these shares on December 8, presumably directly from Boyd.

- There is no indication on either the November 1999 or the December 1999 *Alex Brown Client Statements* that JGB ever received or held any Cisco Stock.[189]

- A December 21 Fax from J&G to Ray Knight at E&Y refers to the "misplacement of the Cisco stock."[190]

   o Attached to this fax is a letter signed by Mr. Zucker conveying the Cisco Stock from JBJZ to the Partnership.[191]

   o The third page of this fax states that the contribution of the 500 shares of Cisco Stock transferred from Mr. Boyd to JBJZ on December 8 had been made in error, and requests that these shares be transferred from JBJZ to the Partnership "as a contribution to capital from [JGB]."[192]

114.  It is my understanding that the Cisco Stock contributed by JGB (Boyd) had been purchased by Mr. Boyd on August 26, 1999 for $34,905, and that this basis would have carried over to become the Partnership's tax basis in that stock.[193]

   o Note, however, that in computing the tax bases that JGB (Boyd) claimed to have had in its/his Partnership interest (and that JBJZ subsequently claimed to have had in the Cisco Stock and the Canadian Currency it received from the Partnership upon the Partnership's

---

[189]  Bates: 2614 through 2618 (November) and 2619 through 2623 (December).
[190]  Bates: 00000132.
[191]  Bates: 00000132.
[192]  Bates: 00000132 & 00000134.
[193]  I.R.C. Section 723. As noted at ¶157,*et seq.,* the Partnership's 1999 Form 1065 (including the accompanying forms, schedules, statements, and attachments) did not disclose any information regarding the Cisco Stock received from JGB (Boyd).

--- 44 ---

157

termination and liquidation), the $52,975 *fair market value* of that stock, not JGB (Boyd)'s $34,905 *tax basis*, was used.[194]

115.  The Cisco Stock contributed by JGB (Boyd) on December 22 was ultimately distributed (back) to JBJZ and then sold by JBJZ on December 31 for $52,973.  JBJZ recognized and reported a $2,019,744 short-term capital loss on this sale.[195]

### c)  December 22 & 23, 1999: Partnership's Purchase of Canadian Dollars ["Canadian Currency"]

116.  On or about December 22 and 23, the Partnership purchased Canadian Dollars ["**Canadian Currency**"] for $772,500.[196]

117.  The Canadian Currency was ultimately distributed to JBJZ and then sold by JBJZ on December 29 for $778,407.  JBJZ recognized and reported a $29,446,675 ordinary loss on this sale.[197]

### 5.  Step 5:  December 27, 1999: Transfer of Partnership Interests to JBJZ and the Termination and Liquidation of the Partnership

118.  On or about December 27, the JZ (Zucker) and JGB (Boyd) contributed their respective Partnership interests to JBJZ in exchange for all of JBJZ's issued and outstanding stock.[198]

### a)  JZ (Zucker)

119.  JZ (Zucker) transferred its/his Partnership interest to JBJZ in exchange for 90 shares (90%) of JBJZ's stock.[199]

---

[194]  See the spreadsheet prepared by Amy Keating of E&Y dated March 8, 2000. Bates: 0288.  See also Table 2, Columns E & F, Rows 6 & 7, and the "Proof/Reconciliation" in Rows 24 through 27 (which incorporate the fair market value amount on Column F, Row 6).

[195]  Bates: 1074.

[196]  Bates: 0298.  These purchases were posted on December 23 and 27, respectively.  See Table 2, Column I, Row 16.

[197]  Bates: 1075.

[198]  Bates: 1081.

--- 45 ---

158

### b)  JGB (Boyd)

121.  JGB (Boyd) transferred its/his the Partnership interest to JBJZ in exchange for 10 shares (10%) of JBJZ's stock.[206]

122.  JBJZ claimed a carryover tax basis in this Partnership interest of $5,430,773.[207] This amount included:[208]

- The inflated basis amount of $4,750,000 (Table 1, Column I, Row 3),

- Approximately $18,070 of unrealized appreciation in the value of the Cisco Stock[209] that Mr. Boyd had contributed to the Partnership (through, erroneously, JBJZ[210]).

- Mr. Boyd's $75,000 share of the E&Y Fee (an amount which was incurred and paid individually by Boyd[211] and which was also claimed by him as a miscellaneous itemized deduction on his 1999 Form 1040[212]) (¶130).

- Mr. Boyd's $140,000 share of the J&G Fee (¶136).

---

[206]  As previously observed, the stock certificate issued to Mr. Boyd was dated November 16, 1999. Bates: 0681 & 0682.

[207]  The $5,430,773 tax basis that JBJZ actually claimed to have in this Partnership interest was $140,000 more than the $5,290,773 amount shown on the Regulation Section 1.351-3(b) Statement that it filed with its 1999 Form 1120S. Bates: 1081. This difference is the amount of Mr. Boyd's share of the J&G Fee, which was, in fact, retroactively added to (i.e., capitalized to) the tax basis of JGB (Boyd)'s Partnership interest upon the payment of this fee by JBJZ on December 1999.

[208]  See Table 2, Column F.

[209]  $18,070 = $52,975 (approximate fair market value) less $34,905 (Mr. Boyd's cost basis). This gain was not recognized by Mr. Boyd upon the transfer of his Cisco Stock to the Partnership. Bates: 2203 through 1365. I.R.C. Section 721(a). Instead of increasing his tax basis in the Partnership interest by $34,905 under I.R.C. Section 722, his basis was increased by the stock's $52,973 fair market value. See ¶114.

[210]  See ¶113.

[211]  I was unable to locate documentation supporting this payment by Mr. Boyd. However, I concluded that Mr. Boyd must have made this payment individually since (1) he was personally invoiced for this fee, (2) he deducted it on his 1999 Form 1040, (3) this amount does not appear on the Schedule Ks (or on his Schedule K-1s) of either the Partnership or JBJZ, and (4) there is no record of any payment to E&Y (or of any such amount) on the Partnership's *Alex Brown Client Statements* or on JBJZ's *Alex Brown Client Statements*.

[212]  Bates: 2208 & 2637.

--- 47 ---

**159**

### c)    The Partnership

123. On or about December 27, immediately following the contributions of the Partnership Interests to JBJZ, the Partnership terminated and liquidated. The Cisco Stock and the Canadian Currency (together with cash of $3,355,475) was distributed to JBJZ as a distribution in liquidation of the Partnership.[213]

### d)    JBJZ

124. On December 28, the Cisco Stock and the Canadian Currency (together with cash of $3,355,475) were received by JBJZ as proceeds from the termination and liquidation of the Partnership.

125. The tax bases that JBJZ assigned to the Cisco Stock and to the Canadian Currency was not a carryover of the Partnership's tax bases in those assets as of the date of its termination, liquidation, and distribution ($91,905[214] and $772,500,[215] respectively).

126. The aggregate tax basis that JBJZ assigned to the Cisco Stock and the Canadian Currency was instead the aggregate carryover tax basis that the partners claimed to have had in their respective Partnership interests (increased by the $1,400,000 J&G Fee reduced by the $3,355,475 cash distributed by the Partnership to JBJZ).

- The aggregate tax basis that JBJZ assigned to the Cisco Stock and the Canadian Currency was $50,952,250,[216] an amount that included:[217]

  o  The inflated basis amounts totaling $47,500,000 (Table 1, Column I, Row 4),

---

[213]    Bates: 0291 through 0303.

[214]    Table 2, Column C & E, Row 7. As previously noted, the partners incorrectly claimed a Partnership interest tax basis that included an amount equal to the approximate fair market value of the Cisco Stock as of the date of the contribution of that stock to the Partnership ($529,729). Table 2, Column D & F, Row 6. See ¶111 and ¶114.

[215]    See also Table 2, Column I, Row 16.

[216]    See Table 2, Column G, Row 23.

[217]    See Table 2, Column G.

- o Approximately $437,845 of unrealized appreciation in the value of the Cisco Stock[218] that Mr. Zucker and Mr. Boyd had contributed to the Partnership (erroneously through JBJZ[219]).

- o The $750,000 E&Y Fee (which was incurred and paid individually by Mr. Zucker and Mr. Boyd and which was also claimed by them as miscellaneous itemized deductions on their respective 1999 Form 1040s. (¶130, et seq.)).

- o The $1,400,000 J&G Fee (¶136, et seq.)).

- The difference between the total of these amounts ($50,087,845) and the JBJZ Losses ($49,644,114) is the amount of the actual economic gain (computed using the cost of these assets) realized by JBJZ on the sale of the Cisco Stock and the Canadian Currency ($443,731[220]).

### 6. Step 6: December 29 and 31, 1999: Sale of the Canadian Currency and the Cisco Stock by JBJZ

127. JBJZ sold the Canadian Currency on December 29 for $778,407.[221]

- JBJZ reported an ordinary loss of $29,446,675 [the "JBJZ Ordinary Loss"] from this sale on the Form 4797 and on the Schedule K of its 1999 Form 1120S.

- The actual economic gain or loss resulting from the purchase and sale of the Canadian Currency (computed using the Partnership's original cost of this currency) was a gain of $5,907.[222]

---

[218]  $437,845 = $419,775 (¶111) + $18,070 (¶114).

[219]  See ¶110 et seq.

[220]  $443,731 gain = $18,068 gain (500 shares of Cisco Stock from Mr. Boyd) + $419,756 gain (4,500 shares of Cisco Stock from Mr. Zucker) + $5,907 gain (Canadian Currency).

[221]  Bates: 1075.

[222]  $5,907 = $778,407 (gross sales price) less $772,500 (the Partnership's cost).

- Thus, the amount of the long-term capital loss claimed by JBJZ was -43 times the amount of the actual economic gain realized on the investment in these 4,500 shares of Cisco Stock.[229]

## D. Transaction-Related Fees

### 1. Ernst & Young ["E&Y"]

130. Sometime in mid-November 1999, Mr. Zucker and Mr. Boyd engaged Ernst & Young ["E&Y"]

> . . . to provide tax advice . . . concerning the implementation of the COBRA strategy . . . .[230]

131. Sometime subsequent to the date they engaged E&Y, Mr. Zucker and Mr. Boyd individually paid E&Y fees totaling $750,000 ["E&Y Fees"]:[231]

    Mr. Zucker:    $675,000.[232]

    Mr. Boyd:    $ 75,000.[233]

132. From a federal income tax standpoint, the treatment of the E&Y Fees resulted in a duplication of potential tax benefits.

- First, Mr. Zucker and Mr. Boyd deducted these fees on their individual 1999 Form 1040s as miscellaneous itemized deductions.

  o The 1999 Form 1040s of Mr. Zucker and Mr. Boyd respectively disclosed their payments to E&Y, without further elaboration, as "Ernst & Young, LLP"[234] and "Accounting Fees."[235]

- Second, although the E&Y Fees were incurred, paid, and deducted individually by Mr. Zucker and Mr. Boyd, the tax bases in their

---

[229] -43 = -$18,177,695 divided by $419,756.
[230] Bates: 3192 through 3198 ["E&Y Engagement Letter(s)"].
[231] See Table 2, Columns D, F, and G, Row 18.
[232] Supra., footnote 204.
[233] Supra., footnote 211.
[234] Bates: 1335.
[235] Bates: 2208. See also Bates: 2637.

respective Partnership interests (and, ultimately, the amount of the JBJZ Losses allocated to and deducted by them) were increased by their respective amounts of the E&Y Fees.[236]

133. The Partnership's 1999 Form 1065 (including the accompanying forms, schedules, statements, and attachments) did not disclose any information pertaining to the E&Y Fees -- there was no general or specific description of these fees, there was no disclosure of the identity of the payee, the amounts of these fees were not separately stated or otherwise disclosed, and the fact that these fees were added to the tax bases of the Partnership Interests was not disclosed.[237]

134. The duplicated E&Y Fees that increased the tax bases in the Partnership Interests were ultimately buried in the JBJZ Losses (i.e., as an unidentified component of the $49,644,114 of ordinary and capital losses that JBJZ recognized and reported on its 1999 Form 1120S from the sale of the Canadian Currency and the Cisco Stock, and that it then allocated to and between Mr. Zucker and Mr. Boyd).

135. A December 23, 1999 e-mail from Robert B. Coplan (E&Y National Tax) (to over forty E&Y personnel ("Subject: Deductibility of COBRA Fees") confirms E&Y's policy of capitalizing the fees paid to it by its clients in connection with the COBRA transaction:

> After several discussions internally and with counsel, we have concluded that there is a return filing position that can be taken for *capitalizing the E&Y fees into the basis of the partnership, thereby enabling a capital or ordinary loss to be claimed for this amount.* We recommended previously that the E&Y invoice be sent to the individual partners or the LLCs in order to support the premise that the fees were paid as an expense of setting up the partnership and advising on its activities. Because the fees will be significant, the clients would likely need to have substantial authority to

---

[236]   See Table 2, Columns C, E, and G, Rows 18 through 27.
[237]   Bates: 0172 through 0187.

--- 52 ---

163

> avoid having to disclose the position as a protection against a section 6662 penalty. We believe substantial authority exists for this positions.
>
> If you have yet to send one out, the E&Y invoice may read, "For professional services rendered to __(individual or LLC)__ during 1999 in connection with the formation and operation of the _____ partnership and the purchase of foreign currency options."[238]

- I have seen no documentation in this case that identifies or otherwise discusses the "substantial authority" referred to above and on the basis of which the E&Y Fees were capitalized to the tax bases in the Partnership Interests.

- Neither the J&G Opinion nor the B&W Opinion identified or in any way addressed this issue.[239]

### 2.    Jenkens & Gilchrist ["J&G"]

136.    On December 29, JBJZ paid fees to J&G ["J&G Fee"] of $1,400,000[240] in payment of an invoice dated December 6.[241]

- Under the terms of the engagement letters between J&G and Mr. Zucker and Mr. Boyd (both dated December 1) [the "J&G Engagement Letters"], J&G would provide

---

[238] Bates: 2003EY000878.

See also a November 11, 1999 e-mail from Brian Upchurch of E&Y, in which he states: "*The [E&Y] fee may be a flag that we do not want on the return this year. What flexibility do we have and what do you recommend.*" [Emphasis supplied.] Bates: 2003EY010640.

See also the *E&Y COBRA Presentation* which would have treated the E&Y Fees and the J&G Fee as miscellaneous itemized deductions ("*Deduction for fees only available after application of 2% floor.*") Bates: 2003EY001582 & 2003EY001583.

[239] Bates: 0419 through 0531 (J&G) and 0532 through 0609 (B&W).

[240] Bates: 1189.

[241] Bates: 1886. J&G subsequently invoiced JBJZ for an additional $40,000 (Bates: 00000565). I have been unable to determine whether or not this additional $40,000 amount was ever paid.

Scheef & Stone, LLP invoiced J&G $240,000 on 12/28/99 for "12/22/99, GPD For legal services rendered, including, without limitation, consultation regarding design, structure and implementation of transaction" regarding "JBJZ Investors, Inc." (Bates: 00000564).

--- 53 ---

increased tax basis between and among the cash, the Cisco Stock and the Canadian Currency.[249]

141.  Consequently, the J&G Fee, like the E&Y Fees, was ultimately buried in the JBJZ Losses (i.e., as an unidentified component of the $49,644,114 ordinary and capital losses that JBJZ reported on its 1999 Form 1120S from the sale of the Canadian Currency and the Cisco Stock).

142.  A March 13, 2000 e-mail from Robert B. Coplan (E&Y National Tax) to over twenty E&Y tax professionals ("Subject: Further (and close to final) Update on COBRA Returns") confirms E&Y's policy of capitalizing the fees paid to J&G by its clients in connection with the COBRA transaction:

> J&G Fee Capitalized.  This is to further advise you that the returns reflect a decision made late last week to capitalize the Jenkens & Gilchrist legal fees into the basis of the partnership interest, which in turn gets included in the basis of the S corporation out of which the payments are ultimately made.  We concluded that there was reasonable support for taking this position, in that the key services J&G rendered were the structuring of the partnership, the document preparation and the formation of the entities.  The legal opinion was not the main reason for the payment of the fee, since a separate tax opinion was being obtained from Brown & Wood.  Therefore, *the J&G fees will produce an additional K-1 loss in the same manner as the E&Y fees*.  The final S corp returns and K-1s reflect this position.  *The significance of this is that the returns will not force the individuals to show the large payment to J&G as a miscellaneous itemized deduction, which could be a flag on the 1040.*[250]  [Emphasis supplied.]

- An earlier e-mail from Mr. Coplan (December 23, 1999, e-mail from Coplan to over forty E&Y personnel ("Subject:  Deductibility of COBRA Fees")), had expressed reservations about the propriety of capitalizing the J&G Fees:

---

[249]  See excerpt from the March 13, 2000 Coplan e-mail, below, which describes how (and why) the J&G Fees paid in connection with the COBRA Strategy were to be capitalized to the S corporations' tax bases in the assets received in liquidation of the partnerships. See Table 2, Columns C, E, and G, Rows 19 through 27.

[250]  Bates: 2003EY011725 & 2003EY011726.

> We believe there is less support for similarly capitalizing the fees for the law firms with respect to their opinion letters. The greatest part of the Jenkens fee is for the opinion letter, which is to be provided to assist the S corporation in preparing K-1s for its shareholders. . . .

> As you know, we did not believe there was adequate support for claiming a section 162 deduction at the S corporation level for fees paid by the S corporation for the opinion letters, etc. These fees will be treated as section 212 expenses on the individuals' returns.[251]

- I have seen no documentation in this case that identifies or otherwise discusses the "reasonable support" referred to in the March 13, 2000 e-mail, above, and on the basis of which the J&G Fee was capitalized to the Partnership Interests and then to the Cisco Stock and Canadian Currency.

- Neither the J&G Opinion nor the B&W Opinion identified or in any way addressed this issue.[252]

143. None of the 1999 Form 1040s of the Taxpayers (including the accompanying forms, schedules, statements, and attachments) disclosed any information pertaining to the J&G Fee.

### 3.   Brown & Wood ["B&W"]

144. On or about March 3, 2000, Mr. Zucker and Mr. Boyd each retained the law firm of Brown & Wood ["B&W"] as

> . . . special U.S. Federal income tax counsel to you in connection with certain investment transactions in which you have engaged ('Transactions'). In that capacity, you

---

[251]  Bates: 2003EY000878. See also a December 9, 1999 e-mail sent from Coplan to the "Quickstrike Team": "We are not comfortable treating the [J&G Fee and the B&W Fee] as section 162 expenses, but are exploring the potential for capitalizing them into the basis of the S corp assets, which would increase the size of the loss on the sale of the assets." Bates: 2003EY000868. See also Bates: 2003EY010648 (language repeated in e-mail dated 12/22/99).

See also the *E&Y COBRA Presentation* which would have treated the E&Y Fees and the J&G Fee as miscellaneous itemized deductions ("*Deduction for fees only available after application of 2% floor.*")  Bates: 2003EY001582 & 2003EY001583.

[252]  Bates: 0419 through 0531 (J&G) and 0532 through 0609 (B&W).

--- 56 ---

166

reasonably ascertainable from the information presented on or with those 1999 Returns, individually or collectively.[266]

154. In "Table 2: Derivation of Tax Bases Claimed by JBJZ in the Cisco Stock and the Canadian Currency," I took the tax bases that JBJZ assigned to:

(1) The 4,500 shares of Cisco Stock originally contributed by Mr. Zucker ($18,654,451),[267]

(2) The 500 shares of the Cisco Stock originally contributed by Mr. Boyd ($2,072,717),[268] and

(3) The Canadian Currency purchased by the Partnership four days before its termination and liquidation ($30,225,082),[269]

And worked backwards to determine how these amounts must have been derived.[270]

155. Essential information that was not disclosed on or ascertainable (or reasonably ascertainable) from the 1999 Returns (and that, therefore, had to first be identified as relevant, and then located or derived from other documents) includes:

- The fact that the tax bases that JBJZ claimed that the partners had in their Partnership interests had been determined, in part, by increasing

---

[266]   See Table 2, Columns A & B.

[267]   Bates: 1074.

[268]   Bates: 1074.

[269]   Bates: 1075.

[270]   See also the spreadsheet prepared by Amy Keating of E&Y dated March 8, 2000. Bates: 0288. As previously noted, I used the Cisco Stock values that she appears to have used in making her calculations (these amounts differ from the actual selling prices of the Cisco Stock by less than $25).

Ms. Keating calculated a total tax basis allocable to the Cisco Stock and the Canadian Currency of $48,802,250, as compared with the actual amount used on JBJZ's 1999 Form 1120S in computing the JBJZ Losses, $50,952,250. The $2,150,000 difference between these amounts is the amount of the E&Y Fees ($750,000) and the J&G Fee ($1,400,000) (the Coplan e-mail communicating the decision to capitalize the J&G Fee was dated March 13, 2000, five days after the date on this spreadsheet).

See also the description and sequencing of the various "steps" that were outlined in the E&Y COBRA Presentation, supra., footnote 1.

those bases by the amount of the premium "charged" for the Long Options and without regard to the premiums "credited" for the Short Options (and, therefore, without regard to the actual net cost of the Options);

- The fact that Transaction-related fees to E&Y that had been incurred, paid, and deducted by Mr. Zucker and Mr. Boyd, individually, had also been capitalized as unidentified components of the tax bases of the Partnership Interests (and, ultimately, as unidentified components of the JBJZ Losses).

- The fact that JBJZ had paid a Transaction-related fee to J&G, and that this fee had also been capitalized as an unidentified component of the tax bases of the Partnership Interests (and, ultimately, as an unidentified component of the JBJZ Losses).

156.  Table 2 is organized as follows:

- Column A identifies the items of information that were and that were not disclosed on the 1999 Returns.

- Column B (Rows 1 through 23) evaluates whether or not the effect of those items on the tax bases the partners claimed to have had in their respective Partnership interests was disclosed on any of the 1999 Returns or was otherwise ascertainable, or reasonably ascertainable, from the information provided on or with any of those Returns.

- Working backwards from the $50,952,250 aggregate tax basis that JBJZ assigned to the two lots of Cisco Stock and the Canadian Currency (Table 2, Column G, Row 24), Column G identifies the items and the amounts that appear to have been taken into consideration in computing the partners' aggregate tax basis in the Partnership Interests.

  o  In Columns C though F (Rows 1 through 20), the totals shown in Column G are broken out between JZ (Zucker) and JGB (Boyd).

--- 60 ---

- Columns C and E identify the items and amounts that were *excluded* from the determination of the tax bases.

- Columns D and F identify the items and amounts that were *included* in the determination of the tax bases.

- Columns H and I respectively show the effect of the item on the Partnership's income or loss, and on its cash flows.

- In Column G, Rows 20 through 23, the total tax basis in the Partnership Interests is first increased by the J&G Fee and then reduced by the amount allocated to the cash distributed by the Partnership to JBJZ in order to determine the residual amount that JBJZ allocated to the two lots of Cisco Stock and the Canadian Currency.

- Rows 24 through 27 allocate this residual tax basis amount between the two lots of Cisco Stock and the Canadian Currency, and compare the amounts so derived with the amounts actually show on JBJZ's 1999 Form 1120S. *The amounts shown in Column G, Rows 24 through 26 match the amounts reported on the Form 1120S to the dollar.*

David W. LaRue, Ph.D.

# Table 2

## Derivation of Tax Bases Claimed by JBJZ in the Cisco Stock and the Canadian Currency

| Date | Description | | Was this Item Disclosed On or Ascertainable (or Reasonably Ascertainable) From Disclosures on any of the 1999 Returns? (A) | Was the Effect of this Item on the Partners' Tax Basis in the Partnership Interests (or on JBJZ's Tax Basis in the Cisco Stock and the Canadian Currency) Disclosed On or Reasonably Ascertainable From Any of the 1999 Returns? (B) | JZ (Zucker) 90.0% Amounts Not Included (C) | JZ (Zucker) 90.0% Amounts Included (D) | JGB (Boyd) 10.0% Amounts Not Included (E) | JGB (Boyd) 10.0% Amounts Included (F) | Totals 100% Aggregate Tax Basis in Partnership Interests (G) | JZJB Partners Income & Loss (H) | JZJB Partners Cash Flows (I) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/07/1999 ("A/C 12/x/99") | Cash Contribution | 1 | No | No | | $900,000 | | $100,000 | $1,000,000 | | $1,000,000 |
| Date acquired by LLC partners 11/23/1999 Date transferred to the Partnership 12/07/1999 ("A/C 11/2x/99") | Options | Total Cash Cost of the Options 2 | No | No | $7,250,000 | $0 | $290,000 | $0 | $0 | | |
| | | Total Long Option Premium "Charged" 3 | Amounts Disclosed, Descriptions Ambiguous [Partnership Form 1065] | No | | $45,000,000 | | $5,000,000 | $50,000,000 | | |
| | | Total Short Option Premium "Credited" 4 | Amounts Disclosed, Descriptions Ambiguous [Partnership Form 1065] | No | ($42,750,000) | $0 | ($4,750,000) | $0 | $0 | | |
| 12/22/99 | Sale of Options | 5 | Yes [Partnership Form 1065] | Yes [Partnership Form 1065] | | $562,500 | | $62,500 | $625,000 | $625,000 | $3,125,000 |
| 12/22/99 | Contribution of Cisco Stock | Fair Market Value (approximate) 6 | No | No | | $476,775 | | $52,975 | $529,750 | | |
| | | Tax Basis 7 | No | No | $57,000 | | $34,505 | | | | |
| 12/10/99 | Purchase of Short-Term Investments by JBJZ Partners | Bank of NY Co. 8 | Yes [Partnership Form 1065] | Yes [Partnership Form 1065] | | | | | | | ($332,891) |
| 12/10/99 | | First Union Corp. 9 | | | | | | | | | ($323,891) |
| 12/14/99 | | Bank of America Corp. 10 | | | | | | | | | ($319,053) |
| 12/23/99 | | Gateway Fund 11 | | | | | | | | | ($400,000) |
| 12/17/99 | Sale of Short-Term Investments by JBJZ Partners | Bank of NY Co. 12 | Yes [Partnership Form 1065] | Yes [Partnership Form 1065] | | $21,561 | | $2,396 | $23,957 | $23,957 | $354,848 |
| 12/17/99 | | First Union Corp. 13 | | | | ($59,938) | | ($51,104) | ($11,042) | ($11,042) | $312,849 |
| 12/17/99 | | Bank of America Corp. 14 | | | | ($10,004) | | ($1,112) | ($11,116) | ($11,116) | $307,937 |
| 12/27/99 | | Gateway Fund 15 | | | | $455 | | $51 | $506 | $506 | $400,506 |
| 12/22-23/99 | Purchase of Canadian Dollars | 16 | No | No | | $0 | | $0 | $0 | $0 | ($772,500) |
| 12/28/99 | Tax Exempt Income (from "Tax Exempt Money Market") | 17 | Yes [Partnership Form 1065] | Yes [Partnership Form 1065] | | $603 | | $67 | $670 | $670 | $670 |
| | Claimed Increase in Basis for E&Y Fee Incurred, Paid, and Deducted Individually by Zucker and Boyd | 18 | No | No | | $675,000 | | $75,000 | $750,000 | $0 | $0 |
| | Claimed Tax Basis in the Partnership Interests | 19 | Yes [JBJZ Form 1120S] | No Disclosure of How This Amount Was Determined | $47,616,953 (90.000%) | | $5,290,773 (10.000%) | | $52,907,725 | | |
| 12/29/99 | Claimed (Retroactive) Increase in Partnership Interest Basis for J&G Fee Paid by JBJZ on December 29, 1999 | 20 | No | No | | $1,260,000 | | $140,000 | $1,400,000 | $0 | $0 |
| 12/28/99 ("A/C 12/27/99") | Cash Distributed by JBJZ Partners to JBJZ Investors | 21 | No | No | | | | | ($3,354,805) | | ($3,354,805) |
| 12/30/99 ("A/C 12/27/99") | Cash Distributed by JBJZ Partners to JBJZ Investors | 22 | No | No | | | | | ($670) | | ($670) |
| 12/29/99 (Canadian Currency --- 12/31/99 [Cisco Stock]) | Aggregate Tax Bases Claimed by JBJZ in the Cisco Stock and the Canadian Currency As of the Date of Sale | 23 | Amounts Disclosed [JBJZ Form 1120S] | No Disclosure of How This Amount Was Determined | | | | | $50,952,250 | | Cash flows net out to $0 |

| Allocation of Aggregate Tax Basis Between the Cisco Stock and the Canadian Currency | | Amount Used to Make Allocation Fair Market Value (A) | Amount Used to Make Allocation Cost & Approximate Fair Market Value (B) | Percentage of Total To Be Allocated (C/D) | Total Tax Basis To Be Allocated (E/F) | Allocated Tax Basis (G) | Proof/Reconciliation (H/I) |
|---|---|---|---|---|---|---|---|
| 4,500 Shares of Cisco Stock (Zucker): | 24 | $476,775 | | 36.61% | $50,952,250 | $18,654,451 | Exactly Matches Amount Reported on JBJZ's 1999 Form 1120S |
| 500 Shares of Cisco Stock (Boyd): | 25 | $52,975 | | 4.07% | $50,952,250 | $2,072,717 | Exactly Matches Amount Reported on JBJZ's 1999 Form 1120S |
| Canadian Currency: | 26 | | $772,500 | 59.33% | $50,952,250 | $30,225,082 | Exactly Matches Amount Reported on JBJZ's 1999 Form 1120S |
| Totals: | 27 | $1,302,250 | | 100.00% | $50,952,250 | $50,952,250 | |

--- 62 ---

170

David W. LaRue, Ph.D.

o  The $29,446,675 ordinary loss (shown in Column G) was computed
   by subtracting the "(F) COST OR OTHER BASIS PLUS IMPROV
   AND SALE EXPENSE" of $30,225,082 from "(D) GROSS SALES
   PRICE" of $778,407.

187. A "SHAREHOLDER SUMMARY" was attached to JBJZ's 1999 Form
     1120S.[328] This Shareholder Summary listed both of JBJZ's individual
     stockholders ("Jim Boyd" and "Jerry Zucker") and their respective
     "Beginning Shares" and "Ownership Percentage[s]."  No other information
     was provided on this Shareholder Summary.

188. A Schedule K-1 for each of JBJZ's two individual stockholders
     accompanied JBJZ's Form 1120S for 1999.  These Schedule K-1s
     disclosed:[329]

   • The stockholder's name, address, erroneous tax identification number,
     percentage of stock ownership in JBJZ, and the IRS Service Center
     where JBJZ's tax return was filed (Atlanta, GA).

     o  Mr. Zucker's Schedule K-1 misstated his "Shareholder's identifying
        number."  It showed "▮▮▮▮▮▮▮"[330] rather than the correct "▮▮▮
        ▮▮▮▮"[331]

     o  Mr. Boyd's Schedule K-1 misstated his "Shareholder's identifying
        number."  It showed "▮▮▮▮▮▮▮"[332] rather than the correct "▮▮▮
        ▮▮"[333]

   • The stockholders' proportionate shares of the $29,446,675 ordinary
     loss.

---

[328]  Bates: 1076.

[329]  Bates: 1077 through 1080.

[330]  Bates: 1079.

[331]  E.g., Bates: 1288 (the Zuckers' 1999 Form 1040).

[332]  Bates: 1077.

[333]  E.g., Bates: 2229 (the Boyds' 1999 Form 1040).

--- 83 ---

171

- The entire amount of JBJZ's $2,019,744 short-term capital loss was allocated to Mr. Boyd (Schedule K-1 (Boyd), Line 4(d)[334]), and none of that amount was allocated to Mr. Zucker (Schedule K-1 (Zucker), Line 4(d)[335]).

  - It is my understanding that such special allocations by an S corporation are not permissible.

- The entire amount of JBJZ's $18,177,695 long-term capital loss was allocated to Mr. Zucker (Schedule K-1 (Zucker), Line 4(e)(2))[336]), and none of that amount was allocated to Mr. Boyd (Schedule K-1 (Boyd), Line 4(e)(2)[337]).

  - It is my understanding that such special allocations by an S corporation are not permissible.

189. Also regarding the Zucker and Boyd Schedule K-1s filed with JBJZ's 1999 Form 1120S:

- The $1,400,000 J&G Fee that JBJZ paid to J&G on December 29 was not identified, described, or otherwise disclosed or separately deducted on either of the stockholders' Schedule K-1s.

- Line 23 ("Supplemental information required to be reported separately to each partner") was left blank on each of the Schedule K-1s. Line 23 is used, among other things, to provide adequate disclosure of the relevant facts relating to the tax treatment of any item that may cause an understatement of income tax.[338]

---

[334]  Bates: 1077.

[335]  Bates: 1079.

[336]  Bates: 1079.

[337]  Bates: 1077.

[338]  See 1999 *Instructions for Form 1120S* (p. 22-23), and 1999 *Instructions for Schedule K-1 (Form 1120S)* (p. 8).

- Did not provide any description, explanation, or calculation showing or indicating how Mr. Zucker's and Mr. Boyd's tax bases in the Partnership Interests had been determined.

- Did not provide any description, explanation, or calculation showing how JBJZ determined its tax bases in the Cisco Stock or the Canadian Currency.

- In my opinion, it would be reasonable to conclude that the risk of detection and audit by the IRS would have increased significantly if this information had been disclosed on JBJZ's 1999 Form 1120S.

192. JBJZ's 1999 Form 1120S (including all accompanying forms, schedules, statements, and attachments) did not contain any references to the tax identification number of the Partnership, or to the name or tax identification number of either of the single-member LLCs (JGB and JZ) that the Partnership had identified as its partners on the Schedule K-1s it filed with its 1999 Form 1065.

### 2. Opinion

193. In my opinion, the information and disclosures made on the JBJZ 1999 Form 1120S (including all accompanying forms, schedules, statements, and attachments), individually and collectively, failed to provide any reasonably discernable indication:

- That the Cisco Stock, prior to its contribution to the Partnership and its distribution by the Partnership to JBJZ on or about December 27, had been owned by JBJZ's stockholders, Mr. Zucker and Mr. Boyd (or that the Cisco Stock had previously been transferred to JBJZ on December 7 (albeit "erroneously") and held by JBJZ from that date through December 22, when that stock was transferred by JBJZ to the Partnership);[345]

---

[345]   See ¶110 & ¶113.

- That the tax bases claimed by JZ (Zucker) and by JGB (Boyd) in their respective Partnership interests (and then by JBJZ in those Partnership Interests, and then by JBJZ in the Cisco Stock and the Canadian Currency that it received upon the termination and liquidation of the Partnership) resulted from:

  o The acquisition of the Options by the LLC-partners, the subsequent contribution of those Options by those partners to the Partnership, and the claimed increase in the tax bases of the Partnership Interests by the amount of the premiums "charged" for the Long Options (and without regard to either the amount of the premiums "credited" for the offsetting Short Options or the actual net cash costs of the Options), and from

  o A "step-up" to fair market value of the tax bases in the Cisco Stock contributed by Mr. Zucker and Mr. Boyd, and from

  o The capitalization of the $750,000 E&Y Fees incurred, paid, and deducted by Mr. Zucker and Mr. Boyd, individually, and from

  o The capitalization of the $1,400,000 J&G Fee that was subsequently paid by JBJZ.

- That in addition to the $750,000 fee paid by Mr. Zucker and Mr. Boyd to E&Y for "tax advice . . . concerning the implementation of the COBRA strategy," legal fees of $1,400,000 had been assumed and paid by JBJZ to J&G in connection with the interrelated series of transactions that ultimately generated the JBJZ Losses recognized and reported by JBJZ on its Schedule K and on the Schedule K-1s of its stockholders (and on the Taxpayers' respective 1999 Form 1040s).

- In my opinion, it would be reasonable to conclude that the risk of detection and audit by the IRS would have increased significantly if JBJZ's 1999 Form 1120S had disclosed this information.

--- 89 ---

174

the sale of the Cisco Stock (and therefore the detailed descriptions, explanations, and calculations of the JBJZ STCL and the JBJZ LTCL) from the Taxpayers' respective 1999 Form 1040s in order to reduce the possibility of detection and audit by the IRS.

### C. Individual Form 1040s of JBJZ Stockholders (Zucker[348] and Boyd[349]) [The "1999 Form 1040s"]

#### 1. Tax Return Preparation

198. The Zuckers' 1999 Form 1040 was signed by Barry A. Emerson, CPA, LLC as preparer.[350]

199. The Boyds' 1999 Form 1040 was signed by Shelia Pace of Thiem, Jackson & Pace, CPA's [sic], P.A.[351]

#### 2. E&Y Fees

200. Mr. Zucker disclosed and deducted the $675,000 he paid to E&Y on Line 22 of Schedule A (other miscellaneous expenses).[352]

- Line 22 referred to "Statement 9," which disclosed a fee paid to "ERNST & YOUNG, LLP" in the amount of $675,000.[353]

- The fact that this fee had been incurred and paid for tax advice, generally, or, more specifically, for "tax advice . . . concerning the implementation of the COBRA strategy," was not disclosed or otherwise alluded to on the Zuckers' 1999 Form 1040.

201. Mr. Boyd disclosed and deducted the $75,000 he paid to E&Y on Line 22 of Schedule A (other miscellaneous expenses).[354]

---

[348]    Bates: 1288 through 1370.
[349]    Bates: 2229 through 2274.
[350]    Bates: 1295.
[351]    Bates: 2237.
[352]    Bates: 1296.
[353]    Bates: 1335.
[354]    Bates: 2238.

- Line 22 referred to "Stmt 7," and Statement 7 disclosed "ACCOUNTING FEES" totaling $78,015 (together with (apparently unrelated) "LEGAL FEES (TAX PLANNING)" of $1,898).[355]

- The fact that this fee had been incurred and paid for tax advice, generally, or, more specifically, for "tax advice . . . concerning the implementation of the COBRA strategy," was not disclosed or otherwise alluded to on the Boyd's 1999 Form 1040.

202. As noted above, these respective amounts incurred and paid to E&Y by Mr. Zucker and Mr. Boyd were also deducted a second time on their respective 1999 Form 1040s as unidentified components of the JBJZ Ordinary Loss and the JBJZ Capital Losses allocated to and between them by JBJZ.

### 3.   Legal Fees paid by JBJZ to J&G

203. None of the $1,400,000 J&G Fee that was paid by JBJZ and allocable to and between its stockholders was identified or otherwise separately disclosed by either Mr. Zucker or Mr. Boyd on their respective Schedule As ("Itemized Deductions") of their individual 1999 Form 1040s.

204. None of the $1,400,000 J&G Fee that was paid by JBJZ and allocable to and between its stockholders was described or separately identified anywhere on their respective 1999 Form 1040s, or on any of the accompanying forms, schedules, statements, or attachments.

205. As noted above, Mr. Zucker and Mr. Boyd deducted their respective shares of the J&G Fee on their respective 1999 Form 1040s as unidentified components of the JBJZ Ordinary Loss and the JBJZ Capital Losses allocated to and between them by JBJZ.

### 4.   Ordinary Income from the Partnership

206. On their respective 1999 Form 1040s, Mr. Zucker and Mr. Boyd, as owners of the Partnership's single-member LLC-partners, reported their distributive

---

[355]   Bates: 2667.