**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**NO. 05-231 T**
**(Chief Judge Damich)**

---

**JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,**

**Plaintiff,**

**v.**

**United States of America,**

**Defendant.**

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT A COUNTERCLAIM FOR PENALTIES**

JOEL N. CROUCH
M. TODD WELTY
TARA C. DePOMPEI
Meadows, Collier, Reed,
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
twelty@meadowscollier.com
tdepompei@meadowscollier.com

# TABLE OF CONTENTS


I. Statement of Facts ..... 2

A. Background. ..... 2

B. The Allegedly "Recently Discovered Documents". ..... 4

C. The Allegedly "False and Fraudulent Statements" ..... 9

II. Argument: Leave To Amend A Pleading Should Be Denied Where Undue Delay, Bad Faith, Prejudice To The Opposing Party Or Futility Is Present ..... 10

A. Defendant Has Not Met Its Burden of Showing that Its Delay in Amending Its Answer Is Justified and Its Motion Should Therefore Be Denied. ..... 12

B. Defendant's Motion Was Filed for Improper Purposes and Should Therefore Be Denied. ..... 14

C. Leave to File a Counterclaim Would Result in Serious Prejudice to Plaintiff and Should Therefore Be Denied. ..... 16

D. Leave to File a Counterclaim Should Be Denied Because a Counterclaim Would Be Futile. ..... 18

III. Conclusion ..... 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed. Cl. 122, 132 (1996) .......................... 13

*E*Trade Financial Corp. v. Deutsche Bank, AG*, 420 F. Supp. 2d 273, 283 (S.D.N.Y. 2006) .......................... 18

*Ellis v. Chao*, 336 F.3d 114, 126 (2d Cir. 2003) .......................... 18

*Foman v. Davis*, 371 U.S.178, 182 (1962) .......................... 11, 18

*GSS Properties, Inc. v. Kendale Shopping Center*, 119 F.R.D. 379, 381 (M.D.N.C. 1988) .......................... 14, 15

*Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989) .......................... 10, 11

*Principal Life Ins. Co. v. United States*, 75 Fed. Cl. 32, 33 (2007) .......................... 10, 16, 19

*Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1262 (Fed. Cir. 1991) .......................... 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) .......................... 11

**Federal Statutes**

Section 6662 of the Internal Revenue Code of 1986 (as amended) .......................... 1, 2

**Federal Rules**

Federal Rule of Civil Procedure 15(a) .......................... 10

**Other Authorities**

Announcement 2002-2 .......................... passim

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**NO. 05-231 T**
**(Chief Judge Damich)**

---

**JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,**

**Plaintiff,**

**v.**

**United States of America,**

**Defendant.**

---

**APPENDIX**

| Exhibit | Description | Page |
|---|---|---|
| 1 | Deposition of Jerry Zucker | App. 1-107 |
| 2 | Deposition of James Boyd | App. 108-155 |
| 3 | Announcement 2002-2 Disclosure Statements | App. 156-163 |
| 4 | IDR Nos. 1 and 2 | App. 164-166 |
| 5 | Letter from Ernst &Young to IRS Enclosing Responses to IDR Nos. 1 and 2 | App. 167 |
| 6 | IDR No. 3 | App. 168-170 |
| 7 | Response to IDR No. 3 | App. 171-176 |
| 8 | IDR No. 4 | App. 177 |
| 9 | Response to IDR No. 4 | App. 178-180 |
| 10 | Letters to Jenkens & Gilchrist and Brown & Wood Authorizing Cooperation with the Internal Revenue Service | App. 181-184 |
| 11 | Forms 872 | App. 185-187 |
| 12 | Letters from Joel N. Crouch to Alan Moss, Internal Revenue Service | App. 188-189 |
| 13 | FPAA Dated December 9, 2004 | App. 190-200 |
| 14 | Penalties Lead Sheet to JBJZ Partners | App. 201-207 |
| 15 | Penalties Lead Sheet to James Boyd | App. 208 |
| 16 | Letter Enclosing Rule 26 Disclosures | App. 209 |
| 17 | Excerpt of Deposition of Charlotte Crosby | App. 210-213 |
| 18 | Letter from Donna Guerin to Jerry Zucker | App. 214-223 |
| 19 | Excerpt of Deposition of Barry Emerson | App. 224-225 |
| 20 | Excerpt of Deposition of Amy Keating | App. 226-229 |
| 21 | Excerpt of Deposition of Sheila Pace | App. 230-233 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**NO. 05-231 T**
**(Chief Judge Damich)**

---

**JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,**

**Plaintiff,**

**v.**

**United States of America,**

**Defendant.**

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT A COUNTERCLAIM FOR PENALTIES**

In what appears to be an unprecedented attempt to renege on an agreement pursuant to IRS Announcement 2002-2 to waive all claims for accuracy-related penalties under Section 6662 of the Internal Revenue Code of 1986, as amended[1], and to punish Plaintiff for invoking its right to challenge the IRS, the Defendant has moved for leave to file a Second Amended Answer in order to assert a Counterclaim against Plaintiff for penalties under Section 6662(a)-(e). In support of its motion, Defendant has filed 233 pages of material, the purpose of which is clearly to poison this litigation with unproven allegations that are contained in the criminal indictment of four Ernst & Young ("E&Y") employees and are irrelevant here. The propriety of citing mere allegations in a criminal indictment as facts in a civil case is dubious enough; to do so for the

[1] All section references are to the Internal Revenue Code of 1986, as amended, unless noted otherwise.

evident purpose of suggesting that the parties-in-interest in the civil case are unindicted co-conspirators in the criminal case is nothing short of outrageous.

When the highly prejudicial and irrelevant matter that is contained in, or based on, the allegations in the indictment is stripped from Defendant's filing, all that is left of its 233-page mountain is a molehill of five documents and half of one sentence in the Announcement 2002-2 disclosure statements of Plaintiff's partners, which Defendant mischaracterizes as "recently discovered evidence." Def.'s Br. at 1; *see also id*. at 2, 5, 9, 11, 13, and 15. In fact, this "recently discovered evidence" consists of unannotated fax cover sheets; information that was produced in similar form at least two, and in some cases nearly five years ago; and several innocuous handwritten notes concerning ministerial matters. On this flimsy foundation and at this late date in the litigation, Defendant now seeks this Court's approval to renege on its Announcement 2002-2 agreement with Plaintiff to waive accuracy-related penalties and to inject a whole new set of legal and factual issues into the proceedings. The Court should reject such gamesmanship by denying Defendant's Motion.

## I.

## STATEMENT OF FACTS

### A. Background.

Plaintiff's partners, Jerry Zucker and James Boyd, timely filed personal and business tax returns for 1999, which included the transaction at issue in this case. When the IRS announced its disclosure initiative in Announcement 2002-2, Mr. Zucker and Mr. Boyd chose to notify the IRS of their investment in the COBRA transaction and asked their tax advisors, E&Y, to prepare an Announcement 2002-2 statement disclosing the transaction. Ex. 1, Zucker Dep. (July 19, 2007) at 148; Ex. 2, Boyd Dep. at 178. In addition, Mr. Boyd and Mr. Zucker instructed E&Y to cooperate fully in providing the IRS with all information and materials in connection with the

Announcement 2002-2 disclosure process. Ex. 1, Zucker Dep. at 155-160; Ex. 2, Boyd Dep. at 178. As Mr. Zucker and Mr. Boyd requested, E&Y prepared disclosure statements and on April 17 and 20, 2002, respectively, Mr. Boyd and Mr. Zucker sent the disclosure statements to the IRS. Ex. 3.

On April 30, 2002, the IRS sent several requests for documents pursuant to the terms of the IRS's penalty waiver initiative and Mr. Zucker's and Mr. Boyd's Announcement 2002-2 disclosure statements. Ex. 4, IDRs #1 and #2. Mr. Zucker and Mr. Boyd forwarded these requests to E&Y, which produced materials responsive to those IDRs on May 30, 2002. Ex. 5, E&Y letter to IRS of May 30, 2002. On September 19, 2002, the IRS requested additional information and records. Ex. 6, IDR #3. Again, Mr. Zucker and Mr. Boyd forwarded these requests to E&Y and on November 19, 2002, E&Y responded on their behalf, producing information and documents responsive to IDR #3. Ex. 7. On March 25, 2003, the IRS requested additional information and documents in IDR #4. Ex. 8. E&Y responded on behalf of the Plaintiff on April 23, 2003. Ex. 9. Subsequently, Mr. Zucker and Mr. Boyd instructed the law firms of Jenkens & Gilchrist ("J&G") and Brown & Wood to fully cooperate with the IRS and produce to the IRS all records related to the transaction at issue. Ex. 10. In addition, on at least three occasions, Mr. Zucker and Mr. Boyd agreed to extend the statute of limitations to allow the IRS additional time to examine the tax returns and transactions and to ask for additional records. Ex. 11.

On October 22, 2004, Plaintiff's counsel, Joel N. Crouch, wrote to IRS Agent Alan Moss to confirm that the information required by Announcement 2002-2 had been provided to the IRS. Ex. 12. In a telephone conversation with Mr. Crouch on November 2, 2004, Agent Moss confirmed that the "T/P made disclosure & furnished records." *Id.*

On December 9, 2004, the IRS sent a Final Partnership Administrative Adjustment ("FPAA") to Mr. Zucker, the sole member of JZ Buckingham Investments, LLC, Plaintiff's tax matters partner, in connection with JBJZ Partners' 1999 Form 1065. Ex. 13. The IRS did not assert penalties in the FPAA because Plaintiff's partners had "made disclosure under the provisions of Announcement 2002-2." JBJZ Partners' Penalties Lead Sheet, Ex. 14; *see also* Boyd Penalties Lead Sheet, Ex. 15 (penalties "N/A—Tp made adequate disclosure under provisions of Announcement 2002-2 and submitted all records requested"). On February 18, 2005, Plaintiff filed this suit for readjustment of the items adjusted by the IRS in its FPAA and discovery ensued. On August 31, 2005, Plaintiff made its Rule 26 disclosures. Ex. 16.

On the night of July 17, 2007, more than two and one-half years after this case was initially filed and with less than two months remaining before the discovery deadline, Defendant attempted to file its motion to amend to assert penalties for the first time. Further, this left only one full business day before the deposition to preserve the testimony of Jerry Zucker.

**B. The Allegedly "Recently Discovered Documents".**

Despite the volume of its filing, Defendant neglects to include many of the documents that would allow this Court to assess the accuracy of its "Statement of Facts" and its claim of "recently discovery evidence." In the Appendix to its Motion, for example, Defendant describes Appendix A as a "summary list of IRS information document requests and taxpayer responses." Defendant's Appendix A lists four categories of requests by the IRS pursuant to its Announcement 2002-2 agreement and the responses of Plaintiff's partners, identified by exhibit numbers. In the Appendix to its Motion, however, Defendant produces only one of the seven exhibits listed in its Appendix A, thus making it impossible for this Court to see what documents the IRS asked for in all but the first requests (Govt.'s Ex. 171), what E&Y produced on behalf of

the partners in response to those requests, and whether the five documents Defendant finally identifies at pages 5 to 7 of its brief as having been improperly withheld until "recently" are even responsive to the IRS's requests. Nothing in any of the Defendant's IDRs suggests that unannotated fax cover sheets or handwritten ministerial notes would be responsive. *See* IDRs #1-4, Exs. 4-9.

Similarly, in the Appendix to its Motion, Defendant describes Appendix B as a "summary list of material documents withheld by the taxpayers from the IRS in violation of the taxpayer's agreement according to Announcement 2002-2." Defendant's Appendix B lists twelve documents, only five of which are actually produced in the Appendix. Those five documents turn out to be the same ones Defendant identifies as the "recently discovered evidence" that purportedly justifies its reneging on its Announcement 2002-2 agreement with Plaintiff and filing a counterclaim for penalties. As for the other seven documents listed in Defendant's Appendix B, there is no indication of when, why and under what circumstances they were produced; whether other copies of the same documents had been produced previously; and why they are relevant, much less material or "highly-revealing." Def.'s Br. at 5.

The "recently discovered evidence" consists of Government's Exhibits 1104, 1029A, 2252, 2257, and 2260. *Id*. at 5-7. Incredibly, Government's Exhibits 1104 and 1029A both indicate on their face that they were produced by Plaintiff on August 31, 2005, the date on which Plaintiff made its Rule 26 disclosures.[2] Ex. 16. Government's Exhibit 1104 consists of a one-page cover memorandum from Ray Knight of E&Y to Jerry Zucker bearing Mr. Zucker's handwritten note asking Jim Boyd to "review and approve or comment," and unexecuted copies

[2] In his Declaration, David Steiner, who is "a trial attorney at the United States Department of Justice and . . . one of the attorneys responsible for defending the interests of the United States in this matter," Steiner Decl., at 1, and who signed his Declaration under penalty of perjury, incorrectly states in paragraphs 10 and 11 that Exhibits 1104 and 1029A were produced "in response to the United States' discovery requests." No doubt Mr. Steiner would agree that everyone makes mistakes, and that not every mistake constitutes deceit, conspiracy or perjury.

of the November 15 modified E&Y engagement letters to Mr. Zucker and Mr. Boyd. An identical copy of the modified engagement letter to Mr. Boyd was produced to the IRS on November 19, 2002 – nearly five years ago. Moreover, most of the information in the cover memorandum and the handwritten note are also in the engagement letter and are sufficient, with a simple mathematical computation, to determine all of the rest of the information in the cover memorandum except that the cash contribution would not be at risk. In short, Defendant has had Government's Exhibit 1104 in its possession for two years and has had all but one of the facts contained in the cover memo available to it since November 2002.

Government's Exhibit 1029A is an executed, but otherwise identical copy of the November 15, 1999, modified E&Y engagement letter to Zucker in Government's Exhibit 1104, which was produced in Plaintiff's Rule 26 disclosures. If an executed copy of the letter was not produced by E&Y during the Announcement 2002-2 disclosure process, the time for Defendant to have complained of the omission was during that process. That Defendant did not do so is evidence of how unimportant the omission was. *See* Exs. 12,14, 15.

The other three "recently discovered" documents were located in files maintained by Charlotte Crosby, the taxpayers' personal assistant, during her deposition. Ms. Crosby believed that everything in her files had been produced, and as her deposition testimony indicates, she does not know why the three documents in question had not been produced. Ex. 17, Crosby Dep. at 16, 21, 22, 25 and 53. Every attorney knows that such oversights can and do occur as a result of human error in the course of copying and producing large numbers of documents, and that such errors do not constitute "deceit." Moreover, an examination of the production history of these three documents and the information contained therein demonstrates the absurdity of Defendant's overblown rhetoric and reckless allegations.

Government's Exhibit 2252 is a four-page document dated November 22, 1999, consisting of two copies of a fax cover sheet and a memorandum from Ray Knight of E&Y to Mr. Zucker and Mr. Boyd setting out in chart form the equity contribution and fee structure for the transaction at issue. The information in the chart is identical to that contained in a memorandum dated November 15, 1999, from Mr. Knight to Mr. Zucker, except for the timing of the contributions and fees in the November 22 memo. The November 15 memorandum is itself the first page of Government's Exhibit 1104 – another of the five documents that Defendant alleges contain "recently discovered evidence" – which states on its face that it was "[p]roduced by Plaintiff to United States on 8/31/2005" – nearly two years ago.

As noted above, moreover, Defendant's Appendix A indicates that a copy of the November 15 engagement letter to Mr. Boyd was produced by E&Y on November 19, 2002 – nearly five years ago. The information contained in the November 15 engagement letter is sufficient, with a simple mathematical computation, to extract what Defendant considers the most damning information in the November 15 memorandum. Thus, Defendant has had the "recently discovered evidence" contained in Government's Exhibit 2252 since at least August 2005, if not since November 2002. Only the unannotated fax cover sheets in Government's Exhibit 2252 are new to Defendant.

Government's Exhibit 2257, a four-page fax and a cover sheet, consists of a memorandum from Jerry Zucker to Ray Knight at E&Y, attaching a provisionally-executed copy of a November 11, 1999, E&Y engagement letter. The letter bears Mr. Zucker's handwritten notes asking for clarification of the second paragraph, noting the maximum amount of fees and contributions involved in the transaction and specifying how the expected loss is to be allocated between the partners. The memorandum attached to the engagement letter sets out in letter form

the issues raised in the handwritten notes on the engagement letter. What Defendant does not mention in its brief, and the Court might not discover for itself because Defendant did not produce Government's Exhibit 174A in its Appendix, is that an unexecuted copy of the November 11 engagement letter was produced by E&Y on behalf of Zucker on November 19, 2002 – nearly five years ago. *See* Def.'s App. B. Absent a copy of Government's Exhibit 174A, it cannot be determined whether the Zucker memorandum was attached to the engagement letter in the 2002 E&Y production to the IRS. What is clear, however, is that the "recently discovered" information contained in the handwritten notes and memorandum is apparent in the engagement letter itself, especially in light of the information regarding the structure of the transaction contained in the first page of Government's Exhibit 1104, which was produced in August 2005.

Government's Exhibit 2260 consists of a cover letter dated December 14, 1999, from J&G to Jerry Zucker and 12 pages of corporate documents for his execution. Both the cover letter and the documents were produced to Defendant on August 31, 2005. *See* Ex. 18. The only "recently discovered evidence" in Government's Exhibit 2260 is Zucker's handwritten note on the cover page: "done / returned to J&G via overnight."

Thus, it is clear that there is no "recently discovered evidence" in these five documents. Defendant has had all of these documents or the information contained therein for a minimum of two years. There are no "material" facts in fax cover sheets and ministerial notes. It is equally clear, despite Defendant's sound and fury, that there was no intent by Plaintiff to withhold any of these documents or the information they contain. The failure to produce Government's Exhibits 2252, 2257 and 2260 was clearly an innocent oversight and not part of a conspiracy to deceive Defendant. Moreover, if Plaintiff had intended to withhold Government's Exhibits 1104 and

1029A as part of such a conspiracy, it would hardly have produced them in its Rule 26 disclosures. Finally, the "missing" documents all involve correspondence with E&Y or J&G and were presumably in the files of E&Y, upon whom Plaintiff relied to produce all documents responsive to Defendant's requests pursuant to Plaintiff's instruction.

**C. The Allegedly "False and Fraudulent Statements".**

The only allegedly "false and fraudulent" statement by Plaintiff that Defendant identifies is the following assertion in the partners' Announcement 2002-2 disclosures that were prepared for them by E&Y: ". . . we wish to reiterate that the transaction was properly reported on the partnership's return, the S Corporation's return and our individual Form 1040." E&Y advised Plaintiff's partners that the disclosure was accurate; the partners believed when they signed their disclosure statements, and continue to believe to this day, that their statements are accurate. *See* Ex. 1 at 149-151; Ex. 2 at 178-180; *see also* Ex. 10. Relying entirely on irrelevant allegations contained in the indictment of unrelated E&Y personnel and the opinions of one of its expert witnesses, David LaRue, Defendant asserts that the statement it cites is false and fraudulent because of "material errors and omissions[,] . . . all or most of [which] were deliberatively [*sic*] designed to conceal the true nature of the COBRA transaction. . . ." Def.'s Br. at 8.

According to Defendant, the "false and fraudulent" nature of Plaintiff's partners' statement constitutes "newly discovered evidence" because Defendant's expert witness "only recently" discovered these errors and omissions. *See id*. at 9, 11. Where LaRue discovered these errors and omissions, of course, is in the tax returns that were filed in 1999. Defendant lists a series of alleged errors in the returns, apparently based on LaRue's opinions, although it is difficult to determine since Defendant fails to cite specific authority for many of the specific "facts" it recites. In any event, it is clear that these "errors and omissions" are merely

Defendant's view of the merits of the substantive issues in this case. It appears to be Defendant's belief that to disagree with its view of the transaction and how it should have been reported constitutes fraud.

The silliness of Defendant's allegation of "newly discovered evidence" and of a "false and fraudulent statement" is apparent in the last errors it identifies, which it asserts are "equally important" as those involving how various items were reported in the partners' tax returns. *Id*. at 10. For instance, Defendant points out that the 1999 Form 1120S reflects erroneous social security numbers for the partners -- two digits are reversed in Mr. Zucker's social security number and one digit is missing in Mr. Boyd's. Defendant, however, is undeterred by and disregards deposition testimony by the preparers of the tax returns that these were their errors, not Mr. Boyd's or Mr. Zucker's, and that they were unintentional. Ex. 19, Emerson Dep. at 22-23, 58-59; Ex. 20, Keating Dep. at 154-161, 174-181; Ex. 21, Pace Dep. at 34-37, 78-85, 94-97. For Defendant, the coincidence of such errors occurring twice in the same case is evidence of bad faith, fraud and conspiracy, regardless of the evidence to the contrary.

## II.

## ARGUMENT: LEAVE TO AMEND A PLEADING SHOULD BE DENIED WHERE UNDUE DELAY, BAD FAITH, PREJUDICE TO THE OPPOSING PARTY OR FUTILITY IS PRESENT

Under Rule 15(a) of the Rules of the Court of Federal Claims, whether to grant or deny a motion for leave to amend a pleading is within the discretion of the court. Principal Life Ins. Co. v. United States, 75 Fed. Cl. 32, 33 (2007), *citing* Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403 (Fed. Cir. 1989).[3] Although leave to amend a pleading under Rule 15(a) should be "freely given when justice so requires, that permission is not automatic and may be

[3] "RCFC 15(a) is identical to Federal Rule of Civil Procedure 15(a) and case law construing the latter may be used to interpret the former." Principal Life, 75 Fed. Cl. at 33, n.1.

denied" when certain factors are present. Id., *citing* Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); Foman v. Davis, 371 U.S.178, 182 (1962). "[U]ndue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" are among the factors that justify denying a motion for leave to amend. Foman, 371 U.S. at 182.

All of these factors are present in this litigation. Defendant has waited until discovery is in its last days to attempt to assert a counterclaim for penalties, justifying its delay with the assertion that it has "newly discovered evidence that Zucker and Boyd materially breached their [Announcement 2002-2] agreements." Def.'s Br. at 13. As demonstrated in the foregoing Statement of Facts, however, there is no such evidence. Defendant has possessed virtually all of the material information it points to for five years. Filing a motion that rests on such a baseless claim is itself evidence of bad faith, and the conduct of Defendant's counsel in the course of this litigation adds to the odor.

From the outset of litigation, for example, Defendant's counsel has refused to acknowledge that Plaintiff complied with the requirements of IRS Announcement 2002-2 despite the IRS's internal documentation of Plaintiff's compliance. Defendant's counsel has periodically stated that they had not reconciled themselves to the lack of penalties in the FPAA; nevertheless, they waited until this late stage of the litigation to assert a claim for penalties. This conduct suggests that the purpose of Defendant's motion is to punish Plaintiff for having disclosed the transaction at issue pursuant to Announcement 2002-2 and then having the temerity to exercise its right to challenge Defendant's FPAA in court. A motion filed for such a purpose is clearly improper.

Moreover, granting Defendant's motion would unduly prejudice Plaintiff. From the outset, Plaintiff had prepared its case on the assumption that only the issues relevant to the propriety of the underlying transaction would be tried. Defendant's counterclaim for penalties would, if permitted to proceed, require a new wave of discovery and motions and add significantly to the length and complexity of the trial. Plaintiff was entitled to know that Defendant would attempt to renege on the Announcement 2002-2 agreement and to bring a counterclaim for penalties before it committed its resources and determined its strategy in this litigation, which it is now too late to change.

Finally, a counterclaim for penalties may well turn out to be futile. If Plaintiff were to succeed on a motion for declaratory judgment as to the enforceability of its Announcement 2002-2 agreement, given that Plaintiff has fully performed its obligations under the agreement and has relied on receiving the benefit of its bargain from the outset of this litigation, Defendant's counterclaim could not survive a motion for summary judgment. In the meantime, of course, Plaintiff and this Court will have expended a great deal of time, energy, and in Plaintiff's case, money in preparing to try the counterclaim. The presence of these four factors requires that Defendant's motion be denied.

**A. Defendant Has Not Met Its Burden of Showing that Its Delay in Amending Its Answer Is Justified and Its Motion Should Therefore Be Denied.**

"[C]ourts have not hesitated to deny motions to amend that have been filed after a significant delay." Alfa Laval, 47 Fed. Cl. at 312-13; *see also* Te-Moak Bands of W. Shoshone Indians of Nev. v. United States, 948 F.2d 1258, 1262 (Fed. Cir. 1991) (delay alone sufficient to deny motion to amend). Moreover, "the Federal Circuit has adopted the rule that a party seeking to amend . . . after significant delays bears the burden of justifying the delay." Alfa Laval, 47 Fed. Cl. at 313, *citing* Cupey Bajo Nursing Home, Inc. v. United States, 36

Fed.Cl. 122, 132 (1996). In the present case, Plaintiff filed suit on February 18, 2005. After seeking an enlargement of time within which to answer, Defendant filed its answer on June 20, 2005. In compliance with an order of this Court, Defendant filed an amended answer on December 23, 2005. Thus, it has been over two years since Defendant's original answer and 17 months since its amended answer were filed.

Defendant never directly addresses the issue of undue delay; rather, it simply asserts that there has been no delay at all because it only discovered on July 14, 2007, that Plaintiff's partners had "materially breached their [Announcement 2002-2] agreements." Def.'s Br. at 13. As demonstrated above, however, this allegation is false with respect to the five documents purportedly "withheld." Two of the documents, Government's Exhibits 1104 and 1029A, were produced to Defendant on August 31, 2005, in Plaintiff's Rule 26 production. The material parts of the other three documents, Government's Exhibits 2252, 2257 and 2260, including memoranda and drafts of E&Y engagement letters, had either been produced in the partners' Announcement 2002-2 disclosures and/or in the August 2005 Rule 26 production. Some of those documents have been repeatedly produced. There is no material evidence in any of the documents complained of that was not available to Defendant by August 31, 2005, at the latest. Finally, Defendant's conclusory allegation that Plaintiff's partners made a "false and fraudulent statement" in their Announcement 2002-2 statements is not only untrue; it is also absurd, as demonstrated above.

Since Defendant's assertion that there has been no delay is false and it offers no other justification for attempting to add a counterclaim within weeks of the cut-off date for fact and expert discovery, Defendant has failed to meet its burden on this issue. It is significant, however, that delay has been characteristic of Defendant's conduct in this litigation. It took

four months for Defendant to file its original Answer; it took a court order and another six months for Defendant to file its Amended Answer. It is also significant that two of the five "newly-discovered" documents were produced four months before Defendant filed its court ordered amended answer. Most significant, however, is the fact that the Defendant had virtually all the evidence it now relies on to justify its belated attempt to assert a counterclaim from the commencement of this litigation nearly five years ago. That is reason enough to deny Defendant's Motion.

**B. Defendant's Motion Was Filed for Improper Purposes and Should Therefore Be Denied.**

The "facts" recited in Defendant's Statement of Facts are largely a mélange of irrelevant allegations drawn from a criminal indictment of persons who played no role in the facts of this case, and the opinions of one of Defendant's expert witness. The purpose of this recital is obviously to prejudice Plaintiff's case by the repeated suggestion that Plaintiff's partners colluded with the subjects of the indictment, all of whom are unknown to the partners, and that they are unindicted co-conspirators of the subjects of the indictment. The only "facts" in the recital that are even relevant to this case consist of a tale of five "withheld" documents — and unwarranted inferences (also reported as "facts") drawn from those documents. Equally improper in this recital is the omission of *actual* facts about those documents that demonstrate that Defendant's basic premise – that the documents were deliberately withheld and contain "newly discovered" and "material" evidence" – is false. The conclusion that the motion for leave to amend was filed in bad faith is difficult escape.

In GSS Properties, Inc. v. Kendale Shopping Center, 119 F.R.D. 379, 381 (M.D.N.C. 1988), in a jurisdiction that does not recognize delay in seeking to amend a pleading as sufficient in itself to deny the motion, the court nevertheless found that the plaintiff's

relatively minor delay in seeking to amend its complaint to add a claim for fraud was an important factor in determining that plaintiff had filed the motion in bad faith. The court therefore denied the motion. *Id*. In that case, plaintiff filed its motion to assert a fraud claim three months after the complaint was filed and three months before the end of discovery. The court denied the motion because plaintiff knew the facts underlying the fraud claim before he filed the complaint, failed to mention the possibility of a claim for fraud in an initial pretrial conference, and filed the motion to amend either to force a settlement or to punish the defendant for failing to settle. *Id*. These facts bear a significant similarity to those in the present case.

For example, as set out previously in detail, it is clear that Defendant had virtually all of the "newly-discovered evidence" prior to the commencement of this suit, prior to Defendant's first answer, and prior to its amended answer. Further, Defendant has litigated this case before this Court for two-and-a-half years and never suggested that it had a claim for penalties. Defendant's counsel has evidently been displeased that the FPAA included no claim for penalties from the outset of this litigation. Together with Defendant's filing this motion with flimsy to non-existent evidentiary support within weeks of the close of fact and witness testimony, these facts are powerful evidence that the motion was filed for the purpose of punishing Plaintiff for challenging the IRS. Citing 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1488 at 444 (1971), the court in GSS Properties defines "bad faith amendments" as "those which may be abusive or made in order to secure some ulterior tactical advantage." 119 F.R.D. at 380. Justice demands that Defendant's motion for leave to amend be denied.

**C. Leave to File a Counterclaim Would Result in Serious Prejudice to Plaintiff and Should Therefore Be Denied.**

Defendant airily dismisses one of the most frequent grounds for denying motions for leave to amend in one sentence: "Nor should Plaintiff be heard to claim that it would somehow be prejudiced by the granting of this motion. . . ." Def.'s Br. at 15. Courts are less cavalier in their consideration of potential prejudice, under which heading they include both the likely effect on the course of the litigation and the fairness to the non-movant of permitting the amendment. In Principal Life, for example, the court opined that plaintiff in a tax-refund case, where defendant filed a motion for leave to amend its answer to assert offset and equitable recoupment claims, "was entitled to be notified about the existence of these claims before it proceeded significantly with this litigation," and that "consideration of defendant's belated claims would require both plaintiff and the court to expend considerable resources . . . in resolving" both those claims and the reciprocal issues they raised. 75 Fed. Cl. at 34. The court continued:

> potentially thorny questions exist as to whether, and to what extent, Defendant may seek to diminish the recovery here by tax amounts otherwise barred by the statute of limitations. As such, Defendant's claims present issues that, if allowed to proceed, would undoubtedly set off a new wave of motions, if not require further discovery and a trial (both apparently involving a new set of operative facts). This court does not intend to require Plaintiff to embark on such a course at this late date.

*Id*. (emphasis added).

The kinds of prejudice the court finds in that case are similar to those in the present case. Plaintiff has operated throughout this litigation on a set of assumptions regarding the nature, extent and risks inherent in the litigation and has conducted its case accordingly. Like the plaintiff in Principal Life, the Plaintiff herein was entitled to notice of Defendant's claims before committing its resources to a course of action that cannot now be undone.

Defendant's present Motion raises new factual and legal issues that would require additional document and both fact and expert witness discovery if it were granted. For example, document and witness discovery would be necessary as to Plaintiff's good faith compliance with the requirements of Announcement 2002-2 and its reliance on its agreement with the IRS; the basis for and the propriety of the IRS's reneging on that agreement; the basis for its claims for penalties; the basis for all available defenses to the claims for penalties; and the like.

Although this Court entered an order on July 31, 2007, extending the discovery cut-off date to October 1, 2007 for fact and expert discovery, this case is in the final days of discovery. James Boyd was deposed on June 7, 2007. Jerry Zucker was deposed on June 8, 2007, and July 19, 2007, the latter of which was a deposition to preserve Mr. Zucker's testimony. Moreover, the deadline for expert reports has already passed and if penalties are at issue, Plaintiff will need to retain at least one expert on penalties. Furthermore, one or more dispositive motions may be necessary, including a motion for declaratory judgment as to the enforceability of the Announcement 2002-2 agreement between the parties and a motion for summary judgment on penalty issues.

Additionally, Defendant's Motion would, if granted, create this havoc rests on the baseless claim that Plaintiff's partners "withheld material documents and also made false and/or fraudulent statements in their [Announcement 2002-2] disclosure presentations. . . ." Def.'s Br. at 1. In a "Statement of Facts" that is replete with irrelevant allegations from the indictment of E&Y personnel who have no connection to the facts of this case, *see, e.g.*, Def.'s Br. at 3-4 and 7-8, and the opinions of its expert witness, David LaRue, Defendant attempts to justify its Motion on the basis of "recently discovered" information contained in five documents. None of the information in those documents is "recently discovered."

Most significantly, this Motion was filed the night of July 17, 2007 – leaving one full business day before Jerry Zucker's deposition to preserve testimony. If this Motion is granted it is likely that Mr. Zucker's only chance to present evidence and defend himself against these penalties has passed – surely resulting in unfair prejudice.

**D. Leave to File a Counterclaim Should Be Denied Because a Counterclaim Would Be Futile.**

Finally, a motion for leave to amend a pleading should be denied if filing the amendment would be futile. *See, e.g.*, E*Trade Financial Corp. v. Deutsche Bank, AG, 420 F. Supp. 2d 273, 283 (S.D.N.Y. 2006), *citing* Ellis v. Chao, 336 F.3d 114, 126 (2d Cir. 2003); Foman, 371 U. S. at 182. An amendment is futile if the amended pleading could not survive a motion to dismiss or for judgment on the pleadings. *See* E*Trade, 420 F. Supp. at 283. A counterclaim for penalties would be vulnerable to several motions to dismiss, for judgment on the pleadings, or for summary judgment. First, Plaintiff's partners would have to file a motion for declaratory judgment as to the enforceability of its Announcement 2002-2 agreement with the IRS to protect the benefit of their bargain. The partners fully performed their obligations under the agreement,[4] relied on the validity and enforceability of the agreement over a period of several years and arranged their affairs accordingly. It is undoubtedly possible that Plaintiff could succeed on such a motion. In that event, the counterclaim could not survive a motion to dismiss. In the meantime, however, the partners would have to prepare to try the issues raised by the counterclaim.

[4] *See* Penalty Lead Sheets, Ex. 14, Crouch letter to Moss, Ex. 15,

## III.

## CONCLUSION

While leave to amend a pleading should be "freely given when justice so requires," Principal Life, 75 Fed. Cl. at 33, leave to amend must also be denied when justice requires. In the present case, justice demands that Defendant's motion for leave to amend be denied. The amendment itself was filed in bad faith. The materials in Defendant's Appendix to the motion are an attempt to besmirch Plaintiff's partners by an association that does not even exist in reality. The brief supporting the motion recites allegations and the opinions of a biased expert witness as "facts," offers no evidence for the inferences and conclusions it draws in the Statement of Facts, omits evidence that contradicts those inferences and conclusions, and offers no pertinent legal argument for granting the motion. Any one of the factors that weigh against granting leave to amend is sufficient to justify denying Defendant's motion. The undue and unexplained delay in filing the motion, Defendant's evident bad faith in filing the amendment, the serious prejudice to the Plaintiff that would ensue from permitting the amendment and the ultimate futility of allowing the amendment require that Defendant's motion be denied.

For all the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendant's Motion for Leave to Amend Answer To Assert Counterclaim Penalties.

Respectfully submitted,

By: s/Joel N. Crouch
Joel N. Crouch
Texas State Bar No.05144220
M. Todd Welty
Texas State Bar No. 00788642
Tara C. DePompei
Texas State Bar No. 24043452

MEADOWS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
twelty@meadowscollier.com
tdepompei@meadowscollier.com

ATTORNEYS FOR PLAINTIFF
JZ BUCKINGHAM INVESTMENTS LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2007, a copy of the foregoing Plaintiff's Response to Defendant's Motion for Leave to Amend Its Answer to Assert a Counterclaim was served upon counsel listed below via electronic means.

Dennis M. Donohue, Esq.
Trial Attorney
United States Department of Justice
Tax Division
P.O. Box 26
Ben Franklin Station
Washington DC 20044
(202) 616-3366

s/Joel N. Crouch
Joel N. Crouch