folder which was inside of the expandable, yes, and all the documents that I had were in there.

Q. And do you know whether you provided a complete copy of that file to your counsel?

A. I did.

Q. Let me show you what was previously marked as Government Exhibit 159. This is an internal Ernst & Young e-mail attached to which is something that's called a PowerPoint presentation. I'd like to ask you whether you've ever seen anything such as the second page of this document --

A. No, I have not.

Q. -- which is the front page of the PowerPoint.

A. No, I have not.

Q. I'm going to show you what's been previously marked as Exhibit 177. This is a handwritten -- or a slightly marked-up copy of a fax that was addressed to Mr. Zucker dated November 11 of 1999. Do you recognize this as having been a document that was in the file of JBJZ Investors, Inc.?

A. Yes, I do.

Q. And on the back of this is Mr. Zucker's



signature which he's previously identified and at this time Mr. Zucker wrote in on that second page, a hundred million dollar loss to be allocated at 98-2 between the parties. Were you privy to any discussions regarding this hundred million dollar loss?

A. No, I was not.

Q. Were you privy to any discussions regarding the allocation of a loss between Mr. Zucker and Mr. Boyd?

A. No, I was not.

Q. Now, Mr. Zucker, I believe, had this faxed or sent back to Mr. Knight at Ernst & Young. Were you the one who sent this back to -- faxed this back to Mr. Knight or Fed Ex'd it back to Mr. Knight?

A. I could have been. I do not -- I do not know unless I look at the fax sheet or see a fax sheet. I do not -- I do not recall.

Q. What was your practice if you had been asked to send a fax back to Mr. Zucker -- excuse me, to Mr. Knight by Mr. Zucker and Mr. Boyd, would you keep a complete copy of the cover sheet and the confirmation in your file with the fax?

A. Yes, I would.



Q. And would that have been -- if it was related to this particular transaction, would it have been found in the JBJZ Investors file?

A. Yes, it would, usually attached to the document that was sent.

Q. Were you ever asked by Mr. Zucker or Mr. Boyd to remove any materials from your JBJZ Investors file?

A. Absolutely not.

Q. Were you ever asked by Mr. Zucker or Mr. Boyd to destroy any materials within your JBJZ Investors file?

A. Absolutely not.

Q. I'm going to show you what's been previously marked as Government Exhibit 180. This is a copy of a fax from Mr. Ray Knight to Jenkens & Gilchrist with respect to the JBJZ Investors transaction as well as some others and so you would not have seen a complete copy of this fax.

A. I am not familiar with this document.

Q. But it includes two pages which do relate to the JBJZ Investors file -- JBJZ Investors transaction I should say. And I'd like to direct your attention to those and ask you if you've ever seen these before and that would be Bates Number



JGCL014038 and 37. They are the fax -- have fax page numbers of 6 and 7 at the top right side. Do you see the first one for Mr. Boyd?

A. Yes, I do.

Q. Have you ever seen this document before?

A. No, I have not.

Q. And the second page or the following page from Mr. Zucker, have you ever seen that page?

A. No, sir.

Q. There is a reference here to a Mr. David Bradley at Chase Manhattan. Do you recall Mr. David Bradley as having been a person with whom Mr. Zucker worked for financial -- as a bank reference?

A. Yes.

Q. Did you have any discussions with Mr. Bradley?

A. No.

Q. On the page from Mr. Zucker there's some Social Security numbers. Do you recognize the Social Security number of Mr. Zucker there, 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?

A. No, I do not.

Q. Were you privy to his Social Security





EXHIBIT 17 tabbies



9eb5a822-13fa-4e1f-a26a-5d4409a532b9

Page 18

information?
A. I have his Social Security number in the personnel file.
Q. And so if you needed --
A. If I needed it, I could go and find it.
Q. And if you turn back to the page from Mr Boyd, were you privy to -- were you aware that that was Mr Boyd's Social Security number, 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?
A. I am.
Q. Did you ever have any involvement in the review of tax returns?
A. No.
Q. Were you ever asked to review any tax returns related to the COBRA transaction such as the tax returns prepared for the partnership of JBJZ Investors?
A. No.
Q. Excuse me, JBJZ Partners?
A. No.
Q. And what about the S Corp , JBJZ Investors, Inc ?
A. No.
Q. Were you ever involved in reviewing any of the personal returns filed by Mr. Zucker or

Page 19

Mr. Boyd for federal income tax purposes, their Forms 1040?
A. No.
Q. Did you -- were you ever asked to forward information on behalf of Mr. Zucker and/or Mr. Boyd to their return preparers, for instance, Mr. Emerson, who is Mr Zucker's return preparer?
A If he gave it to me and asked me to send it to Barry, yes
Q And did you also send materials to Miss -- I think it's Pace, Sheila Pace, on behalf of Mr Boyd?
A Again, if Mr. Boyd gave it to me and asked me to send it, I sent it.
Q. Now, if you are sending those materials related to those -- their personal tax matters, would you have kept a -- and suppose you were faxing it, would you have kept a copy of that fax in your personal -- in your file?
A. Only probably the notes, not the actual document if it was a tax document. I never kept their personal tax documents
Q And why was that?
A Well, because they are very private with their tax returns.

Page 20

Q. Even though it was in your -- even though you were their personal secretary or personal assistant?
A Yes.
Q. I'm going to show you a copy of what I've marked previously as 179. This is a copy of a nondisclosure agreement that was used by Mr. Ray Knight about that same time of November 15 of 1999. Do you recall any nondisclosure agreements with regard to the COBRA strategy? The second line references the COBRA strategy. Do you recall a nondisclosure agreement being in your file for JBJZ Investors?
A. No, I do not.
Q. I'm going to show you what's been previously marked as Exhibit 178. This is a copy of a memo that was sent to Mr. Zucker from Ray Knight. Do you recall this being a document that was in the file for JBJZ Investors?
A No, I do not.
Q. Do you -- have you retained the original of the JBJZ Investors file?
A. I have what's in my file, the -- some original -- well, they're not even original, they're books that were sent to us with the opinion

Page 21

letters and the LLC documents and the incorporation documents.
Q Where do you have those?
A. In my office.
Q And so there were additional materials that you used to have in your JBJZ Investors file that you no longer have in your office?
A. No, I still have copies of what we've sent.
Q Okay. So you have copies of everything that you used to have -- you have a complete Investor file?
A I have a complete file that I maintained in my office, yes.
Q In the subpoena that was sent to you you were asked to produce a copy of all documents within your possession.
A. Right.
Q. And have you -- and you have not brought that with you today Do you have a copy with you today?
A. A copy of?
Q. Of that complete JBJZ Investors file that was in your office?
MR. CROUCH: We don't have it with us







9eb5a822-13fa-4e1f-a26a-5d4409a532b9

today. We can get it if you want it. I think all that information was already turned over to you though.
MR. LINDQUIST: Well, it would help me with this witness to be able to make sure that I'm --
MR. CROUCH: Sure.
MR. LINDQUIST: -- as opposed to hunting and pecking. If you wouldn't mind when we take a break and perhaps just --
MR. CROUCH: Do you want to take a break now or you want to --
MR. LINDQUIST: Let's take a break now and that way I'm not going to have to take Miss Crosby through things if she doesn't have to.
MR. CROUCH: Okay.
VIDEO TECHNICIAN: We are now going off the record. The time is approximately 9:49.
(A recess transpired.)
VIDEO TECHNICIAN: We are now going back on the record. The time is approximately 10:46, Case Number 05-231 T.
BY MR. LINDQUIST:
Q. Miss Crosby, we've taken a short break while you and your counsel have secured two files



and brought them here and we have -- I've requested a complete copy of those files. Your attorney's advised me that he's in the process of copying those with the exception of certain materials which he considers to be protected communications and I expect I'll see a privileged log for anything that's been pulled out of those files. Thank you for expediting that and getting those files for us.
In the interim, so that we can move on with your deposition, I have also identified certain items in those files that were -- appeared to be new to me so that we could address those immediately. And I'm not saying that I've reviewed these files completely since I've only had a short time to look at them.
Allow me to show you first something that was in the file, I've marked it as Exhibit 2252.
(DFT. EXH. 2252, Ernst & Young, LLP Confidential Fax dated 11/22/99 to Charlotte from Ray Knight, with attachments, was marked for identification.)
BY MR. LINDQUIST:
Q. And this is a document that appears to be attention Charlotte from Ray Knight. Is this a



fax that you received on or about November 22 from Mr. Knight?
A. Yes.
Q. It appears that this is -- that I have two copies of this from your file. Is that what this is, are they the same document?
A. It is the same document, but it was addressed to Jim and to Jerry and I made two copies so -- to show that each one of them got a copy.
Q. Okay. Now, these files that you've turned over to us for copying, are these materials that you kept in the files in the ordinary course of your duties?
A. That's correct.
Q. And are these documents that you've included contemporaneously to the time that you received them? In other words, at the same time that you received them, you put them in the file?
A. Either I did or Mr. Zucker's assistant would come in and say, Charlotte, I have a document that needs to go in this file and that's -- they would put it in there.
Q. Now, this particular document dated November 22 of 1999, this attachment from Ray Knight to Zucker and Boyd -- and I'm directing you



to the second page of the document, of 2252. It doesn't have a Bates number. And this has a little table on there describing an equity contribution or fee and some percentages and risk/non-risk and then timing is the header on the table. Did you have any discussion of this -- of the content of this fax with Mr. Zucker or Mr. Boyd?
A. I did not.
Q. I have not seen this document before. Do you know why this document was not turned over to the United States before?
A. I do not.
Q. I also did not see it in the production that had been turned over to the IRS when they previously asked for some information. Do you know why it wouldn't -- might not have been turned over to the IRS?
A. I do not.
(DFT. EXH. 2253, Handwritten memo on Charlotte Crosby letterhead, was marked for identification.)
BY MR. LINDQUIST:
Q. I'm going to show you now a document that's marked -- I've marked as 2253. This is -- appears to be a memo entitled Charlotte Crosby. Is







9eb5a822-13fa-4e1f-a26a-5d4409a532b9

and perhaps you can understand it. I think it's right in there. There they are.
A. Into Intertech. Liquidate stock, wire JBJZ into Intertech.
Q. And about what time were you -- can you tell about what time you were doing this?
A. No.
Q. And was this your practice to put stickies on things sometimes like this?
A. Whenever I'm standing there and they walk in and say, Charlotte, would you do this, I write notes and stick it somewhere.
Q. So you would have made this note basically dictating down the instruction that you were receiving so you'd know what to do?
A. That's correct.
Q. And the sticky to the right, was that created about the same time or was that a different time?
A. I -- I couldn't tell you.
Q. What's the sticky on the right say?
A. All JB -- or JZJB IN -- that means investors -- but 100,000, Brooks 3,200,000 to 3.1 million, 90 percent to JZ Charleston, 10 percent to JB Dean Witter, one million to TIG --



Q. What's TIG mean?
A. Intertech Group. 100,000 to TIG.
Q. Is this money that's going to the Intertech Group? The one million to TIG, is that money being wired back to the Intertech Group?
A. Yes.
Q. Do you recall what you did according to these instructions?
A. It's been too long ago. The only -- when Jerry wanted money to go into TIG from any of his accounts, I would write down how much he wanted to go into his account, into the TIG account. So that could have been anything because we needed money for funding for the other company so he would put money into TIG.
Q. All right. And do you know what percentage interest Mr. Boyd held in the Intertech Group?
A. 25 percent.
(DFT. EXH. 2259, Application for Employer Identification Number, with attachments, was marked for identification.)
BY MR. LINDQUIST:
Q. I want to show you what I've marked as Exhibit 2259. This is another document from the



files produced today. And it appears that at least some of these documents have been previously produced, but these were associated together so I wanted to get a complete copy of what was associated together.
And were you involved in sending a copy of this bundle of documents to Jenkens Gilchrist after they've been signed by Mr. Zucker?
A. I could have been, I -- I just don't recall. I mean, I could look in the file and see if there's correspondence, but I -- I do not know.
Q. I think that there's some other documents that reflect that fact.
A. Okay.
Q. But you would have retained that complete copy of this in the file when you received it from Mr. Zucker?
A. Yes.
(DFT. EXH. 2260, Letter dated 12/14/99 to Mr. Jerry Zucker from Donna M. Guerin, with attachments, was marked for identification.)
BY MR. LINDQUIST:
Q. Allow me to show you what I've marked as 2260. Thank you, Miss Crosby. There's some handwriting on here on this letter dated December



14 of 1999. Whose handwriting is that?
A. Jim Boyd.
Q. And do you recall what this related to?
A. What it related to?
Q. Yes.
A. His handwriting or this letter?
Q. This letter and his -- his statement done.
A. I do not know what the letter refers to other than looking at it and seeing what it is and --
Q. Can you read his handwriting?
A. Yes. Done, returned to J&G via overnight, JGB. That means that he returned it to them.
Q. Okay. And would you have been the one who was returning it to him or was -- did he sometimes do things himself?
A. He did it himself sometimes.
Q. And do you know why a copy of this document wasn't previous -- this cover page wasn't previously produced?
A. I do not.
(DFT. EXH. 2261, Letter dated 2/27/00 to Deutsche Bank from Jerry Zucker, with