IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**DECLARATION OF JOHN LINDQUIST**

I, John A. Lindquist, pursuant to the provisions of 28 U.S.C., §1746, certify that:

1. I am a Trial Attorney with the U.S. Department of Justice, employed in the Tax Division, Northern Region, with a post of duty at Washington, D.C.

2. I am one of the assigned trial attorneys for the United States, the defendant in the above-referenced litigation.

3. I am also an assigned attorney in six other FPAA adjustment actions involving the COBRA tax shelter:

a. *MURFAM Farms, LLC v. United States*, Cases No. 06-245T (CFC) (consolidated with Cases Nos. 06-246T and 06-247T);

b. *PSM Farms, LLC v. United States*, Cases No. 06-246T (CFC) (consolidated with Cases Nos. 06-245T and 06-247T);

c. *Murphy Pork Partners, LLC v. United States*, Cases No. 06-247T (CFC) (consolidated with Cases Nos. 06-245T and 06-246T);

d. *Carmel Partners v. United States*, Case No. 1:06 cv 8002(USDC SDIN)(consolidated with Tesoro Drive Partners as In Re COBRA Tax Shelters, MDL Case No. (SDIN);

e. *Tesoro Drive Partners v. United States*, Case No. SA-05-CA-0216-XR (USDC WDTX)(consolidated with Carmel Partners as In Re COBRA Tax Shelters, MDL Case No. (SDIN));

f. *SA Tesoro Investment Partners v. United States*, Case No. SA-05-CA-0217-XR (USDC SDTX)(consolidated under Case No. SA-05-CA-0216-XR);

4. I am in possession of the administrative files of the Internal Revenue Service regarding the adjustments at issue in these cases.

5. I have reviewed of the IRS' administrative files and the documents produced by plaintiff in this litigation and make this declaration based upon personal knowledge.

6. On July 13, 2007, six (6) days before the trial testimony of Jerry Zucker ("Zucker") before this Court, during the deposition of Charlotte Crosby ("Crosby"), the United States discovered that plaintiff had been withholding an entire separate file of internal documents on the COBRA transaction. Annexed hereto as Govt. Ex. D is a complete copy of the Crosby deposition.[1]

7. In the deposition subpoena served on Ms. Crosby, she had been subpoenaed to produce all documents in her possession or control related to the COBRA transactions of Zucker and Boyd. Annexed hereto as Govt. Ex. E is a copy of the subpoena issued to Crosby.

8. Crosby was the personal assistant to both James Boyd ("Boyd") and Zucker. Crosby Dep. 6:13-7:19. At the beginning of her deposition, Ms. Crosby failed to produce any

1/ Plaintiff identified selected portions of the Crosby deposition as Plaintiff's Exhibit ("Pltf.Ex.") 17.

documents as required by the Government's deposition subpoena. During the course of her deposition, Ms. Crosby admitted that she maintained a file on the COBRA transactions for Zucker and Boyd which she kept at their direction in her office which she called "JBJZ Investors." Crosby Dep. 9:7- 10:4; 11:1-11:10. Ms. Crosby testified that she still had the JBJZ Investors file in her office. Crosby Dep. 21:10 - 21:14. I then requested that this file of documents be immediately produced. A break was thereupon taken during which plaintiff's counsel represented that he needed to first review these files for potential privilege. Following the break Ms. Crosby then produced for inspection what plaintiff's counsel had represented were the nonprivileged portions of her original files. Crosby Dep. 21:15 - 21:24.

9. A portion of the files disclosed by Crosby on July 13, 2007, were marked as exhibits, including Govt. Exs. 2252, 2255, 2257 and 2260.

10. Copies of Govt. Ex. 2252, 2257, and 2260, were previously filed in support of this motion as attachments to the Declaration of David Steiner.

11. Annexed hereto as Govt. Ex. 2255, is a handwritten note from Boyd to Zucker with respect to a discussion that day with Ray Knight stating "I again raised the issue with Ray about the 'margin earning' on the Euro. He said he will call you tomorrow. He said the reason we only picked upon the margin gain of $625K (plus the original $2.5M) was because we capped our exposure."

12. Immediately following the deposition of Crosby, while still at her offices, I informed plaintiff's counsel that we would recommend to the IRS that penalties be asserted in this case. On July 14, 2007, the IRS authorized the assertion of this counterclaim for penalties. On July 18, 2007, the United States filed its motion to amend its answer to assert a counterclaim for penalties.

13. Annexed hereto as Govt. Ex. F is a complete copy of the transcript of the deposition of Jerry Zucker taken before this Court on July 19, 2007 ("Zucker Dep. II").

14. Zucker testified on July 19, 2007 that he viewed his election to participate in the Announcement 2002-2 Disclosure Initiative as a "free lottery ticket" to protect him from any potential for penalties "in the event that ...anything we had done was not proper." Zucker Dep. II 151:16-152:2.

15. Zucker testified that on July 19, 2000, he knew that Ms. Crosby had a file on the COBRA transaction in her office on the COBRA transaction and admitted that he had often directed her to put things in the file. Zucker Dep. II 131:3-131:8.

16. Zucker testified as follows on July 19, 2000, with respect to plaintiff's failure to turn over Govt. Ex. 177A:

> Q. Did you turn over this document to the Internal Revenue Service as part of your agreement to disclose all documents regarding the transaction?
>
> A. I frankly do not know. I mean, I directed all files and information to be submitted. And so I had no idea what was actually in the file folders. But I assumed that everybody, you know, followed my instructions. But I - I can't tell you.

Zucker Dep. II 190:17-191:1.

17. Zucker testified as follows on July 19, 2000, with respect to his direction to collect responsive documents for purposes of responding to IRS IDR Nos. 1 and 2 dated April 30, 2002, marked as Govt. Ex. 171:

> Q. Once you received it, what direction did you give to either E&Y or anyone on your staff to make available all the files and transactional documents with respect to the transaction?
>
> A. Well, at the staff meeting I said that anyone that had any files relevant to this, and gave them the topics and all, to please be sure to forward them, and it happened to be to accumulate them in the administrative assistants and to send them to counsel. And I certainly, and I had instructed similarly for Ernst & Young, just basically to empty our files.

Zucker Dep. II 193:23-194:10.

18. Zucker then corrected his prior testimony with respect to his direction to collect responsive documents for purposes of responding to IDR Nos. 1 and 2 as follows:

Q. Mr. Zucker, just before the break –
A. Yes.
Q. - you provided this answer. Well, at the staff meeting, I said that anyone that had any files relevant to this, and gave them the topics and all, to please be sure to forward them, it happened to be to accumulated to administrative assistants, and to send them it to my counsel. Do you recall that answer?
A. Yeah. That was not correct. What I said is I wanted to get all of our stuff pulled together. And that I had already instructed Ernst & Young to provide all the information. And I assumed frankly that EY had copies of everything because they were the ones that were handling it.
Q. I'm a little unclear.
A. Counsel had not yet been involved at the time. So it was just a miss- I just misspoke.
Q. So it is your testimony that you directed your staff to accumulate all your files with respect to the transaction?
A. I did. I asked that it be all put together in a file that would be available.
Q. Well, did you direct them to provide it to anyone, that file?
A. I had directed Ernst & Young to provide all the information that had been requested with the assumption that they had a copy of everything. And I -
Q. I'm a little unclear. Are you saying you directed your staff to accumulate all of documents but not to turn those over to Ernst & Young to provide -
A. No, no, no. I just - you know, this is - just to kind of put it in context, this is a number of years ago. So I had instructed everyone during this period of time, and some of it took place in, as you know, 2002,. Some of it was relevant where we had questions like on the John Doe summons from Jenkens & Gilchrist, I told everyone just to be totally open with anything and everything that was requested. And I had directed Ernst & Young to provide all the information that they had. And they should have had a copy of literally everything. And I'm not aware, you know, of any - anything that was being requested that in fact had not already been provided.

***

Q. And are you saying that you directed your staff to accumulate all the documents - let's first - that your testimony, number one, am I correct?
A. That I told the people that anyone that had anything in this file, to go ahead and turn if over to - to put it into a central file with Donna Hartin.
Q. And then do what with it?

A. It was with the ultimate purpose of being sent to the government, to the, in this case, the IRS. But with Ernst & Young, I'd also separately directed them to send and be fully cooperative in sending all of the information.

Q. But you said, if I understand your testimony, it was for the ultimate purpose of having the file be sent to the government. Did you specifically direct anyone to send your files to the government?

A. You know, I can't specifically say I remember those particular words, but you know, frankly, I don't remember whether I specifically said directed to the government or not. *I'd asked for it to be accumulated. And I had directed EY to send anything and everything in terms of being cooperative.* And I asked that the - whatever we had that they would have be - be forwarded to - I can't tell you for sure. I can't tell you if I said EY or if I said the government. I just can't remember which specific words I used.

Zucker Dep. II 195:8-199:12 (emphasis added).

19. On August 14, 2007 plaintiff produced a CD which contained 961 pages of documents of the JBJZ Investors file kept by Ms. Crosby. It was not until receipt of this CD that the United States had the opportunity to review and thoroughly analyze all the documents produced. Only a portion of these documents were produced for my review at the deposition of Crosby on July 13, 2007.

20. At her deposition, Crosby did not testify, as alleged by plaintiff, that she believed that these documents had been produced to the IRS or the United States. Nor did she testify, as alleged by plaintiff, that the failure to produce these documents to the IRS and the United States was due to an "oversight." Crosby testified that she previously had provided a complete copy of the JBJZ Investors file to counsel, Crosby 14:3-5, and that she did not know why these documents had not been produced to the IRS or the United States previously. Crosby Dep. 25:9-25:18; 26:18-26:25; 44:17-44:20.

21. In late April, 2002, Boyd and Zucker filed elections to participate in the disclosure initiative under IRS Announcement 2002-2 with respect to their COBRA transaction under

which they expressly agreed to provide certain documents and information to the IRS, if requested. See Govt. Exs. 169 and 170 (also Plaintiff's Ex. 3).

22. Both Jerry Zucker ("Zucker") and James Boyd ("Boyd") were already in the midst of a full-scale audit of their COBRA transaction prior their elections in late April, 2002, to participate in the IRS's Penalty Waiver Disclosure Initiative in IRS Announcement 2002-2. See Govt. Exs. 164, 165, 166, 167, 1101, 168, 169 and 170.

a. Annexed hereto as Govt. Ex. 164 is an IRS Information Document Request ("IDR") dated November 27, 2001 ("IDR #1"), requesting Boyd, *inter alia*, to provide basis computations for JBJZ Investors, Inc.

b. Annexed hereto as Govt. Ex. 165 is a letter dated January 2, 2002, responding IDR#1, advising that the requested basis computation will follow.

c. Annexed hereto as Govt. Ex. 166 is a letter dated January 7, 2002, further responding to IDR #1.

d. Annexed hereto as Govt. Ex. 167 are IRS notes of a conference call on February 7, 2002, with respect to a similar request to Zucker to provide, *inter alia*, basis computations for JBJZ Investors, Inc.

e. Annexed hereto as Govt. Ex. 1101 is a copy of IDR No. 1, faxed to Zucker on on April 10, 2002 with respect to the IRS' examination of JBJZ Investors, Inc.

f. Annexed hereto as Govt. Ex. 168 is a letter to the IRS dated April 9, 2002, providing additional information on behalf of Zucker.

23. The elections by Boyd and Zucker to participate in the disclosure initiative under IRS Announcement 2002-2 with respect to their COBRA transaction were accepted by the IRS.

24. Following the IRS' acceptance of the elections by Boyd and Zucker under IRS Announcement 2002-2, the IRS served multiple Information Document Requests ("IDR) requesting certain documents and information from Zucker and Boyd with respect to their COBRA transaction. The IDR, copies of which have already been filed with the Declaration of David Steiner and as exhibits to Plaintiff's Opposition, are summarized in the following table:

| IDR/Item/ Ex. # | Date | Records Requested |
|---|---|---|
| IDR No. 2, Item 1, Ex. 171; Plf. Ex. 4 | 4/30/02 | "All transactional documents, including agreements, contracts, instruments, schedules, and any information received from the promoters, solicitors or recommending parties and all material receive from those other parties' advisor(s)" – the IDR quotes the disclosure statements submitted by Zucker and Boyd in which they represented that they would produce all such documents if requested |
| IDR No. 2, Item 2; Ex. 171; Plf. Ex. 4 | 4/30/02 | "All internal documents or memoranda used by us in our decision making process; and" – the IDR quotes the disclosure statements submitted by Zucker and Boyd in which they represented that they would produce all such documents if requested |
| IDR #2, Item 3; Ex. 171; Plf. Ex. 4 | 4/30/02 | "All opinions and memoranda that provide a legal analysis of the transactions, whether prepared personally or by a tax professional on our behalf" – the IDR quotes the disclosure statements submitted by Zucker and Boyd in which they represented that they would produce all such documents if requested |
| IDR #3, Item 1; Ex. 173; Plf. Ex. 6 | 9/19/02 | [All additional agreements, contracts, liabilities or obligations of the taxpayer(s) that have not been submitted previously, including but not limited to . . . fee agreements (legal and accounting), invoices (Jenkins & Gilchrist; DB Alex Brown; Ernst & Young), etc. |
| IDR #3, Item 2; Ex. 173; Plf. Ex. 6 | 9/19/02 | [All additional promotional materials presented and/or provided to the taxpayer(s) concerning this transaction that have not been submitted previously, including but not limited to, any offering memoranda and prospectuses as well as any "COBRA" materials. |

| IDR/Item/ Ex. # | Date | Records Requested |
|---|---|---|
| IDR No. 3, Item 3; Ex. 173; Plf. Ex. 6 | 9/19/02 | All documentation relating directly or indirectly to the tax and financial consequences of participating in this transaction, including but not limited to, potential benefits, potential risk, etc. |
| IDR No. 3, Item 4; Ex. 173; Plf. Ex. 6 | 9/19/02 | Please describe the principal rationale for the simultaneous purchase and sale of a call option with the same expiration dates if not to substantially minimize the taxpayer's economic exposure. Does this not ensure the taxpayer(s) were not substantially "at risk" under IRC section 465 versus the virtual certainty of the tax benefits received? |
| IDR No. 3, Item 5; Ex. 173; Plf. Ex. 6 | 9/19/02 | Are there any records/documentation on which attorney-client privilege or the work product doctrine is being claimed? If so, please provide a privilege log and address the following questions:<br>• Who wrote or initiated the record(s)/documentation?<br>• To whom was the record(s)/documentation addressed?<br>• How long (#pages) are the record(s)/documentation?<br>• What attachments accompany the record(s)/documentation?<br>• Who received copies of the record(s)/documentation (cc, bc., or copies in any form)?<br>• What are the date(s) of the record(s)/documentation?<br>• What topic(s) was discussed/explained in the record(s)/documentation?<br>• What is the claim of privilege? |
| IDR No. 3, Item 6; Ex. 173; Plf. Ex. 6 | 9/19/02 | Brokerage Statements, Bank Statements and Trade Tickets reflecting the purchase and sale of the Canadian Currency. Include a copy of the Canadian Currency Contract(s) and the reasons for this particular activity. |

| IDR/Item/ Ex. # | Date | Records Requested |
|---|---|---|
| IDR No. 4, Item 1; Ex. 175; Plf. Ex. 8 | 3/25/03 | Please refer to your engagement letter to the taxpayer(s) dated November 11, 1999, and specifically to the first paragraph where it refers to the "implementation of the COBRA strategy". Please fully explain the mechanics of this strategy.<br><br>Additionally, refer to the third paragraph where it mentions the "desired loss". Please explain in detail what is meant by the "desired loss" and how the "desired loss" impacts the taxpayer's return. |
| IDR No. 4, Item 4; Ex. 175; Plf. Ex. 8 | 3/25/03 | Please elaborate further on the reasoning and intent of establishing the narrow ranges between the long and short digital options for both the Euro and Yen currencies. Specifically why utilize a range or spread of 2/10,000 as opposed to 20/10,000 or 200/10,000? Who recommended this particular range? Is this range part of the COBRA strategy? |
| IDR No.4, Item 6; Ex. 175; Plf. Ex. 8 | 3/25/03 | Please explain in detail the reasoning and intent of the investment in Canadian currency? Was there an actual contract associated with this transaction? If so, please provide a copy. Is the purchase and sale of the Canadian currency part fo the COBRA strategy? |

25. By letter dated November 19, 2002, Zucker and Boyd responded to IDR No. 3. Annexed hereto as Govt. Ex. 174A is a true copy of their response to IDR#3, with a copy of the documents produced therewith. The documents produced therewith included an unsigned copy of the November 11, 1999 COBRA engagement letter addressed to Zucker and an unsigned copy of the November 15, 1999 COBRA engagement letter addressed to Boyd. Zucker and Boyd did not produce a copy of Govt. Ex. 2257 to the IRS.

26. On August 10, 2005, plaintiff served its initial disclosures in this action. Plaintiff stated therein:

> Upon information and belief, the Government is in possession of all materials to be provided under this section as a result of audit responses by Jerry Zucker and Jim Boyd and responses to information requests from the various tax

professionals involved in this matter. Any physical exchange would be duplicative.

Annexed hereto as Govt. Ex. G is a true copy of Plaintiff's Initial Disclosures dated August 10, 2005.

27. On August 31 2005, plaintiff produced a CD containing "pdf" copies of documents identified by their beginning bates number, covering the bates range JZB00001 through JZB05228.

28. As summarized in the following table, plaintiff's Rule 26 production of documents include the following groups of documents:

| # | Date Produced to US | Description | JZB Bates Start | JZB Bates End | Prior Bates Start | Prior Bates End |
|---|---|---|---|---|---|---|
| 1 | 8/31/05 | Copies of Personal tax returns of James Boyd | JZB00001 | JZB00147 | No prior bates numbers | No prior bates numbers |
| 2 | 8/31/05 | Copy of documents which appear to have come from JG's files, copies of which were previously produced to the United States by JG in the United States Bates stamped by JG 00000000 - 00001281 | JZB00148 | JZB01310 | Z000000 | Z001281 |
| 3 | 8/31/05 | Copy of documents which appear to have come from Plaintiff's own files | JZB01311 | JZB01706 | Z001283 | Z001696 |

| # | Date Produced to US | Description | JZB Bates Start | JZB Bates End | Prior Bates Start | Prior Bates End |
|---|---|---|---|---|---|---|
| 4 | 8/31/05 | Copies of documents which appear to have come from EY's files | JZB01707 | JZB03040 | JEY000001 | JEY001334 |
| 5 | 8/31/05 | Copy of documents which appear to have come from JG's files, copies of which were previously produced to the United States by JG in the United States Bates stamped by JG 00000000 - 00001281 | JZB03041 | JZB04321 | ZJG000000 | JZG001281 |
| 6 | 8/31/05 | Copy of documents which appear to have been obtained by plaintiff from the files of DB in 2004 | JZB04322 | JZB04812 | No prior bates numbers | No prior bates numbers |
| 7 | 8/31/05 | Copies of Banking records of JBJZ Investors from Morgan Stanley Dean Witter | JZB04813 | JZB05122 | No prior bates numbers | No prior bates numbers |
| 8 | 8/31/05 | Copies of Jerry Zucker's personal tax returns, state and federal | JZB05123 | JZB05228 | No prior bates numbers | No prior bates numbers |

29. Two documents produced by plaintiff as part of its initial disclosures, Govt. Exs. 1104 and 1029A , had not previously been produced to the IRS or the Government:

a. Govt. Ex. 1104 is a nine (9) page fax which was produced with plaintiff's initial disclosures, composed of the bates range JZB01311 to JZB01319. This fax, dated November 15, 1999, contains a cover memo dated November 15, 199, bates marked JZB01311 from Ray Knight of E&Y to Boyd and Zucker which details material terms of the proposed COBRA engagement. Attached to this memo are proposed COBRA engagement letters dated 11/15/99 for endorsement by Zucker and Boyd. The cover memo to this fax, was produced as the last page of a prior unrelated "PDF" document named JZB01175 (composed of the bates range JZB01175-JZB01311). The engagement letters associated with this cover memo were produced as four page PDF documents, named JBJZ 01312 (spanning the range JBJZ01312-JBJZ01315) and JBJZ01316 (spanning the range JBJZ01316-JBJZ01319). The Knight cover memo dated November 15, 1999, and the unsigned Zucker engagement letter had not previously been produced to the IRS. A copy of Govt. Ex. 1104 was previously filed as an attachment to the Declaration of David Steiner.

b. Govt. Ex. 1029A is an executed copy of the November 15, 1999 COBRA engagement letter signed by Zucker which was produced with plaintiff's initial disclosures, composed of the bates range JZB01320 to JZB01323. This document had not previously been produced to the IRS. A copy of Govt. Ex. 1029A was previously filed as an attachment to the Declaration of David Steiner.

30. On December 12, 2005, the United States served its first set of Interrogatories and Requests for Production upon the plaintiff. Annexed hereto as Govt. Ex. I is a true copy of the United States' first set of discovery. Specifically, Interrogatory Nos. 2 and 3 asked:



2743262.1

> 2. For each Individual Participant, identify each person including but not limited to individuals from Ernst & Young, the Deutsche Bank, Jenkins and Gilchrest, Brown and Wood, your personal attorneys, personal accountants, and financial advisors that you had discussions with regarding your proposed investment in the COBRA transactions, and provide a summary of the essential aspects of those discussions.
>
> 3. Identify all documents that ... were provided to you *or that you generated* or were generated by other individuals during the course of the discussions referred to in your response to Interrogatory 2.

See Govt. Ex. I, Interrogatory. Nos. 2 and 3. (Emphasis added.) Request for Production asked for the production of all documents identified in these interrogatories. See Ex. I, RFP No. 1.

31. On February 28, 2006, plaintiff served responses to the United States' First Set of Discovery. Annexed hereto as Govt. Ex. I is a true copy of Plaintiff's Objections and Responses to the United States' First Set of Interrogatories and Plaintiff's Objections and Responses to the United States' First Requests for Production of Documents. Plaintiff's responses did not disclose or identify any documents generated by Zucker and/or Boyd or provided to Zucker or Boyd during the course of any discussions regarding the proposed investment in the COBRA transactions. Specifically, it did not identify or produce copies of Govt. Exs. 2250, 2252, 2255, 2257 or 2260.

32. Plaintiff further represented, in its response to these interrogatories and document requests that:

> Any and all responsive documents have been previously provided to the Internal Revenue Service during the examination and to the United States pursuant to Plaintiff's Initial Disclosures under Rule 26(a)(1)(b) of the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims.

See Govt. Ex. I, Plaintiff's Responses to United States' First Set of Discovery. Attached to plaintiff's answers was a sworn verification by Zucker that he had read the answers and that, "to

his best knowledge, they were each true and correct." See Govt. Ex. I, Plaintiff's Responses to United States' First Set of Discovery.

33. On March 13, 2006, plaintiff served Supplemental Responses to the United States' First Requests for Production of Documents. with which it produced the documents Bates labeled ZUMO000001 through ZUMO000498 pertaining to plaintiff's settlement with the South Carolina Department of Revenue.

34. By letter dated March 17, 2006, plaintiff produced hard copies of the documents identified in its answers to the United States' First Set of Interrogatories, sorted according to the interrogatory. This production again failed to identify and produce any documents generated by Zucker and/or Boyd or provided to Zucker or Boyd during the course of any discussions regarding the proposed investment in the COBRA transactions. Specifically, it did not identify or produce copies of Govt. Exs. 2250, 2252, 2255, 2257 or 2260.

35. On April 21, 2006, plaintiff served Plaintiff's First Supplemental Objections and Responses to the United States' First Set of Interrogatories, in which plaintiff updated its responses Roggs. 7, 15, and 19. This supplement failed to identify or produce any documents generated by Zucker and/or Boyd or provided to Zucker or Boyd during the course of any discussions regarding the proposed investment in the COBRA transactions. Specifically, it did not identify or produce copies of Govt. Exs. 2250, 2252, 2255, 2257 or 2260.

36. On July 6, 2006, the United States served its Second set of Interrogatories upon the plaintiff. Annexed hereto as Govt. Ex. J is a true copy of the United States' Second Set of Interrogatories. Specifically, Interrogatories, 26, 29 and 30 asked:

> 26. Please identify, and provide the information listed below for, **every** person having knowledge of the formation of the entities, the purpose for such entities, and the series of transactions described in Part V of the

Complaint, whether or not the person has information supporting Plaintiff's claims:

- the person's full name;
- the person's present or last known address and telephone number;
- the person's present or last known place of employment, when referring to a natural person;
- the person's occupation, employer, and title at that employer during the period of 1999-2001, when referring to a natural person;
- and the subject matter and a brief summary of the person's knowledge.

Please organize this information in a table sorted alphabetically by the last name of each person.

* * *

29. Please identify, and provide the information listed below for **every** communication the Individual Participants and/or any advisor thereof have had with any person concerning the transactions described in Part V of the Complaint:

- the date on which the communication was made;
- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;
- the person who made the communication;
- the person to whom the communication was made;
- the person who heard or received any portion of the communication, if
- different or in addition to those individuals to whom the communication was made;
- the duration of the communication;
- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;
- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;
- and a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

30. Please identify, and provide the information listed below for, **every** marketing or other material used in presenting the transactions described in Part V of the Complaint to the Individual Participants and/or any advisor thereof:

- type of document or other tangible thing;
- general subject matter;
- date of the document or other tangible thing; and
- author(s), addressee(s), and recipient(s).

- a description of each document or material or a citation to the beginning and ending bates stamp numbers of the document or material;
- the person who created the document or other tangible thing;
- whether you were given a copy of the document or other tangible thing;
- if a copy was given to you, whether and where the copy still exists;
- if you were not given a copy of the document, what is the reason for your not receiving a copy of the document;
- if you have not furnished the bates stamp numbers for the document or other tangible thing, the person who has custody of the document or other tangible thing and its location;
- and, if it does not exist, how the document or other tangible thing was disposed of and any person who authorized its disposal or who has knowledge of its disposal.

See Govt. Ex. J, Rogg. Nos. 26, 29 and 30.

37. On August 14, 2006, plaintiff served Plaintiff's Objections and Responses to the United States' Second Set of Interrogatories. Annexed hereto as Govt. Ex. K is a true copy of Plaintiff's Objections and Responses to the United States' Second Set of Interrogatories.

a. In answer to Interrogatory No. 26, plaintiff identified Charlotte Crosby as having "facilitated the submission of correspondence between Mr. Zucker and, including but not limited to, Ernst & Young, Jenkens & Gilchrist, P.C., and Deutsche Bank." See Govt. Ex. K, Answer to Rogg. No. 26.

b. In answer to Interrogatory No. 29, plaintiff objected and refused to identify all communications of Zucker and/or Boyd concerning the COBRA transactions upon the grounds, *inter alia*, that the requested information was "*cumulative or duplicative of information previously provided or in the possession of the United States*." See Govt. Ex. K, Answer to Rogg. No. 29. (Emphasis added.)

c. In answer to Interrogatory No. 30, plaintiff objected and refused to identify any "marketing or other material used in presenting the transaction" upon the grounds, *inter alia*, that the requested information was "*cumulative or duplicative of*

> *information previously provided or in the possession of the United States*" and stated that the individual participants "*do not recall having received any marketing materials*." See Govt. Ex. K, Answer to Rogg. No. 30. (Emphasis added.)

38. Attached to plaintiff's answers to the United States' Second Set of Interrogatories was a sworn verification by Zucker that he had read the answers and that, "to his best knowledge, they were each true and correct." These answers failed to identify any documents generated by Zucker and/or Boyd or provided to Zucker or Boyd during the course of any discussions regarding the proposed investment in the COBRA transactions. Specifically, these answers did not identify or produce copies of Govt. Exs. 2250, 2252, 2255, 2257 or 2260.

39. On August 14, 2007, plaintiff served Plaintiff's Objections and Responses to the United States' Third Set of Interrogatories. Attached to plaintiff's answers was a sworn verification by Zucker that he had read the answers and that, "to his best knowledge, they were each true and correct." These answers failed to identify any documents generated by Zucker and/or Boyd or provided to Zucker or Boyd during the course of any discussions regarding the proposed investment in the COBRA transactions. Annexed hereto as Govt. Ex. J is a true copy of Plaintiff's Objections and Responses to the United States' Third Set of Interrogatories.

40. Annexed hereto as Govt. Ex. 159 is a copy of the E&Y's COBRA Powerpoint Presentation revised November 11/199, detailing the implementation steps for COBRA.

41. Annexed hereto as Govt. Ex. 568 is a copy of E&Y's COBRA Action Workplan (Revised November 12, 1999), Item #7 of which states:

> Have client sign engagement letter with a fixed dollar amount stated as the fee. DO NOT reference tax losses in the engagement letter.

Govt. Ex. 568. Annexed hereto as Govt. Ex. 113 is an E&Y template for the COBRA engagement letter.

42. Annexed hereto as Govt. Ex. 177A is E&Y's transmittal of the November 11, 1999 COBRA engagement letter to Jerry Zucker by Federal Express for delivery on 11/12/99.

43. Annexed hereto as Govt. Ex. 177 is an executed copy of the $100 million COBRA engagement letter endorsed by Zucker, with his hand written note next to his endorsement, stating "100 million loss to be allocated @98/2 between the parties" and that his endorsement is "Subject to clarification of second paragraph on first page." This document was produced by E&Y to the United States on April 21, 2006, in response to the United States' document subpoena to E&Y. Despite also being in Crosby's withheld file, plaintiff at no time produced a copy of the *signed* $100 million engagement letter with Zucker's handwritten notes to the IRS or the Government in this litigation.

44. On or about December 15, 1999, Boyd and Zucker signed the assignment of Boyd's partnership interests in JBJZ Partners to JBJZ Investors, Inc., leaving the dates of this assignment and acceptance to be filled-in by J&G. See Govt. Ex. 2260 attached to the Declaration of David Steiner. The filled-in copy of this document, Govt. Ex. 2260A, which appears in the Closing Binder prepared by J&G reflects that this step of the COBRA transaction allegedly occurred on December 27, 1999. Annexed hereto as Govt. Ex. 2260A is a true copy of the filled-in copy which appears in the Closing Binder.

45. On or about December 15, 1999, Zucker signed a letter informing the Deutsche Bank (DB) that all interests in JBJZ Partners have been transferred to JBJZ Investors, Inc. and, accordingly, such partnership has liquidated this date as a matter of law. Therefore, this constitutes your authorization to transfer from the above-captioned account all assets held

therein to the account of JBJZ Investors, Inc., Account No. 222-10156-19 in liquidation of JBJZ Partners. The filled-in copy of this document, Govt. Ex. 2260B, which appears in the Closing Binder prepared by J&G reflects that this step of the COBRA transaction allegedly occurred on December 27, 1999. Annexed hereto as Govt. Ex. 2260B is a true copy of the filled-in copy which appears in the Closing Binder.

46. On or about December 15, 1999, Zucker signed as President of JBJZ Investors, Inc., an authorization to sell the positions of JBJZ Investors, Inc.(to be received from JBJZ Partnership on its liquidation) in its DB Alex Brown account, Account No. 222-10156-19. Critically, this authorization was signed by Zucker even before JBJZ Partnership had been liquidated and had distributed its assets to JBJZ Investors. The filled-in copy of this document, Govt. Ex. 2260C, which appears in the Closing Binder prepared by J&G reflects that the this step of the COBRA transaction allegedly occurred on December 28, 1998 (after the liquidation of JBJZ Partnership.) Annexed hereto as Govt. Ex. 2260C is a true copy of the filled-in copy which appears in the Closing Binder.

47. On or about December 15, 1999, Zucker signed a Consent of Sole Director of JBJZ Investors, Inc., electing himself President of the corporation, authorizing the issuance of corporate stock to himself and Boyd for $100 of consideration, and electing S Corp. status. The consent is backdated with the date of November 16, 1999. See Govt. Ex. 2260.

48. Annexed hereto as Govt. Ex. 138 is an internal E&Y email with respect to the procession of the Brown & Wood ("B&W") legal opinions, requiring 1) A B&W engagement letter for each partner; 2) a letter of factual representations for each partner to support the B&W opinion; and 3) a draft opinion letter (that the client is supposed to review in order to agree to representation #8).

49. Annexed hereto as Govt. Exs. 1028 and 1028A are copies of the proposed factual representations for signature by Zucker and Boyd. These proposed factual representations include a representation that "[t]here existed no understanding, agreement, obligation, or arrangement pursuant to which any of the parties ... committed to undertake all or any of the transactions . . . upon the happening of any other transaction . . . ." See Govt. Exs. 1028 and 1028A at paragraph 7.

50. This same factual representation is recited in the legal opinions issued to Zucker and Boyd on their COBRA transaction as one of the factual representations upon which Brown & Wood relied.

51. Plaintiff's counsel also represents the *Murfam* and *Tesoro* plaintiffs and have fully explored discovery against the Government on the very same penalty issues in that litigation.

52. Plaintiff has retained the very same expert witness, Gerald J. Songy, in this litigation to rebut the Government's expert witness on the penalty issue, Dr. LaRue, that plaintiff's counsel retained as a rebuttal witness in the *Murfam* and *Tesoro* cases.

53. Mr. Songy's expert witness report is nearly identical in all three cases.

54. Plaintiff's counsel has retained an additional penalty expert, Stuart Smith, in the *MURFAM* and *Tesoro* matters. Annexed hereto as Govt. Ex. N is a copy of Smith's Report. Annexed hereto as Govt. Ex. O is are pp. 22-26 of Smith's Deposition.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 17, 2007, at Washington, D.C.

/s John A. Lindquist
JOHN A. LINDQUIST

Trial Attorney
U.S. Department of Justice, Tax Division

**APPENDIX A**

| Govt. Ex. No. | Description | Pages |
|---|---|---|
| 138 | Internal E&Y email with respect to the procession of the B&W legal opinions, requiring 1) A BW engagement letter for each partner; 2) a letter of factual representations for each partner to support the BW opinion; and 3) a draft opinion letter (that the client is supposed to review in order to agree to representation #8). | 1-2 |
| 159 | COBRA Powerpoint Presentation, revised 11/11/99, detailing the COBRA implementation steps | 3-21 |
| 164 | IRS Information Document Request ("IDR") dated November 27, 2001 ("IDR #1"), requesting Boyd, inter alia, to provide basis computations for JBJZ Investors, Inc. | 22-24 |
| 165 | Letter dated January 2, 2002, responding IDR#1, advising that the requested basis computation will follow. | 25-27 |
| 166 | Letter dated January 7, 2002, further responding to IDR #1 on behalf of James and Hazel T. Boyd | 28-43 |
| 167 | IRS notes of a conference call on February 7, 2002, with respect to a similar request that Zucker, inter alia, to provide basis computations for JBJZ Investors, Inc. | 44-45 |
| 168 | letter to the IRS dated April 9, 2002, providing additional information on behalf of Zucker attached | 46-51 |
| 174A | Response to IDR #3, with enclosures | 52-85 |
| 177A | E&Y's transmittal of the November 11, 1999 COBRA engagement letter to Jerry Zucker by Federal Express for delivery on 11/12/99. | 86-89 |
| 177 | Executed copy of the $100 million COBRA engagement letter endorsed by Zucker, with his hand written note next to his endorsement, stating "100 million loss to be allocated @98/2 between the parties" and that his endorsement is "Subject to clarification of second paragraph on first page." | 90-93 |

| Govt. Ex. No. | Description | Pages |
|---|---|---|
| 568 | COBRA Action Work Plan (Revised 11/12/99) | 94-99 |
| 1008 | Unendorsed Boyd Representation Letter to B&W | 100-102 |
| 1028 | Unendorsed Zucker Representation Letter to B&W | 103-105 |
| 1029 | Unendorsed EY engagement letter to Zucker dated 11/15/99 "implementation of the COBRA strategy" stating EY is to be paid a fee of "$675,00 on a total investment in the Partnership by you and other indvidual(s) in the amount of $3.5 million. Investment in the partnership equals Cost of long option contract equal to 5% of the desired loss, plus cash equal to 2% of the desired loss." | 106-110 |
| 1101 | Fax to Zucker with IDR No. 1 | 111-113 |
| 2255 | Handwritten note fom Boyd to Zucker with respect to a discussion that day with Ray Knight stating "I again raised the issue with Ray about the "margin earning" on the Euro. He said he will call you tomorrow. He said the reason we only picked upon the margin gain of $625K (plus the original $2.5M) was because we capped our exposure." | 114-115 |
| 2260A | Copy from Closing Binder of filled-in assignment dated December 27, 1999 assigning James Boyd's partnership interest in JBJZ Partners to JBJZ Investors, Inc. | 116 - 117 |
| 2260B | Copy from Closing Binder of filled-in letter dated December 27, 1999 informing the Deutsche Bank (DB) that all interests in JBJZ Partners have been transferred to JBJZ Investors, Inc. and, accordingly, such partnership has liquidated this date as a matter of law. | 118 - 119 |
| 2260C | Copy from Closing Binder of filled-in authorization dated December 28, 1999 to sell the positions of JBJZ Investors, Inc. (to be received from JBJZ Partnership on its liquidation) in its DB Alex Brown account, Account No. 222-10156-19. | 120 - 122 |
| D | Crosby Deposition dated July 13, 2007 | 122 - 146 |
| E | Crosby Deposition and Document Subpoena | 147 - 150 |
| F (1/2) | Zucker Deposition dated July 19, 2007 | 151- 213 |

| Govt. Ex. No. | Description | Pages |
|---|---|---|
| F (2/2) | Zucker Deposition dated July 19, 2007 | 214 - 260 |
| G | Plaintiff's Initial Disclosures dated August 10, 2005 | 261 - 266 |
| H | US First Set of Discovery served December 12, 2006 | 267 - 300 |
| I | Plaintiff's Objections and Responses to the United States' First Set of Interrogatories and Plaintiff's Objections and Responses to the United States' First Requests for Production of Documents served February 28, 2006. | 301 - 340 |
| J | United States Second Set of Interrogatories | 341 - 358 |
| K | Plaintiff's Objections and Responses to the United States' Second Set of Interrogatories. | 359 - 378 |
| L | United States Third Set of Interrogatories | 379 - 395 |
| M | Plaintiff's Objections and Responses to the United States' Third Set of Interrogatories. | 396 - 417 |
| N | Smith Report prepared by plaintiff's counsel in *Tesoro Partners* | 418 - 454 |
| O | Smith Deposition, pp. 22-26 | 455 - 464 |
| 113 | E&Y template for COBRA engagement letter | 465 - 469 |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2007, a copy of the foregoing DECLARATION OF JOHN LINDQUIST was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

s/ John A. Lindqusit
John A. Lindquist
Trial Attorney, U.S. Department of Justice
U.S. Department of Justice
Telephone: (202) 307-6492
Facsimile: (202) 514-5238
E-mail: john.a.lindquist@usdoj.gov