# GOVERNMENT EXHIBIT 166

ERNST & YOUNG

Ernst & Young LLP
Two Liberty Square
Suite 800
P.O. Box 10647
Greenville, South Carolina 29603

Phone: (864) 242-5740
www.ey.com

**Tax Advisor/Client Communication**
**Privileged And Confidential**

January 7, 2002

Ms. Neva A. Gadsden
Internal Revenue Agent. ID #57-10271
Internal Revenue Service
4995 LaCross Road
Suite 1400A
N. Charleston, South Carolina 29406

James G. and Hazel T. Boyd
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 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

Dear Ms. Gadsden:

Enclosed, please find support documentation for the Taxpayers' basis in JBJZ Investors, Inc. This information should complete the response to your Information Document Request #1 for the examination of the Taxpayers' 1999 Form 1040.

If you have any questions, please contact me at (864) 298-6434 or Al Brooke at (404) 817-4834.

Sincerely,

Kenneth D. Hughes
Tax Senior Manager

KDH:lbb

Copy to Mr. Jim Boyd
Mr. Al Brooke

Ernst & Young LLP is a member of Ernst & Young International, Ltd.

2478

GOVERNMENT EXHIBIT 166

GOVERNMENT EXHIBIT JB 166 06-07-07

NOV-24-1999 18:14 DEUTSCHE BANK

# Deutsche Bank AG New York Branch

24 November, 1999

Foreign Exchange Digital Option Transaction
Our ref: ex27921A

JGB SOHCKET INVESTMENTS LLC
Care of David Parse
DB Alex Brown
222 West Adams Suite 1500
Chicago, IL 60606
312-424-6020

Deutsche Bank AG New York Branch
31 West 52nd Street
New York NY 10019

Telephone: 212-474-8000
Fax: 212-474-8560
Swift: DEUT US 33

Ladies and Gentlemen:

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on the Trade Date referred to below (the "Transaction"). The parties acknowledge and agree that B.T. Alex Brown has acted as introducing broker to Party A with respect to this Transaction. The Transaction consists of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii) and Section 4. Certain definitions and provisions which are applicable to more than one element of the Transaction are detailed in Section 1. The terms of the Transaction to which this Confirmation relates are as follows:

1. Section 1 – General Terms

| | |
|---|---|
| Notional Amount: | USD 10,000,000 |
| Trade Date: | 23 November 1999 |
| Termination Date: | 22 December 1999, subject to modification in accordance with the Following Business Day Convention. |
| Business Days: | In New York |
| Calculation Agent: | Party A |
| Currency Pair: | EUR/USD |

2. Section 1 – First Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | Zero |
| Party B Initial Exchange Amount: | USD 5,000,000 |
| Initial Exchange Date: | 25 November 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | USD 10,000,000 |
| Party B Final Exchange Amount: | Zero |
| First Range Level: | USD 1.0123 per EUR 1.00 |
| First Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(A) If the Spot Rate is, on the First Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the First Range Level (such event being a "First Digital Option Trigger Event"), then upon the occurrence of such First Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a First Digital OptionTrigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of the First Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the First Digital Option Trigger Event and provide details of the occurrence of such First Digital Option Trigger Event. A failure to give such notice shall not, however, prejudice the occurrence of the First Digital OptionTrigger Event.

n l h

2479

2. Section 1 – Second Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | USD 4,250,000 |
| Party B Initial Exchange Amount: | Zero |
| Initial Exchange Date: | 28 November 1999, subject to adjustment in accordance with the Following Business Day Convention |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | Zero |
| Party B Final Exchange Amount: | USD 9,375,000 |
| Second Range Level: | USD 1.0121 per EUR 1.00 |
| Second Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the *Spot Rate* is, on the *Second Rate Determination Date* at 10:00 a.m. local time in *New York*, less than or equal to the Second Range Level (such event being a "Second Digital Option Trigger Event"), then upon the occurrence of such Second Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a Second Digital Option Trigger Event has occurred, a *particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.*

(B) Upon the occurrence of a Second Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the Second Digital Option Trigger Event and provide details of the occurrence of such Second Digital Option Trigger Event. A failure to give such notice shall not however prejudice the occurrence of the Second Digital Option Trigger Event.

Section 2 - Other Provisions

(i) For the purposes of this Transaction only, the following provision shall apply:

"Subparagraph (ii) of Section 2 (c) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.

(ii) Offices:

(a) The Office of Party A for the Transaction is New York; and
(b) The Office of Party B for the Transaction is Delaware.

3. Representations:

Each party represents to the other party as of the date that it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(ii) Assessment and Understanding. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts the terms and conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of the Transaction.

(iii) Status of Parties. The other party is not acting as a fiduciary for or adviser to it in respect of this Transaction.

4. ISDA Agreement

If you and we are parties to either an ISDA Interest Rate and Currency Exchange Agreement (for which purposes this Transaction shall constitute a "Swap Transaction") or an ISDA Master Agreement (in each case an "Agreement") then this Confirmation supplements forms part of and is subject to such Agreement. If you and we are not yet parties to an Agreement then this Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form") with such modifications as you and we will in good faith agree. Upon execution by Party A and Party B of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation. Until we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation) shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement on the Trade Date of the first such Transaction between us in such form with the Schedule thereto (i) specifying only that (a) the governing law is New York law and (b) the Termination Currency is U.S. Dollars, (ii) incorporating the addition to the definition of "Indemnifiable Tax" contained in (page 49 of) the ISDA "Users Guide to the 1992 ISDA Master Agreements" and (iii) incorporating any other modifications to the ISDA form specified below.

5. Definitions

The definitions and provisions contained in the 1991 ISDA Definitions (as amended by the 1997 Supplement) as published by the International Swaps and Derivatives Association, Inc (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions (the "FX Definitions") as published by the International Swaps and Derivatives Association, Inc., the Emerging Markets Traders Association and The Foreign Exchange Committee (the "1998 Definitions", and together with the Swap Definitions, the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1991 Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours faithfully,
for and on behalf of
Deutsche Bank AG, New York

By: [signature] By: [signature]
Name: [signature] Name: [illegible]
Title: Title: Director

Confirmed as of the date first above written:
JGB BONDHOLDER INVESTMENTS LLC

By: [signature] By: ______
Name: Name:
Authorized Signatory Authorized Signatory

For any query relating to this Confirmation please contact 212-469-4033

TOTAL P.10

2481

# ASSIGNMENT AGREEMENT

THIS AGREEMENT is made the 24th day of November, 1999

BETWEEN:

(1) JZ BUCKINGHAM INVESTMENTS LLC whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "Original Party").

(2) DEUTSCHE BANK AG acting through its Chicago Branch with an office at 222 West Adams Street, Suite 1500, Chicago, Illinois 60606 (the "Counterparty").

(3) JBJZ PARTNERS whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "New Party").

WHEREAS:

(A) By the transaction(s) made by telephone and evidenced by exchanges of letter, Telex or SWIFT confirmations, brief details of which are set out in the Schedule to this Agreement (the "Original Transactions") the Counterparty and the Original Party assumed the rights and potential future contractual duties set out therein.

(B) It is the desire of the parties, that subject to the terms of this Agreement the New Party shall be assigned the financial position of the Original Party and shall assume the rights and potential future contractual duties equivalent to those of the Original Party under the Original Transactions (such resulting transactions shall be the "New Transactions").

IN CONSIDERATION OF THE COVENANTS, ASSUMPTIONS AND ACKNOWLEDGEMENTS RECORDED HEREIN THE PARTIES HEREBY AGREE THAT:

IT IS HEREBY AGREED as follows:

1. The parties hereto agree that with effect on and from November 24, 1999 (the "Effective Date"):

1.1 The Original Party hereby assigns, transfers and conveys to the New Party the financial positions described as the Original Transactions set out in the Schedule to this Agreement.

1.2 The New Party undertakes to the Counterparty to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the Counterparty in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transactions.

1.3 As of the Effective Date the Counterparty undertakes to the New Party to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the New Party in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transaction(s).

2. Each party will bear its own costs and expenses (including without limitation, all legal costs and expenses) incurred by it in connection with the negotiation, preparation and execution of this Agreement.

3. This Agreement may be executed in counterparts, each of which will be deemed an original.

4. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

CHICAGO 1993 v 1, 21143 00020

2482

IN WITNESS whereof the parties hereto have caused this Agreement to be duly executed the day and year first written.

SIGNED for and on behalf of
JZ BUCKINGHAM INVESTMENTS LLC

Jerry Zucker, Member

SIGNED for and on behalf of
DEUTSCHE BANK AG acting
through its Chicago Branch

SIGNED for and on behalf of
JBJZ PARTNERS

Jerry Zucker, General Partner

CHICAGO 1 1133 v 1, 00 05.CC01

## SCHEDULE

## DESCRIPTION OF ORIGINAL TRANSACTIONS

Original FX Digital Option Transactions:

| Transaction | Trade Date | Termination Date | Premium Amount | Reference Number |
|---|---|---|---|---|
| 1. | 23 Nov 99 | 22 Dec 99 | $25,000,000 | cx27920A |
| 2. | 23 Nov 99 | 22 Dec 99 | $23,750,000 | ex27920A |

[illegible]

# ASSIGNMENT AGREEMENT

THIS AGREEMENT is made the 24th day of November, 1999

BETWEEN:

(1) JGB BOHLCKEN INVESTMENTS LLC whose office is at 1320 Baldwin Road, Johns Island, South Carolina 29455 (the "Original Party");

(2) DEUTSCHE BANK AG acting through its Chicago Branch with an office at 233 West Adams Street, Suite 1900, Chicago, Illinois 60606 (the "Counterparty");

(3) JRZ PARTNERS whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "New Party").

WHEREAS:

(A) By the transaction(s) made by telephone and evidenced by one or more of letter, Telex or SWIFT confirmations, brief details of which are set out in the Schedule to this Agreement (the "Original Transactions") the Counterparty and the Original Party assumed the rights and potential future contractual duties set out therein.

(B) It is the desire of the parties, that subject to the terms of this Agreement the New Party shall be assigned the financial position of the Original Party and shall assume the rights and potential future contractual duties equivalent to those of the Original Party under the Original Transactions (such resulting transactions shall be the "New Transactions").

IN CONSIDERATION OF THE COVENANTS, ASSUMPTIONS AND ACKNOWLEDGEMENTS RECORDED HEREIN THE PARTIES HEREBY AGREE THAT:

IT IS HEREBY AGREED as follows:

1. The parties hereto agree that with effect on and from November 24, 1999 (the "Effective Date"):

1.1 The Original Party hereby assigns, transfers and conveys to the New Party the financial positions described as the Original Transactions set out in the Schedule to this Agreement.

1.2 The New Party undertakes to the Counterparty to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the Counterparty in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transactions.

1.3 As of the Effective Date the Counterparty undertakes to the New Party to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the New Party in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transaction(s).

2. Each party will bear its own costs and expenses (including without limitation, all legal costs and expenses) incurred by it in connection with the negotiation, preparation and execution of this Agreement.

3. This Agreement may be executed in counterparts, each of which will be deemed an original.

4. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

CHICAGO 1[illegible]

0.I.R

IN WITNESS whereof the parties hereto have caused this Agreement to be duly executed the day and year first written.

SIGNED for and on behalf of
JGB [illegible] INVESTMENTS LLC

X ______________________________
James G. Boyd, Member

SIGNED for and on behalf of
DEUTSCHE BANK AG acting
through its Chicago Branch

______________________________

SIGNED for and on behalf of
JMK PARTNERS

X ______________________________
James G. Boyd, General Partner

[illegible]

## SCHEDULE

## DESCRIPTION OF ORIGINAL TRANSACTIONS

Original FX [illegible] Transactions

| Transaction | Trade Date | Termination Date | Premium Amount | Reference Number |
| --- | --- | --- | --- | --- |
| 1. | 23 Nov 99 | 23 Dec 99 | $3,000,000 | [illegible] |
| 2. | 23 Nov 99 | 22 Dec 99 | $4,750,000 | [illegible] |

[illegible]

JGB Bohicket Investments LLC

November 24, 1999

VIA TELECOPY (312) 424-6019

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JGB Bohicket Investments LLC
Account No. 222-10154-11

Dear Mr. Parse:

This letter constitutes your authorization to transfer all remaining cash from the above-referenced account, JGB Bohicket Investments LLC to JBJZ Partners, Account No. 222-10155-10 effective immediately.

Thank you.

Very truly yours,

James G. Boyd, Member

CHICAGO 15962 v1

2488

JGB Bohicket Investments LLC

November 24, 1999

VIA TELECOPY (312) 424-6019

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JGB Bohicket Investments LLC
Account No. 222-10154-11

Dear Mr. Parse:

Please note from the attached assignment that the option positions in the above-referenced account have been assigned to JBJZ Partners, Account No. 222-10155-10 effective as of November 24, 1999. Please reflect such assignment in your records.

Thank you.

Very truly yours,

James G. Boyd, Member

CHICAGO [illegible]

P.02/10

JGB Bohicket Investments LLC

November 30, 1999

Deutsche Banc Alex Brown
Attn: Mr. David Parro
222 West Adams Street
Suite 1900
Chicago, IL 60606

To Whom It May Concern:

Please use this letter as your authorization to wire transfer $250,006 — from my account JGB Bohicket Investments LLC; Account No. 222-10154-11; to the following entity.

Deutsche Bank AG NY Branch
ABA #: 026-003-780
For Acct Of: DBAB-NY
Acct #: 100450210032
Ref: FX Options

Thank you for your attention to this matter.

Sincerely,

James G. Boyd, Member

CHICAGO 1 ... 

2490

# ASSIGNMENT OF PARTNERSHIP INTEREST IN JBJZ PARTNERS

1. The undersigned hereby irrevocably assigns a partnership interest in JBJZ Partners, a South Carolina general partnership ("Partnership") as follows:

| Transferor | Percentage Interest Transferred | Transferee |
|---|---|---|
| JGB Bohicket Investments LLC | all of its general partnership interest | JBJZ Investors, Inc. |

not as an assignee, but as a substitute general partner of the Partnership.

2. This Assignment shall be effective as of the date hereof.

JGB Bohicket Investments LLC

Dated: December 27, 1999

By: ______________________
James G. Boyd, Member

## ACCEPTANCE

The undersigned hereby accepts the Assignment hereinabove described.

Dated: December 27, 1999

JBJZ Investors, Inc.

By: ______________________
Jerry Zucker, President

CHICAGO 1 [illegible]

**JBJZ PARTNERS**

December 27, 1999

VIA TELECOPY (312) 424-6019

Mr. David Parse
Deutsche Banc Alex. Brown
222 W. Adams, Suite 1900
Chicago, IL 60606

RE: JBJZ Partners
Account No. 222-10155-10

Dear Sir:

This letter is for the purpose of informing you that all interests in JBJZ Partners have been transferred to JBJZ Investors, Inc. and, accordingly such partnership has liquidated this date as a matter of law. Therefore, this constitutes your authorization to transfer from the above-captioned account all assets held therein to the account of JBJZ Investors, Inc., Account No. 222-10156-19 in liquidation of JBJZ Partners.

Such transfer should be effective immediately.

Please contact me if you have any questions regarding this matter.

Very truly yours,

JBJZ PARTNERS

BY: JZ Buckingham Investments LLC

By: [signature]
Jerry Zucker, Member

CHICAGO 17081.1

2492