# GOVERNMENT EXHIBIT 168

ERNST & YOUNG

Ernst & Young LLP
Suite 2800
600 Peachtree Street
Atlanta, Georgia 30308-2215

Phone: 404-874-8300
www.ey.com

April 9, 2002

Internal Revenue Service
Small Business/Self-Employed Division
4995 Lacross Road, Suite 1400-A
N. Charleston, SC 29406

ATTN: Ms. Debra Simmons
Internal Revenue Agent

**VIA FAX**

**Re: Mr. Jerry Zucker**
**SSN 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**
**Form 1040 - December 31, 1999**

Dear Ms. Simmons:

As we discussed during our conference call a few weeks ago, I promised you I would provide additional information via a memorandum of points and authorities regarding Mr. Zucker's adjusted basis in the interests in the partnership (JBJZ Investment Partners) and the S Corporation (JBJZ Investors, Inc.). I apologize for the delay in responding.

As 1999 drew to a close, Mr. Zucker, having significant amounts of liquid assets on hand, desired to invest a substantial part of his liquid assets and also wished to spread his investment risk by investing with those with whom he had had prior investment experience. To place this in perspective, I wish to make the following general comments on behalf of Mr. Zucker. As I understand it:

- Mr. Zucker entered into foreign currency options for substantial non-tax reasons, including producing an overall economic profit from the movement of foreign currency against the dollar. Hedging is a common investment tool and carries both potential risk and reward.

- Mr. Zucker reasonably believed that he had a real opportunity to earn a reasonable profit, in excess of all fees and transaction costs, from the transactions he entered into, without regard to tax benefits.



GOVERNMENT EXHIBIT 168

1829

- Mr. Zucker believed he had an opportunity to make an aggregate gross return in excess of the sum of his net investment in the foreign currency options and the investment advisory fee he paid.

- Mr. Zucker contributed his foreign currency options to JBJZ Investment Partners for substantial non-tax business reasons, including diversification of his portfolio without the need for additional investment, as well as the desire to create a larger pool of capital through the involvement of another investor. Mr. Zucker did not hedge his risk with respect to the options with his bank, nor did the partnership after the transfer of the assets to it.

- There existed no understanding, agreement, obligation, or arrangement pursuant to which Mr. Zucker committed to undertake all or any of the transactions entered into upon the happening of any other transaction, except to the extent Mr. Zucker (through his Limited Liability Company and the partnership as Mr. Zucker's transferee) and his bank were contractually obligated to perform under the options in accordance with their stated terms.

In chronological order, and in keeping with the investment strategy and comments discussed above, the following transactions took place:

- On November 23, 1999, Mr. Zucker, through his Limited Liability Company, entered into over-the-counter non-publicly traded foreign currency option positions on the Euro and the Japanese yen with an unrelated bank. Specifically, Mr. Zucker purchased digital options on (1) the Euro/U.S. Dollar exchange rate at a strike price of U.S. $1.0123 per 1.0 Euro with an expiration date of December 22, 1999, a settlement date of December 27, 1999 and a payoff amount of $40,000,000, and paid a premium of $20,000,000, and (2) the Japanese Yen/U.S. Dollar exchange rate at a strike price of 106.19 Yen per U.S. $1.00 with an expiration date of December 22, 1999, a settlement date of December 27, 1999 and a payoff amount of $50,000,000, and paid a premium of $25,000,000 (the "long" options). Additionally, Mr. Zucker sold (1) a digital option on the Euro/U.S. Dollar exchange rate at a strike price of U.S. $1.0121 per 1.0 Euro and received a premium of $19,000,000, with an expiration date of December 22, 1999, a settlement date of December 27, 1999, and a payoff amount of $37,500,000 and (2) a digital option on the Japanese Yen/ U.S. Dollar exchange rate at a strike price of 106.21 Japanese Yen per U.S. $1.00 and received a premium of $23,750,000, with an expiration date of December 22, 1999, a settlement date of December 27, 1999, and a payoff amount of $46,875,000 (the "short" options). The options were "European-style," that is, exercisable only at expiration. Depending upon the direction of movement of the two currencies in relationship to each other, Mr. Zucker stood to yield a significant profit on the transactions. There also existed the potential (unfortunately realized) of a substantial loss on the transactions.



A-560

- On November 24, 1999. Mr. Zucker contributed the options to the JBJZ partnership, a South Carolina general partnership, as a contribution to capital. Mr. Zucker had basis in the long options, but neither Mr. Zucker nor the partnership had any liability with respect to the short options at the time they were contributed to the partnership. In addition, on December 22, 1999, Mr. Zucker contributed 4,500 shares of Cisco Systems, Inc. stock, held in excess of one year, to the partnership as a contribution to capital. At this point. Mr. Zucker's basis in his interest in the partnership under §752 of the Internal Revenue Code totaled his adjusted basis in the long options as well as his adjusted basis in the Cisco stock.

- On December 22, 1999, the partnership's option positions terminated in accordance with their terms.

- Later the same day, the partnership purchased Canadian Dollars (foreign currency) as an investment.

- On December 27, 1999, Mr. Zucker contributed his interest in the partnership to JBJZ Investors, Inc., the S Corporation, becoming a shareholder with 90% of the outstanding stock, as a contribution to its capital.

- On December 27, 1999, the partnership was dissolved and liquidated. As a distribution in liquidation of the partnership, all of the foreign currency and stock were distributed to the S Corporation. since it now held 100% of the interest in the partnership.

- On December 2, 1999, the S Corporation, in its last transactions for the tax year, sold all of its investment in the foreign currency that it received upon liquidation of the partnership, as well as its Cisco stock.

In discussing the question of basis, it is noted that IRC §721(a) and Treas. Reg. §1.721-1 generally provide that no gain or loss is recognized by either the partnership or any partner in the case of a contribution of property to the partnership in exchange for a partnership interest. Although the term "property" is not specifically defined in Subchapter K of the IRC, its common meaning implies that to be considered property, an asset or right must involve some potential economic return (even if at a loss). In tax law, property is generally given a broad interpretation, such as is the case under §351, with the major point of demarcation being the distinction between services and property. The long options contributed to the partnership constitute property under §721, and the contribution of the long options to the partnership generated neither gain nor loss to Mr. Zucker.

With regard to the short options, the question is not so much whether they constitute property (much less likely than the long options), but, instead, that they do not constitute a liability of Mr. Zucker's nor the partnership's under operation of §752, and therefore has no effect on Mr. Zucker's basis in his partnership interest.

I.R.C. §722 provides, in general, that the basis of a partnership interest to the partner is equal to the amount of money plus the adjusted basis of the property contributed to the partnership, increased by the gain, if any, recognized by the partner on the contribution. Thus, Mr. Zucker's basis in the partnership interest is his basis in the property contributed to the partnership (the long options) as no gain or loss was recognized at the time of the contribution. In effect, the transfer to the partnership consisted of the long options passing to the partnership and the partnership's assumption of the short options, with due recognition to the separate nature of the long options and the short options.

Section 752 then comes into play. That section discusses the treatment of certain liabilities and their impact on partners' basis by characterizing decreases in a partner's share of partnership liabilities, or assumption by the partnership of a partner's individual liabilities, as the functional equivalent of a distribution of money from the partnership to the partner (a basis reducing event under §733).

Similar to §721 not defining "property," §752 itself does not define the term "liabilities." The Internal Revenue Service made an attempt at defining "liabilities" in temporary and proposed regulations in 1998, but when the final regulations were issued in 1999 the 1998 definition was eliminated without explanation. But, generally, the Service has held that a liability does not arise prior to the time an obligation is considered to arise under general federal income tax principles. For an example, see Revenue Ruling 73-301, 1973-2 C.B. 215, where the Service applied general income tax accounting principles in holding that interim payments received by a partnership for services rendered in connection with a long-term contract reported on the completed contract method did not constitute liabilities for purposes of §752. Instead, the ruling characterizes such payments as unrealized receivables, the income from which increases the basis of a partner's interest only when recognized in income by the partnership for tax purposes. In effect, the position of the ruling is that although the partnership had already received the money represented by the progress payments, there was no attendant legally binding obligation to repay and, consequently, no liability.

When combined with the long-held position of the Courts that unmatured claims are not liabilities under §752 any more than they are necessarily deductible under the "all events" test enumerated in §461(a), a reduction to a partner's basis in the partnership does not take place as no liability has been created. Thus, at the time of Mr. Zucker's transfer, the possible claims of the bank against him or the partnership, as represented by the short options, were entirely speculative and contingent (since the short options were out of the money at the time), and the amount of any claim thereunder could not be determined. In effect, until the purchaser of the short option exercises the option, the seller of the option is under no obligation to sell the referenced stock or security and does not take the option into account prior to that time. In effect, Mr. Zucker, and shortly later the partnership, only had an obligation to make a payment under the short option if the value of the foreign currency exceeded the strike price on the expiration date. This follows the Service's view under Rev. Rul. 80-238, 1980-2 C.B. 96, that the obligation of the writer of a call option (the short option) that is not in-the-money does not arise prior to the exercise of the option by the holder. Thus, the bank's claim against the partnership under the

short options would not be considered a liability of Mr. Zucker nor the partnership for purposes of §752.

In what appears to be the only decided case on point, the Tax Court agreed with the Service that a holder's claim against the grantor of an option is not a liability within the meaning of §752. In *Helmer v. Commissioner*, T.C. Memo 1975-60, a partnership sold an option to purchase land that it owned, and then distributed the premium to the partners. The taxpayer asserted that the holder's claim against the partnership to perform under the option was a liability for purposes of §752 and thus had the effect of increasing his basis in his partnership interest. Under the facts of the case, if the option were not considered a liability, then the amount of the premium distributed to Helmer would have exceeded his basis in his partnership interest, resulting in taxable gain on the excess under §731.

The Tax Court agreed with the Service's position that the option holder's claim against the partnership to perform under the option did not create a liability of the partnership. Likewise, a short option contract such as that entered into by Mr. Zucker creates no obligation to return the premium to the purchaser. In fact, the premium represents deferred income to the seller and is not a liability.

The effect of the above is that Mr. Zucker had partnership adjusted basis resulting from contribution of the long options to the partnership, but no basis adjustment for the short options because those positions represented deferred income to the seller and is not considered a liability of the partnership. Keep in mind that the seller of an option does not know whether he or she will ever be called upon to perform under the option. Options often expire unexercised, and the seller's obligation is uncertain and speculative, always being dependent upon price movement of the asset subject to the contract over the term of the contract.

Ms. Simmons, I hope this adequately responds to your question regarding Mr. Zucker's basis in the partnership, and later, in the S corporation. Again, I apologize for the delay. If there are any questions, I may be reached at 404-817-4834. Thanks for your consideration of this information.

Very truly yours,

[signature]

Nelson A. Brooke
Principal

Copies to Mr. Jerry Zucker
Mr. Barry Emerson
Mr. Kenneth Hughes, Ernst & Young LLP
Mr. Shawn Smith, Ernst & Young LLP