# GOVERNMENT EXHIBIT 174A

ERNST & YOUNG

Ernst & Young LLP
Suite 2800
600 Peachtree Street
Atlanta, Georgia 30308-2215

Phone: (404) 874-8300
www.ey.com

November 19, 2002

Internal Revenue Service
Small Business/Self-Employed Division
4995 Lacross Road, Suite 1400-A
N. Charleston, SC 29406

ATTN: Mr. Alan E. Moss
Internal Revenue Agent

**Re: Jerry & Anita G. Zucker**
**SSN 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**
**Form 1040 - December 31, 1999**
**IDR #3**

**VIA FEDEX**

Dear Mr. Moss:

This letter is in response to information requested in your Information Document Request #3, dated September 19, 2002. I apologize for the delay in responding. It is my understanding that separate, but identical IDRs have been issued to Mr. Zucker, Mrs. Zucker, Mr. Boyd, Mrs. Boyd, JBJZ Partners and JBJZ Investors. This response is intended to cover each of the IDRs.

**Item 1** – Please find enclosed a copy of the Ernst & Young LLP engagement letter to Mr. Zucker dated November 11, 1999. As we understand it, there are no other documents not previously disclosed to the Internal Revenue Service. A similar engagement letter was sent to Mr. Boyd.

**Item 2** – In discussing this question with Ray Knight, Shawn Smith, Kenny Hughes and Mr. Zucker, we have determined that no promotional materials were either presented or provided to, or left with Mr. Zucker during consideration of the transactions. The same is true for Mr. Boyd.

**Item 3** - All available documentation has been previously provided. That documentation includes agreements, the legal opinions discussing the tax consequences of the transactions, the account statements, etc.

**Item 4** – Both Mr. Zucker and Mr. Boyd are extremely sophisticated investors and have extensive experience with "financial products," including currency transactions and options trading. Both taxpayers well-recognized that the investments carried substantial risk as well as opportunity for generating a significant profit in a short period of time.

GOVERNMENT EXHIBIT 12-A

A Member Practice of Ernst & Young Global

Both knew that the profit potential exceeded all costs and fees associated with the transactions. In addition, Mr. Zucker and Mr. Boyd understood that potential existed that if the final strike price was in a very narrow range, any specific long option would be "won," while the short option in the same currency would not have to be fulfilled. This provided a unique opportunity to generate a very large profit on the transactions. For Mr. Zucker, you might recall that, among other transactions, his LLC bought Euro/U.S. Dollar digital options at U.S. $1.0123 per 1.0 Euro with a payoff amount if in the money totaling $40,000,000. In addition, the LLC sold Euro/U.S. Dollar digital options at U.S. $1.0121 per 1.0 Euro with profit potential of $37,500,000. If the strike price at the moment of termination of the positions (December 22, 1999 at 10:00 A.M., EST) had been either U.S. $1.0122 or $1.0123, Mr. Zucker would have "won" on the long option position and would not have had to cover the short options, resulting in a taxable profit on the separate transactions of $77,500,000. Similar opportunities for large profit existed on the Japanese/U.S. Dollar options as well as for Mr. Boyd. While the nature of the options made daily prices somewhat unimportant until the moment of expiration, it was not unusual to be "in the money" and "out of the money" periodically on the same day and this could be tracked. I am aware of at least one situation where the daily closing price was, in fact, at an exact strike price needed to win both sides of the transactions.

Thus, while both Mr. Zucker and Mr. Boyd understood the inherent and significant risks in investments as sophisticated as these, their prior experience led them to conclude that the opportunity to make a significant return on their individual LLC's investments over a 30-day period, as well as the possibility of hitting a "home run" on one or more of the option pairs, made the investment strategy a worthwhile undertaking, even without regard to the tax attributes of the transactions. Indeed, the transactions resulted in significant income over a short period of time, e.g. $625,000 gain for JBJZ Partners over approximately 30 days, as several transactions finished "in the money."

I would like to briefly address two similar Service concerns, one of which you mentioned in your IDR – that the taxpayers were not substantially at risk under §465 of the I.R.C., or that the flow through losses were not considered passive activity losses under §469.

I.R.C. §465(a)(1) restricts an individual's ability to recognize tax losses from an activity to the taxpayer's aggregate at-risk investment as defined in §465(b). Sec. 465(b) provides that a taxpayer's at-risk investment is the sum of cash and property contributed to the activity, plus borrowed amounts for which the taxpayer is personally liable. A complicated series of rules applies to the definition of what constitutes a borrowed amount that may be taken into account for purposes of Sec. 465. By definition, all liabilities of a limited liability company, whether specifically recourse or nonrecourse to the entity, are nonrecourse to its members. However, recall that the long and short option positions were contributed by the separate LLCs to the JBJZ partnership. Thus, obligations that may have been nonrecourse in the LLC entity structure were not nonrecourse at the partnership level.

Under §465, the statutory language is worded exclusively in terms of the at-risk investment of the taxpayer. Unlike in the context of partnership basis under Reg. Sec.

1.752-2, where a taxpayer may receive basis in its partnership interest for loans provided by related parties (and may even be allocated the entire amount of such liability), §465 contains no such benefit for a taxpayer for potential at-risk amounts that may be supplied by parties related to the taxpayer.

My earlier letter regarding the technical determination of the basis of each partner's share in his partnership interest and each shareholder's share in the S Corporation indicated that the long options clearly qualified as property contributed to a partnership with attendant increase to basis, and further, that the contribution of the short option position to the partnership was not a contribution of property and did not have the effect of reducing either partner's basis in his partnership interest.

The long option position was property with adjusted basis attributable to each partner. The partnership basis position being correct, the expiration of various option positions negates the question of "at risk" under §465 and the reported losses may flow through to the returns of the two partners/shareholders.

I.R.C. §469 provides the legislative basis for the so-called passive activity loss rules. The passive activity loss ("PAL") rules under I.R.C. §469 limit the ability of a taxpayer to deduct passive activity losses. A passive activity is generally defined as an activity involving the conduct of a trade or business in which the taxpayer does not materially participate. Generally, passive losses may be claimed only to the extent of passive income. If an activity generates passive losses that cannot currently be offset by passive income, the passive losses are suspended and carried over to future tax years. The suspended losses can be deducted either (1) against passive income generated in future periods, or (2) against gains generated upon the taxpayer's disposition of his interest in the passive loss activity. Normal tax strategy would dictate that taxpayers that have no passive activity income should avoid PALs because they may not deduct their disallowed PALs until they dispose of their interest in the passive activity. Further, taxpayers holding interests in passive activities that generate losses should attempt to generate legitimate passive income so that they may utilize the passive losses arising from their loss activities.

## Trading of Personal Property Not a Passive Activity

Under Treas. Reg. §1.469-1T(e)(6), "[a]n activity of trading personal property for the account of owners of interests in the activity is not a passive activity . . . " This is true regardless of whether or not the activity is deemed to be a trade or business. See Treas. Reg. §1.469-1T(e)(6)(i). For purposes of this regulation, the term personal property is generally defined as "any personal property of a type which is actively traded." See Treas. Reg. §1.469-1T(e)(6) and IRC §1092(d). The regulations provide an example to illustrate the regulation (see Reg. Sec. 1.469-1T(e)(6)(iii)):

> A partnership is a *trader* of stocks, bonds, and other securities (within the meaning of section 1236(c)). The capital employed by the partnership in the trading activity consists of amounts contributed by the partners in exchange for their partnership

interests, and funds borrowed by the partnership. The partnership derives gross income from the activity in the form of interest, dividends, and capital gains. Under these facts, the partnership is treated as conducting an activity of trading personal property for the account of its partners. Accordingly, under this paragraph (e)(6), **the activity is not a passive activity** [emphasis added].

In *Moller v. Commissioner*, 721 F2d 810 (Fed. Cir. 1983), the Federal Circuit Court, citing *Purvis v. Commissioner*, 530 F2d 1332 (9th Cir. 1976), stated the test to be used in order to distinguish between an "investor" and a "trader." According to the court, if the taxpayer is an investor the "securities are purchased to be held for capital appreciation and income, usually without regard to short-term development that would influence the price of securities on the daily market." If the taxpayer is a trader, according to the court, the "securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short term basis." The court went on to state, "in order to be a trader, a taxpayer's activities must be directed to short-term trading, not the long-term holding of investments, and income must be principally derived from the sale of securities rather than from dividends and interest paid on those securities. In determining whether a taxpayer who manages his own investments is a trader, and thus engaged in a trade or business, relevant considerations are the taxpayer's investment intent, the nature of the income to be derived from the activity, and the frequency, extent, and regularity of the taxpayer's securities transactions."

Based on the above, the transactions entered into by the partnership and S Corporation were those of a "trader," as defined in the regulations, the activity therefore not being considered a passive activity, and not subject to the limitations of I.R.C. §469.

Based on the above discussion, there are no issues to be raised by the Service regarding the "sham" transaction doctrine, the "economic purpose" doctrine, or the profit motive of the taxpayers. Additionally, §§465 and 469 do not operate to deny the claimed tax treatment of the transactions.

Item 5 – To the best of my knowledge and understanding, there exist no documents regarding the LLCs, the Partnership and the S Corporation that have not been disclosed, either in conjunction with the disclosure initiative under Announcement 2002-02, or in response to Information Document Requests.

Item 6 – I believe this question relates to the Canadian Currency transactions. On December 22nd and 23rd of 1999 JBJZ Partners purchased Canadian Dollars at .6800. These transactions are reflected in the Deutsche Bank Alex.Brown December statements (copies enclosed). The Canadian Dollars were among the assets transferred to JBJZ Investors, Inc. on December 28, 1999 arising from the liquidation of JBJZ Partners. The partnership basis attached to the Canadian Currency holdings as discussed in our prior letter, and these holdings were liquidated by the corporation on December 29, 1999 at .6852. The sale of the currency is reflected on the Deutsche Bank Alex.Brown December

1999 statements for the corporation (copies enclosed). The actual trade tickets are not available, but the monthly statements confirm the transactions.

I believe we are in receipt of requests to extend the statute of limitations for the December 31, 1999 tax years of the two partners/shareholders. I would like to discuss with you limiting the extension requests to the issues raised thus far during the examination of the tax returns of the Zuckers and the Boyds. I believe the Service has been amenable to using restricted consent procedures to ameliorate the concern of lengthy extensions expressed in other similarly situated examinations of taxpayers.

Mr. Moss, I enjoyed our meeting a few months ago in Greenville and found the discussions of that day to be very interesting. If you have any questions regarding any of the information, please call me at 404-817-4834.

Very truly yours,

Nelson A. Brooke
Principal

Enclosures

cc: Jerry Zucker

Jim Boyd

Ray Knight, Ernst & Young LLP

Kenny Hughes, Ernst & Young LLP



A-27d

# Deutsche Banc Alex. Brown
# Client Statement

DB ALEX. BROWN LLC
P. O. BOX 1776
BALTIMORE MD 21203

MACKAY / PARSE
INVESTMENT REP #030
222 WEST ADAMS ST. SUITE 1900
CHICAGO ILLINOIS 60606
(312) 424-6000 (800) 562-7200

JBJZ INVESTORS INC
ATTN: JERRY ZUCKER
16 BUCKINGHAM DRIVE
CHARLESTON SC 29407-3455

## Portfolio Overview

### Assets

| | Value as of January 31, 2000 | % of total assets |
|---|---|---|
| Cash | $0.00 | 0.0% |
| Money funds | 3,270,423.99 | 100.0 |
| Common stocks | 0.00 | 0.0 |
| Preferred stocks | 0.00 | 0.0 |
| Mutual funds | 0.00 | 0.0 |
| Government debt issues | 0.00 | 0.0 |
| Corporate debt issues | 0.00 | 0.0 |
| Municipal debt issues | 0.00 | 0.0 |
| Certificates of deposit | 0.00 | 0.0 |
| Options | 0.00 | 0.0 |
| Limited partnerships | 0.00 | 0.0 |
| Annuities | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| Total assets | $3,270,423.99 | 100.0% |

### Liabilities

| | Value as of January 31, 2000 | % of total assets |
|---|---|---|
| Cash debit | $0.00 | 0.0% |
| Margin debit | 0.00 | 0.0 |
| Short options | 0.00 | 0.0 |
| Other short securities | 0.00 | 0.0 |
| Total liabilities | $0.00 | 0.0% |

| | |
|---|---|
| Net Value of Your Account | $3,270,423.99 |
| Net Value as of December 31, 1999 | $3,263,612.05 |

Deutsche Bank

### Activity

| | This period |
|---|---|
| Net value of your account as of December 31 | $3,263,612.05 |
| Net cash activity | 0.32 |
| Net securities into/out of account | 0.00 |
| Net return on your portfolio | 6,811.62 |
| Net value of your account as of January 31 | $3,270,423.99 |

### Income

| | This period | Year to date |
|---|---|---|
| Net income received | $6,811.62 | $6,811.62 |
| Current estimated annual income | $90,590.74 | |
| Current estimated annual yield | 2.77% | |

Statement of Account
January 1 to January 31, 2000
Account 222-10156

**Deutsche Banc Alex. Brown**

Statement of Account
January 1 to January 31, 2000
Account 222-10156



## Cash Summary

**Opening Cash Balance** $0.00

### Income Summary

| | This period | Year to date |
|---|---|---|
| Taxable dividends | $0.00 | $0.00 |
| Taxable interest | 0.00 | 0.00 |
| Capital gains distributions received | 0.00 | 0.00 |
| Non-taxable dividends | 0.00 | 0.00 |
| Non-taxable interest | 6,811.62 | 6,811.62 |
| Net income received | $6,811.62 | $6,811.62 |

### Cash Activity

| | This period | Year to date |
|---|---|---|
| Deposits | $0.32 | $0.32 |
| Withdrawals | 0.00 | 0.00 |
| U.S. tax withheld | 0.00 | 0.00 |
| Non-resident tax withheld | 0.00 | 0.00 |
| Foreign taxes withheld | 0.00 | 0.00 |
| Interest charges on cash debit | 0.00 | 0.00 |
| Interest charges on margin debit | 0.00 | 0.00 |
| Net cash activity | $0.32 | $0.32 |

### Purchases and Sales

| | This period | Year to date |
|---|---|---|
| Total purchases | $6,811.94 - | $6,811.94 - |
| Total sales | 0.00 | 0.00 |
| Other money fund sales | 0.00 | 0.00 |
| Net purchases/sales(incl. money funds) | $6,811.94 - | $6,811.94 - |

### Other Activity

| | This period | Year to date |
|---|---|---|
| Bond redemptions | $0.00 | $0.00 |
| Other activity | 0.00 | 0.00 |
| Net other activity | $0.00 | $0.00 |

**Closing Cash Balance** $0.00

## Portfolio Summary

### Activity

| | This period | Year to date |
|---|---|---|
| Previous net account value | $3,263,612.05 | $3,263,612.05 |
| Net cash activity | 0.32 | 0.32 |
| Net securities into/out of account | 0.00 | 0.00 |
| Adjusted previous account value | $3,263,612.37 | $3,263,612.37 |
| Net change in market value | 0.00 | 0.00 |
| Net income received | 6,811.62 | 6,811.62 |
| Net account value as of January 31, 2000 | $3,270,423.99 | $3,270,423.99 |
| Net return on portfolio | 6,811.62 | 6,811.62 |

# Portfolio Holdings

Prices are provided by an independent pricing service. For current market price quotations, call your Investment Representative.

## Cash and Equivalents

| | Amount | Estimated annual income | Current annual yield |
|---|---|---|---|
| DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC - TAX FREE SER | $3,270,423.99 | $90,590.74 | 2.77% |
| Total cash and equivalents | $3,270,423.99 | $90,590.74 | |

# Portfolio Activity

## Dividends and Interest

| Date | Activity | Description | Amount |
|---|---|---|---|
| 01/25/2000 | Interest | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC TAX FREE SERIES | $6,811.62 |
| Total dividends and interest | | | $6,811.62 |

## Purchases and Sales

| Settlement date | Activity | Type | Quantity | Description | Unit price | Amount |
|---|---|---|---|---|---|---|
| 01/25/2000 | Fund reinvested | Cash | 6,811.62 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC- TAX FREE SER MONTHLY DIVIDEND REINVESTED | $1 | $6,811.62 |
| 01/27/2000 | Purchased | Sweep | 0.32 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC- TAX FREE SER | 1 | 0.32 |
| Net purchases and sales | | | | | | $6,811.94 |

# Deposits

## Other Deposits

| Date posted | Description | Amount |
|---|---|---|
| 01/26/2000 | LIQUIDATION FROM JBJZ PARTNERS A/O 12/27/99 | $0.32 |
| Total other deposits | | $0.32 |

**Deutsche Bank**

Statement of Account
January 1 to January 31, 2000
Account 222-10156

**Deutsche Banc Alex. Brown**

Statement of Account
January 1 to January 31, 2000
Account 222-10156



# Market Indices

## Equities

| Equities | Current | December 31, 1999 | Change year to date |
|---|---|---|---|
| Dow Jones Industrial Average | 10,940.53 | 11,497.12 | 4.8%- |
| NASDAQ Composite | 3,940.35 | 4,069.31 | 3.2%- |
| S& P 500 | 1,394.46 | 1,469.25 | 5.1%- |
| MSCI EAFE | 1,646 62 | 1,760.04 | 6.4%- |

## Fixed Income Securities

| Fixed Income Securities | Current | December 31, 1999 |
|---|---|---|
| Long term treasury bond yield | 6.49% | 6.48% |
| Lehman Bros. Inter bond index | 0.43%- | 0.16% |

# Disclosure

Please advise us promptly of any material change in your investment or financial situation.
Your account is with DB Alex. Brown LLC, a registered broker-dealer, referred to herein as Deutsche Banc Alex. Brown. The reporting period for your statement ends on the last day of the month. The dates indicated on purchases and sales are settlement dates. Margin interest charges incurred after the period indicated on this statement will be shown on the next statement. In order to review margin interest charges, you should retain this statement for use in conjunction with the next statement.
Any free credit balance represents funds payable on demand which, although properly accounted for on our books and records, are not segregated and may be used in the conduct of this Firm's business, without compensation to you.
Positions and activity shown on your margin account comprise a combined statement of your margin account and your special memorandum account. The special memorandum account is maintained for you in accordance with Regulation T of the Board of Governors of the Federal Reserve System and is comprised of funds generated by your margin activity and segregated for your future use. A permanent detailed record of the activity in this account is available for inspection at your request. We reserve the right to establish or modify requirements pertaining to the operation of a margin account which may exceed requirements established by the Federal Reserve Board and/or the New York Stock Exchange.
Aggregate commissions which you have paid are not reported separately on this statement of account.
Commissions and charges incurred in connection with the execution of option and other transactions have been included in confirmations of those transactions previously furnished you. A summary of this information will be made available to you upon request.
Orders for your account may be aggregated with other customer orders. In so doing, you may receive an average price for your orders which may be different from the price(s) you may have received had your orders not been aggregated. This practice may also result in your orders being only partially completed.
A financial statement on this Firm is available for your personal inspection at our offices, or a copy will be mailed upon your written request.
Information regarding market price, market value, estimated income, dividends and annual yields is based on data obtained from sources we consider to be reliable but is not guaranteed as to accuracy. This information is provided as a convenience to aid in your financial recordkeeping.
Deutsche Banc Alex. Brown money fund yield figures are based on the seven day period preceding the statement date. Flag Investors Funds estimated yield and income figures are computed based on either dividends for the preceding twelve-month period or the annualized rate of distribution.
Account information may have been provided regarding both publicly traded limited partnerships and certain other limited partnerships purchased through the Firm. The "market value" amount listed for these other limited partnerships does not necessarily reflect current market value but rather is based upon the information we obtain from sources outside the Firm but whose accuracy we cannot confirm.
We receive payment for routing for execution some orders in certain listed securities. The determination as to where to route orders is based on several factors, subject to the overriding consideration that customers receive best execution. All orders for which we receive payment are exposed to the possibility of price improvement, so that all such orders potentially can be executed at prices superior to the best bid or best offer. Payment is received in the form of rebates, or credits against exchange fees and specialist fees. Details will be furnished upon written request.
Beginning March 31, 2000, DB Alex. Brown LLC will debit $50 from each account transferring to another broker-dealer or financial institution to cover the administrative costs of such transfer.
NASD Regulation, Inc. makes available to investors a brochure regarding its Public Disclosure Program. The Public Disclosure hotline number is (800) 289-9999. The NASD Regulation website can be located at www.nasdr.com
DB Alex. Brown LLC, Member SIPC

* The current portfolio value excludes unpriced securities
** Denotes a mutual fund.
*** Denotes a foreign security

# Money Market Fund 7 Day Average Yields:

| | |
|---|---|
| DB ALEX. BROWN CASH RESERVE PRIME | 5.22% |
| DB ALEX. BROWN CASH RESERVE TREASURY | 4.65% |
| DB ALEX. BROWN CASH RESERVE TAX FREE | 2.77% |

# Your Standing Instructions are:

Purchases: Hold securities in street name
Sales: Reinvest proceeds in money fund
Income: Invest in money market fund

End of Statement

# Deutsche Banc Alex. Brown
## Client Statement

DB ALEX. BROWN LLC
P. O. BOX 1776
BALTIMORE MD 21203

MACKAY / PARSE
INVESTMENT REP #030
222 WEST ADAMS ST. SUITE 1900
CHICAGO ILLINOIS 60606
(312) 424-6000 (800) 562-7200

JBJZ INVESTORS INC
ATTN: JERRY ZUCKER
16 BUCKINGHAM DRIVE
CHARLESTON SC 29407-3455

## Portfolio Overview

### Assets

| Assets | Value as of December 31, 1999 | % of total assets |
|---|---|---|
| Cash | $0.00 | 0.0% |
| Money funds | 3,263,612.05 | 100.0 |
| Common stocks | 0.00 | 0.0 |
| Preferred stocks | 0.00 | 0.0 |
| Mutual funds | 0.00 | 0.0 |
| Government debt issues | 0.00 | 0.0 |
| Corporate debt issues | 0.00 | 0.0 |
| Municipal debt issues | 0.00 | 0.0 |
| Certificates of deposit | 0.00 | 0.0 |
| Options | 0.00 | 0.0 |
| Limited partnerships | 0.00 | 0.0 |
| Annuities | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| Total assets | $3,263,612.05 | 100.0% |

### Liabilities

| Liabilities | Value as of December 31, 1999 | % of total assets |
|---|---|---|
| Cash debit | $0.00 | 0.0% |
| Margin debit | 0.00 | 0.0 |
| Short options | 0.00 | 0.0 |
| Other short securities | 0.00 | 0.0 |
| Total liabilities | $0.00 | 0.0% |

| | |
|---|---|
| Net Value of Your Account | $3,263,612.05 |
| Net Value as of December 31, 1998 | $0.00 |

### Activity

| Activity | This period |
|---|---|
| Net value of your account as of November 30 | $0.00 |
| Net cash activity | 1,955,475.36 |
| Net securities into/out of account | 535,625.00 |
| Net return on your portfolio | 772,511.69 |
| Net value of your account as of December 31 | $3,263,612.05 |

### Income

| Income | This period | Year to date |
|---|---|---|
| Net income received | $0.00 | $0.00 |
| Current estimated annual income | $123,038.87 | |
| Current estimated annual yield | 3.77% | |

Statement of Account
December 1 to December 31, 1999
Account 222-10156

Deutsche Bank

**Deutsche Banc Alex. Brown**

Statement of Account
December 1 to December 31, 1999
Account 222-10156



## Cash Summary

**Opening Cash Balance** $0.00

### Income Summary

| | This period | Year to date |
|---|---|---|
| Taxable dividends | $0.00 | $0.00 |
| Taxable interest | 0.00 | 0.00 |
| Capital gains distributions received | 0.00 | 0.00 |
| Non-taxable dividends | 0.00 | 0.00 |
| Non-taxable interest | 0.00 | 0.00 |
| Net income received | $0.00 | $0.00 |

### Cash Activity

| | This period | Year to date |
|---|---|---|
| Deposits | $3,355,475.36 | $3,355,475.36 |
| Withdrawals | 1,400,000.00 - | 1,400,000.00 - |
| U.S. tax withheld | 0.00 | 0.00 |
| Non-resident tax withheld | 0.00 | 0.00 |
| Foreign taxes withheld | 0.00 | 0.00 |
| Interest charges on cash debit | 0.00 | 0.00 |
| Interest charges on margin debit | 0.00 | 0.00 |
| Net cash activity | $1,955,475.36 | $1,955,475.36 |

### Purchases and Sales

| | This period | Year to date |
|---|---|---|
| Total purchases | $4,663,612.05 - | $4,663,612.05 - |
| Total sales | 1,929,729.34 | 1,929,729.34 |
| Other money fund sales | 0.00 | 0.00 |
| Net purchases/sales(incl. money funds) | $2,733,882.71 - | $2,733,882.71 - |

### Other Activity

| | This period | Year to date |
|---|---|---|
| Bond redemptions | $0.00 | $0.00 |
| Other activity | 778,407.35 | 778,407.35 |
| Net other activity | $778,407.35 | $778,407.35 |

**Closing Cash Balance** $0.00

## Portfolio Summary

### Activity

| | This period | Year to date |
|---|---|---|
| Previous net account value | $0.00 | $0.00 |
| Net cash activity | 1,955,475.36 | 1,955,475.36 |
| Net securities into/out of account | 535,625.00 | 535,625.00 |
| Adjusted previous account value | $2,491,100.36 | $2,491,100.36 |
| Net change in market value | 772,511.69 | 772,511.69 |
| Net income received | 0.00 | 0.00 |
| Net account value as of December 31, 1999 | $3,263,612.05 | $3,263,612.05 |
| Net return on portfolio | 772,511.69 | 772,511.69 |

E-27k

# Portfolio Holdings

Prices are provided by an independent pricing service. For current market price quotations, call your Investment Representative.

## Cash and Equivalents

| | Amount | Estimated annual income | Current annual yield |
|---|---|---|---|
| DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- TAX FREE SER | $3,263,612.05 | $123,038.17 | 3.77% |
| Total cash and equivalents | $3,263,612.05 | $123,038.17 | |

# Portfolio Activity

## Purchases and Sales

| | Settlement date | Activity | Type | Quantity | Description | Unit price | Amount |
|---|---|---|---|---|---|---|---|
| S | 12/29/1999 | Purchased | Sweep | 3,354,805.47 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- TAX FREE SER | $1 | $3,354,805.47 - |
| I | 12/29/1999 | Sold | Cash | 1,400,000 - | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- TAX FREE SER | 1 | 1,400,000.00 |
| S | 12/30/1999 | Purchased | Sweep | 778,407.35 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- TAX FREE SER | 1 | 778,407.35 - |
| I | 12/31/1999 | Sold | Cash | 5,000 - | CISCO SYSTEMS INC UNSOLICITED OUR PARENT, DB SECURITIES INC MAKES A MKT IN THIS SECURITY REPORTED PRICE 106 DIFFERENCE 0.0500 | 105.95 | $529,729.34 |
| S | 12/11/1999 | Purchased | Sweep | 530,399.23 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- TAX FREE SER | 1 | 530,399.23 - |
| | Net purchases and sales | | | | | | $2,733,882.71 - |

## Deposits

Deutsche Bank

Statement of Account
December 1 to December 31, 1999
Account 222-10156

**Deutsche Banc Alex. Brown**

Statement of Account
December 1 to December 31, 1999
Account 222-10156



# Portfolio Activity continued

## Other Deposits

| Date posted | Description | Amount |
|---|---|---|
| 12/28/1999 | LIQUIDATION FROM JBJZ PARTNERS A/O 12/27/99 | $3,354,805.47 |
| 12/30/1999 | LIQUIDATION FROM JBJZ PART A/O 12/27/99 | $669.89 |
| Total other deposits | | $3,355,475.36 |

## Withdrawals

### Other Withdrawals

| Date posted | Description | Amount |
|---|---|---|
| 12/29/1999 | CK # C1102235873 PAYEE JENKENS & GILCHRIST | $1,400,000.00- |
| Total other withdrawals | | $1,400,000.00 |

## Other Activity in Your Account

| Settlement date | Activity | Quantity | Description | Amount |
|---|---|---|---|---|
| 12/07/1999 | Received | 4,500 | CISCO SYSTEMS INC 0929 | |
| 12/08/1999 | Received | 500 | CISCO SYSTEMS INC 0141 | |
| 12/22/1999 | Transfer Out | 500 | CISCO SYSTEMS INC CONTRIBUTION TO CAPITAL TO JBJZ PART A/O 12/22/99 | |
| 12/22/1999 | Transfer Out | 4,500 | CISCO SYSTEMS INC CONTRIBUTION TO CAPITAL TO JBJZ PARTNERS A/O 12/21/9 | |
| 12/28/1999 | Transfer In | 5,000 | CISCO SYSTEMS INC LIQUIDATION FROM JBJZ PARTNERS A/O 12/27/99 | |
| 12/29/1999 | Journal | | TO SELL CS @ .6852 ON 12/28 | 778,407.35 |

B J/m

# Market Indices

## Equities

| | Current | December 31, 1998 | Change year to date |
|---|---|---|---|
| Dow Jones Industrial Average | 11,497.12 | 9,181.43 | 25.2% |
| NASDAQ Composite | 4,069.31 | 2,192.69 | 85.6% |
| S& P 500 | 1,469.25 | 1,229.23 | 19.5% |
| MSCI EAFE | 1,760.04 | 1,405.04 | 25.3% |

## Fixed Income Securities

| | Current | December 31, 1998 |
|---|---|---|
| Long term treasury bond yield | 6.48% | 5.09% |
| Lehman Bros. Inter bond index | 0.16% | 8.29% |

Deutsche Bank

Statement of Account
December 1 to December 31, 1999
Account 222-10156

**Deutsche Banc Alex. Brown**

Statement of Account
December 1 to December 31, 1999
Account 222-10156



# Disclosure

Please advise us promptly of any material change in your investment or financial situation.
Your account is with DB Alex. Brown LLC, a registered broker-dealer, referred to herein as Deutsche Banc Alex. Brown. The reporting period for your statement ends on the last day of the month. The dates indicated on purchases and sales are settlement dates. Margin interest charges incurred after the period indicated on this statement will be shown on the next statement. In order to review margin interest charges, you should retain this statement for use in conjunction with the next statement.
Any free credit balance represents funds payable on demand which, although properly accounted for on our books and records, are not segregated and may be used in the conduct of this Firm's business, without compensation to you.
Positions and activity shown on your margin account comprise a combined statement of your margin account and your special memorandum account. The special memorandum account is maintained for you in accordance with Regulation T of the Board of Governors of the Federal Reserve System and is comprised of funds generated by your margin activity and segregated for your future use. A permanent detailed record of the activity in this account is available for inspection at your request. We reserve the right to establish or modify requirements pertaining to the operation of a margin account which may exceed requirements established by the Federal Reserve Board and/or the New York Stock Exchange.
Aggregate commissions which you have paid are not reported separately on this statement of account.
Commissions and charges incurred in connection with the execution of options and other transactions have been included in confirmations of those transactions previously furnished you. A summary of this information will be made available to you upon request.
Orders for your account may be aggregated with other customer orders. In so doing, you may receive an average price for your orders which may be different from the price(s) you may have received had your orders not been aggregated. This practice may also result in your orders being only partially completed.
A financial statement on this Firm is available for your personal inspection at our offices, or a copy will be mailed upon your written request.
Information regarding market price, market value, estimated income, dividends and annual yields is based on data obtained from sources we consider to be reliable but is not guaranteed as to accuracy. This information is provided as a convenience to aid in your financial recordkeeping.
Deutsche Banc Alex. Brown money fund yield figures are based on the seven-day period preceding the statement date. Flag Investors Funds estimated yield and income figures are computed based on either dividends for the preceding twelve-month period or the annualized rate of distribution.
Account information may have been provided regarding both publicly traded limited partnerships and certain other limited partnerships purchased through the Firm. The "market value" amount listed for these other limited partnerships does not necessarily reflect current market value but rather is based upon the information we obtain from sources outside the Firm but whose accuracy we cannot confirm.
We receive payment for routing for execution some orders in certain listed securities. The determination as to where to route orders is based on several factors, subject to the overriding consideration that customers receive best execution. All orders for which we receive payment are exposed to the possibility of price improvement, so that all such orders potentially can be executed at prices superior to the best bid or best offer. Payment is received in the form of rebates, or credits against exchange fees and specialist fees. Details will be furnished upon written request.
NASD Regulation, Inc. makes available to investors a brochure regarding its Public Disclosure Program. The Public Disclosure hotline number is (800) 289-9999. The NASD Regulation website can be located at www.nasdr.com.
DB Alex. Brown LLC, Member SIPC.

* The current portfolio value excludes unpriced securities
** Denotes a mutual fund
*** Denotes a foreign security.

# Money Market Fund 7 Day Average Yields:

| | |
|---|---|
| DB ALEX. BROWN CASH RESERVE PRIME | 5.21% |
| DB ALEX. BROWN CASH RESERVE TREASURY | 4.57% |
| DB ALEX. BROWN CASH RESERVE TAX FREE | 3.77% |

# Your Standing Instructions are:

Purchases: Hold securities in street name
Sales: Reinvest proceeds in money fund
Income: Invest in money market fund

End of Statement

1869

# Deutsche Banc Alex. Brown Client Statement

DB ALEX. BROWN LLC
P. O. BOX 1776
BALTIMORE MD 21203

MACKAY / PARSE
INVESTMENT REP #030
222 WEST ADAMS ST. SUITE 1900
CHICAGO ILLINOIS 60606
(312) 424-6000 (800) 562-7200

JBJZ INVESTORS INC
ATTN: JERRY ZUCKER
16 BUCKINGHAM DRIVE
CHARLESTON SC 29407-3455

## Portfolio Overview

Currency is CANADIAN DOLLARS

### Assets

| | Value as of December 31, 1999 | % of total assets |
|---|---|---|
| Cash | 0.00 | 0.0% |
| Money funds | 0.00 | 0.0 |
| Common stocks | 0.00 | 0.0 |
| Preferred stocks | 0.00 | 0.0 |
| Mutual funds | 0.00 | 0.0 |
| Government debt issues | 0.00 | 0.0 |
| Corporate debt issues | 0.00 | 0.0 |
| Municipal debt issues | 0.00 | 0.0 |
| Certificates of deposit | 0.00 | 0.0 |
| Options | 0.00 | 0.0 |
| Limited partnerships | 0.00 | 0.0 |
| Annuities | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| Total assets | 0.00 | 0.0% |

### Liabilities

| | Value as of December 31, 1999 | % of total assets |
|---|---|---|
| Cash debit | 0.00 | 0.0% |
| Margin debit | 0.00 | 0.0 |
| Short options | 0.00 | 0.0 |
| Other short securities | 0.00 | 0.0 |
| Total liabilities | 0.00 | 0.0% |

| | |
|---|---|
| Net Value of Your Account | 0.00 |
| Net Value as of December 31, 1998 | 0.00 |

### Activity

| | This period |
|---|---|
| Net value of your account as of November 30 | 0.00 |
| Net cash activity | 1,136,029.41 |
| Net securities into/out of account | 0.00 |
| Net return on your portfolio | 1,136,029.41 |
| Net value of your account as of December 31 | 0.00 |

### Income

| | This period | Year to date |
|---|---|---|
| Net income received | 0.00 | 0.00 |
| Current estimated annual income | 0.00 | |
| Current estimated annual yield | 0.00% | |

Deutsche Bank

Statement of Account
December 1 to December 31, 1999
Account 222-10156

**Deutsche Banc Alex. Brown**

Statement of Account
December 1 to December 31, 1999
Account 222-10156



## Cash Summary

**Opening Cash Balance** 0.00

### Income Summary

| | This period | Year to date |
|---|---|---|
| Taxable dividends | 0.00 | 0.00 |
| Taxable interest | 0.00 | 0.00 |
| Capital gains distributions received | 0.00 | 0.00 |
| Non-taxable dividends | 0.00 | 0.00 |
| Non-taxable interest | 0.00 | 0.00 |
| Net income received | 0.00 | 0.00 |

### Cash Activity

| | This period | Year to date |
|---|---|---|
| Deposits | 1,136,029.41 | 1,136,029.41 |
| Withdrawals | 0.00 | 0.00 |
| U.S. tax withheld | 0.00 | 0.00 |
| Non-resident tax withheld | 0.00 | 0.00 |
| Foreign taxes withheld | 0.00 | 0.00 |
| Interest charges on cash debit | 0.00 | 0.00 |
| Interest charges on margin debit | 0.00 | 0.00 |
| Net cash activity | 1,136,029.41 | 1,136,029.41 |

### Purchases and Sales

| | This period | Year to date |
|---|---|---|
| Total purchases | 0.00 | 0.00 |
| Total sales | 0.00 | 0.00 |
| Other money fund sales | 0.00 | 0.00 |
| Net purchases/sales(incl. money funds) | 0.00 | 0.00 |

### Other Activity

| | This period | Year to date |
|---|---|---|
| Bond redemptions | 0.00 | 0.00 |
| Other activity | 1,136,029.41 - | 1,134,029.41 - |
| Net other activity | 1,136,029.41 - | 1,136,029.41 - |

**Closing Cash Balance** 0.00

## Portfolio Summary

### Activity

| | This period | Year to date |
|---|---|---|
| Previous net account value | 0.00 | 0.00 |
| Net cash activity | 1,136,029.41 | 1,136,029.41 |
| Net securities into/out of account | 0.00 | 0.00 |
| Adjusted previous account value | 1,136,029.41 | 1,136,029.41 |
| Net change in market value | 1,136,029.41 - | 1,136,029.41 - |
| Net income received | 0.00 | 0.00 |
| Net account value as of December 31, 1999 | 0.00 | 0.00 |
| Net return on portfolio | 1,136,029.41 - | 1,136,029.41 - |

# Portfolio Activity

## Deposits

### Other Deposits

| Date posted | Description | Amount |
|---|---|---|
| 12/28/1999 | LIQUIDATION FROM JBJZ PARTNERS A/O 12/21/99 | 1,136,029.41 |
| Total other deposits | | 1,136,029.41 |

## Other Activity in Your Account

| Settlement date | Activity | Quantity | Description | Amount |
|---|---|---|---|---|
| 12/29/1999 | Journal | | TO BUY US$ @ .6832 ON 12/28 | 1,136,029.41 |

# Market Indices

| Equities | Current | December 31, 1998 | Change year to date |
|---|---|---|---|
| Dow Jones Industrial Average | 11,497.12 | 9,181.43 | 25.2% |
| NASDAQ Composite | 4,069.31 | 2,192.69 | 85.6% |
| S& P 500 | 1,469.25 | 1,229.23 | 19.5% |
| MSCI EAFE | 1,760.04 | 1,405.04 | 25.3% |

| Fixed Income Securities | Current | December 31, 1998 |
|---|---|---|
| Long term treasury bond yield | 6.48% | 5.09% |
| Lehman Bros. Inter bond index | 0.16% | 8.29% |

**Deutsche Banc Alex. Brown**

Statement of Account
December 1 to December 31, 1999
Account 222-10156



# Disclosure

Please advise us promptly of any material change in your investment or financial situation.
Your account is with DB Alex. Brown LLC, a registered broker-dealer, referred to herein as Deutsche Banc Alex. Brown. The reporting period for your statement ends on the last day of the month. The dates indicated on purchases and sales are settlement dates. Margin interest charges incurred after the period indicated on this statement will be shown on the next statement. In order to review margin interest charges, you should retain this statement for use in conjunction with the next statement.
Any free credit balance represents funds payable on demand which, although properly accounted for on our books and records, are not segregated and may be used in the conduct of this Firm's business, without compensation to you.
Positions and activity shown on your margin account comprise a combined statement of your margin account and your special memorandum account. The special memorandum account is maintained for you in accordance with Regulation T of the Board of Governors of the Federal Reserve System and is comprised of funds generated by your margin activity and segregated for your future use. A permanent detailed record of the activity in this account is available for inspection at your request. We reserve the right to establish or modify requirements pertaining to the operation of a margin account which may exceed requirements established by the Federal Reserve Board and/or the New York Stock Exchange.
Aggregate commissions which you have paid are not reported separately on this statement of account.
Commissions and charges incurred in connection with the execution of option and other transactions have been included in confirmations of those transactions previously furnished you. A summary of this information will be made available to you upon request.
Orders for your account may be aggregated with other customer orders. In so doing, you may receive an average price for your orders which may be different from the price(s) you may have received had your orders not been aggregated. This practice may also result in your orders being only partially completed.
A financial statement on this Firm is available for your personal inspection at our offices, or a copy will be mailed upon your written request.
Information regarding market price, market value, estimated income, dividends and annual yields is based on data obtained from sources we consider to be reliable but is not guaranteed as to accuracy. This information is provided as a convenience to aid in your financial recordkeeping.
Deutsche Banc Alex. Brown money fund yield figures are based on the seven-day period preceding the statement date. Flag Investors Funds estimated yield and income figures are computed based on either dividends for the preceding twelve-month period or the annualized rate of distribution.
Account information may have been provided regarding both publicly traded limited partnerships and certain other limited partnerships purchased through the Firm. The "market value" amount listed for these other limited partnerships does not necessarily reflect current market value but rather is based upon the information we obtain from sources outside the Firm but whose accuracy we cannot confirm.
We receive payment for routing for execution some orders in certain listed securities. The determination as to where to route orders is based on several factors, subject to the overriding consideration that customers receive best execution. All orders for which we receive payment are exposed to the possibility of price improvement, so that all such orders potentially can be executed at prices superior to the best bid or best offer. Payment is received in the form of rebates, or credits against exchange fees and specialist fees. Details will be furnished upon written request.
NASD Regulation, Inc. makes available to investors a brochure regarding its Public Disclosure Program. The Public Disclosure hotline number is (800) 289-9999. The NASD Regulation website can be located at www.nasdr.com.
DB Alex. Brown LLC, Member SIPC.

- * The current portfolio value excludes unpriced securities.
- ** Denotes a mutual fund.
- *** Denotes a foreign security.

# Money Market Fund 7 Day Average Yields:

| | |
|---|---|
| DB ALEX. BROWN CASH RESERVE PRIME | 5.21% |
| DB ALEX. BROWN CASH RESERVE TREASURY | 4.57% |
| DB ALEX. BROWN CASH RESERVE TAX FREE | 3.77% |

# Your Standing Instructions are:

Purchases: Hold securities in street name
Sales: Reinvest proceeds in money fund
Income: Invest in money market fund

End of Statement

ERNST & YOUNG LLP

101 Independence Center
Suite 1100
101 North Tryon Street
Charlotte, North Carolina 28246

Phone: 704 372 6300

*PERSONAL AND CONFIDENTIAL*

November 11, 1999

Mr. Jerry Zucker
16 Buckingham Drive
Charleston, South Carolina 29407

Dear Jerry:

This letter will confirm our engagement to provide tax advice to you concerning the implementation of the COBRA strategy we have discussed with you. This strategy will involve the creation of a Partnership by you and third parties. Our work will include assisting in the tax planning aspects of this transaction, working with counsel and other third parties in reviewing the tax aspects of the entities and other consulting services as required. If necessary, we also agree to represent you before the Internal Revenue Service with respect to tax issues associated with this strategy up to and including the appellate level. If you would like us to represent you with regard to other tax issues in the event of an audit, we would charge our normal fees for time and expenses in connection with such representation.

In this engagement, we will be using information provided by you and the Partnership and will be relying upon you and the Partnership for the accuracy and completeness of this information. We will maintain the information provided to us in confidence within our firm and will not disclose to others such confidential information except with your consent or as required by law or permitted under professional standards.

Our fee for providing the professional services referred to above will be $1.5 million on a total investment in the Partnership by you and other individual(s) in the amount of $7.0 million. Investment in partnership equals Cost of long option contract equal to 5% of desired loss, plus cash equal to 2% of the desired loss. We will invoice you for our fee after the foreign currency option contracts and required amount of cash have been contributed to the Partnership. In the event you later decide not to implement the technique described above, our fee will be paid by you and will be limited to our time incurred from the date this letter is signed up to the date we receive written notification of your decision not to proceed, and will be billed at our standard hourly rates. In addition to bills for our hourly fees, an administrative expense charge of 8.5% of our standard fees will be billed at the same time.

All advice and other services we provide pursuant to this arrangement are intended to be solely for your benefit and that of the Partnership and are not for the benefit of anyone else. Accordingly, our advice may not be relied upon by any other person or persons, used in connection with any other transaction, or used for any other purpose without our prior written consent. Furthermore, the content of any oral or written communication made by us in connection with this engagement shall not be communicated to the public or otherwise publicized in any manner without our prior written consent.

Ernst & Young LLP will not be liable for any claim for damages arising out of or in connection with any tax services provided to you in an amount greater than the amount of fees actually paid to Ernst & Young LLP with respect to the services directly relating to and forming the basis of such claim.

Any controversy or claim arising out of or relating to tax and tax-related services now or hereafter provided by us to you (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Attachment to this letter. Judgment on any arbitration award may be entered in any court having proper jurisdiction.

Except as expressly provided herein, this engagement letter does not modify the terms or provisions of any engagement letter for other professional services which were agreed to prior to the date noted below.

Information relating to federal tax advice we provide to you, including communications between us and material we create in the course of providing that advice, may be privileged and protected from disclosure to the Internal Revenue Service. Should the Internal Revenue Service seek disclosure from you or us of written or oral communications relating to such advice, we will discuss with you whether and how you assert, or waive, the privilege.

If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this letter shall remain in effect.

If these arrangements are acceptable, please sign one copy of this letter and return it to me in the enclosed self-addressed envelope. If you have any questions concerning our engagement, please call me at 704/331-1933. We appreciate the opportunity to work with you.

Very truly yours,

Ray Knight/DF

Ray A. Knight
Principal

Attachment
Agreed to by:

Name: ______________________
Client

Date: ______________________

K-27 W

## Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in our engagement letter of July 23, 1998. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

*Mediation*
A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

*Arbitration*
If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA as in effect on the date of the engagement letter ("AAA Rules"). In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the AAA Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

No discovery will be permitted in connection with the arbitration unless it is expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction.

ERNST & YOUNG LLP

- 101 Independence Center
Suite 1100
101 North Tryon Street
Charlotte, North Carolina 28246

- Phone: 704 372 6300

*Tax Advisor/Client Communication*
*Privileged And Confidential*

November 15, 1999

Mr. James G. Boyd
3520 Bohicket Road
Johns Island, South Carolina 29455

Dear Jim:

This letter will confirm our engagement to provide tax advice to you concerning the implementation of the COBRA strategy we have discussed with you. This strategy will involve the creation of a Partnership by you and third parties. Our work will include assisting in the tax planning aspects of this transaction, working with counsel and other third parties in reviewing the tax aspects of the entities and other consulting services as required. If necessary, we also agree to represent you before the Internal Revenue Service with respect to tax issues associated with this strategy up to and including the appellate level. If you would like us to represent you with regard to other tax issues in the event of an audit, we would charge our normal fees for time and expenses in connection with such representation.

In this engagement, we will be using information provided by you and the Partnership and will be relying upon you and the Partnership for the accuracy and completeness of this information. We will maintain the information provided to us in confidence within our firm and will not disclose to others such confidential information except with your consent or as required by law or permitted under professional standards.

Our fee for providing the professional services referred to above will be $75,000 on a total investment in the Partnership by you and other individual(s) in the amount of $3.5 million. Investment in partnership equals Cost of long option contract equal to 5% of desired loss, plus cash equal to 2% of the desired loss. We will invoice you for our fee after the foreign currency option contracts and required amount of cash have been contributed to the Partnership. In the event you later decide not to implement the technique described above, our fee will be paid by you and will be limited to our time incurred from the date this letter is signed up to the date we receive written notification of your decision not to proceed, and will be billed at our standard hourly rates. In addition to bills for our hourly fees, an administrative expense charge of 8.5% of our standard fees will be billed at the same time.

All advice and other services we provide pursuant to this arrangement are intended to be solely for your benefit and that of the Partnership and are not for the benefit of anyone else. Accordingly, our advice may not be relied upon by any other person or persons, used in connection with any other transaction, or used for any other purpose without our prior written consent. Furthermore, the content of any oral or written communication made by us in connection with this engagement shall not be communicated to the public or otherwise publicized in any manner without our prior written consent.

Ernst & Young LLP will not be liable for any claim for damages arising out of or in connection with any tax services provided to you in an amount greater than the amount of fees actually paid to Ernst & Young LLP with respect to the services directly relating to and forming the basis of such claim.

Any controversy or claim arising out of or relating to tax and tax-related services now or hereafter provided by us to you (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Attachment to this letter. Judgment on any arbitration award may be entered in any court having proper jurisdiction.

Except as expressly provided herein, this engagement letter does not modify the terms or provisions of any engagement letter for other professional services which were agreed to prior to the date noted below.

Information relating to federal tax advice we provide to you, including communications between us and material we create in the course of providing that advice, may be privileged and protected from disclosure to the Internal Revenue Service. Should the Internal Revenue Service seek disclosure from you or us of written or oral communications relating to such advice, we will discuss with you whether and how you assert, or waive, the privilege.

If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this letter shall remain in effect.

* * * * * * * * * *

If these arrangements are acceptable, please sign one copy of this letter and return it to me in the enclosed self-addressed envelope. If you have any questions concerning our engagement, please call Ray Knight at 704-331-1933. We appreciate the opportunity to work with you.

Very truly yours,

Ernst + Young LLP

**Agreed to by:**

Name: ______________________________

Date: ______________________________

2277

**Attachment I**

# Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in our engagement letter of November 15, 1999. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

## Mediation

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

## Arbitration

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA as in effect on the date of the engagement letter ("AAA Rules"). In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the AAA Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

No discovery will be permitted in connection with the arbitration unless it is expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction.

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION

225 WEST WASHINGTON STREET
SUITE 2500
CHICAGO, ILLINOIS 60606-3418

(312) 425-3900
FACSIMILE (312) 425-3909

www.jenkens.com

AUSTIN, TEXAS
(512) 499-3800
DALLAS, TEXAS
(214) 855-4500
HOUSTON, TEXAS
(713) 951-3300
LOS ANGELES, CALIFORNIA
(310) 820-8800
SAN ANTONIO, TEXAS
(210) 246-5000
WASHINGTON, D.C.
(202) 326-1500

PAUL M. DAUGERDAS
(312) 425-3950
pdaugerdas@jenkens.com

December 1, 1999

COPY

Mr. Jerry Zucker
16 Buckingham Drive
Charleston, SC 29407

Dear Mr. Zucker:

Thank you for engaging us and providing us the opportunity to represent you. My colleagues and I appreciate the confidence in us that is evidenced by your engagement.

This letter contains the terms applicable to your engagement of Jenkens & Gilchrist to represent you as your lawyers in connection with certain federal income tax matters.

We will consult with you about your objectives and, when appropriate, the means of achieving them in accordance with the ethical rules governing attorneys and applicable law. We will endeavor to keep you advised of the status of your matters to the extent necessary to enable you to make informed decisions.

We will provide competent representation of your interests. Expressions on our part concerning the probable outcome of our representation will reflect our best professional judgment, but are not guarantees, as they are limited by our knowledge of the facts and are based on the state of the law and our interpretation thereof at the time they are expressed.

We will maintain the confidentiality of information you provide to us, except to the extent that you consent to the contrary, or as necessary to carry out our representation or as required by the ethical rules governing lawyers or by applicable law.

I will be the principal attorney handling your matters. Subject to my supervision and at my instruction, your work, in whole or in part, may be performed by Donna Guerin or by other lawyers or legal assistants in the firm. My use of others may be for the purpose of involving lawyers or legal assistants with particular knowledge in a given area or for the purpose of otherwise providing legal services to you in what we deem to be the most efficient, cost effective and timely manner.

The amount charged for the legal services we provide to you will be based on a fixed fee of $1,260,000.00 for our advice and assistance in the facilitation and execution of European digital foreign currency option investment transactions in the amount of approximately $45.0 million, the

documentation of the transaction, and our research and the rendering of a "more likely than not" tax opinion letter setting forth our conclusions and rationale.

If you terminate our representation, your papers and property will be returned to you promptly after our receipt of payment of all fees and expenses. Our own files, attorneys' notes, and work product pertaining to the matter will be retained by us. Your termination of us will not affect your responsibility for payment of legal services rendered and expenses paid or incurred by us on your behalf before we receive your notice of termination and in connection with an orderly transition of the matter.

The ethical rules governing lawyers list several types of conduct or circumstances that require or allow us to withdraw from representing you. We try to identify in advance and discuss any situations which may possibly lead to our withdrawal. In any event, if withdrawal becomes necessary, we will give you reasonable notice of that fact, and you agree to cooperate with us by executing any documents necessary to evidence the termination of our representation, in court or otherwise, and you agree that we are and will be entitled to be paid for all legal services rendered and expenses paid or incurred on your behalf before withdrawal and in connection with the orderly transition of the matter.

Please confirm your acknowledgment of and agreement with the foregoing by returning one copy of this letter to the undersigned.

If you have any questions about the amount of our fees or any other matters, please discuss them with me.

Again, I am grateful for the opportunity to represent you. We will give prompt attention to this matter and provide you with outstanding client service.

Very truly yours,

Paul M. Daugerdas
For JENKENS & GILCHRIST

PMD:slb

ACCEPTED AND AGREED TO this ______
day of ______________________, 1999.

By: ________________________________
Jerry Zucker

CHICAGO 16402 v 1. 99999.

B27.b

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION
225 WEST WASHINGTON STREET
SUITE 2600
CHICAGO, ILLINOIS 60606-3418
(312) 425-3900
FACSIMILE (312) 425-3909
www.jenkens.com

AUSTIN, TEXAS (512) 499-3800
DALLAS, TEXAS (214) 855-4500
HOUSTON, TEXAS (713) 951-3300
LOS ANGELES, CALIFORNIA (310) 820-8800
SAN ANTONIO, TEXAS (210) 246-5000
WASHINGTON, D.C. (202) 326-1500

PAUL M. DAUGERDAS
(312) 425-3950
pdaugerdas@jenkens.com

December 1, 1999

COPY

Mr. James G. Boyd
3520 Bohicket Road
Johns Island, SC 29455

Dear Mr. Boyd:

Thank you for engaging us and providing us the opportunity to represent you. My colleagues and I appreciate the confidence in us that is evidenced by your engagement.

This letter contains the terms applicable to your engagement of Jenkens & Gilchrist to represent you as your lawyers in connection with certain federal income tax matters.

We will consult with you about your objectives and, when appropriate, the means of achieving them in accordance with the ethical rules governing attorneys and applicable law. We will endeavor to keep you advised of the status of your matters to the extent necessary to enable you to make informed decisions.

We will provide competent representation of your interests. Expressions on our part concerning the probable outcome of our representation will reflect our best professional judgment, but are not guarantees, as they are limited by our knowledge of the facts and are based on the state of the law and our interpretation thereof at the time they are expressed.

We will maintain the confidentiality of information you provide to us, except to the extent that you consent to the contrary, or as necessary to carry out our representation or as required by the ethical rules governing lawyers or by applicable law.

I will be the principal attorney handling your matters. Subject to my supervision and at my instruction, your work, in whole or in part, may be performed by Donna Guerin or by other lawyers or legal assistants in the firm. My use of others may be for the purpose of involving lawyers or legal assistants with particular knowledge in a given area or for the purpose of otherwise providing legal services to you in what we deem to be the most efficient, cost effective and timely manner.

The amount charged for the legal services we provide to you will be based on a fixed fee of $140,000.00 for our advice and assistance in the facilitation and execution of European digital foreign currency option investment transactions in the amount of approximately $5.0 million, the

documentation of the transaction, and our research and the rendering of a "more likely than not" tax opinion letter setting forth our conclusions and rationale.

If you terminate our representation, your papers and property will be returned to you promptly after our receipt of payment of all fees and expenses. Our own files, attorneys' notes, and work product pertaining to the matter will be retained by us. Your termination of us will not affect your responsibility for payment of legal services rendered and expenses paid or incurred by us on your behalf before we receive your notice of termination and in connection with an orderly transition of the matter.

The ethical rules governing lawyers list several types of conduct or circumstances that require or allow us to withdraw from representing you. We try to identify in advance and discuss any situations which may possibly lead to our withdrawal. In any event, if withdrawal becomes necessary, we will give you reasonable notice of that fact, and you agree to cooperate with us by executing any documents necessary to evidence the termination of our representation, in court or otherwise, and you agree that we are and will be entitled to be paid for all legal services rendered and expenses paid or incurred on your behalf before withdrawal and in connection with the orderly transition of the matter.

Please confirm your acknowledgment of and agreement with the foregoing by returning one copy of this letter to the undersigned.

If you have any questions about the amount of our fees or any other matters, please discuss them with me.

Again, I am grateful for the opportunity to represent you. We will give prompt attention to this matter and provide you with outstanding client service.

Very truly yours,

Paul M. Daugerdas
For JENKENS & GILCHRIST

PMD:slb

ACCEPTED AND AGREED TO this ______ day of ______________________, 1999.

By: ________________________________
James G. Boyd

CHICAGO 16402 v 1. 99999.

A-27a

**JBJZ INVESTORS, INC.**

December ______, 1999

Deutsche Banc Alex Brown
Attn: Mr. David Parse
222 West Adams Street
Suite 1900
Chicago, IL 60606

RE: Account No. 222-10156-19

To Whom It May Concern:

Please use this letter as your authorization to prepare a check in the amount of $1,400,000.00 payable to the order of Jenkens & Gilchrist, charged to JBJZ Investors, Inc., Account No. 222-10156-19.

Such check should be held by you for pick-up by an authorized representative of Jenkens & Gilchrist upon your notification of its availability by phone at 312-425-3950 or by fax to 312-425-3940.

Thank you for your immediate attention to this matter.

Sincerely,

JBJZ INVESTORS, INC.

By: ________________________________
Jerry Zucker, President

CHICAGO 17346 v 1, 45141.

A-2760

# STATEMENT
# Jenkens & Gilchrist
A PROFESSIONAL CORPORATION

**PAYMENT REMITTANCE ADDRESS:**

P.O. BOX 842567
DALLAS, TEXAS 75284-2567
TAX ID #36-4263272

**OFFICE LOCATIONS:**

AUSTIN, TEXAS
CHICAGO, ILLINOIS
DALLAS, TEXAS
HOUSTON, TEXAS
LOS ANGELES, CALIFORNIA
SAN ANTONIO, TEXAS
WASHINGTON, D.C.

December 6, 1999

JBJZ Investors, Inc.
16 Buckingham Drive
Charleston, SC 29407

Invoice: C120499
Client: 46149
Matter:00001

**FOR PROFESSIONAL LEGAL SERVICES**

| | |
|---|---|
| **TOTAL** | **$1,400,000.00** |

A copy of this page is enclosed; please return it with your payment.

For billing inquiries, please call 214-855-4051. Tax ID# 36-4263272

CHICAGO 17309 v 1, 99999.

B.J Inc