# GOVERNMENT EXHIBIT M

**MEADOWS, COLLIER, REED, COUSINS & BLAU, L.L.P.**
ATTORNEYS AT LAW
A REGISTERED LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
901 MAIN STREET, SUITE 3700
DALLAS, TEXAS 75202
(214) 744-3700
www.meadowscollier.com

JOEL N. CROUCH, P.C. - Partner
DIRECT DIAL (214) 749-2456
jcrouch@meadowscollier.com

FAX (214) 747-3732
WATS (800) 451-0093

August 14, 2007

**VIA FEDERAL EXPRESS**

Dennis M. Donohue, Esq.
United States Department of Justice
Tax Division
Civil Trial Section, Northern Region
555 Fourth Street, NW
Room 7804
Washington, D.C. 20001

Re: *JZ Buckingham Investments LLC, as Tax Matters Partner of JBJZ Partners, v. United States*, Case No. 05-231T (the "Case")

Gentlemen:

Enclosed please find Plaintiff's Objections and Responses the to United States' Third Set of Interrogatories with the originally signed Verification.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

JOEL N. CROUCH, P.C.

By: Joel N. Crouch / by kme
Joel N. Crouch, President

JNC/kme/356780
Enclosure

GOVERNMENT EXHIBIT
M
PENGAD 800-631-6989

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NO. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner of
JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO UNITED STATES' THIRD SET OF INTERROGATORIES**

**TO:** The United States of America, by and through its attorney of record, Dennis M. Donohue, U.S. Department of Justice, Tax Division, Post Office Box 26, Ben Franklin Station, Washington, D.C. 20044, 202/616-3366.

COMES NOW, Plaintiff and states the following objections and answers to the United States' Third Set of Interrogatories, dated July 27, 2007.

**GENERAL OBJECTIONS**

1. Plaintiff objects to the Definitions set forth in the United States' Third Set of Interrogatories to the extent that they impose a burden on Plaintiff greater than authorized by the Federal Rules of Civil Procedure and the Rules of the United States Court of Federal Claims.

2. Plaintiff objects to all Interrogatories to the extent that they seek information protected by the Attorney/Client Privilege, the Attorney Work Product Doctrine or any other applicable privilege.

3. Plaintiff objects to all Interrogatories to the extent that they are mere repetitions of those set forth in the United States' previous Interrogatories.

SPECIFIC OBJECTIONS AND ANSWERS

42. Please explain, in detail, the purpose or purposes for the formation and use of JZ Buckingham Investments, LLC, and how the creation and use of that LLC facilitated the achievement of the purpose or purposes for which it was formed.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it requests information that is cumulative and duplicative of the information previously provided by Plaintiff to United States during discovery of this case. Subject to and without waiving said objection, Plaintiff further clarifies that based on the advice and counsel of Ernst & Young and Jenkens & Gilchrist, JZ Buckingham Investments, LLC was formed for investment purposes, namely to facilitate an investment in foreign currency digital options. JZ Buckingham Investments, LLC fulfilled this purpose when it bought and sold digital options on the Euro and Japanese Yen on November 23, 1999. It also served the purpose of limiting Mr. Zucker's liability with respect to the company's debts. As stated during his depositions, Mr. Zucker regularly conducts business through a separate entity such as a limited liability company to limit his liability exposure. Furthermore, Plaintiff has come to understand that the formation and use of a limited liability company allowed the parties to more quickly obtain the necessary approvals from Deutsche Bank to trade in foreign currency digital options.**

43. For each purpose mentioned in your answer to Interrogatory no. 42, explain whether or not that purpose could have been achieved without the use of the LLC.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it calls for a response to a hypothetical, and consequently seeks information that is not relevant to any claim or defense of any party in this litigation. Subject to and without waiving said objections, the formation of a limited liability entity, such as a limited liability company, was necessary for liability protection purposes. Additionally, absent the limited liability company, Plaintiff has come to understand that it would have taken longer to obtain the necessary approvals from Deutsche Bank to trade in foreign currency digital options.**

44. If any purpose mentioned in Interrogatories nos. 42 and/or 43 could not have been achieved without the use of the LLC, explain why not.

**ANSWER: See Objections and Response to Interrogatory No. 43.**

45. Please explain why, as a disregarded, single-member LLC with no employees or expectation of future employees, JZ Buckingham Investments, LLC applied for an Employer Identification Number.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation. The reasons for obtaining an employer identification number have no bearing on the ultimate issue in this case, which is the proper tax treatment of the Transactions. Plaintiff further objects to this Interrogatory on the grounds that it assumes facts regarding JZ Buckingham Investments, LLC's expectation of future employees. Subject to and without waiving said objections, JZ Buckingham Investments, LLC applied for an employer identification number based on the advice, and with the assistance of, Ernst & Young and Jenkens & Gilchrist. Additionally, Plaintiff understands that it was not unusual for disregarded, single member LLCs to apply for federal employer identification numbers.**

46. Please explain why JZ Buckingham Investments, LLC, and not Mr. Zucker, was listed as a partner of JBJZ Partners on the partnership's 1999 Form 1065.

**<u>ANSWER</u>: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, Plaintiff notes that it was JBJZ Investments, LLC that co-formed, and made capital contributions to, JBJZ Partners and not Mr. Zucker individually and, accordingly, was the appropriately listed partner. The Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions. Ernst & Young prepared the Form 1065 return for Plaintiff based upon full knowledge of the Transactions and possession of all necessary documentation, and advised Plaintiff that the return was accurate and complete.**

47. Please explain why the Schedule K-1 filed with the partnership's 1999 Form 1065 did not disclose the fact that JZ Buckingham Investments, LLC, was a single-member LLC and/or that it was a disregarded entity federal income tax purposes.

**<u>ANSWER</u>: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, the 1999 Instructions to Form 1065 were silent on the disclosure of disregarded-entity partners for these purposes, and otherwise did not expressly require Plaintiff to disclose either that JZ Buckingham**

**Investments, LLC was a single-member LLC or that it was a disregarded entity for federal income tax purposes. *See* Instr. for Form 1065 (1999), page 19 (regarding Question B of the Schedule K-1, "state on this line whether the partner is an individual, a corporation, an estate, a trust, a partnership, an exempt organization, or a nominee (custodian).") Moreover, the Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions. Ernst & Young prepared the above-referenced Form 1065 return (including the Schedule K-1s accompanying that return) based upon full knowledge of the Transactions and possession of all necessary documentation, and advised Plaintiff that the return was accurate and complete.**

48. Please explain, in detail, the purpose or purposes for the formation and use of JGB Bohicket Investments, LLC, and how the creation and use of that LLC facilitated the achievement of the purpose or purposes for which it was transformed.

**ANSWER**: **Plaintiff objects to this Interrogatory on the grounds that it requests information that is cumulative and duplicative of information previously provided by Plaintiff to the United States during discovery of this case. Subject to and without waiving said objections, Plaintiff further clarifies that based on the advice and counsel of Ernst & Young and Jenkens & Gilchrist, JGB Bohicket Investments, LLC was formed for investment purposes, namely to facilitate an investment in foreign currency digital options. JGB Bohicket Investments, LLC fulfilled this purpose when it bought and sold digital options on the Euro on November 23, 1999. It also served the purpose of limiting Mr. Boyd's liability with respect to the company's debts. As stated during his deposition, Mr. Boyd regularly conducts business through a separate entity such as a limited liability company to limit his liability exposure. Furthermore, Plaintiff has come to understand**

**that the formation and use of a limited liability company allowed the parties to more quickly obtain the necessary approvals from Deutsche Bank to trade in foreign currency digital options.**

49. For each purpose mentioned in your answer to Interrogatory no. 48, explain whether or not that purpose could have been achieved without the use of the LLC.

**<u>ANSWER</u>: Plaintiff objects to this Interrogatory on the grounds that it calls for a response to a hypothetical, and consequently seeks information that is not relevant to any claim or defense of any party in this litigation. Subject to and without waiving said objections, the formation of a limited liability entity, such as a limited liability company, was necessary for liability protection purposes. Additionally, absent the limited liability company, Plaintiff has come to understand that it would have taken longer to obtain the necessary approvals from Deutsche Bank to trade in foreign currency digital options.**

50. If any purpose mentioned in Interrogatories nos. 48 and/or 49 could have not been achieved without the use of the LLC, explain why not.

**<u>ANSWER</u>: See Objections and Responses to Interrogatory No. 49.**

51. Please explain why, as a disregarded, single-member LLC with no employees or expectation of future employees, JGB Bohicket Investments, LLC applied for an Employer Identification Number.

**<u>ANSWER</u>: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation. The reasons for obtaining an employer identification number have no bearing on the ultimate issue in this case, which is the proper tax treatment of the Transactions. Plaintiff further objects to this Interrogatory on the grounds that it assumes facts regarding JGB Bohicket Investments,**

**LLC's expectation of future employees. Subject to and without waiving said objections, JGB Bohicket Investments, LLC applied for an employer identification number based on the advice, and with the assistance of, Ernst & Young and Jenkens & Gilchrist. Additionally, Plaintiff understands that it was not unusual for disregarded, single member LLCs to apply for federal employer identification numbers.**

52. Please explain why JGB Bohicket Investments, LLC, and not Mr. Boyd, was listed as a partner of JBJZ Partners on the partnership's 1999 Form 1065.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, Plaintiff notes that it was JGB Bohicket Investments, LLC that co-formed, and made capital contributions to, JBJZ Partners and not Mr. Boyd individually. Moreover, the Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions. Ernst & Young prepared the Form 1065 return for Plaintiff based upon full knowledge of the Transactions and possession of all necessary documentation, and advised Plaintiff that the return was accurate and correct.**

53. Please explain why the Schedule K-1 filed with the partnership's 1999 Form 1065 did not disclose the fact that JGB Bohicket Investments, LLC, was a single-member LLC and/or that it was a disregarded entity for federal income tax purposes.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a**

**burden or expense on Plaintiff that outweighs its likely benefit. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, Plaintiff does not presently recall any facts that are responsive to this request. The Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions. Ernst & Young prepared the above-referenced Form 1065 return (including the Schedule K-1s accompanying those returns) based upon full knowledge of the Transactions and possession of all necessary documentation, and advised Plaintiff that the return was accurate and complete. Moreover, the 1999 Instructions to Form 1065 were silent on the disclosure of disregarded-entity partners for these purposes, and otherwise did not expressly require Plaintiff to disclose either that JGB Bohicket Investments, LLC was a single-member LLC or that it was a disregarded entity for federal income tax purposes. *See* Instr. for Form 1065 (1999), page 19 (regarding Question B of the Schedule K-1, "state on this line whether the partner is an individual, a corporation, an estate, a trust, a partnership, an exempt organization, or a nominee (custodian).")**

54. Did Mr. Zucker and/or Mr. Boyd provide any personal guarantees to any party for any of the debts, obligations, or other liabilities, etc. of their single-member LLCs, of JBJZ Partners, and/or of JBJZ Investors, Inc.? If so, explain.

<u>ANSWER</u>: **Plaintiff is not presently aware of any personal guarantees provided by Mr. Zucker or Mr. Boyd for any liability of the above-referenced entities related to the Transactions; provided, however, the following Bates labeled document suggests that a guarantee could have been provided: DBCOBRA00336-338. To the extent this Interrogatory seeks information about any guarantees executed by Mr. Zucker and/or Mr.**

**Boyd that are unrelated to the Transactions, Plaintiff objects on the grounds that is seeks information that is not relevant to any claim or defense of any party in this litigation.**

55. Please explain why the statement required under Treas. Reg. § 1.351-3(b) was not attached to JBJZ Investors, Inc.'s 1999 Form 1120S.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. An S-corporation return information statement is not a partnership item and thus is not relevant to these TEFRA proceedings. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question. Subject to and without waiving said objections, Plaintiff contends that the above-referenced statement was, in fact, attached to the 1999 Form 1120S filed by JBJZ Investors, Inc. with the Internal Revenue Service.**

56. Please explain why statements required under Treas. Reg. § 1.351-3(a) were not attached to the Zucker's 1999 Form 1040 or the Boyds' 1999 Form 1040.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. An individual return information statement is not a partnership item and thus is not relevant to these TEFRA proceedings. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question. Subject to and without waiving said objections, the Individual Participants relied on Ernst & Young to advise them on the tax consequences and reporting obligations relative to the Transactions. They do not presently recall receiving any advice from Ernst & Young regarding the above-referenced statement, nor were they**

**personally aware of it. Additionally, Mr. Zucker and Mr. Boyd relied on their long-time CPAs, Mr. Barry Emerson and Ms. Sheila Pace, respectfully, to accurately determine and comply with their respective federal income tax reporting obligations for tax year 1999. Mr. Emerson prepared Mr. Zucker's 1999 Form 1040 return, and advised that such return was accurate and complete. Likewise, Ms. Pace prepared Mr. Boyd's 1999 Form 1040, and advised that such return was accurate and complete.**

57. Please explain why the single-member LLCs capitalized the transaction-related fees paid to Ernst & Young to the tax basis of the JBJZ Partners partnership interests held by the single-member LLCs (and then by JBJZ Investors, Inc., to the tax basis it claimed to have had in the Canadian Currency and the Cisco stock that JBJZ Investors, Inc. received upon the termination/liquidation of JBJZ Partners) rather than deducting them as business or investment expenses. Please include in such explanation any "substantial authority" upon which this treatment was based.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it poses a purely legal question. Subject to and without waiving said objections, the Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions, including, without limitation, the tax treatment of the transaction-related fees paid to Ernst & Young pursuant to the Transactions. Ernst & Young did not advise any of the parties to this litigation, and until recently none of the parties were aware, of Ernst &Young's decision to capitalize the fees in the manner described above or the reasons for such tax treatment. Ernst & Young prepared JBJZ Partners' tax return for tax year 1999 based on full knowledge of the Transactions and possession of all necessary documents, and advised the partnership that the return was accurate and correct.**

58. Please explain whether or not any or all of the transaction-related fees paid to Ernst & Young in 1999 were claimed as a deduction on any Form 1040 filed by the Zuckers or the Boyds and, if so, please identify the Schedule and line number on which such amount was deducted and explain why that amount was deducted on that Schedule.

**ANSWER: Based on the advice and counsel of Ernst & Young, and their long-time CPAs, Mr. Emerson (for Mr. Zucker) and Ms. Pace (for Mr. Boyd), who prepared the Individual Participants' Form 1040 returns for tax year 1999, Mr. Zucker and Mr. Boyd claimed a deduction for the fees paid to Ernst & Young in connection with the Transactions. Mr. Zucker claimed a deduction in the amount of S675,000 reported on line 22 of Schedule A of his 1999 Form 1040 return. Mr. Boyd claimed a deduction in the amount of $75,000 reported on line 22 of Schedule A of his 1999 tax return.**

59. Please explain why the single-member LLCs capitalized the transaction-related fees paid to Jenkens & Gilchrist to the tax basis of JBJZ Partners partnership interest held by the single-member LLCs (and then by JBJZ Investors, Inc., to the tax basis it claimed to have had in the Canadian Currency and Cisco stock that JBJZ Investors, Inc., received upon the termination/liquidation of JBJZ Partners) rather than deducting them as business or investment expenses. Please include such explanation any "substantial authority" upon which this treatment was based.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it poses a purely legal question. Subject to and without waiving said objections, the Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions, including, without limitation, the tax treatment of the transaction-related fees paid to Jenkens & Gilchrist pursuant to the Transactions. Ernst & Young did not**

**advise any of the parties to this litigation, and until recently none of the parties were aware, of Ernst &Young's decision to capitalize the fees in the manner described above or the reasons for such tax treatment. Ernst & Young prepared JBJZ Partners' tax return for tax year 1999 based on full knowledge of the Transactions and possession of all necessary documents, and advised the partnership that the return was accurate and correct.**

60. Please explain whether or not any or all of the transaction-related fees paid to Jenkens & Gilchrist in 1999 were claimed as a deduction on any Form 1040 filed by the Zuckers or the Boyds and, if so, please identify the Schedule and line number on which such amount was deducted and explain why that amount was deducted on that Schedule.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim defense of any party to this litigation. An individual tax return deduction is not a partnership item and thus is not relevant to these TEFRA proceedings. Subject to and without waiving said objection, other than their distributive share of any deduction claimed by JBJZ Investors, Inc., no such deduction was claimed by Mr. Zucker or Mr. Boyd on their respective personal income tax returns.**

61. Please identify and explain, in detail, any business purpose(s) that JBJZ Investors, Inc. served that JBJZ Partners could not have served just as readily.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it requests information that is cumulative and duplicative of the information previously provided by Plaintiff to United States during discovery of this case. Plaintiff further objects to this Interrogatory on the grounds that it is vague and confusing. Subject to and without waiving said objections, Plaintiff further clarifies that Ernst & Young and Jenkens & Gilchrist advised the Individual Participants that JBJZ Investors, Inc. served the purpose**

**of limiting its shareholders' liability and risk of loss on future investments. This liability protection could not be achieved by JBJZ Partners, a general partnership, because the partners of a general partnership have unlimited liability for the partnership's debts under South Carolina law. Moreover, although the Transactions involved lower-tier limited liability companies, the law in the area of liability protection for members of such companies was not as fully developed as the law for shareholders of corporations, and thus, use of the corporate form provided further assurances of liability protection.**

62. Please separate, identify and explain, in detail, each tax and nontax purpose for contributing the partnership interests in JBJZ Partners to JBJZ Investors, Inc.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it is cumulative and duplicative of information provided by Plaintiff to the United States during discovery of this case. Subject to and without waiving said objections, Plaintiff reiterates and clarifies that Ernst & Young and Jenkens & Gilchrist advised the participants to contribute the partnership interests in JBJZ Partners to JBJZ Investors, Inc. to limit the partners' liability and risk of loss on the partnership's investments, and that such contribution formed part of the structure for the Transactions that Ernst & Young recommended.**

63. Please explain why the term "Cost" rather than "other basis" was used to describe the tax basis used by JBJZ Investors, Inc., on the statement to Schedule D of its 1999 Form 1120S to compute its capital losses on the sale of the Cisco stock.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. Terminology used to report tax items on an S corporation return is not a partnership item and thus is not relevant to**

**these proceedings. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, the Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions, which included the presentation of tax items reported on the 1999 Form 1120S return for JBJZ Investors, Inc. Ernst & Young prepared that return based on full knowledge of the Transactions and possession of all necessary documents, and advised the Individual Participants that the return was accurate and correct. Plaintiff does not presently recall any other facts that are responsive to this request.**

64. Please explain why the explanation required by the 1999 *Instructions for Schedule D (Form 1120S)* was not attached to JBJZ Investors, Inc.'s 1999 Form 1120S.

ANSWER: **Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. An explanation to a Schedule D item appearing on an S corporation return is not a partnership item and thus is not relevant to these proceedings. Further, Plaintiff objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, the Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions, which included identification and compliance with reporting requirements for the 1999 Form 1120S return for JBJZ Investors, Inc. Ernst & Young prepared that tax return based on full knowledge of the Transactions and possession of all necessary documents, and advised the Individual**

**Participants that the return was accurate and complete. Plaintiff does not presently recall any other facts that are responsive to this request.**

65. Please explain why the Schedules L, M-1, and M-2 of JBJZ Partners' 1999 Form 1065 were not completed and why the information required by these schedules was not otherwise disclosed on the return.

**<u>ANSWER</u>: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, Plaintiff relied on Ernst & Young to accurately determine the tax consequences of the Transactions, as well as determine and comply with Plaintiff's federal tax obligations for tax year 1999. Plaintiff relied on Ernst & Young to prepare its 1999 Form 1065 return. Ernst & Young did, in fact, prepare that return based upon full knowledge of the Transactions and possession of all necessary documentation, and advised Plaintiff that the return was accurate and complete. Plaintiff does not presently recall any other facts responsive to this request.**

66. Please explain why Item F on page 1 and Item J on the Schedule K-1s on JBJZ Partners' 1999 Form 1065 were not completed and why the information required on these schedules was not otherwise disclosed on that return.

**<u>ANSWER</u>: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for**

speculation. Subject to and without waiving said objections, Plaintiff relied on Ernst & Young to accurately determine the tax consequences of the Transactions, as well as determine and comply with Plaintiff's federal tax obligations for tax year 1999. Plaintiff relied on Ernst & Young to prepare its 1999 Form 1065 return. Ernst & Young did, in fact, prepare the return based upon full knowledge of the Transactions and possession of all necessary documentation, and advised the Individual Participants that such return was accurate and complete. Plaintiff does not presently recall any other facts responsive to this request.

67. Please explain why the opening balances on Schedule L of JBJZ Investors, Inc.'s 1999 Form 1120S were not completed.

**ANSWER**: Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party in this litigation, and places a burden or expense on Plaintiff that outweighs its likely benefit. The completion of tax return schedules found in an S corporation return is not a partnership item and thus is not relevant to these proceedings. Plaintiff further objects to this Interrogatory on the grounds that it poses a purely legal question and calls for speculation. Subject to and without waiving said objections, the Individual Participants relied on Ernst & Young to accurately determine and report the tax consequences of the Transactions, which included the completion of all necessary schedules of the 1999 Form 1120S return for JBJZ Investors, Inc. Ernst & Young prepared that return based on full knowledge of the Transactions and possession of all necessary documents, and advised the Individual Participants that the return was accurate and complete. Moreover, Plaintiff notes that the corporation was formed during 1999. Depending on when its existence was recognized for federal income

**tax purposes, the corporation conceivably did not possess any assets at the beginning of its respective tax year. Plaintiff does not presently recall any other facts that are responsive to this request.**

68. Please explain why the tax basis claimed by JBJZ Investors, Inc. in the Canadian Currency and the Cisco stock, rather than the date-of-acquisition fair market value of these assets, was used to determine the amounts disclosed on Lines 23(d) and 24(d) of Schedule L and on Schedule M-1 of its 1999 Form 1120S. In answering this interrogatory, please identify any financial accounting principles or any financial accounting literature that permits, requires, or otherwise supports this accounting treatment.

ANSWER: **Plaintiff objects to this Interrogatory on the grounds that it seeks information cumulative and duplicative of information already in possession of the United States. Plaintiff also objects to this Interrogatory on the grounds that it seeks information regarding financial accounting support for the tax positions taken on the tax return of the above-referenced S corporations, which has no relevance to these federal tax proceedings. Further, Plaintiff objects to this Interrogatory on the grounds that it seeks information about the reporting of a non-partnership item on an S corporation return, which is irrelevant to these TEFRA proceedings. Subject to and without waiving said objections, the Individual Participants relied on Ernst & Young to determine and report the tax consequences of the Transactions, including, without limitation, the value of JBJZ Investors, Inc.'s assets reported on its 1999 Form 1120S. Ernst & Young prepared that return based on full knowledge of the Transactions and possession of all necessary documentation, and advised the Individual Participants that such returns were accurate**

**and correct in all respects. Plaintiff does not presently recall any other facts responsive to this request.**

Respectfully submitted,

By: [signature]

Joel N. Crouch
Texas State Bar No.05144220
M. Todd Welty
Texas State Bar No. 00788642

MEADOWS, OWENS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowsowens.com
twelty@meadowsowens.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

On this 29th day of August, 2007, a copy of the foregoing Responses to United States' Third Set of Interrogatories was delivered to counsel listed below via the means indicated.

**Via Express Mail**

Dennis M. Donohue, Esq.
United States Department of Justice
Tax Division
Civil Trial Section, Northern Region
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044

Joel N. Crouch

# VERIFICATION

STATE OF South Carolina §
§
COUNTY OF Charleston §

BEFORE ME, the undersigned Notary Public, on this day personally appeared JERRY ZUCKER, who, after being duly sworn, stated under oath that on behalf of Plaintiff JZ Buckingham Investments, LLC, he has read the above Plaintiff's Objections and Responses to the United States' Third Set of Interrogatories and each, to the best of his knowledge, is true and correct.

JERRY ZUCKER

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 29th day of August 2007.

Donna B. Martin
Notary Public for South Carolina

State of ______
My Commission Expires: 9-16-2014