# GOVERNMENT EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| GARY V WOODS, as Tax Matters Partner of TESORO DRIVE PARTNERS, a Texas General Partnership, | : | |
| Plaintiff, | : | |
| v. | : | Case No. SA-05-CA-0216-XR |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |
| *Consolidated with* | : | |
| GARY V. WOODS, as Tax Matters Partner of SA TESORO INVESTMENT PARTNERS, a Texas General Partnership, | : | |
| Plaintiff, | : | |
| v. | : | Case No. SA-05-CA-0217-XR |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFFS' EXPERT REPORT OF STUART A. SMITH**

Stuart A. Smith
460 Park Avenue
New York, New York 10022
Tel.: 212-759-8285
Fax: 212-759-4032

I have been asked by counsel for the Plaintiffs in these consolidated partnership federal income tax refund suits to review four opinion letters dated January 31, 2000, of the Chicago law firm of Jenkens & Gilchrist, P.C., and four opinion letters dated March 9, 2000, of the New York City law firm of Brown & Wood LLP, that were issued each to Gary Woods and Billy J. McCombs (hereinafter sometimes referred to as "Woods," "McCombs," "plaintiffs" or the "taxpayers") concerning the transactions at issue in these cases. These opinion letters analyze the Federal income tax consequences of a number of investment transactions in which the taxpayers, acting through their Delaware single-member limited liability companies, engaged as partners in two different Texas general partnerships, Tesoro Drive Partners and SA Tesoro Investment Partners.

Specifically, I have been asked to address the question whether the opinion letters of these law firms are of the quality and character upon which taxpayers such as Woods and McCombs could reasonably rely in preparing their tax returns.[1]

These opinions each conclude that there was a greater than 50 percent likelihood that variously identified positions sought by the taxpayers would be upheld if challenged by the Internal Revenue Service, and that, on an overall basis, there was a greater than 50 percent likelihood that the tax treatment described in the opinion letters would be upheld if challenged by the Internal Revenue Service. It is my understanding that the partnerships through which these transactions were conducted, and Woods and McCombs

[1] Plaintiffs Woods and Mc Combs were partners in two different Texas general partnerships -- Tesoro Drive Partners and SA Tesoro Investment Partners. Plaintiffs each received a separate opinion letter from Jenkens & Gilchrist and Brown & Wood, with respect to their partnership interests in Tesoro Drive Partners and SA Tesoro Investment Partners, for a total of eight opinion letters.

as owners of interests in those partnerships, prepared and filed their 1999 Federal income tax returns in accordance with the conclusions reached in these eight opinion letters.

For the reasons set forth in greater detail below, I am of the opinion that these opinion letters are of the character and quality upon which taxpayers such as Woods and McCombs could reasonably rely in preparing their tax returns on the basis of the conclusions reached in these letters. In addressing this question, I am aware that the Internal Revenue Service has subsequently challenged the conclusions of these opinion letters and has disallowed the tax treatment claimed for the transactions in which these plaintiff-taxpayers and other similarly-situated taxpayers engaged. However, it is pertinent to note that at this juncture, there is no court decision at any level that has thus far upheld the Internal Revenue Service's legal attack against the transactions at issue in these cases The fact that the Internal Revenue Service may challenge the taxpayers' treatment of transactions is not inconsistent with the conclusion of the opinions that the Service is more likely than not incorrect in its position. Nevertheless, with the exception of the comments that follow, I will not attempt to determine the "correct" substantive tax treatment of the complex transactions in question. I will instead focus my discussion in this Report primarily upon the question whether the opinion letters received by Woods and McCombs are of the type, and have the character and quality, on which a taxpayer could rely.

Pursuant to the requirements of F R.Civ.P. 26(a)(2)(B), I set forth in Appendix A to this Report my resume, which describes my professional career and qualifications, and the compensation to be paid for this Report and my testimony, and the cases in which I have testified as an expert at trial or by deposition within the preceding four years.

In reaching my conclusion, I have examined all of the statutory, judicial, and administrative authorities cited in my Report, the opinion letters and the authorities cited therein, and the pertinent provisions of Treasury Circular 230, Appendix B, infra, that were extant in early 2000 and which prescribed the Internal Revenue Service's administrative standards for the issuance of tax opinions I have also examined the taxpayers' representations set forth in the Jenkens & Gilchrist Opinion Letters, the taxpayers' representation letters dated March 3, 2000, to Brown & Wood, the supplemental letters of Brown & Wood to Woods and McCombs dated October 23, 2000, the expert reports in these cases of Alan C Hess, Ph.D., dated May 7, 2007, Don M. Chance, Ph D., CFA, dated May 8, 2007, and the expert report of Dr. Chance dated May 8, 2007, and the expert report of Dr. Hess dated May 7, 2007, in the related case styled JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership v. United States, No. 05-231T (Fed. Cl.). I have also drawn upon my extensive experience as a tax lawyer for more than 40 years during which I have addressed, both in government service as Tax Assistant to the Solicitor General in the Department of Justice and in private practice, the tax consequences of comparable transactions and the reliability of written tax opinions for those transactions.

Moreover, I am fully familiar with the general type of transaction at issue in this case because I served as an expert witness for the Plaintiffs in Klamath Strategic Investment Fund v. United States, 2007 U.S Dist. LEXIS 6939 (E.D Texas), decided January 31, 2007, which involved a comparable transaction with respect to which two law firms' tax opinions were rendered that employed analyses that were similar to the Jenkens & Gilchrist and Brown & Wood Opinions in these cases. In Klamath, the Court

accepted the conclusions I reached in my Report and my testimony that the two law firms' tax opinions involved in that case complied with professional and Treasury standards It therefore ruled that the taxpayers in that case were entitled to rely on the two law firms' opinions and accordingly relieved the taxpayers of civil penalties sought by the Internal Revenue Service. For the reasons set forth below, I reach the same conclusion with respect to the Jenkens & Gilchrist and Brown & Wood Opinions in these cases.

1. Reliance Upon Professional Advice Is Both Reasonable and Necessary

The tax law is complex and is often difficult to understand and apply. Tax professionals therefore frequently provide written opinions to taxpayers to assist them in understanding and reporting the tax consequences of their transactions And, it is common for taxpayers to look to the written advice and recommendations of attorneys who are versed in the tax law in planning and reporting their transactions. In light of the great complexities of the modern tax law, it is plainly reasonable for taxpayers to look to such professional advice in conducting their business affairs whenever such advice is of sufficient character and quality to warrant their reliance. Indeed, in view of the enormous complexities of the provisions of the Internal Revenue Code, there is no realistic alternative for individuals, partnerships or corporate taxpayers: reliance on properly prepared professional advice is not only reasonable, it is a fundamental necessity of modern life

This basic, realistic fact has, of course, been widely recognized by the courts. As the Supreme Court reaffirmed in United States v. Boyle, 469 U S. 241 (1985), a taxpayer has the right to rely upon the substantive tax advice of an accountant or attorney to avoid the imposition of penalties. According to Boyle (469 U S. at 250-251; citation omitted):

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a second opinion, or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place . . . "Ordinary care and prudence" do not demand such action.

To the same effect is Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995). There, the Fifth Circuit stated (id. at 733; footnote omitted):

> Taxpayers sought the advice of a tax expert about claiming the loss. The expert advised that there was "a good faith, supportable position" concerning the deductibility of the loss. The Tax Court erred in finding taxpayers negligent for claiming the loss. The record reflects no basis for a finding or conclusion that it was not reasonable for taxpayers to rely on the expert's advice. "To require the taxpayer to challenge the [expert], to seek a 'second opinion,' or to try to monitor [the expert] on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place." Because the taxpayers reasonably relied on the advice of a tax expert in claiming the loss, the negligence penalty should not have been imposed.

Accord: Durrett v. Commissioner, 71 F.3d 515, 518 (5th Cir. 1996);[2] Streber v. Commissioner, 138 F.3d 216, 219-224 (5th Cir. 1998); Stanford v. Commissioner, 152 F.3d 450, 460-463 (5th Cir. 1998); McMurray v. Commissioner, 985 F.2d 36, 43 (1st Cir. 1993); Decleene v. Commissioner, 115 T.C 457 (2000); Daoust v. Commissioner, T.C. Memo 1994-203 (1994); Wright v. Commissioner, T.C. Memo 1994-288; English v. Commissioner, T.C. Memo 1993-111 (1993).

---

[2] In Durrett, another panel of the Fifth Circuit applied precisely the same analysis in reversing the Tax Court's imposition of the negligence penalty against another taxpayer who invested in the same program. There, the court observed as follows (71 F.3d at 518):

> Here the Durretts sought professional advice from their attorney, a tax accountant, and the vice president of finance for the parent corporation of the subsidiary that employed Joseph Durrett . . . We conclude that the record adequately establishes that it was reasonable for the Durretts to rely on the advice of these experts.

## II. The Opinions Involved in This Case Meet the Standards for Taxpayer Reliance

It is a common standard in the tax field that, in deciding whether to rely on professional advice, taxpayers are expected to choose qualified advisors and to obtain opinions from them that are both objectively and subjectively reasonable. For the reasons discussed below, those widely accepted standards are well satisfied in these cases.

The Treasury Department has also applied, in its internal administrative practice, a different and more complicated standard that addresses the conduct of practitioners who provide tax opinions. This standard is set forth in detail in the version of § 10.33 of Circular 230, Appendix B, infra, that was extant on January 31, and March 9, 2000, the dates of the opinions involved in these cases. This Section of the Treasury Circular states that a practitioner who provides a "tax shelter opinion" analyzing the Federal tax consequences of a tax shelter investment is to comply with five separate enumerated requirements.[3]

For the reasons that follow, I believe that the Jenkens & Gilchrist and Brown & Wood Opinions involved in these cases meet all five of the Treasury requirements adopted for its internal administrative practice. While it is plainly not necessary for an opinion to satisfy the particular requirements of this Circular for a taxpayer to act

[3] The version of § 10.33 during the year 1999, the tax year addressed by the opinions, was identical to the version extant on January 31 and March 9, 2000, the dates of the opinion letters of Jenkens & Gilchrist and Brown & Wood, respectively. During 1999, Treasury Circular 230, § 10.33 defined a "tax shelter opinion" as "advice by a practitioner . . . directed to persons other than the client who engaged the practitioner to give the advice." Since the Jenkens & Gilchrist and Brown & Wood Opinions were prepared for those firms' clients, viz., Woods and McCombs, the standards of Treasury Circular 230 did not strictly apply to them. Nevertheless, the opinions comply with the standards of Treasury Circular 230.

reasonably in relying on it, it is nonetheless of interest that the opinions obtained by the taxpayers in these cases meet even the government's own internal standards

Because the opinions involved in these cases comply both with the standards common to the profession and also with the internal administrative standards established by Treasury Circular 230, those opinions unquestionably constitute opinions of the type and character upon which the plaintiffs could reasonably rely

I first address the opinions rendered by Jenkens & Gilchrist and Brown & Wood to Woods and McCombs with respect to their interests in the Tesoro Drive Partners Partnership

A TESORO DRIVE PARTNERS

(1) Factual Matters. One requirement contained in the Circular (that is not a component of the common professional standards of tax practitioners) is that the practitioner is to make inquiry as to all relevant facts and be satisfied that the material facts are accurately and completely described in the offering materials, and assure that any representations as to future activities are clearly identified, reasonable and complete.

The opinion letters comply with this requirement. There is a detailed description in each of these letters[4] that confirms that the opinion writers have inquired as to all relevant facts This discussion is set forth in the Jenkens & Gilchrist Opinion under the caption "Facts" and in the Brown & Wood Opinion under the caption "Summary of the Transaction." I am advised that Jenkens & Gilchrist prepared substantially all of the underlying documents necessary to carry out these transactions. Hence, the firm was fully familiar with all of the factual details pertaining to the transactions. The Jenkens &

[4] See Jenkens & Gilchrist Opinion Letters, ( pp. 2-3); Brown & Wood Opinion Letters (pp. 1-2).

Gilchrist (pp. 6-7) and the Brown & Wood (pp. 2-3) Opinions set forth the taxpayers' representations, which the taxpayers certify as true in their representation letters to Brown & Wood. The opinions analyze the tax consequences of a series of transactions all of which were completed by the taxpayers as of December 31, 1999. Accordingly, there are no representations as to future activities of the parties to the transactions In my view, Jenkens & Gilchrist and Brown & Wood were amply justified in accepting these representations as true without an independent verification insofar as there is nothing about them that would appear to be untrue or unreasonable. See Treasury Circular 230, § 10.33(a)(1)(ii).

(2) Relate Law to Facts. The practitioner is also required to relate the law to the actual facts and, when addressing issues based on future activities, clearly identify what facts are assumed. The opinion letters also comply with this requirement. For example, on pages 3-4 of the Jenkens & Gilchrist Opinions and pages 5-6 of the Brown & Wood Opinions, the opinions set forth twelve different positions and conclude that it is more likely than not that they will be upheld if challenged by the Internal Revenue Service Accordingly, the opinions conclude that the taxpayers will be able to claim an ordinary loss on the disposition of certain foreign currency. The opinions also conclude that, on an overall basis, it is more likely than not that twelve different possible theories to limit the taxpayers' ordinary loss will not be upheld if they are advanced by the Internal Revenue Service.

There are comprehensive discussions in each of the Jenkens & Gilchrist and Brown & Wood Opinions that closely and completely relate the applicable tax law to the facts of the case. With respect to the Tesoro Drive Partners partnership, both the Jenkens

& Gilchrist (Appendix L) and Brown & Wood (pp. 40-45) Opinions conclude that the disposition of foreign currency will result in an ordinary loss.

This conclusion is also objectively reasonable because it is squarely supported by the language of the applicable statutory provisions that were then extant. In particular, the central tax issue in these cases concerns the treatment of "contingent" liabilities in determining the taxpayers' "basis" in their ownership of their partnership interests under Section 752 of the Code. The determination of the opinions that the taxpayers' obligations under the Short Option is only a "contingent" liability, and that under the case law such a "contingent" liability does not reduce the partner's basis in his partnership interest, represented an objectively reasonable conclusion at the time the opinions were issued.

By contrast, the contrary conclusion of the Service lacks an objective appearance of reasonableness because it appears to be based on a proposition that directly conflicts with its past position. Specifically, the Service took the opposite position in several cases that it won prior to 2000 that a "contingent" liability is not to be taken into account in partnership basis calculations when doing so would have had the effect of decreasing the taxpayer's taxes; here, however, the Service now claims that a "contingent" liability is to be taken into account in basis calculations when doing so would have the effect of increasing the taxpayer's tax liability. The Service's position of "heads I win and tails you lose" is a position that appears to be inconsistent with the agency's duty to apply the tax laws neutrally and evenhandedly.

The opinions' conclusions that the obligation under the Short Option was not a liability within the meaning of § 752 and its conclusion with respect to the resulting basis

of the taxpayer's Partnership interest is the heart of the opinions insofar as they are the legal foundation for the calculation of the taxpayers' basis in their partnership interests and for their eligibility for claimed loss on the sale of the foreign currency.

Furthermore, the objective reasonableness of the opinions' conclusions on the law extant in the year 1999 is reinforced by the actions of the Service taken long after the consummation of the transactions at issue in this case. On June 24, 2003, the Service promulgated temporary Regulations which apply retroactively to partnership transactions consummated after October 19, 1999. It is noteworthy that the Service employed the extraordinary and legally questionable stratagem of issuing regulations that reach back more than three years in time in order to bootstrap its litigating position.[5] Moreover, as the cogent professional criticism pointedly observed, the legislation addressing basis adjustments in the corporate context provided no authority to the Service to issue regulations that apply in the pure partnership context. Hence, the "quick fix" the Service sought to impose was neither quick nor effective.

Finally, the Section 752 legal analysis of the transactions set forth in both the Jenkens & Gilchrist and Brown & Wood Opinions was thereafter squarely upheld in Klamath Strategic Investment Fund LLC v. United States, 440 F.Supp. 2d 608 (E.D. Tex 2006), involving a similar transaction There, the Court flatly rejected the Service's attempt to change its position on the definition of "liability" under Section 752 of the Internal Revenue Code. The legal analysis of the Klamath Court therefore provides solid

[5] The issuance of a retroactive Regulation in 2003 that related back to 1999 and the preamble to that Regulation represents an explicit acknowledgment by the Service that it was attempting to change the law. It is highly questionable whether the Internal Revenue Service can issue retroactive regulations to alter the civil tax consequences of a pre-existing transaction.

support for the "more likely than not" conclusions of the Jenkens & Gilchrist and Brown & Wood Opinions that were issued to Woods and McCombs. As the Klamath Court stated, in terms that eloquently support the analysis which formed the basis of the opinions in these cases (440 F Supp 2d at 619):

> It is clear from the record that the government has often and consistently relied on the principle that a "liability" under Section 752 does not include an obligation that is contingent. The government has applied this principle when it works to its benefit (to increase taxes owed) This Court will consistently apply these same principles even if they sometimes work to the benefit of taxpayers (to decrease taxes owed). The Court's analysis of "liability" under Section 752 will not vary in meaning simply based on whose ox is being gored.

Moreover, the Court in Klamath held that the Service's retroactive Temporary Regulation, which sought to change the law, was ineffective for conduct occurring before August 11, 2000, the date of the issuance of IRS Notice 2000-44 attacking the transaction. The Court therefore denied the government's motion for summary judgment.[6]

After trial, the Court in Klamath rejected civil penalties sought by the IRS on the ground that the taxpayers relied in good faith upon the advice of accountants and tax lawyers who had issued comprehensive written opinions that were comparable to the Jenkens & Gilchrist and Brown & Wood Opinions. See 2007 U.S. Dist. LEXIS 6939 (E.D. Texas), decided January 31, 2007.

---

[6] After the issuance of IRS Notice 2000-44, Brown & Wood sent identical nine-page letters dated October 23, 2000, to Woods and McCombs that set forth the firm's detailed analysis of the IRS Notice under existing law and the firm's conclusion that the IRS Notice did not support disallowance of the losses in the instant cases. The letters discussed, inter alia, the authorities cited in Notice 2000-44, and concluded that they all involved situations in which the losses were not "bona fide" and were therefore distinguishable from the Transactions in these cases. Accordingly, Brown & Wood opined that it was more likely than not that the IRS would not be able to contend successfully that the losses claimed by the Taxpayers from the Transactions were not bona fide.

Finally, the Klamath Court has recently reaffirmed its ruling that the term "liability" under Section 752 does not include an obligation that is contingent and that the retroactivity of Treasury Reg. § 1.752-6 was ineffective to the taxpayers in that case. The Court therefore denied the government's motion to vacate its summary judgment ruling on Section 752 as moot. The Court also held that the taxpayers could deduct the operational and interest expenses that were associated with the transactions in that case on the ground that the transactions had economic substance apart from the tax benefits. See 2007 U.S. Dist. LEXIS 24806, decided April 3, 2007.[7]

(3) Identification of Material Issues. The practitioner is to ascertain that all material Federal tax issues have been considered, and that all of those issues which involve the reasonable possibility of a challenge by the Internal Revenue Service have been fully and fairly addressed.

The Jenkens & Gilchrist and Brown & Wood Opinion Letters comply with this requirement.

(a) The Jenkens & Gilchrist Opinions With Respect to Tesoro Drive Partners

I first address the Jenkens & Gilchrist Opinions. As I have indicated above (supra, p. 9), the Jenkens & Gilchrist Opinions (pp. 5-6) identify twelve different statutory and

[7] Dr. Hess' Report confirms the economic substance of the Options Transactions. He concludes (pp. 24-25) as follows: "All of the options analyzed in this report were out-of-the-money on their trade dates and contribution dates. All of the options had positive probabilities of being in-the-money on their termination date, and all of the options had positive expected payoffs. All of the options were terminated early. On their early termination dates, eight of the ten options were in-the-money and two were out-of-the money. Had the options been left open until their original termination dates, the eight that were in-the-money on their early termination date would have finished in-the-money on their original termination date, and the two that were out-of-the-money on their early termination date, would have been out-of-the-money on their original termination date. In connection with terminating the options early, Deutsche Bank made payments to Woods/McCombs on all five of the option strategies."

judicial theories which the Internal Revenue Service might invoke to disallow the taxpayers' claimed losses. The opinions conclude (p. 7) that the described tax consequences have substantial authority and that it is more likely than not that the taxpayers will prevail if challenged by the IRS The opinions set forth a detailed discussion (Appendices M, N, and O) of various theories that the Internal Revenue Service might possibly advance. These include the step transaction doctrine, sham transaction and economic substance doctrines, the at-risk rules, the passive activity loss rules, and the partnership anti-abuse rules. All of these possible theories are discussed in great detail in the opinions, which conclude that the taxpayers are more likely than not to prevail in any challenge by the Internal Revenue Service.

(b) The Brown & Wood Opinions With Respect to Tesoro Drive Partners

The Brown & Wood Opinions likewise comply with the requirement to identify material issues. Specifically, the Brown & Wood Opinion (p. 6) identifies twelve different statutory and judicial theories which the Internal Revenue Service might invoke to disallow the taxpayers' claimed treatment. The opinion concludes (p. 6): "Based upon the foregoing, there is a greater than 50 percent likelihood that the tax treatment of the Transactions would be upheld if challenged by the IRS."

The opinions set forth a detailed discussion (pp. 45-73) of various theories that the Internal Revenue Service might possibly advance. These include the sham transaction, economic substance, and business purpose doctrines, the loss limitation rules of Section 165(c)(2) of the Internal Revenue Code, the step transaction doctrine, the disguised sale provisions of Section 707(a)(2)(B) of the Internal Revenue Code, the partnership anti-abuse regulations, the potential disregard of the partnership for federal income tax

purposes, the loss limitation rules of Section 1092 of the Internal Revenue Code, the "at risk" provisions of Section 465 of the Internal Revenue Code, the passive activity rules of Section 469 of the Internal Revenue Code, and the reallocation of income and deduction rules of Section 482 of the Internal Revenue Code.

In addition, the Brown & Wood Opinion (pp. 6, 73-77) concludes that the IRS should not be successful were it to assert a penalty against the taxpayers under Section 6662(b)(2) or (3) for positions taken in their federal income tax returns with respect to the Transactions. Finally, the Brown & Wood Opinion concludes (pp. 6, 77) that it is more likely than not that the Transactions would not constitute a "tax shelter" within the meaning of Section 6111(c)(1) of the Internal Revenue Code and, therefore, would not be required to be registered under Section 6111(a). All of these possible theories are discussed in great detail in the Brown & Wood Opinions, which conclude that the taxpayers are more likely than not to prevail in any challenge by the Internal Revenue Service.

(4) Opinion On Each Material Issue Where possible, the practitioner is to provide an opinion whether it is more likely than not that an investor will prevail on the merits of each material tax issue presented by the offering which involves a reasonable possibility of a challenge by the Internal Revenue Service.

The Opinion Letters comply with this requirement. The discussion of each material tax issue is accompanied by a conclusion that it is more likely than not that the taxpayer will prevail on the merits if challenged by the Internal Revenue Service.

(a) The Jenkens & Gilchrist Opinion With Respect to Tesoro Drive Partners

In the Jenkens & Gilchrist Opinions issued to Woods and McCombs in connection with their interests in Tesoro Drive Partners, the issue and the citation to the more likely than not conclusions are as follows:

A. GW Tesoro Investments LLC ("GWTILLC") (Woods) and BJM Tesoro Drive Investments ("BJMTBILLC") (McCombs) as single member limited liability companies should be disregarded as an entity for federal income tax purposes. Appendix A.

B. Investing in the Options by GWTILLC and BJMTDILLC should not be taxable, and the Options should be treated as separate instruments for federal income tax purposes. Appendix B.

C. Tesoro Drive Partners (the "Partnership") should be classified as a partnership for federal income tax purposes. Appendix C.

D. The taxpayers' contributions of the Options to the Partnership should not result in a taxable gain or loss. Appendix D.

E. The Short Option should not be a liability within the meaning of Section 752 of the Internal Revenue Code of 1986, as amended. Appendix E.[8]

F The taxpayers' bases in their interests in the Partnership after the contribution of the Options should include the cost of the Long Options contributed, without adjustment for the Short Option. Appendix F.

---

[8] Once the taxpayers transferred the Options to the Partnership, the basis rules of Subchapter K (the partnership provisions) of the Internal Revenue Code apply. The tax bases in the taxpayers' Partnership interests equal the cost of the Long Option without adjustment for the obligation under the Short Option because the contingent liability under the Short Option is not a liability within the meaning of Section 752.

G. An adjustment to the taxpayers' adjusted bases in their Partnership interests should be required as a result of the expiration of the Options, due to the recognition of ordinary loss on such expiration under Section 1234 of the Internal Revenue Code. Appendix G.

H. The taxpayers' contribution of their interests in the Partnership to their corporation Tesoro Drive Investors Inc. ("TDI INC.") should not be a taxable transaction and TDI INC.'s basis in the Partnership interests contributed by the taxpayers should be equal to their bases in such Partnership interests as of the date of such contribution. Appendix H.

I. The taxpayers' bases in their shareholding interests in TDI INC. should be increased by an amount equal to the adjusted bases of their interests in the Partnership as of the date of contribution. Appendix I.

J. The liquidation of the Partnership should not result in gain or loss recognition. Appendix J

K The liquidation of the Partnership should result in an allocation of the Partnership's "outside" basis to the properties distributed by it in liquidation In this case, the properties consisted of cash and an investment in Canadian Dollars (the "Foreign Currency"). Appendix K.

L. The disposition by TDI INC. of all of the Foreign Currency received in liquidation of the Partnership should result in an ordinary loss.

M. The step transaction, sham transaction, and economic substance doctrines should not apply to the transactions. Appendix M.

N. Sections 707(a)(2)(B), 165(c), 465, 469, and 1092 of the Internal Revenue Code should not apply to the transactions. Appendix N.

O. Treasury Regulation, Section 1.701-2 should not apply to the transaction described herein. Appendix O.

(b) The Brown & Wood Opinions With Respect to Tesoro Drive Partners

The Brown & Wood Opinion Letter likewise complies with the requirement in Treasury Circular 230 that the practitioner provide an opinion on the merits of each material tax issue.

Specifically, in the Brown & Wood Opinions issued to Woods and McCombs in connection with their interests in Tesoro Drive Partners, the issue and the citation to the more likely than not conclusions are as follows:

A. The taxpayers' single member limited liability companies would be disregarded as an entity separate from the taxpayers (p. 7).

B. The Tesoro Drive Partners Partnership would be classified as a partnership (p 7)

C The Options would be treated as separate instruments (pp. 8-10).

D The taxpayers would not recognize material taxable gain or any taxable loss upon their contributions of the Options to the Partnership (pp. 10-16).

E. The Short Option would not be considered a liability for purposes of Section 752 the Internal Revenue Code (pp. 16-33).

F. The taxpayers' bases in the their interests in the Partnership would be equal to their bases in the Options, reduced by the amount of liabilities assumed by the

Partnership as determined for purposes of Section 752, and increased by the taxpayers' share of such liabilities (pp. 33-34).

G. The contributions by the taxpayers of the their interests in the Partnership to Tesoro Drive Investors, Inc. ("Corp.") would qualify as an exchange described in Section 351(a) of the Internal Revenue Code on which the taxpayers would recognize no gain or loss (pp. 34-36).

H. The taxpayers' bases in their Corp. stock is increased by the amount of their bases in their interests in the Partnership (p. 37).

I. The Corp 's basis in the taxpayers' interests in the Partnership would equal the Taxpayers' tax bases in their Partnership interests (p. 37).

J. The Corp would not recognize gain or loss on the receipt of a distribution of Foreign Currency from the Partnership in exchange for the taxpayers' membership interests in the Partnership (pp. 37-38).

K. The basis of the Foreign Currency received as a liquidating distribution in exchange for the Corp.'s interest in the Partnership would equal the Corp.'s basis in such interest immediately before such distribution (pp. 38-40).

L. The gain or loss recognized by the Corp on the sale of Foreign Currency received in exchange for the Corp 's interest in the Partnership would be treated as ordinary income or loss (pp 40-45).

M. With respect to the application of certain loss limitation rules potentially affecting the deductibility of any loss claimed by Investor in connection with the Transactions, the Brown & Wood Opinions conclude:

i. The sham transaction and doctrine would not apply and, based on the representations of the taxpayers, the Transactions would have the requisite economic substance (pp. 45-53)

ii. The requisite profit motive exists to support the deduction of any loss on the disposition of the Foreign Currency under Section 165(c)(2) of the Internal Revenue Code (pp. 54-56).

iii. The step transaction doctrine would not apply to the Transactions (pp. 56-60).

iv. The disguised sale provisions of Section 707(a)(2)(B) would not apply to the Transactions (pp. 60-62)

v. The partnership anti-abuse rules would not apply to the Transactions (pp 62-68)

vi The Partnership would not be disregarded for federal income tax purposes (pp. 69-70)

vii. The loss limitation rule of Section 1092 of the Internal Revenue Code would not apply to the Transactions (p. 70)

viii. Any loss that the taxpayers incur upon the disposition of the Foreign Currency distributed by Partnership would not be limited by the "at risk" rules of Section 465 of the Internal Revenue Code (pp. 70-71).

ix Any loss of Partnership and the loss upon disposition of the Foreign Currency received by Investor upon redemption of its interest in Partnership would not be subject to the passive activity loss limitations under Section 469 of the Internal Revenue Code (pp. 71-72).

x. Any loss that the Taxpayers incur upon the disposition of the Foreign Currency distributed by Partnership would not be adversely affected by Section 482 of the Internal Revenue Code (pp 72-73).

14. Based upon the foregoing, Brown & Wood opined that there is a greater than 50 percent likelihood that the tax treatment of the Transactions would be upheld if challenged by the IRS (p. 6).

15 Based upon the foregoing, Brown & Wood further opined that the IRS should not be successful were it to assert a penalty against the Taxpayers under Section 6662(b)(2) or (3) of the Internal Revenue Code for positions taken in the Taxpayers' U.S Federal income tax returns with respect to the Transactions (pp. 73-77).

16. Finally, Brown & Wood also opined that it is more likely than not that the Transactions would not constitute a tax shelter within the meaning of Section 6111(c)(1) of the Internal Revenue Code and, therefore, would not be required to be registered under Section 6111(a) of the Internal Revenue Code (p. 77).

(5) Overall Evaluation. Where possible, the practitioner is to provide an overall evaluation whether the material tax benefits in the aggregate more likely than not will be realized.

The opinion letters comply with this requirement. The Jenkens & Gilchrist Opinions to Woods and McCombs with respect to their interests in Tesoro Drive Partners summarily state (p 7) as follows with respect to all of its conclusions: "Based on the foregoing, and subject to the qualifications, limitations and assumptions set forth herein, we are of the opinion that the described tax consequences have substantial authority and

it is more likely than not that you will prevail if challenged by the IRS."[9] Likewise, as indicated above, the Brown & Wood Opinion Letters to Woods and McCombs state (p. 6) as follows: "Based upon the foregoing, there is a greater than 50 percent likelihood that the tax treatment of the transactions would be upheld if challenged by the IRS."

B. SA TESORO INVESTMENT PARTNERS

I turn now to the opinion letters dated January 31, 2000, and March 9, 2000, rendered by Jenkens & Gilchrist and Brown & Wood, respectively, to Woods and McCombs with respect to their interests in the SA Tesoro Investment Partners. As I shall now show, these opinions likewise comply both with the standards common to the profession and also with the internal administrative standards established by Treasury Circular 230. As a result, these opinions also unquestionably constitute opinions of the type and character upon which the plaintiffs could reasonably rely.

(1) Factual Matters. The Jenkens & Gilchrist Opinion Letters comply with this requirement. There is a detailed description in each of the letters addressed to the Taxpayers that confirms that the opinion writers have inquired as to all of the relevant facts. This discussion is set forth under the caption "Facts" (pp. 1-3). See p. 8. The opinions analyze the tax consequences of a series of transactions which were completed by the taxpayers as of December 31, 1999. Accordingly, there are no representations as to

[9] This conclusion complies with § 10.33(a)(5)(ii) of Circular 230 which allows a practitioner to make an overall evaluation only when "it is based on a conclusion that substantially more than half the material tax benefits, in terms of their financial impact on a typical investor, more likely than not will be realized if challenged by the Internal Revenue Service." That condition has been met in this case insofar as the Jenkens & Gilchrist Opinion concluded that the described tax consequences were all supported by substantial authority.

future activities of the parties to the transaction I have examined the portion of the Jenkens & Gilchrist Opinions captioned "Representations," in which the opinion writer sets forth the representations of the taxpayer, the partners of SA Tesoro Investment Partners, and the authorized officers of a corporation known as SATI INC. (pp 6-7). In my view, Jenkens & Gilchrist was amply justified in accepting as true their representations without an independent verification insofar as there is nothing about them that would appear to be untrue or unreasonable. See Treasury Circular 230, § 10.33(a)(1)(ii)

The Brown & Wood Opinion Letters likewise comply with the requirement with respect to Factual Matters. There is a detailed description in each of the letters addressed to the taxpayers that confirms that the opinion writer has inquired as to all of the relevant facts. This discussion is set forth under the caption "Summary of the Transactions." The opinions analyze the tax consequences of a series of transactions of which were completed by the taxpayers as of December 31, 1999. Accordingly, there are no representations as to future activities of the parties to the transaction. I have also examined the taxpayers' written representations in their letters to Brown & Wood dated March 3, 2000, which Brown & Wood recited in its opinion letters (p. 3) under the caption "Representations and Assumptions." In my view, Brown & Wood was amply justified in accepting their representations as true without an independent verification insofar as there is nothing about them that would appear to be untrue or unreasonable. See Treasury Circular 230, § 10.33(a)(1)(ii)

(2) Relate Law to Facts. The practitioner is also required to relate the law to the actual facts and, when addressing issues based on future activities, clearly identify what facts are assumed The opinion letters comply with this requirement.

The Jenkens & Gilchrist Opinions (pp. 3-5) set forth twelve different positions and conclude that it is more likely than not that they will be upheld if challenged by the IRS. The opinions conclude that the disposition by the taxpayers' corporation of certain shares in Sun Microsystems, Inc. will result in a short-term capital loss. Accordingly, Jenkens & Gilchrist opined (p. 8) that "the described tax consequences have substantial authority and that is more likely than not that [the taxpayer] will prevail if challenged by the IRS."

For example, the Brown & Wood Opinions (pp. 5-6) likewise set forth twelve different positions and conclude that it is more likely than not that they will be upheld if challenged by the IRS. Accordingly, the opinions also conclude that the taxpayers will be able to claim a capital loss on the sale of certain shares in Sun Microsystems, Inc. The Brown & Wood Opinions also conclude (p. 6) that, on an overall basis, there is a greater than 50 percent likelihood that the tax treatment of the Transactions would be upheld if challenged by the IRS. Furthermore, the Brown & Wood Opinions conclude that the IRS should not be successful were it to assert a penalty against the taxpayers under Section 6662(b)(2) or (3) of the Internal Revenue Code for positions taken on the taxpayers' federal income tax returns with respect to the translations Finally, the Brown & Wood Opinions conclude that it is more likely than not that the Transactions would not constitute a tax shelter within the meaning of Section 6111(c)(1) and, therefore, would not be required to be registered under the Section 6111(a) of the Internal Revenue Code.

Just as the Jenkens & Gilchrist and Brown & Wood Opinions addressed to the taxpayers in connection with their interests in Tesoro Drive Partners contain a comprehensive discussion that closely and completely related the applicable tax law to the facts of that case, the two law firm opinions addressed to the taxpayers with respect to their interests in SA Tesoro Investment Partners likewise contain similar comprehensive discussions that reach an objectively reasonable conclusion. I therefore incorporate by reference my analysis and professional opinion with respect to the quality and character of the opinion letters issued to the taxpayers by Jenkens & Gilchrist and Brown & Wood with respect to their interests in Tesoro Drive Partners (pp. 9-13, supra). The Jenkens & Gilchrist and Brown & Wood Opinions issued to the taxpayers with respect to their interests in SA Tesoro Investment Partners are altogether comparable to the opinions discussed above, and are likewise objectively reasonable.

(3) Identification of Material Issues. The practitioner is to ascertain that all material Federal tax issues have been considered, and that all of those issues which involve the reasonable possibility of a challenge by the Internal Revenue Service have been fully and fairly addressed.

(a) The Jenkens & Gilchrist Opinions With Respect to SA Tesoro Investment Partners

The Jenkens & Gilchrist Opinions comply with this requirement. Thus, the opinions identify eight different statutory and judicial theories which the IRS might invoke to disallow the taxpayers' claimed losses. The opinions conclude (p. 8) that the "described tax consequences have substantial authority and there it is more likely than

not that you will prevail if challenged by the IRS." The opinions set forth a detailed discussion of various theories that the IRS might possibly advance. These include the step transaction doctrine, the sham transaction doctrine, the loss limitation provisions of Section 707(a)(2)(B) of the Internal Revenue Code, the loss limitation provisions of Section 165(c) of the Internal Revenue Code, the "at risk" rules of Section 465 of the Internal Revenue Code, the passive activity rules of Section 469 of the Internal Revenue Code, the loss limitation rules of Section 1092 of the Internal Revenue Code, and the partnership anti-abuse rules.

(b) The Brown & Wood Opinions With Respect to SA Tesoro Investment Partners

The Brown & Wood Opinion Letters likewise comply with this third requirement to identify material issues. Thus, its opinions identify five different statutory and judicial theories which the IRS might invoke to disallow the taxpayers' claimed losses. The opinions conclude (p. 6) that based upon the foregoing, there is a greater than 50 percent likelihood the tax treatment of the Transactions would be upheld if challenged by the IRS." The opinions set forth a detailed discussion of various theories that the IRS might possibly advance. These include the sham transaction, economic substance and business purpose doctrines, the loss limitation rules of Section 165(c)(2) of the Internal Revenue Code, the step transaction doctrine, the disguised sale provisions, the partnership anti-abuse regulations, the "at risk" rules of Section 465 of the Internal Revenue Code, the passive activity loss rules of Section 469 of the Internal Revenue Code, and the income allocation rules of Section 482 of the Internal Revenue Code. All of these possible

theories are discussed in great detail in the Brown & Wood Opinions which conclude that the taxpayers are more likely than not to prevail in any challenge by the IRS.

(4) Opinion On Each Material Issue. Where possible, the practitioner is to provide an opinion whether it is more likely than not that an investor will prevail on the merits of each material tax issue presented by the offering which involves a reasonable possibility of a challenge by the Internal Revenue Service.

(a) The Jenkens & Gilchrist Opinions with Respect to SA Tesoro Investment Partners

The Jenkens & Gilchrist Opinion Letters comply with this fourth requirement. The discussion of each material tax issue is accompanied by a conclusion that it is more likely than not that the taxpayer will prevail on the merits if challenged by the Internal Revenue Service.

A. GW Tesoro Investments LLC ("GWTILLC") (Woods) and BJM Tesoro Drive Investments ("BJMTBILLC") (McCombs) as single member limited liability companies should be disregarded as an entity for federal income tax purposes. Appendix A.

B. Investing in the Options by GWTILLC and BJMTDILLC should not be taxable, and the Options should be treated as separate instruments for federal income tax purposes. Appendix B

C. SA Tesoro Investment Partners (the "Partnership") should be classified as a partnership for federal income tax purposes Appendix C.

D The taxpayers' contributions of the Options to the Partnership should not result in a taxable gain or loss. Appendix D.

E. The Short Option should not be a liability within the meaning of Section 752 of the Internal Revenue Code of 1986, as amended. Appendix E.[10]

F. The taxpayers' bases in their interests in the Partnership after the contribution of the Options should include the cost of the Long Option contributed, without adjustment for the Short Option Appendix F.

G An adjustment to the taxpayers' adjusted bases in their Partnership interests should be required as a result of the expiration of the Options, due to the recognition of ordinary loss on such expiration under Section 1234 of the Internal Revenue Code Appendix G.

H. The taxpayers' contribution of their interests in the Partnership to their corporations SA Tesoro Investors Inc ("SATI INC.") should not be a taxable transaction and SATI INC.'s basis in the interests contributed by the taxpayers should be equal to their bases in such Partnership interests as of the date of such contribution. Appendix H.

I. The taxpayers' bases in their interests in SATI INC. should be increased by an amount equal to the adjusted basis of their interest in the Partnership as of the date of contribution. Appendix I.

*J. The liquidation of the Partnership should not result in gain or loss recognition.* Appendix J.

K The liquidation of the Partnership should result in an allocation of the Partnership's "outside" basis to the properties distributed by it in liquidation. In this case,

---

[10] Once the taxpayers transferred the Options to the Partnership, the basis rules of Subchapter K (the partnership provisions) of the Internal Revenue Code apply. The tax bases in the taxpayers' Partnership interests equal the cost of the Long Option without adjustment for the obligation under the Short Option because the contingent liability under the Short Option is not a liability within the meaning of Section 752.

the properties consisted of cash and an investment in Sun Microsystems, Inc. (the "Shares"). Appendix K.

L. The disposition by SATI INC. of all of the Shares received in liquidation of the Partnership should result in a short-term capital loss.

M. The step transaction, sham transaction, and economic substance doctrines should not apply to the transactions. Appendix M.

N. Sections 707(a)(2)(B), 165(c), 465, 469, and 1092 of the Internal Revenue Code should not apply to the transactions. Appendix N.

O. Treasury Regulation, Section 1.701-2 should not apply to the transaction described herein. Appendix O.

(b) <u>The Brown & Wood Opinions With Respect to SA Tesoro Investment Partners</u>

Likewise, the Brown & Wood identical opinions issued to the Taxpayers in connection with their interests in SA Tesoro Investment Partners comply with the fourth requirement of Treasury Circular 230 that an opinion be provided on each material tax issue Specifically, the Brown & Wood Opinions set forth, the issue and the citation to the more likely than not consequences as follows:

A. The Taxpayers' LLCs would be disregarded as an entity separate from Taxpayers (p 7).

B The SA Tesoro Investment Partners (the "Partnership") would be classified as a partnership (pp. 7-8)

C. The Options would be treated as separate instruments (pp. 8-10).

D. The Taxpayers would not recognize material taxable gain or any taxable loss upon the contribution of the Options to the Partnership (pp. 10-17)

E The Short Option would not be considered a liability for purposes of Section 752 of the Internal Revenue Code for purposes of the Administration's 2001 Budget and Revenue Proposals (pp. 17-34)

F. The Taxpayers' bases in their interests in the Partnership would be equal to their bases in the Options, reduced by the amount of liabilities as determined for purposes of Section 752 of the Internal Revenue Code assumed by the Partnership and increased by the Taxpayers' share of such liabilities (pp. 33-34).

G. The contribution by the Taxpayers of their interests in the Partnership to SA Tesoro Investors Inc. ("Corp.") would qualify as an exchange described in Section 351(a) of the Internal Revenue Code on which the Taxpayers would recognize no gain or loss (pp 34-37).

H The Taxpayers' tax bases in their Corp. stock is increased by the amount of their tax bases in their interests in the Partnership (p. 37).

I. The Corp 's basis in the Taxpayers' interests in the Partnership would equal their tax bases in the Partnership (p. 37).

J. The Corp. would not recognize gain or loss on the receipt of a distribution of Sun Microsystems stock (the "Shares") from the Partnership in exchange for the Taxpayers' membership interests in the Partnership (pp. 37-38).

K. The basis of Shares received as a distribution in exchange for Corp.'s interest in Partnership would equal Corp.'s basis in such interest immediately before such distribution (p 38).

L. The gain or loss recognized by Corp. on the sale of Shares received in exchange for Corp.'s interest in Partnership would be treated as capital gain or loss (pp. 39-40).

M. With respect to the application of certain loss limitation rules potentially affecting the deductibility of any loss claimed by the taxpayers in connection with the Transactions, the Brown & Wood Opinion concluded:

i The sham transaction doctrine would not apply and, based on the representations of the taxpayers, the Transactions would have the requisite economic substance (pp. 40-48).

ii. The requisite profit motive exists to support the deduction of any loss on the disposition of the Shares under Section 165(c)(2) of the Internal Revenue Code (pp. 48-50).[11]

iii. The step transaction doctrine would not apply to the Transactions (pp. 51-54).

iv The disguised sale provisions of Section 707(a)(2)(B) of the Internal Revenue Code would not apply to the Transactions (pp. 55-57).

v The partnership anti-abuse rules would not apply to the Transactions (pp. 58-63)

vi The Partnership would not be disregarded for federal income tax purposes (pp. 63-64)

[11] In the summary portion of its opinion letters relating to SA Tesoro Investment Partners, Brown & Wood refers to a potential IRS argument under Section 165(c)(2) limiting any loss on the disposition of "the foreign currency." See Letter to Woods (p. 6) and Letter to McCombs (p 6). These references are inadvertent and inconsequential errors. In the detailed discussion, the Opinions correctly refer to the disposition of the [Sun Microsystems] Shares. See Brown & Wood Letter to Woods (p. 50) and Letter to McCombs (p. 50).

vii The loss limitation provisions of Section 1092 of the Internal Revenue Code would not apply to the Transactions (pp. 64-65).

viii. Any loss that the Taxpayers incur upon the disposition of the Shares distributed by Partnership would not be limited by the "at risk" rules of Section 465 of the Internal Revenue Code (p. 65).

ix. Any loss of Partnership and the loss upon disposition of the Shares received by Taxpayers upon redemption of its interest in Partnership would not be subject to the passive loss limitations under Section 469 of the Internal Revenue Code (pp. 65-67).

x Any loss that the Taxpayers incur upon the disposition of the Shares distributed by Partnership would not be adversely affected by Section 482 of the Internal Revenue Code (p. 68).

14. Based upon the foregoing, Brown & Wood opined (p. 6) that there is a greater than 50 percent likelihood that the tax treatment of the Transactions would be upheld if challenged by the IRS

15. Based upon the foregoing, Brown & Wood further opined that the IRS should not be successful were it to assert a penalty against the Taxpayers under Section 6662(b)(2) or (3) of the Internal Revenue Code for positions taken in the Taxpayers' U.S Federal income with respect to the Transactions (pp 67-71).

16 Finally, Brown & Wood also opined that it is more likely than not that the Transactions would not constitute a tax shelter within the meaning of Section 6111(c)(1) of the Internal Revenue Code and, therefore, would not be required to be registered under Section 6111(a) of the Internal Revenue Code (pp. 71-72).

(5) Overall Evaluation. Where possible, the practitioner is to provide an overall evaluation whether the material tax benefits in the aggregate more likely than not will be realized

As in the case of the opinion letters to the Taxpayers with respect to their interests in Tesoro Drive Partners, the opinion letters of both Jenkens & Gilchrist and Brown & Wood comply with this requirement in connection with the Taxpayers' interest in SA Tesoro Investment Partners. The Jenkens & Gilchrist Opinions to Woods and McCombs states (p 8): "Based on the foregoing and subject to the qualifications, limitations, and assumptions set forth herein, we are of the opinion that the described tax consequences have substantial authority and that it is more likely than not that you will prevail if challenged by the IRS." Similarly, Brown & Wood opined (p. 6) that "there is a greater than 50 percent likelihood that the tax treatment of the Transactions would be upheld if challenged by the IRS."[12]

[12] The conclusions comply with § 10.33(a)(5)(ii) of Circular 230 which allows a practitioner to make an overall evaluation only when "it is based on a conclusion that substantially more than half the material tax benefits, in terms of their financial impact on a typical investor, more likely than not will be realized if challenged by the Internal Revenue Service" That condition has been met in these cases.

## III Conclusion

In light of the above, it is my conclusion that the four opinion letters of Jenkens & Gilchrist and the four opinion letters of Brown & Wood I have reviewed that were issued to Woods and McCombs are both objectively and subjectively reasonable and that they comply in all respects with the professional requirements common to the tax profession and also with the specific internal administrative practice requirements of Treasury Circular 230, § 10.33. In these circumstances, they constitute opinions upon which the taxpayers Woods and McCombs could reasonably rely in preparing and filing their tax return

The quality and breadth of coverage of the opinions confirm the opinion writers' wide-ranging familiarity with the relevant provisions of Federal tax law. It also confirms the reasonableness and candor of the taxpayers' conduct vis-à-vis their advisors. These objective and subjective indications of the reasonableness of the opinions reinforce my conclusion that the opinion letters involved in these consolidated cases were of sufficient quality and character that the Taxpayers in these cases could reasonably rely on them. In light of the general complexity of the tax law and the specific complexity of the issues involved in these cases, taxpayers such as the plaintiffs in these consolidated cases

necessarily must seek and obtain such professional advice, and be permitted to rely upon it, in planning and reporting their transactions.

Respectfully submitted,

Stuart A. Smith

Stuart A. Smith

Dated: May 30, 2007