IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NO. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner of
JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND ANSWER TO ASSERT COUNTERCLAIM FOR PENALTIES**

Defendant's Reply Brief is long on conspiracy theory, but short on evidence – and on the law applicable to deciding its motion for leave to amend its answer to assert a counterclaim for penalties against Plaintiff pursuant to 26 U.S.C. 6662. Defendant mischaracterizes an apparent miscommunication within Plaintiff's partners' offices as a conspiracy to withhold information from the IRS and Defendant. On this basis, Defendant argues, it should be permitted to void the Announcement 2002-2 amnesty earned by Jerry Zucker and James Boyd, and for the first time, at what is now the eve of the close of discovery in this case, be permitted to assert penalties.

**MR. ZUCKER AND MR. BOYD COMPLIED WITH THE SPIRIT OF ANNOUNCEMENT 2002-2**

Announcement 2002-2 encouraged taxpayers to voluntarily report the details of transactions similar to those described in the IRS's Notice 2002-44 in return for a waiver of penalties. Mr. Zucker and Mr. Boyd opted to participate in this amnesty program and reported the details of their transactions to the IRS in April 2002. They had retained highly competent tax

advisers, Ernst & Young ("E&Y"), prior to entering into those transactions, and because E&Y had both the most thorough knowledge of the transactions in question and copies of all the transactional documents and correspondence, relied on E&Y to respond to any requests for information from the IRS. Mr. Zucker and Mr. Boyd instructed E&Y, as well as Jenkens & Gilchrist and Brown & Wood, which had provided tax opinions regarding the transactions, to open their files and provide all information requested by the IRS. At no time did Mr. Zucker or Mr. Boyd ask Charlotte Crosby or anyone else to destroy or remove any documents. (Crosby Depo. at 16:6-13) In short, Mr. Zucker and Mr. Boyd made every effort to comply with the terms of their agreement with the IRS. Not until the deposition of Ms. Crosby did they and their counsel discover that files had been overlooked.

## CHARLOTTE CROSBY'S FILES

Charlotte Crosby, the administrative assistant to Jerry Zucker and Jim Boyd, maintained a "working" file regarding the transactions at issue separate from the main file in the partners' offices. (Crouch Dec. at ¶ 5) Ms. Crosby thought she had provided copies of her files to all relevant parties and assured Plaintiff's counsel prior to her deposition that she had done so. (Crouch Dec. at ¶ 4) However, when Plaintiff's counsel ultimately reviewed Ms. Crosby's files during a break in the deposition, it became apparent that at least some of the documents had not been provided to Plaintiff's counsel and, as a result, had not been produced in response to Defendant's discovery requests. (Crouch Dec. at ¶ 6) After privileged communications were removed, the files were provided to Defendant's counsel for review. (Crouch Dec. at ¶ 7) That same day, a copy of the complete file, without the privileged documents, was provided to Defendant's counsel. (Crouch Dec. at ¶ 9) Subsequently, to avoid any confusion about what

was provided at Ms. Crosby's deposition, a bates stamped copy of the files and a privilege log were provided to Defendant. (Crouch Dec. at ¶ 10)

Although the Defendant characterizes the information in the documents as "critical," "devastating" or "highly damning," as set forth in Plaintiff's response, the information that Defendant considers so important was available in other documents produced by the partners in response to requests for information from the IRS or in the documents produced by Plaintiff in this case, or could be gleaned from these documents.

**THE COURT SHOULD DENY DEFENDANT'S MOTION**
**BECAUSE THE DEFENDANT HAS FAILED TO MEETS ITS BURDEN**

Under RCFC 15, a motion for leave to amend a pleading should be denied where there is undue delay or bad faith on the part of the movant, undue prejudice to the non-movant, or futility in permitting the amendment. Principal Life Ins.Co. v. United States, 75 Fed. Cl. 32, 33 (2007). The movant bears the burden of justifying its delay. Alfa Laval Separation, Inc. v. United States, 47 Fed. Cl. 305, 313 (Fed. Cl. 2000. As a careful reading of Defendant's Reply reveals, there is virtually no "recently discovered evidence" here; the most that Defendant can assert is that it did not attach the significance it now does to information it has had since August 2005 at the latest. Defendant had the evidence it now relies on to justify its belated attempt to assert a counterclaim for at least four months before it filed its court-ordered, first amended answer in December 2005. Consequently, Defendant has failed to meet its burden on the issue of undue delay.

Moreover, Defendant litigated this matter before this Court for two years after the latest date by which it had received the information it now claims is "newly discovered" without ever mentioning to the Court the possibility of a counterclaim for penalties. In GSS Properties, Inc. v. Kendale Shopping Center, 119 F.R.D. 379, 381 (M.D.N.C. 1988), the court denied a motion to amend a complaint to add a claim for fraud where the plaintiff knew the facts underlying the

fraud claim before filing the complaint, just as Defendant herein knew the facts on which it relies to amend its answer when it filed its first amended answer. The GSS Properties court concluded that the motion to amend was filed for the improper purpose of securing a litigation advantage. It is difficult to escape a similar conclusion in the present case, where the facts are far more egregious than in GSS Properties.

**GRANTING THE MOTION AT THIS TIME WOULD BE HIGHLY PREJUDICIAL TO PLAINTIFF**

Perhaps most significant to this Court's decision on Defendant's motion for leave to amend its answer is the serious prejudice to the Plaintiff that would result from granting the motion. Defendant dismisses the governing case, Principal Life, as different on the facts, but never confronts the principles underlying that decision. There, the court opined that plaintiff in a tax-refund case, where defendant filed a motion for leave to amend its answer to assert offset and equitable recoupment claims, "was entitled to be notified about the existence of these claims before it proceeded significantly with this litigation," and that "consideration of defendant's belated claims would require both plaintiff and the court to expend considerable resources . . . in resolving both those claims and the reciprocal issues they raised." 75 Fed. Cl. at 34. The court noted:

> Defendant's claims present issues that, if allowed to proceed, would undoubtedly set off a new wave of motions, if not require further discovery and a trial (both apparently involving a new set of operative facts). This court does not intend to require Plaintiff to embark on such a course at this late date.

*Id*.

Like the plaintiff in Principal Life, the Plaintiff herein was entitled to notice of Defendant's new claims, which could be in excess of $4 million, before committing its resources to a course of action that cannot now be undone. Moreover, Defendant's motion was filed one

business day before Jerry Zucker's deposition to preserve his testimony was taken. It is likely that his only chance to present evidence and defend himself against these penalties has already passed. Thus, severe prejudice to the Plaintiff should Defendant's motion be granted is manifest.

The parties are on the eve of the discovery cutoff. The deadline for expert reports has long since passed. Defendant appears to believe that because Plaintiff's counsel has previously submitted expert reports on penalty issues in other cases, it is not prejudicial to this Plaintiff to be unable to produce reports and put on expert testimony. Defendant's cookie-cutter approach to litigation is not Plaintiff's, however, nor is Defendant's intention to move to exclude an expert witness in other cases relevant to this case. The fact remains that granting Defendant's motion raises new factual and legal issues that would require additional fact and expert witness discovery, as well as additional dispositive motions.

**THE COURT HAS JURISDICTION REGARDING THE ENFORCIBILITY OF THE AMNESTY AGREEMENT**

Defendant's assertion that this Court would lack subject-matter jurisdiction to hear one such possible motion -- a motion for declaratory judgment as to the enforceability of the IRS's grant of amnesty to Messrs. Zucker and Boyd pursuant to Announcement 2002-2 – actually increases the number of additional dispositive issues that would result from granting its motion to amend. First, whether an IRS grant of amnesty pursuant to Announcement 2002-2 is enforceable appears to an issue of first impression. Moreover, while it is far from clear whether it constitutes a partnership- or partner-level defense, recently litigated cases show a strong pattern of determining the "reasonable cause" defense, which involves similar fact issues, in the course of partnership level proceedings.[1] Second, the only case Defendant cites for its assertion

[1] See*, e.g.,* Klamath Strategic Inv. Fund, LLC v. United States, 2007 WL 283790, *12 (E.D. Tex. Jan. 31, 2007); Santa Monica Pictures v. Commissioner, 89 T.C.M.(CCH) 1157, 2005 WL 1111792, *94, n.187 (2005); and Long Term Capital Holdings v. United States, 330 F. Supp.2d 122, 208 (D. Conn. 2004), and Jade Trading, LLC v. United

that this Court would lack subject-matter jurisdiction to decide this issue, Domulewicz v. Commissioner, 129 T.C. No. 3 (Aug. 8, 2007), which was a taxpayer-partner's challenge to an affected-items notice of deficiency where there had been no challenge to the FPAA, actually leads to the opposite conclusion. There, the Tax Court held that the plaintiff could not challenge the accuracy-related penalties assessed against him because such penalties are determined in the first instance at the partnership level and are assessed against the taxpayer on the basis of partnership-level determinations. *Id.* at *7. Hence, the Announcement 2002-2 defense, like the "reasonable cause" defense, must be raised in this litigation to avoid possible waiver. This Court's subject-matter jurisdiction is but one of the additional issues that would have to be litigated if Defendant is permitted to amend its answer.

Alternatively, if Defendant is correct and the Court does not have jurisdiction, the Defendant's Motion to Amend is premature. Instead, the IRS should propose penalties against the partners if the Court determines that the transaction was not properly reported.

## CONCLUSION

Defendant's motion to amend its answer comes too late. It would result in severe prejudice to Plaintiff and require additional fact and expert discovery, dispositive motions and perhaps trial of an additional set of operative facts. Especially in light of the lack of any genuinely "newly discovered evidence," justice requires that Defendant's motion to amend be denied.

---

States, No. 03-2164T (pending in the Court of Federal Claims), all of which litigated the "reasonable cause" defense in the partnership level proceedings.

Respectfully submitted,

By: s/Joel N. Crouch
Joel N. Crouch
Texas State Bar No.05144220
M. Todd Welty
Texas State Bar No. 00788642

MEADOWS, OWENS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowsowens.com
twelty@meadowsowens.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

On this the 21st day of September, 2007, a copy of the foregoing Plaintiff's Sur-Reply to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Amend was delivered to counsel listed below via the electronic transmission.

Dennis M. Donohue, Esq.
Trial Attorney
United States Department of Justice
Tax Division
P.O. Box 26
Ben Franklin Station
Washington DC 20044
(202) 616-3366

s/Joel N. Crouch
Joel N. Crouch