**IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership,** | § | |
| **Plaintiff,** | § | **Case No. 05-231 T** |
| | § | **Chief Judge Edward Damich** |
| **v.** | § | |
| **United States of America,** | § | |
| **Defendant.** | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO COMPLY WITH RULE 30(b)(6) NOTICE FOR DEPOSITION AND PRODUCTION OF DOCUMENTS**

Respectfully submitted,

By: /s/ Joel N. Crouch
Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, OWENS, COLLIER, REED, COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowsowens.com
twelty@meadowsowens.com

ATTORNEYS FOR PLAINTIFF

# Table of Authorities

**Statutes**


1. Fed. R. Civ. P. 26 .......... 11, 12, 16, 24, 27
2. Fed. R. Civ. P. 27 .......... 11
3. Fed. R. Civ. P. 30 .......... 1, 8, 10-12, 14, 16, 20, 25-27
4. Fed. R. Civ. P. 37 .......... 1, 8, 10-12, 14, 16, 20, 25-27
5. Fed. R. Civ. P. 45 .......... 9-11
6. RCFC 26 .......... 9-11
7. RCFC 37 .......... 9-11
8. RCFC 45 .......... 9-11
9. I.R.C. § 752 .......... 2-5, 14-15, 18-19
10. I.R.C. § 6103 .......... 1, 12, 24
11. I.R.C. § 6111 .......... 6
12. I.R.C. § 6662 .......... 15
13. I.R.C. § 6707 .......... 6-8, 14, 20


**Regulations**


14. Assumption of Partner Liabilities, 68 Fed Reg. 37434, 37436 (June 24, 2003) .. 5
15. Treas. Reg. § 1.701-2 .......... 18
16. Treas. Reg § 1.752-6T .......... 4-5, 14, 23
17. Treas. Reg, § 1.752-6 .......... 5, 14, 23


**Case Law**


18. Baresford v. United States, 123 F.R.D. 232, 233 (E.D. Mich. 1988) .......... 25
19. Boston Edison Co. v. United States, 75 Fed. Cl. 557, 565 (2007) .......... 13
20. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) .......... 15
21. Branch v. Phillips Pet. Co., 638 F.2d 873, 881-82 (5th Cir. 1981) .......... 22

22. Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007)....4

23. Chock Full O'Nuts Corp. v. United States, 453 F.2d 300, 303 (2d Cir. 1971)....15

24. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 838 (D.C. Cir. 1980)....21

25. Cobell v. Norton, 213 F.R.D. 1, 9-10 (D.D.C. 2003)....22

26. Coefield v. City of LaGrange, Ga., 913 F. Supp 608, 615 (D.D.C. 1996)....16

27. COLM Producer, Inc. v. United States, 460 F. Supp. 2d 713, 716-17 & n.1 (N.D. Tex. 2006)....4

28. Deseret Mgmt. Corp. v. United States, 76 Fed. Cl. 88, 95 (2007)....21

29. EPA v. Mink, 410 U.S. 73, 87-89 (1973)....22

30. Evergreen Trading v. United States, 75 Fed. Cl. 730 (2007)....17

31. Exxon Research & Eng'g Co. v. United States, 44 Fed. Cl. 597 (1999)....26

32. GFL Advantage Fund, Ltd. V. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003)....24

33. Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986)....11

34. Helmer v. Comm'r, 34 T.C.M. (CCH) 727 (1975)....3-5

35. Hickman v. Taylor, 329 U.S. 495, 507 (1947)....11, 14, 27

36. Ice Corp. v. Hamilton Sundstrand Corp., 2007 WL 2436765 *4 (D. Kan. Aug. 22, 2007)....14

37. In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001)....24

38. Jade Trading, L.L.C. v. United States, 65 Fed. Cl. 487, 492-93 (2005)....18-20

39. Kerr v. United States Dist. Ct., 426 U.S. 394, 405-06 (1976)....22

40. Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp. 2d 608, 614-18 (E.D. Tex. 2006)....4-5, 15

41. Long v. Comm'r, 660 F.2d 416, 419 (10th Cir. 1981)....4

42. Marriott Int'l Resorts, L.P. v United States, 61 Fed. Cl. 411, 415-16 (2004)....18-19

43. Marriott Int'l Resorts, LP v. United States, 437 F.3d 1302 (Fed. Cir. 2006).....21

44. Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 258 (D.C. Cir. 1977).....22

45. NLRB v. Sears, Roebusch & Co., 421 U.S. 132, 151-53 (1975).....21-22

46. Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992).....22

47. Redland Soccer Club v. Department of the Army, 55F.3d 827, 856 (3d Cir. 1995).....21

48. Slidell v. Comm'r, 225 F.3d 103, 111 (1st Cir. 2000).....17

49. Tax Analysts v. IRS, 117 F.3d 607, 616 (D.C. Cir. 1997).....23

50. United States v. Nixon, 418 U.S. 683, 705 (1974).....21

51. United States v. Taylor, 166 F.R.D. 356, 362, n.7 (M.D.N.C. 1996).....26

52. Vons Cos. V. United States, 51 Fed. Cl. 1, 21 (2001).....17

53. Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990).....22

# TABLE OF CONTENTS


I. STATEMENT OF THE CASE ..... 2

A. Introduction ..... 2

B. The Transactions at Issue ..... 2

C. The Taxpayers' Reliance on and the IRS's Repudiation of the Helmer Line of Cases ..... 3

D. The IRS's Position in the Present Case is that, as a factual matter, the Options Are a "Single" Net Option ..... 5

E. The IRS's Position in Its Case Against J&G is, that as a Factual Matter, the Long and short Options Are Not a Single Net Option ..... 6

F. The IRS's Attempt to Silence J&G by Means of a Confidentiality Clause in their Closing Agreement ..... 7

G. Defendant's Continuing Intransigence in Refusing to Produce Information Regarding Its Inconsistent Positions ..... 9

II. ARGUMENT ..... 11

A. Plaintiff Is Entitled To The Information Sought In Its Rule 30(b)(6) Notice ..... 11

1. Under Rules 26(b)(1), 30(b)(6) and 37(a)(2)(B), the Information Plaintiff Seeks May Be Compelled by Motion ..... 11

2. Neither RCFC 30(b)(6) Nor the Case law Defendant Cites Bars its Rule 30(b)(6) Deposition and Production of Documents ..... 12

B. The Information Sought By Plaitniff's Rule 30(b)(6) Notice Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law ..... 14

C. The "Deliberative Process Privilege" Does Not Apply to the Information Sought ..... 21

D. The Attorney-Client Privilege Does Not Apply To The Information Sought ..... 23

E. Section 6103 Does Not Bar the Information Sought By Request (d) ..... 24

F. The IRS's Objections to Plaintiff's Request (c) Are Frivolous ..... 25

G. The Balance of Factors Requires that Plaintiff's Motion to Compel be Granted ..... 26

III. CONCLUSION ..... 27

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO COMPLY WITH RULE 30(b)(6) NOTICE FOR DEPOSITION AND PRODUCTION OF DOCUMENTS

Pursuant to Rule 37(a)(2)(B), Plaintiff, JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, by its undersigned attorneys, files this Memorandum in Support of its Motion to Compel Defendant to Comply with Plaintiff's Rule 30(b)(6) Notice for Deposition and Production of Documents. Specifically, Plaintiff moves to compel Defendant to designate a deponent or deponents to provide the information sought by Requests 1(a), (c) and (d) in Exhibit A to its Rule 30(b)(6) Notice,[1] and to produce documents responsive to those requests. In response to that Notice, Defendant filed Objections,[2] primarily asserting that the information Plaintiff seeks is irrelevant to the issues in this case and that, in any event, the information is protected by the attorney-client and deliberative process privileges and by 26 U.S.C. § 6103(a).

Defendant's objections are without merit. In granting Plaintiff's Cross-Motion to Compel a Rule 30(b)(6) Deposition from Jenkins & Gilchrist ("J&G"),[3] this Court determined that information related to that which Plaintiff seeks herein "is relevant to the litigation and that Plaintiff has a need for the information."[4] *A fortiori*, the information

---

[1] See Rule 30(b)(6) Notice of Deposition and Subpoena, Ex 1, App at 11-29

[2] See Objections of the United States to Plaintiff's 30(b)(6) Deposition Notice, Ex 2

[3] See Plaintiff's Memorandum in Support of Cross-Motion to Compel J&G to Comply with Subpoena for Rule 30(b)(6) Deposition and Production of Documents and in Opposition to J&G's Motion to Quash, Ex 3.

[4] See Opinion and Order of August 9, 2007, Ex 4 at 15, App at 93. The Court also found that "[t]he request is not overly broad and the information responsive to the request is adequately described" Id. Following its ruling on J&G's Motion to Quash and Plaintiff's Cross-Motion to Compel, the Court directed Plaintiff and Defendant to try to reach an agreement regarding the information Plaintiff seeks in this Motion. That attempt was unsuccessful. See Affidavit of M. Todd Welty, Ex. 5, App. at 94

Plaintiff seeks in the present Motion is both relevant and necessary for Plaintiff to prepare its case and for this Court to determine the facts and the law in this litigation. Moreover, the information Plaintiff seeks is unprotected by any privilege or statutory bar. Plaintiff's Motion to Compel should therefore be granted.

## I. STATEMENT OF THE CASE

### A. Introduction

Discovery has been proceeding in this case for more than two years, during which Defendant has provided uniformly inadequate responses to Plaintiff's discovery requests.[5] Defendant has been particularly intransigent with respect to the information Plaintiff seeks in this Motion, regardless of the method of discovery Plaintiff used to try to obtain it.[6] This Motion seeks information that is directly relevant to two key issues before the Court, one legal and one factual. The legal question is what the received interpretation of I.R.C. § 752 was at the time of the transactions in dispute and whether the IRS's conduct in changing that interpretation in June 2003 and applying it retroactively to transactions going back to 1999 was proper. The factual issue is how the IRS applied I.R.C. § 752 to the currency options in the disputed transactions. The IRS's position on these issues has been consistent in only one respect: it changes according to the context in which the issues arise and depends on which interpretation will maximize revenue to the Treasury.

### B. The Transactions at Issue

[5] See, *e g* , United States' Response to Plaintiff's First Set of Requests for Admissions, Ex. 6 in which Defendant admitted 16 Requests, denied 67, and objected to, or neither admitted nor denied, another 169

[6] See id ; United States' Second Amended Answers to First Set of Interrogatories, Ex. 7; United States' Amended Answers to Second Set of Interrogatories, Ex 8; United States' Answers to Plaintiff's Third Set of Interrogatories, Ex. 9.

The transactions in dispute in this case involve European style foreign currency digital options. The taxpayer purchased several long options from Deutsche Bank that required Deutsche Bank to pay a fixed amount if the "spot" exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. At the same time, the taxpayer sold several short options to Deutsche Bank that required the taxpayer to pay a fixed amount if the spot exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. The taxpayer then contributed both the purchased, long options and the sold, short options to JBJZ Partners (the "Partnership").

For purposes of computing its basis in the Partnership, the taxpayer included the amount paid to Deutsche Bank for the long options (the "Long Premium") but did not reduce its basis by the amount received from Deutsche Bank from the sale of the short options (the "Short Premium"). Thus, the taxpayer calculated its basis in the Partnership by treating the long and short options as separate instead of as a single net option. Since the short options were not "in-the-money" at the time they were contributed to the Partnership, they were contingent obligations. That is, there was no liability to Deutsche Bank unless and until the spot exchange rate exceeded the strike exchange rate.

**C. The Taxpayer's Reliance on, and the IRS's Repudiation of, the Helmer Line of Cases**

The transactions at issue were undertaken in reliance on a line of case law that spans several decades. In fact, the taxpayer in the present case took the same position that the IRS had successfully espoused in prior cases *against* taxpayers: that under I.R.C. § 752, contingent obligations, and more specifically short option positions, are not "liabilities" for tax purposes when they are assumed by a partnership. *See* Helmer v. Commissioner, 34 T.C.M. (CCH) 727 (1975); *accord*, Long v. Commissioner, 660 F.2d 416, 419 (10th Cir.

1981); See also Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007); COLM Producer, Inc. v. United States, 460 F. Supp.2d 713, 716-17 & n.1 (N.D. Tex. 2006); Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp.2d 608, 614-18 (E.D. Tex. 2006). Under this line of authority, a partnership's assumption of a short option position has no effect on a partner's basis in the partnership. Applied to the currency options at issue here, the rule provided a favorable -- and entirely legitimate -- tax benefit to the taxpayer.

Plaintiff sought and received legal opinions from J&G and from Brown & Wood, LLP, both of which supported the manner in which Plaintiff reported these transactions on its federal tax returns for 1999. In June 2003, however, the Treasury Department promulgated new regulations under I.R.C. § 752, which altered the definition of "liability" under that section to include contingent obligations. Treas. Reg. § 1.752-6T, Ex. 10, App. at 10. Treasury Regulation § 1.752-6T purported to apply the new definition of "liability" to transactions going back to October 18, 1999. At about the same time that Treas. Reg. § 1.752-6T was issued, the IRS also released Chief Counsel Notice CC-2003-020, which set forth the IRS's litigation position with respect to the contingent obligation issue in cases involving COBRA and similar transactions, relying primarily on Treas. Reg. § 1.752-6T for authority. Ex. 11, App. at 238-249.

At the same time, the IRS also issued a Notice of Proposed Rulemaking for a prospective, permanent rule addressing the contingent obligation issue, the preamble to which expressly stated that the IRS would no longer follow Helmer.[7] One court has already ruled that the retroactive aspect of the new regulations is invalid and that the application of

---

[7] Assumption of Partner Liabilities, 68 Fed. Reg. 37434, 37436 (June 24, 2003), Ex. 12, App. at 250-251

those regulations, at least to transactions occurring between October 18, 1999, and September 5, 2000, the date Notice 2000-44[8] was issued -- the relevant period in the present case -- is an abuse of discretion. Klamath, 440 F. Supp.2d at 623.

**D. The IRS's Position in the Present Case is that, as a Factual Matter, the Options Are a "Single" Net Option**

In an effort to avoid the problems of logic inherent in its inconsistent positions as to whether a contingent obligation is a liability for tax purposes under I.R.C. § 752, and to establish an alternative theory should the retrospective application of Treas. Reg. § 1.752-6 be invalidated, the IRS determined that *as a factual matter*, the long and short options that were contributed to the Partnership in this case were a single net option rather than two options (one long and one short). The result of this *factual* determination is that the IRS recalculated the basis of the options contributed to the Partnership as the net premium paid (i.e., the Long Premium less the Short Premium) instead of the Long Premium unreduced by the Short Premium. *See* FPAA Determination 6, Ex. 14, App. at 264. Further, the government's expert, David DeRosa, opined on May 31, 2007, that the options – one long and one short – are a single net option.[9]

**E. The IRS's Position in Its Case Against J&G is that, as a Factual Matter, the Long and Short Options Are *Not* a Single Net Option**

While the IRS's factual position as to Plaintiff and similarly situated taxpayers works to *increase* revenue for the Treasury, it also works to *reduce* potential I.R.C. § 6707[10] penalties against tax advisors that allegedly failed to properly register the

[8] Notice 2000-44, Ex. 13, App. at 254.

[9] Expert Report of David F. DeRosa dated May 31, 2007, Ex. 15, App. at 266. The full report is not attached because it is approximately 125 pages long. *See also* Deposition Testimony of David F. DeRosa, Ex. 18, App at 274-280.

[10] I.R.C. § 6707, Ex. 16, App. at 267-268.

transactions at issue as tax shelters under I.R.C. § 6111.[11] The IRS has therefore taken the position that the purchased, long options and sold, short options *are* *not* a single net option, but are instead *separate* options, to calculate the penalty under I.R.C. § 6707, which is 1% of the aggregate amount invested in the transactions. Incredibly, this is the *opposite* of the IRS's litigation position against Plaintiff and actually *supports* Plaintiff's tax treatment of the transactions.

Indeed, the IRS's position that the long and short options are separate is the foundation for a $76 million penalty against J& G[12] and a $39 million penalty against Brown & Wood.[13] Although the IRS's inconsistent positions are relatively well-known among tax litigators,[14] Defendant continues its desperate attempt to prevent discovery on this subject in this and related cases.

**F. The IRS's Attempt to Silence J&G by Means of a Confidentiality Clause in their Closing Agreement.**

Plaintiff engaged the J&G law firm, among others, to render a tax opinion with respect to the transactions at issue. On March 28, 2007, the U.S. Attorney for the Southern District of New York issued a statement announcing that he had reached a "non-prosecution cooperation agreement" ("Settlement Agreement") with J&G in connection with its role in COBRA transactions and others not at issue here. J&G Br., Ex. 19, App. at 281-289. The

---

[11] I.R.C. § 6111, Ex. 17, App. at 269-273

[12] *See* Non-Party Jenkens & Gilchrist's Motion to Quash and Motion for Protection from Plaintiff's Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents ("J&G Brief"), Ex. 19, App. at 281-289.

[13] Brown & Wood has not yet been the subject of a discovery request. Like J&G, however, that firm recently settled its tax shelter registration dispute with the IRS, agreeing to pay a $39.4 million penalty. See IR-2007-103 (May 23, 2007), Ex. 20, App. at 290.

[14] Indeed, this very topic was the subject of a January 2007 ABA Tax Section panel. See Ex. 21, App. at 291-307.

details of the Settlement Agreement are contained in a March 26, 2007, letter from the Department of Justice ("DOJ") to J&G's outside counsel, Davis Polk & Wardwell. Id., Ex. 19, App. at 281-289. Among the facts revealed in that letter is the existence of a "Closing Agreement" between the IRS and J&G resolving the IRS's promoter penalty audit of J&G, which is said to be a condition precedent to the Settlement Agreement. Id., Ex. 19, App. at 281-289.

Because the IRS's factual position with respect to the purchase of long options and the sale of short options in calculating and imposing or threatening to impose I.R.C. § 6707 penalties is inconsistent with its position with respect to the transactions of Plaintiff and other COBRA investors, and because the IRS has consistently refused to produce Rule 30(b)(6) deponents and documents bearing on this issue,[15] Plaintiff served a subpoena on J&G seeking a Rule 30(b)(6) witness and documents narrowly confined to the issue of how the IRS calculated the I.R.C. § 6707 "civil penalty" J&G agreed to pay the IRS pursuant to the Closing Agreement.[16] J&G responded by serving a motion to quash, asserting, *inter alia*, that a confidentiality agreement with the government precludes it from complying with the subpoena. J&G Br., Ex. 19, App. at 281-289. Plaintiff filed a Cross-Motion to Compel. Ex. 22, App. at 308-311.

After full briefing and an oral argument, this Court issued an Opinion and Order on August 9, 2007, denying J&G's Motion to Quash and granting Plaintiff's Motion to Compel. In that Opinion, the Court determined, *inter alia*, that the information requested in

---

[15] See Objections of the United States to Plaintiff's 30(b)(6) Deposition Notices, Ex. 2, App at 30-55

[16] By contrast, the information Plaintiff seeks herein concerns the Defendant's position regarding the interpretation and application of Section 752 to the transactions at issue in this case -- the other half of the IRS's inconsistent positions on Section 752. Thus, there is very little that is duplicative or cumulative about the information sought from J&G and Defendant

Plaintiff's subpoena regarding how the IRS calculated the $76 million civil penalty it assessed against J&G was relevant to this litigation; that Plaintiff had a need for the information; that the request was not overly broad; that the information sought was adequately described; that the information sought was not more readily obtainable from some other source; that the request was not unduly burdensome; and that J&G should be compelled to respond to the subpoena.

**G. Defendant's Continuing Intransigence in Refusing to Produce Information Regarding Its Inconsistent Positions**

On October 4, 2007, pursuant to that Opinion and Order, Plaintiff's counsel took the deposition of John Gilliam, the representative J&G designated to testify regarding the penalty calculation. Gilliam Dep., Ex. 23, App. at 312-319. Mr. Gilliam produced no documents relevant to the method the IRS used to calculate the penalty it assessed against J&G. He testified, however, that one of J&G's Davis, Polk & Wardwell attorneys had had a conversation with an IRS representative who stated that the IRS would calculate the penalty against J&G on a gross rather than a net basis, taking into consideration the long options but not the offsetting short options. Id., Ex. 23, at 9-11, App. at 314-315. Mr. Gilliam also testified that he had not inquired of the IRS as to its method of calculating the penalty because he believed that requesting that information and producing it to Plaintiff might violate the terms of J&G's Closing Agreement with Defendant. Id., Ex. 23, at 12-13, 15, App. at 315-316.

Mr. Gilliam further testified that J&G would request the information Plaintiff seeks and produce it to Plaintiff if the IRS did not object, id., Ex. 23 at 16, App. at 316, or if ordered to do so by this Court. Id., Ex. 23 at 22, App. at 318. On November 2, 2007, Plaintiff's counsel conferred with counsel for Defendant in a good faith effort to obtain the

information Plaintiff seeks from J&G without further resort to this Court. Affidavit of M. Todd Welty, Ex. 5 at, App. at 94. In that conversation, Defendant's counsel refused to agree to the production of that information. Id., Ex. 5.

In its Opinion of August 9, 2007, the Court left open the issue of the proper interpretation of "control" with respect to the production of documents in response to Plaintiff's Rule 45 subpoena on J&G. Opin., Ex. 4 at 15, n.15, App. at 93. The Court directed that "should Plaintiff determine after deposition that there are responsive documents or other information within Jenkens & Gilchrist's 'control' that are not being produced, Plaintiff may file a motion to compel in which it addresses the meaning of 'control.'" Id. Although Mr. Gilliam confirmed Plaintiff's belief that the IRS calculated the penalty against J&G by treating the options as separate transactions rather than as a single net option, he produced no documents that describe, explain or illustrate the IRS's method of calculation. Indeed, he had not even requested them from the IRS. Gilliam Dep., Ex. 23 at 12, App. at 315. Hence, Plaintiff has filed a second Motion to Compel J&G and a supporting Memorandum that is limited to the meaning of "control" in the context of Plaintiff's Rule 45 subpoena on J&G and the particular information Plaintiff seeks.

Following its ruling on J&G's Motion to Quash and Plaintiff's Cross-Motion to Compel, this Court directed counsel for Plaintiff and Defendant to attempt to reach an agreement regarding the production of the information requested in Plaintiff's Rule 30(b)(6) Notice to Defendant. That attempt, like Plaintiff's effort to obtain Defendant's agreement to J&G's production of the information identified by the Court in its Opinion of August 9, 2007, was unsuccessful. Together with Defendant's inadequate responses to Interrogatories and Requests to Admit that seek essentially the same information that

Plaintiff requested in its Rule 30(b)(6) Notice to Defendant, these recent refusals to cooperate in the production of information regarding its legal and factual positions as to the interpretation and application of Section 1.752 to the transactions at issue compel the conclusion that Defendant is engaged in a concerted effort to prevent plaintiffs in this and related cases from gaining access to information that is crucial to their ultimate claim: that the IRS treats the foreign currency digital options in dispute in this litigation as a single net option or as separate options in different contexts, depending on which position produces the maximum revenue for the Treasury. The Federal Rules of Civil Procedure do not countenance such conduct. Plaintiff's Motion to Compel should therefore be granted.

## II. ARGUMENT

### A. Plaintiff Is Entitled To The Information Sought In Its Rule 30(b)(6) Notice.

#### 1. Under Rules 26(b)(1), 30(b)(6) and 37(a)(2)(B), the Information Plaintiff Seeks May Be Compelled by Motion.

RCFC 26(b)(1) provides in pertinent part:[17]

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The Federal Circuit has instructed that in considering a motion to compel, "a court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986). In fact, the very "[p]urpose of discovery is to provide a mechanism for making relevant information available to litigants." Fed. R. Civ.

[17] RCFC 26, 37 and 45 largely track Fed. R. Civ. P. 26 27 and 45, respectively, and the interpretation of Fed. R. Civ. P. 26, 37 and 45 may inform this Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties is essential to proper litigation") (emphasis added)).

The scope of discovery is not unlimited, however. Rule 26(b)(2)(C)(iii) provides in pertinent part:

> The . . . use of the discovery methods otherwise permitted under these rules . . . shall be limited by the court if it determines that: . . .
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. . . .

Defendant has not objected to Plaintiff's Rule 30(b)(6) Notice on the ground that it is burdensome, however; rather, it has objected primarily on grounds of relevancy, privilege and what it asserts is a statutory bar to disclosure under 26 U.S.C. § 6103(a). On those grounds, Defendant has declined to "designate . . . persons . . . to testify on its behalf" as required by Rule 30(b)(6), and to produce the documents requested in Plaintiff's Notice pursuant to Rule 30(b)(5).[18]

Rule 37(a)(2)(B) provides in pertinent part that if an "entity fails to make a designation under Rule 30(b)(6) . . . , the discovering party may move for an order compelling . . . a designation." It also provides that the documents requested in a notice may be compelled. The only prerequisite to a motion to compel is a certification of the movant's good-faith effort to confer with the party failing to make the discovery to secure the information without court action, a condition satisfied by the Affidavit of M. Todd Welty, attached hereto as Exhibit 5, App. at 94. Thus, Plaintiff is entitled under the

[18] Rule 30(b)(5) provides that "the procedure for Rule 34 shall apply" to documents requested in a Rule 30(b)(6) Notice.

relevant rules of discovery to a Rule 30(b)(6) deposition and the information sought in its Notice.

**2. Neither RCFC 30(b)(6) Nor the Case Law Defendant Cites Bars its Rule 30(b)(6) Deposition and Production of Documents.**

In its General Objection to Plaintiff's subpoena and notice, however, Defendant asserts that the deposition and documents Plaintiff seeks may not be had because the subpoena names the United States as the deponent. Def.'s Obj., Ex. 2, App. at 50-55. Defendant cites Boston Edison Co. v. United States, 75 Fed.Cl. 557, 565 (2007), for the proposition that "[u]nder RCFC 30(b)(6), a party may serve a deposition notice on a 'governmental agency . . . describing with reasonable particularity the matters on which examination is requested. . . ,'" id., Ex. 2, App. at 30-31, omitting the rest of the sentence: "and the government must then designate persons to 'testify on its behalf.'" Boston Edison, 75 Fed.Cl. at 565. Defendant's reliance on this case to establish the impropriety of Plaintiff's subpoena is ill-advised, since the plaintiff in that case served several "Rule 30(b)(6) Deposition Notice[s] of Defendant United States," and the court permitted the depositions to be taken. Id. at 564.[19]

Defendant then complains that "[o]ddly, the subpoena does not specify the Internal Revenue Service," that it is "simply unclear what kind of testimony Plaintiff is seeking," and that "[i]t may be that Plaintiff is . . . seeking testimony from the Justice Department, i.e., Defendant's counsel." Def.'s Obj., Ex. 2, App. at 32. The objection is duplicitous as

[19] See Proposed Amendment of Fed. R. Civ. P. 30(b)(6), effective December 1, 2007, absent contrary Congressional action, which alters the first sentence of the Rule to read: "In its notice or subpoena, a party may name as the deponent . . . a governmental agency or *other entity*"(emphasis added). Under the amended rule, Defendant's hypertechnical General Objection has even less to recommend it.

Plaintiff's first notice sought to depose the IRS to which Defendant also objected.[20] It is entirely Defendant's decision whether to designate an IRS representative or one from DOJ as the person to be deposed.

Defendant's General Objection cannot prevail, particularly in light of the general principle that "discovery rules are to be accorded a broad and liberal treatment." Hickman v. Taylor, 329 U.S. 495, 507 (1947); *see also, e.g.*, Ice Corp. v. Hamilton Sundstrand Corp., 2007 WL 2436765 *4 (D.Kan.) ("federal courts afford a 'broad and liberal treatment' to the rules of discovery"). Defendant's obligation to comply with Plaintiff's 30(b)(6) Notice therefore turns on Defendant's specific objections, primarily that the information sought is irrelevant, privileged and statutorily barred. Since these objections rest on a willful misreading of Plaintiff's requests, a myopic and disingenuous view of what the fundamental issues in this case are and the misapplication of case law, Defendant's specific objections should also be rejected. Because Plaintiff is entitled to the information it seeks, the Court should grant this Motion to Compel.

**B. The Information Sought By Plaintiff's Rule 30(b)(6) Notice Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law.**

Plaintiff's 30(b)(6) Notice requests in pertinent part the following categories of testimony and documents "regarding the transactions at issue in this matter . . . that [are] more generally known as COBRA":

> a. Defendant's legal and factual position with regard to the issuance of Treas. Reg. §1.752-6T on June 23, 2003, and the promulgation of Treas. Reg. §1.752-6 on May 23, 2004; the specific application of Treas. Regs. §§1.752-6T and 1.752-6 to [this] litigation; whether prior to the issuance of these regulations there was substantial authority for the reporting position that a contingent obligation did not constitute a liability within the meaning of I.R.C. §752; and separately, whether these

[20] See Objections of the United States to Plaintiff's 30(b)(6) Deposition Notice, Ex. 2, App. at 30-55.

regulations were issued to enhance Defendant's litigation position with respect to transactions described in Notice 2000-44;

. . . . . . . . . . . . . . . . . .

c. Defendant's legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in this case . . . [is] a single option or investment; and separately, whether for purposes of determining the "aggregate amount invested" under I.R.C. 6707, Defendant is taking the position that each digital option contract, such as those involved in this case, are separate options or investments rather than a single option or investment;

d. The names of tax advisors and firms that issued tax opinions regarding transactions that are the same as, or substantially similar to, those set forth in I.R.C. Notice 2000-44, 2000-2 C.B. 255 (August 14, 2000) and whose opinions concluded there was substantial authority for, or that taxpayers would more-likely-than-not prevail on the merits if challenged by the Internal Revenue Service on, the position that contingent obligations are not liabilities within the meaning of I.R.C. §752. This request is limited to those tax advisors or firms whose opinions Defendant has rejected as a basis for the reasonable cause defense to I.R.C. §6662 penalties.

Ex. 1, App. at 1-29.

As the discussion in the Statement of the Case of this memorandum explains, the shifting legal and factual positions of the IRS are central issues in this case, which are directly related to the ultimate issue of the propriety of the IRS's treatment of Plaintiff's and similarly situated COBRA investors' digital currency options. The topics for deposition are especially appropriate as Defendant seeks to penalize the taxpayers here, as well as others, before this court. Moreover, as noted above at 4-5, one court has already determined that the IRS's retroactive application of the June 2003 revision of the definition of "liability" under Section 752 is an abuse of the agency's discretion and therefore invalid, in part because of "a strong indication that the promulgation of the Regulation was to buttress the government litigation position" in similar cases. Klamath, 440 F. Supp.2d at 625, *citing* Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) and Chock Full

O'Nuts Corp. v. United States, 453 F.2d 300, 303 (2d Cir. 1971). A fair reading of Plaintiff's requests set out above confirms that Plaintiff seeks information necessary to establish what the IRS's legal and factual positions were, and what Defendant's are, with respect to the fundamental issues in this case, which is in turn necessary to challenge the validity of the law that has been applied to Plaintiff. Defendant's relevancy objections are therefore without merit.

For discovery purposes, information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). This standard "is not a stringent one." Coefield v. City of LaGrange, Ga., 913 F. Supp. 608, 615 (D.D.C. 1996). Nevertheless, Defendant asserts that the subjects identified in Request (a) in Plaintiff's Notice are "improper" because "they are pure issues of law for the Court to decide." Def.'s Obj., Ex. 2 at 4, App. at 33. It is of course true that the Court must ultimately determine the law that governs this case, and Plaintiff's Request (a) certainly does not ask Defendant to do so. Rather, it asks for Defendant's *positions* with respect to the relevant law and its application to this case, and what the purpose was in issuing the relevant regulations. These are pure questions of *fact*, not of law, that are directly related to the fundamental issues of Plaintiff's case.

Defendant also objects to Request (a) on the ground that "the testimony of individual officials does not represent agency interpretation"; that "[c]onsequently, the views of IRS employees are irrelevant to construing Treasury Regulations; and as a consequence, the depositions of the IRS employees on such subjects can not lead to the discovery of relevant information." Id., Ex. 2 at 5, App. at 34. These objections rest on a willful misreading of Plaintiff's requests. Plaintiff has not asked for the views of individual

IRS employees; to the contrary, the requests seek *Defendant's* positions on these matters. Indeed, that is why Plaintiff's 30(b)(6) Notice requests that *Defendant* designate the deponents, so that Plaintiff does not have to guess which individuals are prepared to testify regarding the agency's and Defendant's positions on these matters. Hence, the cases Defendant cites at 4-5 in its Objections are inapposite.

In Evergreen Trading v. United States, 75 Fed.Cl.730 (2007), for example, the court declined to order the depositions that plaintiffs had noticed of three persons who were involved in drafting the Treasury regulations at issue, apparently to inquire into their "*personal* views, intentions, etc." Id. at 730 (emphasis added). Likewise, in Slidell v. Commissioner, 225 F.3d 103, 111 (1st Cir. 2000), the court of appeals ruled that because certain "internal [IRS] memoranda represent[ed] the *personal* views of the authors, not the *official position of the agency*," the court would not consider them in its decision.[21] The other cases Defendant cites for its contention that the testimony and documents Plaintiff seeks in Request (a) may not be had are similarly inapposite.[22] Most astonishing, however, is Defendant's citation of Vons Cos. v. United States, 51 Fed.Cl. 1, 21 (2001), a case that actually supports Plaintiff's contention that the testimony and documents it seeks are relevant and therefore discoverable.

In Vons, the plaintiff challenged the IRS's disallowance of certain deductions and sought the production of various IRS and Treasury Department documents relating to a Revenue Ruling, including "documents relating to the on-going consideration,

---

[21] Significantly, the memoranda in question in Slidell were not only in plaintiff's possession, but had also apparently been entered into evidence at the trial. Id.

[22] The courts in Connecticut Gen. Life Ins. Co. v. Commissioner, 177 F.3d 136, 145 (3d Cir.), *cert. denied*, 528 U.S. 1003 (1999), and Armco Corp. v. Commissioner, 87 T.C. 865, 867-68 (1986), gave little weight to affidavits of officials that expressed their *personal* views or recollections rather than the views of the agency

reconsideration, development, interpretation or application" of that ruling. Id. at 4. The court held that the documents requested were potentially relevant and therefore discoverable because the court might be required to choose between the plaintiff's and the defendant's conflicting interpretations of the ruling. *See* id. at 21. In the present case, it is *certain* that the Court will have to decide between Defendant's and Plaintiff's conflicting views of what the governing law is and how it should be applied to the facts of the case; hence, the caveats in the Vons opinion are inapplicable here, and only the holding is relevant.

Several cases that involve issues nearly identical to those in the present case follow the Vons holding, but without that court's caveats. In Marriott Int'l Resorts, L.P. v. United States, 61 Fed.Cl. 411, 415-16 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006), for example, Marriott challenged the IRS's reduction of its partnership basis under I.R.C. §752 by the amount of a contingent liability acquired in connection with a transaction similar to those in dispute in the present case. Id. at 412-14. Marriott contended, as does Plaintiff herein, that the IRS had changed a long-settled interpretation of Section 752, and sought information about how the IRS interpreted the term "liability" during the relevant period. Id. at 413-14. There, as here, the IRS objected that the information sought was not relevant. The court disagreed, however, and referencing the holding in Vons, ruled that:

> the parties are preparing to ask the Court to evaluate different interpretations of the law that have been applied at different points in time. Accordingly, the documents sought by Marriott are relevant to this case, and the government's objection on this ground is rejected.

Id. at 415-16.

Similarly, in Jade Trading, L.L.C. v. United States, 65 Fed.Cl. 487, 492-93 (2005), plaintiffs requested documents related to the promulgation of Treasury Regulation 1.701-2 and to the IRS's internal interpretation of the term "liabilities" in Section 752. The court held that:

> [b]ecause documents relied upon by the IRS in formulating Treas. Reg. 1-701-2 and documents interpreting the term liabilities could illuminate the agency's interpretation of the law at the time of Plaintiffs' transactions, these materials are relevant. In addition, the consistency of the IRS' application of this regulation over time is relevant to determine the degree of deference which should be accorded to the regulation and the IRS' interpretation of it.

Id. at 488. Further, the court ruled that "[p]laintiffs are entitled to know how the IRS interpreted the term ["liabilities" in 26 U.S.C. §752] in assessing their tax liability, in asserting penalties and whether the IRS' interpretation was consistent over time." Id. at 492. Noting that the Marriott court had "found that documents relating to IRS' ongoing interpretation of a revenue ruling were relevant to the issue of whether the IRS had abandoned a long-standing interpretation of 26 U.S.C. §752, [and had] recogniz[ed] that conflicting interpretations of the law might constitute an important framework for the matters at issue," the court in Jade Trading held that "identical considerations compel a conclusion that these types of documents are relevant here." 65 Fed.Cl. at 493. Unlike the inapposite cases that Defendant cites for its relevance objections to Plaintiff's Request (a), the issues and considerations in Marriott and Jade Trading are virtually indistinguishable from those in the present case. Hence, Defendant's relevance objection should be similarly rejected.

Defendant also objects to Plaintiff's Request (d) on relevancy grounds. That request is relevant to the issue of whether, at the time the transactions in dispute occurred, there was substantial authority for the position Plaintiff took in reporting those transactions on its tax

return and whether its belief that the position it took was correct was reasonable. The court in Jade Trading was unequivocal in finding such documents potentially relevant and therefore discoverable:

> These documents could also aid in determining the reasonableness of the position adopted by the Plaintiffs in their tax returns, namely, that they did not need to book a contingent obligation as a liability to reduce their basis in the partnership. As such, these documents could be relevant to determining the validity of Plaintiffs' challenge to the asserted penalties.

65 Fed.Cl. at 492-93. For the same reasons, the information Plaintiff seeks in Request (d) is relevant and discoverable.

This Court has already determined that information about the IRS's treatment of long and short options as a single net option or as separate options for the purpose of calculating Section 6707 penalties against tax advisors is relevant to this litigation and necessary to Plaintiff to prepare its case. Opin., Ex. 4, App. at 85,93. The testimony and documents Plaintiff seeks in its 30(b)(6) Notice to Defendant are even more clearly relevant and necessary. The IRS's position as to whether the currency options at issue are a single transaction or separate appears to depend entirely on which position is more advantageous to the IRS in any given context. It views the long and short options as a single transaction for purposes of reducing a taxpayer's partnership basis and thereby increasing its tax liability, but as separate for purposes of increasing the penalties for non-registration of a tax shelter to be assessed against the advisor that devised the transaction.

The government cannot have it both ways: either the foreign currency options at issue are, as a factual matter, separate transactions or they are not. To treat them differently in different contexts is analytically incoherent. Plaintiff is clearly entitled to information that establishes what the IRS's positions were. And what Defendant's are, regarding the

reporting of contingent liabilities and how those positions have changed over time. Defendant is obligated to produce deponents who are authorized to give binding testimony on these matters. In short, this Court should reject Defendant's relevance objections to Plaintiff's requests.

### C. The "Deliberative Process Privilege" Does Not Apply To The Information Sought.

Defendant objects to Plaintiff's Requests (a), and (d) on the ground that the information sought by those requests is protected from discovery by the deliberative process privilege. The only authorities Defendant cites for this privilege are United States v. Nixon, 418 U.S. 683, 705 (1974), for the theory underlying the privilege, and Marriott Int'l Resorts, LP. v. United States, 437 F.3d 1302 (Fed. Cir. 2006), which simply stands for the proposition that the Commissioner may delegate to an Assistant Chief Counsel the authority to invoke the privilege, id. at 1308 -- an issue this Court need not even reach since the privilege does not apply to the information Plaintiff seeks.

The deliberative process privilege is a common law construct that is intended to protect the integrity of the decision-making process of government officials. *See* NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151-53 (1975). It is, however, a qualified privilege that is construed as narrowly as possible, consistent with its underlying purpose. *See, e g ,* Redland Soccer Club v. Department of the Army, 55 F.3d 827, 856 (3d Cir. 1995); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980); Deseret Mgmt. Corp. v. United States, 76 Fed.Cl. 88, 95 (2007) ("Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed.").

Moreover, the government has the burden of establishing that the privilege applies to the information for which the privilege is asserted. *See*, *e.g.*, Redland, 55 F.3d at 854; Cobell v. Norton, 213 F.R.D. 1, 9-10 (D.D.C. 2003); Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990). *Ipse dixits* are insufficient. Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 258 (D.C. Cir. 1977). Here, Defendant has not only offered no rationale for application of the privilege to the information requested, but it has also failed to provide a log identifying responsive documents as to which it asserts the privilege or any other reviewable justification for asserting the privilege, as required by the relevant case law. *See*, *e.g.*, Kerr v. United States Dist. Ct., 426 U.S. 394, 405-06 (1976); Cobell, 213 F.R.D. at 9-10. Hence, Defendant's assertion of the privilege would have to be rejected even if the privilege applied to the information Plaintiff seeks.

The privilege does not apply, however, because of several other limitations on its scope. First, the privilege does not apply to factual matters that are not genuinely part of the deliberative process. EPA v. Mink, 410 U.S. 73, 87-89 (1973); Branch v. Phillips Pet. Co., 638 F.2d 873, 881-82 (5th Cir. 1981) ("courts have uniformly held that . . . purely factual information is not protected by the privilege"). Second, the privilege only protects pre-decisional, deliberative materials. Sears, 421 U.S. at 151 ("it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached").

Moreover, a document is not pre-decisional if it was prepared "in order to support a decision already made." *See* Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (R.B. Ginsburg, J.). Thus, "[t]o qualify for . . . privilege, information must be both 'predecisional' and 'deliberative.' . . . A document is

predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made. . . . Material is deliberative if it 'reflects the give-and-take of the consultative process.'" Id. at 1434 (citations omitted). *Accord*, Tax Analysts v. IRS, 117 F.3d 607, 616 (D.C. Cir. 1997) ("The government has the burden of showing that the materials were generated *before* the adoption of an agency policy and reflect the give-and-take of the consultative process.").

These two limitations on the scope of the rule exclude the application of the deliberative process privilege to any of the information Plaintiff seeks. By their terms, Requests (a) and (d) ask for purely factual information. What the IRS's positions were and Defendant's are, both legal and factual, with respect to the regulations inquired about are matters of fact. Moreover, the requests seek testimony and documents that are not deliberative in nature because they ask only what the IRS thought and Defendant thinks the law was and is, not what it should be. Finally, Treasury Regulations §1.752-6T and §1.752-6 post-date by nearly three years Notice 2000-44, in which the IRS articulated its policy decision with respect to transactions like those in dispute in this and related cases. Hence, discovery related to these regulations cannot be pre-decisional; rather, the regulations and documents concerning their publication support a decision the IRS had already made years before the documents sought were created. Since none of the criteria for application of the deliberate process privilege are met, the Court should reject this objection to Plaintiff's requests.

### D. The Attorney-Client Privilege Does Not Apply to the Information Sought.

Defendant has objected to Plaintiff's Request (d) on the ground of attorney-client privilege. How that privilege could conceivably protect information about documents that

Defendant itself notes "were not prepared, reviewed or signed by the United States," but by persons and entities with which Defendant had no attorney-client relationship, is a mystery. Significantly, Defendant has cited no authority for this claim and has provided no log of responsive documents as to which it claims the privilege, as required by Rule 26(b)(5). Absent a privilege log, it is impossible to examine Defendant's claim; hence, its claim is entitled to no weight in the Court's consideration of Plaintiff's Motion to Compel. Indeed, "[f]ailure to comply with [the rule] 'is deemed to waive the underlying privilege claim.'" GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003) (citation omitted), *citing* In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001).

**E. Section 6103 Does Not Bar The Information Sought By Request (d).**

Plaintiff's Request (d) asks for the names of tax advisors and firms that issued narrowly defined tax opinions with respect to transactions identified in IRS Notice 2000-44. The request does not ask for the opinions themselves. Nor does it ask for names of any taxpayers to whom the opinion was directed. Defendant objects to this request on the ground that 26 U.S.C.§ 6103(a) protects the information sought from disclosure, citing no authority whatever for its objection. By its terms, however, the statute excludes the information Plaintiff seeks. The definition of "return information" that is protected from disclosure under the statute "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(3).

The court in Baresford v. United States, 123 F.R.D. 232, 233 (E.D. Mich. 1988) expressly disapproved of a similar attempt to invoke the statute to avoid discovery.

> [I]t is apparent that Congress enacted the statute as a shield to protect taxpayers from improper disclosure by the government of the information they were required

> to provide to it by law. The government now seeks to use this statute as a sword to avoid telling the taxpayer seeking a refund the information utilized in determining the tax. . . . [C]onstruing the statute . . . to permit disclosure comports with fundamental principles of fairness. . . .

For similar reasons, this Court should reject Defendant's attempt to use the statute as a sword in the present case.

### F. The IRS's Objections To Plaintiff's Request (c) Are Frivolous.

The request seeks information about Defendant's fundamental position or positions with respect to whether the digital options contracts in dispute in this case are a single option or investment or separate options or investments. Defendant first objects to Plaintiff's Request (c) on the ground that it is "premature." Yet the IRS must have determined what its positions on these issues were prior to issuing its FPAAs in this case and its settlement agreements with Jenkens & Gilchrist and Brown & Wood. Moreover, discovery has been proceeding in this and related cases for over two years and discovery is about to close. Defendant's objection that this request is premature is therefore frivolous. Its second objection, that these issues will be the subject of expert testimony, is likewise off the mark. The request seeks information regarding what positions the agency and Defendant have taken – not what Defendant's experts' legal theories justifying those positions are. In any event, the Defendant's expert, David DeRosa, issued a 125-page report on these and other issues on May 31, 2007; hence, this objection is vitiated.

Finally, Defendant objects that "discovery into the contentions of parties are properly examined through contention interrogatories, not Rule 30 (b)(6) depositions," Def.'s Objs. at 6, App. at 35, citing Exxon Research & Engineering Co. v. United States, 44 Fed.Cl. 597 (1999), as authority. Unfortunately, the cited case does not remotely stand for that proposition. The holding is carefully and repeatedly limited to how parties could

conduct discovery under the particular facts of a patent infringement case on complex and highly technical claim construction issues. Id. at 598, 601. Indeed, "[w]hether a 30(b)(6) deposition or contention interrogatories are more appropriate is decided on the facts of each case." Id. at 601, *citing* United States v. Taylor, 166 F.R.D. 356, 362, n.7 (M.D.N.C. 1996). Defendant's Answers to Plaintiff's three Sets of Interrogatories are ample evidence of how unsatisfactory interrogatories are as a means of establishing Defendant's legal and factual positions that are at the heart of this litigation.[23] Defendant's objections to Plaintiff's Request (c) should therefore be rejected.

**G. The Balance Of Factors Requires That Plaintiff's Motion To Compel Be Granted.**

The last step in deciding a motion to compel is to balance the relevant factors. In this case, the balance weighs heavily against Defendant and in favor of requiring compliance with Plaintiff's 30(b)(6) Notice. Defendant has not even suggested that complying with Plaintiff's 30(b)(6) Notice would be unduly burdensome. Hence, there is nothing for the Court to balance the factors that favor granting Plaintiff's Motion to Compel against. The information sought is clearly relevant to the fundamental issues in Plaintiff's case. Moreover, the information Plaintiff seeks is not available elsewhere. Indeed, Defendant has attempted to deny Plaintiff access to the only other source of similarly relevant information – J&G – by means of a confidentiality agreement in the Closing Agreement settling the IRS's promoter penalty audit of J&G. The IRS has consistently objected to Plaintiff's discovery requests on multiple grounds, sometimes citing no authority and at others citing inapposite authority, for its objections. More than two years

[23] Exs. 7, 8, and 9, App. at 182-232.

into this litigation, Plaintiff has received virtually no information concerning the central issues in this case, despite multiple discovery requests.

## III. CONCLUSION

The discovery rules are "intended to provide a mechanism for making information available to litigants." Fed. R. Civ. P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947). They are not intended to be used to conceal vital information. Rather, they are designed to ensure the "[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties [that] is essential to proper litigation." Hickman v. Taylor, 329 U.S. at 507 (1947) (emphasis added). Thus, both the underlying purpose and the requirements of the relevant rules and the balance of the relevant factors, as well as the principle of fair play and the interests of justice, all weigh in favor of granting Plaintiff's Motion to Compel.

For all the reasons stated herein, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Compel Defendant to Comply with Plaintiff's Rule 30(b)(6) Notice for Deposition and Production of Documents, and specifically to designate a deponent to testify regarding, and to produce documents relevant to, the matters identified in Requests 1(a), (c), and (d) of its Rule 30(b)(6) Notice.

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2007, I served the above and foregoing on the below-listed counsel:

David M. Steiner, Esq. *(via ECF Notification)*
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq. *(via ECF Notification)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F. Anthony Paganelli, Esq. *(via Certified Mail)*
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

Robert J. Wagman, Jr. *(via ECF Notification)*
Baker Botts, L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400

***Attorney for Jenkens & Gilchrist***

/s/ Joel N. Crouch
JOEL N. CROUCH