IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership, | § | |
| Plaintiff, | § | Case No. 05-231 T<br>Chief Judge Edward Damich |
| v. | § | |
| United States of America, | § | |
| Defendant. | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS AND IN OPPOSITION TO J&G'S MOTION TO QUASH SUBPOENA**

Respectfully submitted,

Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

EXHIBIT 3

## TABLE OF AUTHORITIES

**Federal Cases**

Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007) ..... 4
Clark v. Experian Info. Solutions, Inc., No. 3, 7882, 2006 WL 626820, *2 (N.D. Ill. Mar. 8, 2006) ..... 12
Coefield v. City of LaGrange, Ga., 913 F. Supp. 608, 615 (D.D.C. 1996) ..... 10
COLM Producer, Inc. v. United States, 460 F. Supp.2d 713, 716-17 & n.1 (N.D. Tex. 2006) ..... 4
Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ..... 9
Fid. & Deposit Co. of Md., 122 F.R.D. 447, 449 (S.D.N.Y. 1988) ..... 12
GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003) ..... 14
Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ..... 8
Hickman v. Taylor, 329 U.S. 495, 507 (1947) ..... 8, 18
In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001) ..... 14
In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp.2d 201, 210 n. 14 (D.D.C. 2005) ..... 11, 12
Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) ..... 9
Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp.2d 608, 614-18 (E.D. Tex. 2006) ..... 4, 5
Long Beach Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 189 F. Supp. 589 (S.D. Cal. 1960), rev'd on other grounds, 189 F.2d 403 (9th Cir. 1960) ..... 15
Long v. Commissioner, 660 F.2d 416, 419 (10th Cir. 1981) ..... 4
North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 50 (D.D.C. 2005) ..... 9
Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n. 5 .. 12
Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987) ..... 9
United States v. Amerigroup Illinois, Inc., No. 02-6074, 2005 WL 3111972, *2 (N.D. Ill. Oct. 21, 2005) ..... 15

**Federal Statutes**

I.R.C. § 6111 ..... 6
I.R.C. § 6707 ..... 6, 7, 13, 15
I.R.C. § 752 ..... 2, 3, 4, 5, 7

**Federal Regulations**

Treas. Reg. § 1.752-6 ..... 4, 5
Treasury Regulation § 1.752-6T ..... 4

**Other Authorities**

Chief Counsel Notices CC-2003-020 ..... 4
Notice 2000-44 ..... 5
W. Brazil, Protecting the Confidentiality of Settlement Negotiations, 39 Hastings L.J. 955, 956 (1988) (internal quotation marks omitted), affirmed, 439 F.3d 740 (D.C. Cir. 2006) ..... 12

## TABLE OF CONTENTS

I. STATEMENT OF THE CASE ..... 2

A. Introduction ..... 2

B. The Transactions at Issue ..... 3

C. The Taxpayers' Reliance on and the IRS's Repudiation of the *Helmer* Line of Cases ..... 3

D. Recognizing the Weakness of Its Position Under § 752, the IRS Has Asserted that as a Factual Matter, the Options Are a "Single" Net Option ..... 5

E. In Its Zeal to Penalize Tax Advisors, the IRS Has Taken the Opposite Position - that as a Factual Matter, the Long and Short Options Are Not a Single Net Option – to Increase the Penalty for Failing to Register a Tax Shelter ..... 6

F. J&G Is Not a Mere Bystander ..... 6

G. Plaintiff's 30(b)(6) Subpoena and J&G's Motion to Quash ..... 7

II. ARGUMENT ..... 8

A. Fed. R. Civ. P. 45(c)(3)(A) Requires A Court To Balance Competing Interests In Deciding A Motion To Quash ..... 8

B. The Information Sought By Subpoena Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law. ..... 10

C. J&G Has Not Established a Right To Protection Under Its Confidentiality Agreement With The Government, The Attorney-Client Privilege Or The Work-Product Doctrine. ..... 11

1. There Is No Federal Settlement Privilege and Fed. R. Evid. 408 Is Inapplicable to the Information Sought ..... 11

2. Neither the Attorney-Client Privilege nor the Work-Product Doctrine Applies to the Information Sought ..... 13

D. J&G Has Not Established That Complying With Plaintiff's Subpoena Would Impose An Undue Burden. ..... 15

E. The Balance Of Factors Requires That J&G's Motion To Quash Be Denied And Plaintiff's Motion To Compel Be Granted. ..... 16

III. CONCLUSION ..... 18

IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership, Plaintiff, | § | Case No. 05-231 T Chief Judge Edward Damich |
| v. | § | |
| United States of America, Defendant. | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS AND IN OPPOSITION TO J&G'S MOTION TO QUASH SUBPOENA**

Plaintiff, JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, by its undersigned attorneys, files this Memorandum in Support of its Motion to Compel Jenkens & Gilchrist ("J&G") to Comply with Plaintiff's Subpoena for Rule 30(b)(6) Deposition and Production of Documents ("Motion to Compel") and in Opposition to J&G's Motion to Quash and Motion for Protection from Plaintiff's Subpoena ("Motion to Quash"). J&G's brief in support of its motion argues that responding to the subpoena "would be unduly burdensome and would require J&G to disclose the terms of a confidential settlement agreement with the Internal Revenue Service ('Closing Agreement') along with confidential documents and information relating to the Closing Agreement, all of which are irrelevant to Plaintiff's claims." (J&G Br. at 1.) Because this argument is without merit, J&G's Motion to Quash should be denied. Conversely, Plaintiff's Motion to Compel should be granted because the information sought by the subpoena is narrow, directly related to the fundamental issues in

this case, unprotected by any rule of privilege or confidentiality, and necessary for Plaintiff to prepare its case and this Court to determine the facts and the law.

## I. STATEMENT OF THE CASE

### A. Introduction

As the Court is aware, this case is related to several others, including Murfam Farms, LLC, v. United States, No. 06-247T (consolidated) (Fed. Cl.), and Woods v. United States, No. 05-216 (consolidated) (W.D. Tex.), MDL No. 1727 (S.D. Ind.). Discovery has been proceeding in this case and the Murfam and Woods cases for well over a year.[1] Plaintiff has served the IRS in this and the cases referenced above with Rule 30(b)(6) deposition notices that request information similar to that requested in the subpoena J&G has moved to quash. Plaintiff has received uniformly inadequate responses and objections to those notices.[2] As is more fully explained below, the uniform refusal by the IRS and J&G to provide information to which Plaintiff is entitled suggests a carefully thought-out and coordinated effort by the IRS to "hide the ball" from both the Plaintiff and the Court.

Plaintiff's discovery requests are directly aimed at two key issues before the Court, one legal and one factual. The legal question is what the received interpretation of I.R.C. § 752 was at the time of the transactions in dispute and whether the IRS's conduct in changing that interpretation in June 2003 and applying it retroactively to transactions going back to 1999 was proper. The factual issue is how the IRS has applied I.R.C. § 752 to the currency options in the disputed transactions. The IRS's position on these issues is

[1] Counsel for all parties to these cases have agreed that discovery may be exchanged and used in all of these related cases.

[2] See Objections of the United States to Plaintiffs' 30(b)(6) Deposition Notice, App. at 38. Plaintiffs will soon file motions to compel the government in this case.

consistent in one respect only: it changes depending on which interpretation will maximize revenue to the Treasury. It is inconsistent in every other material respect.

**B. The Transactions at Issue**

The transactions in dispute in this case involve European style foreign currency digital options. The taxpayers in this case purchased a long option from Duetsche Bank that required Duetsche Bank to pay a fixed amount if the "spot" exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. At the same time, the taxpayers in this case sold a short option to Duetsche Bank that required the taxpayer to pay a fixed amount if the spot exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. The taxpayer then contributed both the purchased, long option and the sold, short option to a partnership, here, JBJZ Partners. For purposes of computing their basis in JBJZ partners, the taxpayers included the amount paid to Duetsche Bank for the long option (the "Long Premium") but did not reduce their basis by the amount received from Duetsche Bank from the sale of the short option (the "Short Premium"). Thus, the taxpayers calculated their basis in the JBJZ Partners by treating the long and short options as separate options instead of a single net option. As the short option was not "in-the-money" at the time it was contributed to JBJZ Partners, it was a contingent obligation. That is, there was no liability to Duetsche Bank unless and until the spot exchange rate exceeded the strike exchange rate.

**C. The Taxpayers' Reliance on and the IRS's Repudiation of the Helmer Line of Cases**

The transactions at issue were undertaken in reliance on a line of case law that spans several decades. In fact, the taxpayers in the present case took the same position that the IRS had successfully espoused in prior cases *against* taxpayers: that under I.R.C. § 752,

contingent obligations, and more specifically short option positions, are not "liabilities" for tax purposes when they are assumed by a partnership. See Helmer v. Commissioner, 34 T.C.M. (CCH) 727 (1975); accord Long v. Commissioner, 660 F.2d 416, 419 (10th Cir. 1981); See also Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007); COLM Producer, Inc. v. United States, 460 F. Supp.2d 713, 716-17 & n.1 (N.D. Tex. 2006); Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp.2d 608, 614-18 (E.D. Tex. 2006). Under this line of authority, a partnership's assumption of a short option position has no effect on a partner's basis in the partnership. Applied to the currency options at issue here, the rule provided a favorable -- and entirely legitimate -- tax benefit to the taxpayers.

Plaintiff sought and received legal opinions, one from J&G and one from Brown & Wood, LLP, both of which supported the manner in which plaintiffs reported these transactions on their federal tax returns for 1999. In June 2003, however, the Treasury Department promulgated new regulations under I.R.C. § 752, which altered the definition of "liability" under that section by including contingent obligations. Treas. Reg. § 1.752-6T, App. at 16-20. Treasury Regulation § 1.752-6T purported to apply the new definition of "liability" to transactions going back to October 18, 1999. At about the same time that Treas. Reg. § 1.752-6T was issued, the IRS also released Chief Counsel Notices CC-2003-020, which sets forth the IRS's litigation position with respect to the contingent obligation issue in cases involving COBRA and similar transactions, relying primarily on § 1.752-6T for authority, App. at 4-5.

At the same time, the IRS also issued a Notice of Proposed Rulemaking for a prospective, permanent rule addressing the contingent obligation issue, the preamble to

which expressly stated that the IRS would no longer follow Helmer. Assumption of Partner Liabilities, 68 Fed. Reg. 37434, 37436 (June 24, 2003), App. at 23-24. One court has already ruled that the retroactive aspect of the new regulations is invalid and that their application, at least to transactions occurring between October 18, 1999, and September 5, 2000, the date Notice 2000-44[3] was issued -- the relevant period in the present cases -- is an abuse of discretion. Klamath, 440 F. Supp.2d at 623.

**D. Recognizing the Weakness of Its Position Under § 752, the IRS Has Asserted That as a Factual Matter, the Options Are a "Single" Net Option**

In an effort to avoid the problems of logic inherent in its inconsistent positions with respect to whether a contingent obligation is a liability for tax purposes under I.R.C. § 752, and to establish an alternative theory should the retrospective application of regulation Treas. Reg. § 1.752-6 be invalidated, the IRS determined that *as a factual matter*, the long and short options that were contributed to the partnership in this case were a single net option rather than two options (one long and one short). The result of this *factual* determination is that the basis of the options contributed to JBJZ Partners is calculated under I.R.C. as the net premium paid (i.e., the Long Premium less the Short Premium) instead of the Long Premium unreduced by the Short Premium. *See* FPAA Determination 6, App. at 33, 34. Further, the government's expert, David DeRosa, opined on May 31, 2007 that the two options – one long and one short – are a single net option.[4]

---

[3] App. at 1-3.
[4] Expert Report of David F. DeRosa dated May 31, 2007 at 61-91. The report is not attached as it is approximately 125 pages long.

**E. In Its Zeal to Penalize Tax Advisors, the IRS Has Taken the Opposite Position - that as a Factual Matter, the Long and Short Options Are Not a Single Net Option – to Increase the Penalty for Failing to Register a Tax Shelter**

While the IRS's factual position as to Plaintiff and similarly situated taxpayers works to *increase* revenue for the Treasury, it also works to *reduce* potential I.R.C. § 6707[5] penalties against tax advisors that allegedly failed to properly register the transactions at issue as a tax shelter under I.R.C. § 6111.[6] The IRS has therefore taken the opposite position -- that the purchased, long option and sold, short option *are not* a single net option, but are instead *separate* options -- to calculate the penalty under I.R.C. § 6707, which is 1% of the aggregate amount invested in the transaction. Incredibly, this is the opposite of the IRS's litigation position against Plaintiff and actually *supports* Plaintiff tax treatment of the transactions. Indeed, the IRS's position that the long option and short option are separate is the foundation for a $76 million penalty against Jenkens & Gilchrist[7] and a $39 million penalty against Brown & Wood.[8] Although the IRS's inconsistent positions are relatively well-known among tax litigators,[9] Defendant is trying desperately to prevent discovery on this topic in this and related cases.

**F. J&G Is Not a Mere Bystander**

Plaintiffs in this case and in Woods engaged the J&G law firm, among others, to render tax opinions with respect to these transactions at issue. On March 28, 2007, the U.S. Attorney for the Southern District of New York issued a statement announcing that he had

---

[5] App. at 25.
[6] App. at 27-31.
[7] See J&G Brief, App. at 45.
[8] Brown & Wood has not yet been the subject of a discovery request. Like J&G, however, that firm recently settled its tax shelter registration dispute with the IRS, agreeing to pay a $39.4 million penalty. See IR-2007-103 (May 23, 2007), App. at 32.
[9] Indeed, this very topic was the subject of a January 2007 ABA Tax Section panel. App. at 43-59.

reached a "non-prosecution cooperation agreement" ("Settlement Agreement") with J&G in connection with its role in COBRA transactions and others not at issue here. J&G Br., Ex. 2, App. at 21. The details of the Settlement Agreement are contained in a March 26, 2007, letter from the Department of Justice ("DOJ") to J&G's counsel, Davis Polk & Wardwell. Id. at 25-30. Among the facts revealed in that letter is the existence of a "Closing Agreement" between the IRS and J&G resolving the IRS's promoter penalty audit of J&G, which is said to be a condition precedent to the Settlement Agreement. Id. at 26-27.

**G. Plaintiff's 30(b)(6) Subpoena and J&G's Motion to Quash**

Because the IRS's's factual position with respect to the purchase of long options and the sale of short options in calculating and imposing or threatening to impose I.R.C. § 6707 penalties is inconsistent with its position with respect to COBRA investors, including Plaintiff, and because the government has uniformly refused to produce Rule 30(b)(6) witnesses and documents seeking information on this issue,[10] Plaintiffs served a subpoena on J&G on April 25, 2007, seeking a Rule 30(b)(6) witness and documents narrowly confined to the issue of how the government calculated the I.R.C. § 6707 "civil penalty" J&G is said to have agreed to pay the IRS pursuant to the Closing Agreement. Id. at 26. J&G responded by serving the present motion to quash on May 16, 2007, claiming, *inter alia*, that a confidentiality agreement with the IRS precludes it from complying with the subpoena.

It therefore appears that the IRS is engaged in a concerted effort to prevent Plaintiff in this and related cases from gaining access to information that is crucial to their ultimate claim: that the IRS is taking not only inconsistent legal positions on I.R.C. §752, but also taking inconsistent factual positions on the long and short options at issue in this case. The

[10] See Objections of the United States to Plaintiff's 30(b)(6) Deposition Notices, App. at 38.

Federal Rules of Civil Procedure do not countenance such conduct. J&G's Motion to Quash should therefore be denied and Plaintiff's Motion to Compel should be granted.

## II. ARGUMENT

### A. Fed. R. Civ. P. 45(c)(3)(A) Requires A Court To Balance Competing Interests In Deciding A Motion To Quash.

Fed. R. Civ. P. 26(b)(1) and Rule 26 (b)1 of the Rules of the Court of Federal Claims provide in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The Federal Circuit has instructed that in considering a motion to compel, "a court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986). In fact, the very "[p]urpose of discovery is to provide a mechanism for making relevant information available to litigants." Fed. R. Civ. P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties is essential to proper litigation") (emphasis added)).

The scope of discovery is not unlimited, however. Fed. R. Civ. P. 45(c)(3)(A), which governs the application of Rule 26(c) to subpoenas, provides in pertinent part that a subpoena may be quashed or modified if it:

> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

In determining whether a subpoena should be quashed or modified, courts balance such factors as "relevance, the need of the party for the documents, the breadth of the document request, the particularity with which the documents are described and the burden imposed." North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 50 (D.D.C. 2005). "[A] court may consider as one factor [in assessing the burden of complying with a subpoena] that a deponent is not a party." Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987) (Markey, C.J.); Leake, 231 F.R.D. at 50 ("non-party status is also relevant in considering the burden") (citation omitted).

While some courts give a movant's non-party status special weight in balancing the relevant factors and competing interests, Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998), it is hardly the "overarching policy" of Rule 45. J&G Br. at 3. On the contrary, "[t]he administration of justice would not be aided . . . by a rule relieving [non-parties] from giving particular evidence." Truswal, 813 F.2d at 1210. Moreover, unlike the movants in the cases cited in J&G's Brief at 3, J&G is not exactly a "stranger" to the events underlying this litigation. *See* Cusumano, 162 F.3d at 717. In fact, it played a major role in those events, acting as Plaintiff's legal counsel in facilitating and implementing the transactions at issue and rendering a tax opinion with respect to those transactions -- a fact that vitiates the primary reason for giving any special weight to non-party status. In every case, the burden of persuasion is on the movant on a motion to quash. Truswal, 813 F.2d at 1210; Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003). As the following discussion demonstrates, J&G has failed to meet its burden, and its motion to quash should therefore be denied. In the following discussion, on the other hand, Plaintiff more than meets its burden with respect to its Motion to Compel, which should therefore be granted.

**B. The Information Sought By Subpoena Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law.**

Whether the information sought by subpoena is relevant is often the first factor courts consider in deciding motions to quash or to compel. For discovery purposes, information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This standard "is not a stringent one." Coefield v. City of LaGrange, Ga., 913 F. Supp. 608, 615 (D.D.C. 1996). Nevertheless, J&G asserts that the information sought in the subpoena is irrelevant to Plaintiff's case because J&G's settlement with the IRS "cannot possibly affect Plaintiff's claims" or "further any claims or defenses in the case." J&G Br. at 4. Given its familiarity with and participation in the very transactions at issue here and in related cases, J&G knows better. And as discussed in this motion on pages 2 through 6, the IRS's shifting legal and factual positions that are the subject of the subpoena are central to the issues in this case.

The IRS's position as to whether the currency options at issue are a single transaction or separate appears to depend entirely on which position is more advantageous to the IRS in any given context. It views the long and short options as a single transaction for purposes of reducing a taxpayer's partnership basis and thereby increasing its tax liability, but as separate for purposes of increasing the penalties for non-registration of a tax shelter to be assessed against the advisor that devised the transaction. The government cannot have it both ways: either the foreign currency options at issue are, as a factual matter, separate transactions or they are not. To treat them differently in different contexts is analytically incoherent. J&G's view of the issues in this case and of the relevance of the

information sought to those issues is at best simplistic and at worst disingenuous. In either event, its claim of irrelevancy is meritless.

### C. J&G Has Not Established a Right To Protection Under Its Confidentiality Agreement With The Government, The Attorney-Client Privilege Or The Work-Product Doctrine.

#### 1. There Is No Federal Settlement Privilege and Fed. R. Evid. 408 Is Inapplicable to the Information Sought

How the IRS calculates penalties in connection with the transactions that have given rise to this and related cases is a factual matter that lies at the very heart of Plaintiff's case. The Closing Agreement resolves the issues related to the IRS's promoter penalty audit of J&G and apparently imposes a $76 million civil penalty. J&G Br., Ex. 2, App. at 26, 45. Consequently, Plaintiff requested the Closing Agreement in paragraph 1(a) of its subpoena. According to J&G, however, it is precluded by a confidentiality agreement with the government from producing the Closing Agreement or disclosing any of its terms upon pain of having both the Closing Agreement and the Settlement Agreement terminated. J&G Br. at 3-4. The source of J&G's obligation of confidentiality is never explicitly stated, but presumably it is a confidentiality clause in the Closing Agreement. Similarly, the source of the legal authority upon which J&G rests its claim that the Closing Agreement and related documents and testimony are not discoverable is unclear, *see* J&G Br., Ex. 2, App. at 4-5, but there are only two possibilities: a federal "settlement privilege" or Fed. R. Evid. 408. Neither supports J&G's claim.

"The weight of authority suggests that there is no generalized privilege for settlement communications and that they are discoverable, at least after a showing of substantial need." In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp.2d 201, 210 n. 14 (D.D.C. 2005), *citing* W. Brazil, *Protecting the Confidentiality of*

*Settlement Negotiations*, 39 Hastings L.J. 955, 956 (1988) (internal quotation marks omitted), *affirmed*, 439 F.3d 740 (D.C. Cir. 2006). *Accord*, Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n. 5 (S.D.N.Y.) (Rule 408 does not create a settlement privilege).

Thus, the confidentiality issue turns on Rule 408, which provides in pertinent part:

> (a) Prohibited uses. -- Evidence of [compromise negotiations and settlement] is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount. . . .
>
> (b) Permitted uses. -- This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). . . .

It should be noted at the outset that by its terms, Rule 408 applies to the *admissibility* of evidence at *trial* and not to whether information is *discoverable*. Commodity Futures, 370 F. Supp.2d at 211.

> The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of [settlement] discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure. . . . Therefore, a party is not allowed to use Rule 408 as a screen for the curtailing of an adversary's right of discovery.

Id., *citing* 2 Weinstein's Federal Evidence ¶408.07 at 408-26 (2005). *Accord*, Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

Moreover, Rule 408 "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiation"; rather, the rule only excludes evidence used to prove liability for or invalidity of the claim or its amount, and does not apply to evidence offered for other purposes. Clark v. Experian Info. Solutions, Inc., No. 3, 7882, 2006 WL 626820, *2 (N.D. Ill. Mar. 8, 2006).

Rule 408 is clearly inapplicable to the information sought in the present case. See Exhibit A to Plaintiff's Subpoena, a copy of which is attached hereto as Exhibit 4. First, Plaintiff would have no standing to challenge the Closing Agreement even if it had an interest in doing so. Hence, the information sought cannot be offered for any of the purposes prohibited by Rule 408. Second, the Closing Agreement is likely to be directly probative of the calculations the IRS used to determine the penalty it assessed against J&G, and therefore of whether it treated the options at issue as a single option or as separate. These purely factual matters are necessary to Plaintiff's preparation of its case. Similarly, the documents and testimony related to the IRS's calculations will reveal whether the IRS assessed or threatened to assess additional penalties against J&G under I.R.C. §6707, and if so, how it calculated or intended or threatened to calculate them. The information Plaintiff seeks is likely to raise inferences about the IRS's intent and the propriety of how it is proceeding in this and related cases, evidence that is directly pertinent. Hence, the information sought is certainly discoverable and likely to be admissible at trial.

### 2. Neither the Attorney-Client Privilege nor the Work-Product Doctrine Applies to the Information Sought

Since Plaintiff's subpoena requests no information that is conceivably privileged, the attorney-client privilege and the work-product doctrine are irrelevant. Nevertheless, J&G asserts that "[n]one of the information [it] possesses" that is responsive to paragraphs 1(b)-(e) of the subpoena is discoverable because it "is protected by the attorney-client privilege and the work-product exemption." J&G Br. at 5. The subpoena asks neither about J&G's communications with its attorneys, nor about its attorneys' communications with J&G, nor about its attorneys' thoughts, impressions or opinions; it seeks only

information communicated by the IRS to J&G. Whether the IRS communicated directly with J&G or indirectly through J&G's outside counsel, the result is the same: no attorney-client privilege or work-product protection applies, the latter of which can in any case only be invoked by J&G's attorneys, and not by J&G. And the subpoena on its face only calls for production of "non-privileged documents." J&G Br., App. at 8.

J&G's claim that the IRS never discussed its computation of the penalty with J&G and that J&G has no documents related to that issue is so incredible that it gives rise to the suspicion that J&G is playing "pickle-in-the-middle" with this information -- and Plaintiff is "it." It is simply not possible that J&G agreed to pay a $76 million penalty, if that is the "civil penalty" referred to in the Settlement Agreement, with no information about how the IRS arrived at that figure. The only rational explanation for this assertion is that the information sought is in the possession or within the knowledge of its outside counsel rather than J&G.[11] Significantly, J&G has provided no log of responsive documents that it claims are privileged as required by Fed. R. Civ. P. 45 (d)(2)(A). Absent a privilege log, it is impossible to examine its claim; hence, its claim is entitled to no weight in the balance of factors relevant to its Motion to Quash. Indeed, "[failure to comply with [the rule] is deemed to waive the underlying privilege claim." GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003), *citing* In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001).

[11] Plaintiff does not believe that information in the possession of J&G's counsel is outside of J&G's control. Thus, this does not present a "technical" defense to the subpoena. But if need be, Plaintiff will serve J&G's outside counsel with a subpoena.

**D. J&G Has Not Established That Complying With Plaintiff's Subpoena Would Impose An Undue Burden.**

A mere assertion that compliance with a subpoena would be burdensome and onerous is not sufficient to establish this factor without showing the manner and extent of the burden. Long Beach Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 189 F. Supp. 589 (S.D. Cal. 1960), *rev'd on other grounds*, 189 F.2d 403 (9th Cir. 1960). "*Ipse dixits* will not suffice." United States v. Amerigroup Illinois, Inc., No. 02-6074, 2005 WL 3111972, *2 (N.D. Ill. Oct. 21, 2005). Rather, the movant must demonstrate with "affirmative and compelling proof" that the burden of producing in undue. Id.

Yet J&G makes no attempt to assess the burden of complying with the five narrowly drawn requests for documents in the subpoena. Instead of addressing the volume of documents sought and the cost of producing them, J&G pleads lack of financial and staffing resources to comply with the subpoena. J&G Br. at 6-7. It even claims that it "now continues to operate *solely*" to wind up its affairs. Id. at 2 (emphasis added). But its Settlement Agreement with the government tells a very different story. For example, the agreement states:

> that J&G Texas . . . will remain in operation to wind up J&G's business affairs; [and] that the purposes of this continuing entity will include continuing to cooperate with this Office . . . .

J&G's Ex. 2, App. at 26.

That cooperation includes the requirement that J&G "use its best efforts" to:

- assemble, organize, and provide, in a responsive and prompt fashion , . . . all documents, records, information, and other evidence in J&G's possession, custody or control as may be requested by this Office, the IRS (civil and criminal), Tax DOJ, or any other law enforcement agency designated by this Office;

- make available its present and former shareholders, partners, associates, and employees to provide information and/or testimony before a grand jury or in court proceedings, and in interviews with law enforcement authorities;

- identify witnesses who, to J&G's knowledge, may have material information concerning this Office's investigation; and

- provide testimony or establish the original location, authenticity, or other basis for admission in evidence of documents . . . as requested by this Office, the IRS (civil and criminal), or Tax DOJ.

Id. at 27. In addition, the agreement requires J&G to:

- maintain the originals of all documents and records in its possession and control that are relevant to the government's investigation, *at J&G's own expense*, in a location leased for three years from the signing of the agreement; and

- designate, train and *pay* appropriate personnel to satisfy its obligations to provide materials to the government for three years.

Id. at 3-4.

The IRS estimates that 1,400 investors are affected by J&G's advice. J&G's Br., Ex. 2 at App. 45. J&G is obligated to provide documents, testimony, and/or both, requested by the government in connection with its investigation of the transactions of those investors. If J&G has the resources to meet its obligations to the government, it certainly has the resources to comply with the five narrow requests in Plaintiff's subpoena. J&G has not met its burden with respect to its claim of undue burden.

**E. The Balance Of Factors Requires That J&G's Motion To Quash Be Denied And Plaintiff's Motion To Compel Be Granted.**

The last step in deciding a motions to quash and to compel is to balance the relevant factors. In this case, the balance weighs heavily against J&G's motion and in favor of requiring compliance with Plaintiff's subpoena. The information sought is clearly relevant to Plaintiff's case. In balancing the relevancy of and need for the information sought against the burden a subpoena imposes, courts sometimes look at whether the information is more readily available elsewhere. In this and related cases it is not, because although the

IRS is the source of the information sought, it has consistently objected to Plaintiffs' discovery requests on multiple grounds, adding, for example, prematurity and the "deliberative process privilege" to the usual objections. In short, the highly relevant and necessary information plaintiffs seek will be even more difficult to obtain from the IRS than from J&G.

Moreover, J&G's claim that it is precluded from complying with the subpoena by a confidentiality agreement with the IRS is unsubstantiated; indeed, it has not even clearly identified the source of its obligation. Perhaps informing the court that a confidentiality clause exists in the Closing Agreement would constitute a "Major Event of Default" that would allow the government to nullify the Closing and Settlement Agreements, a result that would admittedly have dire consequences for J&G if it occurred. But the Federal Rules of Civil Procedure require more than unsubstantiated claims of confidentiality and privilege. At the very least, J&G should be required to produce the Closing Agreement and related documents for an *in camera* review to determine whether they contain information relevant and necessary to Plaintiffs' claims as they have been described herein.

The same is true of the documents for which J&G claims attorney-client privilege and work-product protection. Until J&G produces the privilege log required by Rule 45(d)(2), its claims cannot even be tested. Moreover, it is insufficient for J&G to assert that it has no responsive documents and no one to produce as a Rule 30(b)(6) deponent with respect to information that common sense counsels must exist. J&G cannot hide behind its attorneys to avoid producing discoverable, unprivileged matter. At the very least, J&G should be required to identify which of its former partners, associates or employees have knowledge of the information sought. After all, the Settlement Agreement requires J&G to

identify witnesses, "to use its best efforts" to make its former personnel available to the government in its on-going investigation, and to provide requested documents in a timely fashion. The Federal Rules of Civil Procedure are "intended to provide a mechanism for making information available to litigants." Fed. R. Civ. P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947). They are not intended to be used to conceal vital information. Rather, they are designed to ensure the "[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties [that] is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947) (emphasis added).

Finally, while it is clear that J&G has fallen on hard times, it has not demonstrated that complying with Plaintiff's subpoena would be unduly burdensome. On the contrary, in light of what it has agreed to do for the government, the minimal requests in Plaintiff's subpoena, the necessity of the requested information in preparing Plaintiff's case, and the difficulty and uncertainty of success in extracting the information from the IRS, J&G's claim of undue burden is wholly unpersuasive. Thus, the balance of the relevant factors, as well as the principle of fair play and the interests of justice, all weigh in favor of granting Plaintiff's Motion to Compel and denying J&G's Motion to Quash.

## III. CONCLUSION

For all the reasons stated herein, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Compel and deny Jenkens & Gilchrist's Motion to Quash and Motion for Protection.

Respectfully submitted,

By: /s/ Joel N. Crouch
Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2007, I served the above and foregoing on the below-listed counsel:

David M. Steiner, Esq. *(via ECF Notification)*
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq. *(via ECF Notification)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F. Anthony Paganelli, Esq. *(via FedEx)*
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

Robert J. Wagman, Jr. *(via Certified Mail)*
Baker Botts, L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400

***Attorney for Jenkens & Gilchrist***

/s/ Joel N. Crouch
JOEL N. CROUCH

# In the United States Court of Federal Claims

No. 05-231 T

(Filed: August 9, 2007)

| | |
|---|---|
| **JZ BUCKINGHAM INVESTMENTS LLC,** Plaintiff, v. **THE UNITED STATES,** Defendant. | Motion to quash; motion to compel; subpoena; 30(b)(6) deposition; production of documents; RCFC 26; RCFC 45; Fed. R. Evid. 408; Fed. R. Evid. 501; relevance; attorney-client privilege; work product privilege; settlement privilege; undue burden; non-party status; tax partnership; tax shelter; sham transactions; calculation of tax penalty |

*Joel N. Crouch*, of Meadows, Owens, Collier, Reed Cousins & Blau, L.L.P., Dallas, TX, for Plaintiff.

*Dennis M. Donohue*, Senior Litigation Counsel, Tax Division, United States Department of Justice, Washington, DC, for Defendant.

*Robert J. Wagman, Jr.*, of Baker Botts, L.L.P., Washington, DC, for Non-Party, Jenkens & Gilchrist.

## OPINION AND ORDER

**DAMICH**, Chief Judge.

Before the Court in this tax partnership case are a motion to quash, and motion for protection from, Plaintiff's subpoena filed by a non-party, Jenkens & Gilchrist, as well as a cross-motion to compel Jenkens & Gilchrist to comply with the subpoena filed by Plaintiff. For the reasons set forth below, the Court DENIES Jenkens & Gilchrist's motions and GRANTS Plaintiff's motion.

EXHIBIT
tabbies
4

Case 1:05-cv-00231-EJD Document 108 Filed 11/02/2007 Page 2 of 5

## I. Background

JZ Buckingham Investments, LLC ("JZ") and JGB Bohicket Investments, LLC ("JGB"), both Delaware limited liability companies, were partners in JBJZ Partners, a South Carolina general partnership, for the tax year ending December 27, 1999. Compl. ¶¶ 1, 2, 4. JZ was the tax matters partner of JBJZ Partners. *Id.* 3. JBJZ Partners filed its federal tax return with the Internal Revenue Service ("IRS") for the tax year ending December 27, 1999. *Id.* ¶ 6. On December 9, 2004, the Commissioner of the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") against JBJZ Partners for that tax year. *Id.* ¶ 7.[1] JZ filed this case under 26 U.S.C. ("I.R.C.") § 6226(a) to request redetermination of final partnership administrative adjustments as set forth by the Commissioner in the FPAA. *Id.* ¶ 11.

In its complaint, JZ alleges as follows: JZ and JGB entered into non-publicly traded foreign currency option positions on the Euro and Yen with Deutsche Bank AG New York Branch, each purchasing a long option and selling a short option. *Id.* ¶¶ 17-18. On November 24, 1999, JZ and JGB contributed the options to JBJZ Partners, and on December 22, 1999, the option positions terminated in accordance with their terms. *Id.* ¶¶ 27-28. During December 1999, JBJZ Partners purchased Canadian Dollars as an investment and, on December 22, 1999, forty-five hundred long-term shares and five hundred short-term shares of Cisco Systems, Inc. were contributed to JBJZ Partners. *Id.* ¶¶ 29-31. On December 27, 1999, JZ's and JGB's interests in JBJZ Partners were each contributed to JBJZ Investors, Inc. ("JBJZ Investors"), a Delaware corporation. *Id.* ¶¶ 32-33. JBJZ Partners was then dissolved and liquidated, and all of the foreign currency and shares were distributed to JBJZ Investors. *Id.* ¶ 34. Finally, on December 28, 1999, JBJZ Investors sold all of its investments in the foreign currency and shares. *Id.* ¶ 35.

Defendant contends, in its answer, that JBJZ Partners is to be disregarded for federal income tax purposes. Am. Answer ¶¶ 6, 30-31. According to Defendant, JBJZ Partners is a sham because it was created as a step in a prearranged plan with a purpose inconsistent with the intent of Subchapter K of the Internal Revenue Code. *Id.* ¶¶ 30-31. Defendant asserts that the transactions were all part of a complex, pre-arranged, multi-step tax shelter strategy co-developed and sold as the tax product known as "COBRA"[2] by Deutsche Bank AG, an accounting firm (Ernst & Young, LLP), and several law firms, including Jenkens & Gilchrist and Brown & Wood. J. Prelim. Status Rep. at 6-7.

For the purpose of computing its tax basis in JBJZ Partners, JZ included the amount paid to Deutsche Bank for the long option but did not reduce its basis by the amount received from Deutsche Bank from the sale of the short option. Pl.'s Mem. in Support of Cross-Mot. to

---

[1] Although the FPAA is dated for tax year 2000, the parties agree that it was intended to apply to tax year 1999. *See* Court Order issued September 2, 2005.

[2] "COBRA" is the acronym for Currency Options Bring Reward Alternatives.

Compel ("Pl.'s Mem.") at 3.[3] In other words, JZ calculated its basis in JBJZ Partners by treating the long and short options as separate options instead of as a single net option. *Id.*

In June 2003, the Treasury Department promulgated new regulations under I.R.C. § 752, which altered the definition of "liability" under that section to include contingent obligations and applied the new definition to transactions going back to October 18, 1999. Pl.'s Mem. at 4; App. to Pl.'s Cross-Mot. to Compel ("Pl.'s App.") at 16-20; *see* Temp. Treas. Reg. § 1.752-6T (2003). Moreover, the IRS Office of Chief Counsel released Notice CC-2003-020, which established that the IRS would similarly regard as liabilities contingent obligations in cases involving COBRA or similar transactions. Pl.'s Mem. at 4; Pl.'s App. at 4-15. Finally, the IRS issued a Notice of Proposed Rulemaking for a prospective, permanent rule directed to the contingent obligation issue. Pl.'s Mem. at 4-5; Pl.'s App. at 23-24; *see* Assumption of Partner Liabilities, 68 Fed. Reg. 37434-01 (proposed June 24, 2003).

In March 2007, Jenkens & Gilchrist entered into settlement agreements with the IRS and the U.S. Department of Justice ("DOJ"), through the U.S. Attorney's Office for the Southern District of New York, which resolved government investigations into Jenkens & Gilchrist's involvement in certain tax shelters. Jenkens & Gilchrist's Mot. to Quash ("Jenkens & Gilchrist's Mot.") at 1-2; App. to Jenkens & Gilchrist's Mot. to Quash ("Jenkens & Gilchrist's App.") at 21-23, 25-30, 45.[4] The settlement agreement with the DOJ referenced the "Closing Agreement" between Jenkens & Gilchrist and the IRS as a condition precedent. Jenkens & Gilchrist's Mot. at 2; Jenkens & Gilchrist's App. at 26-27.

Shortly thereafter, Plaintiff served a subpoena on Jenkens & Gilchrist, a non-party to the instant litigation. Paragraph 1 of the subpoena directed Jenkens & Gilchrist to designate a person to testify regarding the following:

> a. Jenkens & Gilchrist's settlement or closing agreement referenced in IRS News Release (IR-2007-71) regarding Jenkens & Gilchrist's agreement to a $76 million tax penalty for promoting tax shelters.

---

[3] Because the short option was not "in the money" at the time it was contributed to JBJZ Partners, JZ considered it to be a contingent obligation, i.e., there was no liability to Deutsche Bank unless and until the spot exchange rate exceeded the strike exchange rate. Pl.'s Mem. at 3.

[4] IRS News Release IR-2007–71 described the settlement agreement as follows:

> The Internal Revenue Service today announced that it has reached a settlement with the law firm of Jenkens & Gilchrist, which agreed that they are subject to a penalty of $76 million. The penalty stems from the firm's promotion of abusive and fraudulent tax shelters and violation of the tax law concerning tax shelter registration and maintenance and turnover to the IRS of tax shelter investor lists.

Jenkens & Gilchrist's App. at 45.

Case 1:05-cv-00231-EJD Document 106 Filed 08/02/2007 Page 4 of 15

b. The IRS' [sic] legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in the penalty described above are a single option or investment; whether for purposes of determining the "aggregate amount invested" under I.R.C. § 6707, the IRS' [sic] position is that each of the sold and purchased digital option contracts is a separate option or investment rather than a single option or investment; and whether for purposes of computing the tax shelter ratio under I.R.C. § 6111 (in effect prior to 2004) the IRS' [sic] position is that each sold and purchased digital option contract is a single option or investment rather than separate options or investments. This includes the Internal Revenue Service's position regarding the penalty, as expressed orally, in writing, or computationally.

c. Whether the IRS assessed or threatened to assess or provided computations of a potential penalty under § 6707 prior to Jenkens & Gilchrist's agreement to any settlement or closing agreement.

d. The IRS's position as to whether the penalty under § 6707 could be challenged administratively or in court prior to its payment.

e. Whether Jenkens & Gilchrist concluded that it had to pay any penalty assessed under § 6707 prior to challenging it in court.

Jenkens & Gilchrist's App. at 7-8. Paragraph 2 of the subpoena commanded Jenkens & Gilchrist "to produce and to permit inspection and copying of all *non-privileged documents*, communications, or both relating to the matters listed in paragraph 1." *Id.* at 8 (emphasis added).

On May 16, 2007, Jenkens & Gilchrist filed its Motion to Quash, and Motion for Protection from, Plaintiff's Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents. Plaintiff responded with its Cross-Motion to Compel Jenkens & Gilchrist to Comply with the Subpoena, and Memorandum in Support thereof. Oral argument on the cross-motions was held on July 18, 2007.

## II. Analysis

In general, parties may obtain discovery regarding any unprivileged matter relevant to a claim or defense of any party. Rule 26(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC"). To be relevant, discovery information need not be admissible at trial, it need only be reasonably calculated to lead to the discovery of admissible evidence. *Id.* The use of subpoenas, like any discovery methods, may be limited by the Court if it determines:

(i) the discovery sought is unreasonably cumulative or duplicative, or *is obtainable from some other source that is more convenient, less burdensome, or less expensive*;

(ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

Case 1:05-cv-00231-EJD Document 108 Filed 01/02/2007 Page 5 of 15

(iii) *the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the proposed discovery in resolving the issues.*

RCFC 26(b)(2) (emphases added). The Court may act to limit discovery on its own initiative or in response to a motion for protection under RCFC 26(c). In addition, RCFC 45 provides specific guidance to the Court regarding limitations on subpoenas. Pursuant to the rule, the Court shall quash or modify a subpoena if it:

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or
(iii) *requires disclosure of privileged or other protected matter and no exception or waiver applies*, or
(iv) *subjects a person to undue burden.*

RCFC 45(c)(3)(A) (emphases added).

Jenkens & Gilchrist filed its motion for protection under RCFC 26 and its motion to quash the subpoena under RCFC 45.[5] The burden of persuasion in a motion to quash a subpoena is on the movant. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987). In deciding whether to quash or modify a subpoena, the Court must consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986). Jenkens & Gilchrist asserts that the information and documents sought by Plaintiff in its subpoena are irrelevant to its claims and therefore do not meet the requirements of RCFC 26. Furthermore, Jenkens & Gilchrist asserts that the information sought is privileged and that discovery of the information would impose an undue burden on Jenkens & Gilchrist; hence, the Court should quash the subpoena under RCFC 45.

---

[5] RCFC 26 and 45 largely track Fed. R. Civ. P. 26 and 45, respectively, and interpretation of Fed. R. Civ. P. 26 and 45 informs the Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

Case 1:05-cv-00231-EJD Document 106 Filed 11/02/2007 Page 6 of 15

## A. Relevance

Discovery is limited to relevant information, i.e., information reasonably calculated to lead to admissible evidence. RCFC 26(b)(1). Jenkens & Gilchrist argues that the information sought in Plaintiff's subpoena is not relevant to the instant litigation. According to Jenkens & Gilchrist, the only document specifically mentioned in the subpoena, the Closing Agreement, does not contain information relevant to Plaintiff's claim. The Closing Agreement relates to penalties assessed against Jenkens & Gilchrist for violations of tax laws by promoting tax shelters and for failing to provide certain information to the IRS. In the instant litigation, in contrast, Plaintiff seeks to overturn the IRS's disallowance of the benefits of Plaintiff's tax shelter. Jenkens & Gilchrist argues that the IRS's assessment of tax penalties against Jenkens & Gilchrist has nothing to do with the disallowance of tax benefits to Plaintiff. Furthermore, Jenkens & Gilchrist avers that the only testimony it can provide that is not privileged or confidential is testimony by John Gilliam, the sole remaining lawyer at Jenkens & Gilchrist, concerning his discussions with the IRS about Jenkens & Gilchrist's financial situation, continued viability, cooperation with the Government, and need for a global settlement. Jenkens & Gilchrist contends that such testimony is not relevant to Plaintiff's claims. Finally, Jenkens & Gilchrist contends that the IRS's factual and legal position on whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to payment and the IRS's conclusions regarding challenges to penalties under I.R.C. § 6707 are irrelevant to the instant litigation, which pertains only to whether the IRS properly disallowed Plaintiff's tax shelter.

Plaintiff counters that the subpoena seeks information regarding how the IRS calculated the $76 million civil penalty it assessed against Jenkens & Gilchrist due to its role in COBRA and other transactions, which is directly relevant to whether the IRS treats inconsistently, depending on context, the foreign currency digital options at issue in this litigation as either a single net option or as separate options, in order to maximize revenue for the U.S. Treasury. Plaintiff contends that the subpoena is directed to two key issues relevant to the litigation. First, the subpoena seeks information relating to the factual question of how the IRS has applied I.R.C. § 752 to the currency options in the disputed transactions. Second, the subpoena seeks information relating to the legal question of what the IRS's interpretation of I.R.C. § 752 was at the time of the transactions and whether its change in interpretation during June 2003, and its retroactive application of the new interpretation, was proper. In determining liability under I.R.C. § 752, Plaintiff contends that the IRS has determined as a factual matter that the long and short options that were contributed to the partnership were a single net option rather than two options (a long option and a short option), i.e., the basis of the options contributed to JBJZ Partners was calculated as the net premium paid rather than as the long premium unreduced by the short premium. However, the effect of such a factual position would be to reduce potential penalties under I.R.C. § 6707 against tax advisors who failed to properly register the transactions as a tax shelter under I.R.C. § 6111. Consequently, Plaintiff avers that, for the purpose of calculating the penalty under I.R.C. §6707, the IRS has treated the long option and the short

Case 1:05-cv-00231-EJD Document 106 Filed 08/02/2007 Page 7 of 15

option as separate options.[6] According to Plaintiff, the IRS's shifting legal and factual positions are central to the issues in this litigation. Plaintiff contends that the IRS views the long and short options as a single transaction for the purpose of reducing a taxpayer's partnership basis and thereby increasing its tax liability, but views them as separate for the purpose of increasing the penalties against the advisor that devised the transaction for non-registration of a tax shelter.

Although the Court questions whether any information obtained relating to settlement negotiations may ultimately be admissible at trial, the Court need not concern itself at this point with admissibility. The Court cannot conclude that the information sought in the subpoena is not reasonably calculated to lead to the discovery of admissible evidence and, hence, is irrelevant to the litigation. The issue at the heart of the litigation is whether the government has improperly disallowed certain tax benefits to Plaintiff in the FPAA. If there is evidence that the IRS was inconsistent in how it treated the transactions behind the tax benefits, or how it interpreted sections of the I.R.C., such could indeed be relevant to Plaintiff's claim. Hence, at this early stage in the litigation, the Court is unable to find that the subpoena seeks irrelevant information and should be quashed on that ground. Nevertheless, because the Closing Agreement itself does not reveal how the $76 million penalty was calculated, *see* Suppl. Decl. of John Gilliam (June 25, 2007) ¶ 7 ("Gilliam Suppl. Decl."); Tr. of Oral Argument held July 18, 2007 ("Tr.") at 9, the Court fails to see how the Closing Agreement is relevant to the litigation. Therefore, Jenkens & Gilchrist need not produce the Closing Agreement to Plaintiff.

**B. Privilege**

Pursuant to RCFC 45(c)(3)(A), the Court shall quash or modify a subpoena that requires the disclosure of privileged or other protected matter. In its motion to quash, Jenkens & Gilchrist contends that, to the extent that Plaintiff seeks information and documents relating to the method by which the IRS computed the I.R.C. § 6707 penalty assessed against Jenkens & Gilchrist and Jenkens & Gilchrist's position regarding possible challenges to that penalty, such information and documents are protected by the attorney-client privilege and/or the work product doctrine. Jenkens & Gilchrist asserts that the only knowledge it has regarding the IRS's legal and factual positions concerning the calculation of that penalty is based on legal advice obtained from Jenkens & Gilchrist's outside counsel, Davis, Polk & Wardwell, which is privileged. Furthermore, Jenkens & Gilchrist avers that any information or documents concerning the IRS's factual and legal position on whether a penalty under § 6707 could be challenged administratively or in court prior to payment and the IRS's conclusions on challenges to penalties under § 6707 are protected by the attorney-client privilege and/or the work product doctrine.

Plaintiff argues that the subpoena does not inquire into Jenkens & Gilchrist's communications with its attorneys or its attorneys' communications with Jenkens & Gilchrist,

[6] Specifically, Plaintiff contends that the factual determination by the IRS that the long option and the short option are separate was the foundation for the assessment of a $76 million penalty against Jenkens & Gilchrist and a $39 million penalty against Brown & Wood.

rather the subpoena inquires only into communications by the IRS to Jenkens & Gilchrist. Moreover, the subpoena does not ask about Jenkens & Gilchrist's attorneys' thoughts, impressions or opinions. In fact, Plaintiff points out, the subpoena specifically requests only "non-privileged documents." Plaintiff contends that, since the subpoena does not seek privileged information, neither the attorney-client privilege nor the work product doctrine apply. Plaintiff further asserts that even if the information is in the possession of Jenkens & Gilchrist's outside counsel, the information is still within the control of Jenkens & Gilchrist. Finally, Plaintiff contends that Jenkens & Gilchrist has failed to produce a privilege log, as required by Fed. R. Civ. P. 45(d)(2)(A),[7] and therefore Jenkens & Gilchrist has waived its right to assert a privilege.

In its reply brief, Jenkens & Gilchrist contends that the attorney-client privilege and the work product privilege were raised in its motion to quash out of an abundance of caution because Jenkens & Gilchrist was uncertain how broadly the Court would interpret Plaintiff's subpoena. However, Jenkens & Gilchrist asserts that, given that Plaintiff clarified in its response to Jenkens & Gilchrist's motion that the only information sought in the subpoena is how the IRS calculated the $76 million penalty, Jenkens & Gilchrist no longer needs to invoke the attorney-client privilege or the work product privilege because it has no responsive documents or other information. Jenkens & Gilchrist's Reply at 3.[8] Moreover, Jenkens & Gilchrist contends that because the subpoena requests only non-privileged documents, there is no need for Jenkens & Gilchrist to provide a privilege log and it has not waived any privileges by not providing a privilege log.

Paragraph 2 of the subpoena commands Jenkens & Gilchrist "to produce and permit inspection and copying of all non-privileged documents, communications, or both relating to the matters listed in paragraph 1." Jenkens & Gilchrist's App. at 8. Therefore, the Court finds that to the extent the subpoena requests production of documents, those documents are limited to non-privileged documents and there is no basis for Jenkens & Gilchrist to invoke either the

---

[7] Plaintiff refers to the Fed. R. Civ. P., yet the rules governing this Court are the RCFC. Nevertheless, RCFC 45(d)(2) is identical to Fed. R. Civ. P. 45(d)(2)(A) and states:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

[8] Although Jenkens & Gilchrist does not point to where Plaintiff, in its response, "declared with certainty" its intention with respect to the subpoena, the Court believes that Jenkens & Gilchrist may be referring to where Plaintiff described the subpoena as one "seeking a Rule 30(b)(6) witness and documents narrowly confined to the issue of how the government calculated the I.R.C. § 6707 'civil penalty' [that Jenkens & Gilchrist] agreed to pay the IRS pursuant to the Closing Agreement." Pl.'s Mem. at 7.

Case 1:05-cv-00231-EJD Document 104 Filed 01/02/2007 Page 9 of 15

attorney-client privilege or the work product doctrine. Paragraph 1 of the subpoena, however, directs Jenkens & Gilchrist to designate a person or persons to testify as to certain matters. During oral argument, Plaintiff conceded that the information it seeks in its subpoena is primarily focused on, although not limited to, how the IRS calculated the $76 million penalty. Tr. at 35-36. Because Jenkens & Gilchrist maintains that it has no documents or other information responsive to how the IRS calculated the penalty, and it consequently need not invoke either the attorney-client privilege or the work product privilege, there is no basis for the Court to quash the subpoena based on the attorney-client or the work product privilege. Should additional attorney-client or work product privilege issues arise during or after deposition, the Court will address them at that time.

Jenkens & Gilchrist further contends that information sought in the subpoena is protected under a settlement privilege. Jenkens & Gilchrist asserts that it cannot provide testimony on, or produce, the Closing Agreement because the Closing Agreement is confidential. Under the terms of the Closing Agreement, Jenkens & Gilchrist is prohibited from disclosing the agreement or its terms, subject to its termination.[9] According to Jenkens & Gilchrist, several courts have held that negotiations leading up to settlement with the government are not discoverable, the rationale being that allowing disclosure could chill settlement negotiations and ultimately settlement. Therefore, Jenkens & Gilchrist asserts that it should not be required to testify about, or produce documents relating to, paragraph 1(a) or 1(c) of the subpoena.

Plaintiff points out that Jenkens & Gilchrist does not provide any legal authority to support its claim to a settlement privilege. Plaintiff argues that there is no generalized privilege covering settlement communications and that such communications are discoverable if there is a showing of substantial need. Further, Plaintiff contends that Jenkens & Gilchrist cannot base its settlement privilege in FED. R. EVID. 408 because that rule applies to the admissibility of evidence at trial, not to whether evidence is discoverable, and the rule only excludes evidence used to prove liability for or invalidity of the claim or its amount. According to Plaintiff, the information sought in its subpoena is not likely to be offered for such a purpose. Instead, the information relates to how the IRS calculated the penalty it assessed against Jenkens & Gilchrist under I.R.C. § 6707, whether it treated the options as a single option or as separate options in making the calculation, whether the IRS assessed additional penalties against Jenkens & Gilchrist under I.R.C. § 6707, and how it calculated such penalties. Therefore, Plaintiff avers that Jenkens & Gilchrist's invocation of a settlement privilege cannot be based in FED. R. EVID. 408, and there is no legal basis to support Jenkens & Gilchrist's request for protection from the subpoena based on a settlement privilege.

The Court of Appeals for the Federal Circuit has provided little guidance on the extent to which settlement documents are protected from discovery as privileged. Further, there is no consensus among district courts on the existence of a settlement privilege. *See Matsushita*

---

[9] Jenkens & Gilchrist clarified during oral argument that there is a nondisclosure clause in the Closing Agreement itself which prevents disclosure. Tr. at 45.

*Electric Indus. Co. v. Mediatek, Inc.*, No. C-05-3148 MMC (JCS), 2007 WL 963975, at *4 (N.D. Cal. Mar. 30, 2007); *In re Subpoena Issued to Commodity Futures Trading Comm'n.*, 370 F. Supp. 2d 201, 209-10 (D.D.C. 2005). During oral argument, Jenkens & Gilchrist confirmed that it was basing its claim to a settlement privilege on FED. R. EVID. 408. Tr. at 46.

FED. R. EVID. 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The purpose of the rule is to encourage settlement. *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976); *Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, No. 98Civ.6738 (RMB)(MHD), 2000 WL 97680, at *4 n.5 (S.D.N.Y. Jan. 28, 2000); *Commodity Futures*, 370 F. Supp. 2d at 211; *Morse/Diesel, Inc. v. Fid. & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988). On its face, however, the rule is directed to admissibility of evidence at trial and does not limit discovery. *See Triax Co. v. United States*, 11 Cl. Ct. 130, 134 (Cl. Ct. 1986); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979); *Matsushita Electric*, 2007 WL 963975, at *3; *Heartland Surgical Specialty Hosp., LLC v. Midwest Div. Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *4 (D. Kan. Apr. 27, 2007); *Commodity Futures*, 370 F. Supp. 2d at 211; *Primetime 24*, 2000 WL 97680, at *4 n.5. Furthermore, the rule excludes only evidence used to prove liability for or invalidity of the claim or its amount, not evidence offered for other purposes. *See Reichenbach*, 528 F.2d at 1075; *Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2006 WL 626820, at *2 (N.D. Ill. Jan 6, 2006). Here, Plaintiff seeks documents and information during the course of discovery and is not requesting admission of evidence at trial. Moreover, as explained by Plaintiff, the evidence it seeks will not be used to prove liability for or invalidity of the claim or its amount, but rather for another purpose, namely, to show whether the IRS regarded the options as a single option or as separate options. The Court, therefore, fails to find a basis for Jenkens & Gilchrist to protect the information sought in the subpoena pursuant to FED. R. EVID. 408. As explained by one district court:

> The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these

Case 1:05-cv-00231-EJD Document 126-4 Filed 11/02/2007 Page 34 of 39

> discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure . . . . Therefore, a party is not allowed to use Rule 408 as a screen for curtailing his adversary's right of discovery.

*Commodity Futures*, 370 F. Supp. 2d at 211 (citing Weinstein's Federal Evidence § 408.07 at 408-26).

Another possible basis for the court to find a settlement privilege is FED. R. EVID. 501, which states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

At least the Sixth Circuit has recognized the existence of a settlement privilege based on this rule. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979-80 (6th Cir. 2003). In addition, several district courts have recognized the existence of a settlement privilege by implication, without specific reference to FED. R. EVID. 501. *See, e.g., Allen County v. Riley Indus., Inc.*, 197 F.R.D. 352, 353 (N.D. Ohio 2000); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990); *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 449-50 (S.D.N.Y. 1985). The Supreme Court has, however, identified a number of factors that should be considered in deciding whether to define a new privilege under FED. R. EVID. 501, including:

> (1) Is there a significant public and private interest supporting the recognition of the privilege?
> (2) Is the likely "evidentiary benefit that will result from the denial of the privilege modest"?
> (3) Is there a consensus among the states as to the existence of the new privilege?
> (4) Has Congress considered the relevant competing concerns itself and acted on the question of whether or not the information should be privileged?
> (5) Is there an historical and statutory basis for the new privilege?
> (6) Is the proposed privilege on the list of privileges that was proposed by the Judicial Conference in 1973?

*Matsushita Electric*, 2007 WL 963975, at *4 (brackets omitted) (citing *Jaffee v. Redmond*, 518 U.S. 1, 11-13 (1996); *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 189, 195 (1990); *United States v.*

Case 1:05-cv-00231-EJD Document 106 Filed 08/09/2007 Page 12 of 15

*Gillock*, 445 U.S. 360, 367-68 (1980)); *Commodity Futures*, 370 F. Supp. 2d at 208. Most courts recognizing a settlement privilege have failed to carefully evaluate these factors. *Matsushita Electric*, 2007 WL 963975, at *4.[10] The Court finds the analysis in *Commodity Futures*, which evaluated each of the factors, and found no basis for the implication of a new settlement privilege, to be sound. *Commodity Futures*, 370 F. Supp. 2d at 209-12; *accord Matsushita Electric*, 2007 WL 963975, at *5-6. Accordingly, the Court finds no basis to quash the subpoena on the grounds that information sought is protected under a settlement privilege.[11]

**C. Undue Burden**

Jenkens & Gilchrist argues that limiting discovery is appropriate when the burden of discovery outweighs the need. Because Jenkens & Gilchrist is a non-party to the instant litigation, it contends that the subpoena imposes an undue burden. Furthermore, Jenkens & Gilchrist argues that in March 2007 it stopped offering legal services and now operates solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. John Gilliam is the only remaining lawyer employed by Jenkens & Gilchrist. In addition to Mr. Gilliam, Roger Hayse serves as president and the firm has fifteen administrative employees. Because Jenkens & Gilchrist reduced its staff to a skeleton crew and its financial resources are limited and are being conserved for creditors, Jenkens & Gilchrist contends that Plaintiff's subpoena presents an undue burden. Any future obligations that Jenkens & Gilchrist has to the DOJ under the Settlement Agreement are the responsibility of one current employee of Jenkens & Gilchrist and one contract employee, not a large workforce. Therefore, considering its present circumstances, Jenkens & Gilchrist argues that any cost and effort required to produce documents and to prepare for and attend a deposition would unreasonably burden Jenkens & Gilchrist's staff and resources, and impede its ability to expeditiously wind up its business.

Jenkens & Gilchrist further contends that the IRS never discussed how it computed the $76 million penalty, nor shared any documents related thereto, with Jenkens & Gilchrist. Moreover, Jenkens & Gilchrist avers that IRS never disclosed to Jenkens & Gilchrist the IRS's factual and legal position on whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to payment, nor the IRS's conclusions on challenges to penalties under I.R.C. § 6707. Therefore, Jenkens & Gilchrist argues that testimony by, and documents from, Jenkens & Gilchrist will not address the issue of how the government calculated the $76 million penalty under I.R.C. § 6707, which Jenkens & Gilchrist agreed to pay. To support its arguments, Jenkens & Gilchrist provides the supplemental declaration of John

---

[10] Jenkens & Gilchrist has likewise failed to explain how any of these factors support the existence of a settlement privilege.

[11] As discussed above, however, the Court fails to see how the Closing Agreement is relevant to the litigation. Given the nondisclosure clause in the Closing Agreement itself and Plaintiff's failure to show substantial need to see the Closing Agreement, the Court will not compel Jenkens & Gilchrist to produce the Closing Agreement.

Case 1:05-cv-00231-EJD Document 126-4 Filed 11/02/2007 Page 36 of 39

Gilliam.[12] Jenkens & Gilchrist contends that Plaintiff has provided no reasoned basis for compelling Jenkens & Gilchrist to respond to the subpoena.

Plaintiff concedes that a movant's non-party status is a factor to be considered by the Court in deciding whether to grant a motion to quash a subpoena. Yet, Plaintiff argues, Jenkens & Gilchrist is not a complete stranger to the events underlying this litigation, rather it played a major role by serving as Plaintiff's legal counsel in implementing the transactions at issue in the litigation and rendering a tax opinion with respect to the transactions. Further, Plaintiff argues that instead of complaining as to the volume of documents requested or the cost of producing the requested documents, Jenkens & Gilchrist only asserts that it lacks sufficient staff and resources to comply with the subpoena. Plaintiff contends, however, that the Settlement Agreement with the DOJ requires Jenkens & Gilchrist to remain in operation in order to fulfill numerous duties for the DOJ, including providing documents and testimony related to the DOJ's investigation. Plaintiff asserts that if Jenkens & Gilchrist has the resources to meet the requirements imposed by the DOJ, Jenkens & Gilchrist surely has the resources to comply with Plaintiff's narrowly drafted subpoena.

Plaintiff contends that it has already served a Rule 30(b)(6) subpoena on the IRS seeking similar information, but that the IRS has refused to produce the information, objecting based on prematurity, the deliberative process privilege, or some other reason.[13] Plaintiff states that it will also file a motion to compel Defendant to comply with the subpoena, but Plaintiff maintains that

---

[12] Therein, Mr. Gilliam states that Jenkens & Gilchrist has undertaken a review of electronic and hard copy documents of himself, Roger Hayse, Patrick Mitchell, and Tom Cantrill, the four persons at Jenkens & Gilchrist who were primarily involved in the discussions and negotiations with the DOJ and IRS, and found no documents describing or referring to the calculation used by the IRS to arrive at the $76 million figure. Gilliam Suppl. Decl. ¶¶ 5-6. He also states that Mr. Mitchell and Mr. Cantrill were not told how the IRS did its calculation, nor was anyone currently working for Jenkens & Gilchrist. *Id.* ¶ 7.

[13] In particular, one such Rule 30(b)(6) deposition notice requested testimony on:

> Defendant's legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in this case (Attachments 1, 2, and 3) are a single option or investment; and separately, whether for purposes of determining the "aggregate amount invested" under I.R.C. § 6707, Defendant is taking the position that each digital option contract, such as those involved in this case, are separate options or investments rather than a single option or investment.

Pl.'s App. at 38. Defendant objected to the notice on the grounds that it was premature, because the issue is the subject of expert testimony and initial expert reports were not yet due, and because inquiry into the legal contentions of the parties are properly handled through contention interrogatories, not Rule 30(b)(6) depositions. *Id.*

the information it seeks will be more difficult to obtain from the IRS than from Jenkens & Gilchrist.[14] Plaintiff argues that it is simply incredible that Jenkens & Gilchrist agreed to pay a $76 million penalty without knowing how the IRS calculated that figure. Plaintiff urges the Court to, at a minimum, require Jenkens & Gilchrist to identify which former partners, associates or employees have knowledge of the information sought in the subpoena.

The party objecting to a subpoena as unduly burdensome bears the burden of showing that the subpoena violates Rule 45. *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 206-07 (D.D.C. 2000). The party must provide specific and compelling proof that the burden is undue. *United States v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *2 (N.D. Ill. Oct. 21, 2005); *Flatow*, 196 F.R.D. at 206-07; *Long Beach Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 189 F. Supp. 589, 604 (S.D. Cal. 1960). In determining whether a subpoena causes undue burden, courts generally balance the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 190 (Fed. Cl. 2005) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *see also Morrow v. Air Ride Techs., Inc.*, No. IP-05-113, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006) (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662-63 (D. Kan. 2003)); *North Carolina Right to Live, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (quoting *Flatow*, 196 F.R.D. at 206-07); *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) (citing *United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). The fact that a deponent is not a party to the lawsuit is another factor which may be considered by the court in assessing whether there is undue burden. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987); *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007); *Wiwa*, 392 F.3d at 818; *Gray v. Cottrell, Inc.*, No. 4:05-CV-1852 (CEJ), 2006 WL 1663242, at *1 (E.D. Mo. June 12, 2006); *Morrow*, 2006 WL 559288, at * 1; *United States v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005); *N. C. Right to Live, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). Moreover, Rule 45 must be read in light of Rule 26. *Heat & Control*, 785 F.2d at 1023; *St. Matthew Publ'g, Inc. v. United States*, 41 Fed. Cl. 142, 145 (1998); *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998). Accordingly, additional factors to be considered in the undue burden analysis include those set forth in Rule 26(b)(2). *Linder*, 180 F.R.D. at 174.

In general, modification of a subpoena is preferred to quashing it. *Wiwa*, 392 F.3d at 818; *Mariner Health Care, Inc. v. Indemnity Ins. Co. of N. Am.*, No. Civ.A.04-MC-00180, 2005 WL 44521, at *2 (E.D. Pa. Jan. 7, 2005); *Linder*, 180 F.R.D. at 176; *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998). Courts are particularly sensitive to limiting costs imposed on third parties and may require a party serving a subpoena on a third party to pay the reasonable

---

[14] At oral argument, Plaintiff explained that Defendant would likely invoke I.R.C. § 6103, arguing that it cannot disclose confidential taxpayer information. Tr. at 19-20.

costs of responding to the subpoena. *Watts*, 482 F.3d at 509; *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 164 F.R.D. 623, 628 (E.D. Pa. 1996); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 339-40 (N.D. Cal. 1995); *Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 264-65 (D. Del. 1992).

Here, the Court has already determined that the information requested in the subpoena, other than the Closing Agreement, is relevant to the litigation and that Plaintiff has a need for the information. The request is not overly broad and the information responsive to the request is adequately described. The fact that Jenkens & Gilchrist is a third party and in the process of dissolution makes responding to the subpoena somewhat burdensome. Yet, the Court recognizes that Jenkens & Gilchrist was not a complete stranger to the litigation and was in fact a major player in the transactions at stake. The Court also notes that, because the IRS would likely invoke I.R.C. § 6103, the information requested in the subpoena is not "obtainable from some other source that is more convenient, less burdensome, or less expensive . . . ." RCFC 26(b)(2)(i). The Court fails to understand how responding to the subpoena would cause excessive cost, especially since Jenkens & Gilchrist maintains that it has few, if any, responsive documents or other information. Hence, the Court concludes that there is no basis to quash the subpoena and that Jenkens & Gilchrist should be compelled to respond to the subpoena at its own expense.[15]

## III. Conclusion

Jenkens & Gilchrist Motion to Quash, and Motion for Protection from, Plaintiff's Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents is DENIED. Plaintiff's Cross-Motion to Compel Jenkens & Gilchrist to Comply with the Subpoena is GRANTED with the limitations discussed above.

The Court ORDERS the parties to file a Joint Motion for Protective Order, with a proposed draft protective order attached, on or before **August 30, 2007**.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

[15] At oral argument, Plaintiff argued for the first time that it interpreted "control," with respect to production of documents in response to a RCFC 45 subpoena, broadly to include documents that the responding party has the legal right to obtain upon demand. Tr. at 56. Therefore, Plaintiff contends that Jenkens & Gilchrist should be required to request documents from the IRS in order to fully respond to Plaintiff's subpoena. *Id.* at 52-56. Because this issue has not been briefed by the parties, the Court will not address it at this time. Should Plaintiff determine after deposition that there are responsive documents or other information within Jenkens & Gilchrist's "control" that are not being produced, Plaintiff may file a motion to compel in which it addresses the meaning of "control."

# AFFIDAVIT OF M. TODD WELTY

STATE OF TEXAS §
§
COUNTY OF DALLAS §

On November 2, 2007, I telephoned defense counsel to try to reach an agreement regarding the information Plaintiff now seeks in its Motion to Compel. That attempt was unsuccessful. Specifically, defense counsel stated they oppose any motion to obtain the penalty computation, whether from Jenkens & Gilchrist or the IRS.

Further, Affiant sayeth not.

M. Todd Welty

Subscribed and sworn to before me this 2nd day of November, 2007.

ERIKA LEE HARPER
MY COMMISSION EXPIRES
June 4, 2011

Notary Public

EXHIBIT
5

359420v1