**IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership,** | § | |
| **Plaintiff,** | § | **Case No. 05-231 T** |
| | § | **Chief Judge Edward Damich** |
| **v.** | § | |
| **United States of America,** | § | |
| **Defendant.** | § | |

**APPENDIX**

| Exhibit | Description | Pages |
|---|---|---|
| 1 | Court's Opinion and Order of August 9, 2007 | 1-15 |
| 2 | Notice of Deposition | 16-25 |
| 3 | Objections of the United States to Plaintiff's 30(b)(6) Deposition Notice | 26-33 |
| 4 | Jenkins & Gilchrist's Brief in Support of Motion to Quash and Motion for Protection from Plaintiff's Subpoena for a rule 30(b)(6) Deposition and for Production of Documents | 34-45 |
| 5 | Plaintiff's cross-Motion to Compel J&G to Comply with Subpoena for Rule 30(b)(6) Deposition and Production of Documents | 46-49 |
| 6 | Plaintiff's Memorandum in Support of Cross-Motion to Compel J&G to Comply with Subpoena for Rule 30(b)(6) Deposition and Production of documents and in Opposition to J&G's Motion to Quash | 50-72 |
| 7 | Deposition Testimony of John Gilliam | 73-80 |
| 8 | Affidavit of M. Todd Welty | 81 |
| 9 | Tax Information Authorization Form 8821 | 82-83 |
| 10 | Protective Order | 84-88 |

# In the United States Court of Federal Claims

No. 05-231 T

(Filed: August 9, 2007)

****************************************

| | | |
|---|---|---|
| **JZ BUCKINGHAM INVESTMENTS LLC,** | * | Motion to quash; motion to compel; |
| | * | subpoena; 30(b)(6) deposition; production of documents; RCFC 26; |
| Plaintiff, | * | RCFC 45; Fed. R. Evid. 408; Fed. R. |
| | * | Evid. 501; relevance; attorney-client |
| v. | * | privilege; work product privilege; |
| | * | settlement privilege; undue burden; |
| **THE UNITED STATES,** | * | non-party status; tax partnership; |
| | * | tax shelter; sham transactions; |
| Defendant. | * | calculation of tax penalty |
| | * | |

****************************************

*Joel N. Crouch*, of Meadows, Owens, Collier, Reed Cousins & Blau, L.L.P., Dallas, TX, for Plaintiff.

*Dennis M. Donohue*, Senior Litigation Counsel, Tax Division, United States Department of Justice, Washington, DC, for Defendant.

*Robert J. Wagman, Jr.*, of Baker Botts, L.L.P., Washington, DC, for Non-Party, Jenkens & Gilchrist.

---

**OPINION AND ORDER**

---

**DAMICH**, Chief Judge.

Before the Court in this tax partnership case are a motion to quash, and motion for protection from, Plaintiff's subpoena filed by a non-party, Jenkens & Gilchrist, as well as a cross-motion to compel Jenkens & Gilchrist to comply with the subpoena filed by Plaintiff. For the reasons set forth below, the Court DENIES Jenkens & Gilchrist's motions and GRANTS Plaintiff's motion.

EXHIBIT
tabbies
1

## I. Background

JZ Buckingham Investments, LLC ("JZ") and JGB Bohicket Investments, LLC ("JGB"), both Delaware limited liability companies, were partners in JBJZ Partners, a South Carolina general partnership, for the tax year ending December 27, 1999. Compl. ¶¶ 1, 2, 4. JZ was the tax matters partner of JBJZ Partners. *Id.* 3. JBJZ Partners filed its federal tax return with the Internal Revenue Service ("IRS") for the tax year ending December 27, 1999. *Id.* ¶ 6. On December 9, 2004, the Commissioner of the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") against JBJZ Partners for that tax year. *Id.* ¶ 7.[1] JZ filed this case under 26 U.S.C. ("I.R.C.") § 6226(a) to request redetermination of final partnership administrative adjustments as set forth by the Commissioner in the FPAA. *Id.* ¶ 11.

In its complaint, JZ alleges as follows: JZ and JGB entered into non-publicly traded foreign currency option positions on the Euro and Yen with Deutsche Bank AG New York Branch, each purchasing a long option and selling a short option. *Id.* ¶¶ 17-18. On November 24, 1999, JZ and JGB contributed the options to JBJZ Partners, and on December 22, 1999, the option positions terminated in accordance with their terms. *Id.* ¶¶ 27-28. During December 1999, JBJZ Partners purchased Canadian Dollars as an investment and, on December 22, 1999, forty-five hundred long-term shares and five hundred short-term shares of Cisco Systems, Inc. were contributed to JBJZ Partners. *Id.* ¶¶ 29-31. On December 27, 1999, JZ's and JGB's interests in JBJZ Partners were each contributed to JBJZ Investors, Inc. ("JBJZ Investors"), a Delaware corporation. *Id.* ¶¶ 32-33. JBJZ Partners was then dissolved and liquidated, and all of the foreign currency and shares were distributed to JBJZ Investors. *Id.* ¶ 34. Finally, on December 28, 1999, JBJZ Investors sold all of its investments in the foreign currency and shares. *Id.* ¶ 35.

Defendant contends, in its answer, that JBJZ Partners is to be disregarded for federal income tax purposes. Am. Answer ¶¶ 6, 30-31. According to Defendant, JBJZ Partners is a sham because it was created as a step in a prearranged plan with a purpose inconsistent with the intent of Subchapter K of the Internal Revenue Code. *Id.* ¶¶ 30-31. Defendant asserts that the transactions were all part of a complex, pre-arranged, multi-step tax shelter strategy co-developed and sold as the tax product known as "COBRA"[2] by Deutsche Bank AG, an accounting firm (Ernst & Young, LLP), and several law firms, including Jenkens & Gilchrist and Brown & Wood. J. Prelim. Status Rep. at 6-7.

For the purpose of computing its tax basis in JBJZ Partners, JZ included the amount paid to Deutsche Bank for the long option but did not reduce its basis by the amount received from Deutsche Bank from the sale of the short option. Pl.'s Mem. in Support of Cross-Mot. to

---

[1] Although the FPAA is dated for tax year 2000, the parties agree that it was intended to apply to tax year 1999. *See* Court Order issued September 2, 2005.

[2] "COBRA" is the acronym for Currency Options Bring Reward Alternatives.

Compel ("Pl.'s Mem.") at 3.[3] In other words, JZ calculated its basis in JBJZ Partners by treating the long and short options as separate options instead of as a single net option. *Id.*

In June 2003, the Treasury Department promulgated new regulations under I.R.C. § 752, which altered the definition of "liability" under that section to include contingent obligations and applied the new definition to transactions going back to October 18, 1999. Pl.'s Mem. at 4; App. to Pl.'s Cross-Mot. to Compel ("Pl.'s App.") at 16-20; *see* Temp. Treas. Reg. § 1.752-6T (2003). Moreover, the IRS Office of Chief Counsel released Notice CC-2003-020, which established that the IRS would similarly regard as liabilities contingent obligations in cases involving COBRA or similar transactions. Pl.'s Mem. at 4; Pl.'s App. at 4-15. Finally, the IRS issued a Notice of Proposed Rulemaking for a prospective, permanent rule directed to the contingent obligation issue. Pl.'s Mem. at 4-5; Pl.'s App. at 23-24; *see* Assumption of Partner Liabilities, 68 Fed. Reg. 37434-01 (proposed June 24, 2003).

In March 2007, Jenkens & Gilchrist entered into settlement agreements with the IRS and the U.S. Department of Justice ("DOJ"), through the U.S. Attorney's Office for the Southern District of New York, which resolved government investigations into Jenkens & Gilchrist's involvement in certain tax shelters. Jenkens & Gilchrist's Mot. to Quash ("Jenkens & Gilchrist's Mot.") at 1-2; App. to Jenkens & Gilchrist's Mot. to Quash ("Jenkens & Gilchrist's App.") at 21-23, 25-30, 45.[4] The settlement agreement with the DOJ referenced the "Closing Agreement" between Jenkens & Gilchrist and the IRS as a condition precedent. Jenkens & Gilchrist's Mot. at 2; Jenkens & Gilchrist's App. at 26-27.

Shortly thereafter, Plaintiff served a subpoena on Jenkens & Gilchrist, a non-party to the instant litigation. Paragraph 1 of the subpoena directed Jenkens & Gilchrist to designate a person to testify regarding the following:

a. Jenkens & Gilchrist's settlement or closing agreement referenced in IRS News Release (IR-2007-71) regarding Jenkens & Gilchrist's agreement to a $76 million tax penalty for promoting tax shelters.

---

[3] Because the short option was not "in the money" at the time it was contributed to JBJZ Partners, JZ considered it to be a contingent obligation, i.e., there was no liability to Deutsche Bank unless and until the spot exchange rate exceeded the strike exchange rate. Pl.'s Mem. at 3.

[4] IRS News Release IR-2007–71 described the settlement agreement as follows:

> The Internal Revenue Service today announced that it has reached a settlement with the law firm of Jenkens & Gilchrist, which agreed that they are subject to a penalty of $76 million. The penalty stems from the firm's promotion of abusive and fraudulent tax shelters and violation of the tax law concerning tax shelter registration and maintenance and turnover to the IRS of tax shelter investor lists.

Jenkens & Gilchrist's App. at 45.

b. The IRS' [sic] legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in the penalty described above are a single option or investment; whether for purposes of determining the "aggregate amount invested" under I.R.C. § 6707, the IRS' [sic] position is that each of the sold and purchased digital option contracts is a separate option or investment rather than a single option or investment; and whether for purposes of computing the tax shelter ratio under I.R.C. § 6111 (in effect prior to 2004) the IRS' [sic] position is that each sold and purchased digital option contract is a single option or investment rather than separate options or investments. This includes the Internal Revenue Service's position regarding the penalty, as expressed orally, in writing, or computationally.

c. Whether the IRS assessed or threatened to assess or provided computations of a potential penalty under § 6707 prior to Jenkens & Gilchrist's agreement to any settlement or closing agreement.

d. The IRS's position as to whether the penalty under § 6707 could be challenged administratively or in court prior to its payment.

e. Whether Jenkens & Gilchrist concluded that it had to pay any penalty assessed under § 6707 prior to challenging it in court.

Jenkens & Gilchrist's App. at 7-8. Paragraph 2 of the subpoena commanded Jenkens & Gilchrist "to produce and to permit inspection and copying of all *non-privileged documents*, communications, or both relating to the matters listed in paragraph 1." *Id.* at 8 (emphasis added).

On May 16, 2007, Jenkens & Gilchrist filed its Motion to Quash, and Motion for Protection from, Plaintiff's Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents. Plaintiff responded with its Cross-Motion to Compel Jenkens & Gilchrist to Comply with the Subpoena, and Memorandum in Support thereof. Oral argument on the cross-motions was held on July 18, 2007.

## II. Analysis

In general, parties may obtain discovery regarding any unprivileged matter relevant to a claim or defense of any party. Rule 26(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC"). To be relevant, discovery information need not be admissible at trial, it need only be reasonably calculated to lead to the discovery of admissible evidence. *Id.* The use of subpoenas, like any discovery methods, may be limited by the Court if it determines:

(i) the discovery sought is unreasonably cumulative or duplicative, or *is obtainable from some other source that is more convenient, less burdensome, or less expensive*;

(ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

(iii) *the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the proposed discovery in resolving the issues.*

RCFC 26(b)(2) (emphases added). The Court may act to limit discovery on its own initiative or in response to a motion for protection under RCFC 26(c). In addition, RCFC 45 provides specific guidance to the Court regarding limitations on subpoenas. Pursuant to the rule, the Court shall quash or modify a subpoena if it:

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or
(iii) *requires disclosure of privileged or other protected matter and no exception or waiver applies*, or
(iv) *subjects a person to undue burden.*

RCFC 45(c)(3)(A) (emphases added).

Jenkens & Gilchrist filed its motion for protection under RCFC 26 and its motion to quash the subpoena under RCFC 45.[5] The burden of persuasion in a motion to quash a subpoena is on the movant. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987). In deciding whether to quash or modify a subpoena, the Court must consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986). Jenkens & Gilchrist asserts that the information and documents sought by Plaintiff in its subpoena are irrelevant to its claims and therefore do not meet the requirements of RCFC 26. Furthermore, Jenkens & Gilchrist asserts that the information sought is privileged and that discovery of the information would impose an undue burden on Jenkens & Gilchrist; hence, the Court should quash the subpoena under RCFC 45.

---

[5] RCFC 26 and 45 largely track Fed. R. Civ. P. 26 and 45, respectively, and interpretation of Fed. R. Civ. P. 26 and 45 informs the Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

**A. Relevance**

Discovery is limited to relevant information, i.e., information reasonably calculated to lead to admissible evidence. RCFC 26(b)(1). Jenkens & Gilchrist argues that the information sought in Plaintiff's subpoena is not relevant to the instant litigation. According to Jenkens & Gilchrist, the only document specifically mentioned in the subpoena, the Closing Agreement, does not contain information relevant to Plaintiff's claim. The Closing Agreement relates to penalties assessed against Jenkens & Gilchrist for violations of tax laws by promoting tax shelters and for failing to provide certain information to the IRS. In the instant litigation, in contrast, Plaintiff seeks to overturn the IRS's disallowance of the benefits of Plaintiff's tax shelter. Jenkens & Gilchrist argues that the IRS's assessment of tax penalties against Jenkens & Gilchrist has nothing to do with the disallowance of tax benefits to Plaintiff. Furthermore, Jenkens & Gilchrist avers that the only testimony it can provide that is not privileged or confidential is testimony by John Gilliam, the sole remaining lawyer at Jenkens & Gilchrist, concerning his discussions with the IRS about Jenkens & Gilchrist's financial situation, continued viability, cooperation with the Government, and need for a global settlement. Jenkens & Gilchrist contends that such testimony is not relevant to Plaintiff's claims. Finally, Jenkens & Gilchrist contends that the IRS's factual and legal position on whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to payment and the IRS's conclusions regarding challenges to penalties under I.R.C. § 6707 are irrelevant to the instant litigation, which pertains only to whether the IRS properly disallowed Plaintiff's tax shelter.

Plaintiff counters that the subpoena seeks information regarding how the IRS calculated the $76 million civil penalty it assessed against Jenkens & Gilchrist due to its role in COBRA and other transactions, which is directly relevant to whether the IRS treats inconsistently, depending on context, the foreign currency digital options at issue in this litigation as either a single net option or as separate options, in order to maximize revenue for the U.S. Treasury. Plaintiff contends that the subpoena is directed to two key issues relevant to the litigation. First, the subpoena seeks information relating to the factual question of how the IRS has applied I.R.C. § 752 to the currency options in the disputed transactions. Second, the subpoena seeks information relating to the legal question of what the IRS's interpretation of I.R.C. § 752 was at the time of the transactions and whether its change in interpretation during June 2003, and its retroactive application of the new interpretation, was proper. In determining liability under I.R.C. § 752, Plaintiff contends that the IRS has determined as a factual matter that the long and short options that were contributed to the partnership were a single net option rather than two options (a long option and a short option), i.e., the basis of the options contributed to JBJZ Partners was calculated as the net premium paid rather than as the long premium unreduced by the short premium. However, the effect of such a factual position would be to reduce potential penalties under I.R.C. § 6707 against tax advisors who failed to properly register the transactions as a tax shelter under I.R.C. § 6111. Consequently, Plaintiff avers that, for the purpose of calculating the penalty under I.R.C. §6707, the IRS has treated the long option and the short

option as separate options.[6] According to Plaintiff, the IRS's shifting legal and factual positions are central to the issues in this litigation. Plaintiff contends that the IRS views the long and short options as a single transaction for the purpose of reducing a taxpayer's partnership basis and thereby increasing its tax liability, but views them as separate for the purpose of increasing the penalties against the advisor that devised the transaction for non-registration of a tax shelter.

Although the Court questions whether any information obtained relating to settlement negotiations may ultimately be admissible at trial, the Court need not concern itself at this point with admissibility. The Court cannot conclude that the information sought in the subpoena is not reasonably calculated to lead to the discovery of admissible evidence and, hence, is irrelevant to the litigation. The issue at the heart of the litigation is whether the government has improperly disallowed certain tax benefits to Plaintiff in the FPAA. If there is evidence that the IRS was inconsistent in how it treated the transactions behind the tax benefits, or how it interpreted sections of the I.R.C., such could indeed be relevant to Plaintiff's claim. Hence, at this early stage in the litigation, the Court is unable to find that the subpoena seeks irrelevant information and should be quashed on that ground. Nevertheless, because the Closing Agreement itself does not reveal how the $76 million penalty was calculated, *see* Suppl. Decl. of John Gilliam (June 25, 2007) ¶ 7 ("Gilliam Suppl. Decl."); Tr. of Oral Argument held July 18, 2007 ("Tr.") at 9, the Court fails to see how the Closing Agreement is relevant to the litigation. Therefore, Jenkens & Gilchrist need not produce the Closing Agreement to Plaintiff.

### B. Privilege

Pursuant to RCFC 45(c)(3)(A), the Court shall quash or modify a subpoena that requires the disclosure of privileged or other protected matter. In its motion to quash, Jenkens & Gilchrist contends that, to the extent that Plaintiff seeks information and documents relating to the method by which the IRS computed the I.R.C. § 6707 penalty assessed against Jenkens & Gilchrist and Jenkens & Gilchrist's position regarding possible challenges to that penalty, such information and documents are protected by the attorney-client privilege and/or the work product doctrine. Jenkens & Gilchrist asserts that the only knowledge it has regarding the IRS's legal and factual positions concerning the calculation of that penalty is based on legal advice obtained from Jenkens & Gilchrist's outside counsel, Davis, Polk & Wardwell, which is privileged. Furthermore, Jenkens & Gilchrist avers that any information or documents concerning the IRS's factual and legal position on whether a penalty under § 6707 could be challenged administratively or in court prior to payment and the IRS's conclusions on challenges to penalties under § 6707 are protected by the attorney-client privilege and/or the work product doctrine.

Plaintiff argues that the subpoena does not inquire into Jenkens & Gilchrist's communications with its attorneys or its attorneys' communications with Jenkens & Gilchrist,

---

[6] Specifically, Plaintiff contends that the factual determination by the IRS that the long option and the short option are separate was the foundation for the assessment of a $76 million penalty against Jenkens & Gilchrist and a $39 million penalty against Brown & Wood.

rather the subpoena inquires only into communications by the IRS to Jenkens & Gilchrist. Moreover, the subpoena does not ask about Jenkens & Gilchrist's attorneys' thoughts, impressions or opinions. In fact, Plaintiff points out, the subpoena specifically requests only "non-privileged documents." Plaintiff contends that, since the subpoena does not seek privileged information, neither the attorney-client privilege nor the work product doctrine apply. Plaintiff further asserts that even if the information is in the possession of Jenkens & Gilchrist's outside counsel, the information is still within the control of Jenkens & Gilchrist. Finally, Plaintiff contends that Jenkens & Gilchrist has failed to produce a privilege log, as required by Fed. R. Civ. P. 45(d)(2)(A),[7] and therefore Jenkens & Gilchrist has waived its right to assert a privilege.

In its reply brief, Jenkens & Gilchrist contends that the attorney-client privilege and the work product privilege were raised in its motion to quash out of an abundance of caution because Jenkens & Gilchrist was uncertain how broadly the Court would interpret Plaintiff's subpoena. However, Jenkens & Gilchrist asserts that, given that Plaintiff clarified in its response to Jenkens & Gilchrist's motion that the only information sought in the subpoena is how the IRS calculated the $76 million penalty, Jenkens & Gilchrist no longer needs to invoke the attorney-client privilege or the work product privilege because it has no responsive documents or other information. Jenkens & Gilchrist's Reply at 3.[8] Moreover, Jenkens & Gilchrist contends that because the subpoena requests only non-privileged documents, there is no need for Jenkens & Gilchrist to provide a privilege log and it has not waived any privileges by not providing a privilege log.

Paragraph 2 of the subpoena commands Jenkens & Gilchrist "to produce and permit inspection and copying of all non-privileged documents, communications, or both relating to the matters listed in paragraph 1." Jenkens & Gilchrist's App. at 8. Therefore, the Court finds that to the extent the subpoena requests production of documents, those documents are limited to non-privileged documents and there is no basis for Jenkens & Gilchrist to invoke either the

---

[7] Plaintiff refers to the Fed. R. Civ. P., yet the rules governing this Court are the RCFC. Nevertheless, RCFC 45(d)(2) is identical to Fed. R. Civ. P. 45(d)(2)(A) and states:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

[8] Although Jenkens & Gilchrist does not point to where Plaintiff, in its response, "declared with certainty" its intention with respect to the subpoena, the Court believes that Jenkens & Gilchrist may be referring to where Plaintiff described the subpoena as one "seeking a Rule 30(b)(6) witness and documents narrowly confined to the issue of how the government calculated the I.R.C. § 6707 'civil penalty' [that Jenkens & Gilchrist] agreed to pay the IRS pursuant to the Closing Agreement." Pl.'s Mem. at 7.

attorney-client privilege or the work product doctrine. Paragraph 1 of the subpoena, however, directs Jenkens & Gilchrist to designate a person or persons to testify as to certain matters. During oral argument, Plaintiff conceded that the information it seeks in its subpoena is primarily focused on, although not limited to, how the IRS calculated the $76 million penalty. Tr. at 35-36. Because Jenkens & Gilchrist maintains that it has no documents or other information responsive to how the IRS calculated the penalty, and it consequently need not invoke either the attorney-client privilege or the work product privilege, there is no basis for the Court to quash the subpoena based on the attorney-client or the work product privilege. Should additional attorney-client or work product privilege issues arise during or after deposition, the Court will address them at that time.

Jenkens & Gilchrist further contends that information sought in the subpoena is protected under a settlement privilege. Jenkens & Gilchrist asserts that it cannot provide testimony on, or produce, the Closing Agreement because the Closing Agreement is confidential. Under the terms of the Closing Agreement, Jenkens & Gilchrist is prohibited from disclosing the agreement or its terms, subject to its termination.[9] According to Jenkens & Gilchrist, several courts have held that negotiations leading up to settlement with the government are not discoverable, the rationale being that allowing disclosure could chill settlement negotiations and ultimately settlement. Therefore, Jenkens & Gilchrist asserts that it should not be required to testify about, or produce documents relating to, paragraph 1(a) or 1(c) of the subpoena.

Plaintiff points out that Jenkens & Gilchrist does not provide any legal authority to support its claim to a settlement privilege. Plaintiff argues that there is no generalized privilege covering settlement communications and that such communications are discoverable if there is a showing of substantial need. Further, Plaintiff contends that Jenkens & Gilchrist cannot base its settlement privilege in FED. R. EVID. 408 because that rule applies to the admissibility of evidence at trial, not to whether evidence is discoverable, and the rule only excludes evidence used to prove liability for or invalidity of the claim or its amount. According to Plaintiff, the information sought in its subpoena is not likely to be offered for such a purpose. Instead, the information relates to how the IRS calculated the penalty it assessed against Jenkens & Gilchrist under I.R.C. § 6707, whether it treated the options as a single option or as separate options in making the calculation, whether the IRS assessed additional penalties against Jenkens & Gilchrist under I.R.C. § 6707, and how it calculated such penalties. Therefore, Plaintiff avers that Jenkens & Gilchrist's invocation of a settlement privilege cannot be based in FED. R. EVID. 408, and there is no legal basis to support Jenkens & Gilchrist's request for protection from the subpoena based on a settlement privilege.

The Court of Appeals for the Federal Circuit has provided little guidance on the extent to which settlement documents are protected from discovery as privileged. Further, there is no consensus among district courts on the existence of a settlement privilege. *See Matsushita*

---

[9] Jenkens & Gilchrist clarified during oral argument that there is a nondisclosure clause in the Closing Agreement itself which prevents disclosure. Tr. at 45.

*Electric Indus. Co. v. Mediatek, Inc.*, No. C-05-3148 MMC (JCS), 2007 WL 963975, at *4 (N.D. Cal. Mar. 30, 2007); *In re Subpoena Issued to Commodity Futures Trading Comm'n.*, 370 F. Supp. 2d 201, 209-10 (D.D.C. 2005). During oral argument, Jenkens & Gilchrist confirmed that it was basing its claim to a settlement privilege on FED. R. EVID. 408. Tr. at 46.

FED. R. EVID. 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The purpose of the rule is to encourage settlement. *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976); *Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, No. 98Civ.6738 (RMB)(MHD), 2000 WL 97680, at *4 n.5 (S.D.N.Y. Jan. 28, 2000); *Commodity Futures*, 370 F. Supp. 2d at 211; *Morse/Diesel, Inc. v. Fid. & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988). On its face, however, the rule is directed to admissibility of evidence at trial and does not limit discovery. *See Triax Co. v. United States*, 11 Cl. Ct. 130, 134 (Cl. Ct. 1986); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979); *Matsushita Electric*, 2007 WL 963975, at *3; *Heartland Surgical Specialty Hosp., LLC v. Midwest Div. Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *4 (D. Kan. Apr. 27, 2007); *Commodity Futures*, 370 F. Supp. 2d at 211; *Primetime 24*, 2000 WL 97680, at *4 n.5. Furthermore, the rule excludes only evidence used to prove liability for or invalidity of the claim or its amount, not evidence offered for other purposes. *See Reichenbach*, 528 F.2d at 1075; *Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2006 WL 626820, at *2 (N.D. Ill. Jan 6, 2006). Here, Plaintiff seeks documents and information during the course of discovery and is not requesting admission of evidence at trial. Moreover, as explained by Plaintiff, the evidence it seeks will not be used to prove liability for or invalidity of the claim or its amount, but rather for another purpose, namely, to show whether the IRS regarded the options as a single option or as separate options. The Court, therefore, fails to find a basis for Jenkens & Gilchrist to protect the information sought in the subpoena pursuant to FED. R. EVID. 408. As explained by one district court:

> The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these

> discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure . . . . Therefore, a party is not allowed to use Rule 408 as a screen for curtailing his adversary's right of discovery.

*Commodity Futures*, 370 F. Supp. 2d at 211 (citing Weinstein's Federal Evidence § 408.07 at 408-26).

Another possible basis for the court to find a settlement privilege is FED. R. EVID. 501, which states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

At least the Sixth Circuit has recognized the existence of a settlement privilege based on this rule. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979-80 (6th Cir. 2003). In addition, several district courts have recognized the existence of a settlement privilege by implication, without specific reference to FED. R. EVID. 501. *See, e.g.*, *Allen County v. Riley Indus., Inc.*, 197 F.R.D. 352, 353 (N.D. Ohio 2000); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990); *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 449-50 (S.D.N.Y. 1985). The Supreme Court has, however, identified a number of factors that should be considered in deciding whether to define a new privilege under FED. R. EVID. 501, including:

> (1) Is there a significant public and private interest supporting the recognition of the privilege?
> (2) Is the likely "evidentiary benefit that will result from the denial of the privilege modest"?
> (3) Is there a consensus among the states as to the existence of the new privilege?
> (4) Has Congress considered the relevant competing concerns itself and acted on the question of whether or not the information should be privileged?
> (5) Is there an historical and statutory basis for the new privilege?
> (6) Is the proposed privilege on the list of privileges that was proposed by the Judicial Conference in 1973?

*Matsushita Electric*, 2007 WL 963975, at *4 (brackets omitted) (citing *Jaffee v. Redmond*, 518 U.S. 1, 11-13 (1996); *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 189, 195 (1990); *United States v.*

*Gillock*, 445 U.S. 360, 367-68 (1980)); *Commodity Futures*, 370 F. Supp. 2d at 208. Most courts recognizing a settlement privilege have failed to carefully evaluate these factors. *Matsushita Electric*, 2007 WL 963975, at *4.[10] The Court finds the analysis in *Commodity Futures*, which evaluated each of the factors, and found no basis for the implication of a new settlement privilege, to be sound. *Commodity Futures*, 370 F. Supp. 2d at 209-12; *accord Matsushita Electric*, 2007 WL 963975, at *5-6. Accordingly, the Court finds no basis to quash the subpoena on the grounds that information sought is protected under a settlement privilege.[11]

### C. Undue Burden

Jenkens & Gilchrist argues that limiting discovery is appropriate when the burden of discovery outweighs the need. Because Jenkens & Gilchrist is a non-party to the instant litigation, it contends that the subpoena imposes an undue burden. Furthermore, Jenkens & Gilchrist argues that in March 2007 it stopped offering legal services and now operates solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. John Gilliam is the only remaining lawyer employed by Jenkens & Gilchrist. In addition to Mr. Gilliam, Roger Hayse serves as president and the firm has fifteen administrative employees. Because Jenkens & Gilchrist reduced its staff to a skeleton crew and its financial resources are limited and are being conserved for creditors, Jenkens & Gilchrist contends that Plaintiff's subpoena presents an undue burden. Any future obligations that Jenkens & Gilchrist has to the DOJ under the Settlement Agreement are the responsibility of one current employee of Jenkens & Gilchrist and one contract employee, not a large workforce. Therefore, considering its present circumstances, Jenkens & Gilchrist argues that any cost and effort required to produce documents and to prepare for and attend a deposition would unreasonably burden Jenkens & Gilchrist's staff and resources, and impede its ability to expeditiously wind up its business.

Jenkens & Gilchrist further contends that the IRS never discussed how it computed the $76 million penalty, nor shared any documents related thereto, with Jenkens & Gilchrist. Moreover, Jenkens & Gilchrist avers that IRS never disclosed to Jenkens & Gilchrist the IRS's factual and legal position on whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to payment, nor the IRS's conclusions on challenges to penalties under I.R.C. § 6707. Therefore, Jenkens & Gilchrist argues that testimony by, and documents from, Jenkens & Gilchrist will not address the issue of how the government calculated the $76 million penalty under I.R.C. § 6707, which Jenkens & Gilchrist agreed to pay. To support its arguments, Jenkens & Gilchrist provides the supplemental declaration of John

---

[10] Jenkens & Gilchrist has likewise failed to explain how any of these factors support the existence of a settlement privilege.

[11] As discussed above, however, the Court fails to see how the Closing Agreement is relevant to the litigation. Given the nondisclosure clause in the Closing Agreement itself and Plaintiff's failure to show substantial need to see the Closing Agreement, the Court will not compel Jenkens & Gilchrist to produce the Closing Agreement.

Gilliam.[12] Jenkens & Gilchrist contends that Plaintiff has provided no reasoned basis for compelling Jenkens & Gilchrist to respond to the subpoena.

Plaintiff concedes that a movant's non-party status is a factor to be considered by the Court in deciding whether to grant a motion to quash a subpoena. Yet, Plaintiff argues, Jenkens & Gilchrist is not a complete stranger to the events underlying this litigation, rather it played a major role by serving as Plaintiff's legal counsel in implementing the transactions at issue in the litigation and rendering a tax opinion with respect to the transactions. Further, Plaintiff argues that instead of complaining as to the volume of documents requested or the cost of producing the requested documents, Jenkens & Gilchrist only asserts that it lacks sufficient staff and resources to comply with the subpoena. Plaintiff contends, however, that the Settlement Agreement with the DOJ requires Jenkens & Gilchrist to remain in operation in order to fulfill numerous duties for the DOJ, including providing documents and testimony related to the DOJ's investigation. Plaintiff asserts that if Jenkens & Gilchrist has the resources to meet the requirements imposed by the DOJ, Jenkens & Gilchrist surely has the resources to comply with Plaintiff's narrowly drafted subpoena.

Plaintiff contends that it has already served a Rule 30(b)(6) subpoena on the IRS seeking similar information, but that the IRS has refused to produce the information, objecting based on prematurity, the deliberative process privilege, or some other reason.[13] Plaintiff states that it will also file a motion to compel Defendant to comply with the subpoena, but Plaintiff maintains that

---

[12] Therein, Mr. Gilliam states that Jenkens & Gilchrist has undertaken a review of electronic and hard copy documents of himself, Roger Hayse, Patrick Mitchell, and Tom Cantrill, the four persons at Jenkens & Gilchrist who were primarily involved in the discussions and negotiations with the DOJ and IRS, and found no documents describing or referring to the calculation used by the IRS to arrive at the $76 million figure. Gilliam Suppl. Decl. ¶¶ 5-6. He also states that Mr. Mitchell and Mr. Cantrill were not told how the IRS did its calculation, nor was anyone currently working for Jenkens & Gilchrist. *Id.* ¶ 7.

[13] In particular, one such Rule 30(b)(6) deposition notice requested testimony on:

> Defendant's legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in this case (Attachments 1, 2, and 3) are a single option or investment; and separately, whether for purposes of determining the "aggregate amount invested" under I.R.C. § 6707, Defendant is taking the position that each digital option contract, such as those involved in this case, are separate options or investments rather than a single option or investment.

Pl.'s App. at 38. Defendant objected to the notice on the grounds that it was premature, because the issue is the subject of expert testimony and initial expert reports were not yet due, and because inquiry into the legal contentions of the parties are properly handled through contention interrogatories, not Rule 30(b)(6) depositions. *Id.*

the information it seeks will be more difficult to obtain from the IRS than from Jenkens & Gilchrist.[14] Plaintiff argues that it is simply incredible that Jenkens & Gilchrist agreed to pay a $76 million penalty without knowing how the IRS calculated that figure. Plaintiff urges the Court to, at a minimum, require Jenkens & Gilchrist to identify which former partners, associates or employees have knowledge of the information sought in the subpoena.

The party objecting to a subpoena as unduly burdensome bears the burden of showing that the subpoena violates Rule 45. *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 206-07 (D.D.C. 2000). The party must provide specific and compelling proof that the burden is undue. *United States v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *2 (N.D. Ill. Oct. 21, 2005); *Flatow*, 196 F.R.D. at 206-07; *Long Beach Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 189 F. Supp. 589, 604 (S.D. Cal. 1960). In determining whether a subpoena causes undue burden, courts generally balance the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 190 (Fed. Cl. 2005) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *see also Morrow v. Air Ride Techs., Inc.*, No. IP-05-113, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006) (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662-63 (D. Kan. 2003)); *North Carolina Right to Live, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (quoting *Flatow*, 196 F.R.D. at 206-07); *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) (citing *United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). The fact that a deponent is not a party to the lawsuit is another factor which may be considered by the court in assessing whether there is undue burden. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987); *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007); *Wiwa*, 392 F.3d at 818; *Gray v. Cottrell, Inc.*, No. 4:05-CV-1852 (CEJ), 2006 WL 1663242, at *1 (E.D. Mo. June 12, 2006); *Morrow*, 2006 WL 559288, at * 1; *United States v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005); *N. C. Right to Live, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). Moreover, Rule 45 must be read in light of Rule 26. *Heat & Control*, 785 F.2d at 1023; *St. Matthew Publ'g, Inc. v. United States*, 41 Fed. Cl. 142, 145 (1998); *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998). Accordingly, additional factors to be considered in the undue burden analysis include those set forth in Rule 26(b)(2). *Linder*, 180 F.R.D. at 174.

In general, modification of a subpoena is preferred to quashing it. *Wiwa*, 392 F.3d at 818; *Mariner Health Care, Inc. v. Indemnity Ins. Co. of N. Am.*, No. Civ.A.04-MC-00180, 2005 WL 44521, at *2 (E.D. Pa. Jan. 7, 2005); *Linder*, 180 F.R.D. at 176; *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998). Courts are particularly sensitive to limiting costs imposed on third parties and may require a party serving a subpoena on a third party to pay the reasonable

---

[14] At oral argument, Plaintiff explained that Defendant would likely invoke I.R.C. § 6103, arguing that it cannot disclose confidential taxpayer information. Tr. at 19-20.

costs of responding to the subpoena. *Watts*, 482 F.3d at 509; *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 164 F.R.D. 623, 628 (E.D. Pa. 1996); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 339-40 (N.D. Cal. 1995); *Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 264-65 (D. Del. 1992).

Here, the Court has already determined that the information requested in the subpoena, other than the Closing Agreement, is relevant to the litigation and that Plaintiff has a need for the information. The request is not overly broad and the information responsive to the request is adequately described. The fact that Jenkens & Gilchrist is a third party and in the process of dissolution makes responding to the subpoena somewhat burdensome. Yet, the Court recognizes that Jenkens & Gilchrist was not a complete stranger to the litigation and was in fact a major player in the transactions at stake. The Court also notes that, because the IRS would likely invoke I.R.C. § 6103, the information requested in the subpoena is not "obtainable from some other source that is more convenient, less burdensome, or less expensive . . . ." RCFC 26(b)(2)(i). The Court fails to understand how responding to the subpoena would cause excessive cost, especially since Jenkens & Gilchrist maintains that it has few, if any, responsive documents or other information. Hence, the Court concludes that there is no basis to quash the subpoena and that Jenkens & Gilchrist should be compelled to respond to the subpoena at its own expense.[15]

## III. Conclusion

Jenkens & Gilchrist Motion to Quash, and Motion for Protection from, Plaintiff's Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents is DENIED. Plaintiff's Cross-Motion to Compel Jenkens & Gilchrist to Comply with the Subpoena is GRANTED with the limitations discussed above.

The Court ORDERS the parties to file a Joint Motion for Protective Order, with a proposed draft protective order attached, on or before **August 30, 2007**.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

[15] At oral argument, Plaintiff argued for the first time that it interpreted "control," with respect to production of documents in response to a RCFC 45 subpoena, broadly to include documents that the responding party has the legal right to obtain upon demand. Tr. at 56. Therefore, Plaintiff contends that Jenkens & Gilchrist should be required to request documents from the IRS in order to fully respond to Plaintiff's subpoena. *Id.* at 52-56. Because this issue has not been briefed by the parties, the Court will not address it at this time. Should Plaintiff determine after deposition that there are responsive documents or other information within Jenkens & Gilchrist's "control" that are not being produced, Plaintiff may file a motion to compel in which it addresses the meaning of "control."

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, Plaintiff, | § | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, Defendant. | § | |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Plaintiffs JZ Buckingham Investments, LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, will take the deposition of Jenkens & Gilchrist, P.C., pursuant to RCFC 30(b)(6) and 45 The deposition will be conducted on May 18, 2007 at 9:00 a.m., at the offices of Meadows, Collier, Reed, Cousins & Blau, L.L.P, 901 Main Street, Suite 3700, Dallas, Texas 75202, or at another location determined by the parties

The deposition will be recorded by stenographic means and will continue from day to day until completed, subject to such adjournments as may be agreed upon by counsel.

The witness is being commanded to testify to the matters set forth in and to produce the materials listed on Exhibit A to the Subpoena attached hereto

351262



EXHIBIT 2

Respectfully submitted,

By: [signature]

Joel N Crouch
Texas State Bar No 05144220
M Todd Welty
Texas State Bar No 00788642
Michael E. McCue
Texas State Bar No. 13494150
Anthony P Daddino
Texas State Bar No 24036434

MEADOWS, COLLIER, REED
COUSINS & BLAU, L.L.P
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier com
twelty@meadowscollier com
mmccue@meadowscollier com
adaddino@meadowscollier.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2007, I served the foregoing Notice of Deposition on the below-listed counsel:

David M. Steiner, Esq. *(via Certified Mail)*
United States Department of Justice
Tax Division
P.O Box 55 Ben Franklin Station
Washington, D C 20044

Joseph Pitzinger, Esq *(via Certified Mail)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F Anthony Paganelli, Esq. *(via FedEx)*
Sommer Barnard, P C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

JOEL N CROUCH

351262

OAO88 (Rev. 1/94) SUBPOENA

Issued by the

# UNITED STATES COURT OF FEDERAL CLAIMS

JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership

**SUBPOENA**

V

United States of America

Case Number:[1] **05-231 T**

TO: **JENKENS & GILCHRIST (as more fully defined in Exhibit A attached hereto)**

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

X YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above referenced case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Meadows, Collier, Reed, Cousins & Blau, 901 Main Street #3700, Dallas, TX 75202** | **May 18, 2007 at 9:00 a.m.** |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below

**See Attached.**

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | | DATE |
|---|---|---|
| [signature] | Attorney for Plaintiffs | 4-25-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joel N Crouch, Esq
901 Main Street, Suite 3700, Dallas, TX 75248
(214) 744-3700

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev 1/94) SUBPOENA

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________ ______________________
DATE SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

______________________

RCFC 45

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include but is not limited to lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books papers documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition hearing or trial

(B) Subject to paragraph (d) (2) of this rule a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises If objection is made the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued If objection has been made the party serving the subpoena may upon notice to the person commanded to produce move at any time for an order to compel the production Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides is employed or regularly transacts business in person, except that subject to the provisions of clause (c) (3) (B) (iii) of this rule such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies. or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research development or commercial information or

(ii) requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial the court may to protect a person subject to or affected by the subpoena quash or modify the subpoena. or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials the claim shall be made expressly and shall be supported by a description of the nature of the documents communications or things not produced that is sufficient to enable the demanding party to contest the claim

**Exhibit A**

THIS SUBPOENA NAMES A CORPORATION, JENKENS & GILCHRIST, P.C. ("JENKENS & GILCHRIST"), AS THE DEPONENT.

1. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, JENKENS & GILCHRIST is directed to designate a person or persons to testify on its behalf regarding any or all transactions that were known as COBRA, offered by Ernst & Young LLP, and opined to by JENKENS & GILCHRIST. Specifically, the designated person or persons is directed to testify as to matters, which include, but may not be limited to:

   a. JENKENS & GILCHRIST's relationship before, during, and after the period of November-December 1999 (the "Period") with any or all of the following entities and individuals: GW Tesoro Investments LLC, BJM Tesoro Drive Investments LLC, SA Tesoro Investment Partners, Tesoro Drive Partners, SA Tesoro Investors, Inc., Tesoro Drive Investors, Inc., Billy J. McCombs, Gary Woods;

   b. JENKENS & GILCHRIST's role in transactions (the "Transactions") entered into during the Period by any or all of the above-referenced entities and individuals, including, but not limited to, its tax opinions dated on or about January 31, 2000 that are related to the above-styled litigation;

   c. JENKENS & GILCHRIST's fees paid by or on behalf of any or all of the above-referenced entities and individuals in connection with the Transactions, which would include how those fees were calculated, agreed to, and paid;

   d. JENKENS & GILCHRIST's relationship with Deutsche Bank AG and Deutsche Bank Securities, Inc. D/B/A Deutsche Bank Alex.Brown; and

   e. JENKENS & GILCHRIST's relationship with Ernst & Young LLP.

349314v1

Plaintiffs request that JENKENS & GILCHRIST provide to Plaintiffs at least seven (7) days before the date of the deposition (1) the names and titles of the persons it will designate to give testimony and (2) summaries of the areas in which each designated person will give testimony.

2. Pursuant to Rule 45 of the Federal Rules of Civil Procedure, JENKENS & GILCHRIST is commanded to produce and to permit inspection and copying of all documents, communications, or both relating to the matters listed in paragraph 1.

a. Please produce the documents in accordance with the following instructions:

i. The documents sought by this Subpoena shall include all documents (as defined herein) within your possession, custody, control or access, or within the possession, custody, control or access of any of your representatives (as defined herein)

ii. This Subpoena is continuing in nature, and if you or your agents or representatives acquire additional documents regarding this Subpoena, all such subsequently acquired documents should be made available to Plaintiffs' counsel

iii. If you at any time had possession or control of a document called for under this Subpoena, and if such document has been lost, destroyed or is not presently in your possession or control, you shall describe in writing, the document, the date of its loss, destruction, purge or separation from possession or control, and the circumstances surrounding its loss, destruction, purge or separation from possession or control.

iv. The documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in this Subpoena

v. The selection of documents and files and other sources shall be performed in such a manner as to insure that the file or other source from which a document is obtained

may be identified.

vi In the event that you contend that any document is privileged or otherwise not subject to production or inspection, you are requested to identify each such document, in writing, by date, author, addressee, and general subject matter, and to identify all persons who received any copy thereof or otherwise obtained access thereto. Also, you are requested to state the basis for your assertion of privilege or other grounds for exclusion with respect to each document claimed to be privileged or otherwise not subject to production.

vii Whenever appropriate, the singular form of a word shall be interpreted as plural, and the masculine gender shall be deemed to include the feminine

b The requested documents should be construed using the following definitions:

i "Documents" as used herein shall mean all writings and recordings, including the original and non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, telegrams, receipts, returns, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including without limitation, photographs,

charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical, or electric records or representations of any kind (including without limitation, computer files and programs, tapes, cassettes, discs, recordings), including metadata, drafts, alterations, modifications, changes of memoranda, etc., to any of the foregoing

ii "You," "your," and "yours," as used herein shall refer to JENKENS & GILCHRIST, and its representatives and all other past and present representatives of such in their representative capacity

iii "Communication" as used herein shall mean any contact between or among JENKENS & GILCHRIST, its employees, agents or representatives regarding the matters listed in paragraph 1. Further, Communication shall include but not be limited to, all documents (as defined above), telephone or personal conversations, meetings, conferences and discussions, at any time or place, and under any circumstances whatsoever, whereby information of any nature was stated or in any manner transmitted or transferred

iv. "Entity" as used herein shall mean a corporation, partnership, association, agency, governmental body (or any division, department or unit thereof), or any other legal entity other than a natural person.

v "Representative" as used herein shall mean any and all present or former agents, employees, servants, officers, directors, attorneys, accountants, consultants and other persons or entities acting or purporting to act on behalf of the person or entity referred to

vii. "Person" as used herein shall mean a natural person other than an entity and shall

be construed to include groups of natural persons.

viii "Relate to," "relates to," and "relating to" mean, consist of, refer to, pertain to, reflect, evidence, or be in any way logically or factually connected with the matter discussed.

3 The deposition will be recorded stenographically and on audio tape. The deposition will be taken before an officer authorized to administer oaths and take testimony pursuant to Rule 28 of the Federal Rules of Civil Procedure and will continue from day to day during regular business hours until completed

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**OBJECTIONS OF THE UNITED STATES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

The defendant, the United States of America, by its undersigned counsel, hereby objects to Plaintiff's subpoena commanding that the United States produce a witness or witnesses pursuant to Rule 30(b)(6) of the United States Court of Federal Claims on the grounds that each and every matter listed on Exhibit A of the Subpoena is an improper subject for such testimony.

At the outset, the United States points out that, when a Rule 30(b)(6) subpoena is procedurally deficient in its entirety, as is Plaintiff's, it is procedurally preferable for the requested party to serve objections which the parties may then discuss, rather than immediately requesting judicial intervention by means of a protective order. If the parties cannot come to an accommodation and judicial intervention becomes the only alternative, the requesting party may then move to compel and the requested party may cross-move for a protective order. *See, e.g.*, *Boston Edison Co. v. United States*, 2007 U.S. Claims LEXIS 54 at 28 (Feb. 26, 2007).

2452757.1

EXHIBIT
tabbies
3

**Specific Objections**

**Matters 1.a. and 1.b.**

Matter 1.a. requests:

> Defendant's legal and factual position with regard to the issuance of Treas. Reg. § 1.752-6T on June 23, 2003, and the promulgation of Treas. Reg. § 1.752-6 on May 23, 2004; the specific application of Treas. Regs §§ 1.752-6T and 1.752-6 to the above-styled litigation; whether prior to the issuance of these regulations there was substantial authority for the reporting position that a contingent obligation did not constitute a liability within the meaning of I.R.C. § 752; and separately, whether these regulations were issued to enhance Defendant's litigation position with respect to transactions described in Notice 2000-44.

Matter 1.b. requests "Defendant's legal and factual position with regard to Treas. Reg. § 1.701-2 and its specific application to the above-styled litigation."

Plaintiff's requests in these matters are improper as they are pure issues of law for the Court to decide in its analysis and application of the governing legal authorities. *See Neptune v. United States*, 38 Fed. Cl. 510, 513 (1997), *aff'd* 178 F.3d 1306 (Fed. Cir. 1998). Moreover, the thoughts of those responsible for the promulgation of regulations has, as this Circuit has ruled, nc probative value. *Honeywell, Inc. v. United States*, 661 F.2d 182, 185 (Ct. Cl. 1982). The meaning and reasons for promulgation of regulations are not a proper subject for deposition because "the IRS must speak with a single voice, that is, through formal statements of policy such as regulations and revenue rulings. . . . Accordingly, statements by individual IRS

employees cannot bind the Secretary." *Sidell v. Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000) *See also Connecticut General Life Insurance Co. v. Commissioner*, 177 F.3d 136, 145 (3d Cir), *cert. denied*, 528 U.S. 1003 (1999); *Armco Corp. v. Commissioner*, 87 T.C. 865, 867-68. The testimony of individual officials does not represent agency interpretations. *Vons Cos. v. United States*, 51 Fed. Cl. 1, 21 (2001). Consequently, the views of IRS employees are irrelevant in construing Treasury Regulations; and, as a consequence, the depositions of the IRS employees on such subjects can not lead to the discovery of relevant information.

Nor can a party somehow elide these basic principles of law by requiring a party to designate a witness pursuant to Rule 30(b)(6) to testify on such irrelevant subject matter. In a case involving a tax shelter similar to this one, the Court of Federal Claims recently granted a protective order barring the deposition of three IRS officials involved in the drafting of certain IRS Treasury Regulations and Notices on subjects very similar to those set forth here, holding that testimony on such subject matter is not probative and therefore was irrelevant. *See* Order of the Court of March 19, 2007, in *Evergreen Trading v. United States*, No. 06-123 T. A copy of this order is attached.

Even if such testimony were relevant, deliberative process privilege would bar testimony regarding the promulgation and application of regulations because "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705 (1974). Therefore, privilege protects the details of such decision making from disclosure. *See generally Marriott International Resorts, LP v. United States*, 437 F.3d 1302 (Fed. Cir. 2006).

**Matter 1.c.**

> Defendant's legal and factual position regarding whether each of the sold and purchased digital options contracts at issue in this case (Attachments 1, 2, and 3) are a single option or investment; and separately, whether for purposes of determining the "aggregate amount invested" under I.R.C. § 6707, Defendant is taking the position that each digital option contract, such as those involved in this case, are separate options or investments rather than a single option or investment.

The United States objects to this matter because it is premature. Whether or not the United States will be taking the position that the options were a single option or investment for purposes of any legal issue presented in this case will be the subject of expert testimony, and initial expert reports are not due until May 15. Moreover, to the extent the subject matter of this request seeks to inquire into the legal contentions of the United States, it is equally improper since discovery into the contentions of parties are properly examined through contention interrogatories, not Rule 30(b)(6) depositions. *See Exxon Research Engineering Co. v. United States*, 44 Fed. Cl. 597 (August 27, 1999).

**Matter 1.d.**

> The names of tax advisors and firms that issued tax opinions regarding transactions that are the same as, or substantially similar to, those set forth in I.R.S. Notice 2000-44, 2000-2 C.B. 255 (August 14, 2000) and whose opinions concluded that there was substantial authority for, or that taxpayers would more-likely-than-not prevail on the merits if challenged by the Internal Revenue Service on, the position that contingent obligations are not liabilities within the meaning of I.R.C. § 752. This request is limited to those advisors or firms whose opinions Defendant has rejected as a basis for the reasonable cause defense to I.R.C. § 6662 penalties.

The United States objects to this matter on the grounds that it is not a proper subject for inquiry, is irrelevant to any issue in this litigation, is protected from disclosure by 26 U.S.C. § 6103(a) and also is protected from disclosure by one or more privileges, including the attorney client and the deliberative process privilege.

The legal opinions that are the subject matter of this request were not prepared, reviewed or signed by the United States. We have already provided you with any legal opinions involving COBRA transactions obtained by us through discovery. To the extent that there may be legal opinions involving non COBRA transactions in the possession, custody, or control of the United States or any of its various agencies, including the IRS, the names and firms that issued such non COBRA tax opinions cannot possibly lead to any relevant evidence. Moreover, to the extent that such information would be in the possession of the IRS, this information would be protected from disclosure by 26 U.S.C. § 6103(a). Finally, to the extent this subject matter seeks testimony as to the names and firms which issued legal opinions that the United States, and specifically the IRS, have determined not to have constituted a basis for a reasonable cause defense for accuracy related penalties under Section 6662, it is equally improper. This is because it would be seeking testimony that is irrelevant, protected from disclosure under 26 U.S.C. § 6103(a), and also subject to one or more privileges, including the attorney client and the deliberative process privilege.

**Matter 1.e.**

The determination to impose I.R.C. § 6662 penalties in this case.

The United States objects to this matter on the grounds that whether the IRS properly imposed penalties according to I.R.C. § 6662 requires a trial *de novo*. *See Estate of Kluener v. Commissioner*, 154 F.3d 630, 637 (6th Cir. 1998). A review of audit determinations has no relevance. In *Nordberg v. United States*, 1996 U.S. Dist. LEXIS 5259; 96-1 U.S. Tax Cas. (CCH) P50,295; 77 A.F.T.R.2d (RIA) 2158 (D.Mass. 1996) (copy attached), the court articulated in some detail why inquiry into the reasoning of the IRS for its determinations is not at all relevant in any ensuing tax litigation:

> The discovery does not relate to the facts existing during 1987, upon which the IRS determinations were based. In light of the principle that a challenge to a tax determination results in a trial de novo rather than a review by this Court of an existing administrative record, the defendants' discovery requests fail to satisfy the mandate of *Fed.R.Civ.P. 26(b)* that information sought to be discovered be relevant or "reasonably calculated to lead to the discovery of admissible evidence." See, e.g., *Lewis v. Reynolds, 284 U.S. 281, 283, 76 L. Ed. 293, 52 S. Ct. 145 (1932); Ruth v. United States, 823 F.2d 1091, 1094 (7th Cir. 1987)* ("courts conduct a de novo review of the... assessment"); *Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974)* (a court's determination as to a taxpayer's liability "must be based on the merits of the case and not any previous record developed at the administrative level").
>
> The information sought by defendants which forms the basis for the motion to compel is, therefore, evidence which would not be relevant to determining their 1987 tax liability. Information about people who participated in the audit is not relevant, nor are notes made by IRS employees during the audit. Indeed, the audit of the Nordbergs' 1987 tax return took place well after the tax year at issue. In short, the information requested by defendants has no bearing on the sole issue in the case at bar because the Nordbergs' ultimate tax liability is not influenced by the IRS' conduct or findings during the audit. In rejecting a similar argument, one District Court denied a motion to compel upon observing that:
>
>> the opinions, impressions, conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment against [the taxpayer] ....Resolution of the[] issues depends solely on application of the pertinent law to the facts of [the] case... The opinions of individual IRS agents regarding their propriety are immaterial.

*Garity v. United States, 81-2 U.S. Tax Cas. (CCH) P 9599, 1980 WL 1765* at *2 (E.D. Mich. May 20, 1980).

**Matter 1.f.**

Defendant's discovery responses in the above-styled litigation.

The United States objects to this matter because RCFC requires that the requestor "describe with reasonable particularity the matters on which examination is requested." Plaintiff has not given any indication what it wants to ask in respect to Defendant's discovery responses.

## CONCLUSIONS

As the subpoena is completely improper, the United States objects to it in its totality and will not provide a witness or witnesses as all matters listed by Plaintiffs are improper as a subject of a RCFC 30(b)(6) deposition.

DENNIS M. DONOHUE
Attorney of Record

Chief Senior Litigation Counsel
U.S. Department of Justice - Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

2452757.1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2007, a copy of the foregoing OBJECTIONS OF THE UNITED STATES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE was mailed by First Class U.S. mail postage paid, and properly addressed to the following:

F. Anthony Paganelli, Esq.
SOMMER BARNARD, P.C.
One Indiana Square, Suite 3500
Indianapolis, IN 46204

Joseph Pitzinger, Esq.
United States Department of Justice
717 N. Hardwood St., Suite 400
Dallas, TX 75201

Jonathan Blacker, Esq.
United States Department of Justice
717 N. Hardwood St., Suite 400
Dallas, TX 75201

Joel N. Crouch, Esq.
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

DAVID M. STEINER
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892

IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, | § | |
| Plaintiff, | § | CASE NO. 05-231 T Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, | § | |
| Defendant. | § | |

**NON-PARTY JENKENS & GILCHRIST'S MOTION TO QUASH AND MOTION FOR PROTECTION FROM PLAINTIFF'S SUBPOENA FOR A RULE 30(b)(6) DEPOSITION AND FOR PRODUCTION OF DOCUMENTS**

Non-party Jenkens & Gilchrist, a Professional Corporation (Texas) ("J&G"), moves pursuant to the Rules of the Court of Federal Claims 26(b)(2) and 45(c)(3)(A) to quash the subpoena served by Plaintiff JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership and for a protective order under Rules 26(c) and 45(c)(3)(A). *See Attachment 1 to J&G's Brief in Support of Motion to Quash and Motion for Protection* (App. 2-11 ). These motions are based upon the following grounds.

In March 2007, J&G stopped offering legal services. John Gilliam, J&G's in-house counsel since 2004, is the only remaining lawyer employed by J&G. The firm now continues to operate solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. J&G has limited financial resources and is attempting to conserve them for the benefit of its creditors. To that end, J&G has kept only enough staff to quickly and efficiently wind down the affairs of the Firm.

At the end of March 2007, J&G entered into settlement agreements with the Department of Justice through the United States Attorney's Office for the Southern District of New York



EXHIBIT 4 tabbies

("DOJ") and the Internal Revenue Service ("IRS"), which resolved government investigations into J&G's involvement in certain tax shelters. The settlement agreement with the IRS ("Closing Agreement") is subject to a confidentiality agreement.

Shortly after the government announced the settlements, Plaintiff served the subpoena, which requires the production of the Closing Agreement and information relating to that settlement. The subpoena specifically seeks:

- testimony about and a copy of the Closing Agreement and other documents relating to the Closing Agreement (Subpoena No. 1(a))(App. 7);
- testimony and documents about the IRS's legal and factual positions on the calculation of penalties under certain sections of the Internal Revenue Code (Subpoena No. 1(b)) (App. 7);
- testimony and documents on whether the IRS assessed, threatened to assess or provided computations of a potential penalty under I.R.C. § 6707 prior to J&G's agreement to settle (Subpoena No. 1(c)) (App. 8);
- testimony and documents on the IRS's position as to whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to its payment (Subpoena No. 1(d)) (App. 8); and
- testimony and documents on whether J&G concluded it had to pay a penalty under I.R.C. § 6707 prior to challenging it in court (Subpoena No. 1(d)) (App. 8).

The subpoena should be quashed and a protective order should be granted because responding to the subpoena would be unduly burdensome and would require J&G to disclose the terms of the Closing Agreement along with confidential documents and information relating to the Closing Agreement, all of which are irrelevant to Plaintiff's claims. To the extent J&G has information other than the Closing Agreement that is responsive to the subpoena, that information is protected from disclosure by the attorney-client privilege and attorney work product exemption.

For the foregoing reasons, which are discussed in J&G's brief in support of its motion, J&G requests that the Court grant the motion to quash and motion for protection and grant J&G such other relief to which it is entitled.

Respectfully submitted,

By: S/ Robert J. Wagman, Jr.

Robert J. Wagman, Jr.
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400
robert.wagman@bakerbotts.com
202.639.7700
202.639.7890 (telecopy)

COUNSEL FOR JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (TEXAS)

Dated: May 16, 2007

IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, | § | |
| | § | CASE NO. 05-231 T |
| Plaintiff, | § | Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, | § | |
| Defendant. | § | |

**NON-PARTY JENKENS & GILCHRIST'S BRIEF IN SUPPORT OF MOTION TO QUASH AND MOTION FOR PROTECTION FROM PLAINTIFF'S SUBPOENA FOR A RULE 30(b)(6) DEPOSITION AND FOR PRODUCTION OF DOCUMENTS**

Non-party Jenkens & Gilchrist, a Professional Corporation (Texas) ("J&G"), moves pursuant to Rules of the Court of Federal Claims 26(b)(2) and 45(c)(3)(A) to quash the subpoena served by Plaintiff JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership and for a protective order under Rules 26(c) and 45(c)(3)(A). The subpoena, *see Attachment 1* (App. 2-11), should be quashed and protection should be granted because responding to the subpoena would be unduly burdensome and would require J&G to disclose the terms of a confidential settlement agreement with the Internal Revenue Service ("Closing Agreement") along with confidential documents and information relating to the Closing Agreement, all of which are irrelevant to Plaintiff's claims

## I. Introduction

Amid the reports of office closings and lawyers leaving, it became common knowledge in recent months that J&G was close to dissolution. In March 2007, J&G stopped offering legal services *See* Declaration of John Gilliam ¶ 2 (attached as Attachment 2) ("Gilliam Decl.")

(App. 12-45). John Gilliam, J&G's in-house counsel since 2004, is the only remaining lawyer employed by J&G. *Id.*

The firm now continues to operate solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. Gilliam Decl. at ¶ 3 (App. 13-14). J&G has limited financial resources and is attempting to conserve them for the benefit of its creditors. To that end, J&G has kept only enough staff to quickly and efficiently wind down the affairs of the Firm. In addition to Gilliam, J&G has a President, Roger Hayse, who is not a lawyer, and about 15 administrative employees, who are assisting in the process of liquidating the firm. *Id.*

At the end of March 2007, J&G entered into settlement agreements with the Department of Justice through the United States Attorney's Office for the Southern District of New York ("DOJ") and the Internal Revenue Service ("IRS"). The settlements resolved government investigations into J&G's involvement in certain tax shelters. *See* Gilliam Decl. ¶ 7 (App. 14-15) and Exhibits 1 - 3. These settlements were announced by the DOJ and IRS on March 29, 2007. Gilliam Decl. at Exhibits 1 and 3 (App. 20-23 and App. 44-45).

Shortly after the announcement, Plaintiff served the subpoena, which requires the production of the settlement agreement with the IRS ("Closing Agreement") and information relating to that settlement. Gilliam Decl. ¶ 11 (App. 16-17). Specifically, the subpoena seeks:

- testimony about and a copy of the Closing Agreement and other documents relating to the Closing Agreement (Subpoena No. 1(a)) (App. 7);
- testimony and documents about the IRS's legal and factual positions on the calculation of penalties under certain sections of the Internal Revenue Code (Subpoena No. 1(b)) (App. 7);
- testimony and documents on whether the IRS assessed, threatened to assess or provided computations of a potential penalty under I.R.C. § 6707 prior to J&G's agreement to settle (Subpoena No. 1(c)) (App. 8);

- testimony and documents on the IRS's position as to whether a penalty under I.R.C. § 6707 could be challenged administratively or in court prior to its payment (Subpoena No. 1(d)) (App. 8); and

- testimony and documents on whether J&G concluded it had to pay a penalty under I.R.C. § 6707 prior to challenging it in court (Subpoena No. 1(d)) (App. 8)

*See* Attachment 1 at ¶¶ 1 and 2 (App. 7-8).

The Court should quash the subpoena and grant J&G protection because responding to the subpoena would require the disclosure of irrelevant, protected information and would subject J&G to undue burden.

## II. ARGUMENT

J&G's motion to quash or for a protective order must be considered in light of the overarching policy that "'non-party status' is a significant factor . . . in determining whether the burden imposed by a subpoena is undue." *United States v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, *4-5 (N.D. Ill., Oct. 21, 2005); *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). "[C]oncern for the unwanted burden thrust upon non-parties is a factor [given] *special weight*" by courts in balancing the needs of the competing interests. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (emphasis added); *Gray v. Cottrell, Inc.*, 2006 WL 1663242, *1 (E.D. Mo. June 12, 2006). Limiting discovery is appropriate when the burden of providing the discovery outweighs the need for it. *Leake*, 231 F.R.D. at 51.

### A. The Closing Agreement with the IRS and negotiations of its terms are protected by confidentiality provisions.

J&G cannot give testimony about or produce the Closing Agreement or other documents relating to it because the agreement and its terms are confidential. Gilliam Decl. ¶¶ 8-9, 13 (App. 15, 17). J&G is prohibited from disclosing the agreement or any information relating to

the terms of the agreement. *Id.* Violating this prohibition could lead to an event of default under both the Closing Agreement and the settlement agreement with the DOJ and result in the termination of those agreements. The loss of these settlements would have serious adverse consequences to J&G. *Id.*

As demonstrated by the IRS's announcement, the Closing Agreement is not even relevant to Plaintiff's claim:

> The Internal Revenue Service today announced that it has reached a settlement with the law firm of Jenkens & Gilchrist, which agreed that they are subject to a penalty of $76 million. The penalty stems from the firm's promotion of abusive and fraudulent tax shelters and violations of the tax law concerning tax shelter registration and maintenance and turnover to the IRS of tax shelter investor lists.

Attachment 2 at Exhibit 3 (App. 45). According to this IRS announcement, the Closing Agreement relates to penalties for violations of tax laws in promoting tax shelters and failing to provide certain information to the IRS. Plaintiff seeks to overturn the IRS's disallowance of the benefit of Plaintiff's tax shelter, which has nothing to do with penalties assessable against J&G. J&G's settlement with the IRS, then, cannot possibly affect Plaintiff's claims. *See Gray*, 2006 WL 1663242, *1 (E.D. Mo. June 12, 2006) (quashing subpoena in part because discovery sought was irrelevant to plaintiffs' claims).

The only testimony Gilliam can provide about the Closing Agreement that is not privileged or confidential is testimony about Gilliam's discussions with the IRS, all of which were limited to J&G's need for a global settlement and J&G's financial situation, its continued viability, and its cooperation with the Government. Gilliam Decl. ¶ 8, 12 (App. 15, 17). Discovery of these matters will not further any claims or defenses in the case and are, thus, also irrelevant to Plaintiff's claim.

Several courts have held that negotiations leading up to a settlement with the Government are not discoverable. *See, e.g., United States v. Bleznak*, 153 F.3d 16, 20 (2d Cir. 1998) (settlement memorandum provided by DOJ to company under investigation not discoverable); *Clark v. Experian Info. Solutions, Inc.*, No. 03, 7882, 2006 WL 626820, *6 (N.D. Ill. Mar. 8, 2006) (documents reflecting negotiations with FTC, including offers, counteroffers, acceptances, drafts of proposed agreed order, not discoverable because they "may contain the type of candid 'give and take discussion' that courts have protected from discovery"); *see also Allen County v. Reilly Indus.*, 197 F.R.D. 352, 354 (N.D. Ohio 2000) (settlement negotiation letters with civil defendant not discoverable). The rationale behind these decisions is straightforward – requiring disclosure of negotiations with the government in later civil cases may chill settlement negotiations and settlements themselves. *Clark*, 2006 WL 626820, *3.

Accordingly, J&G should not be required to testify about or produce documents responsive to Numbers 1(a) and 1(c) of the subpoena.

**B. J&G does not have discoverable information on the remaining subject matters identified in the subpoena.**

Plaintiff seeks information about the method by which the IRS computed the penalty announced in the News Release, the IRS's position on challenges to the penalty, and J&G's conclusions about challenges to the penalty. *See* Attachment 1 at 1(b) - (e) (App. 7-8). None of the information J&G possesses about these matters is discoverable because it is protected by the attorney-client privilege and the work product exemption.

With respect to the information about the IRS's legal and factual positions on the calculation of the penalty – as described in Numbers 1(b) and (c) – the only knowledge J&G has about these matters is based on legal advice from its outside counsel, Davis Polk & Wardwell. Gilliam Decl. ¶ 13 (App. 17). The IRS never discussed the computation of the penalty or any of

the other matters described in Number 1(b) with J&G. *Id.* Likewise, the IRS never shared any documents with J&G on those subject matters. *Id.* The only documents responsive to Number 1(b) are protected from disclosure by the attorney-client privilege and work product exemption.

With respect to the information sought in Number 1(d) of the subpoena – the IRS's legal and factual position on whether a penalty under § 6707 could be challenged administratively or in court prior to its payment – the IRS never disclosed to J&G its position on this subject matter either orally or in writing. Gilliam Decl. ¶ 15 (App. 18). Any documents relating to the information in Number 1(d) would be protected from disclosure by the attorney-client privilege and work product exemption. *Id.* This information also is irrelevant to whether the IRS properly or lawfully disallowed Plaintiff's tax shelter.

With respect to the information sought in Number 1(e) of the subpoena – J&G's conclusions on challenges of penalties under § 6707 – the only information that J&G has is based upon discussions among Gilliam, as in-house counsel for J&G, members of J&G's Board of Directors, and J&G's outside counsel. Gilliam Decl. ¶ 16 (App. 18). Any documents relating to the matters described in Number 1(e) would be protected from disclosure by the attorney-client privilege and work product exemption. *Id.* Further, this information like the other information sought is irrelevant to Plaintiff's claims.

### C. J&G does not have the financial or staffing resources to respond to Plaintiff's subpoena.

J&G's staff has been reduced to a skeleton crew who are focused on liquidating the firm's assets, satisfying obligations to creditors, and closing out all outstanding business matters. Gilliam Decl. ¶ 3 (App. 13-14). J&G's financial resources are limited and are being conserved for the benefit of creditors. *Id.* Preparing for a deposition and producing documents will tax J&G's staff and finances and hinder its ability to expeditiously wind up J&G's affairs. *Id.* The

effort to respond to the subpoena will be unduly burdensome to J&G and should not be required given the lack of relevance of the discovery sought. *See e.g.*, *Gray*, 2006 WL 1663242, at *1.

## III. CONCLUSION

Requiring J&G to respond to the subpoena would inflict undue burden on J&G contrary to Rules 26 and 45. None of the information is relevant to Plaintiff's case and the non-privileged information in J&G's possession is confidential pursuant to the Closing Agreement with the IRS. For the foregoing reasons, the Court should grant J&G's motion to quash and motion for protection.

Respectfully submitted,

By: S/ Robert J. Wagman, Jr.

Robert J. Wagman, Jr.
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400
robert.wagman@bakerbotts.com
202.639.7700
202.639.7890 (telecopy)

COUNSEL FOR JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (TEXAS)

Dated: May 16, 2007

**NON-PARTY JENKENS & GILCHRIST'S CERTIFICATE OF CONFERENCE**

The undersigned counsel certifies that a reasonable effort was made to reach agreement with counsel for Plaintiff on the matters set forth in Non-Party Jenkens & Gilchrist's Motion to Quash and Motion for Protection From Plaintiff's Subpoena for a Rule 30(b)(6) Deposition and for Production of Documents. An agreement could not be reached. In particular, several conversations have occurred between Jenkens & Gilchrist's counsel, Mary Scott and Rod Phelan, and Plaintiff's counsel, Todd Welty and Joel Crouch between April 11 and May 10, 2007. The last conversations occurred on Thursday, May 10, 2007 between Jenkens & Gilchrist's counsel, Mary Scott, and Joel Crouch, counsel for Plaintiff.

Respectfully submitted,

By: S/ Robert J. Wagman, Jr.
Robert J. Wagman, Jr
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400
robert.wagman@bakerbotts.com
202.639.7700
202.639.7890 (telecopy)

COUNSEL FOR JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (TEXAS)

Dated: May 16, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing documents were served through the Court of Federal Claims ECF System, on all counsel of record on May 16, 2007.

S/ Robert J. Wagman, Jr.
Robert J. Wagman, Jr.

**IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership,** | § | |
| **Plaintiff,** | § | **Case No. 05-231 T** |
| | § | **Chief Judge Edward Damich** |
| **v.** | § | |
| **United States of America,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS**

Plaintiff, JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, by its undersigned attorneys, and pursuant to the Rules of the United States Court of Federal Claims 26(b)(1) and 45(c)(2)(B), move to compel Jenkens & Gilchrist ("J&G") to comply with Plaintiff's subpoena for a Rule 30(b)(6) deposition and production of documents. Plaintiff believes the issues implicated by this Motion are central to the substantive issues before the Court. Thus, Plaintiff requests oral argument if the Court is inclined to deny discovery on the subjects of this Motion. In support of its motion, Plaintiff states the following:

1. Plaintiff served a Rule 30(b)(6) subpoena on J&G on April 25, 2007, seeking information regarding how the IRS calculated the $76 million civil penalty it assessed in connection with J&G's role in COBRA and other transactions.

2. The subpoena consists of five requests that are narrowly confined to that issue, which is directly relevant to whether the IRS treats the foreign currency digital options in



EXHIBIT
tabbies
5

dispute in this litigation as a single net option or as separate options in different contexts, depending on which position produces the maximum revenue for the Treasury.

3. Plaintiffs have also served Rule 30(b)(6) notices on the IRS seeking similar information, and the IRS has uniformly refused to produce that information. See the Appendix at 35, attached to the Memorandum in Support of this Motion, filed simultaneously herewith.

4. On May 16, 2007, J&G responded to Plaintiff's subpoena by filing a Motion to Quash and Motion For Protective Order, asserting that the information sought was irrelevant, that J&G was precluded by a confidentiality agreement with the IRS from complying with the subpoena and that complying with the subpoena would be unduly burdensome.

5. To the contrary, as is fully set out in Plaintiff's Memorandum, the subpoena seeks information that is directly relevant to the ultimate issues in this litigation and is necessary to prepare Plaintiff's case. The information is not protected by any rule of privilege or confidentiality. The scope of the information sought is narrow and not readily available elsewhere. Moreover, despite its protestations to the contrary, J&G clearly has the resources to comply with the subpoena.

6. Thus, the factors relevant to determining a motion to compel weigh heavily in Plaintiff's favor.

For all the foregoing reasons, as well as those set forth in Plaintiff's Memorandum in Support of this Motion, Plaintiff respectfully requests that the Court grant its Motion to Compel.

Respectfully submitted,

By: /s/ Joel N. Crouch

Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, OWENS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowsowens.com
twelty@meadowsowens.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2007, I served the above and foregoing on the below-listed counsel:

David M. Steiner, Esq. *(via ECF Notification)*
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq. *(via ECF Notification)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F. Anthony Paganelli, Esq. *(via FedEx)*
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

Robert J. Wagman, Jr. *(Via Certified Mail)*
Baker Botts, L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400

***Attorney for Jenkens & Gilchrist***

/s/ Joel N. Crouch
JOEL N. CROUCH

**IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership,** | § § § § | |
| **Plaintiff,** | § | **Case No. 05-231 T** |
| | § | **Chief Judge Edward Damich** |
| **v.** | § § | |
| **United States of America,** | § § | |
| **Defendant.** | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS AND IN OPPOSITION TO J&G'S MOTION TO QUASH SUBPOENA**

Respectfully submitted,

Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

EXHIBIT
6

## TABLE OF AUTHORITIES

**Federal Cases**

Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007) .......... 4
Clark v. Experian Info. Solutions, Inc., No. 3, 7882, 2006 WL 626820, *2 (N.D. Ill. Mar. 8, 2006) .......... 12
Coefield v. City of LaGrange, Ga., 913 F. Supp. 608, 615 (D.D.C. 1996) .......... 10
COLM Producer, Inc. v. United States, 460 F. Supp.2d 713, 716-17 & n.1 (N.D. Tex. 2006) ... 4
Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) .......... 9
Fid. & Deposit Co. of Md., 122 F.R.D. 447, 449 (S.D.N.Y. 1988) .......... 12
GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003) .......... 14
Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) .......... 8
Hickman v. Taylor, 329 U.S. 495, 507 (1947) .......... 8, 18
In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001) .......... 14
In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp.2d 201, 210 n. 14 (D.D.C. 2005) .......... 11, 12
Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) .......... 9
Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp.2d 608, 614-18 (E.D. Tex. 2006) .......... 4, 5
Long Beach Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 189 F. Supp. 589 (S.D. Cal. 1960), rev'd on other grounds, 189 F.2d 403 (9th Cir. 1960) .......... 15
Long v. Commissioner, 660 F.2d 416, 419 (10th Cir. 1981) .......... 4
North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 50 (D.D.C. 2005) .......... 9
Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n. 5.. 12
Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987) ....... 9
United States v. Amerigroup Illinois, Inc., No. 02-6074, 2005 WL 3111972, *2 (N.D. Ill. Oct. 21, 2005) .......... 15

**Federal Statutes**

I.R.C. § 6111 .......... 6
I.R.C. § 6707 .......... 6, 7, 13, 15
I.R.C. § 752 .......... 2, 3, 4, 5, 7

**Federal Regulations**

Treas. Reg. § 1.752-6 .......... 4, 5
Treasury Regulation § 1.752-6T .......... 4

**Other Authorities**

Chief Counsel Notices CC-2003-020 .......... 4
Notice 2000-44 .......... 5
W. Brazil, Protecting the Confidentiality of Settlement Negotiations, 39 Hastings L.J. 955, 956 (1988) (internal quotation marks omitted), affirmed, 439 F.3d 740 (D.C. Cir. 2006) .......... 12

## TABLE OF CONTENTS


I. STATEMENT OF THE CASE ..... 2

A. Introduction ..... 2

B. The Transactions at Issue ..... 3

C. The Taxpayers' Reliance on and the IRS's Repudiation of the *Helmer* Line of Cases ..... 3

D. Recognizing the Weakness of Its Position Under § 752, the IRS Has Asserted that as a Factual Matter, the Options Are a "Single" Net Option ..... 5

E. In Its Zeal to Penalize Tax Advisors, the IRS Has Taken the Opposite Position - that as a Factual Matter, the Long and Short Options Are Not a Single Net Option – to Increase the Penalty for Failing to Register a Tax Shelter ..... 6

F. J&G Is Not a Mere Bystander ..... 6

G. Plaintiff's 30(b)(6) Subpoena and J&G's Motion to Quash ..... 7

II. ARGUMENT ..... 8

A. Fed. R. Civ. P. 45(c)(3)(A) Requires A Court To Balance Competing Interests In Deciding A Motion To Quash ..... 8

B. The Information Sought By Subpoena Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law. ..... 10

C. J&G Has Not Established a Right To Protection Under Its Confidentiality Agreement With The Government, The Attorney-Client Privilege Or The Work-Product Doctrine. ..... 11

1. There Is No Federal Settlement Privilege and Fed. R. Evid. 408 Is Inapplicable to the Information Sought ..... 11

2. Neither the Attorney-Client Privilege nor the Work-Product Doctrine Applies to the Information Sought. ..... 13

D. J&G Has Not Established That Complying With Plaintiff's Subpoena Would Impose An Undue Burden. ..... 15

E. The Balance Of Factors Requires That J&G's Motion To Quash Be Denied And Plaintiff's Motion To Compel Be Granted. ..... 16

III. CONCLUSION ..... 18

IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership, | § § § § | |
| Plaintiff, | § § | Case No. 05-231 T<br>Chief Judge Edward Damich |
| v. | § § | |
| United States of America, | § § | |
| Defendant. | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL J&G TO COMPLY WITH SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION OF DOCUMENTS AND IN OPPOSITION TO J&G'S MOTION TO QUASH SUBPOENA**

Plaintiff, JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, by its undersigned attorneys, files this Memorandum in Support of its Motion to Compel Jenkens & Gilchrist ("J&G") to Comply with Plaintiff's Subpoena for Rule 30(b)(6) Deposition and Production of Documents ("Motion to Compel") and in Opposition to J&G's Motion to Quash and Motion for Protection from Plaintiff's Subpoena ("Motion to Quash"). J&G's brief in support of its motion argues that responding to the subpoena "would be unduly burdensome and would require J&G to disclose the terms of a confidential settlement agreement with the Internal Revenue Service ('Closing Agreement') along with confidential documents and information relating to the Closing Agreement, all of which are irrelevant to Plaintiff's claims." (J&G Br. at 1.) Because this argument is without merit, J&G's Motion to Quash should be denied. Conversely, Plaintiff's Motion to Compel should be granted because the information sought by the subpoena is narrow, directly related to the fundamental issues in

this case, unprotected by any rule of privilege or confidentiality, and necessary for Plaintiff to prepare its case and this Court to determine the facts and the law.

## I. STATEMENT OF THE CASE

### A. Introduction

As the Court is aware, this case is related to several others, including Murfam Farms, LLC, v. United States, No. 06-247T (consolidated) (Fed. Cl.), and Woods v. United States, No. 05-216 (consolidated) (W.D. Tex.), MDL No. 1727 (S.D. Ind.). Discovery has been proceeding in this case and the Murfam and Woods cases for well over a year.[1] Plaintiff has served the IRS in this and the cases referenced above with Rule 30(b)(6) deposition notices that request information similar to that requested in the subpoena J&G has moved to quash. Plaintiff has received uniformly inadequate responses and objections to those notices.[2] As is more fully explained below, the uniform refusal by the IRS and J&G to provide information to which Plaintiff is entitled suggests a carefully thought-out and coordinated effort by the IRS to "hide the ball" from both the Plaintiff and the Court.

Plaintiff's discovery requests are directly aimed at two key issues before the Court, one legal and one factual. The legal question is what the received interpretation of I.R.C. § 752 was at the time of the transactions in dispute and whether the IRS's conduct in changing that interpretation in June 2003 and applying it retroactively to transactions going back to 1999 was proper. The factual issue is how the IRS has applied I.R.C. § 752 to the currency options in the disputed transactions. The IRS's position on these issues is

---

[1] Counsel for all parties to these cases have agreed that discovery may be exchanged and used in all of these related cases.

[2] See Objections of the United States to Plaintiffs' 30(b)(6) Deposition Notice, App. at 38. Plaintiffs will soon file motions to compel the government in this case.

consistent in one respect only: it changes depending on which interpretation will maximize revenue to the Treasury. It is inconsistent in every other material respect.

### B. The Transactions at Issue

The transactions in dispute in this case involve European style foreign currency digital options. The taxpayers in this case purchased a long option from Duetsche Bank that required Duetsche Bank to pay a fixed amount if the "spot" exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. At the same time, the taxpayers in this case sold a short option to Duetsche Bank that required the taxpayer to pay a fixed amount if the spot exchange rate of certain foreign currencies exceeded the contractual "strike" exchange rate on a specific date. The taxpayer then contributed both the purchased, long option and the sold, short option to a partnership, here, JBJZ Partners. For purposes of computing their basis in JBJZ partners, the taxpayers included the amount paid to Duetsche Bank for the long option (the "Long Premium") but did not reduce their basis by the amount received from Duetsche Bank from the sale of the short option (the "Short Premium"). Thus, the taxpayers calculated their basis in the JBJZ Partners by treating the long and short options as separate options instead of a single net option. As the short option was not "in-the-money" at the time it was contributed to JBJZ Partners, it was a contingent obligation. That is, there was no liability to Duetsche Bank unless and until the spot exchange rate exceeded the strike exchange rate.

### C. The Taxpayers' Reliance on and the IRS's Repudiation of the Helmer Line of Cases

The transactions at issue were undertaken in reliance on a line of case law that spans several decades. In fact, the taxpayers in the present case took the same position that the IRS had successfully espoused in prior cases *against* taxpayers: that under I.R.C. § 752,

contingent obligations, and more specifically short option positions, are not "liabilities" for tax purposes when they are assumed by a partnership. See Helmer v. Commissioner, 34 T.C.M. (CCH) 727 (1975); accord Long v. Commissioner, 660 F.2d 416, 419 (10th Cir. 1981); See also Cemco Investors, LLC v. United States, No. 04-8211, 2007 WL 951944 (N.D. Ill. Mar. 27, 2007); COLM Producer, Inc. v. United States, 460 F. Supp.2d 713, 716-17 & n.1 (N.D. Tex. 2006); Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp.2d 608, 614-18 (E.D. Tex. 2006). Under this line of authority, a partnership's assumption of a short option position has no effect on a partner's basis in the partnership. Applied to the currency options at issue here, the rule provided a favorable – and entirely legitimate – tax benefit to the taxpayers.

Plaintiff sought and received legal opinions, one from J&G and one from Brown & Wood, LLP, both of which supported the manner in which plaintiffs reported these transactions on their federal tax returns for 1999. In June 2003, however, the Treasury Department promulgated new regulations under I.R.C. § 752, which altered the definition of "liability" under that section by including contingent obligations. Treas. Reg. § 1.752-6T, App. at 16-20. Treasury Regulation § 1.752-6T purported to apply the new definition of "liability" to transactions going back to October 18, 1999. At about the same time that Treas. Reg. § 1.752-6T was issued, the IRS also released Chief Counsel Notices CC-2003-020, which sets forth the IRS's litigation position with respect to the contingent obligation issue in cases involving COBRA and similar transactions, relying primarily on § 1.752-6T for authority, App. at 4-5.

At the same time, the IRS also issued a Notice of Proposed Rulemaking for a prospective, permanent rule addressing the contingent obligation issue, the preamble to

which expressly stated that the IRS would no longer follow Helmer. Assumption of Partner Liabilities, 68 Fed. Reg. 37434, 37436 (June 24, 2003), App. at 23-24. One court has already ruled that the retroactive aspect of the new regulations is invalid and that their application, at least to transactions occurring between October 18, 1999, and September 5, 2000, the date Notice 2000-44[3] was issued -- the relevant period in the present cases -- is an abuse of discretion. Klamath, 440 F. Supp.2d at 623.

### D. Recognizing the Weakness of Its Position Under § 752, the IRS Has Asserted That as a Factual Matter, the Options Are a "Single" Net Option

In an effort to avoid the problems of logic inherent in its inconsistent positions with respect to whether a contingent obligation is a liability for tax purposes under I.R.C. § 752, and to establish an alternative theory should the retrospective application of regulation Treas. Reg. § 1.752-6 be invalidated, the IRS determined that *as a factual matter*, the long and short options that were contributed to the partnership in this case were a single net option rather than two options (one long and one short). The result of this *factual* determination is that the basis of the options contributed to JBJZ Partners is calculated under I.R.C. as the net premium paid (i.e., the Long Premium less the Short Premium) instead of the Long Premium unreduced by the Short Premium. *See* FPAA Determination 6, App. at 33, 34. Further, the government's expert, David DeRosa, opined on May 31, 2007 that the two options – one long and one short – are a single net option.[4]

---

[3] App. at 1-3.
[4] Expert Report of David F. DeRosa dated May 31, 2007 at 61-91. The report is not attached as it is approximately 125 pages long.

**E. In Its Zeal to Penalize Tax Advisors, the IRS Has Taken the Opposite Position - that as a Factual Matter, the Long and Short Options Are Not a Single Net Option – to Increase the Penalty for Failing to Register a Tax Shelter**

While the IRS's factual position as to Plaintiff and similarly situated taxpayers works to *increase* revenue for the Treasury, it also works to *reduce* potential I.R.C. § 6707[5] penalties against tax advisors that allegedly failed to properly register the transactions at issue as a tax shelter under I.R.C. § 6111.[6] The IRS has therefore taken the opposite position -- that the purchased, long option and sold, short option *are not* a single net option, but are instead *separate* options -- to calculate the penalty under I.R.C. § 6707, which is 1% of the aggregate amount invested in the transaction. Incredibly, this is the opposite of the IRS's litigation position against Plaintiff and actually *supports* Plaintiff tax treatment of the transactions. Indeed, the IRS's position that the long option and short option are separate is the foundation for a $76 million penalty against Jenkens & Gilchrist[7] and a $39 million penalty against Brown & Wood.[8] Although the IRS's inconsistent positions are relatively well-known among tax litigators,[9] Defendant is trying desperately to prevent discovery on this topic in this and related cases.

**F. J&G Is Not a Mere Bystander**

Plaintiffs in this case and in Woods engaged the J&G law firm, among others, to render tax opinions with respect to these transactions at issue. On March 28, 2007, the U.S. Attorney for the Southern District of New York issued a statement announcing that he had

[5] App. at 25.
[6] App. at 27-31.
[7] See J&G Brief, App. at 45.
[8] Brown & Wood has not yet been the subject of a discovery request. Like J&G, however, that firm recently settled its tax shelter registration dispute with the IRS, agreeing to pay a $39.4 million penalty. See IR-2007-103 (May 23, 2007), App. at 32.
[9] Indeed, this very topic was the subject of a January 2007 ABA Tax Section panel. App. at 43-59.

reached a "non-prosecution cooperation agreement" ("Settlement Agreement") with J&G in connection with its role in COBRA transactions and others not at issue here. J&G Br., Ex. 2, App. at 21. The details of the Settlement Agreement are contained in a March 26, 2007, letter from the Department of Justice ("DOJ") to J&G's counsel, Davis Polk & Wardwell. Id. at 25-30. Among the facts revealed in that letter is the existence of a "Closing Agreement" between the IRS and J&G resolving the IRS's promoter penalty audit of J&G, which is said to be a condition precedent to the Settlement Agreement. Id. at 26-27.

**G. Plaintiff's 30(b)(6) Subpoena and J&G's Motion to Quash**

Because the IRS's's factual position with respect to the purchase of long options and the sale of short options in calculating and imposing or threatening to impose I.R.C. § 6707 penalties is inconsistent with its position with respect to COBRA investors, including Plaintiff, and because the government has uniformly refused to produce Rule 30(b)(6) witnesses and documents seeking information on this issue,[10] Plaintiffs served a subpoena on J&G on April 25, 2007, seeking a Rule 30(b)(6) witness and documents narrowly confined to the issue of how the government calculated the I.R.C. § 6707 "civil penalty" J&G is said to have agreed to pay the IRS pursuant to the Closing Agreement. Id. at 26. J&G responded by serving the present motion to quash on May 16, 2007, claiming, *inter alia*, that a confidentiality agreement with the IRS precludes it from complying with the subpoena.

It therefore appears that the IRS is engaged in a concerted effort to prevent Plaintiff in this and related cases from gaining access to information that is crucial to their ultimate claim: that the IRS is taking not only inconsistent legal positions on I.R.C. §752, but also taking inconsistent factual positions on the long and short options at issue in this case. The

[10] See Objections of the United States to Plaintiff's 30(b)(6) Deposition Notices, App. at 38.

Federal Rules of Civil Procedure do not countenance such conduct. J&G's Motion to Quash should therefore be denied and Plaintiff's Motion to Compel should be granted.

## II. ARGUMENT

### A. Fed. R. Civ. P. 45(c)(3)(A) Requires A Court To Balance Competing Interests In Deciding A Motion To Quash.

Fed. R. Civ. P. 26(b)(1) and Rule 26 (b)1 of the Rules of the Court of Federal Claims provide in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The Federal Circuit has instructed that in considering a motion to compel, "a court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986). In fact, the very "[p]urpose of discovery is to provide a mechanism for making relevant information available to litigants." Fed. R. Civ. P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties is essential to proper litigation") (emphasis added)).

The scope of discovery is not unlimited, however. Fed. R. Civ. P. 45(c)(3)(A), which governs the application of Rule 26(c) to subpoenas, provides in pertinent part that a subpoena may be quashed or modified if it:

> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

In determining whether a subpoena should be quashed or modified, courts balance such factors as "relevance, the need of the party for the documents, the breadth of the document request, the particularity with which the documents are described and the burden imposed." North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 50 (D.D.C. 2005). "[A] court may consider as one factor [in assessing the burden of complying with a subpoena] that a deponent is not a party." Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987) (Markey, C.J.); Leake, 231 F.R.D. at 50 ("non-party status is also relevant in considering the burden") (citation omitted).

While some courts give a movant's non-party status special weight in balancing the relevant factors and competing interests, Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998), it is hardly the "overarching policy" of Rule 45. J&G Br. at 3. On the contrary, "[t]he administration of justice would not be aided . . . by a rule relieving [non-parties] from giving particular evidence." Truswal, 813 F.2d at 1210. Moreover, unlike the movants in the cases cited in J&G's Brief at 3, J&G is not exactly a "stranger" to the events underlying this litigation. *See* Cusumano, 162 F.3d at 717. In fact, it played a major role in those events, acting as Plaintiff's legal counsel in facilitating and implementing the transactions at issue and rendering a tax opinion with respect to those transactions -- a fact that vitiates the primary reason for giving any special weight to non-party status. In every case, the burden of persuasion is on the movant on a motion to quash. Truswal, 813 F.2d at 1210; Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003). As the following discussion demonstrates, J&G has failed to meet its burden, and its motion to quash should therefore be denied. In the following discussion, on the other hand, Plaintiff more than meets its burden with respect to its Motion to Compel, which should therefore be granted.

**B. The Information Sought By Subpoena Is Both Relevant And Necessary To Plaintiff's Case And To This Court's Determination Of The Facts And The Law.**

Whether the information sought by subpoena is relevant is often the first factor courts consider in deciding motions to quash or to compel. For discovery purposes, information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This standard "is not a stringent one." Coefield v. City of LaGrange, Ga., 913 F. Supp. 608, 615 (D.D.C. 1996). Nevertheless, J&G asserts that the information sought in the subpoena is irrelevant to Plaintiff's case because J&G's settlement with the IRS "cannot possibly affect Plaintiff's claims" or "further any claims or defenses in the case." J&G Br. at 4. Given its familiarity with and participation in the very transactions at issue here and in related cases, J&G knows better. And as discussed in this motion on pages 2 through 6, the IRS's shifting legal and factual positions that are the subject of the subpoena are central to the issues in this case.

The IRS's position as to whether the currency options at issue are a single transaction or separate appears to depend entirely on which position is more advantageous to the IRS in any given context. It views the long and short options as a single transaction for purposes of reducing a taxpayer's partnership basis and thereby increasing its tax liability, but as separate for purposes of increasing the penalties for non-registration of a tax shelter to be assessed against the advisor that devised the transaction. The government cannot have it both ways: either the foreign currency options at issue are, as a factual matter, separate transactions or they are not. To treat them differently in different contexts is analytically incoherent. J&G's view of the issues in this case and of the relevance of the

information sought to those issues is at best simplistic and at worst disingenuous. In either event, its claim of irrelevancy is meritless.

### C. J&G Has Not Established a Right To Protection Under Its Confidentiality Agreement With The Government, The Attorney-Client Privilege Or The Work-Product Doctrine.

#### 1. There Is No Federal Settlement Privilege and Fed. R. Evid. 408 Is Inapplicable to the Information Sought

How the IRS calculates penalties in connection with the transactions that have given rise to this and related cases is a factual matter that lies at the very heart of Plaintiff's case. The Closing Agreement resolves the issues related to the IRS's promoter penalty audit of J&G and apparently imposes a $76 million civil penalty. J&G Br., Ex. 2, App. at 26, 45. Consequently, Plaintiff requested the Closing Agreement in paragraph 1(a) of its subpoena. According to J&G, however, it is precluded by a confidentiality agreement with the government from producing the Closing Agreement or disclosing any of its terms upon pain of having both the Closing Agreement and the Settlement Agreement terminated. J&G Br. at 3-4. The source of J&G's obligation of confidentiality is never explicitly stated, but presumably it is a confidentiality clause in the Closing Agreement. Similarly, the source of the legal authority upon which J&G rests its claim that the Closing Agreement and related documents and testimony are not discoverable is unclear, *see* J&G Br., Ex. 2, App. at 4-5, but there are only two possibilities: a federal "settlement privilege" or Fed. R. Evid. 408. Neither supports J&G's claim.

"The weight of authority suggests that there is no generalized privilege for settlement communications and that they are discoverable, at least after a showing of substantial need." In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp.2d 201, 210 n. 14 (D.D.C. 2005), *citing* W. Brazil, *Protecting the Confidentiality of*

*Settlement Negotiations*, 39 Hastings L.J. 955, 956 (1988) (internal quotation marks omitted), *affirmed*, 439 F.3d 740 (D.C. Cir. 2006). *Accord*, Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n. 5 (S.D.N.Y.) (Rule 408 does not create a settlement privilege).

Thus, the confidentiality issue turns on Rule 408, which provides in pertinent part:

> (a) Prohibited uses. -- Evidence of [compromise negotiations and settlement] is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount. . . .
>
> (b) Permitted uses. -- This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). . . .

It should be noted at the outset that by its terms, Rule 408 applies to the *admissibility* of evidence at *trial* and not to whether information is *discoverable*. Commodity Futures, 370 F. Supp.2d at 211.

> The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of [settlement] discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure. . . . Therefore, a party is not allowed to use Rule 408 as a screen for the curtailing of an adversary's right of discovery.

Id., *citing* 2 Weinstein's Federal Evidence ¶408.07 at 408-26 (2005). *Accord*, Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

Moreover, Rule 408 "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiation"; rather, the rule only excludes evidence used to prove liability for or invalidity of the claim or its amount, and does not apply to evidence offered for other purposes. Clark v. Experian Info. Solutions, Inc., No. 3, 7882, 2006 WL 626820, *2 (N.D. Ill. Mar. 8, 2006).

Rule 408 is clearly inapplicable to the information sought in the present case. See Exhibit A to Plaintiff's Subpoena, a copy of which is attached hereto as Exhibit 4. First, Plaintiff would have no standing to challenge the Closing Agreement even if it had an interest in doing so. Hence, the information sought cannot be offered for any of the purposes prohibited by Rule 408. Second, the Closing Agreement is likely to be directly probative of the calculations the IRS used to determine the penalty it assessed against J&G, and therefore of whether it treated the options at issue as a single option or as separate. These purely factual matters are necessary to Plaintiff's preparation of its case. Similarly, the documents and testimony related to the IRS's calculations will reveal whether the IRS assessed or threatened to assess additional penalties against J&G
under I.R.C. §6707, and if so, how it calculated or intended or threatened to calculate them. The information Plaintiff seeks is likely to raise inferences about the IRS's intent and the propriety of how it is proceeding in this and related cases, evidence that is directly pertinent. Hence, the information sought is certainly discoverable and likely to be admissible at trial.

**2. Neither the Attorney-Client Privilege nor the Work-Product Doctrine Applies to the Information Sought**

Since Plaintiff's subpoena requests no information that is conceivably privileged, the attorney-client privilege and the work-product doctrine are irrelevant. Nevertheless, J&G asserts that "[n]one of the information [it] possesses" that is responsive to paragraphs 1(b)-(e) of the subpoena is discoverable because it "is protected by the attorney-client privilege and the work-product exemption." J&G Br. at 5. The subpoena asks neither about J&G's communications with its attorneys, nor about its attorneys' communications with J&G, nor about its attorneys' thoughts, impressions or opinions; it seeks only

information communicated by the IRS to J&G. Whether the IRS communicated directly with J&G or indirectly through J&G's outside counsel, the result is the same: no attorney-client privilege or work-product protection applies, the latter of which can in any case only be invoked by J&G's attorneys, and not by J&G. And the subpoena on its face only calls for production of "non-privileged documents." J&G Br., App. at 8.

J&G's claim that the IRS never discussed its computation of the penalty with J&G and that J&G has no documents related to that issue is so incredible that it gives rise to the suspicion that J&G is playing "pickle-in-the-middle" with this information -- and Plaintiff is "it." It is simply not possible that J&G agreed to pay a $76 million penalty, if that is the "civil penalty" referred to in the Settlement Agreement, with no information about how the IRS arrived at that figure. The only rational explanation for this assertion is that the information sought is in the possession or within the knowledge of its outside counsel rather than J&G.[11] Significantly, J&G has provided no log of responsive documents that it claims are privileged as required by Fed. R. Civ. P. 45 (d)(2)(A). Absent a privilege log, it is impossible to examine its claim; hence, its claim is entitled to no weight in the balance of factors relevant to its Motion to Quash. Indeed, "[failure to comply with [the rule] is deemed to waive the underlying privilege claim." GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 195 (D.D.C. 2003), *citing* In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001).

[11] Plaintiff does not believe that information in the possession of J&G's counsel is outside of J&G's control. Thus, this does not present a "technical" defense to the subpoena. But if need be, Plaintiff will serve J&G's outside counsel with a subpoena.

**D. J&G Has Not Established That Complying With Plaintiff's Subpoena Would Impose An Undue Burden.**

A mere assertion that compliance with a subpoena would be burdensome and onerous is not sufficient to establish this factor without showing the manner and extent of the burden. Long Beach Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 189 F. Supp. 589 (S.D. Cal. 1960), *rev'd on other grounds*, 189 F.2d 403 (9th Cir. 1960). "*Ipse dixits* will not suffice." United States v. Amerigroup Illinois, Inc., No. 02-6074, 2005 WL 3111972, *2 (N.D. Ill. Oct. 21, 2005). Rather, the movant must demonstrate with "affirmative and compelling proof" that the burden of producing in undue. Id.

Yet J&G makes no attempt to assess the burden of complying with the five narrowly drawn requests for documents in the subpoena. Instead of addressing the volume of documents sought and the cost of producing them, J&G pleads lack of financial and staffing resources to comply with the subpoena. J&G Br. at 6-7. It even claims that it "now continues to operate *solely*" to wind up its affairs. Id. at 2 (emphasis added). But its Settlement Agreement with the government tells a very different story. For example, the agreement states:

> that J&G Texas . . . will remain in operation to wind up J&G's business affairs; [and] that the purposes of this continuing entity will include continuing to cooperate with this Office . . . .

J&G's Ex. 2, App. at 26.

That cooperation includes the requirement that J&G "use its best efforts" to:

- assemble, organize, and provide, in a responsive and prompt fashion , . . . all documents, records, information, and other evidence in J&G's possession, custody or control as may be requested by this Office, the IRS (civil and criminal), Tax DOJ, or any other law enforcement agency designated by this Office;

- make available its present and former shareholders, partners, associates, and employees to provide information and/or testimony before a grand jury or in court proceedings, and in interviews with law enforcement authorities;

- identify witnesses who, to J&G's knowledge, may have material information concerning this Office's investigation; and

- provide testimony or establish the original location, authenticity, or other basis for admission in evidence of documents . . . as requested by this Office, the IRS (civil and criminal), or Tax DOJ.

Id. at 27. In addition, the agreement requires J&G to:

- maintain the originals of all documents and records in its possession and control that are relevant to the government's investigation, *at J&G's own expense*, in a location leased for three years from the signing of the agreement; and

- designate, train and *pay* appropriate personnel to satisfy its obligations to provide materials to the government for three years.

Id. at 3-4.

The IRS estimates that 1,400 investors are affected by J&G's advice. J&G's Br., Ex. 2 at App. 45. J&G is obligated to provide documents, testimony, and/or both, requested by the government in connection with its investigation of the transactions of those investors. If J&G has the resources to meet its obligations to the government, it certainly has the resources to comply with the five narrow requests in Plaintiff's subpoena. J&G has not met its burden with respect to its claim of undue burden.

**E. The Balance Of Factors Requires That J&G's Motion To Quash Be Denied And Plaintiff's Motion To Compel Be Granted.**

The last step in deciding a motions to quash and to compel is to balance the relevant factors. In this case, the balance weighs heavily against J&G's motion and in favor of requiring compliance with Plaintiff's subpoena. The information sought is clearly relevant to Plaintiff's case. In balancing the relevancy of and need for the information sought against the burden a subpoena imposes, courts sometimes look at whether the information is more readily available elsewhere. In this and related cases it is not, because although the

IRS is the source of the information sought, it has consistently objected to Plaintiffs' discovery requests on multiple grounds, adding, for example, prematurity and the "deliberative process privilege" to the usual objections. In short, the highly relevant and necessary information plaintiffs seek will be even more difficult to obtain from the IRS than from J&G.

Moreover, J&G's claim that it is precluded from complying with the subpoena by a confidentiality agreement with the IRS is unsubstantiated; indeed, it has not even clearly identified the source of its obligation. Perhaps informing the court that a confidentiality clause exists in the Closing Agreement would constitute a "Major Event of Default" that would allow the government to nullify the Closing and Settlement Agreements, a result that would admittedly have dire consequences for J&G if it occurred. But the Federal Rules of Civil Procedure require more than unsubstantiated claims of confidentiality and privilege. At the very least, J&G should be required to produce the Closing Agreement and related documents for an *in camera* review to determine whether they contain information relevant and necessary to Plaintiffs' claims as they have been described herein.

The same is true of the documents for which J&G claims attorney-client privilege and work-product protection. Until J&G produces the privilege log required by Rule 45(d)(2), its claims cannot even be tested. Moreover, it is insufficient for J&G to assert that it has no responsive documents and no one to produce as a Rule 30(b)(6) deponent with respect to information that common sense counsels must exist. J&G cannot hide behind its attorneys to avoid producing discoverable, unprivileged matter. At the very least, J&G should be required to identify which of its former partners, associates or employees have knowledge of the information sought. After all, the Settlement Agreement requires J&G to

identify witnesses, "to use its best efforts" to make its former personnel available to the government in its on-going investigation, and to provide requested documents in a timely fashion. The Federal Rules of Civil Procedure are "intended to provide a mechanism for making information available to litigants." Fed. R. Civ. P. 26, Notes of Adv. Comm., 1983 Amendment (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947). They are not intended to be used to conceal vital information. Rather, they are designed to ensure the "[*m*]*utual* knowledge of *all* the relevant facts gathered by *both* parties [that] is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947) (emphasis added).

Finally, while it is clear that J&G has fallen on hard times, it has not demonstrated that complying with Plaintiff's subpoena would be unduly burdensome. On the contrary, in light of what it has agreed to do for the government, the minimal requests in Plaintiff's subpoena, the necessity of the requested information in preparing Plaintiff's case, and the difficulty and uncertainty of success in extracting the information from the IRS, J&G's claim of undue burden is wholly unpersuasive. Thus, the balance of the relevant factors, as well as the principle of fair play and the interests of justice, all weigh in favor of granting Plaintiff's Motion to Compel and denying J&G's Motion to Quash.

## III. CONCLUSION

For all the reasons stated herein, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Compel and deny Jenkens & Gilchrist's Motion to Quash and Motion for Protection.

Respectfully submitted,

By: /s/ Joel N. Crouch

Joel N. Crouch
State Bar No. 05144220
M. Todd Welty
State Bar No. 00788642

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2007, I served the above and foregoing on the below-listed counsel:

David M. Steiner, Esq. *(via ECF Notification)*
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq. *(via ECF Notification)*
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

F. Anthony Paganelli, Esq. *(via FedEx)*
Sommer Barnard, P.C.
One Indiana Square
Suite 3500
Indianapolis, Indiana 46204

***Attorney for Carmel Partners***

Robert J. Wagman, Jr. *(via Certified Mail)*
Baker Botts, L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004-2400

***Attorney for Jenkens & Gilchrist***

/s/ Joel N. Crouch
JOEL N. CROUCH

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JZ BUCKINGHAM INVESTMENTS LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | CASE NO. 05-231 T Chief Judge Edward J. Damich |

************************************************

ORAL DEPOSITION OF

JOHN GILLIAM

OCTOBER 4, 2007

VOLUME 1

*************************************************

ORAL DEPOSITION OF JOHN GILLIAM, produced as a witness at the instance of the Plaintiffs, JZ Buckingham Investments, LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, and duly sworn, was taken in the above-styled and numbered cause on the 4th day of October, 2007, from 2:02 p.m. to 2:38 p.m., before Dana Taylor, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Baker Botts LLP, 2001 Ross Avenue, Dallas, Texas 75201, 901 Main Street, Suite 3700, Dallas, Texas 75202, pursuant to the Federal Rules of Civil Procedure.





EXHIBIT 7

APPEARANCES

FOR THE PLAINTIFFS:

MR. M. TODD WELTY
MEADOWS COLLIER
901 Main Street
Suite 3700
Dallas, Texas 75202
(214)744-3700

FOR THE DEFENDANT:
MR. JOE PITZINGER
U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
717 North Harwood
Suite 400
Dallas, Texas 75201
(214)880-9721

FOR THE WITNESS:
MS. MARY L. SCOTT
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
(214)953-6628



INDEX


Appearances 2

JOHN GILLIAM
Examination by Mr. Welty 4
Examination by Mr. Pitzinger 18
Examination by Ms. Scott 21
Further Examination by Mr. Welty 21

Signature and Changes 24
Reporter's Certificate 25


EXHIBITS


| NO | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Notice of Deposition | 4 |
| 2 | Supplement to Notice of Deposition | 4 |
| 3 | Protective Order ** | 6 |
| 4 | Correspondence dated September 21, 2007 with documents | 6 |
| 5 | Correspondence dated September 26, 2007 with documents | 6 |
| 6 | Form 8821 | 13 |


** Subject to a protective order dated September 7th, 2007.



PROCEEDINGS

JOHN GILLIAM,
having been first duly sworn, testified as follows:
EXAMINATION
BY MR. WELTY:
Q Would you please state your name for the record?
A John Gilliam.
Q Do you mind spelling that for the record?
A G-i-l-l-i-a-m.
Q Mr. Gilliam, my name is Todd Welty. I am an attorney representing a number of taxpayers, including those in the JZ Buckingham Investments, MurFam Farms, LLC, and other consolidated cases before the court of federal claims, as well as some taxpayers involved in the In Re: COBRA Tax Shelter Litigation currently pending before the Southern District of Illinois.
(Exhibit Nos. 1 and 2 were marked.)
BY MR. WELTY:
Would you please take a look at Exhibit No. 1 for me, please.
A Okay. I am.
Q And also Exhibit No. 2.
A Okay. And I have looked at it as well.
Q Do you recognize those documents?



A Yes, they appear to be the original Notice of Deposition in this case, which is Exhibit No. 1, and the Supplement to Notice of Deposition, which is Exhibit No. 2.
Q And, Mr. Gilliam, are you the representative of Jenkens & Gilchrist designated by the entities in those subpoenas here to testify today?
A I am.
Q All right. And before we get into the substance of your testimony, Mr. Gilliam, are you familiar with the deposition process?
A I am.
Q Are you a former -- or current or former litigator?
A I'm a former litigator.
Q Okay.
A Recovering litigator.
Q Recovering litigator. Okay. So I am not going to spend any time going through the deposition rules because you're probably at least as familiar as I am with them.
But just for matters of form, advise that you're under oath here today and that your testimony can be used in addition to or in lieu of live testimony before a court under certain circumstances. You understand that?
A Yes, I do.





Electronically signed by Dana Taylor (401-213-825-2798) 25812b08-c0e6-4e8d-895c-ca6258be21da

Q Okay. In response to the Notice of Deposition, which is Exhibit No. 1, and the supplemental notice of deposition, which is Exhibit No. 2, did Jenkens & Gilchrist or its attorneys Baker and Botts make any production of documents in response to those subpoenas?
A We did.
(Exhibit Nos. 4 and 5 were marked.)
BY MR. WELTY:
Q Are those responses set forth in Exhibits No. 4 and No. 5?
A Yes, I believe so.
Q And just for the record, I want to note that Exhibit 3 is the protective order issued by the United States Court of Federal Claims, Chief Judge Damich, limiting the disclosure of this information beyond that provided in the order.
And I just want to make Exhibit No. 3 a part of the record here and would appreciate you noting on the deposition as well that it's subject to a protective order dated September 7th, 2007.
(Exhibit No. 3 was marked.)
BY MR. WELTY:
Q Mr. Gilliam, before we get into the documents that were produced, which are Exhibits No. 4 and 5, can you tell me what you did to gather responsive documents?



A In response to the original notice, Exhibit No. 1, I reviewed what remaining file I had relating to the issues that were described in the notice, the topics that were being asked to be included in our search.
I contacted Tom Cantrell, Pat Mitchell, and Roger Hayse. Pat and Tom, formally being chairmen at various times of the firm, were involved in discussions with the Department of Justice, the IRS. And Roger Hayse, who's currently with Jenkens & Gilchrist, who is not a lawyer but a business advisor who also attended meetings with the Department of Justice, the IRS, obtained their files, their hard copy files; I reviewed those.
I reviewed the electronic files that they had looking for communications with the Department of Justice and the Internal Revenue Service that related to the calculation of the $6 million penalty. And that material was produced, and what I found was produced in connection with the first production that we made.
Q You're comfortable that Jenkens made a diligent search for responsive documents?
A Yes.
Q With respect to the supplemental notice of deposition related to the DGI suit, can you tell me what you did to locate responsive documents?
A I went through, I believe, 29 boxes of



material, DGI material to find documents that related to the settlement, that litigation, and the -- and the payment of the settlement obligations in that litigation.
Documents -- those files included files that had been made available to me by Marshall Simmons who was formally a manager of the firm and who was involved in that litigation, and collected that material, the documents relating to the settlement and payment of settlement, and made that available.
I also talked to Wayne Parnell (phonetic), who's in our accounting area of the firm currently, to see if he could find anything electronically that would help me trace payments that were made in settlement of that litigation, and I got, I think, two or three sheets of paper from him that are also part of the production.
Q Are you comfortable that Jenkens & Gilchrist made a diligent search for documents responsive to the supplemental deposition subpoena?
MS. SCOTT: I'm going to object to that. And if you want an explanation, I'll give it to you. But really for form only because I think our conversations modified that subpoena a little bit.
MR. WELTY: Okay. Fair enough; fair enough. That wasn't intended to be a trick question.
BY MR. WELTY:



Q Are you comfortable that you made a diligent search for the settlement agreement and documents related to the funding of that settlement agreement?
A Yes, I am.
Q In terms of documents not within the direct physical custody of Jenkens & Gilchrist, did you attempt to obtain documents from outside counsel related to either the initial or supplemental deposition subpoenas?
A I did.
Q Can you tell me what you did in that regard?
A I contacted the Davis Polk Wardwell lawyers in New York who represented us in connection with the grand jury investigation and discussions with the IRS to see if they -- made inquiries as to whether or not they had any documents relating to the calculation of the penalty. It was -- it was advised by them they did not.
Q Okay. Did you have any discussions with -- without telling me any privileged information, did you have discussions with the attorneys at Davis Polk regarding their discussions with the IRS over the penalty?
A I did.
Q Okay. Can you tell me what your understanding is that the discussions between Davis and Polk and the IRS were related to the penalty?
MR. PITZINGER: Objection to form.

A Well, let me, first of all, say I -- I asked all of the attorneys that were involved in discussions with the Department of Justice and the IRS about any discussions they had with the IRS people regarding the calculation of the penalty and understood initially that there had been none.

I then learned recently, the last two or three weeks, that one of the lawyers there, Mario Verdolini, had a very brief conversation with an IRS representative at the -- at the last meeting -- face-to-face meeting we had with them on I think January the 19th of 2007

MR. PITZINGER: Objection to the responsiveness of the witness to the question.

BY MR. WELTY:

Q Can you tell me, to the extent you know, the substance of that conversation between the attorney at Davis Polk and the IRS?

MR. PITZINGER: Objection as to form.

A Mario Verdolini asked the IRS representative whether the calculation would be done on a gross or a net basis and was told by this representative that it would be done on a gross basis.

BY MR. WELTY:

Q What do you understand the difference between gross and net to mean?

MR. PITZINGER: Objection as to form,



speculation, and relevance what he understands it to be.

MS. SCOTT: Objection to the extent it calls for privileged communications.

A Well, I asked -- inquired of Mario as to what that meant. And my understanding from what he -- he told me is that in -- it meant that in doing calculation, the -- the IRS would -- would take into consideration the long option but not the offsetting short option in doing the calculation

MR. PITZINGER: Objection to the responsiveness to the question.

BY MR. WELTY:

Q So in calculating the one percent penalty, is it your understanding the IRS simply did one percent times the long premium without offsetting it for the short premium? Is that -- is that essentially what we're --

MS. SCOTT: Objection.

A I reiterate what he --

MR. PITZINGER: Objection to form before -- excuse me.

Go ahead, Mr. Gilliam

THE WITNESS: That's okay.

MR. PITZINGER: I just wanted to make my objection before you responded.

MS. SCOTT: I'm objecting to the extent it



calls for privileged communications.

A I can only tell you what he told me, Todd, and that was that it -- they -- the calculation would take in consideration the long option but not the short option.

BY MR. WELTY:

Q Okay. Did Jenkens & Gilchrist, or you on behalf of Jenkens & Gilchrist, inquire of the IRS as to the penalty calculation methodology they used in arriving at the penalty agreed to by Jenkens?

MS. SCOTT: Jenkens themselves?

MR. WELTY: Yes.

A No.

BY MR. WELTY:

Q Either at the time of the settlement with the IRS or at the time you were gathering information responsive to the subpoenas in Exhibit 1 and 2?

A Not at either.

Q Is there some reason that Jenkens did not request the information from the IRS?

A I -- I think to answer to that question would call for me to reveal the terms or part of the terms of the closing agreement that we had with the IRS, which I'm not permitted to do.

Q Okay. Without doing anything that you think violates the terms of the closing agreement with the IRS, can



you tell me whether it's your understanding that the closing agreement itself prevents you from requesting the information from the IRS or disclosing the information provided by the IRS to a third party?

MR. PITZINGER: Objection to form.

A I think it gets into the terms of the closing agreement, which I am prohibited from disclosing.

(Exhibit No. 6 was marked.)

BY MR. WELTY:

Q Would you take a look at Exhibit No. 6 for me, please?

A Got it.

Q This is a Tax Information Authorization Form 8821, and I know you have not had the chance to discuss this with your counsel

A Right.

Q But let me give you what I believe to be an accurate portrayal of what this form does. This form would allow Jenkens & Gilchrist to authorize -- would allow Jenkens & Gilchrist -- strike that.

This form would allow the IRS to provide information related to Jenkens & Gilchrist confidential tax information to the designated appointee. In other words, if Jenkens & Gilchrist authorized the IRS to provide information to the appointee herein, the IRS would be obligated to do so





Electronically signed by Dana Taylor (401-213-825-2798) 25812b08-c0e6-4e8d-895c-ca6258be21da

Page 14

to the extent that it would have to provide the information directly to Jenkens.
I understand, I think -- and correct me if I'm wrong -- you did not request the penalty calculation methodology from the IRS in response to the subpoenas; is that correct?
A That's correct
Q And you did that because you think that such a request would violate the terms of the closing agreement; is that correct?
MR. PITZINGER: Objection as to form.
A No.
MS SCOTT: Can we -- we didn't get a chance to talk about this actually because we were making copies.
MR. WELTY: Sure. Do you want to take a --
MS SCOTT: Can we take five minutes?
MR. WELTY: Sure, you can take a five-minute break. Sure.
(Break from 2:18 to 2:22.)
BY MR. WELTY:
Q Mr Gilliam, since we've taken a break, let me just start fresh.
A Okay.
Q And I apologize in advance if I've already asked this and you've answered.

Page 15

A No problem.
Q Isn't it true, Mr. Gilliam, that in response to the subpoena and Exhibit No. 1, you did not request information from the IRS regarding how they calculated the penalty to which Jenkens & Gilchrist agreed?
MR. PITZINGER: Objection to form.
A Yes.
BY MR. WELTY:
Q You did not request that information?
A Did not request that
Q And it's my understanding, I think based on your previous answer, that Jenkens & Gilchrist did not request that information from the IRS because of concerns over the closing agreement with the IRS; is that correct?
A Not exactly. I didn't request it because I didn't believe I had any obligation to request it, first.
Presented with the issue now as to whether or not I'm willing to do it, I have to tell you that I can't do that, and -- and if it -- if it -- without consulting with the IRS because of my concern that I may be breaching the closing agreement -- the terms of the closing agreement. And if I did that, consequences could be disastrous for the firm.
Q Absent an objection from the IRS, would Jenkens & Gilchrist have a problem providing -- requesting and providing to us, subject to the Court's confidentiality

Page 16

order, the information on how the penalty was calculated and to which Jenkens agreed?
MR. PITZINGER: Objection as to form.
A If the IRS has no objection to it and would not consider it to be a breach of our -- of the confidentiality provisions in the closing agreement, then I would have no objection.
BY MR. WELTY:
Q So Jenkens would directly request that and provide it to us pursuant to the protective order entered by the Court as long as the IRS does not object?
A Yes.
Q Would the same hold true, in other words, would Jenkens execute a Form 8821 authorizing the IRS to provide us that information directly as long as it was subject to the Court's protective order and the IRS did not consider it a breach of the closing agreement?
A Yes
MR. PITZINGER: Objection as to form.
BY MR. WELTY:
Q And just so I have it for the record, what was the name of the attorney at Davis Polk that discussed the penalty calculation with the IRS?
A Mario Verdolini.
Q Do you know how to spell that?

Page 17

A V-e-r- -- V-e-r-d-o-l-i-n-i.
Q V-e-r- -- V-e-r-d-o --
A No. Excuse me. It's V-e-r-d-o-l-i-n-i.
Q Okay.
A Verdolini.
Q I was pretty sure I wasn't going to be able to spell that on my own.
A That sounds like a bottle of fine Italian wine to me.
Q Moving on to the supplemental notice of deposition
A Right.
Q Mr. Gilliam, regarding the DGI lawsuit and the settlement and funding of that settlement, I believe you indicated that you searched for documents evidencing the funding of the settlement agreement?
A Correct.
Q Were you able to locate all the funding documents?
A I don't think so. I mean I -- I was able to locate all the ones we currently have. But I -- it certainly raised some questions in my mind about exactly how it got funded.
Q Was it, in fact, funded though?
A Yes, it's my understanding it was.





Electronically signed by Dana Taylor (401-213-825-2798) 25812b08-c0e6-4e8d-895c-ca6258be21da

Q So it was fully paid?
A Yes.
MR. WELTY: Can we go off the record for just a second.
(Discussion off the record.)
(Break from 2:27 to 2:33.)
MR. WELTY: I appreciate you being here, Mr. Gilliam.
I pass the witness.

EXAMINATION

BY MR. PITZINGER:
Q Hi.
A Hi.
Q Mr. Gilliam, I have just a few questions. Does -- you said -- excuse me.
Mr. Welty insinuated, I thought, that the only reason you had not provided the tax calculation was due to the terms of the IRS settlement. Is there any other reasons you haven't provided that information?
MS. SCOTT: The tax --
A I don't have the tax calculation.
BY MR. PITZINGER:
Q The tax calculations.
A I don't --
Q Did Jenkens & Gilchrist ever have possession



or control of the tax calculations?
A I don't -- the only thing I know about the tax calculation is what I related, the conversation Mario Verdolini had with the IRS representative. I've never seen the calculation. I've never seen the form.
Q Okay. There was some earlier discussion on your production to the supplemental subpoena --
A Right.
Q -- about that it had been modified a little bit. Do you know what that modification was from the subpoena?
A I think the original -- the subpoena, I think, as worded, calls for a document describing the role of Jenkens & Gilchrist in the DGI litigation. And I think based upon discussions between Mr Welty and Ms. Scott, the -- it was -- it was limited to the settlement paper -- documents relating to the settlement of the DGI case and the funding of that settlement.
Q Okay. When there was a discussion right at the beginning of the deposition regarding the production as to the original subpoena, which is Exhibit 1 --
A Right.
Q -- you said that you had produced the documents in connection with the first production, but you did not identify what documents you meant that you had



produced in response to the first production.
Is that one of the exhibits that were -- that has been introduced in this deposition today or discussed?
MS. SCOTT: Responsive to the production or to the subpoena?
BY MR. PITZINGER:
Q Well, that was my question because the response of the witness at the time was that he had produced the response to the first subpoena in connection with the first -- he had -- the response was produced in connection with the first production.
And I was not too sure if he meant one of the two productions that were identified in Exhibits 4 and 5, or has there been another production other than the ones --
A Just four and five.
MS. SCOTT: I'm going to object as to form on that.
A Maybe I misspoke. I'm not sure I...
MR. WELTY: Just for the record, the only documents we've received in response to the subpoenas are Exhibit -- in Exhibits No. 4 and 5.
MS. SCOTT: That's all we --
THE WITNESS: Yeah, that's all we've produced.
BY MR. PITZINGER:



Q So if you think -- if there was a reference related to the first production, it was to the earlier of these Exhibits 4 and 5?
A Yes.
Q Okay.
MR. PITZINGER: Pass the witness.
MR. WELTY: Thank you. No further questions.
MS. SCOTT: Actually, I do have a question.
MR. PITZINGER: On the record?
MS. SCOTT: Yes.

EXAMINATION

BY MS. SCOTT:
Q Mr. Gilliam, Exhibit No. 6.
A Yes.
Q Were you even aware of this form when you were originally preparing a response to the subpoena, the first subpoena, Exhibit 1?
A I don't believe so.
MS. SCOTT: That's all I have.

FURTHER EXAMINATION

BY MR. WELTY:
Q Well, let me just ask one more question. Sorry. The last question always leads to one more question, doesn't it?

Page 22

A Yeah.
Q If ordered to do so, Mr. Gilliam, would you have a problem executing the Form 8821 authorizing the IRS to provide directly to us its penalty calculation methodology for the penalty that Jenkens & Gilchrist agreed to?
A I'm going to comply with whatever the Court orders me to do.
MR. WELTY: No further questions.
MR. PITZINGER: No questions.
MS. SCOTT: No questions.
(End of proceedings at 2:38.)

Page 23

CHANGES ANDSIGNATURE

PAGE/LINE CHANGE REASON

Page 24

I, JOHN GILLIAM, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

____________________
JOHN GILLIAM

STATE OF ________ )
COUNTY OF ________ )

Before me, ____________________, on this day personally appeared JOHN GILLIAM known to me (or proved to me under oath or through ____________________) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of ______________, 2007

____________________
NOTARY PUBLIC IN AND FOR
THE STATE OF __________

Page 25

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JZ BUCKINGHAM INVESTMENTS LLC as Tax )
Matters Partner of JBJZ Partners, a )
South Carolina general partnership, )
) CASE NO. 05-231 T
Plaintiffs, ) Chief Judge Edward
) J. Damich
v. )
)
UNITED STATES OF AMERICA, )
)
Defendant. )

REPORTER'S CERTIFICATION
DEPOSITION OF JOHN GILLIAM
OCTOBER 4, 2007

I, Dana Taylor, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, JOHN GILLIAM, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition was submitted on ________________, 2007 to the witness or to the attorney for the witness for examination, signature and return to me by ________________, 2007;

That the amount of time used by each party at the deposition is as follows:

Mr. Welty - (0:22)
Mr. Pitzinger - (0:03)
Ms. Scott - (0:01)





Electronically signed by Dana Taylor (401-213-825-2798) 25812b08-c0e6-4e8d-895c-ca6258be21da

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

FOR THE PLAINTIFFS:
MR. M. TODD WELTY
MEADOWS COLLIER
901 Main Street
Suite 3700
Dallas, Texas 75202
(214)744-3700
Taxable Cost: $______________

FOR THE DEFENDANT:
MR. JOE PITZINGER
U S DEPARTMENT OF JUSTICE
TAX DIVISION
717 North Harwood
Suite 400
Dallas, Texas 75201
(214)880-9721
Taxable Cost: $______________

FOR THE WITNESS:

MS. MARY L. SCOTT
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
(214)953-6628
Taxable Cost: $______________

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.



Certified to me by this _____ day of October, 2007.

Dana Taylor
DANA TAYLOR, Texas C[illegible]48
Expiration Date: 12/31/08
Henjum Goucher Reporting Services, P.C.
Firm No. Dallas: 69 Houston: 373
2501 Oak Lawn Avenue
Suite 435
Dallas, Texas 75219
(888)656-DEPO

# AFFIDAVIT OF M. TODD WELTY

STATE OF TEXAS §
§
COUNTY OF DALLAS §

On November 2, 2007, I telephoned defense counsel to try to reach an agreement regarding the information Plaintiff now seeks in its Motion to Compel. That attempt was unsuccessful. Specifically, defense counsel stated they oppose any motion to obtain the penalty computation, whether from Jenkens & Gilchrist or the IRS.

Further, Affiant sayeth not.

M. Todd Welty

Subscribed and sworn to before me this 2nd day of November, 2007.

Notary Public

ERIKA LEE HARPER
MY COMMISSION EXPIRES
June 4, 2011

359420v1

EXHIBIT
8

Form **8821**
(Rev. September 1998)
Department of the Treasury
Internal Revenue Service

# Tax Information Authorization

▶ IF THIS AUTHORIZATION IS NOT SIGNED AND DATED, IT WILL BE RETURNED.

OMB No 1545-1165
For IRS Use Only
Received by
Name ______
Telephone ( )
Function ______
Date / /

**1 Taxpayer information.**

Taxpayer name(s) and address (please type or print)
JZ BUCKINGHAM INVESTMENTS LLC
16 BUCKINGHAM DRIVE
CHARLESTON, SC 29407

Social security number(s) ______
Employer identification number ______
Daytime telephone number ______
Plan number (if applicable) ______

**2 Appointee.**

Name and address (please type or print)
LAURA LIGHTHOLDER, JENKENS & GILCHRIST
225 WEST WASHINGTON, SUITE 2600
CHICAGO, IL 60606

CAF No. ______
Telephone No. 312-425-3928
Fax No. 312-425-3909
Check if new: Address ☐ Telephone No. ☐

**3 Tax matters.** The appointee is authorized to inspect and/or receive confidential tax information in any office of the IRS for the tax matters listed on this line.

| (a) Type of Tax (Income, Employment, Excise, etc.) | (b) Tax Form Number (1040, 941, 720, etc.) | (c) Year(s) or Period(s) | (d) Specific Tax Matters (see instr.) |
|---|---|---|---|
| FEIN | SS-4 | | |
| | | | |
| | | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. (See the instructions on page 2.) ▶ ☐
If you checked this box, skip lines 5 and 6.

**5 Disclosure of tax information** (you **must** check box 5a or b unless box 4 is checked):

a If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box ▶ ☐

b If you do not want any copies of notices or communications sent to your appointee, check this box ▶ ☐

**6 Retention/revocation of tax information authorizations.** This tax information authorization automatically revokes all prior authorizations for the same tax matters you listed above on line 3 unless you checked the box on line 4. If you do not want to revoke a prior tax information authorization, you MUST attach a copy of any authorizations you want to remain in effect AND check this box ▶ ☐
To revoke this tax information authorization, see the instructions on page 2.

**7 Signature of taxpayer(s).** If a tax matter applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters/periods covered.

Signature [signature] Date 1/18/05 | Signature ______ Date ______

JERRY ZUCKER
Print Name | Title (if applicable) | Print Name | Title (if applicable)

## General Instructions

*Section references are to the Internal Revenue Code unless otherwise noted.*

**Change To Note.** New column (d) is added to line 3 for specific tax matters. Use column (d) to specify tax information that is to be provided by the IRS. See the line 3 instructions on page 2.

**Purpose of form.** Form 8821 authorizes any individual, corporation, firm, organization, or partnership you designate to inspect and/or receive confidential information in any office of the IRS for the type of tax and the years or periods you list on this form.

Form 8821 does not authorize your appointee to advocate your position with respect to the Federal tax laws; to execute waivers, consents, or closing agreements; or to otherwise represent you before the IRS. If you want to authorize an individual to represent you, use **Form 2848,** Power of Attorney and Declaration of Representative, instead of Form 8821. You may file your own tax information authorization without using Form 8821, but it must include all the information that is requested on the form.

**Taxpayer identification numbers (TINs).** TINs are used to identify taxpayer information with corresponding tax returns. It is important that you furnish correct names, social security numbers (SSNs), individual taxpayer identification numbers (ITINs), or employer identification numbers (EINs) so that the IRS can respond to your request.

**Fiduciaries.** A fiduciary (trustee, executor, administrator, receiver, or guardian) stands in the position of a taxpayer and acts as the taxpayer. Therefore, a fiduciary does not act as an appointee and should not file Form 8821. File **Form 56,** Notice Concerning Fiduciary Relationship, to notify the IRS of the existence of a



EXHIBIT 9
tabbies

482

Form **SS-4** (Rev February 1998)
Department of the Treasury
Internal Revenue Service

# Application for Employer Identification Number

**(For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, certain individuals, and others. See instructions.)**

**▶ Keep a copy for your records.**

EIN 57-1088088

OMB No 1545-0003

Please type or print clearly.

1 Name of applicant (legal name) (see instructions)
JZ BUCKINGHAM INVESTMENTS LLC

2 Trade name of business (if different from name on line 1)

3 Executor, trustee, "care of" name

4a Mailing address (street address) (room, apt., or suite no.)
16 BUCKINGHAM DRIVE

5a Business address (if different from address on lines 4a and 4b)

4b City, state, and ZIP code
CHARLESTON, SC 29407

5b City, state, and ZIP code

6 County and state where principal business is located
CHARLESTON COUNTY, SC

7 Name of principal officer, general partner, grantor, owner, or trustor — SSN or ITIN may be required (see instructions) ▶
JERRY ZUCKER, SSN 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

8a Type of entity (Check only one box.) (see instructions)
**Caution:** *If applicant is a limited liability company, see the instructions for line 8a*

- ☐ Sole proprietor (SSN) ________
- ☐ Partnership
- ☐ REMIC
- ☐ State/local government
- ☐ Church or church-controlled organization
- ☐ Other nonprofit organization (specify) ▶ ________ (enter GEN if applicable) ________
- ☒ Other (specify) ▶ DISREGARDED ENTITY
- ☐ Personal service corp.
- ☐ National Guard
- ☐ Farmers' cooperative
- ☐ Estate (SSN of decedent) ________
- ☐ Plan administrator (SSN) ________
- ☐ Other corporation (specify) ▶ ________
- ☐ Trust
- ☐ Federal government/military

8b If a corporation, name the state or foreign country (if applicable) where incorporated | State | Foreign country

9 Reason for applying (Check only one box.) (see instructions)

- ☒ Started new business (specify type) ▶ SINGLE MEMBER LIMITED LIABILITY
- ☐ Hired employees (Check the box and see line 12.)
- ☐ Created a pension plan (specify type) ▶
- ☐ Banking purpose (specify purpose) ▶
- ☐ Changed type of organization (specify new type) ▶
- ☐ Purchased going business
- ☐ Created a trust (specify type) ▶
- ☐ Other (specify) ▶

10 Date business started or acquired (month, day, year) (see instructions)
NOVEMBER 16, 1999

11 Closing month of accounting year (see instructions)
DECEMBER

12 First date wages or annuities were paid or will be paid (month, day, year). **Note:** *If applicant is a withholding agent, enter date income will first be paid to nonresident alien. (month, day, year)* ▶ N/A

13 Highest number of employees expected in the next 12 months. **Note:** *If the applicant does not expect to have any employees during the period, enter -0-. (see instructions)* ▶

| Nonagricultural | Agricultural | Household |
|---|---|---|
| 0 | 0 | 0 |

14 Principal activity (see instructions) ▶ INVESTMENTS

15 Is the principal business activity manufacturing? ☐ Yes ☒ No
If "Yes," principal product and raw material used ▶

16 To whom are most of the products or services sold? Please check one box.
☐ Public (retail) ☐ Other (specify) ▶ ☐ Business (wholesale) ☒ N/A

17a Has the applicant ever applied for an employer identification number for this or any other business? ☐ Yes ☒ No
**Note:** *If "Yes," please complete lines 17b and 17c.*

17b If you checked "Yes" on line 17a, give applicant's legal name and trade name shown on prior application, if different from line 1 or 2 above
Legal name ▶ Trade name ▶

17c Approximate date when and city and state where the application was filed. Enter previous employer identification number if known.
Approximate date when filed (mo., day, year) | City and state where filed | Previous EIN

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.

Business telephone number (include area code)

Fax telephone number (include area code)

Name and title (Please type or print clearly.) ▶ JERRY ZUCKER

Signature ▶ [signature] Date ▶ 11/18/99

**Note:** *Do not write below this line. For official use only.*

| Please leave blank ▶ | Geo. | Ind. | Class | Size | Reason for applying |
|---|---|---|---|---|---|
| | | | | | |

**For Paperwork Reduction Act Notice, see page 4.** ISA Form **SS-4** (Rev. 2-98)
STF FED7769F

00000785

Z000785 83

# In the United States Court of Federal Claims

No 05-231 T

(Filed: September 7, 2007)

************************************
JZ BUCKINGHAM INVESTMENTS LLC, *
*
Plaintiff, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
*
************************************

## PROTECTIVE ORDER

On August 9, 2007, the Court issued an opinion denying a motion to quash filed by interested non-party Jenkens & Gilchrist ("J&G"), granting Plaintiff's motion to compel J&G to comply with certain discovery in this case, and ordering the parties to submit a proposed protective order. On September 4, 2007, the parties provided the Court with a proposed stipulated protective order. J&G also stipulated to the entry of the proposed protective order. Therefore, by agreement of the parties and interested non-party J&G, and in order to protect certain information that J&G may be required to provide during the course of this litigation, while recognizing the "vital public interest in open judicial proceedings," 28 C.F.R. § 50.9, the Court hereby ORDERS that:

1 All information, materials, and documents (whether in paper or electronic form) produced or furnished by J&G to either or both of the Parties in response to a subpoena issued by plaintiff in this case shall be deemed "Protected Information" if so designated by J&G or any other Party, as provided herein. Documents previously produced by J&G to the United States in this matter are not subject to this order. Any documents or information that is otherwise publicly available, is not entitled to treatment as Protected Information pursuant to this Order.

2 Any documents produced by J&G which are marked as "Protected Information" shall be deemed Protected Information. In addition, if, during any deposition of a J&G corporate representative, J&G or any Party wishes to designate any testimony as "Protected Information," they may do so by so stating on the record. The portions of any deposition transcript that have

EXHIBIT

10

been designated on the record as "Protected Information" and any documents used in the deposition that have been designated as Protected Information shall be treated as "Protected Information." For any deposition testimony not designated on the record during the deposition, portions of the transcript may be so designated after the deposition if, within 10 business days after the deposition, counsel for J&G or any Party provides notice of such designation. Any such notice must be delivered in writing to counsel for the Parties and J&G and must designate those portions of the transcript, by page and line number, which are to be treated as Protected Information Until the 10-day period for designating Protected Information has passed, the entirety of all J&G deposition transcripts must be treated as Confidential Information

3 Protected Information may be used in any and all discovery proceedings in all COBRA cases, as that term is defined below, including, but not limited to, document requests, requests for admission, depositions, interrogatories, and discovery motions, but otherwise shall not be publicly disclosed except as permitted by this Order Protected Information may be used only in connection with the prosecution or defense of this action and not for any other pending or threatened litigation, nor any business or other purpose. This Order shall not, however, restrict the transfer of Protected Information in response to a subpoena or other discovery demand in another proceeding in a court of competent jurisdiction Either of the Parties may use Protected Information in other litigation involving the same or similar issues, with the written authorization of J&G or its counsel The term "COBRA cases" includes this action, as well as the following civil actions:

a. *MURFAM Farms, LLC v United States*, Cases No. 06-245T (CFC) (consolidated with Cases Nos. 06-246T and 06-247T), including *PSM Farms, LLC v United States*, Cases No 06-246T (Fed.Cl ) and *Murphy Pork Partners, LLC v United States*, Cases No 06-247T (Fed Cl )

b *In re COBRA Tax Shelter Litigation*, No 1:05-ml-097272-JDT-WTL (multi-district) (S D Ind ), including *Tesoro Drive Partners v United States*, No. SA-05-CA-0216-XR (W D TX); *SA Tesoro Drive Partners v United States*, No. SA-05-CA-0217-XR ( W D. TX); and *Carmel Partners v United States*, Case No 1:04 cv 1661 (USDC SDIN)(consolidated with *Tesoro Drive Partners* as *In Re COBRA Tax Shelters*, MDL Case No (SDIN).

4 Except as described herein (or by subsequent order of this Court), the Parties and those persons identified in paragraphs 5(b), 5(d), 5(e), 5(f), 5(g), and 5(h) may not give, show, disclose, disseminate, or describe, either directly or indirectly, Protected Information to any person(s) other than those identified in paragraph 5

5 Access to Protected Information shall be restricted to:

a This Court and its personnel;

b Counsel for the Parties, including outside and in-house lawyers; other lawyers regularly employed in their offices; and such supervising attorneys, lawyers' staff,

and administrators, to whom it is necessary to disclose Protected Information for purposes of this litigation (including secretaries, paralegals, clerks, and other assistants);

c. The Parties themselves;

d Independent experts or consultants retained by counsel for the purpose of assisting in this litigation, including any of their staff to whom it is necessary to disclose Protected Information in order to assist in their participation in this litigation;

e Any potential witness in this litigation identified in the Complaint, identified during discovery or by the Parties' witness lists, or planned to be called as a witness by a Party at deposition or during trial or to be interviewed about a matter at issue in this case, as well as any counsel for such witness and any person(s) present during such testimony Individuals identified by this Paragraph may be provided with a copy of any relevant Protected Information for their review in preparation for or during the witness's deposition or testimony, either at trial or other hearing in this litigation Upon completion of their review, the Protected Information provided shall be returned to counsel for the Party that supplied it;

f Any mediators, arbitrators, or other outside parties and their staff enlisted by all parties to assist in the resolution of this matter;

g Outside or contracted litigation-support services, including commercial copying services;

h. Any court reporter, transcriber or videographer who reports, transcribes or records testimony in this action at a deposition, provided they agree by a statement on the record before the witness begins his or her deposition testimony that no such Protected Information and testimony related thereto revealed shall be disclosed by such reporter, transcriber or videographer except to the attorneys for each Party and any other person who is present while such testimony is being given, except that upon use of a deposition exhibit at trial, the exhibit becomes public information and is no longer Protected Information;

i. Employees of the Department of Justice and the Internal Revenue Service who are assigned to any pending criminal investigation or matter for their unrestricted use in such criminal investigation or matter.

6 No Party shall disclose Protected Information or copies of Protected Information to any of the persons identified in Paragraphs 5(d), 5(e), 5(f), and 5(g) without first having obtained an executed acknowledgment from such person, substantially in the form attached hereto.

7 The inadvertent or unintentional disclosure by a party of Protected Information shall not be deemed a waiver in whole or in part of any claim of confidentiality or protected status. This paragraph applies to both the specific information disclosed as well as any other information relating thereto or on the same or related subject matter

8 This Protective Order shall remain in effect after conclusion of this litigation

9. Counsel for the parties shall promptly report any willful breach of the provisions of this Protective Order to counsel for J&G. Upon discovery of any breach of this Protective Order, counsel for the breaching party shall immediately take appropriate action to cure the violation and retrieve any Protected Information that may have been disclosed to persons not covered by this Protective Order. The Parties shall reasonably cooperate in determining the existence of any such breach and whether there is reason to report the breach to the Court.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

## ACKNOWLEDGMENT

The undersigned has been provided with a copy of the foregoing Protective Order entered in the case captioned *JZ Buckingham Investments LLC, as Tax Matters Partner of JBJZ Partners v United States of America, Civ A No* 05-231 T (CFC), has had an opportunity to review the Protective Order; and is fully familiar with all of the terms of the Protective Order. By executing this Acknowledgment, the undersigned agrees to be bound by the terms of the Protective Order

______________________________

Print name: ____________________

Address: ______________________

______________________________

______________________________

Date signed: ___________________