IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, | § | |
| Plaintiff, | § | CASE NO. 05-231 T<br>Chief Judge Edward J. Damich |
| v. | § | |
| United States of America, | § | |
| Defendants. | § | |

## DECLARATION OF JOHN GILLIAM

1. My name is John Gilliam. I am over the age of 18, of sound mind, and competent to make this affidavit. I have personal knowledge of the facts set forth in this affidavit, and they are true.

2. I am employed by Jenkens & Gilchrist, a Professional Corporation ("J&G"). From January 1, 1975 to January 1, 2004, I was a J&G shareholder practicing in the litigation department. On January 1, 2004, I ceased to be a shareholder and began to serve as in-house counsel or "risk manager" for J&G. I served as J&G's in-house counsel until it stopped offering legal services on March 31, 2007. I am now assisting in the liquidation of the firm. I am the only lawyer still employed by J&G. All other lawyers previously associated with the firm have left and joined other law firms or have pursued other options.

3. The firm continues to operate solely for the purpose of collecting assets, addressing payment of obligations, and finalizing all business matters. J&G has limited financial resources and is attempting to conserve them for the benefit of its creditors. To that end, J&G has kept only enough staff to quickly and efficiently wind down the affairs of the Firm. I am working only part-time as is J&G's President, Roger Hayse, who is not a lawyer. In addition, J&G has 9 administrative employees, 3 of whom are part-time. The administrative employees



**Attachment 1**

are handling various matters necessary to the liquidation of the Firm, including the disposition of approximately 150,000 boxes of client files, the administration of the accounts receivable and accounts payable, negotiations with J&G's landlords for its former offices, cancellation of employee benefit plans and resolution of all outstanding claims, general administrative tasks involving five of J&G's former offices, and the sale of J&G's assets in five cities.

4. In my role as in-house counsel, I was involved in discussions with the Department of Justice through the United States Attorney for the Southern District of New York ("DOJ") and the Internal Revenue Service ("IRS") in connection with the settlement of investigations by the DOJ and the IRS into J&G's involvement in certain tax shelters ("Government Investigations"). Davis Polk & Wardwell represented J&G with respect to the Government Investigations. The Government Investigations were settled in March 2007.

5. The settlement agreement with the IRS ("Closing Agreement") prohibits J&G from disclosing to Plaintiff the terms of the settlement or the negotiations relating to those terms. Violating these prohibitions could lead to an event of default in the Closing Agreement and the termination of that agreement and a Non-Prosecution Agreement with the DOJ. Termination of these agreements would have serious adverse consequences to J&G.

6. In April 2007, Plaintiff served a subpoena on J&G for the production of documents and deposition testimony. J&G filed a motion to quash the subpoena. On August 9, 2007, the Court issued an Opinion denying J&G's motion, and I appeared at a deposition on October 4, 2007 on behalf of J&G. After the Court issued the Opinion, but before my deposition was taken, Plaintiff served a supplemental subpoena on J&G seeking additional documents and testimony relating to prior litigation involving J&G and several other parties. The supplemental subpoena required a significant effort from J&G. The firm had to locate all

the possibly responsive documents and I had to review the approximately 29 boxes of documents located. In addition, the terms of a confidentiality agreement in the litigation required me to send out letters to the other litigants who were parties to the confidentiality agreement to ascertain whether they objected to the production of any documents. J&G's outside counsel, Baker Botts L.L.P., had to get involved in working out issues relating to the confidentiality agreement and in preparing a privilege log. J&G produced a number of documents in response to the supplemental subpoena. J&G also has provided business records affidavits for both Plaintiff and Defendant for the documents produced pursuant to the subpoena and other documents.

7. Shortly after my October 4 deposition in this matter, I communicated with J&G's contact at the IRS about Plaintiff's request that J&G execute a Form 8821 authorizing the IRS to release to Plaintiff the penalty calculation methodology for the $76 million penalty. I was informed that the IRS would consider J&G's submission of Form 8821 to be a violation of the confidentiality provisions in the Closing Agreement and that it would constitute an event of default under the Closing Agreement. J&G has no authority, contractual rights, or other means by which to force the IRS to agree to provide the information upon receipt of a Form 8821.

8. Neither I nor anyone else at J&G has any knowledge about the form or substance of the penalty calculation methodology other than as I testified to in my October 4, 2007 deposition, which was based on a single question and answer between Mario Verdolini at Davis Polk & Wardwell and someone from the IRS. Likewise, neither I nor anyone else at J&G has any knowledge about the manner in which the penalty calculation methodology is kept at the IRS, what IRS file on J&G, if any, contains the information, whether the IRS even has any documents on the penalty calculation methodology that are specific to J&G, whether any such

documents include tax information about taxpayers other than J&G, or whether there are grounds for the IRS to refuse to produce any such documents upon submission of a Form 8821.

9. Prior to my deposition on October 4, 2007, I spoke with lawyers at Davis Polk & Wardwell who represented J&G in connection with the Government Investigations to determine whether the Firm had any communications with the IRS about the penalty calculation methodology used by the IRS for the $75 million penalty and whether the Firm had any documents relating to the IRS's penalty calculation methodology. I was told that Mr. Verdolini, a tax lawyer at Davis Polk, had one conversation with an IRS representative about the calculation and that, at the time, Davis Polk had no documents. I have learned that after my deposition on October 4, Davis Polk received one email from the IRS on October 31, 2007 that relates to the subject of the penalty calculation methodology. Davis Polk produced that email to Plaintiff on November 29, 2007 at the deposition of Mr. Verdolini.

**Declaration**

I, John Gilliam, declare under penalty of perjury that the foregoing is true and correct. Executed in Dallas, Texas on December 3, 2007.

John Gilliam