IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**UNITED STATES' OPPOSITION TO PLAINTIFF'S CORRECTED AND AMENDED MOTION TO COMPEL DEFENDANT TO COMPLY WITH RULE 30(b)(6) NOTICE AND MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR A PROTECTIVE ORDER**

Respectfully submitted,

Dennis M. Donohue
Senior Litigation Counsel
U.S. Department of Justice
Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492 Telephone
(202) 307-2504 Facsimile
Dennis.Donohue@USDOJ.gov

ATTORNEY FOR DEFENDANT
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . 3

A. Nature of Transaction at Issue in the Instant Lawsuit . . . . . . . . . . 3

B. The United States Has Produced Voluminous Documents in Response to the Plaintiff's Discovery Requests . . . . . . . . . . 6

1. Production of Documents from the IRS Administrative File . . . . . . . . . . 6

2. Production of Treasury Regulation Files . . . . . . . . . . 6

3. Production of Documents Obtained by Subpoena in this Case . . . . . . . . . . 7

D. Rule 30(b)(6) Notices and Subpoenas . . . . . . . . . . 8

I. ARGUMENT . . . . . . . . . . 10

PLAINTIFF'S REQUESTS FOR UNITED STATES OR IRS TESTIMONY CONCERNING THE LEGAL AND FACTUAL ANALYSIS OF THE DEFENDANT CANNOT LEAD TO ADMISSIBLE EVIDENCE . . . . . . . . . . 10

A. Introduction . . . . . . . . . . 10

B. The Legal Contentions of the United States Are Properly Examined Through Contention Interrogatories . . . . . . . . . . 11

C. The Unpublished Personal Views of IRS Personnel Are Irrelevant and Not Within the Scope of Plaintiff's Notice . . . . . . . . . . 13

D. The Factual and Legal Analysis of the IRS in Making the FPAA Adjustments Are Irrelevant in this Litigation . . . . . . . . . . 15

E. There Are No IRS Personnel with Knowledge of the Matters Set Forth in Item 1(a) . . . . . . . . . . 16

F. There Are No IRS Personnel with Knowledge of the Matters Set Forth in Item 1(c) . . . . . . . . . . 19

G. There Are No IRS Personnel with Knowledge of the Matters Set Forth in Item 1(d) . . . . . . . . . . 19



II. PLAINTIFF HAS NOT MADE A REQUEST FOR DOCUMENTS . . . . . . . . . . 20

A. Item 1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B. Item 1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

C. Item 1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Assumption of Partner Liabilities*,
68 Fed. Reg. 37434, 37435 . . . . . . . . . . 17

*BB&T Corp. v. United States*,
233 F.R.D. 447 (M.D.N.C. 2006) . . . . . . . . . . 12

*Cemco Investors L.L.C. v United States*,
2007WL 951944 (N.D. Ill. March 27, 2007)

*Check Printers, Inc. v. United States*,
5 Cl.Ct. 498 (1984)) . . . . . . . . . . 17

*Deluxe Check Printers, Inc. v. United States*,
5 Cl.Ct. 498 (1984) . . . . . . . . . . 14, 17

*EEOC v. HBE Corp.*,
157 F.R.D. 465 (E.D. Mo. 1994) . . . . . . . . . . 13

*Evergreen Trading v. United States*,
75 Fed.Cl. 730 (2007). . . . . . . . . . . 13, 14

*Exxon Research and Engineering Co. v. United States*,
44 Fed. Cl. 597 (August 27, 1999) . . . . . . . . . . 11

*Flamingo Fishing* v. *United States*,
31 Fed.Cl.655 (1994) . . . . . . . . . . 14, 16

*Furman v. United States*,
1983 WL 1687 (D.S.C. 1983) . . . . . . . . . . 18

*Greenberg's Express, Inc. v. Commissioner*,
62 T.C. 324, 328 (Tax Ct. 1974) . . . . . . . . . . 16

*Henry Camferdam, et al. v. Deutsche Bank, et al.*,
017-212033-05 (Tarrant Cnty, TX) . . . . . . . . . . 5

*Hickman v. Taylor*,
329 U.S. 495 (1947) . . . . . . . . . . 12

In re COBRA Tax Shelters Litigation,
1:05-ml-09727-JDT WTL (USDC SDIN). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Independent Service Org. Antitrust Litigation,
168 F.R.D. 651 (D.Kan. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

In re G-I Holdings Inc.,
2005 WL 1303473 (D.N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re G-I Holdings Inc.,
Civ. No. 02-03082 (WGB) (D.N.J. July 16, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Linerboard Antitrust Litig.,
237 F.R.D. 373, 384 (E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ISI Corp., 503 F.2d at 559 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Marriott Int'l Resorts L.P. v. United States,
61 Fed.Cl. 411 (2004) *rev'd*, 437 F.3d 1302 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 14

Murfam Farms LLC v. United States,
Nos. 06-245T, 06-246T, and 06-247T(Consolidated) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Revell, Inc. v. Riddell,
273 F.2d 649 (9th Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

SEC v. Buntrock,
2004 WL 1470278 (N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SEC v. Morelli,
143 F.R.D. 42 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SEC v. Rosenfeld,
1997 WL 576021 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Shelton v. American Motors Corp.,
805 F.2d 1323 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Siddell v Commissioner,
225 F.3d 103 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16



Sporck v. Peil,
759 F.2d 312 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

_United States v. Carroll_,
320 F. Supp.2d 748 (S.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

_United States v. District Council of New York_,
1992 WL 208284 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

_United States v. Nordberg_,
1996 WL 170119 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

_United States ex rel. Touhy v. Ragen_,
340 U.S. 462 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_Sealy Power, Ltd. v. Commissioner_,
46 F.3d 382 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

_TIFD III-E Inc. v. United States_,
342 F.Supp.2d 94 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

_United States v. American Telephone and Telegraph Co._,
524 F.Supp. 1381 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

_Vons Cos.Inc_. v. _United States_,
51 Fed.Cl. 1 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Federal Statutes**

I.R.C. § 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17
I.R.C. § 6662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20, 22
I.R.C. § 6707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10, 19
I.R.S. Notice 2000-44, 2002-2 C.B. 255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
I.R.C. § 6662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20
I.R.C. § 6707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10, 19
I.R.S. Notice 2000-44, 2002-2 C.B. 255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
I.R.C. § 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20
26 U.S.C. §§ 6707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Federal Regulations**

Treas. Reg. §§ 1.752-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Treas. Regs. § 1.752-6T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17
Treas. Regs. §§ 1.752-6T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Treas. Reg. § 1752-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17, 18
Treas Reg. § 601.601(d)(2)(i)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Treas. Reg. § 1.752-6(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Temp. Treas. Reg. § 1.7526T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Temp. Treas. Reg. § 1.358-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Proposed. Treas. Reg. 1.752-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Rules of Civil Procedures and**
**Rules of the Court of Federal Claims**

RCFC Federal Statutes 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Rule 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2, 8,9, 11, 12, 20

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**UNITED STATES' OPPOSITION TO PLAINTIFF'S CORRECTED AND AMENDED MOTION TO COMPEL DEFENDANT TO COMPLY WITH RULE 30(b)(6) NOTICE AND MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR A PROTECTIVE ORDER**

Plaintiff's corrected motion to compel is based on a series of fundamental misunderstandings – or misrepresentations – of the issues in this case, the substantial discovery already conducted, and the scope of the Rule 30(b)(6) which is at issue. Plaintiff seeks to compel the United States to designate a witness either from the Department of Justice or from the IRS to testify as to "what the IRS's legal and factual positions *were*, and what the Defendant's *are*" with respect to what it calls the "fundamental issues in this case."[1] It also seeks to compel the United States to produce documents with respect to these so-called fundamental issues even though the attachment to its subpoena makes no such request. Plaintiff's notice and subpoena are facially unenforceable to the extent that they seek the United

---

[1]Pltf's Mem. at 13, 15. (Emphasis added.).

States's legal and factual positions because they seek work product of counsel for the United States which information has not been disclosed to the IRS. The legal contentions of the United States are properly examined through contention interrogatories, not Rule 30(b)(6) depositions. Plaintiff's notice and subpoena are equally defective to the extent they seek what *were* the IRS's legal and factual positions because those positions are irrelevant in this litigation and to the extent not already disclosed, are protected by the deliberative process privilege or I. R. C. § 6103.

At bottom, plaintiff's request to produce a witness to testify regarding what are the United States's legal and factual positions constitutes an improper and unjustified attempt to intrude on the United States' work product privilege. Its request to produce a witness to testify regarding internal, deliberative positions and materials from the IRS constitutes an irrelevant and wasteful diversion from the issues in this case. Neither request is legally permissible and both border on the frivolous.

Plaintiff's apparent desire is to divert attention from its own discovery failures which are the subject of the United States' pending motion to amend its answer to assert penalties. For instance, plaintiff begins its introduction in its memorandum by saying that "[d]iscovery has been proceeding in this case for more than two years, during which Defendant has provided uniformly inadequate responses to Plaintiff's discovery requests." Pltf's Mem at 2. These allegations have no merit whatsoever. Nor do they have any perceptible legitimate bearing on the issues presented in plaintiff's motion.[2]

---

[2] The theme of "Defendant's inadequate responses to Interrogatories and Requests to Admit. . .", Pltf's mem at 9, runs through plaintiff's entire Statement of the Case. During the more than two years of which plaintiff complains, plaintiff has never moved to compel responses to its interrogatories. Plaintiff did move to have certain responses deemed as admissions or, in

## INTRODUCTION

### A. Nature of the Transaction at Issue in the Instant Lawsuit

This case involves a tax shelter product purchased by Jerry Zucker and James Boyd in the fall of 1999 for the stated purpose of generating a $50 million loss.[3] This transaction was effected through Zucker's and Boyd's purported partnership, JBJZ Partners. Plaintiff is asking this Court to determine that this $50 million tax loss is justified.

The tax shelter in this litigation was developed and marketed by Ernst & Young, Jenkens & Gilchrist, P.C., Deutsche Bank, and Brown & Wood under the name "Currency Options Bring Reward Alternatives" or COBRA. Zucker and Boyd purchased their COBRA tax shelter in 1999 through Ernst & Young. This COBRA tax shelter is but one of 16 COBRA tax shelters that were marketed and sold by Ernst & Young in 1999 and 2000.[4] These 16 transactions generated over $1 billion in fraudulent tax losses.

---

the alternative, for more specific answers. Pltf's mem at 2. Plaintiff neglects to mention, however, that the Court denied its motion on April 16, 2007. See 77 Fed. Cl. 37 (2007). The Court did order the United States to provide amendments to the complained of responses two weeks after the close of discovery. Plaintiff subsequently informed us that it was dissatisfied with certain responses to its Requests for Admissions not even complained of in plaintiff's original motion which the Court denied on April 16. On October 10, 2007, well in advance of the Court ordered date, the United States served amended responses to all of the complained of responses, including those which the Court never ordered us to amend. Plaintiff has never complained about the United States' Amended Responses.

[3] As set forth in the United States' pending motion to amend its answer to assert penalties, the planned transaction was initially to generate a $100 million loss. Govt. Ex. 2257, which plaintiff improperly failed to produce, unqualifiedly proves that Zucker and Boyd were well aware that the *raison d' etre* of COBRA was to generate a massive tax loss, not an economic profit. The planned loss amount was later reduced to $50 million.

[4] The 2000 COBRA transactions are at issue in *Murfam Farms LLC v. United States*, Nos. 06-245T, 06-246T, and 06-247T (Consolidated), and differ from the structure of the 1999 COBRA transactions.

Ernst & Young generally limited the marketing of COBRA only to very wealthy taxpayers who recently had realized a large ordinary or capital gain (over $50 million). The COBRA tax strategy was implemented in a series of highly-choreographed steps in a precise order of sequence. Jenkens & Gilchrist first formed single member limited liability companies (LLCs) for the taxpayers, which LLCs then acquired through the Deutsche Bank offsetting European-style digital options. The taxpayers then transferred the offsetting options to a purported partnership. To achieve their desired tax benefits, the taxpayers claimed that their tax basis in the alleged partnership was solely based on the nominal premium of the purchased option without reduction for the nominal premium received for the sold option. This had the effect of artificially inflating the basis of the purported partners' interest in their alleged partnership.

Within about 30 days, the options expired or were terminated, sometimes with a partial payment on the options, but never enough to cover the taxpayers' transaction costs. Then the taxpayers transferred their purported partnership interests to a newly-formed Subchapter S Corporation. This caused a technical termination of the purported partnership for tax purposes.

Simultaneously with the transfer of their purported partnership interests to the Subchapter S corporation, the taxpayers would cause the partnership to be liquidated. The purported partnership's cash and assets – consisting of foreign currency if an ordinary loss was desired and stock or bonds if a capital loss was desired – would then be distributed to the Subchapter S corporation. The taxpayers took the position that their basis in the capital and/or ordinary assets distributed to the Subchapter S corporation was equal to the inflated basis of their former partnership interests. These assets were then sold to generate a massive noneconomic tax loss. To complete the tax strategy, this artificially-generated tax loss was reported on the returns of

the entities and the individual returns of the taxpayer-participants in a manner so as to conceal its origin and source as well as to conceal the huge transaction-related costs.

Apart from participating extensively in the development and implementation of the product, Jenkens & Gilchrist also prepared and issued a boilerplate legal opinion for the COBRA taxpayers blessing the tax benefits of the transaction. Because of Jenkens & Gilchrist's involvement in the development of the product, Ernst & Young recruited the law firm of Brown & Wood to write a second "prefabricated" and "canned"[5] legal opinion in an attempt to insulate the COBRA taxpayers against the imposition of penalties should the transaction ever be discovered by the IRS. The promoters were paid enormous fees on the transactions based on a percentage of the taxpayer's desired tax loss – with Jenkens & Gilchrist receiving a fee equal to 3% of a taxpayer's desired loss, which it shared with Brown & Wood.

On December 19, 2004, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to JBJZ Partners for its 1999 tax year, which adjustments had the effect of disallowing any tax benefits to Zucker and Boyd on their COBRA transaction.

Throughout this litigation, plaintiff has served contention interrogatories on the United States, which the United States has answered and amended. On August 11, 2006, the United States served its Second Amended Answers to First Set of Interrogatories as well as United States Amended Answers to Second set of Interrogatories. On October 24, 2006, the United States served its Answers to Plaintiff's Third Set of Interrogatories. In these two sets of responses the United States informed the plaintiff that the claimed tax losses were not deductible

---

[5] This is how the COBRA investors characterized the Jenkens & Gilchrist and Brown & Wood legal opinions in their suits against the promoters. *See, e.g., Henry Camferdam, et al. v. Deutsche Bank, et al*., 017-212033-05 (Tarrant Cnty, TX), First Amended Complaint ¶¶ 57, 161, 213.

because they were in violation of various provisions of the Internal Revenue Code as well as a whole array of well-established judicial doctrines. [6] More recently, the United States filed a motion to amend our answer to assert penalties against the plaintiff on the ground that it had improperly attempted to conceal material documents from the IRS.

**B. The United States Has Produced Voluminous Documents in Response to the Plaintiff's Discovery Requests**

In its motion, plaintiff provides a misleading description of the discovery that has occurred in this case. The United States has produced all the documents sought from it concerning the facts in dispute. It has also produced all the documents it has obtained through third-party subpoenas.

**1. Production of Documents from the IRS Administrative File**

At the inception of this action the United States produced a complete copy of the IRS' administrative file, along with a privilege log identifying all documents being withheld upon a claim of privilege. Plaintiff has never sought to challenge any of these privilege claims.

**2. Production of Treasury Regulation Files**

In addition, as referenced in the Joint Preliminary Status Report filed by the parties, the United States also produced a complete copy of internal IRS documents referenced in plaintiff's motion papers, with privilege logs for all documents being withheld upon a claim of privilege.

---

[6] *See* Ex. A to Declaration of David M. Steiner ("Steiner Declaration.") Discovery closed on November 2, 2007 for most issues and, by agreement of the parties, on November 15 for all remaining issues. The United States is now reviewing its previously served responses to see if any further amendments are required.

*See* JPSR entered August 11, 2005, at pp.3-4, Section g, Dkt. No. 18.[7] These documents were actually produced to plaintiff's counsel in the MDL litigation[8] who also represented some of those COBRA taxpayers. Although plaintiff indicated in the JPSR that it planned to challenge these privilege claims,[9] plaintiff's counsel has thus far never challenged any of these privilege claims and has also not specifically identified any of those privilege claims as being at issue on this motion.

**3. Production of Documents Obtained by Subpoena in this Case**

Because the United States was not a participant in the transactions that comprised the tax shelter product at issue here, it did not generate any of the documents related to the design, development, marketing, implementation and reporting of the product. These documents were generated by the taxpayers and the promoters. In addition to requesting the taxpayer's documents, the United States has exhaustively subpoenaed the promoters to obtain transactional

---

[7] *See* United States' Response to First Request for Production, attached hereto as Govt. Ex. B to the Steiner Declaration. In these requests, plaintiff requested all documents relating in any manner to: 1) Chief Counsel Notice 20003-020; 2) Chief Counsel Notice 2003-030; 3) Temporary Treasury Regulation 1.752-6T; 4) Proposed Treasury Regulation 1.752-7; 5) and Temporary Treasury Regulation 1.358-7. In its response, the United States agreed to produce all responsive non-privileged documents, notwithstanding and without waiving its objections as to relevancy, privilege, and burden, in exchange for plaintiff''s agreement that the United States only be required to produce draft privilege logs, and would be required to produce a supporting declaration only in the event plaintiff sought to challenge any of these privilege logs. United States' Response Nos. 4-5, Govt. Ex. B. Concurrently, the United States produced all non-privileged documents and privilege logs identifying all documents being withheld upon a claim of privilege. On February 28, 2006, a case management plan was tendered in the Multi District Litigation (MDL) involving the COBRA tax shelters, signed by the United States' and plaintiff's counsel which was approved on March 13, 2006, Dkt. 33, which memorialized this agreement. *See In re COBRA Tax Shelters Litigation*, 1:05-ml-09727-JDT WTL (USDC SDIN), Dkt. 31, at pp.26-27, Steiner Declaration, Govt. Ex. C.

[8] *In re COBRA Tax Shelters Litigation*, 05-9727 (S.D. Ind.).

[9] *See* JPSR entered August 11, 2005, at 4, Section g, Dkt. No.18.

documents directly from the promoters. This has included the core promoters, Ernst & Young, Jenkens & Gilchrist, Deutsche Bank, and Brown & Wood. The United States has, in turn, produced all these documents to plaintiff. This included all of the legal opinions on similar abusive tax shelter transactions that the United States had obtained from the law firms of Jenkens & Gilchrist and Brown & Wood.

**D. Rule 30(b)(6) Notices and Subpoenas.**

Plaintiff served two Rule 30(b)(6) Notice and Subpoenas on the United States. The first was served on March 30, 2007 and requested the United States to designate a witness to testify on six separate topics.[10] Plaintiff did not attach this notice and subpoena as an exhibit to its motion but does attach our objection to this notice which was served on April 19,2007.[11] In the Unites States' objection, apart from raising a whole series of specific objections, we also generally objected to the notice and subpoena on the ground that it was improper to name the United States rather than a specific Governmental agency as the deponent. In apparent response to that general objection, four days later on April 23, 2007, plaintiff served a second Rule 30(b)(6) Notice and Subpoena which was identical in all respects to its first notice and subpoena except that it was now issued to the IRS – and not the United States – and requested that agency to designate a witness to testify on the six topics.[12] Although plaintiff has attached only the Rule 30(b)(6) Notice and Subpoena issued to the IRS as an exhibit to its motion, it appears to be seeking to compel enforcement of both Rule 30(b)(6) Notices and Subpoenas. In its motion,

---

[10]This notice is attached to the Steiner Declaration as Exhibit D.

[11]See United States' Objection. Pltf's Ex. 2, App. at 30-47.

[12]See United States' Objection. Pltf's Ex. 2, App. at 48-55.

plaintiff states that "[i]t is entirely Defendant's decision whether to designate an IRS representative or one from the DOJ [Department of Justice] as the person to be deposed."[13]

Plaintiff's Rule 30(b)(6) notices purportedly seeks both testimony and documents from the United States and the IRS. *See e.g.*, Pltf's Ex. 1, App. at 1. The underlying Exhibit A attached to both subpoenas, however, does not in fact list any materials to be produced.[14] Moreover, plaintiff's motion seeks to compel testimony on only three of the six topics set forth in the attached Exhibit A – as designated in paragraphs 1(a), (c) and (d). These paragraphs specifically state:

> 1. Pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, the INTERNAL REVENUE SERVICE [or the UNITED STATES] is directed to designate a person or persons to "testify to **Defendant'**s legal and factual positions regarding the transactions at issue in this matter and that [are] more generally known as COBRA. Specifically the designated person or persons is directed to testify as to the matters which include but, may not be limited to:
>
> a. **Defendant's legal and factual position** with regard to the issuance of Treas. Reg. § 1.752-6T on June 23, 2003, and the promulgation of Treas. Reg. § 1.752-6 on May 23, 2004; the specific application of Treas. Regs §§ 1.752-6T and 1.752-6 to the above-styled litigation; whether prior to the issuance of these regulations there was substantial authority for the reporting position that a contingent obligation did not constitute a liability within the meaning of I.R.C. § 752; and separately, whether these regulations were issued to enhance **Defendant's** litigation position with respect to transactions described in Notice 2000-44.
>
> * * *
>
> c. **Defendant's legal and factual position** regarding whether each of the sold and purchased digital options contracts at issue in this case (Attachments 1, 2, and 3) are a single option or investment; and separately, whether for purposes of determining the "aggregate amount invested" under I.R.C. § 6707, **Defendant** is taking the position that each digital option contract, such as those involved in this case, are separate options or investments rather than a single option or investment.

---

[13] Pltf's Mem. at 13.

[14] *See* Pltf's Rule 30(b)(6) notice, Pltf's Ex. 1, App. 11-29, at pp. 11 and 16-17.

d. The names of tax advisors and firms that issued tax opinions regarding transactions that are the same as, or substantially similar to, those set forth in I.R.S. Notice 2000-44, 2000-2 C.B. 255 (August 14, 2000) and whose opinions concluded that there was substantial authority for, or that taxpayers would more-likely-than-not prevail on the merits if challenged by the Internal Revenue Service on, the position that contingent obligations are not liabilities within the meaning of I.R.C. § 752. This request is limited to those advisors or firms whose opinions **Defendan**t has rejected as a basis for the reasonable cause defense to I.R.C. § 6662 penalties.

*See* Appendix to Pltf's Rule 30(b)(6) Notice and Subpoena, Pltf's Ex. 1, App. 11-29, at pp. 16-17 (emphasis added).

## ARGUMENT

## I

## PLAINTIFF'S REQUESTS FOR UNITED STATES OR IRS TESTIMONY CONCERNING THE LEGAL AND FACTUAL ANALYSIS OF THE DEFENDANT CANNOT LEAD TO ADMISSIBLE EVIDENCE

### A. Introduction.

The three deposition topics that plaintiff seeks testimony from the United States or the IRS are improper for a variety of reasons. First, plaintiff is essentially proposing a "contention deposition" to the extent plaintiff seeks to obtain the "legal theories and factual support" of the United States in this litigation. This is true whether it seeks this information from either a representative of the IRS or from counsel for the United States directly. It is firmly established that such a deposition is improper. Second, such a deposition would be equally objectionable to the extent that plaintiff seeks to look behind the FPAA "to establish what [*were*] the IRS's legal

and factual positions."[15] Accordingly, because none of these topics is reasonably calculated to lead to admissible evidence, plaintiff's motion should be summarily denied.

### B. The Legal Contentions of the United States Are Properly Examined Through Contention Interrogatories

The principal problem with plaintiff's requests for IRS testimony concerning the United States' legal and factual analyses is that counsel for the United States has not disclosed this information to the IRS. The IRS is not privy to the legal and factual positions which have been developed by counsel for the United States in this litigation. Moreover, to the extent that plaintiff's subpoena could be construed as seeking this information directly from the United States, it is well established that the legal contentions of the United States are properly examined through contention interrogatories, not Rule 30(b)(6) depositions. *See Exxon Research and Engineering Co. v. United States*, 44 Fed. Cl. 597 (August 27, 1999). In essence, plaintiff appears to seek a "contention deposition." Courts disfavor this tactic. Recently, faced with like circumstances in another federal tax case, one court stated:

> The information BB&T seeks from the depositions is for the United States to identify the factual and legal bases for the denial of the 1997 tax deductions. . . . [T]his type of request is usually made by serving contention interrogatories which are favored over contention depositions because, by their nature, contention discovery will usually require the assistance of a party's attorney. . . . Thus, the contention deposition will likely involve the deposition of a party's attorney, which is not favored.

*BB&T Corp. v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006) (internal citations omitted). *See also, In re Independent Service Org. Antitrust Litigation*, 168 F.R.D. 651 (D.Kan. 1996). Incredibly, the plaintiff has already served a series of contention interrogatories on the United

[15] Pltf's Mem. at 15.

States on many of the same issues set forth in its Rule 30(b) notice, as to which the United States has fully responded in considerable detail.[16]

Even more fundamentally, the only individuals who are knowledgeable as to what are the legal and factual positions of the United States in this litigation are trial counsel for the United States. By its proposed Rule 30(b)(6) depositions, plaintiff therefore seeks to invade the work product of the United States' trial counsel. Plaintiff plainly may not conduct a "contention deposition" of the undersigned trial counsel. *See* RCFC 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947); *BB&T*, 233 F.R.D. at 449 ("Because of their intrusive, disruptive nature, contention depositions of a party's attorneys are not favored."). Court have uniformly rejected attempts to depose a party's trial counsel. *See e.g., SEC v. Buntrock*, 2004 WL 1470278, *2 (N.D. Ill. 2004) (Rule 30(b)(6) deposition of SEC attorneys denied because it "impermissibly seeks to invade the SEC's attorney work product.") *Id*. at *2-3; *see also SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1993) ("[T]he proposed Rule 30(b)(6) deposition constitutes an impermissible attempt by defendant to inquire into the mental processes and strategies of the SEC."); *SEC v. Rosenfeld*, 1997 WL 576021, *3 (S.D.N.Y. 1997) ("This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the SEC's attorney work product, and is denied for that reason.").

It is equally clear that plaintiff may not achieve this end indirectly through a Rule 30(b)(6) deposition of an IRS witness who of necessity would serve as a conduit for trial counsel's work product. To prepare such an IRS witness, the United States' trial counsel would have to impart his legal thinking as well as his knowledge of the facts obtained through discovery to the witness. Plaintiff's proposed inquiry into the United States' trial counsel's

---

[16]See United States' Responses to First, Second and Third Sets of Interrogatories. Steiner Declaration, Exhibit A.

evaluation of facts obtained through discovery, if allowed, would also violate the attorney work product doctrine.[17] As plaintiff well knows, "it is the selection and compilation of the relevant facts that is at the heart of the work product doctrine." *EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)).

## C. The Unpublished Personal Views of IRS Personnel Are Irrelevant and Not Within the Scope of Plaintiff's Notice

Plaintiff's own papers make clear that "Plaintiff has not asked for the views of any individual IRS employees, the requests seek *Defendant's* positions on these matters." Pltf's Mem. 15-16 (emphasis in original). Plaintiff makes this concession because this Court has made clear the internal deliberative documents of the IRS cannot provide legislative history for statutory provisions of the Code. *See Evergreen Trading v. United States,* 75 Fed.Cl. 730 (2007).[18] Morever, the published regulations and notices of the IRS are what they are, and

---

[17]*See also Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985); *In re Independent Service Org. Antitrust Litig*., 168 F.R.D. 651, 654 (D. Kan. 1996) (holding that "requir[ing] . . . counsel [to] 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim" in a Rule 30(b)(6) deposition would raise "serious privilege concerns"); *United States v. District Council of New York,* 1992 WL 208284 at *8-9 (S.D.N.Y. 1992); *In re Linerboard Antitrust Litig*., 237 F.R.D. 373, 384 (E.D. Pa. 2006) (finding that "if [a] Rule 30(b)(6) designee must be educated with all facts within [counsel's] knowledge, the Rule 30(b)(6) deposition will become the functional equivalent of a deposition of" counsel).

[18]*See also Siddell v Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000) (rejecting internal IRS memoranda as evidence regarding interpretation of disputed Treasury regulation); *ISI Corp.*, 503 F.2d at 559 (9th Cir. 1974) ("The opinions, conclusions and reasoning of government officials are not subject to discovery"); *In re G-I Holdings Inc*., 2005 WL 1303473 (D.N.J. 2005) (denying reconsideration of order barring taxpayer from deposing IRS attorney about legal opinions set forth in memorandum that he authored); *Flamingo Fishing* v. *United States,* 31 Fed.Cl.655, 657-58 (1994) (protective order barring taxpayer from deposing IRS agents and supervisors because opinions and conclusions of IRS officials regarding applicable Internal Revenue Code provisions were irrelevant to merits of case); *Deluxe Check Printers v. United States*, 5 Cl.Ct. 498 (1984) (denying taxpayer discovery regarding IRS documents as irrelevant to meaning of disputed tax statute and Treasury regulation); *Vons Cos.Inc*. v. *United States,* 51 Fed.Cl. 1, 6 (2001); *United*

cannot

be altered or impeached by the internal writings of IRS employees. Similarly, plaintiff does not claim here that there is any ambiguity in the published interpretations of the term "liability" that would require further explanation. To the contrary, plaintiff claims that such interpretations were clear and settled, but changed with the issuance of the new regulations in 2003. Justifications for the discovery in cases cited by plaintiff, based on a need to explain ambiguous law or regulations, therefore, are not applicable here, as well as wrong.

Plaintiff reliance upon *Marriott Int'l Resorts L.P. v. United States*, 61 Fed.Cl. 411, 415-16 (2004) *rev'd*, 437 F.3d 1302 (Fed. Cir. 2006) is misplaced. In that case, the taxpayer requested internal IRS documents to support its position of potentially conflicting interpretations of Treasury Regulations by the IRS. In holding that the discovery requests were potentially relevant to the issues in the case, the court cited and heavily relied upon *Vons Cos. v. United States*, 51 Fed.Cl. 1, 4 (2001). *Id* at 415-16. However, in *Vons Cos*., the court took pains to emphasize that the only type of IRS documents that could even be remotely relevant to a determination of potentially conflicting IRS interpretations were those that reflected the official IRS position of the law. The court made eminently clear that documents containing the personal views of IRS employees had no relevance whatsoever to this endeavor and thus were not discoverable. *Id* at 4. And, as already noted, the official positions of the IRS on the topics in

---

*States v. Nordberg*, 1996 WL 170119, *2-3 (D. Mass. 1996) (barring taxpayer from deposing IRS agents, because liability for tax hinged on taxpayers' "treatment of the trading losses on their 1987 tax return . . . regardless of what an IRS agent, at any time, might have thought"), *aff'd by unpublished opinion*, 97 F.3d 1445 (1st Cir. 1996); *cf. United States v. Carroll*, 320 F. Supp.2d 748, 755 (S.D. Ill. 2004) (legal opinions of experts who co-authored disputed federal agency regulations held "not authoritative to the extent they interpret and apply Congressional statutes relevant to the governmental groups for which they were formerly employed").

plaintiff's Rule 30(b)(6) notice are a matter of public record and are all contained in published notices and regulations.

Equally important, plaintiff never challenged the United States' privilege logs which were timely served with our responses to its production requests.[19] Plaintiff cannot now elide the United States' privilege and Section 6103 claims by the mere device of examining an IRS deponent about matters of privilege to which it previously never sought to challenge. Any attempt by plaintiff to make such an inquiry would be futile since the IRS would not authorize a representative to answer such questions. *See generally*, 26 C.F.R. §§ 301.9000-3; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468-70 (1951).

**D. The Factual and Legal Analysis of the IRS in Making the FPAA Adjustments Are Irrelevant in this Litigation**.

It is firmly settled that this TEFRA suit is a *de novo* proceeding in which the adjustments set forth in the FPAA are presumed correct, and the Court does not look behind the FPAA to examine the factual and legal analysis employed by the IRS in making the adjustments. *Sealy Power, Ltd. v. Commissioner*, 46 F.3d 382, 385-87 (5th Cir. 1995). Thus, as a *de novo* proceeding, the conclusions or analyses of the IRS are utterly irrelevant to this Court's independent determination of plaintiff's claims in this case. *See e.g., TIFD III-E Inc. v. United States*, 342 F.Supp.2d 94, 108 (D. Conn. 2004) (The court is to review plaintiff's "tax liability *de novo*, ignoring the factual finding and legal analysis of the Commissioner of Internal Revenue").[20]

---

[19]See note 6, *supra* and Exhibit A, Steiner Declaration.

[20]*Reversed on other grounds*, 459 F.3d 220 (2d Cir. 2006). *See also*, *Sealy Power, Ltd. v. Commissioner*, 46 F.3d 382, 385-87 (5th Cir. 1995); *In re G-1 Holdings, Inc.*, Civ. No. 02-03082 (WGB) (D.N.J. July 16, 2004); *Cook v. United States*, 46 Fed. Cl. 110, 113 (Fed. Cl. 2000) ("factual issues are tried *de novo* in this court, with no weight given to subsidiary factual finding

Consequently, the opinions, reasoning and conclusions of IRS officials in reaching their conclusions in the FPAA are not subject to discovery. See *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir. 1974); *Flamingo Fishing Corp. v. United States*, 31 Fed.Cl. 655, 657-58 (1994) (protective order barring taxpayer from deposing IRS agents and supervisors because opinions and conclusions of IRS officials regarding IRS documents as irrelevant to meaning of disputed tax statute and Treasury Regulations). And, because this Court determines the facts and applicable law *de novo*, discovery concerning the process behind the FPAA (other than production of the underlying factual documents) could not possibly be reasonable calculated to lead to admissible evidence.

To the extent any judicial interpretation of §752 is necessary, "internal administrative documents" are irrelevant. *See Sidell v. Commissioner*, 225 F.3d at 111. (The "IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings.... Because these internal memoranda represent the personal views of the authors, not the official positions of the agency, they do not figure in our decisional calculus."). *See also Deluxe Check Printers, Inc. v. United States*, 5 Cl.Ct. 498, 500 - 01 (1984) (internal administrative documents have no bearing on the purpose of Congress in enacting statutory language). Instead, the court will look to the statute, legislative history (if necessary) and existing case law. *Id.*

**E. There Are No IRS Personnel with Knowledge of the Matters Set Forth in Item 1(a)**

Item 1(a) of Plaintiff's Rule 30(b)(6) Notice and Subpoena to the IRS requests testimony

---

made by the Service in its internal administrative proceedings."); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (Tax Ct. 1974) (this "proceeding is *de novo;* our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level."); and *Revell, Inc. v. Riddell*, 273 F.2d 649, 658-59 (9th Cir. 1959).

from the IRS on the defendant United States' legal and factual position in this litigation with regard to:

1) the issuance of Treas. Reg. § 1.752-6T on June 23, 2003, and the promulgation of Treas. Reg. § 1.752-6 on May 23, 2004;
2) the specific application of Treas. Regs §§ 1.752-6T and 1.752-6 to the above-styled litigation;
3) whether prior to the issuance of these regulations there was substantial authority for the reporting position that a contingent obligation did not constitute a liability within the meaning of I.R.C. § 752; or
4) whether these regulations were issued to enhance Defendant's litigation position with respect to transactions described in Notice 2000-44.

As discussed in Section B *supra*, the legal and factual positions of the United States in this litigation are protected by the work product privilege and have not been shared with the IRS. It is therefore not possible for the IRS to designate such a person.

By way of analogy, before the Secretary of the Treasury promulgated new regulations under §752 in 2003, the IRS' interpretation of that term was contained only in revenue rulings. *See, e.g.*, *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434, 37435, ("There is no statutory or regulatory definition of liabilities for purposes of section 752.") Such published, official interpretations of the IRS cannot be contradicted or bolstered by internal documents authored by individual IRS employees. *See, e.g.*, Treas. Reg. §601.601(d)(2)(i)(a) ("A Revenue Ruling is an official interpretation by the Service that has been published in the Internal Revenue Bulletin. Revenue Rulings are issued only by the National Office and are published for the information and guidance of taxpayers, Internal Revenue Service officials and others concerned."); *United States v. American Telephone and Telegraph Co.*, 524 F.Supp. 1381, 1387 (D.D.C. 1981) ("Extrinsic evidence as to how and why the FCC reached its decisions and what it intended thereby – either by Commissioners speaking in their individual capacities or by employees of the FCC – are irrelevant to the question whether defendant's compliance was reasonable."); and

*Deluxe Check Printers, Inc*., *supra.* The "settled" law, or policy of the IRS, can be established only through the Code, case law, regulations promulgated by the IRS and guidance and revenue rulings officially issued by the IRS.

Of course, the 2003 regulations expressly define "liability," and describe the proper tax treatment of a partnership's assumption of liabilities. *See* Treas. Reg. §§ 1.752-1 and 1.752-6; and *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434 (June 24, 2003). There is no claim that these regulations are ambiguous. Nor could there be – they clearly address the situation presented here (the purported contribution of foreign currency options to JBJZ partnership by its partners), and disallow the tax treatment claimed by plaintiff. *See, e.g.*, Treas. Reg. § 1.752-6(c); and *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434, 37436 (June 24, 2003); *Cemco Investors L.L.C. v United States*, 2007WL 951944 (N.D. Ill. March 27, 2007) (on appeal). In fact, plaintiff's only claim regarding this regulation is that it is invalid if applied to transactions in 2001. The Court must decide this issue of validity, however, without recourse to or consideration of any internal deliberations. *See Deluxe Check Printers, Inc., supra*; and *Furman v. United States*, 1983 WL 1687 (D.S.C. 1983) (the issue of invalidity is "one which this Court must decide based on legal authorities.") Accordingly, the requested testimony could not possibly be reasonably calculated to lead to the discovery of admissible evidence.

**F. There Are No IRS Personnel with Knowledge of the Matters Set Forth in Item 1(c)**

Item 1(c) of plaintiff's Rule 30(b)(6) Notice and Subpoena to the IRS requests testimony from the IRS on the United States' legal and factual position with regard to whether the COBRA transactions were in substance a single option investment. Plaintiff also seeks testimony from the IRS on the United States' legal and factual position on the meaning of the term "aggregate amount invested" in I.R.C. § 6707. The legal and factual positions of the United States in this litigation are protected by the work product privilege and its legal and factual positions have not been shared with the IRS. It is therefore not possible for the IRS to designate such a person.

Moreover, the United States has, as yet, no legal or factual position in this case with respect to the meaning of the term "aggregate amount invested" in I.R.C. § 6707 or generally on the computation of the promoter penalty because the promoter penalty is not at issue and has absolutely no relevance to the issues before this Court.[21] The promoter penalty provision arises under different statutes, *i.e.*,26 U.S.C. §§ 6707 and 6111, than the statutory provisions and firmly established case law that are here at issue. As fully explained in our opposition to plaintiff's motion to compel Jenkens & Gilchrist, plaintiff's position that the IRS's calculation of the promoter penalty against Jenkens & Gilchrist is somehow relevant to the issues in this proceeding is frivolous. None of the statutes or Treasury Regulations used in the calculation of the promoter penalty are even remotely applicable here.

**G. There Are No IRS Personnel with Knowledge of the Matters Set Forth in Item 1(d)**

Item 1(d) of plaintiff's Rule 30(b)(6) Notice and Subpoena to the IRS requests testimony from the IRS regarding the identity of individuals and firms who issued legal opinions regarding

---

[21]See the United States' Opposition to Plaintiff's Motion to Compel Non-Party Jenkens and Gilchrist for a full discussion of this issue.

transactions that are the same as, or substantially similar to, those set forth in I.R.S. Notice 2000-44, 2000-2 C.B. 255 (August 14, 2000). Importantly, this topic is specifically limited to requesting the identity of such individuals and firms whose legal opinions the United States has rejected as a basis for the reasonable cause defense to I.R.C. § 6662 penalties. But the legal and factual positions of the United States in this litigation are protected by the work product privilege and its legal and factual positions have not been shared with the IRS. It is therefore not possible for the IRS to designate such a person.

**II.**

**PLAINTIFF HAS NOT MADE A REQUEST FOR DOCUMENTS**

Plaintiff's Rule 30(b)(6) Notice and Subpoena to the IRS does not include a request for the production of documents. The underlying subpoena and attached Exhibit A do not list any documents to be produced.[22] As evidenced by the Rule 30(b)(6) notice and subpoena to Jenkens & Gilchrist, plaintiff knows how to request documents.[23] The subpoena issued to the IRS made no such request.[24] Nor should the subpoena and attached Exhibit A be construed or amended to include a request for any documents. Given the expiration of discovery, the time for amending the notice and subpoena has long since passed

**A. Item 1(a)**

Item 1(a) of Plaintiff's Rule 30(b)(6) Notice and Subpoena to the IRS requests testimony from the IRS on the defendant United States' legal and factual position with regard to:

1) the issuance of Treas. Reg. § 1.752-6T on June 23, 2003, and the promulgation of

[22] *See* Pltf's Rule 30(b)(6) notice, Pltf's Ex. 1, App. 11-29, at pp. 11 and 16-17.

[23] Pltf's Appendix, Ex. 1 at 1-10, pp 7-10.

[24] Pltf's Appendix, Ex. 1 at 11- 29, pp.16-17.

Treas. Reg. § 1.752-6 on May 23, 2004;

2) the specific application of Treas. Regs §§ 1.752-6T and 1.752-6 to the above-styled litigation;

3) whether prior to the issuance of these regulations there was substantial authority for the reporting position that a contingent obligation did not constitute a liability within the meaning of I.R.C. § 752; or

4) whether these regulations were issued to enhance Defendant's litigation position with respect to transactions described in Notice 2000-44.

To the extent this item could be construed or amended to be a request for documents, the IRS has none. The United States has not provided the IRS with its legal and factual position with respect to these matters.

To the extent that this item could be further construed or amended to be a request for the IRS' regulation files related to Treas. Reg. §§ 1.752-6T and 1.752-6, these were previously produced over two years ago, without waiver of the United States' relevancy objection, along with privilege logs for all documents withheld upon a clam of privilege. An agreed upon procedure was set in place by which plaintiff could challenge any of these privilege claims. *See* fn.7, *supra*. Plaintiff has not challenged any of these privilege claims. Hence, there is no good reason to construe or amend the subpoena to request this information from the IRS. However, in the event plaintiff's subpoena is construed as somehow now challenging any of those privilege claims, the United States respectfully requests leave to file declarations in support of those privilege claims.

**B. Item 1(c)**

Item 1(c) of Plaintiff's Rule 30(b)(6) Notice and Subpoena to the IRS requests testimony from the IRS on the defendant United States' legal and factual position with regard to whether the COBRA transactions were in substance a single option investment. To the extent this item could be construed as a request for documents, the IRS has none. However, the United States

has produced two expert witness reports to plaintiff that have fully addressed the issue as to why the offsetting options should be treated as a single investment from an economic perspective. What is more, plaintiff has extensively deposed both of these experts on their analysis, opinions, and conclusions on this issue.

Plaintiff also seeks testimony from the IRS on the Defendant United States' legal and factual position on I.R.C. § 6707 in this litigation. Again, to the extent this could be construed as a request for documents, the IRS has none. To state the obvious, the United States has no such documents because the promoter penalty was not asserted against JBJZ partners.

**C. Item 1(d)**

Item 1(d) of plaintiff's Rule 30(b)(6) Notice and Subpoena to the IRS requests testimony from the IRS regarding the identity of individuals and firms who issued legal opinions regarding Notice 2000-44 transactions which the United States has rejected as a basis for the reasonable cause defense to I.R.C. § 6662 penalties. Here too, to the extent this item could be construed as a request for documents, the IRS has none.

To the extent this item could be construed as a request to compel the IRS to produce all other legal opinions that it has obtained from other taxpayers regarding transactions that are the same as, or substantially similar to, those set forth in I.R.S. Notice 2000-44, 2000-2 C.B. 255 (August 14, 2000), those documents constitute other taxpayer return information and cannot be disclosed. *See*, §6103 (a). However, the United States has already obtained and produced to plaintiff all of the documents that it obtained from the promoters of the COBRA transactions, including all of the legal opinions with respect to which there has been a waiver of privilege. There is therefore no good reason to construe or amend the subpoena to request this information from the IRS.

## CONCLUSION

For the foregoing reasons the motion to compel the United States should be summarily denied. There are no IRS personnel who can testify with respect to the requested legal and factual positions of the United States because such information has not been disclosed by counsel for the United States to the IRS. So too, there would also be no responsive documents, even if such documents had in fact been requested. Accordingly, the United States respectfully requests the Court to quash the plaintiff's Rule 30 (b)(6) Notices and Subpoenas issued to the United States and the IRS in accordance with the proposed protective order submitted herewith.

Respectfully submitted,

s/ Dennis M. Donohue
DENNIS M. DONOHUE
Attorney of Record

Chief Senior Litigation Counsel
Department of Justice - Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3rd, 2007, I electronically filed the foregoing UNITED STATES' OPPOSITION TO PLAINTIFF'S CORRECTED AND AMENDED MOTION TO COMPEL AND MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR A PROTECTIVE ORDER with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner
David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892