IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

**APPENDIX**

| | | |
|---|---|---|
| **Exhibit A1** | United States' Second Amended Answers to First Set of Interrogatories and United States' Answers to Second Set of Interrogatories dated August 11, 2006. | Pages 001-027 |
| **Exhibit A2** | United States' Answers to Plaintiff's Third Set of Interrogatories dated October 24, 2006. | Pages 028-055 |
| **Exhibit B** | United States' Response to Second Set of Production Requests dated August 4, 2005. | Pages 056-059 |
| **Exhibit C** | Case Management Plan dated March 13, 2006. | Pages 060-090 |
| **Exhibit D** | Notice of Deposition dated March 30, 2007 with attachments. | Pages 091-109 |

**U.S. Department of Justice**

**Tax Division**

*Please reply to: Civil Trial Section, Northern Region*
*P.O. Box 55*
*Ben Franklin Station*
*Washington, D.C. 20044*

*Facsimile No. (202) 514-5238*
*Trial Attorney: David M. Steiner*
*Attorney's Direct Line: (202) 307-5892*

EJO'C:DMD:DMSteiner
154-2270 CMN 2005103170

August 11, 2006

**VIA FEDERAL EXPRESS**

Joel N. Crouch, Esquire
Meadows, Owens, Collier, Reed,
Cousins & Blau, L.L.P
901 Main Street, Suite 3700
Dallas, Texas 75202

Re: JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership v. United States
Fed. Cl. No. 05-231 T

Dear Mr. Crouch:

Enclosed please find the United States' Second Amended Answers to First Set of Interrogatories as well as United States' Amended Answers to Second Set of Interrogatories.

Sincerely yours,

DAVID M. STEINER
Trial Attorney
Civil Trial Section, Northern Region

Enc.

cc: F. Anthony Paganelli, Esq.
Sommer Barnard, P.C.
One Indiana Square, Suite 3500
Indianapolis, IN 46204

GOVERNMENT EXHIBIT
A1

Joseph A. Pitzinger, Esq.
Unites States Dept. of Justice
717 North Harwood, Suite 400
Dallas, TX 75201

Jonathan Blacker, Esq.
Unites States Dept. of Justice
717 North Harwood, Suite 400
Dallas, TX 75201

1862106.1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**UNITED STATES' SECOND AMENDED ANSWERS TO FIRST SET OF INTERROGATORIES**

In accordance with Rule of Civil Procedure 33, Respondent, the United States of America, responds to Plaintiff's First Set of Interrogatories as follows:

1. Do you contest that the transactions described in IRS Notice 2000-44 generally, and this case specifically, do not involve the acceleration or duplication of losses as contemplated by Section 309 of the Community Renewal Tax Relief Act of 2000 (Public Law 106-554, 114 Stat 2763)? If you contest this fact, explain how a loss is accelerated or duplicated in any of the transactions described in IRS Notice 2000-44 generally and in this case specifically.

Answer: Respondent objects to this interrogatory on the ground that it involves "inquiries into 'issues of pure law'" to the extent that it seeks information with respect to transactions described in IRS Notice 2000-44 generally. IRS Notice 2000-44 refers to a number of different transactions not at issue in this case. Accordingly, to that extent, this interrogatory involves a

pure question of law and is improper. *Kendrick v. Sullivan*, 125 F.R.D. 1,2 (D.C. 1989) citing Notes of Advisory Comm. On Rules, 1970 Amend. to Rule 33; *Steil v. Hunana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000); *Langer v. Presbyterian-University of Pennsylvania Medical Center*, 1988 W.L. 56972 (E.D. Penn. 1988). Court of Fed. Cl. Rule 33(c) requires that contention interrogatories be posed in a manner that inquire into the application of law to the facts at issue. *See e.g. Kendrick v. Sullivan*, 125 F.R.D. at 3. Interrogatories that seek abstract opinions of the law or pure legal contentions fall outside the bounds of Rule 33(b) and are therefore impermissible. *See, e.g., Abbott v. United States*, 177 F.R.D. 92, 93-94 (N.D.N.Y. 1997). *Ransom v. United States*, 8 Cl.Ct. 646, 647-48 (1985); Notes of Advisory Comm. on Rules, 1970 Amend. to Rule 33.

With respect to the transactions at issue in this case, Respondent is not taking the position that these transactions involve the acceleration or duplication of losses. Rather, it is our position that the purpose of the issuance of Temporary Treasury Regulation §1.752-6T was reflected in the preamble to these regulations. The preamble expressly noted that prior to the enactment of IRC Section 358(h) and Section 309(c) and (d)(2) of the Community Renewal Tax Relief Act of 2000 ("Act"), there was a lack of specific rules addressing the treatment of liabilities upon the transfer of property to a corporation or a partnership, which, in turn, led to interpretations of then existing law that failed to reflect the true economics of certain transactions. In some cases, taxpayers continued to assert these interpretations even after the enactment of the Section 358(h) and Section 309(c) and (d)(2) of the Act. For example, in a transaction addressed in Notice 2000-44 (2000-2 C.B. 255), a taxpayer, as in the instant case, purchases and writes economically offsetting options and then purports to create substantial positive basis by transferring those

option positions to a partnership. On the disposition of the partnership interest, the liquidation of the partner's interest in the partnership, or the taxpayer's sale or depreciation of distributed partnership assets, the taxpayer claims a tax loss, even though the taxpayer has incurred no corresponding economic loss. See, Proposed Rules Department of the Treasury Internal Revenue Service 26 CFR Part 1, Assumption of Partner Liabilities, Tuesday, June 24, 2003, 68 FR 37414-01 (June 24, 2003). The regulations were designed to prevent such abuse of a taxpayer claiming a tax loss where it has incurred no real economic loss.

2. The preamble to Temporary Treasury Regulation §1.752-6T states that the regulation is necessary to prevent abuse. Please explain how Treas. Reg. §1.752-6 or §1.752-6T is necessary to prevent the type of abuse perceived by the IRS in the transactions described in IRS Notice 2000-44 generally and in the transactions at issue in this case specifically.

Answer: Respondent objects to this interrogatory on the ground that it involves "inquiries into 'issues of pure law" to the extent that it seeks information with respect to transactions described in IRS Notice 2000-44 generally. IRS Notice 2000-44 refers to a number of different transactions not at issue in this case. Accordingly, to that extent, this interrogatory involves a pure question of law and is improper. *Kendrick v. Sullivan*, 125 F.R.D. 1,2 (D.C. 1989) citing Notes of Advisory Comm. On Rules, 1970 Amend. to Rule 33; *Steil v. Hunana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000); *Langer v. Presbyterian-University of Pennsylvania Medical Center,* 1988 W.L. 56972 (E.D. Penn. 1988). Court of Fed. Cl. Rule 33(c) requires that contention interrogatories be posed in a manner that inquire into the application of law to the facts at issue. *See e.g. Kendrick v. Sullivan*, 125 F.R.D. at 3. Interrogatories that seek abstract opinions of the law or pure legal contentions fall outside the bounds of Rule 33(b) and are therefore impermissible. *See, e.g., Abbott v. United States*, 177 F.R.D. 92, 93-94 (N.D.N.Y.

1997). *Ransom v. United States,* 8 Cl.Ct. 646, 647-48 (1985); Notes of Advisory Comm. on Rules, 1970 Amend. to Rule 33. With respect to the transactions at issue in this case, see answer to interrogatory 1, above, which explains the type of abuse that Temporary Treasury Regulation §1.752-6T was directed to prevent and why it was necessary to issue this regulation ro prevent such abuse.

3. Do you contest that the Options contributed to JBJZ Partners would constitute "liabilities within the meaning of 26 U.S.C. § 752 in the absence of Treas. Reg. §§ 1.752-6T and 1.752-6? If you do contest this fact, fully describe your position and provide a complete explanation of its legal and factual basis.

Answer: Respondent objects to this interrogatory on the ground that it poses a hypothetical legal scenario unrelated to the law and facts of the case. *Abbott v. United States*, 177 F.R.D. 92, 93-94 (N.D.N.Y. 1997); *Kendrick v. Sullivan*, 125 F.R.D. at 3; *Mobil Oil Corporation v. Department of Energy*, 1982 W.L 1135 (N.D. N.Y. 1982). Respondent has not, in this litigation, made the subject of dispute, contention or litigation, that options contributed to JBJZ Partners constitute "liabilities" within the meaning of 26 U.S.C. § 752 in the absence of Treas. Reg. §§ 1.752-6T and 1.752-6. This is because the purported assumption of liabilities by JBJZ partners occurred on November 24, 1999, after the effective date for Treas. Reg. § 1.752-6. See FPAA, Exhibit A, Item 4. Interrogatories calling for an opinion or contention based on hypothetical scenario are always improper. *See, e.g., Mobil Oil Corporation v. Department of Energy*, 1982 W.L 1135 (and cases cited therein.); *Kendrick v. Sullivan*, 125 F.R.D. at 3; *Abbott v. United States*, 177 F.R.D. 92, 93-94. Without waiving these objections, the United States states that even absent Treas. Regs. §§ 1.752-6T and 1.752-6, the options offset each other and you can't just disregard

one leg and claim a phony loss that does not reflect reality. As such, there was no liability in fact.

Secondly, IRC § 752 in no way limits the meaning of the term "liability." The term "liability" in Section 752 encompasses all liabilities, including contingent liabilities. *See*, *Coltec Industries v United States*, 2006 WL 1897077 (Fed Cir, July 12, 2006) Section 752 must be read *in pari materia* with Section 358. Both of these statutes use the term "liability" in the same manner and context. In 2000, Congress specifically stated that "the term 'liability' in Section 358 shall include any fixed or contingent obligation to make payment, without regard to whether the obligation is otherwise taken into account for purposes of this title." IRC § 358(h)(3). Congress made clear that this amendment, and rules to prevent abuses under subchapter K, would be effective as of October 18, 1999, before the transactions in this case took place. *See* Community Renewal Tax Relief Act of 2000, P.L. 106-554, § 309(c) and (d).

Moreover, even if the transactions in this matter had occurred prior to October 18, 1999, the short options would still have been liabilities for purposes of Section 752. It is clear that the Community Renewal Tax Relief Act was a clarification, and not a change, in the law. Section 358 does not limit the meaning of the term liability or the type of liabilities that are included within its scope. Indeed, when Congress enacted Section 358(d)(1)'s predecessor, Section 113(s)(6) of the Internal Revenue Code of 1939, it intended that in determining basis under that section, "*any liabilities* of the taxpayer assumed by the transferee . . . shall be considered as money received by the taxpayer upon the exchange." 84 Cong. Rec. 7481 (1939)(emphasis added), reprinted in *Seidman's Legislative History of Federal Income Tax Laws* 1953-1939 at 1634 (1954). Whether a liability is fixed or contingent, it is still a "liability," as Congress made

clear when it enacted Section 358(h) in order to definitively shut down the contingent liability shelters. *See Illinois Tool Works, Inc. v. Commissioner*, 355 F.3d 997, 1002 (7th Cir. 2004)(refusing to treat contingent liabilities differently than fixed liabilities and holding that both types of liabilities must be capitalized by an entity which purchased a business because "that contingent liability formed part of the purchase price); *Holdcroft Transp. Co. v. Commissioner*, 153 F.2d 323, 324 (8th Cir. 1946) (applying same rule for tax free exchange).

The enactment of Section 358(h) in no way indicates that, prior to October 18, 1999, contingent liabilities were excluded from the scope of Section 358(d). Instead, Section 358(h) provides that if "any" liability (whether fixed or contingent) somehow escapes the basis-reduction rule set out in Section 358(d), then Section 358(h) will apply to "reduc[e] the transferor's basis in potentially abusive situations." Burke, 106 Tax Notes at 588. It is *a fortiori* clear that Section 752 always included contingent liabilities as liabilities because the Community Renewal Tax Relief Act directed the Commissioner to prevent any such abuses without making any changes in the language of Sections 752 whatsoever.

I, Dennis M. Donohue, pursuant to the provisions of 28 U.S.C. Section 1746 declare under penalty of perjury that the foregoing responses to the plaintiff's interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated this August 11, 2006 , in Washington, D.C.

Respectfully submitted,

DENNIS M. DONOHUE
SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 403
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892
E-mail: dennis.donohue@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2006, a copy of the foregoing UNITED STATES' SECOND AMENDED ANSWERS TO FIRST SET OF INTERROGATORIES was mailed by Federal Express, pre-paid, and properly addressed to the following:

Joel N. Crouch, Esq.
Meadows, Owens, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

F. Anthony Paganelli, Esq.
Sommer Barnard, P.C.
One Indiana Square, Suite 3500
Indianapolis, IN 46204

DAVID M. STEINER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892
Facsimile: (202) 514-5238
E-mail: David.M.Steiner2@USDOJ.GOV

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**UNITED STATES' AMENDED ANSWERS TO SECOND SET OF INTERROGATORIES**

Respondent, the United States of America, hereby responds to Plaintiff's Second Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

The United States objects to each of these interrogatories on the ground that they, and the instructions thereto, fail to recognize that this proceeding requires a trial *de novo* and not a review of an administrative record. The United States is not bound by or limited to any position taken by the Internal Revenue Service at the administrative stage of this case, including any position taken by the Internal Revenue Service in the FPAA.

The United States also objects to each of these interrogatories because they are, in substance, contention interrogatories and thus premature. Contention interrogatories are not

appropriate at the initial stages of discovery. *Northland Ins. Co. v. Shell Oil Co.*, 930 F.Supp. 1069 (D.N.J.,1996.); *In Re Domestic Air Transport Antitrust Litigation*, 1992 WL 120351 (N. D. GA. 1992); *Leksi Inc. v. Federal Insurance Co.*, 129 F.R.D. 99, 107 (D.N.J. 1989). In addition, the Manual of Complex Litigation Second also discourages the use of contention interrogatories at the beginning of discovery, stating "other productive means for clarifying and narrowing the issues and the contentions of the parties" are available, particularly when served before substantial completion of discovery. Manual at § 21.463. "Without such controls, substantial time, money, and energy may be wasted on contention interrogatories that are either premature or overinclusive." *Id.*

The United States further objects to these interrogatories to the extent they request all (or *each and every*) fact and all (or *each and every*) document supporting our legal contentions. Contention interrogatories should ask only for the principal facts and principal materials supporting a party's contentions. *See e.g.*, *IBP, Inc., v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D.Kan.1998); *Bradley v. Val-Mejias*, 2001 WL 1249339 (D.Kan. 2001). *See also*, . *SJ Berwin & Co. v. Evergreen Entertainment Group, Inc.*, 1994 WL 185687, at *2 (S.D.N.Y. , 1994) (contention interrogatories should not be a vehicle for requiring a party to regurgitate all factual information learned in discovery).

Without waving these objections or requesting the Court pursuant to Ct of Fed. Cl. R. 33(b) to defer our response to these contention interrogatories until the completion of discovery, the United States is providing a preliminary response to each of these interrogatories. Where necessary, however, we will supplement or revise our responses as to our legal contentions as well as to the principal facts and principal materials supporting our legal positions once we have

had the opportunity to review the documents produced to us and depose the necessary parties and third-parties having information relevant to our legal positions. We also anticipate that the reports and testimony of expert witnesses will support some of the factual positions set forth below.

4. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 1 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 1 of Exhibit A of the FPAA the Internal Revenue Service "determined that neither JBJZ Partners partnership nor its purported partners have established the existence of JBJZ Partners as a partnership as a matter of fact." The United States contends that the Internal Revenue Service correctly determined that the plaintiff has failed to establish that the JBJZ Partners partnership is not a factual sham. At this early stage of discovery, the principal factual basis of this position is that this entity was organized for the sole purpose of illegally avoiding federal and state income taxes. As such, it was not formed for a legal purpose as is required by state law. Consequently, this entity would not be recognized to exist as a partnership under state law.

5. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 2 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 2 of Exhibit A of the FPAA the Internal Revenue Service determined:

> Even if JBJZ Partners partnership existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. The formation of JBJZ Partners partnership, the acquisition of any interest in the purported partnership by the purported partner, the purchase of offsetting options, the transfer of offsetting options to a partnership, and the distribution of those assets to JBJZ investors, Inc., a corporation controlled by the purported partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate at a loss, all within a period of less than 2 Months, had no

> business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the partnership and the transaction described above shall be disregarded in full and: (1) any purported losses resulting from these transactions are not allowable as deductions; (2) increases in basis of assets are not allowed to eliminate gain for federal income tax purposes.

The United States contends that the Internal Revenue Service correctly determined that even if JBJZ Partners existed as a partnership under state law, this entity was a sham for federal income tax purposes. That is, the LLCs did not "join together as partners to conduct business activity for a purpose other than tax avoidance." *ASA Investerings P'ship v. Comm'r*, 201 F.3d 505, 513 (D.C.Cir.2000). " '[T]he absence of a nontax business purpose is fatal' to the argument that the Commissioner should respect an entity for federal tax purposes." *Saba P'ship v. Comm'r*, 273 F.3d 1135, 1141 (D.C.Cir. 2001), *quoting ASA Investerings P'ship v. Comm'r*, 201 F.3d at 512. At this early stage of discovery and apart from the facts set forth in paragraph 2 of Exhibit A of the FPAA, the fundamental factual basis of this position is that this purported entity was not formed or availed of for a valid business purpose. Rather, it was organized and availed of solely for purposes of tax avoidance which was to be accomplished by artificially inflating the basis of the partners' partnership interests.

The United States also contends that the Internal Revenue Service correctly determined that the purchase of the offsetting option transactions and their contribution to JBJZ Partners was an economic sham. First, these offsetting option transactions did not have objective economic substance. At this early stage of discovery, the principal factual basis of that position is that absent the tax benefits, there was no reasonable possibility that the LLCs or the purported partnership would realize a profit in excess of the enormous fees and transaction costs on these

transactions. Apart from the individual taxpayers personal fees on these transactions, they and their purported entities had to incur fees to the promoters amounting to 9½ % in order to generate the desired tax losses. Given these enormous fees, combined with the marginal chances of the options being "in the money" at the end of their terms, viewing the transactions objectively, neither the purported partners (the LLCs) nor the purported partnership (JBJZ Partners) had a realistic possibility of realizing an economic profit on these transactions. Moreover, with the spread between the two offsetting positions being just a fraction of a cent, there was virtually no chance that just one of the offsetting positions would be acted upon. Indeed, because the Deutsche Bank, as the calculating agent, could choose to accept or disregard any spot rate, when combined with the incredibly close proximity of the trigger spot rates (hundredths of a penny apart), the chances of just one of the paired position being exercised, was virtually nil. As a result, these offsetting option positions amounted to, in reality, a contractual wager, with the chances of winning the wager being no different than that of winning the lottery – it was not going to happen. It is expected that expert testimony will also address this issue.

Secondly, these offsetting option transactions had no purpose (business or otherwise) other than the creation of income tax losses. At this early stage of discovery and apart from the facts set forth in paragraph 2 of Exhibit A of the FPAA, the principal factual basis of this position is that the sole purpose of these transactions was to generate a huge paper tax loss on the sale of former partnership property which was not economically inherent in these transactions, but created artificially "by machinations whose only purpose and effect was to give rise to the desired tax consequences." *ACM Partnership et al v. Commissioner*, 157 F.3d 231, 245 (3rd Cir. 1998).

Accordingly, the Internal Revenue Service correctly determined that the purported partnership and the offsetting option transactions described above should be disregarded in full and: (1) any purported losses resulting from these transactions are not allowable as deductions; and (2) increases in basis in partnership interests and increases in basis of assets are not allowed to eliminate gain for federal income tax purposes.

6. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 3 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 3 of Exhibit A of the FPAA the Internal Revenue Service determined:

> [T]hat JBJZ Partners partnership was a sham, lacked economic substance and, under §1.701-2 of Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:
>
> a. the JBJZ Partners partnership is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners. This includes the determination that assets purportedly acquired by JBJZ Partners partnership, including but not limited to foreign currency options, were acquired directly by the purported partners.
>
> b. the foreign currency option(s), purportedly contributed to or assumed by JBJZ Partners partnership, are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by JBJZ Partner partnership on the option(s) are treated as having been realized by its partners.
>
> c. the purported partners of JBJZ Partners partnership should be treated as not being partners in JBJZ Partners partnership.
>
> d. contributions of JBJZ Partners partnership will be adjusted to reflect clearly the partnership's or purported partners' income.

Apart from the legal contentions set forth in our response to Interrogatory 5, the United States contends that Internal Revenue Service correctly determined that the formation of JBJZ Partners

and the contribution of the offsetting option transactions to JBJZ Partners violated the Anti Abuse regulations of Subchapter K of the Internal Revenue Code – i.e., Treas. Reg. §1.701-2. At this early stage of discovery and apart from the facts set forth in paragraph 3 of Exhibit A of the FPAA, the principal facts that support the application of the Anti Abuse provisions of Treas. Reg. § 1.701-2 are the same facts as listed in our Response to Interrogatory 5.

7. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 4 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 4 of Exhibit A of the FPAA the Internal Revenue Service determined "[t]hat the obligations under the short positions (written call options) transferred to JBJZ Partners partnership constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by JBJZ Partners partnership shall reduce the purported partners' bases in JBJZ Partners partnership in the amounts of $42,750,000.00 and $4,750,000.00, respectively, but not below the fair market value of the purported partnership interest." The United States contends that the Internal Revenue Service correctly determined that the obligations inherent in the short positions (written call options) transferred to JBJZ Partners partnership constitute liabilities for purposes of Section 752 and Treas. Reg. §1.752-6T. The term "liability" in Section 752 encompasses all liabilities, including contingent liabilities. *See, Coltec Industries v United States*, 2006 WL 1897077 (Fed Cir, July 12, 2006). Thus, JBJZ Partners's assumption of the obligations under the short positions constituted a distribution of money to the purported partners under Section 752(b), thereby decreasing their basis in the purported partnership. Moreover, *Helmer v. Commissioner,* 34 T.C.M. (CCH) 727, T.C.M (1975) is inapposite to these facts because it did not involve simultaneously executed long and short options of the same underlying

property with virtually identical terms, which offsetting options eliminated all financial risk to the purported partners in excess of the net premiums paid by them. Also, *Helmer* did not involve offsetting option transactions which were entered into as part of an elaborate and prearranged scheme to avoid federal income taxes. Finally, *Helmer* is also inapplicable for the same reasons set forth in the Confidential Memorandum of Jared Blanchard dated January 5, 2000. *See,* 2003EY004049-4062, and particularly 2003 EY 4056-4061.

8. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 5 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 5 of Exhibit A of the FPAA the Internal Revenue Service determined "that neither JBJZ Partners partnership nor its purported partners entered into the option(s) positions or purchase the foreign currency or stock with a profit motive for purposes of §165(c)(2)." The United States contends that the Internal Revenue Service correctly determined that the purported partners of JBJZ Partners partnership did not acquire the option(s) positions or contribute them to the purported partnership for the principal purpose of realizing a profit. At this early stage of discovery, the principal facts that support that position are the same facts as set forth in our response to Interrogatory 5. It is also expected that expert testimony will address this issue.

9. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 6 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 6 of Exhibit A of the FPAA the Internal Revenue Service determined:

> Even if the foreign currency option(s) are treated as having been contributed to JBJZ Partners partnership, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced,

both in the hands of the contributing partners and JBJZ Partners partnership. Consequently, any corresponding claimed increases in the outside basis in JBJZ Partners partnership resulting from the contributions of the foreign currency option(s) are disallowed.

The United States contends that the Internal Revenue Service correctly determined that even if JBJZ Partners partnership is treated as a partnership for federal income tax purposes and even if the foreign currency option(s) are therefore treated as having been contributed to this partnership, these nominally separate offsetting (long and short) options were in substance a "single" position. It a foundational principle of the tax law that the substance of a transaction controls for federal income tax purposes. At this early stage of the discovery, the principal facts supporting this position are that in form, these nominally separate options required huge gross premiums (totaling many millions of dollars) and exposed the option writers to massive potential losses. In substance, however, these nominally separate private trades economically nearly totally offset each other, thereby only requiring a relatively small net premium. Moreover, because of their incredibly close strike prices, as discussed in our response to Interrogatory 5, there was virtually no risk that only one position would be exercised. Thus, assuming these alleged trades were not "factual shams," these nominally separate positions constituted, in substance and in reality, a single position. As such, the basis of these offsetting option positions would be limited to the net premium paid on their acquisition – with the corresponding result that the contributing partners' basis of their partnership interests would also be limited to this net premium amount. It is expected that expert testimony will also address this issue.

10. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 7 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 7 of Exhibit A of the FPAA the Internal Revenue Service determined that:

> [T]he adjusted bases of the long call positions (purchased call options), zero coupon notes, and other contributions purportedly contributed by the partners to JBJZ Partners partnership has not been established under I.R.C. § 723. It is consequently determined that the partners of JBJZ Partners partnership have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

The United States contends that the Internal Revenue Service correctly determined that the adjusted basis of the offsetting options and other property contributed to JBJZ Partners is zero. As noted in our response to Interrogatory 9, even though the offsetting options must be viewed as a "single position" with the result that the basis of these offsetting options would be equal to the net premium paid for these positions, the burden is on the plaintiff to establish that they made a net "out of pocket" payment for these options and also to establish the amount of this net cash payment. Also, the burden is on the plaintiff to establish what was the adjusted basis in the hands of the purported partners of the other property contributed to the purported partnership. However, even assuming that plaintiff sustains its burden of showing what net amounts were paid for the offsetting options, the basis of these option positions would still be zero if these transactions were determined to be factual or economic shams.

11. Describe all legal theories and factual support for your contention set forth in Exhibit A, paragraph 8 to the FPAA and identify all documents that support your contention.

ANSWER: In paragraph 8 of Exhibit A of the FPAA the Internal Revenue Service determined "that, in the cases of a sale, exchange, or liquidation of JBJZ Partners [or] the partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of

determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest. The United States contends that the Internal Revenue Service correctly determined that in the case of the purported partners' nominal transfer of their partnership interests to JBJZ Investors Inc, a purported Subchapter S corporation, the basis of their purported partnership interests (both before and after the transfer) is zero. This position is based on the same facts and contentions discussed in our response to Interrogatory 10. *See* 26 U.S.C. §§ 705 and 722, which provide, in relevant part, that the basis of a contributing partner's partnership interest is equal to the adjusted basis of the contributed property at the time of contribution. Since plaintiff has not established what was the net (out of pocket) amount of the premium payments for the offsetting positions, the adjusted basis of such options is zero – with the result that the basis of the contributing partners' purported partnership interests must also be zero.

12. Describe all additional adjustments *not* described in the FPAA that you intend to assert relating to JBJZ Partners' short tax year ending December 27, 1999 and describe all legal theories and factual support for these additional adjustments and identify all documents that support your contentions.

ANSWER: Apart from our general objection to disclosing our legal positions at the beginning of discovery as set forth above, the United States specifically objects to this interrogatory seeking our additional legal positions (apart from those advanced in the FPAA) before we have had the opportunity to obtain all of the relevant documents and conduct any fact or expert depositions. Without waiving this objection, the United States provides the following preliminary response to this interrogatory.

First, the United States contends that the step transaction doctrine is applicable in this case, requiring that the individual steps of the COBRA transaction be collapsed. The purported

partnership in this scheme was simply used as a conduit to create an artificially inflated basis in the purported partners' partnership interests, which inflated basis could, in turn, then be allocated to property distributed to the purported Subchapter S corporation upon the prearranged dissolution of the purported partnership. The purported Subchapter S corporation was also simply used as a conduit to generate a paper tax loss on the sale of this property whose basis had been artificially inflated, which loss could then be passed through the individual taxpayers. Under the step transaction doctrine, the steps of the transfer of the offsetting options to the purported partnership and the distribution of the partnership property on the liquidation of the partnership to the purported subchapter S corporation are disregarded. With these steps disregarded, the basis of property distributed to the Subchapter S corporation would therefore be required to equal the actual cost of this property – and not the artificially inflated basis of the disregarded partnership interests. Thus, the disposition of such property would not give not rise to an artificially-generated tax loss. At this stage of discovery, the principal facts supporting this position are the marketing materials of the promoters which make it crystal clear that each of the steps of this COBRA transaction was meticulously prearranged with the ultimate end result in mind to achieve an artificially-generated tax loss for the individual investors.

Second, the United States contends that the offsetting option transactions may be factual shams. That is, it appears that while these transactions are, at least to some extent, documented on paper, this documentation may not reflect the reality of these transactions. Based on the allegations in the investors' suits against the promoters, these option contracts may ultimately be determined to be illusory. The principal facts to support this position will only be known after full discovery (documentary and depositions) has been conducted upon the Deutsche Bank.

Third, the United States contends that the "at risk" rules of I.R.C. § 465 apply here to preclude the allowance of the claimed losses. Section 465(a)(1) provides that individuals may claim losses and deductions only to the extent of the aggregate amount to which the taxpayer is at risk. Section 465(b) provides that a taxpayer is not considered at risk with respect to amounts protected against loss through some related agreement. At this early stage of discovery, the principal facts supporting this legal position are that the COBRA transactions were carefully designed to limit the financial risk of the investors, their LLCs and their purported partnership. As discussed in our response to Interrogatory 5, the offsetting options were expressly designed to ensure that the investors, through their LLCs and their partnership, were exposed to risk only to the extent of the net premium paid to the Deutsche Bank. Moreover, the operation of the offsetting options limited their risk because the values of the options moved in opposite directions in economically offsetting amounts. The amount that could be gained or lost was therefore fixed at the time the offsetting options came into existence. As neither the LLCs nor JBJZ Partners were "at risk" for more than the amount of the net premium, §465 precludes JBJZ Partners from claiming a basis in the offsetting option positions in excess of the net premium.

13. Describe all legal theories and factual support for any penalty or addition to tax you intend to assert should be applied and identify all documents that support your contentions.

ANSWER: The United States objects to this interrogatory to the extent that it seeks information that is protected under the attorney-client and deliberative process privileges. Without waiving these objections, the United States states that no determination has yet been made as to whether penalties should be asserted.

As noted in the FPAA, no penalties were asserted in the FPAA as to JBJZ Partners partnership because the partners along with JBJZ Investors, Inc. (corporation controlled by the partners) filed a disclosure with the Internal Revenue Service and represented that they provided all information required by Announcement 2002-2. To disclose an item under Announcement 2002-2, a taxpayer was required to provide the following:

a. A statement describing the material facts of the item;

b. A statement describing the taxpayer's tax treatment of the item;

c. The taxable years affected by the item;

d. If the taxpayer is a Coordinated Industry Case (CIC) taxpayer, a statement that the taxpayer will agree to address the disclosed item under the Accelerated Issue Resolution process described in Rev. Proc. 94-67, 1994-2 C.B. 800, if requested to do so by the IRS;

e. The names and addresses of (a) any parties who promoted, solicited, or recommended the taxpayer's participation in the transaction underlying the item and who had a financial interest, including the receipt of fees, in the taxpayer's decision to participate, and (b) if known to the taxpayer, any parties who advised the promoter, solicitor or recommender with respect to that transaction;

f. A statement agreeing to provide, if requested, copies of all of the following:

   i. All transactional documents, including agreements, contracts, instruments, schedules, and, if the taxpayer's participation in the transaction was promoted, solicited or recommended by any other party, all material received from that other party or that party's advisor(s);

   ii. All internal documents or memoranda used by the taxpayer in its decision-making process, including, if applicable, information presented to the taxpayer's board of directors;

   iii. All opinions and memoranda that provide a legal analysis of the item, whether prepared by the taxpayer or a tax professional on behalf of the taxpayer; and

iv. A penalty of perjury statement that the person signing the disclosure has examined the disclosure and that to the best of that person's knowledge and belief, the information provided as part of the disclosure contains all relevant facts and is true, correct, and complete. In the case of an individual taxpayer, the declaration must be signed and dated by the taxpayer, and not the taxpayer's representative. In the case of a corporate taxpayer, the declaration must be signed and dated by an officer of the corporate taxpayer who has personal knowledge of the facts. If the corporate taxpayer is a member of an affiliated group filing consolidated returns, a penalties of perjury statement also must be signed, dated, and submitted by an officer of the common parent of the group. The person signing for a trust, a state law partnership, or a limited liability company must be, respectively, a trustee, general partner, or member-manager who has personal knowledge of the facts. A stamped signature is not permitted.

Announcement 2002-2, further provides that "[i]t should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.

The United States contends that accuracy-related penalties may also be asserted if it is determined, through the course of discovery, that the individual participants, following their election to disclose, failed to fully disclose the transaction and/or made false or fraudulent statements to the Internal Revenue Service about the transactions.

I, Dennis M. Donohue, pursuant to the provisions of 28 U.S.C. Section 1746 declare under penalty of perjury that the foregoing responses to the plaintiff's interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated this August 11, 2006, in Washington, D.C.

Respectfully submitted,

Dennis M. Donohue (DMD)

DENNIS M. DONOHUE
SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 403
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892
E-mail: dennis.donohue@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2006, a copy of the foregoing UNITED STATES' AMENDED ANSWERS TO SECOND SET OF INTERROGATORIES was mailed by Federal Express, pre-paid, and properly addressed to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Owens, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

F. Anthony Paganelli, Esq.
Sommer Barnard, P.C.
One Indiana Square, Suite 3500
Indianapolis, IN 46204

DAVID M. STEINER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892
Facsimile: (202) 514-5238
E-mail: David.M.Steiner2@usdoj.gov