IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**UNITED STATES' CORRECTED OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL NON-PARTY JENKENS & GILCHRIST**

Respectfully submitted,

Dennis M. Donohue
Senior Litigation Counsel
U.S. Department of Justice
Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492 Telephone
(202) 307-2504 Facsimile
Dennis.Donohue@USDOJ.gov

Attorney for Defendant
United States of America

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii-iv

APPENDIX . . . . . . . . . . v

INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

NON-PARTY JENKENS AND GILCHRIST SHOULD NOT BE COMPELLED TO SEEK TAXPAYER INFORMATION . . . . . . . . . . 2

A. Introduction . . . . . . . . . . 2

B. The Requirements of Section 6103 Should Govern . . . . . . . . . . 3

1. The calculation of the promoter penalty under Section 6707(a) is strictly based on the terms of the statute and applicable Treasury Regulations . . . . . . . . . . 7

2. The United States' Argument in this Litigation That the Offsetting Options Should Be Treated as a Single Position Is Based on the Common Law, Statutory, and Regulatory Doctrine That the Incidence of Taxation Depends on the Substance of a transaction . . . . . . . . . . 10

a. Zucker and Boyd transferred in substance only a single position to JBJZ Partners. . . . . . . . . . . 10

b. Zucker and Boyd Transferred Only a Single Position to JBJZ Partners under Section 988 . . . . . . . . . . 11

c. Zucker and Boyd transferred only a single position to JBJZ Partners under Treas. Reg. § 1.701-2. . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Church of Scientology v. Internal Revenue Service*, 484 U.S. 9 (1987) . . . . . 5

*Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945) . . . . . 10

*Grojean v. Commissioner*, 248 F.3d 572 (7th Cir. 2001) . . . . . 10

*Heimark v. United States*, 14 Cl. Ct. 643, 648-49 (1988) . . . . . 5

*Holiday Village Shopping Ctr. v. United States*, 773 F.2d 276 (Fed. Cir. 1985) . . . . . 10

*Martin v. I.R.S.*, 857 F.2d 722 (10th Cir. 1988) . . . . . 1

*Searock v. Stripling*, 736 F.2d 650 (11th Cir.1984) . . . . . 2

*Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812 (2000) . . . . . 4, 5

*Tierney v. Schweiker*, 718 F.2d 449 (D.C.Cir.1983) . . . . . 3

*Tri-State Hospital Supply Corp. v. U.S.*, 238 F.R.D. 102 (D.D.C. 2006) . . . . . 3

*Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1 (2001) . . . . . 5

### FEDERAL STATUTES

26 U.S.C. Section 988 . . . . . 11, 12

26 U.S.C. Section 6103 . . . . . 1, 2, 3, 4, 5, 6, 9, 13

26 U.S.C. Section 6707 . . . . . 5, 7, 8, 9

26 U.S.C. Section 6111 . . . . . 7, 9

### FEDERAL REGULATIONS

Treas. Reg. § 1.701-2 . . . . . 10, 12
Treas. Reg. § 1.988-2(f) . . . . . 11, 12
Treas. Reg §301.6707-1T, A-1 . . . . . 8
Treas. Reg. § 301.6111-1T . . . . . 8

**FEDERAL RULES OF CIVIL PROCEDURES AND RULES OF THE COURT OF FEDERAL CLAIMS**

RCFC 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

RCFC 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed. R. Evid 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**LEGISLATIVE HISTORY**

Staff of the Senate Comm. on Finance, *Explanation of the Provisions Approved by the Committee on March 21, 1984*, S. Prt. No. 98-169, Vol. I at 425-426 (1984) . . . . . . . . . . . . . . . 7

H.R. Conf. Rep. No. 98-861 at 982 (1984), *reprinted in* 1984-3 C.B. (vol. 2) 1, 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

H.R. Rep. No. 795, 100th Cong., 2d Sess. 296 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

S. Rep. No. 313, 99th Cong., 2d Sess. 450 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

S. Rep. No. 445, 100th Cong., 2d Sess. 311 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**APPENDIX**

| Description | PAGES |
|---|---|
| Declaration of John Lindquist, with Exhibit A | 2-11 |
| Declaration of Manger Joseph J. Durak, Jr. (signed) | 12 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

Plaintiff has moved to compel non-party Jenkens & Gilchrist to request documents pursuant to 26 U.S.C. Section 6103 reflecting the IRS's calculation of its promoter penalty that it asserts are its "tax return information."[1] Non-party Jenkens & Gilchrist should not be compelled to make such a request. The documents are not in the control of Jenkens & Gilchrist as envisioned by RCFC 45. Furthermore, ordering a non-party to make a request for documents, rather than the party wanting the documents, circumvents the confidentiality of taxpayer information provided by 26 U.S.C. Section 6103. Jenkens & Gilchrist's promoter penalty calculation is irrelevant to this

[1] Pltf's Mem. at 8. The United States does not consider the calculation as J&G's taxpayer information because the majority of the information was obtained from other third party taxpayers and not J&G or Plaintiffs. There is a small portion of the penalty computation that is the tax return information of J&G, but taken out of context, this information would have no meaning. See Declaration of Durak, attached. *See Martin v. I.R.S.*, 857 F.2d 722, 726 (10th Cir. 1988) holding that information supplied to the IRS is the return information of "any person with respect to whom information is received." This only becomes relevant if J&G is compelled to ask the IRS for a penalty calculation.

case.[2] Any discovery with respect to this calculation would not directly affect the resolution of any issue in the proceeding. Plaintiff's motion should be denied.

**ARGUMENT**

**NON-PARTY JENKENS AND GILCHRIST SHOULD NOT BE COMPELLED TO SEEK TAXPAYER INFORMATION**

**A. Introduction.**

The subpoena served on non-party Jenkens & Gilchrist is limited to the production of things in Jenkens & Gilchrist's possession, custody or control. *See* RCFC 45(a)(1)(C). Plaintiff claims that the calculation of the promoter penalty asserted against Jenkens & Gilchrist is in its control because Jenkens & Gilchrist could obtain the information by making a request to the IRS for its own "taxpayer" information.[3] But taxpayer information in the possession of the IRS is not in the control of taxpayer.

Nowhere does 26 U.S.C. 6103 provide that taxpayer information is in the control of the taxpayer as the term "control" is used in RCFC 45(a)(1)(C). As pointed out by plaintiff, "control" with respect to the production of documents is defined "not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d

---

[2] Plaintiff claims in its motion the Court found the penalty calculation information relevant in its August 9, 2007, Opinion and Order. See Motion to Compel, Dkt 127, page 2. What the Court actually found is that Jenkens & Gilchrist had failed to show it was not "relevant" for purposes of RCFC 26. The Court stated it questioned the admissibility of such information but "can not conclude that the information sought in the subpoena is not reasonably calculated to lead to discovery of admissible evidence..." Opinion and Order, page 7. The Court furthermore declined to consider plaintiff's late raised oral argument that Jenkens & Gilchrist could obtain the information from the IRS. Opinion and Order, fn 15. The Court did not consider Section 6103.

[3] As mentioned in footnote 1, the United States does not believe the information is Jenkens & Gilchrist's taxpayer information.

650, 653, fn 5 (11th Cir.1984). Section 6103 does not give a party the right to obtain documents upon demand. Numerous conditions are placed on the request for such documents. Plaintiff cites cases dealing with a client's right to obtain documents from his attorney.[4] It does not cite any cases relating to the control of a taxpayer over information deemed confidential under Section 6103, and, as far as we can tell, there are none. This is understandable given that the terms of the statute, do not lead to such an interpretation. If there is a valid statutory privilege, then information may be withheld, even if relevant to the lawsuit and essential to the establishment of a plaintiff's claim. *Tri-State Hosp. Supply Corp. v. U.S.*, 238 F.R.D. 102 (D.D.C. 2006) (holding the statutory privileges set out in Section 6103 controls over the Federal Rules of Civil Procedure).[5] Given that Jenkens & Gilchrist's penalty calculation does not directly affect the resolution of any issue in this proceeding, as we shall next discuss, Jenkens & Gilchrist could not possibly have the legal right to obtain such documents upon demand.

**B. The Requirements of Section 6103 Should Govern**

Jenkens & Gilchrist does not have the legal right to obtain its promoter penalty calculation under Section 6707 upon demand. Plaintiff is seeking to compel Jenkens & Gilchrist to request this penalty calculation information from the IRS in an apparent attempt to circumvent the protections set out in Section 6103. In its earlier Order and Opinion the Court did not have to

---

[4] Pltf's Mem. at 6-7.

[5] Moreover, the signing of a power of attorney authorizing plaintiff to obtain information about Jenkens & Gilchrist from the IRS does not make one in control of the information. In *Tierney v. Schweiker*, 718 F.2d 449, 455 (D.C.Cir.1983), the court held that only a "knowing and voluntary consent" meets the requirements of § 6103(c). Compelling plaintiff to violate its own confidentially agreement (see Pltf.s Mem. In Support of Mot .to Compel Def. at 6-7 ) hardly constitutes a "a knowing and voluntary consent."

address the requirements of Section 6103 because it dealt with the production of documents in the possession or control of Jenkens & Gilchrist. Plaintiff is now attempting to stretch its original motion to obtain "tax return information" that not only does not relate to the taxpayers in this ligation but also does not even constitute the exclusive "tax return information" of non-party Jenkens & Gilchrist.

Section 6103(h)(4) governs the providing of taxpayer information by the United States in a judicial proceeding. In the case where "return information" sought is not the return information of a party to the proceeding, Congress set forth two separate requirements that must be met before the information may be disclosed by the IRS under Section 6103(h)(4)(C).[6] As expressed in *Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812, 816 (2000):

> It is only where there is some tax benefit or tax liability nexus between the taxpayer and third party that is reflected in the third party's return or return information, that *directly affects* resolution of an issue in the taxpayer's tax proceeding that disclosure of the third party's return or return information is authorized under section 6103(h)(4)...(C), and even then, only so much of the third party's return or return information as *directly affects* a resolution of the issue in the proceeding, may be disclosed.

Two requirements must therefore be met to allow the tax return information of a non-party to be disclosed in a judicial proceeding under Section 6103(h)(4)(C). First, there must exist a transactional relationship between a party in the proceeding and the non party taxpayer (the "transaction test"). And then there must be a "direct relationship" between the tax return

[6] 26 U.S.C. 6103(h)(4)(C) provides: (4) Disclosure in judicial and administrative tax proceedings.-A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only- * * (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding...."

information and the resolution of an issue in the proceedings (the "directly affects" test.). *See Vons Companies, Inc. v. United States*, 51 Fed.Cl. 1, 17 (2001). While the information sought by plaintiff may arguably meet the transaction test, it certainly does not directly affect the resolution of any issue in this proceeding.

Courts construing the companion term "directly related" in Section 6103(h)(4)(B) have generally found that term vague and have resorted to the legislative history of Section 6103 to determine what Congress intended. See, e.g., *Shell Petroleum, Inc. v. United States*, 47 Fed.Cl. 812, 817 (2000); *Heimark v. United States*, 14 Cl.Ct. 643, 648-49 (1988);see also *Church of Scientology v. Internal Revenue Service*, 484 U.S. 9, 16-17 (1987), 108 S.Ct. 271 (relying on legislative history in construing section 6103); *Vons Companies, Inc. v. United States*, 51 Fed.Cl. 1, 17 (2001) (agreeing the phrase "directly related" is ambiguous and turning to the legislative history for illumination).[7]

It is anticipated that plaintiff will contend that Jenkens & Gilchrist's promoter penalty calculation does directly affect an issue in this proceeding.[8] Its argument will apparently be based on its assumption that the IRS treated the long and short options as separate property for purposes of the calculation of the promoter penalty against Jenkens & Gilchrist under Section 6707(a). It argues that since the United States is contending in this litigation that the offsetting options

---

[7] Indeed, this Court has stated that the standard of relevancy under Rule 401 of the Federal Rules of Evidence served as a helpful guide in determining whether evidence was directly related although it did not adopt this evidentiary standard as a test. *Shell Petroleum, Inc. v. United States*, 47 Fed.Cl. 812, 816, 818-819 (2000); *Vons Companies, Inc. v. United States*, 51 Fed.Cl.1, 19 (2001).

[8] Even though plaintiff must have been well aware that this would be the principal issue on its motion, it failed to address this statutory question in its supporting memorandum.

should be treated as a single position, the Government is taking inconsistent positions in these two circumstances, and is so doing to maximize revenue.[9] In the briefing of plaintiff's motion to compel Jenkens & Gilchrist,[10] the Court was not presented with arguments on this issue and therefore was forced to conclude that "if there is evidence that the IRS was inconsistent in how it treated the transactions behind the tax benefit, or how it interpreted sections of the I.R.C., such could indeed be relevant to Plaintiff's claim"[11] But as we shall demonstrate, the IRS's calculation of the promoter penalty can not possibly be related to, much less "directly affect" the resolution of, an issue in this proceeding.

Plaintiff has the burden of proof to show that the information requested would "directly affect" the resolution of an issue in this case. This burden is obviously considerably more stringent than the more liberal discovery standard of relevance under Rule 26(b). In its opinion, the Court stated "[a]lthough the Court questions whether any information obtained ....may be admissible at trial, the Court need not concern itself at this point with admissibility." *Id*. But given the standard under Section 6103 which is applicable for purposes of this motion, this issue must now be addressed. Applying the stricter standard of Section 6103(h)(4)(C), the motion to compel should be summarily denied, although this result would in fact be true regardless of which standard is applicable here. Plaintiff's argument how the IRS treated the Jenkens & Gilchrist promoter penalty is not even remotely relevant to the resolution of any issue in this proceeding.

---

[9] Pltf's Mem. In Support of Its Mot. To Compel Def. at 5-6.

[10] Opinion and Order, page 7, fn 6

[11] Opinion and Order, page 7.

**1. The calculation of the promoter penalty under Section 6707(a) is strictly based on the terms of the statute and applicable Treasury Regulations.**

Turning first to the calculation of the promoter penalty against Jenkens & Gilchrist, that liability was imposed under the provisions of Section 6707(a). In an effort to stop the proliferation of abusive tax shelters and in recognition that the IRS needs to examine transactions that might be abusive, and identify taxpayers who participate in such transactions, in 1984, Congress enacted Section 6111.[12] That statute requires that tax shelter organizers register certain shelters with the IRS. Failure to comply with the registration requirements is penalized by Section 6707. With this rule, Congress aimed to promote transparency and fairness:

> The Committee is concerned that promoters of and investors in syndicated investments and tax shelters are profiting from the inability of the Treasury to effectively examine every return. These promoters know that even if a tax scheme they market is clearly faulty, some investors' incorrect returns will escape detection and many will enjoy a substantial deferral of tax while the Treasury searches for their returns and coordinates its handling of similar cases.

Staff of the Senate Comm. on Finance, *Explanation of the Provisions Approved by the Committee on March 21, 1984*, S. Prt. No. 98-169, Vol. I at 425-426 (1984); *see also*, H.R. Conf. Rep. No. 98-861 at 982 (1984), *reprinted in* 1984-3 C.B. (vol. 2) 1, 236. Thus, if a transaction meets the very specific requirements of Section 6111 that transaction is required to be registered, unless the Internal Revenue Service explicitly exempts the transaction from registration.

Section 6707 imposes a penalty on any person who fails to register a tax shelter under Section 6111(a). Section 6707(a) provides in pertinent part:

> (1) **Imposition of penalty.**--If a person who is required to register a tax shelter under section 6111(a)--

---

[12] All references to the Section 6111 and regulations are for those sections in effect for the tax years at issue.

***

(2) **Amount of penalty**.--Except as provided in paragraph (3), the penalty imposed under paragraph (1) with respect to any tax shelter shall be an amount equal to the greater of–

**(A)** 1 percent of the *aggregate amount invested* in such tax shelter, or

**(B)** $500.

(Emphasis added). Treasury Regulations on how to compute the penalty have been in effect since 1984. Treas. Reg §301.6707-1T, A-1 expressly provides that the "aggregate amount invested" for purposes of Section 6707(a)(2) is computed in the same manner as prescribed in A-21 of Treas. Reg. § 301.6111-1T.[13] This later regulation provides in pertinent part:

> ...... The aggregate amount offered for sale is the aggregate amount to be received from the sale of interests in the investment and includes all cash, the fair market value of all property contributed, and the principal amount of all indebtedness received in exchange for interests in the investment, regardless of whether the proceeds of the indebtedness are included in the investment base under A-14 of this section. ........

Thus, Treas. Reg. 301.6111-1T defines the aggregate amount invested in a tax shelter as cash, the fair market value of property contributed, and the principal amount of all indebtedness received in exchange for interests in the investment. Significantly, the registration requirements under Section 6111 expressly require that a promoter's representations be taken into account in

[13] A-1 of §301.6707 allows for an adjustment to the amount determined under A-21. It provides that the amount computed for purposes of determining the penalty should not include amounts not sold to an investor.

determining the existence of a tax shelter.[14] Thus the applicability of the failure to register penalty is in part dependent upon a promoter's representations.

While Jenkens & Gilchrist's promoter penalty under Section 6707 was settled, and its promoter penalty calculation is not known to Government counsel in this litigation,[15] it is nonetheless quite apparent that a promoter's representations can have a direct impact on the calculation of the promoter penalty. For example, the promoters of the COBRA tax shelter represented that the offsetting options were separate property in marketing the transaction.[16] As the evidence at trial will convincingly demonstrate, the representation that the offsetting options constituted separate property is totally antithetical to their actual economic substance. However, given the promoters' representation that the short (sold) option which financed the purchase of the long (purchased) option constituted separate property, it is easy to see how the promoter penalty under Section 6707(a) could have been calculated to take into account this contrary-to-fact representation. Such a statutory and regulatory promoter penalty calculation, which could have been heavily dependent on contrary-to-fact promoter representations, has absolutely no applicability to the resolution of any issue in this litigation.

---

[14]Section 6111(c) provides in relevant part:

> The term "tax shelter" means any investment–
>
> **(1)(A)** with respect to which any person *could reasonably infer from the representations* made, or to be made, in connection with the offering for sale of interests in the investment that the tax shelter ratio for any investor as of the close .....

[15]Of course, Section 6103(h)(4)(C) would also apply to prevent disclosure of non party taxpayer information to Government counsel in this litigation.

[16]*See*, Lindquist Declaration, Ex. A.

**2. The United States' Argument in this Litigation That the Offsetting Options Should Be Treated as a Single Position Is Based on the Common Law, Statutory, and Regulatory Doctrine That the Incidence of Taxation Depends on the Substance of a Transaction.**

In this litigation, the United States is arguing that, as an alternative to disregarding the entire transaction, the offsetting options were, in substance, a single position. There are three independent bases to support this conclusion. First, the substance-over-form doctrine supports characterizing the offsetting options as a single position. The second and third bases involve the more specific substance-over-form provisions of Section 988 (and related regulations) and Treas. Reg. § 1.701-2. Considerable discovery has been taken on the factual basis of these arguments including the fact that the premiums for both the long and short options were considerably overstated. As the evidence will conclusively show, this mispricing made any separation of the offsetting options a virtual financial impossibility.

**a. Zucker and Boyd transferred in substance only a single position to JBJZ Partners.**

It is fundamental that the "incidence of taxation depends upon the substance of a transaction" rather than its form.[17] Therefore, courts must "focus on the substance rather than on the form of a transaction where necessary to reflect the economic realities of the situation."[18] Under this doctrine, the Commissioner and the courts may "recharacterize a transaction in accordance with its commercial significance."[19] The evidence at trial will show that the two formally distinct offsetting options must be treated as a single position for federal income tax

---

[17] *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334 (1945).

[18] *Holiday Village Shopping Ctr. v. United States*, 773 F.2d 276, 280 (Fed. Cir. 1985).

[19] *Grojean v. Comm'r*, 248 F.3d 572, 576 (7th Cir. 2001) (collecting cases).

purposes. The evidence will leave no doubt that the economic and commercial reality is that the offsetting options, at the time the taxpayers transferred them to the partnership, represented in substance single positions, rather than separate (and huge) long and short positions. The facts for this conclusion, which will be supported by expert testimony, relates to substance of the transaction, not the form casts by its promoters. In sum, the evidence will show that the offsetting options were in substance single positions, even if their superficial form was separate.

**b. Zucker and Boyd Transferred Only a Single Position to JBJZ Partners under Section 988**

The statutory regime governing foreign currency transactions, §§ 985-89, likewise mandates treatment of the offsetting options in accordance with their substance. Those provisions, enacted as part of the Tax Reform Act of 1986, set forth a comprehensive set of rules governing taxation of foreign currency, including option transactions such as those at issue in this case. Section 988 generally provides that foreign currency gain or loss attributable to a "§ 988 transaction" is computed separately and treated as ordinary income or loss.[20] Section 989(c) grants the Service broad rulemaking authority to promulgate regulations "necessary or appropriate to carry out the purposes of [§§ 985 - 989] . . . ."[21]

Treas. Reg. § 1.988-2(f) implements this mandate and authorizes the Service to apply the principle of substance over form to recharacterize foreign currency transactions:

[20] § 988(a)(1)(A). Section 988 transactions include options contracts. § 988(c)(1)(B)(iii).

[21] *See also* Section 988(d)(1) (authorizing the Service to promulgate regulations integrating certain economically offsetting hedging transactions). The legislative history of §§ 985 through 989 reflects concern about tax-motivated transactions, which was one of the reasons Congress enacted those sections. S. Rep. No. 313, 99th Cong., 2d Sess. 450 (1986); *see also* H.R. Rep. No. 795, 100th Cong., 2d Sess. 296 (1988); S. Rep. No. 445, 100th Cong., 2d Sess. 311 (1988).

> If the substance of a transaction described in § 1.988-(1)(a)(1) [i.e., a § 988 transaction] differs from its form, the timing, source, and character of gains or losses with respect to such transaction may be recharacterized by the Commissioner in accordance with their substance . . . . *In applying the substance over form principle, separate transactions may be integrated where appropriate*.

(Emphasis added). Treas. Reg. § 1.988-2(f) therefore authorizes the application of a substance over form principle and provides that separate but related transactions may be integrated.

**c. Zucker and Boyd transferred only a single position to JBJZ Partners under Treas. Reg. § 1.701-2.**

Treas. Reg. § 1.701-2, which is a complement to many common-law tax doctrines, also applies in this case. That provision takes effect "if a partnership is formed or availed of in connection with a transaction a principal purpose of which is to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of subchapter K." When this is the case, the Commissioner has authority under this Regulation to recast a transaction "as appropriate to achieve tax results that are consistent with the intent of subchapter K, in light of the applicable statutory and regulatory provisions and the pertinent facts and circumstances." This provision is also applicable here to require the offsetting options to be treated as a single position.

To sum it up, the calculation of Jenkens & Gilchrist's promoter penalty has nothing to do with the substance-over-form common law, statutory and regulatory principles at issue here. The promoter penalty calculation is based on a totally different set of statutory and regulation provisions. There can be no inconsistent tax treatment in this litigation with the Jenkens & Gilchrist's promoter penalty calculation because Zucker's and Boyd's tax liability here is based on the actual substance of its transactions whereas Jenkens & Gilchrist's promoter penalty

calculation would have been based on the promoters' representations as to the form of the transactions.

**CONCLUSION**

Jenkens & Gilchrist should not be compelled to seek taxpayer information from the United States. The information is not under its control for purposes of enforcing the subpoena served on Jenkens & Gilchrist. To the extent the information sought is Jenkens & Gilchrist's taxpayer information, plaintiff's access to the information should be controlled under the provisions of 26 U.S.C. 6103(h)(4)(C). First, Jenkens & Gilchrist's promoter penalty calculation information is not relevant to plaintiff's income tax liability. Second, even if this information could lead to relevant evidence, which it does not, it certainly does not directly relate to the resolution of plaintiffs income tax liability. Plaintiff's motion should be denied.

Respectfully Submitted,

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2007, I electronicly filed the foregoing United States' Corrected Response to Plaintiff's Motion to Compel Non-Party Jenkens & Gilchrist (D.E. 127), with the Clerk of the Court using the ECF system which will send notification of the filing to the following:

Joel N. Crouch, Esq.
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
101 Main Street, Suite 3700
Dallas, Texas 75202

/s/ Joe Pitzinger
JOSEPH A. PITZINGER, III
Trial Attorney, Tax Division