**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,** | § | |
| **Plaintiff,** | § | **CASE NO. 05-231 T** |
| **v.** | § | **Chief Judge Edward J. Damich** |
| **United States of America,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE GOVERNMENT EXPERT DAVID LARUE**

JOEL N. CROUCH
M. TODD WELTY
Meadows, Collier, Reed,
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
twelty@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENTS AND AUTHORITIES ..... 4

A. Standard for Expert Testimony ..... 4

B. LaRue's Testimony Invades the Province of the Court as Fact-Finder and Consequently, Is Not Helpful ..... 5

1. LaRue's Testimony Is Nothing But a Summary of Factual Evidence Disguised as an Expert Opinion ..... 6

2. LaRue's Report and Testimony Are Based on His Consideration of Material That Is Irrelevant to His Assignment ..... 9

3. LaRue Should Not Be Permitted to Testify About His "Observations" About Witnesses' Intent ..... 10

4. LaRue Improperly Opines About Legal Issues ..... 13

C. LaRue's Testimony Is Irrelevant to the Issues Before the Court ..... 14

D. LaRue's Testimony Is Not Reliable Because It Is Not Based on an Identifiable Standard ..... 15

E. LaRue Is Not Qualified as an Expert on IRS Audit Procedures ..... 20

III. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

## Federal Cases

*Banks v. United States*, 75 Fed. Cl. 294, 297 (2007) ........ 4

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993) ........ 4, 14

*Highland Capital Mgmt., LP v. Schneider*, 2008 WL 282769 at *5 (S.D.N.Y. Jan. 31, 2008) ........ 6, 16

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) ........ 5, 6, 10

*J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444-45 (8th Cir. 2001) ........ 6

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004) ........ 6, 20

*Securities and Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ........ 6

*Sparton Corp. v. United States*, 77 Fed. Cl. 1, 7 (2007) ........ 14

## Federal Statutes

26 U.S.C. § 6662 ........ passim

## Federal Rules

Fed. R. Evid. 403 ........ 5
Fed. R. Evid. 702 ........ passim
Fed. R. Evid. 704 ........ 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,** | § § § § | |
| **Plaintiff,** | § | **CASE NO. 05-231 T** |
| **v.** | § | **Chief Judge Edward J. Damich** |
| | § | |
| **United States of America,** | § § | |
| **Defendant.** | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE GOVERNMENT EXPERT DAVID LARUE**

Plaintiff JZ Buckingham Investments LLC respectfully requests this Court to exclude all testimony and reports of one of the Government's experts, David LaRue ("LaRue"), on the grounds that: (1) LaRue's testimony is not helpful and only invades the province of the Court; (2) LaRue's opinion about whether certain items were adequately disclosed is irrelevant; (3) LaRue's opinions are not based on a reliable standard; and (4) there is an insufficient nexus between LaRue's qualifications and his opinions. LaRue's report and testimony fail to meet the threshold for admissibility of expert testimony described in Rule 702 of the Federal Rules of Evidence.

## I. INTRODUCTION

The Government has offered LaRue, a finance and accounting professor, as an expert on five distinct topics. The first three topics relate to whether the transactions were adequately disclosed on the returns (the "Adequate Disclosure Issues"):

- Whether or not any of the 1999 Returns identified and/or explained the source of the JBJZ Losses (or, if not, to determine whether or not the information disclosed on or with the 1999 Returns (either individually or collectively) otherwise provided any indication, or

any reasonably discernable indication, of the source of the JBJZ Losses[1]

- To determine whether or not, based on solely the information included on or with the 1999 Returns (either individually or collectively), the IRS could have ascertained, or reasonably ascertained, that the JBJZ Losses were the result of the assignment of a greatly inflated tax basis of certain assets that had been acquired by the Partnership and then distributed to and sold by JBJZ to generate the JBJZ Losses[2]

- Whether or not the 1999 Returns (either individually or collectively) disclosed (or otherwise provided any reasonably discernable indication) that $2,150,000 in accounting and legal fees had been incurred and paid (directly or indirectly) by the Taxpayers in 1999 in connection with the implementation of a strategy . . . that was designed from the outset to generate permanent tax losses, and that did in fact generate claimed permanent tax losses totaling over $49,644,114[3]

The remaining two topics demand LaRue's opinion about whether there was an effort to reduce or eliminate the risk of detection and audit by the IRS (the "Risk of Audit Issues"):

- Whether or not it would be reasonable to conclude that the various elements of the Transaction had been divided between and reported on various 1999 Returns in a manner that was designed to reduce or eliminate the risk of detection and audit by the IRS[4]

- Whether or not it would be reasonable to conclude that the Transaction-related fees paid to E&Y and J&G were reflected on the 1999 Returns in a manner that was designed to reduce or eliminate to [sic] the risk of detection and audit by the IRS[5]

---

[1] Expert Report of David W. LaRue, Ph.D, dated June 1, 2007 ("LaRue Report") at 3, ¶ 9, at Appendix 91; *see also* Deposition of David W. LaRue, Ph.D, dated Aug. 20-21, 2007 ("LaRue Depo."), vol. 1, at 13:11-16, at Appendix 4.

[2] LaRue Report at 3, ¶ 9 at Appendix 91; *see also* LaRue Depo., vol. 1, at 13:11-16, at Appendix 4.

[3] LaRue Report at 4-5, ¶ 9, at Appendix 92-93; *see also* LaRue Depo., vol. 1, at 13:11-16, at Appendix 4.

[4] LaRue Report at 5, ¶10, at Appendix 93; *see also* LaRue Depo., vol. 1, at 13:11-16, at Appendix 4.

[5] LaRue Report at 5-6, ¶ 11, at Appendix 93-94; *see also* LaRue Depo., vol. 1, at 13:11-16, at Appendix 4.

LaRue has opined that the relevant tax returns did not adequately disclose the source of the losses, that the legal and accounting fees were incurred because of the transactions at issue, or that the losses arose from the transactions.[6] He also opined that "it would be reasonable to conclude" that the transaction and the related professional fees were reported on the tax returns in a manner "that was designed to reduce or eliminate the risk of detection and audit by the IRS."[7]

LaRue's expert testimony does not fulfill the standards set forth in Rule 702 of the Federal Rules of Evidence for a number of significant reasons. First of all, his testimony and opinions are not helpful to the Court and are not relevant to the issues in the litigation. His testimony and opinions demonstrate that he is little more than a factual summary witness for the Government. His expert report contains page after page of "observations" regarding the taxpayers' subjective intent that he derives from emails by and between the taxpayers' tax advisors. These emails do not contain any sign that the taxpayers themselves knew about the communications between their advisors. Summarizing evidence is not an appropriate role for an expert. Second, his opinions on the issues outlined in his report are irrelevant here because penalties are not at issue and LaRue's opinions on the Adequate Disclosure Issues and Risk of Audit Issues are relevant only to the question of whether penalties should be imposed, and, if so, what the calculation of those penalties should be.

Third, LaRue's report and testimony are not based on a reliable methodology. When questioned about the legal standards that he applies to reach his ultimate opinions, he virtually has admitted that they are not grounded firmly in the legal standards outlined in the Internal Revenue Code and the regulations. Instead, LaRue has created his own misguided

[6] LaRue Report at 101-102, ¶¶ 217-218, at Appendix 189-190.
[7] LaRue Report at 218, 219, ¶¶ 218-219, at Appendix 190.

standards, which is improper. Finally, LaRue is not qualified as an expert on the Risk of Audit Issues because he has no specialized knowledge about how the IRS selects returns for audit. For the reasons outlined here and more fully articulated below, Plaintiff requests that the Court exclude LaRue's report and testimony from consideration at trial.

## II. ARGUMENTS AND AUTHORITIES

### A. Standard for Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

In determining the admissibility of expert testimony, courts are bound to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."[8] In exercising its gatekeeping role, courts should focus on whether the expert uses sound principles and methodology, as opposed to focusing only on the ultimate opinions reached.[9] Expert evidence must leap the twin hurdles of reliability and relevance before it is permitted in evidence, and the proponent of the expert's testimony must establish its admissibility by a

[8] *Banks v. United States*, 75 Fed. Cl. 294, 297 (2007) (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotations omitted)).
[9] *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993).

preponderance of the evidence.[10] Expert testimony must also be more probative than prejudicial under Rule 403 of the Federal Rules of Evidence.[11]

Here, LaRue's testimony fails several prongs of Rule 702. First, LaRue's lengthy partisan summaries of the evidence and conclusions about the witness's states of mind are not derived from any specialized knowledge. Second, LaRue's conclusions about all five issues are not helpful to the trier of fact because the Court is best situated to analyze the law and to determine whether the evidence admitted at trial shows that the parties conformed to the law. Third, his opinions are irrelevant to the issues in this proceeding. Fourth, his testimony is not the product of reliable principles and methods. Finally, on the Risk of Audit Issues, LaRue is not qualified as an expert in that specific area because his knowledge comes from publicly-available materials. Without LaRue's testimony, the Government will not face any harm other than that its attorneys will be forced to advocate their views on the appropriate interpretation of the law and introduce admissible evidence at trial.

### B. <u>LaRue's Testimony Invades the Province of the Court as Fact-Finder and Consequently, Is Not Helpful</u>

Rule 702 demands that expert testimony be helpful to the trier of fact. The helpfulness requirement demands more than relevance and "requires expert testimony to have a valid connection to the pertinent inquiry."[12] Here, LaRue is not helpful to the Court because (1) he improperly summarizes factual evidence, (2) he has considered information that is irrelevant to his inquiry, (3) he testifies about witnesses' states of mind without having any personal knowledge of their intent, and (4) he opines about legal issues.

---

[10] *Id.* at 592 n.10.

[11] *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (noting that FED. R. EVID. 403 provides for excluding evidence that would waste valuable trial time.)

[12] *Id.* at 540 (citations and quotations omitted).

### 1. LaRue's Testimony Is Nothing But a Summary of Factual Evidence Disguised as an Expert Opinion.

Testimony from an expert that constitutes nothing more than the expert's personal belief regarding the weight of the evidence invades the province of the factfinder.[13] Expert testimony cannot be used to repeat or summarize evidence that the factfinder is independently able to understand.[14] Summarizing facts giving rise to the litigation before the Court is patently improper because the expert has no personal knowledge of those facts.[15] Furthermore, experts cannot call their own "impressions" expert opinions because they are not based on any reliable methodology.[16] Opinions based on an expert's subjective personal views also do not fulfill the specialized knowledge requirement of Rule 702.[17]

The opinions LaRue reaches and the many observations he makes are not expert opinion at all. Based on his review of the evidence, he has simply concluded that (1) certain aspects of the transaction were not adequately disclosed and (2) it is reasonable to believe that there was an effort to hide the transactions from the IRS.[18] Expert testimony is not

---

[13] *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004).
[14] *Securities and Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("the proffered testimony must assist the jury in understanding what otherwise might be outside its grasp. Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").
[15] *Highland Capital Mgmt., LP v. Schneider*, 2008 WL 282769 at *5 (S.D.N.Y. Jan. 31, 2008) (excluding an expert's factual summary of events giving rise to the litigation).
[16] *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444-45 (8th Cir. 2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (quotations and citations omitted).
[17] *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 543.
[18] While LaRue summarizes large volumes of e-mails and documents generated by the tax professionals, the only email referencing conversations with any taxpayers, much less the taxpayers here states: "Our decision to use a coordinated preparation of transaction tax returns was well received. Our clients liked the fact that we were paying close attention to coordinating the reporting of similar transactions and achieving efficiency in determining proper wording and disclosure issues." *See* LaRue Report at 100, ¶ 216, at Appendix 188. LaRue made no attempt to ascertain what, if any, of the information in

necessary on either of these topics. The Court will be able to reach its own conclusions about these issues in due course. In fact, the issues LaRue has been asked to opine about are nothing more than the Government's theories of the case, which can be presented through properly authenticated, admissible evidence, argument at trial, and in pre- and post-trial briefing.

LaRue's evidentiary summaries are improper and prejudicial to the Plaintiff. His summaries are incomplete and his lack of personal knowledge leads to an incomplete picture of the evidence. For instance, LaRue opines that the reason the taxpayers completed the trades at issue through single-member limited liability companies was to reduce the risk of detection and audit:

> In my opinion, it would be reasonable to conclude that one of the purposes, perhaps the principal purpose, for the creation and use of the LLCs in connection with the implementation of the COBRA Strategy was to minimize or reduce the risk of detection and audit by reducing the possibility that the IRS might trace the ownership of the Partnership *from* the Partnership's 1999 Form 1065 *to* the 1999 Form 1040s of its ultimate partners (Mr. Zucker and Mr. Boyd, on whose 1999 Form 1040s the JBJZ Losses were deducted).[19]

At his deposition, LaRue explained that he believed that his conclusion was supported by internal emails between certain Ernst & Young ("E&Y") professionals discussing whether the individuals or the limited liability companies should be reflected on the Schedules K-1 that were to be distributed to the partners.[20] This correspondence states that they would need to ask a lawyer at Jenkens & Gilchrist ("J&G"), Donna Guerin, about the issue. Even though LaRue admits that he has not located a written response from

---

his report was communicated to the taxpayers here. LaRue Depo., vol. 2, at 47:19-48:12, Appendix 67.

[19] LaRue Report at 16, ¶ 43, at Appendix 104 (emphasis in original).

[20] LaRue Depo., vol. 1, at 64:15-66:21, at Appendix 17-18.

Guerin, he is perfectly willing to speculate about how the question was answered and why it was answered that way:

> Now I haven't been able to locate any response by Donna Gueren [sic] with J&G. But at the end of the day, the limited liability companies—the disregarded limited liability companies and their EINs were, in fact, listed as the partners of the partnership on the schedule K-1s.
>
> And from this, it would be—from these two emails, **it would be reasonable to assume that it was Donna Gueren [sic] at J&G that may have instructed that that was how the ownership of the partnership was to be disclosed on that return. And she must have had a reason for doing that.**
>
> And one reason that comes to my mind is the fact that if you have a single member LLC with it's [sic] own EIN listed as the partner on the K-1, it makes it a bit more difficult to go from the partnership tax return to the individual tax return, on which the JBJZ losses were ultimately deducted. So it appears to me that there was a concern here in terms of who to list as the partners on the K-1s.[21]

Of course, he never considered evidence that it was Deutsche Bank, the financial institution executing the trades at issue, that encouraged the use of a limited liability company so that the trades could be executed faster.[22] Furthermore, he never considered the fact that the Internal Revenue Manual, the IRS's internal guidance to its agents, plainly states:

> If a disregarded entity is an investor in a partnership, the examiner should make sure the Schedule K-1 has the proper EIN of the entity listed on the form. It is not unusual for the TIN of the owner to be listed on the Schedule K-1. If this is the case, the EIN of the disregarded entity must be secured for proper linkage. If this information is not provided, the campus may contact the examiner and request that the correct EIN be secured.[23]

---

[21] LaRue Depo., vol. 1, at 66:1-21, at Appendix 18 (emphasis added).
[22] DB-DOJ-COBRA 00246222-224, at Appendix 226.
[23] IRM 4.31.2.2.6.1 (9-22-2006).

Instead, LaRue simply fabricates the reason a limited liability company was used without the benefit of all the evidence, much less the IRS's own guidance noting that the EIN of the LLC should be listed – as it was here – for "proper linkage."

This example highlights the very reason that experts should not be permitted to summarize evidence or offer their subjective opinions about how the evidence should be interpreted. Experts, as opposed to fact witnesses, simply do not have personal knowledge of the underlying events. Plus, the opinions offered about the evidence are not expert opinions at all because they do not derive from any specialized knowledge. Moreover, the Court is perfectly able to determine what the evidence reflects when it is properly introduced and admitted at trial. The Court, not LaRue, is best situated to determine whether the transactions were disclosed on the tax returns in conformity with the Internal Revenue Code and the regulations in effect at the time the tax returns were filed and whether the taxpayers acted in good faith. As the ultimate factfinder, the Court will review the evidence and arguments presented to reach its own conclusion about what view of the facts and the law is the most reasonable. LaRue's partisan assistance is not necessary. Should the Government believe the Court needs assistance in how to best interpret the evidence admitted, it can draft and file pre- and post-trial memoranda.

### 2. <u>LaRue's Report and Testimony Are Based on His Consideration of Material That Is Irrelevant to His Assignment</u>

As noted above, LaRue has offered opinions on the Adequate Disclosure Issues, which relate to whether certain aspects of the transactions were disclosed adequately on the relevant tax returns. Of course, the answer to this question should begin and end with review of nothing other than the tax returns. After all, the tax returns are the only documents in possession of the IRS after taxpayers file the returns but before they are

selected for audit. Yet, LaRue has examined thousands of other documents aside from the tax returns themselves.[24] LaRue admits that many of his "observations" come from sources other than the tax returns:

> not all of these observations were derived from looking at the tax returns themselves. Some observations were derived from looking at the tax returns. Some of the observations, such as the payment of the E&Y fees, were derived from other sources, other documents in the record. So I just want to be clear that this is a description that is based not entirely on what was reported on the tax return.[25]

These documents, consisting largely of internal emails by and between the tax professionals that were not shared with the taxpayers in this case, are unnecessary to the task that the Government has set before LaRue. If LaRue were something other than an improper summary fact witness, he would not have reviewed materials that were not sent to the IRS with the tax returns. His review would have been limited to the only documents that would answer the limited inquiry at hand: the tax returns. The very fact that LaRue undertook his examination of thousands of pages of documents that were not in the IRS's possession at the time the returns were filed belies the fact that he is nothing more than a factual summary witness disguised as an expert.

### 3. <u>LaRue Should Not Be Permitted to Testify About His "Observations" About Witnesses' Intent.</u>

It is well-established that expert witnesses simply cannot opine about a litigant's state of mind.[26] State of mind or intent evidence should not be the subject of expert testimony because it does not require any special knowledge or skill to discern.[27] The

---

[24] *See* LaRue Report at Appendix C, at Appendix 208; LaRue Depo., vol. 1, at 45:6-23, at Appendix 12.
[25] LaRue Depo., vol. 1, at 124:21-125:4, at Appendix 32.
[26] *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547 (excluding expert testimony that was based on personal subjective views of the evidence).
[27] *Id.*

"knowledge" requirement in Rule 702 ensures that the expert will not be testifying about subjective matters because a factfinder does not need an expert to help the factfinder understand and analyze this kind of evidence.[28] At least one court has observed that experts who attribute certain motives to parties to the litigation "assume the role of advocates . . . by arguing as to the intent or motives underlying the conduct[.]"[29]

The very nature of the Government's assignment to LaRue on the Risk of Audit Issues and the opinions LaRue has provided on those issues demand analysis of the taxpayers' intent. LaRue's report is replete with "observations." During his deposition, LaRue admitted that significant portions of his report are "observations."[30] Had LaRue written a report about his own opinions, as opposed to summarizing factual evidence and calling it his "observations," it would be just a few pages long, instead of over one hundred pages.

LaRue's analysis of the state of mind evidence is flawed and incomplete. LaRue's report provides lengthy summaries of emails by and between the tax professionals involved in marketing the strategy without giving any concern to whether the taxpayers actually were privy to the communications. In fact, in his deposition, he acknowledged that there was very little evidence that the taxpayers were privy to any of the communications between the tax professionals. He also acknowledges that his review of the record is incomplete and that he may not have summarized the evidence in a fair manner. Therefore, even if it were

---

[28] *Id.* at 546 (observing that expert witnesses' opinions about the intent, motives, or states of mind of other parties "have no basis in any relevant body of knowledge or expertise.").
[29] *Id.*
[30] *See* LaRue Depo., vol. 1, at 106:6-165:18, at Appendix 28-42 (calling the following paragraphs his expert report "observations": 19-39, 41, 44-69, 71-80, 85-120).

proper for him to opine about a person's state of mind, the evidence that he cites has virtually no bearing on the state of mind of the parties to this litigation and is incomplete:

> Q. [W]ith respect to the taxpayers involved in Exhibits 1, 6, and 3, isn't it true that the May 8, 2000, e-mail is the only one that on its face indicates it was communicated to clients?
>
> A. Oh, I can't say that that's the only—that these are the only e-mails in that database. I will say these are the only ones that I located and included in my report. I can't say that—I don't recall that I made a concerted effort to try to determine whether or not, and to what extent, there were direct communications between E&Y and their clients insofar as e-mail records or other correspondence, beyond the engagement letters and some of the obvious things.
>
> So these are the only ones that I recall ever having seen. But, again, my analysis and review of the millions of documents in that record was not complete.[31]

On the second day of his deposition, LaRue admits that his opinion on the Risk of Audit Issues is based on assumption and conjecture about what the taxpayers knew and when they knew it:

> Q. What evidence do you have that, if such an effort were made, it was communicated to any of the taxpayers in the JBJZ, Tesoro or Murphy-related cases?
>
> A. Well, beyond what is expressed or implied in the PowerPoint presentation, and whatever went on at that presentation, beyond that e-mail that suggest that there was some discussion about reporting disclosure issues with clients, beyond whatever may or may not have been apparent from the face of the returns and the disclosure on those returns themselves, I haven't seen—I haven't seen—I don't recall having seen, I should say, correspondence between Ernst & Young and individual taxpayers that discuss disclosure issues.[32]

Furthermore, LaRue's interpretation of the documents he has reviewed is horribly partisan and skewed completely toward the Government. He is not afraid to speculate about what

---

[31] LaRue Depo., vol. 2, 47:19-48:12, at Appendix 67.
[32] LaRue Depo., vol. 2, 108:10-25, at Appendix 82.

the witnesses were thinking and what their nefarious agenda was at the time, without considering the entire record or summarizing any evidence favorable to the taxpayers.

Then, to make matters even worse, LaRue offers his view of the evidence and stamps it as an expert opinion derived from his "common sense and experience." For example, LaRue testified that one of the emails that supports his opinion that the positions taken on the returns were to reduce or eliminate the risk of detection and audit was an email stating that E&Y wanted the clients to file their returns on April 15 without extensions.[33] When asked how this email would reduce the risk of detection, LaRue responded:

> A. With the masses. I think whoever wrote this e-mail felt that if these returns were included, along with the millions of other returns filed on April 15th, that that would reduce the likelihood of detection and audit vis-à-vis a late filed return.
>
> Q. Is that your opinion?
>
> A. That would be my impression, yes.
>
> Q. And what is that based on?
>
> A. That's based on my common sense and my 30 years of experience in the tax area.[34]

This example highlights why experts should not be able to opine about a witness's subjective intent. An expert, especially an expert who has not reviewed all the admissible evidence, is no better situated than the factfinder to discern what a witness's subjective intent was. For this reason, the Court should exclude LaRue's report and testimony.

### 4. <u>LaRue Improperly Opines About Legal Issues.</u>

Courts have universally determined that experts testifying about a legal conclusion or opining about the legal ramifications of a piece of evidence should be excluded.[35] Courts,

---

[33] LaRue Depo., vol. 1, 66:25-69:16, at Appendix 18.
[34] LaRue Depo., vol. 1, 69:19-70:4, at Appendix 18-19.

not witnesses, are best suited to determine the applicable legal standards.[36] In contrast, experts should not be in the position of advising the court about which conclusion it should reach.[37]

While LaRue has repeatedly stated that he has not considered or opined on legal issues, his report and deposition testimony is replete with opinions about legal issues and suggestions that the taxpayers did not comply with the Internal Revenue Code and the regulations. His final conclusions are, at their heart, legal conclusions about whether the taxpayers fulfilled the adequate disclosure standard set forth in 26 U.S.C. § 6662(d)(2)(B)(ii) and whether there was an effort to conceal certain positions from the IRS, which informs the question of whether the taxpayers should be penalized or not.

No one but the Court, after considering authenticated, admissible evidence and the arguments of counsel at trial, should be able to determine whether the transactions at issue were properly reported, whether they had business purpose or economic substance, or whether the taxpayers intended to hide the transactions from the IRS. Because LaRue improperly offers legal opinions, his report and testimony should be excluded.

### C. LaRue's Testimony Is Irrelevant to the Issues Before the Court

Experts must offer opinions on issues that are relevant to the litigation.[38] If issues an expert opines about are not relevant, then they should be excluded because they cannot possibly be helpful to the factfinder.[39] In this case, the Adequate Disclosure Issues and the

---

[35] *See Sparton Corp. v. United States*, 77 Fed. Cl. 1, 7 (2007) (excluding an expert's opinion that "consist[ed] of his legal conclusions based on the evidence of record.").
[36] *Id.* at 8.
[37] *Id.* ("Although FED. R. EVID. 704 was amended so as not to preclude expert testimony on the ultimate issue, the amendment was not intended to allow an expert to advise the court on what outcome to reach.").
[38] FED. R. EVID. 702.
[39] *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

Risk of Audit Issues are both irrelevant to the issues that the Court must determine at trial because penalties are not at issue in this case.

Both sets of issues LaRue has been asked to opine about only relate to penalties. The Adequate Disclosure Issues are completely irrelevant to this case because they relate to whether disclosures were made that would permit a taxpayer to rely on 26 U.S.C. § 6662(d)(2)(B)(ii) to reduce the amount of any potential understatement for penalty purposes. Here, penalties are not at issue, so LaRue's opinions on the Adequate Disclosure Issues are irrelevant.

Likewise, the Risk of Audit Issues request an opinion about whether the taxpayers took reporting positions that were designed to eliminate or reduce the risk of audit and detection by the IRS is not at issue in this proceeding. At its heart, this issue is a question of intent: did the taxpayers mean to deceive the IRS or not through the reporting positions taken? The only substantive issue to which this inquiry could relate is whether and to what extent the taxpayers could be penalized for their involvement in the transactions. The answer to this question would inform, in part, the determination of whether a taxpayer relied reasonably and in good faith on the tax opinions and advice provided by his tax advisors. As mentioned above, penalties are not at issue here, so LaRue's opinions on the Risk of Audit Issues are irrelevant.

### D. <u>LaRue's Testimony Is Not Reliable Because It Is Not Based on an Identifiable Standard.</u>

Experts must identify and use a standard in order for their opinions to be considered reliable.[40] Under Rule 704(a) of the Federal Rules of Evidence, expert testimony is not necessarily objectionable just because it embraces an ultimate fact, but a expert's opinions

---

[40] FED. R. EVID 702.

cannot be "phrased on terms of inadequately explored legal criteria."[41] LaRue makes many observations about how the transactions were reported in this case, but he does not tether his frequently critical observations to any discernable legal standard. Three examples form LaRue's report and deposition testimony show that he is not using appropriate standards for evaluating the evidence.

First, LaRue states that he has opined about whether the transactions had been adequately disclosed. Even if adequate disclosure were relevant here, which it is not, adequate disclosure is a term of art that, while subject to some interpretation, is an identifiable standard under 26 U.S.C. § 6662(d)(2)(B)(ii). LaRue, however, does not know what the standard is and could not articulate it at his deposition. He admitted that he did not know whether the adequate disclosure standard that he purported to apply was more or less demanding than the disclosures required under 26 U.S.C. § 6662. When pressed, he admitted that he does not even know what the standard calls for and did not bother to research the applicable standard:

> Q. Is the standard that you were basing your opinions as to the adequacy of the disclosure that set forth in Section 6662 the adequate disclosure exception or defense to penalties?
>
> A. Well, the standard that I was basing my comments and observations and opinions on was whether or not the information disclosed on the return was adequate to reveal the fact that, the losses ultimately deducted on the sub chapter S-corporation and on the 1040s were the result of an interrelated series of transactions, that resulted in the creation of an inflated basis, the allocation of that inflated basis amount to what I referred to as the corporate loss asset, the sale of that asset, and the recognition of those artificial non-economic losses on the S-return and on the individual Form 1040.

---

[41] *Highland Capital Mgmt., LP v. Schneider*, 2008 WL 282769 at *4 (S.D.N.Y. Jan. 31, 2008).

**So whatever special definition or interpretations there may or may not be with respect to the use of that term "adequate disclosure," I assume that my interpretation of adequate disclosure is subsumed, or that that is subsumed into my interpretation of what adequate disclosure is.**

Could I make a determination of the source of these losses, how they came about, what they come from, that they were not economic artificial losses, based on the disclosures on any one of these returns, or on all of them collectively.

Q . . . [A]re you saying that your use of, in your opinion as to adequate disclosure, would require greater disclosure than the adequate disclosure in Section 6662?

A. I didn't say that.

Q. Well, would it?

A. **I don't know. I haven't done the research on 6662 to see what case law is out there, what regulations are out there, if there are special definitions of adequate disclosure.** Was the disclosure adequate to make these determinations as to the source of these losses?

Was it adequate? In my judgment, in my opinion, based on my objective analysis of the returns and the related documentation, was this information discernible or reasonably discernible from the information provided? In my opinion it was not.

Q. So you don't know whether you're using a standard for adequacy of the disclosure that's different than is required under Section 6662?

A. I suspect that it is the same standard, but I haven't—I'm not expressing a legal opinion, and I haven't thoroughly researched, you know, what special meanings or nuances there may be to that term as used in that code section.[42]

The reality is that no matter how LaRue answers these questions, he has been asked to review the tax returns in this case and offer an opinion about whether the transactions fulfilled the requirements of 26 U.S.C. § 6662(d)(2)(B)(ii) to reduce any understatement of

---

[42] LaRue Depo., vol. 1, 97:19-99:25, at Appendix 25-26 (emphasis added).

income, which would, in turn, reduce the amount of the penalty calculation, if any. This issue is a legal issue that has discernable standards, which LaRue apparently did not bother to understand before he formed his opinions in this case.

Second, in LaRue's expert report, he summarizes his opinions in tabular form about whether certain aspects of the transactions were disclosed on the tax returns.[43] Through the chart he opined that a number of issues were not disclosed. At his deposition, he admitted that there was no instruction, law, or regulation that actually *required* the disclosure of the cash contributions,[44] the total cash cost of the options,[45] the long option premium,[46] the fair market value of the Cisco stock,[47] the tax basis of the Cisco stock,[48] the purchase of the Canadian dollars,[49] the claimed increase in basis for E&Y fees,[50] or the cash distributed by

---

[43] LaRue Report at 62, at Appendix 150.
[44] LaRue Depo., vol. 2, 5:3-6:12, at Appendix 56-57 ("I don't know that any instruction required them [the cash contributions] to be disclosed." *See id.* at 5:10-11).
[45] LaRue Depo., vol. 2, at 6:13-7:5, at Appendix 57 ("There are no instructions that I'm aware that required that disclosure to necessarily be made on the Form 1065." *See id.* at 6:18-20).
[46] LaRue Depo., vol. 2, at 7:13-9:13, at Appendix 57 (admitting that "[t]he instructions simply state, to my recollection, is that there must be a description of the property sold. So what is considered to be an adequate description, and what is consider to be an inadequate description, insofar as complying with that instruction is, there are not detailed instructions that say what is and what is not an adequate description of that particular type of asset," yet concluding that the taxpayers disclosure was "ambiguous." *See id.* at 9:5-13, at Appendix 57; LaRue Report at 62, Table 2, col. A-3, A-4, at Appendix 150.).
[47] LaRue Depo., vol. 2, at 9:17-12:2, at Appendix 57-58 (admitting that it is reasonable to list zero as a beginning balance "in most cases." *See id.* at 10:14-17.).
[48] LaRue Depo., vol. 2, at 12:3-10, at Appendix 58 (admitting that no instruction LaRue was aware of required the disclosure).
[49] LaRue Depo., vol. 2, at 12:18-13:10, at Appendix 58 ("No instruction requires the purchase of Canadian dollars to be disclosed.").
[50] LaRue Depo., vol. 2, at 15:21-17:1, at Appendix 59 (admitting that if the fees were not an expense of the partnership, then the fees did not need to be disclosed).

the partnership to the s-corporation.[51] If no relevant instruction, law, or regulation requires disclosure, then the only standard left for LaRue to apply is his own made-up, standard-less standard, which is unrelated to the legal standards that will determine how the Court resolves this matter.

LaRue's failure to apply a discernable legal standard as described above is made even worse when he applies the *wrong* standard. In his report, LaRue states that "generally accepted accounting principles" (commonly known as "GAAP") require the disclosure of certain information on the partnership tax return, namely, the source and method of calculating the additional paid-in capital,[52] the opening account balances,[53] the reconciliation of book and tax income,[54] and that the risk of detection and audit would have increased had the taxpayers followed GAAP.[55] At his deposition, however, he admitted that GAAP does not apply to the taxpayers in this case and that the tax forms do not require taxpayers to report using GAAP.[56] He further admitted that the taxpayers did not, as a matter of fact, use GAAP and that it was "very common for small businesses to keep their books and records using the cash method[] and to use the cash method for reporting—for calculating and reporting of taxable income."[57]

Experts must use accepted methodology and accepted standards to formulate their opinions. Otherwise, their opinions are not reliable and should be rejected under Rule 702

---

[51] LaRue Depo., vol. 2, at 22:24-26:17, at Appendix 61-62 (admitting that the instructions do not specifically address the taxpayers' factual circumstance and that he does not know whether the taxpayers' reporting of the case distribution by the partnership to the S-corporations complied with return preparation standards).
[52] LaRue Report at 78, ¶ 182, at Appendix 166.
[53] LaRue Report at 77-78, ¶ 180, at Appendix 165-66.
[54] LaRue Report at 79-80, ¶ 183, at Appendix 167-68.
[55] LaRue Report at 77-80, ¶¶180, 182, 183, at Appendix 165-68.
[56] LaRue Depo., vol. 2, 34:11-35:6, at Appendix 64.
[57] LaRue Depo., vol. 2, 35:7-25, at Appendix 64.

of the Federal Rules of Evidence. Here, LaRue has not used a reliable methodology or the correct, identifiable standard. Therefore, the Court should exclude his report and testimony.

### E. <u>LaRue Is Not Qualified as an Expert on IRS Audit Procedures</u>

There must be a nexus between the qualifications of an expert and the opinions they offer at trial. Just because a person is an expert in a field does not necessarily qualify him to opine on topics outside of that field.[58] There can be little dispute that LaRue is a qualified expert in his field—the field finance and accounting. He has many years of experience in finance and accounting and has, no doubt, trained a number of financial advisors and accountants. Nevertheless, his credentials do not qualify him as an expert in analyzing the Risk of Audit Issues because he has no specialized experience or knowledge in how the IRS selects returns for audit. Because there is not a good fit between his assignment regarding the Risk of Audit Issues and his qualifications, the Court should exclude his expert report and testimony on those issues.

According to his expert report, LaRue was asked to offer opinions on the Risk of Audit Issues. In order to do this, however, LaRue would have to have knowledge about and experience with how the IRS selects returns for audit. While LaRue is a finance and accounting professor, he does not have any relevant experience with or knowledge about how the IRS selects returns for audit. He has never worked at the IRS in any capacity.[59] He is not a certified public accountant.[60] He has only prepared a few tax returns while interning

---

[58] *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004) ("A party can only elicit expert testimony from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise, and the expert's opinion must be confined to that field.").
[59] LaRue Depo., vol. 1, 31:7-21, at Appendix 9.
[60] LaRue Depo., vol. 1, 27:22-23, at Appendix 8.

at Arthur Andersen for a few months over twenty-five years ago.[61] He has never even represented taxpayers in the course of an audit.[62]

*Instead, the beginning and the end of LaRue's knowledge about this topic is derived from a publicly-available GAO report that he reviewed a couple of days before the deposition and months after issuing his expert report.*[63] The truth is, LaRue does not know much about the internal workings of the IRS or the qualifications of the individuals in charge of reviewing and selecting returns for audit. Nonetheless, LaRue is not afraid to speculate about these issues:

> Q. Dr. LaRue, what is your understanding of the training given to classifiers?
>
> A. My understanding of the training is that they are experienced auditors. By that, **I assume** that they've had substantial on-the-job training and experience. **I assume** that they—I know the Internal Revenue Service conducts training programs, internal training programs. **I believe** that many people come to the Internal Revenue Service with an accounting background, maybe a graduate degree. **I suspect** some may be CPAs.
>
> While with the Internal Revenue Service, **I imagine** it would be reasonable **to assume** that many people pursue additional education, or take additional training programs, either in connection with keeping their CPA certificate current, or pursue a Masters degree or **possibly** a law degree.
>
> **So I would assume** that certainly at the at the classifier level, that the people there would include some of the more, or most experience auditors within the Internal Revenue Service.[64]

[61] LaRue Depo., vol. 1, 30:5-11, at Appendix 9.
[62] LaRue Depo., vol. 2, 55:18-56:4, at Appendix 69.
[63] LaRue Depo., vol. 1, 34:25-35:13, at Appendix 10.
[64] LaRue Depo., vol. 1, 39:12-40:8, at Appendix 11 (emphasis added).

LaRue went on to admit that he does not really know what an auditor's training consists of or what an auditor is taught to look at when reviewing returns.[65] He does not have any experience training classifiers.[66] He does not even personally know a classifier.[67]

If LaRue is an expert in the field of how the IRS selects returns for examination, then almost anyone who reads the GAO report he read could also be. In fact, the Court itself is perfectly situated to read the GAO report and to determine whether there was an effort to reduce or eliminate the risk of detection and audit. Because there is not a sufficient nexus between LaRue's qualification as an expert and the opinions he offers on the Risk of Audit Issues, his report and testimony on these topics should be excluded from consideration.

## III. CONCLUSION

In light of the foregoing arguments and authorities, Plaintiff respectfully requests that the Court strike the expert report and testimony of the Government's expert, David LaRue. Plaintiff respectfully requests all further and additional relief to which it may be entitled.

Respectfully submitted,

By: s/Joel N. Crouch
Joel N. Crouch
Texas State Bar No.05144220
M. Todd Welty
Texas State Bar No. 00788642

MEADOWS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700

[65] LaRue Depo., vol. 1, 41:5-11, at Appendix 11.
[66] LaRue Depo., vol. 1, 41:12-14, at Appendix 11.
[67] LaRue Depo., vol. 1, 41:16-20, at Appendix 11.

Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
twelty@meadowscollier.com
jcrouch@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2008, a copy of the foregoing Memorandum in Support of Motion to Exclude Government's Expert David LaRue was served upon counsel listed below via electronic means.

Dennis M. Donohue, Esq.
Trial Attorney
United States Department of Justice
Tax Division
P.O. Box 26
Ben Franklin Station
Washington DC 20044
(202) 616-3366

s/Joel N. Crouch
Joel N. Crouch