# AGREEMENT OF GENERAL PARTNERSHIP

FOR

JBJZ PARTNERS

Dated: NOVEMBER 16, 1999

EXHIBIT

tabbies

A. 3.

CHICAGO 16437 v 1 99999

APP. A
Pg. 5

**THIS AGREEMENT OF GENERAL PARTNERSHIP** for JBJZ PARTNERS, dated as of November 16, 1999 (the "Agreement"), by and between JZ BUCKINGHAM INVESTMENTS LLC, and JGB BOHICKET INVESTMENTS LLC (herein collectively referred to as the "Partners", and individually, a "Partner").

**W I T N E S S E T H :**

WHEREAS, the Partners desire to form a general partnership to, among other things:

(i) establish centralized control over the investment of Partnership assets; and

(ii) invest any and all Partnership assets in securities, businesses, real estate interests and other investment opportunities as the Managing Partner may from time to time deem to be in the best interests of the Partnership.

**NOW THEREFORE**, in consideration of the premises and agreements herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1
## FORMATION AND NAME, ETC.

Section 1.1. Formation and Name of Partnership. The parties hereby agree to form a general partnership (the "Partnership") upon the terms and conditions herein set forth and in conformity with the South Carolina Uniform Partnership Act, as may be amended from time to time (the "Act"). The name of the Partnership shall be JBJZ PARTNERS or such other name as the Managing Partner may from time to time select.

Section 1.2. Purposes. The purposes of the Partnership are to:

(i) invest any and all Partnership assets in securities, businesses, real estate interests and other investment opportunities as the Managing Partner may from time to time deem to be in the best interests of the Partnership including, but not limited to, stocks, bonds, options, foreign currencies, foreign exchange and over the counter derivatives, and other financial instruments;

(ii) ensure centralized control of the Partnership assets and other possible investments, including the voting thereof; and

(iii) do all of the acts and things permitted or required by the terms of this Agreement or reasonably necessary or incident to the foregoing purposes.

Section 1.3 Offices. The offices of the Partnership shall be at 16 Buckingham Drive, Charleston, South Carolina, 29407 or at such other place or places as the Managing Partner may from time to time determine.

## ARTICLE 2
## THE PARTNERS; MANAGING PARTNER

Section 2.1. In General. Except as otherwise provided herein, the business and affairs of the Partnership shall be conducted by the Managing Partner. From and as of the date of this Agreement, JZ Buckingham Investments LLC shall be the Managing Partner. If JZ Buckingham Investments LLC shall dissolve or become bankrupt or otherwise be unable to act as Managing Partner hereunder, the Managing Partner shall be such Partner or person as is then chosen by a majority in interest of the Partners.

Section 2.2. Duties and Powers of the Managing Partner.

(a) The Managing Partner shall:

(i) manage the affairs of the Partnership;

(ii) use its best efforts to carry out the terms of this Agreement.

(b) The Managing Partner may:

(i) purchase, sell and otherwise deal with and invest Partnership property and other property held on hand for the benefit of the Partnership; borrow upon the credit of the Partnership; and pledge all or any part of the Partnership assets to secure such borrowings;

(ii) make distributions in partial or complete liquidation or otherwise to the Partners, subject to the provisions of this Agreement;

(iii) exercise such other rights and powers as are herein granted as may be necessary or appropriate to attain the ends and purposes of this Agreement, including the hiring of agents, accountants, investment advisors and attorneys; and

(iv) establish and administer reasonable rules and procedures for the calling and conduct of meetings of Partners, for the sending of notices and other communications, and for the general administration of the internal and external affairs of the Partnership.

Section 2.3. Relationship Between the Partners and the Partnership. The Partners may engage in or invest in such businesses or activities as they see fit, without regard to whether such businesses or activities are competitive with the Partnership. The Partners shall not be required to devote full time to the business and affairs of the Partnership. No Partner shall be required to submit business or investment opportunities to the Partnership. The various Partners and the Partnership, respectively, may engage in any transactions with each other as they see fit, as if the Partners were not partners of the Partnership. The fiduciary duties of the various Partners to the Partnership and to the Partners shall be determined by taking into account the principles of this Section

Section 2.4. Fiduciaries. Where trusts, estates, or other such entities are treated as Partners or other holders of Partnership interests, the trustees, executors, and other fiduciaries thereof as such shall not in their personal capacities be treated as Partners or other holders of Partnership interests or as persons having rights and duties thereunder, but such Partner status and such Partnership interests, rights and duties shall be treated as appertaining to the fiduciary estate. A change in the person or persons acting as trustee, executor or other fiduciary on behalf of any entity treated as a Partner shall not constitute a change in the identity of such entity or a transfer of such entity's Partnership interest.

Section 2.5. Reimbursement and Compensation of the Managing Partner. The Managing Partner shall be entitled to reasonable compensation for services rendered to the Partnership and to reimbursement for reasonable out-of-pocket expenses incurred by him on behalf of the Partnership or in pursuance of his duties as Managing Partner.

## ARTICLE 3
## CAPITAL CONTRIBUTIONS AND ACCOUNTS, PROFITS AND LOSSES, DISTRIBUTIONS, ALLOCATIONS, ETC.

Section 3.1. Capital Accounts. A capital account shall be maintained for each Partner Each Partner's capital account shall consist of capital contributions made from time to time by such Partner and such Partner's predecessor(s), increased by his or his predecessor's respective share, if any, of profits and decreased by (i) any distributions made to him or his predecessor, and (ii) his or his predecessor's respective share, if any, of Partnership losses. No interest shall be paid or credited to Partners on their capital accounts. No Partner shall be entitled to the withdrawal or the return of any part of his capital account, except in accordance with the provisions of this Agreement. Each Partner has contributed to the Partnership on the date hereof the assets set forth opposite his name on Exhibit A hereto.

Section 3.2. Distributions. Distributable Cash (as defined in Section 8 3), if any, for each fiscal year shall be distributed at least as often as annually in cash and/or in kind, to the Partners, subject to the express provisions of this Agreement, pro rata in accordance with the Partners' capital accounts, or non pro rata but with an appropriate reduction in each distributee Partner's capital

account. Assets distributed in-kind shall, for such purpose, be valued at their Market Value (as defined in Section 8.5) as of a date, selected by the Managing Partner not more than ten (10) days prior to the date of any such distribution.

Section 3.3. Liquidation Distributions. Upon the dissolution or partial or complete liquidation of the Partnership, all the debts and liabilities of the Partnership shall be paid or provided for, and the "Partnership Net Assets" (defined in Section 8.4) shall be distributed to the Partners in liquidation of their Partnership interests, pro rata in accordance with their respective capital accounts, or in the case of a partial liquidation, pro rata or non pro rata, but if non pro rata, with an appropriate reduction in each distributee Partner's capital account. Distributions may be in cash and/or in kind at the discretion of the Managing Partner. For purposes of this Section, the Market Value of "Partnership Net Assets" and the consequent restatement of capital accounts shall occur as of a date, selected by the Managing Partner, not more than ten (10) days prior to the date of any such distribution.

Section 3.4. Allocations.

(a) Partnership items of income, gain, loss, deduction, basis adjustment, and credit shall be allocated among the Partners in the manner determined by the Managing Partner in accordance with the principles of the Code and the regulations thereunder, in particular Section 704 of the Code and the regulations thereunder (including Section 704(c) of the Code).

(b) Nothing in this Section 3.4 shall be construed to cause, or to permit or require the Partnership, the Managing Partner, or any other person to cause, any adjustment to the rights or duties of the Partners or the Partnership relating to contributions, distributions, liabilities to third parties, or the like.

(c) Where there is a change in the holders of Partnership interests, in the respective holdings of Partnership interests, or in the respective rights or duties appurtenant to Partnership interests (caused, e.g., by a transfer, issuance, retirement, or modification of a Partnership interest), allocations under Section 3.4(a) for a taxable year among the persons who are or were holders of Partnership interests shall be made to take account of such change in a manner determined by the Managing Partner. Where appropriate, the term "taxable year" may refer to a period other than a taxable year.

## ARTICLE 4
## ASSIGNMENT AND TRANSFER OF INTERESTS

Section 4.1. Prohibition on Transfers. No Partner shall, voluntarily or involuntarily, sell, transfer, assign, pledge, hypothecate, convey or otherwise dispose of (any one of the foregoing being referred to as a "Transfer") any portion of his interest in the Partnership if such Transfer causes the Partnership to have more than one hundred (100) Partners or violates any federal or state securities

laws. Any purported Transfer in violation of this Section shall be null and void and of no force and effect.

Section 4.2. Status of a Transferee-Additional Partners. Upon a Transfer by any Partner ("Transferor") the transferee shall, become a substituted or additional Partner upon agreeing in writing to be bound by the terms of this Agreement. If such transferee fails to agree in writing to be bound by the terms of this Agreement, such transferee shall have only the right to receive Partnership distributions to which the Transferor would otherwise be entitled.

## ARTICLE 5
## ADDITIONAL CONTRIBUTIONS

Section 5.1. At the discretion of the Managing Partner, the existing Partners shall be permitted, but shall have no obligation, to make further contributions to the Partnership.

## ARTICLE 6
## TERM OF THE PARTNERSHIP: WITHDRAWAL OF PARTNERS

Section 6.1. Dissolution. The business and affairs of the Partnership shall be continued in accordance with this Agreement and shall not cease to be conducted until the date which is the earlier of:

(i) The thirtieth (30th) anniversary of the date of this Agreement;

(ii) The Termination (as defined in Section 6.2(b)) of a Partner;

(iii) The decision to dissolve the Partnership by the Managing Partner; and

(iv) As otherwise required under the Act.

Section 6.2. Withdrawal of Partners.

(a) Withdrawal of Capital Account. Prior to the Termination of a Partner, no Partner may withdraw any portion of his capital account from the assets of the Partnership without the consent of the Managing Partner

(b) Death and Incompetency. The retirement, death, incompetency, or bankruptcy of a Partner shall be deemed a Termination by such Partner from his position as Partner. Upon any Termination by a Partner, the Partnership may be reconstituted with the agreement of the remaining Partners.

(c) Partner's Successor. The legal representative or successor of a retired, deceased, or incompetent Partner shall continue in the Partnership as an assignee under the Act.

Section 6.3. Liquidation. On dissolution of the Partnership, the Managing Partner shall proceed to wind up the affairs of the Partnership, pay or provide for all of the liabilities of the Partnership, and distribute the remaining assets of the Partnership to the Partners in accordance with Section 3.3 of this Agreement.

## ARTICLE 7
## FINANCIAL STATEMENTS, ETC.

Section 7.1. Fiscal Year. The fiscal year of the Partnership shall end on December 31 of each year unless otherwise determined by the Managing Partner.

Section 7.2. Financial Statements. The Managing Partner shall cause to be prepared and distributed, not less than once each fiscal year, a financial statement of the Partnership consisting of a balance sheet, income statement and schedules showing cash distributions made to the Partners, and such other items as the Managing Partner may select. Such financial statements may be audited or unaudited.

Section 7.3. Books and Records. The Partnership shall keep books and records at its place of business, setting forth a true and accurate account of all of the business transactions arising out of the conduct of the Partnership. All Partners shall have at all times access to and the right to inspect the Partnership's books and records.

Section 7.4. Tax Returns. The Partnership shall prepare and file all necessary or appropriate tax returns.

Section 7.5. Accounting. All tax and accounting determinations shall be made reasonably and in good faith by the Managing Partner in consultation with the accountants for the Partnership.

Section 7.6. Tax Elections. The Managing Partner, in his sole discretion, may make or decline to make, or may revoke or seek to revoke, any election which the Partnership may make under the tax laws, including the election provided by Section 754 of the Code.

Section 7.7. Bank Accounts. Funds of the Partnership shall be used only for Partnership purposes and shall be deposited in such accounts in banks or other financial institutions as may be established from time to time by the Managing Partner Withdrawals shall be made by the Managing Partner pursuant to his duties hereunder.

Section 7.8. Tax Matters Partners. Unless otherwise required by law, the tax matters partner within the meaning of Section 6231(a)(7) of the Code shall be the Managing Partner.

## ARTICLE 8
## CERTAIN DEFINITIONS

The following terms shall have the following meanings herein:

Section 8.1. "Partnership" shall mean the general partnership formed pursuant to this Agreement.

Section 8.2. "Partners" shall mean the signatories hereto and any persons hereafter admitted to the Partnership pursuant to the provisions of this Agreement. Where appropriate, the term "Partner" shall include predecessors or successors in interest of a Partner, where such successor is not admitted as a Partner.

Section 8.3. "Distributable Cash" means, with respect to any fiscal year of the Partnership, the amount of all cash available to the Partnership from all sources, including interest, dividends, distribution of partnership profits, borrowing proceeds, and proceeds received on the sale, liquidation or other disposition of Partnership assets, amounts previously set aside as reserves that are subsequently determined by the Managing Partner to be in excess of Partnership requirements, after payment of all expenses normally incurred in the operation of the Partnership, including reserves for future expenses, liabilities and investments and reinvestments as reasonably deemed necessary by the Managing Partner, in his discretion. In respect of each fiscal year of the Partnership, the Managing Partner shall, in his reasonable discretion, determine the amount of Distributable Cash of the Partnership available for distribution to the Partners.

Section 8.4. "Partnership Net Assets" as of any date shall mean the sum of Partnership assets less Partnership liabilities as of such date. Partnership assets as of such date shall be valued at the Market Value thereof.

Section 8.5. "Market Value."

(a) Market Value of securities as of any date shall mean:

(i) If such securities are traded over the counter, the lowest closing bid price on such date; and

(ii) If such securities are traded on a recognized securities exchange, the closing price on such date.

(b) Market Value of any other assets shall be their fair market value as determined

by the Managing Partner after consultation with the Accountants, counsel for the Partnership and such other advisors as the Managing Partner may determine.

Section 8.6. "Accountant" means the accountants, if any, regularly engaged by the Partnership, or as may, from time to time, be selected by the Managing Partner.

Section 8.7. "Person" means, in addition to natural persons, where appropriate, corporations, partnerships, trusts, estates, associations, governments and governmental units and agencies.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

Section 9.1. Warranties. Each Partner, by execution and delivery of this Agreement, represents, warrants and agrees with each other Partner that (i) he is acquiring his Partnership interest solely for his own account for the purpose of investment and not for or with a view to distribution hereof; (ii) he has had free access to all documents, information, books and records as he has deemed necessary to apprise himself of the matters with which this Agreement is concerned; and (iii) he understands that the Partnership interests have not been registered under the Securities Act of 1933, as amended, or under the blue sky laws of any state, nor will such interests be registered.

Section 9.2. Indemnification/Limitation on Liability.

(a) Each Partner shall, to the extent permitted by law, be indemnified and held harmless by the Partnership from and against any and all losses, claims, damages, liabilities, joint and several, expenses (including reasonable legal fees and expenses), judgments, fines, settlements, and other amounts arising from any and all claims, costs, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which the Partner may be involved.

(b) The indemnification provided by this Section shall be in addition to any other rights to which those indemnified may be entitled under any agreement, vote of the Partners, as a matter of law or otherwise, and shall inure to the benefit of the respective heirs, successors, assigns and administrators of each Partner.

(c) The indemnification provided for in this Section shall be to the extent of any Partnership Assets.

Section 9.3. Severability. If any portion of this Agreement shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect the remaining valid and enforceable portions of this Agreement which shall continue in full force and effect.

Section 9.4 Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the heirs, personal representatives, successors and assigns of the parties hereto, subject to all of the terms and conditions hereof. This Section shall not be construed to permit transfers of interests not otherwise permitted hereunder.

Section 9.5 Counterparts. This Agreement may be executed in one or more counterparts, all of which shall constitute one Agreement. The signature pages of such counterparts may be detached therefrom after execution of this Agreement and attached to one counterpart.

Section 9.6. Filings, etc. Any filing or recordation required to be made under applicable law with any governmental agency or official on behalf of or with respect to the Partnership may be signed by the Managing Partner. The Managing Partner shall also cause to be filed, recorded and published, such statements, notices, certificates, or other instruments as may be required by any provision of any applicable law which governs the formation of the Partnership or the conduct of its business from time to time.

Section 9.7. Notices. All notices permitted or required hereunder shall be in writing and shall be addressed to the Partners at their respective addresses appearing on the Partnership's books. Notices sent by mail shall be deemed to have been given three (3) days after deposit in the U.S. mails. Notices hand-delivered shall be deemed to have been served when so delivered.

Section 9.8. Gender and Number. Despite the gender and number of any word used herein, such word shall import the masculine, feminine, neuter, singular and plural, as may be reasonably inferred from the context.

Section 9.9. Power of Attorney. Each of the undersigned and each person who becomes a Partner does hereby constitute and appoint the Managing Partner, under and pursuant to this Agreement as it may be amended from time to time, to be his true and lawful attorney in fact, at any time and from time to time, with full power of substitution, to make, execute, sign, acknowledge, deliver, file, record, amend or cancel any and all instruments, documents and certificates, including without limitation, certificates for conducting business under an assumed name and such other instruments as may be required by or under law in connection with the formation, existence, operation or termination of, or the business to be conducted by, the Partnership. The parties agree that the foregoing power of attorney is coupled with an interest and shall be irrevocable during the term of the Partnership and shall continue notwithstanding the death, dissolution or incompetence of any party giving such power of attorney.

Section 9.10. Amendments. No change, amendment or modification of this Agreement shall be valid unless the same shall be in writing and signed by all Partners. No waiver of any provision hereof shall be valid unless in writing and signed by the party to be charged.

Section 9.11. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of South Carolina, including the Act.

**IN WITNESS WHEREOF,** the undersigned have hereunto set their hands as of the date first set forth above.

JGB BOHICKET INVESTMENTS LLC

BY: ______________________
James G. Boyd, Member

JZ BUCKINGHAM INVESTMENTS LLC

BY: ______________________
Jerry Zucker, Member

**EXHIBIT A**

| Partner | Cash Contributed | Percentage Interest |
|---|---|---|
| JZ Buckingham Investments LLC | $900.00 | 90% |
| JGB Bohicket Investments LLC | $100.00 | 10% |
| TOTAL | $1,000.00 | 100% |