**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**NO. 05-231 T**
**(Chief Judge Damich)**

---

**JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,**

**Plaintiff,**

**v.**

**United States of America,**

**Defendant.**

---

# PLAINTIFF'S RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MELVIN F. JAGER

Joel N. Crouch
Texas State Bar No 05144220
MEADOWS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

Page No.


I. INTRODUCTION ..... 2
II. STATEMENT OF FACTS ..... 2
A. The Government's Expert Reports Improperly Include The Full Amount of Professional Fees in Analyzing The Profitability of The Transactions At Issue ..... 3
B. The Jager Report Rebuts the Government's Treatment of Professional Fees in Analyzing Profit Potential ..... 4
III. ARGUMENTS ..... 5
A. The Jager Report Was Timely Provided as a Rebuttal to the Government's Expert Report on Economic Analysis ..... 5
1. Case Law Makes Clear That Rebuttal Experts Do Not Need To Review The Testimony They Are Rebutting ..... 5
2. The Jager Report Qualifies as a Rebuttal Report Under Applicable Case Law ..... 6
B. The Jager Report Does Not Represent a Legal Opinion ..... 7
1. Under the Federal Rules of Evidence 702 and 704, Experts, Even Lawyers, May Testify as To Facts That if Found Would Support a Legal Conclusion ..... 8
2. The Jager Report Concludes That The COBRA Strategy Had the Essential *Characteristics* of a Trade Secret and that the Compensations Structure Was Common; These Represent Factual Determinations Not Legal Conclusions ..... 10
3. Mr. Jager Does Not Rely Upon Legal Authorities in Forming His Pricing Opinions as Alleged by the Government ..... 12
C. The Jager Report Examined Sufficient Facts in the Record in Order be Considered Reliable ..... 13
IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page No.

Federal Cases

Askanase v. Fatjo, 130 F.3d 657, 672 (5th Cir. 1997 ....... 9
Burkhart v. Washington Metropolitan Area Transit Authority, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997 ....... 8, 9
Data Line Corp. v. Micro Technologies, Inc., 813 F.2d 1196 (Fed. Cir. 1987 ....... 14
Duff v. Duff, 2005 WL 6011250 (E.D. Ky. 2005 ....... 6
Florida Rock Indust. Inc. v. United States, 791 F.2d 893 (Fed. Cir. 1986 ....... 12
Huddleston v. Herman & MacLean, 640 F.2d 534, 552 (5th Cir. Unit A March 1981 ....... 9
Montgomery v. Aetna, 898 F.2d 1537, 154 ....... 9
National Australia Bank v. United States, 452 F.3d 1321 (Fed. Cir. 2006 ....... 12
Okerlund v. United States, 365 F.3d 1044 (Fed. Cir. 2004 ....... 12
Owen v. Kerr-McGree Corp., 698 F.2d 236, 240 (5th Cir. 1983 ....... 7
Pinal Creek Group v. Newmont Mining Corp., 352 F.Supp.2d 1037 (D. Az. 2005 ....... 9
Poly-America, Inc. v. Serrot Inter, Inc., 2002 W.L. 1996561 (N.D. Tex. 2002 ....... 6
Simmons v. Johnson, et al., 2008 U.S. Dist. Lexis 11074 (M.D. La. 2008) ....... 5
Spect v. Jensen, 853 F.2d 805, 809 (10th Cir. 1988 ....... 10
TC Systems Inc. v. Towne of Colonie, 213 F. Supp.2d 171 (N.D.N.Y. 2002 ....... 6
Wireless Agents v. Sony, 2006 W.L. 5127278 (N.D. Tex. 2006 ....... 6, 7

Federal Rules

Federal Rules of Evidence 702 ....... 8
Fed. R. Evid. 704 ....... 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**NO. 05-231 T**
**(Chief Judge Damich)**

---

**JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,**

**Plaintiff,**

**v.**

**United States of America,**

**Defendant.**

---

**PLAINTIFF'S RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MELVIN F. JAGER**

Plaintiff hereby files this Response to the Government's Motion to Exclude Expert Report and Testimony of Melvin F. Jager and asks the Court to deny such Motion for the following reasons:

1. The Jager Report establishes that, for economic substance analysis purposes, part or all of the fees paid by the parties in this case are properly allocable to the tax benefits derived from the transactions at issue;

2. By explaining that fees are properly allocable to the tax benefits, the Jager Report rebuts the Governments expert report on how fees should be handled in analyzing economic substance;

3. Mr. Jager's response was timely provided to the Government as a rebuttal to its expert witness reports;

4. Mr. Jager does not offer any legal conclusions in his expert report as alleged by the Government;

5. The Jager Report does not offer any opinion on the law as it relates to any transactions at issue in this case;

6. The Jager Report is admissible under Rules 702 and 704 of the Federal Rules of Evidence.

## I. INTRODUCTION

Plaintiffs provided the expert report of Melvin Jager to the Government on July 2, 2007 ("the Jager Report"), pursuant to Rule 26(a)(2)(C). The Jager Report provides expert witness testimony on two issues that are important in rebutting the Government's economic analysis expert reports provided by the Government's expert witnesses, A. Lawrence Kolbe (the "Kolbe Report")[1] and David F. DeRosa (the "DeRosa Report").[2] The Government complains that the Jager Report is untimely and offers an impermissible legal analysis and legal opinion that should be excluded. For the reasons discussed below, the Government is wrong and its Motion must be rejected.

## II. STATEMENT OF FACTS

Contrary to the Government's allegations, the Jager Report is the direct result of and is provided as a rebuttal report to the Government's expert reports on economic analysis, which include the Kolbe Report and the DeRosa Report. The Kolbe Report is titled "Economic Analysis of the Transactions By Participants in JBJZ Partners." The DeRosa Report is untitled, but also provides an economic analysis of the transactions at issue. As discussed below, those reports

[1] The Kolbe Report is attached as Exhibit A, PL.MJ.APP00001.
[2] The DeRosa Report is attached as Exhibit B, PL MJ APP000067

provide an economic analysis of the transactions that incorrectly factors in professional fees paid in connection with executing and reporting the transactions.

**A. The Government's Expert Reports Improperly Include The Full Amount of Professional Fees in Analyzing The Profitability of The Transactions At Issue**

In his report, under a section titled "Purpose of Report," Mr. Kolbe states that he has been asked to, among other things, "analyze the risk-return characteristics of the offsetting option transactions at issue *independently of any claimed tax benefits*, and, viewing the offsetting option transactions objectively, to determine whether a reasonable possibility of profit existed apart from any tax benefit, *taking into account all transactions costs. . . .*"[3] He goes on to state that his report includes an "analy[sis of] whether a reasonable possibility of profit existed absent any tax benefit."[4] Thus, Mr. Kolbe's Report purports to provide an economic analysis of the transactions at issue that focuses on the possibility for a profit, without taking into account the tax benefits associated with the transactions, but taking into account all transaction costs.

Throughout his report, Mr. Kolbe provides rates of return information before and after fees are taken into account. For example on page 4, he states "Before fees to Ernst & Young and attorneys, the expected rate of return on the offsetting option positions was a loss of about 30-35 percent of the amount actually invested. After these fees, the expected rate of return was a loss of approximately 120-125 percent of the amount actually invested (The 120-125 percent equals the sum of the 30-35 percent expected loss on the investment itself and a 90 percent loss due to the fees.)."[5] He goes on to conclude that "absent the claimed tax savings, the participants' expected rate of return on each option position was a loss of *more* than the amount they invested to buy the

---

[3] See Kolbe Report at p. 1, PL MJ APP00003 (emphasis added)
[4] *See id* at p. 2, PL MJ APP00004.
[5] *See id* at p. 4, PL MJ APP00006

option."[6] He also concludes that "if the claimed tax loss is ignored, these transactions make no economic sense."[7]

The DeRosa Report likewise analyzes the possibility of achieving a "Non-Tax Profit."[8] In Table 13a of his report, Mr. DeRosa provides expected rate of return information for each of the transactions after taking into account all fees provided in connection with the transactions.[9] Based in part on this information, Mr. DeRosa concludes that the parties had no reasonable possibility of achieving a non-tax profit.[10]

## B. The Jager Report Rebuts the Government's Treatment of Professional Fees in Analyzing Profit Potential

Obviously, Plaintiff does not agree with the economic substance conclusions included in either the Kolbe Report or the DeRosa Reports. Among the many objections to these reports is that they include professional fees in their calculations to arrive at the expected rates of return. Plaintiff will argue that fees should be allocated to the tax benefits of the transactions and that any economic analysis of the transactions that does not take into account the tax benefits should likewise exclude the associated fees.

In support of its position that professional fees should be attributed solely to the tax benefits, Plaintiff has produced the expert testimony of Mr. Jager. The Jager Report concludes that the transactions at issue had the characteristics of a trade secret and, because they were valued as such in the market, an appropriate way to compensate for use of the tax aspects of the transactions was to

[6] *See id.* at p. 5, PL MJ APP00007.
[7] *See id.*
[8] *See* DeRosa Report at 52, PL MJ APP00118.
[9] *See id.* at p. 57, PL MJ APP00123.
[10] *See id.* at p. 61, PL MJ APP00127.

charge a percent of the realized or potential tax benefits.[11] This is precisely the compensation structure used in this case.

## III. ARGUMENTS

### A. The Jager Report Was Timely Provided as a Rebuttal to the Government's Expert Report on Economic Analysis

The Government mistakenly contends that the Jager Report should be excluded because it does not represent a rebuttal report but rather an untimely initial report. The Government, however, cites no authority for this assertion nor does it put forth any reasoned standard for distinguishing rebuttal reports from initial reports. Instead, the Government bases its entire argument on the fact that Mr. Jager never reviewed its experts' initial reports which the Government contends express no opinion "on whether COBRA constituted some kind of intellectual property."[12] On this scant justification, the Government contends that the Jager Report does not represent a rebuttal report and should therefore be excluded. The only authority the Government cites for this drastic result does not involve rebuttal reports, but rather dealt exclusively with supplemental expert reports.[13] The Government's failure to cite to any meaningful authority to support its position is understandable since courts which have directly addressed the distinction between rebuttal and initial reports generally contradict the Government's proffered theory.

#### 1. Case Law Makes Clear That Rebuttal Experts Do Not Need To Review The Testimony They Are Rebutting

In examining whether an expert qualifies as a rebuttal expert, the courts have determined that "[a]lthough a rebuttal expert witness will often know whose testimony he is rebutting and what is the precise content of that testimony, [Rule 26(a)(2)(c)] does not require such knowledge . . . [i]t is sufficient if the evidence disclosed under the rebuttal rubric is intended solely to

---

[11] *See* Jager Report at p. 21, Gov't. App. 21.
[12] United States' Motion to Exclude Brief at 11.
[13] *See Simmons v. Johnson, et al.*, 2008 U.S. Dist. LEXIS 11074 (M.D. La. 2008).

contradict or rebut evidence on the same subject matter that another party has identified in its expert disclosure."[14] Accordingly, the Government's argument based on the fact that Mr. Jager did not review its experts' reports is wholly without merit.

### 2. The Jager Report Qualifies as a Rebuttal Report Under Applicable Case Law

The courts have also determined that in distinguishing between initial and rebuttal expert reports, it is useful to consider the following three factors: (1) What evidence the rebuttal expert purports to contradict or rebut; (2) whether the evidence disclosed as rebuttal evidence is on the same subject matter as that identified by another party in its Rule 26(a)(2)(B) disclosure; and (3) whether the evidence disclosed as rebuttal evidence is intended solely to contradict or rebut that evidence.[15] Under this three-prong test, rebuttal experts have been approved where "at least some of [the expert's] testimony purports to contradict or rebut" the opposing expert's opinion.[16]

The Jager Report establishes that professional fees should be allocated to the tax benefits associated with the transactions at issue. As such, the Government's economic analysis of the transactions at issue, as reflected in both the Kolbe Report and the DeRosa Report, both of which ignore the tax benefits associated with the transactions in their economic analyses of the transactions, should likewise exclude professional fees. Both the Kolbe Report and the DeRosa Report provide economic substance analyses by factoring in professional fees, rather than excluding them in their entirety.[17] Thus, the Jager Report is presented as a direct rebuttal to the manner in

---

[14] *Poly-America, Inc. v. Serrot Inter, Inc.*, 2002 W.L. 1996561 (N.D. Tex. 2002); *see also TC Systems Inc. v. Towne of Colonie*, 213 F. Supp.2d 171 (N.D.N.Y. 2002) (refusing to narrowly construe the phrase "same subject matter" as used in Rule 26(a)(2)(C)); *Duff v. Duff*, 2005 WL 6011250 (E.D. Ky. 2005)

[15] *Wireless Agents v. Sony*, 2006 W.L. 5127278 (N.D. Tex. 2006).

[16] *Poly-America v. Serrot Inter*, 2002 W.L. 1996561 at * 15

[17] Mr DeRosa's rebuttal report dated July 2, 2007 confirms the Government's position on the treatment of professional fees by asserting that Plaintiff's expert report on economic substance is defective because it "do[es] not consider the significant professional fees paid by the plaintiffs as part of the transactions." *See* Exhibit C at PL MJ APP00206

which Mr. Kolbe and Mr. DeRosa have treated professional fees in performing their economic analyses.

Under the three-part test set forth above, the Jager Report represents a rebuttal report and not an initial report, contrary to the Government's argument because (i) the Jager Report directly rebuts the manner in which Mr. Kolbe and Mr. DeRosa treat professional fees in performing their economic analyses of the transactions at issue in this case; (ii) the Jager Report relates to the issue of economic substance which is the same subject matter addressed in each of Mr. Kolbe and Mr. DeRosa's reports; and (iii) the Jager Report is intended solely to address the manner in which professional fees should have been handled by the Government's expert witnesses in their economic analyses of the transactions at issue in this case.[18] Accordingly, the Jager Report is properly classified as a rebuttal report and was therefore timely submitted.

**B. The Jager Report Does Not Represent a Legal Opinion**

The Government also alleges that the Jager Report is inadmissible because it improperly "attempt[s] to provide legal analysis and a legal opinion to the Court."[19] The Government spends the majority of its Argument section laying out the well-established principal that "allowing an expert to give his opinion on the legal conclusions to be drawn both invades the court's province and is irrelevant."[20] The Government, however, devotes virtually none of its brief to explaining *how* the Jager Report constitutes a legal opinion. In fact, the Government's entire brief only contains one express reference to the Jager Report which it contends constitutes an impermissible legal opinion.[21] Specifically, the Government claims that Mr. Jager "cites and

---

[18] *Wireless Agents v. Sony*, 2006 W.L. 5127278 (N.D. Tex. 2006)

[19] United States' Motion to Exclude Brief at 2

[20] *Owen v. Kerr-McGree Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)

[21] The Government's brief also contains several vague, conclusory, and unsupported accusations that Mr. Jager cited and applied undisclosed statutes and case law. ***See, e.g.***, United States' Motion to Exclude Brief at 2, 9, 12-15

relies upon his understanding of statutory law (1985 Amendments to the Uniform Trade Secrets Act) as well as case law," in support of his conclusion that "trade secrets have compensable value, and that fees paid for such value are frequently based on a percent of the profit realized from the use of the intellectual property."[22]

### 1. Under the Federal Rules of Evidence 702 and 704, Experts, Even Lawyers, May Testify as To Facts That if Found Would Support a Legal Conclusion

Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the fact of the case."[23]

As a preliminary matter, Plaintiff acknowledges the black-letter law discussed at length by the Government to the effect that "experts may not usurp the court's role by providing legal instruction."[24] Expert testimony consisting of purely legal conclusions is generally not regarded as testimony that will assist the trier of fact under Rule 702.[25] Thus, "federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case."[26]

But it is equally well-settled in American jurisprudence that, an expert – even a lawyer -- may "offer his opinion as to facts that, if found, would support a conclusion that the legal

[22] United States' Motion to Exclude Brief at 9-10.
[23] Fed. R. Evid. 702.
[24] *See* United States' Motion to Exclude Brief at p. 12.
[25] *See Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997)
[26] *See The Pinal Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037 (D. Az. 2005)

standard at issue was satisfied."[27] Thus, a lawyer may testify, even as to legal matters, when those matters involve questions of fact.[28] While in some cases it may be difficult to distinguish between permissible factual testimony on the one hand and an impermissible legal opinion on the other, courts have generally drawn a distinction between testimony as to *facts* that support a conclusion that a legal standard has been satisfied, which is permissible, and testimony that the legal standard *itself* has been satisfied, which is not permissible.[29]

To this body of case law is added Federal Rule of Evidence 704(b) which states, in relevant part, "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[30] The Committee Notes state that, notwithstanding Rule 704(b), opinions that "merely tell the jury what result to reach" continue to be inadmissible as well as "opinions phrased in terms of inadequately explored legal criteria."[31] Thus, the question "Did T have capacity to make a will?" would not be admissible, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be admissible.[32]

The authority is therefore clear that the prohibition against providing a legal opinion in the form of expert testimony does not preclude an expert from testifying as to facts that would

---

[27] *See* Burkhart, 112 F.3d at 1212-13; *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997)("We agree that merely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact.")

[28] *See* *Askanase*, 130 F.3d at 672(citing *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. Unit A March 1981))

[29] *See, e.g.*, *Burkhart*, 112 F.3d at 1212-13("[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."); *Montgomery v. Aetna*, 898 F.2d 1537, 1541 ("An expert may testify as to his opinion on an ultimate issue of fact . . . An expert may not, however, merely tell the jury what result to reach.").

[30] *See* Fed. R. Evid. 704(a)

[31] *See id.*, Committee Notes

[32] *See id.*

support a particular legal conclusion. This type of testimony is admissible even if it is couched in legal terms.[33]

### 2. The Jager Report Concludes That The COBRA Strategy Had the Essential *Characteristics* of a Trade Secret and that the Compensations Structure Was Common; These Represent Factual Determinations Not Legal Conclusions

Contrary to the Government's accusations, the Jager Report does not set forth any legal opinions. In fact, the Jager Report as well as Mr. Jager's deposition testimony make clear that he was not expressing a legal opinion that the Investment and Tax Strategies in this case constitute intellectual property – specifically trade secrets. Instead, Mr. Jager simply utilizes his specialized training and experience to conclude that the COBRA strategy had the essential *characteristics* of a trade secret – a factual determination. His report concludes that the "key characteristics" of a trade secret are (i) novelty, (ii) secrecy, (iii) security and (v) value.[34] He then examines specific aspects of the transactions at issue to conclude that the "Investment and Tax Strategy" had the characteristics of at trade secret.

This conclusion merely laid the predicate for Mr. Jager's expert opinion that "compensation in the form of a percentage of the potential benefits, such as cost savings, enabled by intellectual property is a common structure in intellectual property licensing."[35] Mr. Jager summarized the scope of his assignment nicely at his deposition, stating that "My assignment was not to determine in the absolute sense that . . . this business strategy was something that was a trade secret in the ultimate or abstract sense. My assignment . . . was to determine if it had the characteristics of intellectual property, in this case a trade secret, or

---

[33] *See* Spect v. Jensen, 853 F.2d 805, 809 (10th Cir. 1988)("Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.")
[34] *See* Jager Report at 9, Gov't App. 9.
[35] The Jager Report, at 4, Gov't App. 9.

proprietary information that the next step would justify the application of a reasonable fee to use it."[36]

To be sure, whether the transactions at issue in this case in fact constitute a trade secret under any applicable law is not relevant. Plaintiff does not argue that it did or did not constitute a trade secret as that is not an issue in this case. What is relevant is that the parties viewed the structure as something akin to a trade secret and valued it accordingly. That is essentially the nature of the Jager Report.

As mentioned above, the Government's only attack on the Jager Report for which it provides any specific support, addresses what the Government terms his "legal conclusion" that trade secrets have compensable value and the common bases for determining fees paid for such value.[37] The Government misconstrues the Jaeger Report to make it appear that he is arriving at a legal conclusion as to value. On this issue, Mr. Jager notes that the second part of his assignment is to opine on "whether it is common to provide compensation for the use of intellectual property, including trade secrets, in the form of a percent of the benefit or potential benefit, such as cost savings, provided by using the intellectual property."[38] Thus, it is clear that Mr. Jager is not providing a legal opinion. He is merely opining as to whether this type of compensation is "common."

In addition to mischaracterizing the Jager Report, the Government's objection to Mr. Jager's opinion as to valuation must be rejected on more fundamental grounds. Expert testimony regarding valuation and pricing is routinely admitted in a myriad of legal contexts to

---

[36] Mr. Jager's Deposition, at 149, Gov't. App.9.
[37] *See* United States' Motion to Exclude Brief at p. 9.
[38] *See* Jager Report at 14, Gov't. app. 9.

prove damages,[39] tax owed,[40] and government takings.[41] There are probably very few areas where expert testimony is utilized in litigation as much as in the area of valuing property.

### 3. Mr. Jager Does Not Rely Upon Legal Authorities in Forming His Pricing Opinions as Alleged by the Government.

Furthermore, the Government's claim that the Jager Report "cites and relies upon" legal authorities in forming his pricing opinion, is simply wrong. The Jager Report does not rely on any legal authorities in describing the 25 percent "rule of thumb," which is often used as a starting point for splitting the anticipated benefits of intellectual property between owners and users. Rather, the Report relies on Mr. Jager's own licensing and intellectual property experience, as well as the publications of other recognized experts in the field.[42] Moreover, the Jager Report examined and summarized 20 publicly available license agreements to determine that "in real-world arms length licensing situations, the royalty base is commonly some measure of the potential benefit enabled by the trade secret."[43]

The references to case law and the Uniform Trade Secrets Act about which the Government complains are found in the Jager Report under the subheading "Trade Secret Licensing as a Result of Litigation."[44] However, as expressly noted in that section, these authorities are simply offered to demonstrate that "Courts often emulate what is seen in real world licensing scenarios in assessing trade secret damages."[45] Mr. Jager notes that this fact

[39] *See National Australia Bank v. United States*, 452 F.3d 1321 (Fed. Cir. 2006) (considering expert testimony to establish the value of damages in the form of potential tax benefits lost).
[40] *See Okerlund v. United States*, 365 F.3d 1044 (Fed. Cir. 2004) (considering whether Court of federal Claims properly evaluated competing experts' opinions the fair market value of non-publicly traded stock for federal gift tax purposes).
[41] *See Florida Rock Indust. Inc. v. United States*, 791 F.2d 893 (Fed. Cir. 1986) (considering expert testimony on the fair market value of property to determine whether government action resulted in sufficient diminution of value to constitute a taking).
[42] The Jager Report, at 15-16, Gov't App. 15-16 (citing Goldscheider, et al, article).
[43] *See id.*
[44] *Id.* at 16.
[45] *Id.*

reinforces that a percent of the benefits, such as cost savings realized by utilizing a trade secret is an appropriate and widespread licensing technique.[46] Accordingly, these legal references merely provide additional examples of trade secret compensation structures that are based on a percentage of benefits. Contrary to the Government's argument, they are not cited to as legal authority.[47]

**C. The Jager Report Examined Sufficient Facts in the Record in Order be Considered Reliable.**

Finally, the Government offers an ill-conceived argument that the Jager Report should be excluded because "it will not assist the trier of fact" as required by Rule 702.[48] The Government bases the entirety of this argument on its unfounded accusation that Mr. Jager lacked sufficient knowledge of the record to form his opinion. Here again, in making a broad, conclusory claim the Government cites no authority and provides no standard by which to measure whether or not an expert has sufficient knowledge of the record to support his opinion testimony. The Government's argument, however, ignores precedent indicating that an encyclopedic knowledge of the record is not required in order for an expert to render a reliable opinion – particularly where the opinion involves complex, highly technical matters such as intellectual property.[49]

Contrary to the Government's accusations, the Jager Report and the conclusions therein are thoroughly supported by references to the record. To this end, Mr. Jager examined numerous documents in the record, the most important of which were: (1) the Advisor Confidentiality Agreements which Ernst & Young advisors were required to sign before giving

[46] *See id.*
[47] *Id.* at 16-17.
[48] United States' Motion to Exclude Brief at 15.
[49] *See Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196 (Fed. Cir. 1987) (Expert testimony was competent and admissible to establish patent infringement, notwithstanding expert's failure to physically inspect accused device and their inability to identify certain of its schematic drawings, read its source code, and describe the details of its test phase).

COBRA presentations, (2) the Ernst & Young Sample Engagement Letter declaring all COBRA related advice confidential, and (3) email correspondence indicating that Ernst & Young had made improvements to the COBRA Investment & Tax Strategy.[50] The Jager Report adeptly examines these and other documents in the record to reach the conclusion that the COBRA Investment & Tax Strategy possessed sufficient characteristics of a trade secret (*i e.*, Novelty, Secrecy, Security, and Value) that the Parties treated them as such and priced them accordingly.[51]

Here again, it is important to note that the Jager Report does not give the opinion that the Investment & Tax Strategy was a trade secret. Rather, the Jager Report only gives the opinion that the Investment & Tax Strategy had sufficient characteristics of a trade secret so that the parties treated it as a trade secret in determining the proper price to charge for its use. Accordingly, facts to support the proposition that it was a trade secret are superfluous and irrelevant. Rather, only facts indicating how the parties involved *perceived* the Investment & Tax Strategy would be relevant to the opinion expressed. As such, Mr. Jager properly limited the scope of his review to facts in the record pertaining to how the parties viewed the strategy. For example, the Government emphasized the fact that Mr. Jager did not know the details of the enhancement that Ernst & Young made to the strategy.[52] But, this is only a relevant fact to an opinion that the strategy was, in fact, a trade secret As previously discussed, the Jager Report was only concerned with whether the parties perceived that enhancements had been made. Accordingly, an understanding of the actual enhancements is unnecessary, and Mr. Jager's reliance on Ernst & Young's email correspondence referencing enhancements they had made is

---

[50] *See*, the Jager Report, at 9-11, Gov't. App. 9-11.
[51] The Jager Report, at 4, Gov't App. 4
[52] United States' Motion to Exclude Brief at 7.

both sufficient and proper. Therefore, the Jager Report should not be excluded because it is based on sufficient facts and data so as to be reliable under Rule 702.

## IV. CONCLUSION

For the reasons discussed above, the Government's Motion is without merit and must be denied.

Respectfully submitted,

By: s/Joel N. Crouch
Joel N. Crouch
Texas State Bar No.05144220

MEADOWS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

On this 21st day of April 2008, a copy of the foregoing Plaintiff's Response to Government's Motion to Exclude the Expert Report and Testimony of Melvin J. Jager was delivered to counsel listed below via the electronic filing.

Dennis Donohue
United States Department of Justice
Tax Division
Civil Trial Section, Northern Region
555 Fourth Street, N.W., Room 7804
Washington, D.C. 20001

s/Joel N. Crouch
Joel N. Crouch