# Report of David DeRosa, Ph.D.

In Rebuttal to the Expert Reports of

Don M. Chance, Ph.D. and Alan C. Hess, Ph.D.

JBJZ Partners LP v. United States of America

July 2, 2007

EXHIBIT

C

I disagree with the main points of Dr. Chance's Expert Report, dated May 8, 2007, and Dr. Hess's Expert Report, dated May 7, 2007. In addition, Drs. Chance and Hess have introduced what amount to irrelevancies and errors, and have omitted some of the key elements of the transactional history and analysis in the JBJZ transactions.

There are six main topics in this rebuttal:

1. Their analyses of the transactions are defective as they do not consider the significant professional fees paid by the plaintiffs as part of the transactions.
2. Both Drs. Chance and Hess include in their analyses the illusory possibility of hitting the sweet spot. This ignores Deutsche Bank's ability to keep the sweet spot from ever being hit.
3. Both Drs. Chance and Hess miscalculate probabilities, and fail to discuss expected returns.
4. Dr. Chance's discussion of equity options is not a valid comparison to foreign exchange options, and his methodology contains several errors.
5. Both Drs. Chance and Hess analyze and value the short digital options but fail to consider the long options.

6. Both Drs. Chance and Hess make several errors in calculating currency correlations and option valuations.[1]

1. <u>Absence of Full Investment Costs in Transaction Analysis</u>

In the valuation of any investment, it is essential and standard procedure to include all transaction costs. Ira Shepard, in his Expert Report in the Carmel Petitioners v. USA, a COBRA case similar to the JBJZ Partners case, quoted the following central question:

> Is there a reasonable possibility of earning a reasonable profit in excess of the costs to invest, including advisory fees, without taking tax consequences into account?[2]

Mr. Shepard serves as an expert for the Carmel plaintiffs, and so his reference to the inclusion of advisory fees (as well as tax consequences) is instructive. Omitting the advisory fees in these transactions removes a sizeable cost which was borne by the investors. Moreover, this omission alters the expected return the investors, or their agents, would have considered prior to the transactions. The Ernst

---

[1] A failure to mention any point of disagreement with the expert reports of Drs. Chance and Hess does not constitute agreement therewith.

[2] Wolfman, Holden and Harris, <u>Standards of Tax Practice</u>, 5th Edition, Tax Analysts (1999), §208.4.1,p.159

& Young (E&Y) fees were 1.5% of the long stated premium, and a substantial 30% of the net stated premium. In addition, the Jenkens & Gilchrist ("J&G") fees (including the Brown and Wood tax opinion) were a startling 58% of the net stated premium. In other words, the fees almost doubled the transaction cost. Plainly, the E&Y and J&G fees were a significant component of the transactions, which should not be overlooked. Omitting these fees further invalidates the conclusions of Drs. Chance and Hess on the subject of the probability of achieving a profit. I cover this topic thoroughly in my report, and will not dwell on it further here, except to state that Drs. Chance and Hess, to their credit, may have been unaware of these costs. The Bates ranges of their information sources appear to exclude the Deutsche Bank and E&Y memos, plus additional documentation, which discuss these fees.

Drs. Chance and Hess also failed to recognize the overpayment of net option premium to Deutsche Bank. The total net option premium paid to Deutsche Bank by the JBJZ Participants was $2,500,000. According to my theoretical values, the net premium paid to Deutsche Bank should have been $1,670,168. In other words, the JBJZ Participants overpaid for the digital options by 50%. That 50%

overpayment represents in substance an additional material fee paid by the JBJZ Participants on the transactions. Neither Dr. Chance nor Dr. Hess takes note of this significant overpayment, and in fact only value the short option (see section 5, below).

## 2. The Sweet Spot Was Incorrectly Considered by Drs. Chance and Hess.

All the digital option pairs in the JBJZ transactions had strike prices which were 2-pips apart. A situation where the long option is in-the-money at expiration while the short option is out-of-the-money is known as "hitting the sweet spot." This is a subject to which I devoted much of my expert report. In his report, Dr. Chance opines as to the low probability of hitting the sweet spot (specific reference, p.4). His argument is entirely theoretical, and in fact has no basis in the real world of currency trading. The truth is that the sweet spot never would have been hit. Deutsche Bank, as the calculation agent, was in control of the pricing of the options at expiration. Given a 2-pip (or wider) bid-ask spread on the currencies and given that the confirmations were silent as to the determination of the spot price at expiration, Deutsche Bank would never

have permitted a settlement within the sweet spot. The Deutsche Bank RMS reports and ODET sheets showing the removal or absence of the sweet spot confirm that Deutsche Bank did not consider the sweet spot would ever be hit. Therefore, to attach even a low probability to this component of the transaction completely misses the reality of what transpired. The mere fact that Dr. Chance attaches any value to the possibility of hitting the sweet spot lends unwarranted weight to the credibility of the trading strategy.

Dr. Hess, as well, discusses this phantom payoff, without using the term of art *sweet spot*. Contained within a total of eleven tables throughout his report (pp. 9, 12, and 14), each followed by an explanation, Dr. Hess refers to the "Net Strategy Payoff," wherein the Participant obtains the imaginary long payoff without having to deliver on the short obligation.

3. Probabilities Are Not the Same as Expected Returns

Drs. Chance and Hess both use probabilities in their evaluation of the JBJZ transactions. Although probabilities are of interest, they provide only part of

the story in a rigorous analysis of the JBJZ digital options. For example, an option which is way out of the money may be an excellent investment, even though its probability of ending up profitable is low. Why? Because it might have a large payoff relative to its cost. Similarly, an option that is way in-the money with a high likelihood of paying off may be a bad investment, for the opposite reason. A correct approach to measuring the worthiness of the JBJZ digital options is using the Net Expected Rate of Return, which considers probabilities along with their full costs (including advisory fees) and potential payoffs.

Furthermore, Dr. Chance uses historical volatility, a calculation that does not necessarily correspond with where options are actually priced in the market. While market volatility pricing data are not always available on a historical basis, in this case we have internal documents indicating where Deutsche Bank knew the market was pricing volatility. Additionally, Deutsche Bank's values generally correspond to the values in the Bloomberg historical volatility pricing database.

Dr. Chance's probabilities range from 28 to 32% corresponding to the 30, 60, and 90 day volatilities. Dr. Hess's probabilities range from 22 to 40%. My own probabilities are approximately 26% for the JBJZ transactions.

In Appendix A, I have applied the probabilities from Drs. Chance and Hess in order to calculate the Net Expected Rate of Return. Using their highest probabilities (i.e., most favorable to the plaintiffs), we can see that the Net Expected Rates of Return drop to well below -45% consistently, in Column 5.

In my expert report for JBJZ Partners, under Methodology 2 (pp.58-59, including Table 13b), I presented an alternative calculation for the Net Expected Rate of Return. In Appendix A, Column 6, again using the highest probabilities of Drs. Chance and Hess, we see the Net Expected Rates of Return drop to below -88%.

Finally, Dr. Hess refers to "positive probabilities" on p.21 of his report. There is no such thing as a negative probability. By mathematical definition, which can be found in every book on probability theory, all

probabilities run from zero to 1. Every investment, good or bad, has non-negative probabilities. Therefore, such a turn of phrase is not helpful at best, and misleading at worst.

4. Equity Options Function Differently From FX Options

Throughout Dr. Chance's report, he makes analogous and comparative references to Google stock options. The lengthy exposition on Google, as well as options on the S&P 500, has no legitimate purpose in his report and adds to the general atmosphere of confusion. Moreover, Dr. Chance calculates the probabilities on the outcomes of the JBJZ foreign exchange option transactions from market information on options on Google and the S&P 500; for what reason I simply cannot comprehend. Options on Google and the S&P 500 are irrelevant to this case as the JBJZ Participants did not buy Google or S&P indices, or options on these. Dr. Chance describes Google options on 14 of the 44 pages of his report. Equity options and foreign exchange options share many features, but in terms of their valuation, they are very different financial instruments.

5. Valuation Based on Short Options Only

Drs. Chance and Hess were asked to opine only on the value of the short options (sold by the Participants to Deutsche Bank). Hence, they in large measure omitted the valuation of the long options which were an essential part of the transactions. The plaintiff instruction for Drs. Chance and Hess to consider the payoff on the short options only is to look at these transactions in a vacuum. I was surprised that Dr. Chance, an academic expert in derivatives, did not take the opportunity to calculate the theoreticals on both sides of the transaction, particularly given that he was claiming to determine the reasonable possibility of profit for the entire strategy. It is equally peculiar that Dr. Hess employed vaguely defined empirical probabilities for the payout on the short side alone, without taking the long component into account. In Table 2 of his report, Dr. Hess applied a probability only to the short payout (P.21), to define the expected short in-the-money payout. Since the long and short options combine into single transactions, the only in-the-money payment would be when the long and short both exceed the strike prices. In my report I demonstrate how the component long and short digital options are locked together as a single transaction (pp.61-80).

Emphasizing the short side gives the illusion the transaction had merit as an investment. By looking at the short side only, it may appear the investor was taking substantial risk, and also received a high premium from Deutsche Bank. Why would Deutsche Bank overpay (by some $22.4 million; over 189%) the premium for an option they themselves value lower than Chance, Hess, and my own theoreticals?[3] The answer is that Deutsche Bank was massively overstating the premiums on both the short and long options, thereby creating the desired long option premium. Overvaluing of the short option premium is part of the proof that these were single transactions, as Deutsche Bank would never willingly overpay for an option. Furthermore, Deutsche Bank never would have accepted the massive credit risk associated with separating the long and short components of the transactions, as I explained on pp.62-64 of my expert report.

It should be noted that despite the focus on the short option, both Drs. Chance and Hess often consider the trades as a single transaction (eg. Dr. Chance's Table 13, pp.42).

[3] The theoreticals of Drs. Chance and Hess do not match each other (see Chance Table 12, p.41; and Hess Table 2, p.21).

Neither expert mentions the possibility, or the credit and margin implications, of separating the component options.

7. Errors in Currency Correlations and Option Valuations

Dr. Chance commits a serious error in calculating the correlations between the euro and the Japanese yen. Although an American newspaper, for example, might quote foreign currencies in relation to the US dollar, foreign exchange dealers have a universal protocol for quoting currencies. The rules of this protocol are inviolate, and are known by every dealing room in the trading world. The convention of always quoting pound sterling in units of the dollar, or the dollar against the Japanese yen in units of the yen, for example, are critical to timely and correct foreign currency trading. The functioning of the foreign currency market, which is the largest market in the world, is critically dependent on keeping these conventions straight. On page 31 (Table 4) of Dr. Chance's report, we are told that the euro and Japanese yen are negatively correlated. Dr. Chance apparently confused the currency quotation conventions. When the analysis is done correctly, meaning the euro against the dollar and the Japanese yen against the dollar, the correlation signs are

correctly reversed. The following table illustrates Dr. Chance's error:

| | Chance Correlation EUR/JPY | DeRosa Correlation EUR/JPY |
|---|---|---|
| 30 Day | -0.3711 | 0.1542 |
| 60 Day | -0.2957 | 0.2760 |
| 90 Day | -0.2830 | 0.2207 |

These bogus correlations are used to estimate the probability of achieving a positive return on the Partnership level. Furthermore, Dr. Chance uses the erroneous correlations above to justify the conclusion that "an improvement in diversification [by investing through a partnership] will increase the probability of profit" (pp.37-38). I opine extensively in my report for JBJZ Partners (p.93-94) on the economic irrelevancy of investing through partnerships.

David F. DeRosa, Ph.D.
July 2, 2007

# Appendix A

| DB Deal # | DeRosa ITM Probability | DeRosa Expected Return (1) | DeRosa Expected Rate of Return (2) | DeRosa Net Expected Rate of Return - Methodology 1 | DeRosa Net Expected Rate of Return - Methodology 2 |
|---|---|---|---|---|---|
| 18119 | 26.66% | $666,393 | -33.36% | -64.93% | -123.36% |
| 18120 | 26.20% | $818,869 | -34.49% | -65.52% | -124.49% |
| 18121 | 26.66% | $166,598 | -33.36% | -33.36% | -123.36% |

| DB Deal # | Chance ITM Probability | Expected Return w/Chance ITM Prob. (3) | Expected Rate of Return w/Chance ITM Prob. (4) | Net Expected Rate of Return w/Chance ITM Prob. (5) | Net Expected Rate of Return w/Chance ITM Prob. (6) |
|---|---|---|---|---|---|
| 18119 | 29.90% | $747,500 | -25.25% | -60.66% | -115.25% |
| 18120 | 27.73% | $866,563 | -30.68% | -63.51% | -120.68% |
| 18121 | 29.90% | $186,875 | -25.25% | -60.66% | -115.25% |

| DB Deal # | Hess ITM Probability | Expected Return w/Hess ITM Prob. (7) | Expected Rate of Return w/Hess ITM Prob. (8) | Net Expected Rate of Return w/Hess ITM Prob. (9) | Net Expected Rate of Return w/Hess ITM Prob. (10) |
|---|---|---|---|---|---|
| 18119 | 22.34% | $558,500 | -44.15% | -70.61% | -134.15% |
| 18120 | 40.44% | $1,263,750 | 1.10% | -46.79% | -88.90% |
| 18121 | 22.34% | $139,625 | -44.15% | -70.61% | -134.15% |

(1) DeRosa Expected Return = DeRosa ITM Probability * DB ITM Net Payoff
(2) DeRosa Expected Rate of Return = (DeRosa Expected Return/Net Premium) - 1
(3) Chance Expected Return = Chance ITM Probability * DB ITM Net Payoff
(4) Chance Expected Rate of Return = (Chance Expected Return/Net Premium)-1
(5) Chance Net Expected Rate of Return = -(Chance Expected Return/Net Premium + Fees) -'
(6) Chance Next Expected Rate of Return =((Chance Expected Reeturn + Fees)/Net Premium
(7) Hess Expected Return = Hess ITM Probability * DB ITM Net Payoff
(8) Hess Expected Rate of Return = (Hess Expected Return/Net Premium) - 1
(9) Hess Net Expected Rate of Return = -(Hess Expected Return/Net Premium + Fees) - 1
(10) Hess Net Expected Rate of Return = ((Hess Expected Return + Fees)/Net Premium) - 1