106TH CONGRESS 2d Session } HOUSE OF REPRESENTATIVES { REPORT 106–1033

# MAKING OMNIBUS CONSOLIDATED AND EMERGENCY SUPPLEMENTAL APPROPRIATIONS FOR FISCAL YEAR 2001

---

## CONFERENCE REPORT

TO ACCOMPANY

## H.R. 4577

DECEMBER 15, 2000.—Ordered to be printed

PENGAD-Bayonne, N.J.
GOVERNMENT EXHIBIT
Appendix A3

in December 1974, when the values for the months of April through October 1974 were recalculated and released with issuance of the November CPI. Therefore, past precedent does not strictly apply to the present situation.

The conferees believe that integrity of official government data is vital to policymakers and private individuals and businesses throughout the country. The conferees emphasize that the CPI plays an important role in economic planning. For this reason the conferees are concerned that, while the BLS has published corrected CPI numbers for 2000, the BLS does not intend to publish correct CPI numbers for 1999 as part of the official CPI series. To its credit, the BLS announced the error publicly. The national press reported the error.[50] In the absence of a correction to the official CPI series, the Federal government will be left in the position of maintaining, as an official data series, index numbers that the Federal government has admitted are incorrect. The conferees believe that the public's trust in the integrity of official government data is a paramount goal and the conferees strongly encourage the Commissioner of the Bureau of Labor Statistics to review carefully the agency's current policy with respect to publishing as part of an official series corrections to data found to be in error for reasons of computational error. The conferees believe such a review should be made both with respect to the error announced on September 28, 2000, and as a matter for the future for those rare circumstances when such a similar computational error might once again arise.

### I. Prevent Duplication or Acceleration of Loss Through Assumption of Certain Liabilities (sec. 309 of the bill and sec. 358 of the Code)

#### PRESENT LAW

Generally, no gain or loss is recognized when one or more persons transfer property to a corporation in exchange for stock and immediately after the exchange such person or persons control the corporation. However, a transferor recognizes gain to the extent it receives money or other property ("boot") as part of the exchange (sec. 351).

The assumption of liabilities by the controlled corporation generally is not treated as boot received by the transferor,[51] except that the transferor recognizes gain to the extent that the liabilities assumed exceed the total of the adjusted basis of the property transferred to the controlled corporation pursuant to the exchange (sec. 357(c)).

---

[50] For example, John M. Berry, "Inflation Higher Than Reported," The Washington Post, September 27, 2000, p. E–1, John M. Berry, "Rent Error Leads to Revision Of the CPI," The Washington Post, September 29, 2000, p. E–3, Nicholas Kulish, "Major Price Index Is Revised Upward As Result of Error," The Wall Street Journal, September 28, 2000, p. A2, and Nicholas Kulish, "Second-Period GDP Rose at 5.6% Annual Rate," The Wall Street Journal, September 29, 2000, p. A2. The conferees observe that these press reports highlight the potential confusion for the public regarding these data. The Washington Post reported that "the CPI figures for 1999 were not revised" (September 29, 2000 story) while The Wall Street Journal reported that "[t]he BLS said a complete revision of all the data sets would be released" (September 28, 2000 story) and "it [BLS] announced that it would revise the index" (September 29, 2000 story).

[51] The assumption of liabilities is treated as boot if it can be shown that "the principal purpose" of the assumption is tax avoidance on the exchange, or is a non-bona fide business purpose (sec. 357(b)).

The assumption of liabilities by the controlled corporation generally reduces the transferor's basis in the stock of the controlled corporation that assumed the liabilities. The transferor's basis in the stock of the controlled corporation is the same as the basis of the property contributed to the controlled corporation, increased by the amount of any gain (or dividend) recognized by the transferor on the exchange, and reduced by the amount of any money or property received, and by the amount of any loss recognized by the transferor (sec. 358). For this purpose, the assumption of a liability is treated as money received by the transferor.

An exception to the general treatment of assumption of liabilities applies to assumptions of liabilities that would give rise to a deduction, provided the incurrence of such liabilities did not result in the creation or increase of basis of any property. The assumption of such liabilities is not treated as money received by the transferor in determining whether the transferor has gain on the exchange. Similarly, the transferor's basis in the stock of the controlled corporation is not reduced by the assumption of such liabilities. The Internal Revenue Service has ruled that the assumption by an accrual basis corporation of certain contingent liabilities for soil and groundwater remediation would be covered by this exception.[52]

HOUSE BILL

No provision. However, H.R. 5542 contains a provisions to limit the acceleration or duplication of losses through assumptions of liabilities.

Under H.R. 5542, if the basis of stock (determined without regard to this provision) received by a transferor as part of a tax-free exchange with a controlled corporation exceeds the fair market value of the stock, then the basis of the stock received is reduced (but not below the fair market value) by the amount (determined as of the date of the exchange) of any liability that (1) is assumed in exchange for such stock, and (2) did not otherwise reduce the transferor's basis of the stock by reason on the assumption. Except as provided by the Secretary of the Treasury, this provision does not apply where the trade or business with which the liability is associated is transferred to the corporation as part of the exchange, or where substantially all the assets which the liability is associated are transferred to the corporation as part of the exchange.

The exception for transfers of a trade or business, or of substantially all the assets, with which a liability is associated, are intended to obviate the need for valuation or basis reduction in such cases. The exceptions are not intended to apply to situation involving the selective transfer of assets that may bear some relationship to the liability, but that do not represent the full scope of the trade

[52] Rev. Rul. 95–74, 1995–2 C.B. 36. The ruling addressed a parent corporation's transfer to a subsidiary of substantially all the assets of a manufacturing business, in exchange for stock and the assumption of liabilities associated with the business, including certain contingent environmental remediation liabilities. These liabilities arose due to contamination of land during the parent corporation's operation of the manufacturing business. The transferor had no plan or intention to dispose of (or to have the subsidiary issue) any subsidiary stock. The IRS ruled that the contingent liabilities would not reduce the transferor's basis in the stock of the subsidiary because the liabilities had not been taken into account by the transferor prior to the transferor and had not given rise to deductions or basis for the transferor.

or business, (or substantially all the assets) with which the liability is associated.

For purposes of the provision, the term "liability" includes fixed or contingent obligation to make payment, without regard to whether such obligation or potential obligation is otherwise taken into account under the Code. The determination whether a liability (as more broadly defined for purposes of this provision) has been assumed is made in accordance with the provisions of section 357(d)(1) of the Code. Under the standard of 357(d)(1), a recourse liability is treated as assumed if, based on all the facts and circumstances, the transferee has agreed to and is expected to satisfy such liability (or portion thereof), whether or not the transferor has been relieved of the liability. For example, if a transferee corporation does not formally assume a recourse obligation or potential obligation of the transferor, but instead agrees and is expected to indemnify the transferor with respect to all or a portion of such an obligation, then the amount that is agreed to be indemnified is treated as assumed for purposes of the provision, whether or not the transferor has been relieved of such liability. Similarly, a nonrecourse liability is treated as assumed by the transferee of any asset subject to such liability.[53]

The application of the provision is illustrated in the following example: Assume a taxpayer transfers assets with an adjusted basis and fair market value of $100 to its wholly-owned corporation and the corporation assumes $40 of liabilities (the payment of which would give rise to a deduction). Thus, the value of the stock received by the transferor is $60. Under present law, the basis of the stock would be $100. The provision requires that the basis of the stock be reduced to $60 (i.e., a reduction of $40). Except as provided by the Secretary, no basis reduction is required if the transferred assets consisted of the trade or business, or substantially all the assets, with which the liability is associated.

The provision does not change the tax treatment with respect to the transferee corporation.

The Secretary of the Treasury is directed to prescribe rules providing appropriate adjustments to prevent the acceleration or duplication of losses through the assumption of liabilities (as defined in the provision) in transactions involving partnerships. The Secretary may also provide appropriate adjustments in the case of transactions involving S corporations. In the case of S corporations, such rules may be applied instead of the otherwise applicable basis reduction rules.

*Effective Date*.—The provision is effective for assumptions of liabilities on or after October 19, 1999. Except as provided by the Secretary, the rule addressing transactions involving partnerships are effective with the same effective date. Any rules addressing transactions involving S corporations may likewise be effective for assumptions of liabilities on or after October 19, 1999, or such later date as may be prescribed in such rules.

[53] Section 357(d)(2) contains a limitation in the case of certain nonrecourse liabilities. Also, under section 357, regulations, if issued, may provide for different results.

SENATE AMENDMENT

No provision. On April 4, 2000, Senators Roth and Moynihan introduced a bill (S. 2354) that is the same as the provision in H.R. 5542.

CONFERENCE AGREEMENT

The conference agreement follows H.R. 5542.

### J. DISCLOSURE OF RETURN INFORMATION TO THE CONGRESSIONAL BUDGET OFFICE (SEC. 310 OF THE BILL AND NEW SEC. 6103(j)(6) OF THE CODE)

PRESENT LAW

Federal tax returns and return information are confidential and cannot be disclosed unless authorized by the Code. Section 6103 authorizes certain agencies to receive tax returns and return information for statistical use and for other specified purposes.[54] Section 6103 also permits the Secretary of the Treasury ("the Secretary") to provide return information to any person authorized to receive it by any mode or means that the Secretary determines necessary or appropriate.[55] Persons making unauthorized disclosures or inspections of tax returns and return information are subject to criminal and civil penalties.[56]

HOUSE BILL

No provision.

SENATE AMENDMENT

No provision.

CONFERENCE AGREEMENT

*Disclosure of return information*

The Congressional Budget Office ("CBO") is in the process of developing the capability to make projections of the Social Security and Medicare programs over long periods of time. To facilitate the development and operation of long-term models of Social Security and Medicare, CBO needs continuing access to records from the IRS. Specifically, CBO seeks two SSA files that contain return information—the Social Security Earnings Record and the Master Beneficiary Record. These files contain individual earnings data compiled from tax returns (Forms W–2), which are protected from disclosure by section 6103. In addition, CBO may request other records, including those matched with survey data.

The conference agreement amends section 6103 to permit the Secretary to furnish to CBO return information to the extent such information is necessary for purposes of CBO's long-term models of Social Security and Medicare. This authority extends to the development, operation, and maintenance by CBO of its long-term models of Social Security and Medicare. It is the intent of Congress

[54] E.g., sec. 6103(j), and 6103(l)(1) and (5).
[55] Sec. 6103(p)(2)(B).
[56] Sec. secs. 7431, 7213, and 7213A.