[JOINT COMMITTEE PRINT]

# GENERAL EXPLANATION OF TAX LEGISLATION ENACTED IN THE 106TH CONGRESS

PREPARED BY THE STAFF

OF THE

JOINT COMMITTEE ON TAXATION

APRIL 19, 2001

GOVERNMENT EXHIBIT
Appendix A8
PENGAD-Bayonne, N.J.

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 2001

71-652

JCS-2-01

the agency's current policy with respect to publishing as part of an official series corrections to data found to be in error for reasons of computational error. The Congress believed such a review should be made both with respect to the error announced on September 28, 2000, and as a matter for the future for those rare circumstances where such a similar computational error might once again arise.

### *Effective Date*

The provision is effective on the date of enactment (December 21, 2000).

### *Revenue Effect*

The provision is estimated to reduce Federal fiscal year budget receipts and to increase outlays. The provision is estimated to reduce Federal fiscal year budget receipts by $9 million in 2001 and $20 million in 2002. The provision is estimated to increase Federal fiscal year outlays by $970 million in 2001, $570 million in 2002, $560 million in 2003, $550 million in 2004, $550 million in 2005, $540 million in 2006, $520 million in 2007, $520 million in 2008, $510 million in 2009, and $500 million in 2010.

## I. Prevent Duplication or Acceleration of Loss Through Assumption of Certain Liabilities (sec. 309 of H.R. 5662 and sec. 358 of the Code)[174]

### *Present and Prior Law*

Generally, no gain or loss is recognized when one or more persons transfer property to a corporation in exchange for stock and immediately after the exchange such person or persons control the corporation. However, a transferor recognizes gain to the extent it receives money or other property ("boot") as part of the exchange (sec. 351).

The assumption of liabilities by the controlled corporation generally is not treated as boot received by the transferor,[175] except that the transferor recognizes gain to the extent that the liabilities assumed exceed the total of the adjusted basis of the property transferred to the controlled corporation pursuant to the exchange (sec. 357(c)).

The assumption of liabilities by the controlled corporation generally reduces the transferor's basis in the stock of the controlled corporation that assumed the liabilities. The transferor's basis in the stock of the controlled corporation is the same as the basis of the property contributed to the controlled corporation, increased by the amount of any gain (or dividend) recognized by the transferor

[174] See H.R. 5542, the "Taxpayer Relief Act of 2000," incorporated by reference in H.R. 2614 (H. Rep. 106–1004, Oct. 26, 2000), as passed by the House of Representatives, which contained an identical provision. On April 4, 2000, Senators Roth and Moynihan introduced a bill (S.2354) that is the same as the provision in H.R. 5542. On October 19, 1999, a substantially similar provision was released for markup by Senator Roth, the Chairman of the Senate Committee on Finance. That provision was reported by the Senate Finance Committee in S. 1792, the "Tax Relief Extension Act of 1999" (S. Rep. 106–201, Oct. 26, 1999).

[175] The assumption of liabilities is treated as boot if it can be shown that "the principal purpose" of the assumption is tax avoidance on the exchange, or is a non-bona fide business purpose (sec. 357(b)).

on the exchange, and reduced by the amount of any money or property received, and by the amount of any loss recognized by the transferor (sec. 358). For this purpose, the assumption of a liability is treated as money received by the transferor.

An exception to the general treatment of assumptions of liabilities applies to assumptions of liabilities that would give rise to a deduction, provided the incurrence of such liabilities did not result in the creation or increase of basis of any property. The assumption of such liabilities is not treated as money received by the transferor in determining whether the transferor has gain on the exchange. Similarly, the transferor's basis in the stock of the controlled corporation is not reduced by the assumption of such liabilities. The Internal Revenue Service has ruled that the assumption by an accrual basis corporation of certain contingent liabilities for soil and groundwater remediation would be covered by this exception.[176]

### *Reasons for Change*[177]

The Congress was concerned about a type of transaction in which taxpayers seek to accelerate, and potentially duplicate, deductions involving certain liabilities. As an example, assume a transferor corporation transfers assets with a fair market value basis in exchange for preferred stock of the transferee corporation, plus the transferee's assumption of a contingent liability that is deductible in the future. The transferor claims a basis in the stock received equal to the basis of the assets. However, the value of the stock is reduced by the amount of the liability, creating a potential loss. The transferor may then attempt to accelerate the deduction that would be attributable to the liability by selling or exchanging the stock. Furthermore, the transferee might take the position that it is entitled to deduct the payments on the liability, effectively duplicating the deduction attributable to the liability.

The conference report to the Taxpayer Refund and Relief Act of 1999 contained a provision that would have amended the "principal purpose" aspect of the anti-abuse rule. The Congress believed that a different approach is more appropriate; one that eliminates any loss on the sale of stock attributable to such liabilities.

### *Explanation of Provision*

Under the provision, if the basis of stock (determined without regard to this provision) received by a transferor as part of a tax-free exchange with a controlled corporation exceeds the fair market value of the stock, then the basis of the stock received is reduced (but not below the fair market value) by the amount (determined as of the date of the exchange) of any liability that (1) is assumed

---

[176] Rev. Rul. 95–74, 1995–2 C.B. 36. The ruling addressed a parent corporation's transfer to a subsidiary of substantially all the assets of a manufacturing business, in exchange for stock and the assumption of liabilities associated with the business, including certain contingent environmental remediation liabilities. These liabilities arose due to contamination of land during the parent corporation's operation of the manufacturing business. The transferor had no plan or intention to dispose of (or to have the subsidiary issue) any subsidiary stock. The IRS ruled that the contingent liabilities would not reduce the transferor's basis in the stock of the subsidiary because the liabilities had not been taken into account by the transferor prior to the transfer and had not given rise to deductions or basis for the transferor.

[177] The reasons for change are taken from S. 1792, the "Tax Relief Extension Act of 1999" (S. Rep. 106–201, Oct. 26, 1999), 47.

in exchange for such stock, and (2) did not otherwise reduce the transferor's basis of the stock by reason of the assumption. Except as provided by the Secretary of the Treasury, this provision does not apply where the trade or business with which the liability is associated is transferred to the corporation as part of the exchange, or where substantially all the assets with which the liability is associated are transferred to the corporation as part of the exchange.

The exceptions for transfers of a trade or business, or of substantially all the assets, with which a liability is associated, are intended to obviate the need for valuation or basis reduction in such cases. The exceptions are not intended to apply to situations involving the selective transfer of assets that may bear some relationship to the liability, but that do not represent the full scope of the trade or business, (or substantially all the assets) with which the liability is associated.

For purposes of the provision, the term "liability" includes any fixed or contingent obligation to make payment, without regard to whether such obligation or potential obligation is otherwise taken into account under the Code. The determination whether a liability (as more broadly defined for purposes of this provision) has been assumed is made in accordance with the provisions of section 357(d)(1) of the Code. Under the standard of 357(d)(1), a recourse liability is treated as assumed if, based on all the facts and circumstances, the transferee has agreed to and is expected to satisfy such liability (or portion thereof), whether or not the transferor has been relieved of the liability. For example, if a transferee corporation does not formally assume a recourse obligation or potential obligation of the transferor, but instead agrees and is expected to indemnify the transferor with respect to all or a portion of a such an obligation, then the amount that is agreed to be indemnified is treated as assumed for purposes of the provision, whether or not the transferor has been relieved of such liability. Similarly, a nonrecourse liability is treated as assumed by the transferee of any asset subject to such liability.[178]

The application of the provision is illustrated in the following example: Assume a taxpayer transfers assets with an adjusted basis and fair market value of $100 to its wholly-owned corporation and the corporation assumes $40 of liabilities (the payment of which would give rise to a deduction). Thus, the value of the stock received by the transferor is $60. Under prior law, the basis of the stock would have been $100. The provision requires that the basis of the stock be reduced to $60 (i.e., a reduction of $40). Except as provided by the Secretary, no basis reduction is required if the transferred assets consisted of the trade or business, or substantially all the assets, with which the liability is associated.

The provision does not change the tax treatment with respect to the transferee corporation.

The Secretary of the Treasury Secretary is directed to prescribe rules providing appropriate adjustments to prevent the acceleration or duplication of losses through the assumption of liabilities (as defined in the provision) in transactions involving partnerships. The

[178] Section 357(d)(2) contains a limitation in the case of certain nonrecourse liabilities. Also, under section 357, regulations, if issued, may provide for different results.

Secretary may also provide appropriate adjustments in the case of transactions involving S corporations. In the case of S corporations, such rules may be applied instead of the otherwise applicable basis reduction rules.

### *Effective Date*

The provision is effective for assumptions of liabilities on or after October 19, 1999. Except as provided by the Secretary, the rules addressing transactions involving partnerships are effective for assumptions of liabilities on or after October 19, 1999. Any rules addressing transactions involving S corporations may likewise be effective for assumptions of liabilities on or after October 19, 1999, or such later date as may be prescribed in such rules.

### *Revenue Effect*

The provision is estimated to increase Federal fiscal year budget receipts by $13 million in 2001, $15 million in 2002, $17 million in 2003, $19 million in 2004, $21 million in 2005, $23 million in 2006, $25 million in 2007, $27 million in 2008, $29 million in 2009, and $31 million in 2010.

## J. Disclosure of Return Information to the Congressional Budget Office (sec. 310 of H.R. 5662 and new sec. 6103(j)(6) of the Code)

### *Present and Prior Law*

Federal tax returns and return information are confidential and cannot be disclosed unless authorized by the Code. Section 6103 authorizes certain agencies to receive tax returns and return information for statistical use and for other specified purposes.[179] Section 6103 also permits the Secretary of the Treasury ("the Secretary") to provide return information to any person authorized to receive it by any mode or means that the Secretary determines necessary or appropriate.[180] Persons making unauthorized disclosures or inspections of tax returns and return information are subject to criminal and civil penalties.[181]

### *Explanation of Provision*

The Congressional Budget Office ("CBO") is in the process of developing the capability to make projections of the Social Security and Medicare programs over long periods of time. To facilitate the development and operation of long-term models of Social Security and Medicare, CBO needs continuing access to records from the IRS. Specifically, CBO seeks two SSA files that contain return information—the Social Security Earnings Record and the Master Beneficiary Record. These files contain individual earnings data compiled from tax returns (Forms W–2), which are protected from disclosure by section 6103. In addition, CBO may request other records, including those matched with survey data.

---

[179] E.g., sec. 6103(j), and 6103(l)(1) and (5).
[180] Sec. 6103(p)(2)(B).
[181] See secs. 7431, 7213, and 7213A.