# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, | § | |
| Plaintiff, | § | Case No. 05-231 T<br>Chief Judge Edward Damich |
| v. | § | |
| United States of America, | § | |
| Defendant. | § | |

## UNITED STATES' RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to RCFC 56(h)(2), defendant responds to plaintiff's Proposed Findings of Uncontroverted Facts submitted by Plaintiff in Support of its Motion for Partial Summary Judgment as to the Validity of Treasury Regulation

§ 1.752-6.

1. JZ Buckingham Investments, LLC ("JZ") was formed as a limited liability company under Delaware law on November 16, 1999. Pl. Ex.1, App. A at pp.1-2.

**Response:** Denies. Plaintiff continues to misidentify itself. Defendant agrees only that JZ Buckingham Investments LLC was formed as a limited liability company under Delaware law on November 16, 1999. Pl. Ex.1, App. A at pp.1-2; Pl. Ex. A3. It appears that Zucker did not himself sign any documents related to the formation of this entity until November 18, 1999, the same date that he signed a number of related documents which were then mailed to J&G on November 19, 1999. See Govt. App. A at pp. 458-466, Govt. Exs. 37, 38 and 39.

This entity, like all of the LLCs that were formed to implement the COBRA tax shelter product, were formed by Donna Guerin of the law firm of Jenkens & Gilchrist, P.C., in the State of Delaware using the same naming protocol. A summary list of these entities, prepared by Ernst & Young, LLP, lists the names of each of these entities without a comma. See Govt. App. A at pp.283-286, Govt. Ex. 15.

The names of these entities all follow the same naming protocol. The name begins with capitalized initials for the taxpayer's name, followed by a space, followed by the name of the street from the home address of the taxpayer, followed by a space, followed by " Investments LLC." No comma was used in the names of any of these entities. The street address of the individual taxpayers was provided to Jenkens & Gilchrist in a document entitled COBRA Client Questionaire. See Govt. App. A at pp. 315-340, 438-445, Govt. Ex. 21, 22, and 34.

The similarity in the naming of these entities is material insofar as all of the COBRA transactions implemented by Jenkens in 1999, including the transactions here, were cookie-cutter transactions which were all intended to follow the same steps. See Govt. App. A at pp.___ Govt. Exs. 1, 2 and 3. These steps are set forth in a checklist named "COBRA Action Workplan." See Govt. App. A at pp.291-314, Govt. Exs. 17, 18, 19, 20. The naming of the entity is also material insofar as it bears upon the credibility of Jerry Zucker who has testified that he chose the name of his LLC. See Govt. App. A at pp.434-437, Govt. Ex. 33, at p. 98 lines 4-16.

2. JZ did not dissolve under Delaware law during calendar year 1999. *Id.*

**Response:** Denied. This not supported by the cited document.

3. JGB Bohicket Investments, LLC ("JGB") was formed as a limited liability company under Delaware law on November 16, 1999. Pl. Ex. 2, App. A at pp. 2-3.

**Response**: Denied. Defendant agrees only that JGB Bohicket Investments LLC was formed as a limited liability company under Delaware law on November 16, 1999. Pl. Ex. 2, App. A at pp. 2-3. It appears that Boyd did not himself sign any documents related to the formation of this entity until November 19, 1999, the same date that he signed a number of related documents which were then mailed to J&G on that same date. See Govt. App. A at pp.458-456, Govt. Exs. 37, 38 and 39.

This entity, like all of the LLCs that were formed to implement the COBRA tax shelter product, were formed by Donna Guerin of the law firm of Jenkens & Gilchrist, P.C., in the State of Delaware using the same naming protocol. A summary list of these entities, prepared by Ernst & Young, LLP, lists the names of each of these entities without a comma. See Govt. App. A at pp. 283-286, Govt. Ex. 15.

The names of these entities all follow the same naming protocol. The name begins with capitalized initials for the taxpayer's name, followed by a space, followed by the name of the street from the home address of the taxpayer, followed by a space, followed by " Investments LLC." No comma was used in the names of any of these entities. The street address of the individual taxpayers was provided to Jenkens & Gilchrist in a document entitled COBRA Client Questionaire. See Govt. App. A at pp.315-343 and 438-445, Govt. Ex. 21, 22, and 34.

The similarity in the naming of these entities is material insofar as all of the COBRA transactions implemented by Jenkens in 1999, including the transactions here, were cookie-cutter transactions which were all intended to follow the same steps. See Govt. App. A at pp.1-22, Govt. Exs. 1, 2 and 3. These steps are set forth in a checklist named "COBRA Action

Workplan." See Govt. App. A at pp.291-314, Govt. Exs. 17, 18, 19, 20. The naming of the entity is also material insofar as it bears upon the credibility of Jerry Zucker who has testified that he chose the name of his LLC. See Govt. App. A at pp.434-437, Govt. Ex. 33, at p. 98 lines 4-16.

4. JGB did not dissolve under Delaware law during calendar year 1999. *Id.*

**Response**: Denied. The allegation is not supported by the cited document.

5. JZ and JGB formed JBJZ Partners, a South Carolina general partnership (the "Partnership") on November 16, 1999. Pl. Ex. 3, App. A at pp. 5-16.

**Response:** Denied. The allegation, even assuming that it is corrected to refer to JZ Buckingham Investments LLC and JGB Bohicket Investments LLC, is not otherwise factually correct. While the Partnership Agreement is dated November 16, 1999, and purports to have been signed on that date, it appears that Boyd and Zucker did not sign the Partnership Agreement related to the formation of this entity until November 18, 1999 and/or November 19, 1999, the same date that they signed a number of related documents which were then mailed to J&G on November 19, 1999. See Govt. App. A at pp.458-466, Govt. Exs. 37, 38 and 39.

This distinction is a material fact because all of the COBRA transactions were to have been implemented by Jenkens following the steps set forth in a checklist named "COBRA Action Workplan." See Govt. App. A at pp.291-314, Govt. Exs. 17, 18, 19, 20.

Further, at trial, the United States will adduce ample evidence to show JBJZ Partners is a sham partnership and should be disregarded for federal income tax purposes. This is because it

was formed and availed of not for a legitimate business purpose but for the improper purpose of avoiding federal taxes. See e.g., Govt. App. A at pp.400-433, and 438-445, Govt. Exs. 31, 32 and 34. We submit that the Court, at best, can only assume, for purposes of this motion, that JBJZ Partners is a valid partnership for federal income tax purposes.

6. JZ and JGB each acquired an ownership interest in the Partnership upon its formation, and served as a general partner of the Partnership during the Partnership's tax year ending December 27, 1999. *Id.*

**Response**: Denied. The partnership agreement for the formation of JBJZ Partners provides that the JBJZ Partners was formed by JZ Buckingham Investments LLC and JGB Bohicket Investments LLC as a general partnership in conformity with the South Carolina Uniform Partnership Act. Pl. Ex. 3, App. A at pp. 6, Article 1, Sec. 1.1. The partnership agreement further provides that JZ Buckingham Investments LLC shall serve as the Managing Partner. Pl. Ex. 3, App. A at p. 7, Article 2, Sec. 2.1. It does not provide that JZ Buckingham Investments LLC and JGB Bohicket Investments LLC shall serve as general partners.

7. No election under Treas. Reg. § 301.7701-3(c) was filed with the Internal Revenue Service by or on behalf of the Partnership to be classified as a corporation for federal income tax purposes.

**Response**: Admitted.

8. On November 23, 1999, JZ and JGB entered into over-the-counter, non-publicly traded European-style foreign currency option positions with Deutsche Bank AG New York Branch. (collectively, the "Options").

**Response**: Denied. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that Deutsche Bank participated in this COBRA tax shelter strategy as a co-promoter in which it received a fee equal to 1% of the amount of the tax loss to be generated. Deutsche Bank's fee of 1% is included in the net premium paid to Deutsche Bank. Under the COBRA strategy, the net premium to be paid to Deutsche Bank was equal to 5% of the amount of the tax loss to be generated. See Govt. App. A at pp.126-144, COBRA Powerpoint, Govt. Exs. 9. In exchange for the 1% fee Deutsche Bank received, Deutsche Bank papered the COBRA transactions as over-the-counter, non-publicly traded European-style foreign currency option positions. *Id.* Deutsche Bank's purported over-the-counter, non-publicly traded European-style foreign currency option positions with JZ Buckingham Investments LLC and JGB Bohicket Investments LLC were not what they purported to be. *Id.*

We will also show that the other promoters, Ernst & Young, Jenkens & Gilchrist, and Sidley Austin, also charged a fee equal to a fixed percentage of the tax loss to be generated. See Govt. App. A at pp.427-433, Ex. 32 and 35 (detailing the stated and unstated terms under E&Y's COBRA engagement letter). See also Govt. App. A at pp.279-282, Ex. 14 (detailing the computation and allocation of J&G's 3% fee for all of the 1999 COBRA transactions).

a. JGB purchased – for a premium $5,000,000.00 – a digital option on the Euro/U.S. Dollar exchange rate with a strike price at less than or equal to U.S. $1.0123 per Euro 1.00, a termination date of December 22, 1999, and a final exchange amount of $10,000,000.00. Pl. Ex. 4, App. A at pp. 17-19.

**Response**: Denied for the reasons stated in our response to No. 8, above.

b. JZ purchased – for a premium of $20,000,000.00 – a digital option on the

Euro/U.S. Dollar exchange rate with strike price at less than or equal to U.S. $1.0123 per Euro 1.00, a termination date of December 22, 1999, and a final exchange amount of $40,000,000.00. Pl. Ex. 5, App. A at pp. 20-22.

**Response**: Denied for the reasons stated in our response to No. 8, above.

c. JZ purchased – for a premium of $25,000,000.00 – a digital option on the Japanese Yen/U.S. Dollar exchange rate with a strike price at greater than or equal to Japanese Yen 106.19 per U.S. $1.00, a termination date of December 22, 1999, and a final exchange amount of $50,000,000.00. Pl. Ex. 6, App. A at pp. 23-25.

**Response**: Denied for the reasons stated in our response to No. 8, above.

d. JGB sold – for a premium of $4,750,000.00 – a digital option on the Euro/U.S. Dollar exchange rate with a strike at less than or equal to U.S. $1.0121 per Euro 1.00, a termination date of December 22, 1999, and a final exchange amount of $9,375,000.00. Pl. Ex. 4, App. A at pp. 17-19.

**Response**: Denied for the reasons stated in our response to No. 8, above.

e. JZ sold – for a premium of $19,000,000.00 – a digital option on the Euro/U.S. Dollar exchange rate with a strike price at less than or equal to U.S. 1.0121 per Euro 1.00, a termination date of December 22, 1999, and a final exchange amount of $37,500,000.00. Pl. Ex. 5, App. A at pp. 20-22.

**Response**: Denied for the reasons stated in our response to No. 8, above.

f. JZ sold – for a premium of $23,750,000.00 – a digital option on the Japanese Yen/U.S. Dollar exchange rate with a strike price at greater than or equal to Japanese Yen 106.21 per U.S. $1.00, a termination date of December 22, 1999, and a final exchange amount of $46,875,000.00. Pl. Ex. 6, App. A at pp. 23-25.

**Response:** Denied for the reasons stated in our response to No. 8, above.

9. Under the terms of their respective sold (short) options, JZ and JGB incurred the following obligations:

a. JGB had an obligation to pay $9,375,000.00 if the Euro/U.S. Dollar exchange rate on the expiration date (or such later date as provided by the option agreement) was less than or equal to U.S. $1.0121 per Euro 1.00. Pl. Ex. 4, App. A at pp. 17-19.

**Response**: Denied for the reasons stated in our response to No. 8, above.

b. JZ had an obligation to pay $37,500,000.00 if the Euro/U.S. Dollar exchange rate on the expiration date (or such later date as provided by the option agreement) was less than or equal to U.S. $1.0121 per Euro 1.00. Pl. Ex. 5, App. A at pp. 20-22.

**Response:** Denied for the reasons stated in our response to No. 8, above.

c. JZ had an obligation to pay 46,875,000.00 if the Japanese Yen/U.S. Dollar exchange rate on the expiration date (or such later date as provided by the option agreement) was greater than or equal to Japanese Yen 106.21 per U.S. $1.00. Pl. Ex. 6, App. A at pp. 23-25.

**Response**: Denied for the reasons stated in our response to No. 8, above.

10. On November 24, 1999, JZ and JGB contributed the Options to the Partnership. Pl. Ex. 7, App. A at pp. 26-28; Pl. Ex. 8, App. A at pp. 29-31; and Pl. Ex. 9, App. A at pp. 32-34.

**Response:** Denied. By separate faxes dated November 26, 1999, Jenkens sent Boyd and Zucker back-dated Assignment Agreements for JZ Buckingham Investments LLC and JGB Bohicket LLC to assign the "FX Digital Options Transactions" of JZ Buckingham Investments LLC and JGB Bohicket LLC to JBJZ Partners. See Govt. App. A at pp.483-526 , Exs. 43 and 44. Thus, the options could not have been contributed to JBJZ Partners on November 24, 1999.

a. JGB did not reduce the adjusted basis in its Partnership interest for the contribution of the sold (short) option described in paragraph 9.d above.

**Response:** Denied. It is admitted that JGB Bohicket Investments LLC did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to JBJZ Partners. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" described in paragraph 9.d above, is not a separate severable position and not what it purports to be.

b. JZ did not reduce the adjusted basis in its Partnership interest for the contribution of the sold (short) option described in paragraph 9.e above.

**Response**: Denied. It is admitted that JZ Buckingham Investments LLC did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to JBJZ Partners. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" described in paragraph 9.d above, is not a separate severable position and not what it purports to be.

c. JZ did not reduce the adjusted basis in its Partnership interest for the contribution of the sold (short) option described in paragraph 9.f above.

**Response**: Denied. It is admitted that JZ Buckingham Investments LLC not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to JBJZ Partners We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" described in paragraph 9.d above, is not a separate severable position and not what it purports to be.

11. On December 9, 2004, the IRS issued a notice of final partnership administrative adjustment to the Partnership. Pl. Ex. 10, App. A at pp. 35-46.

**Response**: Admitted.

12. The FPAA makes the following allegation concerning the Regulation:

> It is determined that the obligations under the short positions (written call options) transferred to JBJZ Partners partnership constitute liabilities for purposes of Treasury Regulation § 1.752-6T, the assumption of which by JBJZ Partners partnership shall reduce the purported partners' bases in JBJZ Partners partnership....

*Id.*

**Response**: Denied. It is admitted that the FPAA made this determination. An FPAA does not contain mere allegations. Under Appendix F, Rule 1(b)(5), a "notice of final partnership administrative adjustment" is defined as the notice described in Code Section 6223(a)(2). Under Rule 1(b)(2), the complaint filed in this action is an "action for readjustment of partnership items" under Code Section 6226.

Respectfully submitted,

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2008, I electronically filed the foregoing **UNITED STATES' RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner
David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892