IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

JOHN A. LINDQUIST, pursuant to 28 U.S.C. Section 1746, hereby declares under penalty of perjury as follows:

1. I am an attorney of the Washington D.C. office of the United States Department of Justice, Tax Division, co-counsel for Defendant, the United States of America ("United States") in these proceedings.

2. I submit this Declaration in support of United States' Opposition to Plaintiff's to Plaintiff's motion for summary judgment as to the validity of Treasury Regulations § 1.752-6.

3. Government exhibits 1 through 52 are being filed concurrently herewith in the United States' Appendix of Exhibits. In addition, the tax returns marked as government exhibits 53 through 56 are being separately filed under seal. All of these documents were produced in the course of discovery in the above-referenced matter. The source and bates numbers of these documents are described in the United States' Appendix of Exhibits.

4. Government Ex. 1 is a true and correct copy of an email dated October 18, 1999, from Craig Brubaker of Deutsche Bank Alex Brown ("DBAB") to Erwin Mayer, an attorney with J&G, concerning a "format "similar to the treasury short routine for a digital swap transaction," providing him with a list of the steps required to execute a "digital swap" and samples of some of the form documents that would be required by DB to implement the strategy. This document was produced to the United States by DB in response to the United States' document subpoena to DB bates marked DB-DOJ-COBRA-0030051 to DB-DOJ-COBRA-0030061.

5. Attached hereto as Exs. 2 and 3 are true and correct copies of two email dated October 22, 1999, from Paul Daugerdas of J&G separately forwarding to both E&Y and BDO Siedman LLP [identified by email as miwolves@mediaone.net] email with the subject line "Draft Implementation Steps" with identical attachments entitled "Currency Linked Digital Swap Transaction Steps for Implementation With Deutsche Bank AG London (DBAG) and Deutsche Banc Alex. Brown (DBAB)." The first email was produced to the United States by JG in response to the United States' document subpoena to JG bates marked JG-NC064506 to JG-NC064509. The second email was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked DOJ-007914 to DOJ-007917.

6. The second email to E&Y contains an followup internal E&Y email from Brian Vaughn which states:

> Let's take the checklist provided by J&G and modify it to our use. We need to have National on sales call and insert EY responsibilities where needed. Also please insert concurring opinion from Locke Lidell & Sapp. The checklist is a great tool as we move forward. I will thank Paul for his input.

Govt. Ex. 2, at DOJ-007914.

7. Government Ex. 4 is a true and correct copy of an internal E&Y email dated October 22, 1999, from Brian Vaughn with the subject line "COBRA pricing" in which Vaughn reports, inter alia, his recent communications with Dan Brooks of DB regarding the design of the proposed COBRA product. This document was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked DOJ-0004412003EY001767.

8. Government Ex. 5 is a true and correct copy of an internal E&Y email dated October 26, 1999, under the subject line "Product," from Brian Vaughn of E&Y listing as open issues with respect to the planned Cobra Strategy, the engagement letter, the technical memo from J&G, the fee scale, settlement options if audited, and identification of qualified candidates. This document was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked DOJ-000441.

9. Government Ex. 6 is a true and correct copy of a facsimile dated October 27, 1999, (totaling 23 pages), from Paul Daugerdas of J&G to Robert "Bob" Coplan, Richard Shapiro, and Ray Knight, all of E&Y, transmitting a J&G memorandum dated October 1999 on the "Tax Consequences of Contribution of Option Spread to Partnership or Corporation." This document was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked 2003EY001516 - 2003EY001538.

10. Government Ex. 7 is a true and correct copy of a Facsimile (101 pages) dated November 5, 1999, transmitting a J&G opinion on the COBRA product, marked "DRAFT." This document was produced to the United States by J&G in response to the United States' document subpoena bates marked DOJ008601 to DOJ008702.

11. Government Ex. 8 is a true and correct copy of an E&Y email dated 10/9/99 from Coplan of E&Y to VIPER members, subject line "Reliance on tax opinion - cases" with attachment "tax opinions neg.doc." The attached memo contains the following conclusion:

> These cases emphasize that reliance on an advisor's tax opinion may not be reasonable if the advisor has a direct or indirect interest in the investment. If the opinion originates from an interested party, a taxpayer, particularly one with sophisticated knowledge of business transactions, would be well-advised to seek additional input from another, independent tax advisor.

This document was produced to the United States by J&G in response to the United States' document subpoena bates marked 2003EY007852 to 2003EY007854.

12. Government Ex. 9 is a true and correct copy of an E&Y email dated November 11, 1999, from Melinda Merck of E&Y to the members of E&Y's VIPER and Quckstrike Teams, under subject line "Revised COBRA Spreadsheets and Slides", with copies attached. This document was produced to the United States by E&Y in response to the United States' document subpoena bates marked 2003EY003750 - 2003EY003767.

13. Government Ex. 10 is a true and correct copy of an email dated November 12, 1999, from Robert Coplan of E&Y to Paul Daugerdas of J&G regarding the role of Brown and Wood, forwarding Daugerdas a copy of a Brown & Wood opinion which Coplan states describes the basis option spread strategy, but which has not yet be tailored for the particular structure of COBRA. This document was produced to the United States by J&G in response to the United States' document subpoena bates marked JG-NC047817 to JG-NC047855.

14. Government Ex. 11 is a true and correct copy of an email E&Y email dated November 15, 1999, from Richard Shapiro to E&Y's "Quickstrike Team" re "Implementation of COBRA strategy" in which Shapiro wrote:

> As a result of further discussions with J&G and DB today, we have concluded that in generat the most viable structure for the COBRA strategy will involve the use of ONLY 2 currencies, eve with more than 2 partners. The use of fewer currencies results in a higher probability of making a profit at the partnership level, while still providing diversification.

This document was produced to the United States by E&Y in response to the United States' document subpoena bates marked 2003EY000864 and 2003EY105642.

15. Government Ex. 12 is a true and correct copy of an internal E&Y email dated November 18, 1999, from Carl Rhodes of E&Y, distributing the following documents attached thereto, with the instruction that they are needed for implementation and should be customized for the client:

a. COBRA Client Nondisclosure Letter;

b. J&G Nondisclosure agreement

c. Revised Client COBRA Presentation;

d. COBRA Engagement Letter 11-17-99; and

e. J&G Client Information Questionaire.

This document was produced by Ernst & Young bates marked as DOJ-001008 through DOJ-001031.

16. Government Ex. 13 is a true and correct copy of an email dated December 27, 1999 from David Parse of Deutsche Bank ("DB") to Carrie Yackee of DB forwarding an attached list named "Paul D 1999 Digital Options Ma.." This document was produced to the United States by DB in response to the United States' document subpoena bates marked from DB-DOJ-COBRA-00044432 through DB-DOJ-COBRA-00044466. I have reorganized the bates-numbered pages of the attachment so that the each transaction, read from left to right, is now visible sequentially.

The attachment to this email lists 105 DB transactions implemented in November and December 1999, which is followed by a list of the COBRA transactions, referenced as "EY", which were implemented through DB during this same time period. In each of the first 105 DB transactions, the listed "Premium" is equal to 1% of the listed "Trade." In each of the listed "EY" transactions the listed "Premium" is equal to 5% of the listed Trade.

17. Government Ex. 14 is a true and correct copy of a 3 page internal J&G fax dated December 28, 1999, from Patrick O'Daniel to Paul Daugerdas of J&G forwarding an attachment entitled "Revised Legal Fee Allocation Ernst & Young Client Transactions" listing the allocation of J&G's 3% cut from the 1999 COBRA transactions as between J&G, Scheef & Stone, and B&W. This document was produced by J&G in response to the United States' document subpoena to J&G, bates marked as JG-NC055932 to JG-NC055934.

18. Government Ex. 15 is a true and correct copy of an email dated February 22, 2000, from Melinda Merk of Ernst & Young, LLP ("E&Y") to Amy Keating of E&Y providing Ms. Keating with an attached list. The attached list detailing the following information for each of 15 listed COBRA transactions:

a) the names of the clients, the name of the E&Y contact;
b) the "Account Name" for each of the Limited Liability Companies, Partnership(s), and S-Corporation(s) used in each of these transactions;
c) the "DBAB Account No." for each of these accounts;
d) the Date that each of the associated entities were formed;
e) the jurisdiction in which each of the associated entities were formed;
f) the Federal Employment Identification Number or FEIN for each of these entities; and
g) the date upon which an S-Corporation election was filed on behalf of each of the S-Corporations involved in each of these transactions.

This document was produced to the United States by E&Y in response to the United States' document subpoena bates marked from DOJ 0000851 to DOJ 000853.

19. Government Ex. 16 is a true and correct copy of an internal E&Y chain email dated June 7, 2001, regarding the difference between COBRA and J&G's 1% net premium with respect to its OPS product, stating,

> We would not have signed off on the "ignored opinion letter fee deal" with a 1% investment in 1999.

This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ-049188 to DOJ-049180.

20. Government Exs. 17, 18, 19 and 20, are true and correct copies of various versions of a document entitled "COBRA Action Work Plan" which appear to have been used by E&Y to implement the COBRA transactions. These documents were produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ03781 to DOJ03785, DOJ054573 to DOJ054577, DOJ 001091 to DOJ-001095, and DOJ004024 to DOJ004028.

21. Attached hereto as Ex. 21 is a true and correct copy of an email dated November 10, 1999, from Melinda Merck of E&Y to the members of E&Y's VIPER tax products team, including Ray Knight and Kenneth Hughes, with an attached COBRA Client Information Questionaire form, directing that it is to completed for each individual taxpayer and faxed to J&G. This document was produced by Ernst & Young bates marked as 2003EY003742 - 2003EY003743.

22. Government Ex. 37 is an E&Y facsimile (seven pages) dated November 13, 1999, from Ray Knight of E&Y to Paul Daugerdas of J&G, forwarding filled-in COBRA Client Information Questionaire for six (6) of the individual participants, including Jerry Zucker and James Boyd.

This document was produced by J&G in response to the United States' document subpoena to J&G bates marked as JG-CL0241055, JG-CL0241056, JG-CL0231041, JG-CL015536, JG-CL01555323, JG-CL0148038, and JG-CL0148037. Government Ex. 22 contains true and correct copies of completed COBRA Client Information Questionaires for other COBRA participants. These documents were also produced by J&G in response to the United States' document subpoena to J&G.

23. Government Ex. 23 is a true and correct copy of a fax dated October 22, 199 from Grady P. Dickens of the law firm Scheef & Stone, LLP, forwarding to Paul M. Daugerdas of J&G, for review and approval, a copy of E&Y's proposed nondisclosure agreement form for the COBRA strategy. This document was produced by J&G in response to the United States' document subpoena bates marked CANC00121 to CANC00122.

24. Government Ex. 24 is an internal E&Y email dated October 29, 1999, from Robert Coplan, stating that a nondisclosure agreement is required by E&Y with respect to the COBRA strategy. This document was produced by E&Y in response to the United States' document subpoena bates marked 2003EY001760.

25. Government Ex. 25 is a true and correct copy of an email dated March 8, 2000, from Donna Guerin of J&G to Amy Keating of E&Y, confirming that J&G wanted for its files copies of the tax returns prepared by E&Y reporting the COBRA transactions. This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ-032014.

26. Government Ex. 26 is a true and correct copy of an internal E&Y chain-email dated May 8, 2001, regarding "Cobra Transaction Feedback", stating, *inter alia*:

> Our decision to use a coordinated preparation of transaction tax returns was well received. Our clients liked the fact that we were paying close attention to coordinating the reporting of similar transactions and achieving efficiency in determining proper wording and disclosure issues. This was a major task by the compliance people involved and for Bob Coplan to review all of them.

This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ-031731.

27. Government Ex. 27 is a true and correct copy of an internal E&Y email dated January 6, 2000, from Robert Coplan to the members of E&Y's VIPER and Quick strike Teams , including Ray Knight, regarding a January 5th Meeting regarding VIPER Strategies and stating:

> After lengthy discussions of the issues involved in the meeting on COBRA, the conclusion reached by Mike Kelly, Ron Friedman and others yesterday was that the firm would not market this strategy in 2000. The primary reasons for this involved the perceived changes in the landscape now being faced by tax-advantaged strategies after the issuance of Notice 99-59 last month and the publication of the PWC BOSS opinion and scathing commentary of BOSS in tax Notes.
>
> We are well aware that many of you had tee'd up COBRA opportunities late last year for execution in 2000. It will be necessary to advise these clients ASAP that we have decided not to sell this strategy. We should indicate to these clients that the issuance of Notice 99-59 on December 3, 1999 signals the increased level of scrutiny that will be brought to bear on transactions like BOSS, that generate permanent ordinary losses, and the heightened penalty risk that will be faced by clients (and our firm) after issuance fo the Notice. **Specifically, it is not uncommon for the IRS to follow up the issuance of a Notice with the the [sic] issuance of regulations that adopt the Notice publication date as the effective date of the regulation. Thus, transactions done in 2000 bear a higher risk of being attacked and of being subjected to penalties than ones done before the issuance of the Notice. This explanation of our decision should not raise questions about the 16 transactions that were completed in November 1999.**

[emphasis supplied.] This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as 2003EY001046-2003EY001047.

28. Government Ex. 28 is a true and correct copy of an internal DB email dated July 20, 2000, forwarding documents, including DB Memo entitled "Binary Options Strategy: Credit Risk Mgmt PBA Summary" prepared by Chuck Binder MD and SCO PBAE&Y, in which Binder wrote:

> Strike on both options are about the same. Any spread must fall within DB's ability to set a bid/ask spread. Both options must either payoff or not. Market risk/ops risk on execution is for account of GCI desk executing.

Ex. 28 at DB-DOJ-COBRA-00030723. This document was produced by DB in response to the United States' document subpoena to DB bates marked as DB-DOJ-COBRA-00030714 to DB-DOJ-COBRA-00030751.

29. Government Ex. 29 is a true and correct copy of an internal E&Y email dated December 5, 1999, from Robert "Bob" Coplan of E&Y to members of the E&Y's "Quick strike Team" regarding E&Y's plan to continue to market COBRA in 2000, which Coplan wrote, *inter alia*:

> We are carefully reviewing the possibility of joining with a promoter for 2000 other than Jenkens & Gilchrist with whom to implement COBRA. We have not previously worked with this promoter before, but they have been selling the transaction before in a manner compatible with the economics we have instituted. Advantages of changing to the new promoter would include: 1) a higher fee for E&Y (2%) and a lower overall fee for the transaction (4%) allowing the client to have a greater probability of profiting on the option trade.

This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as 2003EY000866 - 2003EY000867.

This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as 2003EY000866 to 2003EY000867.

30. Government Ex. 29 is a true and correct copy of an internal E&Y email, with attachment, dated December 11, 1999, from from Robert Haynie of E&Y with subject line "COBRA - Latest Slides" forwarding a revised COBRA Powerpoint for 2000. This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ 00395 to DOJ 00398.

31. Government Ex. 31 is a true and correct copy of a facsimile (22 pages) dated November 5, 1999 of a J&G opinion marked "Draft" (22 pages), with handwriting of Jerry Zucker addressed to "Barry" in which he wrote: "Attached is a draft of the opinion letter re: the year end activity resulting in a $45MM tax loss. Please accelerate your understanding by discussing with Ray Knight of EY et al. I'd like to proceed on an accelerated basis for a tax refund." This document was produced by Barry Emerson, Zucker's accountant, in response to a document subpoena. The document has been bates marked by the United States as Emerson01448 to Emerson01473.

32. Government Ex. 32 is a true and correct copy of facsimile (five pages) dated November 12, 1999, from Jerry Zucker to Ray Knight of E&Y returning an executed copy of a proposed EY COBRA engagement letter, with a cover memo from Jerry Zucker to Ray Knight. The E&Y engagement letter states, *inter alia*, "Investment in the Partnership equals Cost of long option contract equal to 5% of desired loss, plus cash equal to 2% of desired loss." Zucker wrote in his cover memo:

> I want you to confirm that my maximum exposure for a $100 million loss is $8 1/2 million. If the actual cost is different fro this amount, I would appreciate you informing me immediately.

This document was produced by Charlotte Crosby, an employee of Intertech, in response to a document subpoena.

33. Government Ex. 33 is a true and correct copy of pp. 98 through 101 from the despositon testimony of Jerry Zucker taken on June 8, 2007, at which time Zucker testified that the naming of the entity JZ Buckingham LLC was his idea.

34. Government Ex. 35 is a true and correct copy of an E&Y Facsimile (nine pages) dated November 15, 1999, from Ray Knight of E&Y to Zucker forwarding modified COBRA engagement letters for both Zucker and Boyd and memorializing, *inter alia*, that "the amount of the loss is $50 million (60% ordinary and 40% long term capital loss) the allocation of the partnership interests is 90/10 between zucker and boyd." This document was produced by plaintiff bates marked Z001282 to Z001290.

35. Government Ex. 36 is a true and correct copy of an E&Y Non-Disclosure Agreement dated November 15, 1999, prepared for Ray Knight with respect to his marketing of the COBRA strategy at the same time that he was marketing COBRA to Zucker and Boyd. This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ039875.

36. Government Exs. 37, 38 and 39 are true and correct copies of documents related to the initial set of implementation documents prepared by J&G for Zucker and Boyd's signature. By letter dated November 16, 1999, Donna Guerin of J&G sent Zucker and Boyd the documents referenced therein, including the JBJZ Partnership Agreement and Forms SS-4, 8821 and 2553,

for execution and return. Ex. 37. Zucker wrote on this letter a note to to Crosby regarding where to send the executed agreements after corrections and executions by Boyd. The Forms SS-4, 8821 and 2553 signed by Zucker are dated November 18, 1999. Ex. 38. The Forms SS-4, 8821 and 2553 signed by Boyd are dated November 19, 1999. These documents were then returned to J&G by letter dated November 19, 1999. Ex. 39. These documents were produced to the United States by J&G in response to the United States' document subpoena.

37. Government Ex. 40 is a true and correct copy of a letter dated November 22, 1999, from Jerry Zucker to Wachovia authorizing the wire transfer of $3,150,00.00 from his account to the DB account of JZ Buckingham LLC, DB Acct. # 222-10153-12. These documents were produced to the United States by Plaintiff bates marked Z001311 and Z001316.

38. Government Exs. 41 and 42 are true and correct copies of documents successive facsimile dated November 23, 1999, from Carrie Yackee of DB to Ray Knight of E&Y at the same number, at 918437474092, which include Indicative Terms and Conditions for the COBRA entities GS Owl Creek Investments LLC, TFD Oberlin Investments LLC, JZ Buckingham Investments LLC and JGB Bochicket Investments LLC. These documents were produced to the United States by Plaintiff bates marked Z001328 to Z001338.

39. Government Ex. 43 is a reconstructed copy of a facsimile dated November 26, 1999, from Donna Guerin of J&G to Jerry Zucker requesting that he execute the attached documents and that they then be returned by return facsimile and overnight mail as soon as possible. The proposed assignment for Zucker to sign are back-dated to November 23, 1999. This pages of this document were produced to the United States by J&G in response to the United States' document subpoena.

40. Government Ex. 44 is a true and correct copy of a facsimile (26 of 26 pages) dated November 30, 1999, from Crosby to Guerin of J&G, with a copy of the executed documents which were faxed to Mr. Zucker and Mr. Boyd for execution on November 26, 1999, including a signed authorization on behalf of JGB Bohicket, with the authorized amount left blank. This document was produced to the United States by J&G in response to the United States' document subpoena, bates marked JG-CL0147873 to JG-CL0147907.

41. Government Ex. 45 is a true and correct copy of an authorization signed by James Boyd on behalf of JGB Bohicket to make a wire transfer to DBAB-NY to pay for FX options, with the amount being authorized, $250,000, filled-in. This document was produced to the United States by J&G in response to the United States' document subpoena, bates marked JG-CL0147999.

42. Government Ex. 46 is a true and correct copy of a handwritten memo dated December 7, 1999, by Boyd memorializing his conversations on that date with Ray Knight of E&Y,David Parse of DBAB, and Shaw Smith, including, inter alia, the funding of the COBRA transaction and the plan to transfer Cisco stock for trading. This document was produced to the United States by Plaintiff bates marked ZUZU00498.

43. Government Ex. 47 is a true and correct copy of a retained copy of letter dated December 14, 1999 from Donna Guerin of J&G to Zucker, enclosing document for execution, with instruction "do not fill in any blanks which appears in those documents at this time (i.e. dates)." This document was produced by Charlotte Crosby, an employee of Intertech, in response to a document subpoena.

44. Government Ex. 48 is a true and correct copy of an Authorization dated December 22, 1999, signed by Jerry Zucker, as President of JBJZ Investors, Inc, authorizing DB to transfer

5000 shares of Cisco stock from DB Account # 222-10156-19 (the account of JBJZ Investors, Inc.) to the DB account of JBJZ Partners. This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ041562.

45. Government Ex. 49 is a true and correct copy of a facsimile (six pages) dated December 28, 1999 from Zucker to Guerin with signed copy of J&G engagement letter and signed authorization to wire J&G $1.4 MM. This document was produced to the United States by J&G in response to the United States' document subpoena, bates marked JG-CL0148264 to JG-CL0148266, JG-CL0237026, JG-CL0148267, and JG-CL0148035.

46. Government Ex. 50 is a true and correct copy of a handwritten memo by Boyd to Zucker dated 12/28/99 memorializing his conversation with Ray Knight of E&Y that day, in which he wrote, inter alia, "...the reason we only picked upon the margin gain of $625K (plus the original $2.5M) was because we capped our exposure." This document was produced by Charlotte Crosby, an employee of Intertech, in response to a document subpoena.

47. Government Ex. 51 is a true and correct copy of a facsimile (1 page of 1) dated December 29, 1999 of an undated authorization signed by Jerry Zucker on behalf of JBJZ Investors, Inc., for the DB account of JBJZ Investors, Inc. to be charged to pay $1,400,000.00 to Jenkens & Gilchrist. This document was produced to the United States by Plaintiff bates marked JZB04417.

48. Government Ex. 52 is a true and correct copy of a facsimile Facsimile (4 pages) from Boyd to Guerin of J&G forwarding signed copy of J&G engagement letter and wire authorization following clarification from Ray Knight of E&Y re stated J&G fee of $140,000.00. This

document was produced to the United States by J&G bates marked JG-CL0148031 to JG-CL0148034.

49. Government Ex. 53 is a copy of the filed copy of 1999 Form 1065 for JBJZ Partners from the IRS' administrative file. It reflects that it was signed by Ray Knight of E&Y as preparer and then by Jerry Zucker on 3/22/00.

50. Government Ex. 54 is a copy of the filed copy of 1999 Form 1120S for JBJZ Investors, Inc., from the IRS' administrative file. It reflects that it was signed by Ray Knight of E&Y as preparer and then by James Boyd as Secretary on 3/24/00.

51. Government Ex. 55 is a filed copy of the 1999 Form 1040 of Mr. and Mrs. Boyd dated 4/5/00, signed by Mr. and Mrs. Boyd and Sheila Pace as preparer.

52. Government Ex. 56 is a true and accurate copy of a 1999 Form 1045 Application for Tentative Refund, prepared and signed by Barry Emerson for Mr. and Mrs. Zucker to claim a refund in the amount of $5,691,008 by carrying-back an ordinary loss in the amount of $24,306,307 from the 1999 tax year to their 1997 tax return. This document was produced by plaintiff bates marked ZUZU00484 to ZUZU00487.

53. Government Ex. 57 filed copy of the 1999 Form 1030 of Mr. and Mrs. Zucker dated 4/14/00, from the IRS' administrative file.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this _______ day of December, 2007.

_______________________
JOHN A. LINDQUIST
Trial Attorney
U.S. Department of Justice

```
   #      ##       #                ##                     #
           #                         #
 ####      #     ###    ## ##    ### #   ### ## ##   ##   ###
    #      #       #     ##  #  #   ##  #   ##   #   #     #
    #      #       #     #   #  #    #  #    #   #   #     #
    #      #       #     #   #  #    #  #    #   #   #     #
    #      #       #     #   #  #   ##  #   ##   #  ##     #
    #    #####   #####  ### ###  ### ##  ### #    ## ##  #####
    #                                        #
####                                        ###
```

Job : 711
Date: 4/21/2008
Time: 6:05:45 PM

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

JOHN A. LINDQUIST, pursuant to 28 U.S.C. Section 1746, hereby declares under penalty of perjury as follows:

1. I am an attorney of the Washington D.C. office of the United States Department of Justice, Tax Division, co-counsel for Defendant, the United States of America ("United States") in these proceedings.

2. I submit this Declaration in support of United States' Opposition to Plaintiff's to Plaintiff's motion for summary judgment as to the validity of Treasury Regulations § 1.752-6.

3. Government exhibits 1 through 52 are being filed concurrently herewith in the United States' Appendix of Exhibits. In addition, the tax returns marked as government exhibits 53 through 56 are being separately filed under seal. All of these documents were produced in the course of discovery in the above-referenced matter. The source and bates numbers of these documents are described in the United States' Appendix of Exhibits.

4. Government Ex. 1 is a true and correct copy of an email dated October 18, 1999, from Craig Brubaker of Deutsche Bank Alex Brown ("DBAB") to Erwin Mayer, an attorney with J&G, concerning a "format "similar to the treasury short routine for a digital swap transaction," providing him with a list of the steps required to execute a "digital swap" and samples of some of the form documents that would be required by DB to implement the strategy. This document was produced to the United States by DB in response to the United States' document subpoena to DB bates marked DB-DOJ-COBRA-0030051 to DB-DOJ-COBRA-0030061.

5. Attached hereto as Exs. 2 and 3 are true and correct copies of two email dated October 22, 1999, from Paul Daugerdas of J&G separately forwarding to both E&Y and BDO Seidman LLP [identified by email as miwolves@mediaone.net] email with the subject line "Draft Implementation Steps" with identical attachments entitled "Currency Linked Digital Swap Transaction Steps for Implementation With Deutsche Bank AG London (DBAG) and Deutsche Banc Alex. Brown (DBAB)." The first email was produced to the United States by JG in response to the United States' document subpoena to JG bates marked JG-NC064506 to JG-NC064509. The second email was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked DOJ-007914 to DOJ-007917.

6. The second email to E&Y contains an followup internal E&Y email from Brian Vaughn which states:

> Let's take the checklist provided by J&G and modify it to our use. We need to have National on sales call and insert EY responsibilities where needed. Also please insert concurring opinion from Locke Lidell & Sapp. The checklist is a great tool as we move forward. I will thank Paul for his input.

Govt. Ex. 2, at DOJ-007914.

7. Government Ex. 4 is a true and correct copy of an internal E&Y email dated October 22, 1999, from Brian Vaughn with the subject line "COBRA pricing" in which Vaughn reports, inter alia, his recent communications with Dan Brooks of DB regarding the design of the proposed COBRA product. This document was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked DOJ-0004412003EY001767.

8. Government Ex. 5 is a true and correct copy of an internal E&Y email dated October 26, 1999, under the subject line "Product," from Brian Vaughn of E&Y listing as open issues with respect to the planned Cobra Strategy, the engagement letter, the technical memo from J&G, the fee scale, settlement options if audited, and identification of qualified candidates. This document was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked DOJ-000441.

9. Government Ex. 6 is a true and correct copy of a facsimile dated October 27, 1999, (totaling 23 pages), from Paul Daugerdas of J&G to Robert "Bob" Coplan, Richard Shapiro, and Ray Knight, all of E&Y, transmitting a J&G memorandum dated October 1999 on the "Tax Consequences of Contribution of Option Spread to Partnership or Corporation." This document was produced to the United States by E&Y in response to the United States' document subpoena to E&Y bates marked 2003EY001516 - 2003EY001538.

10. Government Ex. 7 is a true and correct copy of a Facsimile (101 pages) dated November 5, 1999, transmitting a J&G opinion on the COBRA product, marked "DRAFT." This document was produced to the United States by J&G in response to the United States' document subpoena bates marked DOJ008601 to DOJ008702.

11. Government Ex. 8 is a true and correct copy of an E&Y email dated 10/9/99 from Coplan of E&Y to VIPER members, subject line "Reliance on tax opinion - cases" with attachment "tax opinions neg.doc." The attached memo contains the following conclusion:

> These cases emphasize that reliance on an advisor's tax opinion may not be reasonable if the advisor has a direct or indirect interest in the investment. If the opinion originates from an interested party, a taxpayer, particularly one with sophisticated knowledge of business transactions, would be well-advised to seek additional input from another, independent tax advisor.

This document was produced to the United States by J&G in response to the United States' document subpoena bates marked 2003EY007852 to 2003EY007854.

12. Government Ex. 9 is a true and correct copy of an E&Y email dated November 11, 1999, from Melinda Merck of E&Y to the members of E&Y's VIPER and Quckstrike Teams, under subject line "Revised COBRA Spreadsheets and Slides", with copies attached. This document was produced to the United States by E&Y in response to the United States' document subpoena bates marked 2003EY003750 - 2003EY003767.

13. Government Ex. 10 is a true and correct copy of an email dated November 12, 1999, from Robert Coplan of E&Y to Paul Daugerdas of J&G regarding the role of Brown and Wood, forwarding Daugerdas a copy of a Brown & Wood opinion which Coplan states describes the basis option spread strategy, but which has not yet be tailored for the particular structure of COBRA. This document was produced to the United States by J&G in response to the United States' document subpoena bates marked JG-NC047817 to JG-NC047855.

14. Government Ex. 11 is a true and correct copy of an email E&Y email dated November 15, 1999, from Richard Shapiro to E&Y's "Quickstrike Team" re "Implementation of COBRA strategy" in which Shapiro wrote:

> As a result of further discussions with J&G and DB today, we have concluded that in general the most viable structure for the COBRA strategy will involve the use of ONLY 2 currencies, eve with more than 2 partners. The use of fewer currencies results in a higher probability of making a profit at the partnership level, while still providing diversification.

This document was produced to the United States by E&Y in response to the United States' document subpoena bates marked 2003EY000864 and 2003EY105642.

15. Government Ex. 12 is a true and correct copy of an internal E&Y email dated November 18, 1999, from Carl Rhodes of E&Y, distributing the following documents attached thereto, with the instruction that they are needed for implementation and should be customized for the client:

a. COBRA Client Nondisclosure Letter;

b. J&G Nondisclosure agreement

c. Revised Client COBRA Presentation;

d. COBRA Engagement Letter 11-17-99; and

e. J&G Client Information Questionaire.

This document was produced by Ernst & Young bates marked as DOJ-001008 through DOJ-001031.

16. Government Ex. 13 is a true and correct copy of an email dated December 27, 1999 from David Parse of Deutsche Bank ("DB") to Carrie Yackee of DB forwarding an attached list named "Paul D 1999 Digital Options Ma.." This document was produced to the United States by DB in response to the United States' document subpoena bates marked from DB-DOJ-COBRA-00044432 through DB-DOJ-COBRA-00044466. I have reorganized the bates-numbered pages of the attachment so that the each transaction, read from left to right, is now visible sequentially.

The attachment to this email lists 105 DB transactions implemented in November and December 1999, which is followed by a list of the COBRA transactions, referenced as "EY", which were implemented through DB during this same time period. In each of the first 105 DB transactions, the listed "Premium" is equal to 1% of the listed "Trade." In each of the listed "EY" transactions the listed "Premium" is equal to 5% of the listed Trade.

17. Government Ex. 14 is a true and correct copy of a 3 page internal J&G fax dated December 28, 1999, from Patrick O'Daniel to Paul Daugerdas of J&G forwarding an attachment entitled "Revised Legal Fee Allocation Ernst & Young Client Transactions" listing the allocation of J&G's 3% cut from the 1999 COBRA transactions as between J&G, Scheef & Stone, and B&W. This document was produced by J&G in response to the United States' document subpoena to J&G, bates marked as JG-NC055932 to JG-NC055934.

18. Government Ex. 15 is a true and correct copy of an email dated February 22, 2000, from Melinda Merk of Ernst & Young, LLP ("E&Y") to Amy Keating of E&Y providing Ms. Keating with an attached list. The attached list detailing the following information for each of 15 listed COBRA transactions:

a) the names of the clients, the name of the E&Y contact;
b) the "Account Name" for each of the Limited Liability Companies, Partnership(s), and S-Corporation(s) used in each of these transactions;
c) the "DBAB Account No." for each of these accounts;
d) the Date that each of the associated entities were formed;
e) the jurisdiction in which each of the associated entities were formed;
f) the Federal Employment Identification Number or FEIN for each of these entities; and
g) the date upon which an S-Corporation election was filed on behalf of each of the S-Corporations involved in each of these transactions.

This document was produced to the United States by E&Y in response to the United States' document subpoena bates marked from DOJ 0000851 to DOJ 000853.

19. Government Ex. 16 is a true and correct copy of an internal E&Y chain email dated June 7, 2001, regarding the difference between COBRA and J&G's 1% net premium with respect to its OPS product, stating,

> We would not have signed off on the "ignored opinion letter fee deal" with a 1% investment in 1999.

This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ-049188 to DOJ-049180.

20. Government Exs. 17, 18, 19 and 20, are true and correct copies of various versions of a document entitled "COBRA Action Work Plan" which appear to have been used by E&Y to implement the COBRA transactions. These documents were produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ03781 to DOJ03785, DOJ054573 to DOJ054577, DOJ 001091 to DOJ-001095, and DOJ004024 to DOJ004028.

21. Attached hereto as Ex. 21 is a true and correct copy of an email dated November 10, 1999, from Melinda Merck of E&Y to the members of E&Y's VIPER tax products team, including Ray Knight and Kenneth Hughes, with an attached COBRA Client Information Questionaire form, directing that it is to completed for each individual taxpayer and faxed to J&G. This document was produced by Ernst & Young bates marked as 2003EY003742 - 2003EY003743.

22. Government Ex. 37 is an E&Y facsimile (seven pages) dated November 13, 1999, from Ray Knight of E&Y to Paul Daugerdas of J&G, forwarding filled-in COBRA Client Information Questionaire for six (6) of the individual participants, including Jerry Zucker and James Boyd.

This document was produced by J&G in response to the United States' document subpoena to J&G bates marked as JG-CL0241055, JG-CL0241056, JG-CL0231041, JG-CL015536, JG-CL01555323, JG-CL0148038, and JG-CL0148037. Government Ex. 22 contains true and correct copies of completed COBRA Client Information Questionaires for other COBRA participants. These documents were also produced by J&G in response to the United States' document subpoena to J&G.

23. Government Ex. 23 is a true and correct copy of a fax dated October 22, 199 from Grady P. Dickens of the law firm Scheef & Stone, LLP, forwarding to Paul M. Daugerdas of J&G, for review and approval, a copy of E&Y's proposed nondisclosure agreement form for the COBRA strategy. This document was produced by J&G in response to the United States' document subpoena bates marked CANC00121 to CANC00122.

24. Government Ex. 24 is an internal E&Y email dated October 29, 1999, from Robert Coplan, stating that a nondisclosure agreement is required by E&Y with respect to the COBRA strategy. This document was produced by E&Y in response to the United States' document subpoena bates marked 2003EY001760.

25. Government Ex. 25 is a true and correct copy of an email dated March 8, 2000, from Donna Guerin of J&G to Amy Keating of E&Y, confirming that J&G wanted for its files copies of the tax returns prepared by E&Y reporting the COBRA transactions. This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ-032014.

26. Government Ex. 26 is a true and correct copy of an internal E&Y chain-email dated May 8, 2001, regarding "Cobra Transaction Feedback", stating, *inter alia*:

> Our decision to use a coordinated preparation of transaction tax returns was well received. Our clients liked the fact that we were paying close attention to coordinating the reporting of similar transactions and achieving efficiency in determining proper wording and disclosure issues. This was a major task by the compliance people involved and for Bob Coplan to review all of them.

This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ-031731.

27. Government Ex. 27 is a true and correct copy of an internal E&Y email dated January 6, 2000, from Robert Coplan to the members of E&Y's VIPER and Quick strike Teams , including Ray Knight, regarding a January 5th Meeting regarding VIPER Strategies and stating:

> After lengthy discussions of the issues involved in the meeting on COBRA, the conclusion reached by Mike Kelly, Ron Friedman and others yesterday was that the firm would not market this strategy in 2000. The primary reasons for this involved the perceived changes in the landscape now being faced by tax-advantaged strategies after the issuance of Notice 99-59 last month and the publication of the PWC BOSS opinion and scathing commentary of BOSS in tax Notes.
>
> We are well aware that many of you had tee'd up COBRA opportunities late last year for execution in 2000. It will be necessary to advise these clients ASAP that we have decided not to sell this strategy. We should indicate to these clients that the issuance of Notice 99-59 on December 3, 1999 signals the increased level of scrutiny that will be brought to bear on transactions like BOSS, that generate permanent ordinary losses, and the heightened penalty risk that will be faced by clients (and our firm) after issuance fo the Notice. **Specifically, it is not uncommon for the IRS to follow up the issuance of a Notice with the the [sic] issuance of regulations that adopt the Notice publication date as the effective date of the regulation. Thus, transactions done in 2000 bear a higher risk of being attacked and of being subjected to penalties than ones done before the issuance of the Notice. This explanation of our decision should not raise questions about the 16 transactions that were completed in November 1999.**

[emphasis supplied.] This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as 2003EY001046-2003EY001047.

28. Government Ex. 28 is a true and correct copy of an internal DB email dated July 20, 2000, forwarding documents, including DB Memo entitled "Binary Options Strategy: Credit Risk Mgmt PBA Summary" prepared by Chuck Binder MD and SCO PBAE&Y, in which Binder wrote:

> Strike on both options are about the same. Any spread must fall within DB's ability to set a bid/ask spread. Both options must either payoff or not. Market risk/ops risk on execution is for account of GCI desk executing.

Ex. 28 at DB-DOJ-COBRA-00030723. This document was produced by DB in response to the United States' document subpoena to DB bates marked as DB-DOJ-COBRA-00030714 to DB-DOJ-COBRA-00030751.

29. Government Ex. 29 is a true and correct copy of an internal E&Y email dated December 5, 1999, from Robert "Bob" Coplan of E&Y to members of the E&Y's "Quick strike Team" regarding E&Y's plan to continue to market COBRA in 2000, which Coplan wrote, *inter alia*:

> We are carefully reviewing the possibility of joining with a promoter for 2000 other than Jenkens & Gilchrist with whom to implement COBRA. We have not previously worked with this promoter before, but they have been selling the transaction before in a manner compatible with the economics we have instituted. Advantages of changing to the new promoter would include: 1) a higher fee for E&Y (2%) and a lower overall fee for the transaction (4%) allowing the client to have a greater probability of profiting on the option trade.

This document was produced E&Y in response to the United States' document subpoena to E&Y bates marked as 2003EY000866 - 2003EY000867.

This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as 2003EY000866 to 2003EY000867.

30. Government Ex. 29 is a true and correct copy of an internal E&Y email, with attachment, dated December 11, 1999, from Robert Haynie of E&Y with subject line "COBRA - Latest Slides" forwarding a revised COBRA Powerpoint for 2000. This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ 00395 to DOJ 00398.

31. Government Ex. 31 is a true and correct copy of a facsimile (22 pages) dated November 5, 1999 of a J&G opinion marked "Draft" (22 pages), with handwriting of Jerry Zucker addressed to "Barry" in which he wrote: "Attached is a draft of the opinion letter re: the year end activity resulting in a $45MM tax loss. Please accelerate your understanding by discussing with Ray Knight of EY et al. I'd like to proceed on an accelerated basis for a tax refund." This document was produced by Barry Emerson, Zucker's accountant, in response to a document subpoena. The document has been bates marked by the United States as Emerson01448 to Emerson01473.

32. Government Ex. 32 is a true and correct copy of facsimile (five pages) dated November 12, 1999, from Jerry Zucker to Ray Knight of E&Y returning an executed copy of a proposed EY COBRA engagement letter, with a cover memo from Jerry Zucker to Ray Knight. The E&Y engagement letter states, *inter alia*, "Investment in the Partnership equals Cost of long option contract equal to 5% of desired loss, plus cash equal to 2% of desired loss." Zucker wrote in his cover memo:

> I want you to confirm that my maximum exposure for a $100 million loss is $8 ½ million. If the actual cost is different fro this amount, I would appreciate you informing me immediately.

This document was produced by Charlotte Crosby, an employee of Intertech, in response to a document subpoena.

33. Government Ex. 33 is a true and correct copy of pp. 98 through 101 from the deposition testimony of Jerry Zucker taken on June 8, 2007, at which time Zucker testified that the naming of the entity JZ Buckingham LLC was his idea.

34. Government Ex. 35 is a true and correct copy of an E&Y Facsimile (nine pages) dated November 15, 1999, from Ray Knight of E&Y to Zucker forwarding modified COBRA engagement letters for both Zucker and Boyd and memorializing, *inter alia*, that "the amount of the loss is $50 million (60% ordinary and 40% long term capital loss) the allocation of the partnership interests is 90/10 between zucker and boyd." This document was produced by plaintiff bates marked Z001282 to Z001290.

35. Government Ex. 36 is a true and correct copy of an E&Y Non-Disclosure Agreement dated November 15, 1999, prepared for Ray Knight with respect to his marketing of the COBRA strategy at the same time that he was marketing COBRA to Zucker and Boyd. This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ039875.

36. Government Exs. 37, 38 and 39 are true and correct copies of documents related to the initial set of implementation documents prepared by J&G for Zucker and Boyd's signature. By letter dated November 16, 1999, Donna Guerin of J&G sent Zucker and Boyd the documents referenced therein, including the JBJZ Partnership Agreement and Forms SS-4, 8821 and 2553,

for execution and return. Ex. 37. Zucker wrote on this letter a note to Crosby regarding where to send the executed agreements after corrections and executions by Boyd. The Forms SS-4, 8821 and 2553 signed by Zucker are dated November 18, 1999. Ex. 38. The Forms SS-4, 8821 and 2553 signed by Boyd are dated November 19, 1999. These documents were then returned to J&G by letter dated November 19, 1999. Ex. 39. These documents were produced to the United States by J&G in response to the United States' document subpoena.

37. Government Ex. 40 is a true and correct copy of a letter dated November 22, 1999, from Jerry Zucker to Wachovia authorizing the wire transfer of $3,150,00.00 from his account to the DB account of JZ Buckingham LLC, DB Acct. # 222-10153-12. These documents were produced to the United States by Plaintiff bates marked Z001311 and Z001316.

38. Government Exs. 41 and 42 are true and correct copies of documents successive facsimile dated November 23, 1999, from Carrie Yackee of DB to Ray Knight of E&Y at the same number, at 918437474092, which include Indicative Terms and Conditions for the COBRA entities GS Owl Creek Investments LLC, TFD Oberlin Investments LLC, JZ Buckingham Investments LLC and JGB Bohicket Investments LLC. These documents were produced to the United States by Plaintiff bates marked Z001328 to Z001338.

39. Government Ex. 43 is a reconstructed copy of a facsimile dated November 26, 1999, from Donna Guerin of J&G to Jerry Zucker requesting that he execute the attached documents and that they then be returned by return facsimile and overnight mail as soon as possible. The proposed assignment for Zucker to sign are back-dated to November 23, 1999. This pages of this document were produced to the United States by J&G in response to the United States' document subpoena.

40. Government Ex. 44 is a true and correct copy of a facsimile (26 of 26 pages) dated November 30, 1999, from Crosby to Guerin of J&G, with a copy of the executed documents which were faxed to Mr. Zucker and Mr. Boyd for execution on November 26, 1999, including a signed authorization on behalf of JGB Bohicket, with the authorized amount left blank. This document was produced to the United States by J&G in response to the United States' document subpoena, bates marked JG-CL0147873 to JG-CL0147907.

41. Government Ex. 45 is a true and correct copy of an authorization signed by James Boyd on behalf of JGB Bohicket to make a wire transfer to DBAB-NY to pay for FX options, with the amount being authorized, $250,000, filled-in. This document was produced to the United States by J&G in response to the United States' document subpoena, bates marked JG-CL0147999.

42. Government Ex. 46 is a true and correct copy of a handwritten memo dated December 7, 1999, by Boyd memorializing his conversations on that date with Ray Knight of E&Y, David Parse of DBAB, and Shaw Smith, including, inter alia, the funding of the COBRA transaction and the plan to transfer Cisco stock for trading. This document was produced to the United States by Plaintiff bates marked ZUZU00498.

43. Government Ex. 47 is a true and correct copy of a retained copy of letter dated December 14, 1999 from Donna Guerin of J&G to Zucker, enclosing document for execution, with instruction "do not fill in any blanks which appears in those documents at this time (i.e. dates)." This document was produced by Charlotte Crosby, an employee of Intertech, in response to a document subpoena.

44. Government Ex. 48 is a true and correct copy of an Authorization dated December 22, 1999, signed by Jerry Zucker, as President of JBJZ Investors, Inc, authorizing DB to transfer

5000 shares of Cisco stock from DB Account # 222-10156-19 (the account of JBJZ Investors, Inc.) to the DB account of JBJZ Partners. This document was produced by E&Y in response to the United States' document subpoena to E&Y bates marked as DOJ041562.

45. Government Ex. 49 is a true and correct copy of a facsimile (six pages) dated December 28, 1999 from Zucker to Guerin with signed copy of J&G engagement letter and signed authorization to wire J&G $1.4 MM. This document was produced to the United States by J&G in response to the United States' document subpoena, bates marked JG-CL0148264 to JG-CL0148266, JG-CL0237026, JG-CL0148267, and JG-CL0148035.

46. Government Ex. 50 is a true and correct copy of a handwritten memo by Boyd to Zucker dated 12/28/99 memorializing his conversation with Ray Knight of E&Y that day, in which he wrote, inter alia, "...the reason we only picked upon the margin gain of $625K (plus the original $2.5M) was because we capped our exposure." This document was produced by Charlotte Crosby, an employee of Intertech, in response to a document subpoena.

47. Government Ex. 51 is a true and correct copy of a facsimile (1 page of 1) dated December 29, 1999 of an undated authorization signed by Jerry Zucker on behalf of JBJZ Investors, Inc., for the DB account of JBJZ Investors, Inc. to be charged to pay $1,400,000.00 to Jenkens & Gilchrist. This document was produced to the United States by Plaintiff bates marked JZB04417.

48. Government Ex. 52 is a true and correct copy of a facsimile (4 pages) from Boyd to Guerin of J&G forwarding signed copy of J&G engagement letter and wire authorization following clarification from Ray Knight of E&Y re stated J&G fee of $140,000.00. This

document was produced to the United States by J&G bates marked JG-CL0148031 to JG-CL0148034.

49. Government Ex. 53 is a copy of the filed copy of 1999 Form 1065 for JBJZ Partners from the IRS' administrative file. It reflects that it was signed by Ray Knight of E&Y as preparer and then by Jerry Zucker on 3/22/00.

50. Government Ex. 54 is a copy of the filed copy of 1999 Form 1120S for JBJZ Investors, Inc., from the IRS' administrative file. It reflects that it was signed by Ray Knight of E&Y as preparer and then by James Boyd as Secretary on 3/24/00.

51. Government Ex. 55 is a filed copy of the 1999 Form 1040 of Mr. and Mrs. Boyd dated 4/5/00, signed by Mr. and Mrs. Boyd and Sheila Pace as preparer.

52. Government Ex. 56 is a true and accurate copy of a 1999 Form 1045 Application for Tentative Refund, prepared and signed by Barry Emerson for Mr. and Mrs. Zucker to claim a refund in the amount of $5,691,008 by carrying-back an ordinary loss in the amount of $24,306,307 from the 1999 tax year to their 1997 tax return. This document was produced by plaintiff bates marked ZUZU00484 to ZUZU00487.

53. Government Ex. 57 filed copy of the 1999 Form 1030 of Mr. and Mrs. Zucker dated 4/14/00, from the IRS' administrative file.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this April 21, 2008.

JOHN A. LINDQUIST
Trial Attorney
U.S. Department of Justice