# EXHIBIT G36

NON-DISCLOSURE AGREEMENT

November 15, 1999

**Private and Confidential**

Mr. Ray Knight
Ernst & Young LLP
101 Independence Center
Suite 1100
101 North Tryon Street
Charlotte, North Carolina 28246

Dear Ray:

This confirms that I will hold in strict confidence and will not disclose to others any information about the nature and details of the COBRA strategy Ernst & Young will explain to me which will reduce the current taxation of ordinary income. While this agreement does not apply to the extent that I had prior knowledge of the technique, it will nevertheless apply to details contained in any opinion letter or legal documents I review in connection with the implementation of this strategy. I understand that I am under no obligation to participate in implementing the strategy, but I confirm again that I will not disclose it to any other person.

Sincerely yours,

[signature]

Charles B. Merrell
CEO, Chief Financial Officer

GOVERNMENT EXHIBIT 36
PENGAD 800-631-6989

DOJ 039875

# EXHIBIT G37

Charlotte,
Several places for Jim B. to sign
I inadvertently signed as a [illegible] on one of the forms for Jim (I already signed one of the guarantees)
Please make a copy. sent and retain.
Please call Ray Knight at E/Y to find out where to send the executed agreements after the correction & execution by Jim phone (704) 618-5842
If you can't reach Ray, call Kenny Hughes (864) 298-6434

# Jenkens & Gilchrist

225 W. WASHINGTON
SUITE 2600
CHICAGO, ILLINOIS 60606-3418
(312) 425-3900
TELECOPIER (312) 425-3909
WWW.JENKENS.COM

[illegible]
(312) 425-3900
[illegible]

AUSTIN, TEXAS
DALLAS, TEXAS
HOUSTON, TEXAS
LOS ANGELES, CALIFORNIA
SAN ANTONIO, TEXAS
WASHINGTON, D.C.

November 16, 1999

**VIA FED EX**

Mr. Jerry Zucker
16 Buckingham Drive
Charleston, SC 29407

Mr. James G. Boyd
3520 Bohicket Road
Johns Island, SC 29455

Gentlemen:

Pursuant to the request of Ernst & Young, enclosed for your execution are the following documents for your transaction:

1. Internal Revenue Service Forms SS-4 and 8821, Deutsch Banc/Alex. Brown Account form for JZ Buckingham Investments LLC (Jerry);
2. Internal Revenue Service Forms SS-4 and 8821, Deutsch Banc/Alex. Brown Account form for JGB Bohicket Investments LLC (James);
3. Internal Revenue Service Forms SS-4 and 8821, Deutsch Banc/Alex. Brown Account form for JBIZ Partners (Jerry and James);
4. General Partnership Agreement for JBIZ Partners (Jerry and James); and
5. Internal Revenue Service Forms SS-4, 8821 and 2553, Deutsch Banc/Alex. Brown Account forms for JBJZ Investors Inc. (Jerry and James).

Jim also has a copy sent for [illegible] with N.Y.

Please have the enclosed documents executed as soon as possible and return them to my attention via overnight courier. If you have any questions, please do not hesitate to contact me.

Very truly yours,

Donna M. Guerin

Donna M. Guerin
For JENKENS & GILCHRIST

DMG:sb
Enclosures

CHICAGO [illegible]

GOVERNMENT EXHIBIT 37

GOVERNMENT EXHIBIT 1018

ZUZU00499

# EXHIBIT G38

Form **SS-4** (Rev. February 1998) Department of the Treasury Internal Revenue Service

# Application for Employer Identification Number

(For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, certain individuals, and others. See instructions.)

▶ Keep a copy for your records.

EIN 57-1087553

OMB No 1545-0003

Please type or print clearly.

1 Name of applicant (legal name) (see instructions)
IGB BOHICKET INVESTMENTS LLC

2 Trade name of business (if different from name on line 1)

3 Executor, trustee, "care of" name

4a Mailing address (street address) (room, apt., or suite no.)
3520 BOHICKET ROAD

5a Business address (if different from address on lines 4a and 4b)

4b City, state, and ZIP code
JOHNS ISLAND, SC 29455

5b City, state, and ZIP code

6 County and state where principal business is located
CHARLESTON COUNTY, SC

7 Name of principal officer, general partner, grantor, owner, or trustor — SSN or ITIN may be required (see instructions) ▶
JAMES G. BOYD, SSN 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

8a Type of entity (Check only one box.) (see instructions)
Caution: If applicant is a limited liability company, see the instructions for line 8a.

- ☐ Sole proprietor (SSN) ____
- ☐ Partnership
- ☐ REMIC
- ☐ State/local government
- ☐ Church or church-controlled organization
- ☐ Other nonprofit organization (specify) ▶ ____ (enter GEN if applicable) ____
- ☒ Other (specify) ▶ DISREGARDED ENTITY – SINGLE MEMBER - ONE PERSON
- ☐ Personal service corp.
- ☐ National Guard
- ☐ Farmers' cooperative
- ☐ Estate (SSN of decedent) ____
- ☐ Plan administrator (SSN) ____
- ☐ Other corporation (specify) ▶ ____
- ☐ Trust
- ☐ Federal government/military

8b If a corporation, name the state or foreign country (if applicable) where incorporated — State | Foreign country

9 Reason for applying (Check only one box.) (see instructions)

- ☒ Started new business (specify type) ▶ SINGLE MEMBER LIMITED LIABILITY
- ☐ Hired employees (Check the box and see line 12.)
- ☐ Created a pension plan (specify type) ▶
- ☐ Banking purpose (specify purpose) ▶ ____
- ☐ Changed type of organization (specify new type) ▶ ____
- ☐ Purchased going business
- ☐ Created a trust (specify type) ▶ ____
- ☐ Other (specify) ▶

10 Date business started or acquired (month, day, year) (see instructions)
NOVEMBER 16, 1999

11 Closing month of accounting year (see instructions)
DECEMBER

12 First date wages or annuities were paid or will be paid (month, day, year). Note: If applicant is a withholding agent, enter date income will first be paid to nonresident alien. (month, day, year) ▶ N/A

13 Highest number of employees expected in the next 12 months. Note: If the applicant does not expect to have any employees during the period, enter -0-. (see instructions) ▶

| Nonagricultural | Agricultural | Household |
|---|---|---|
| 0 | 0 | 0 |

14 Principal activity (see instructions) ▶ INVESTMENTS

15 Is the principal business activity manufacturing? ☐ Yes ☒ No
If "Yes," principal product and raw material used ▶

16 To whom are most of the products or services sold? Please check one box. ☐ Business (wholesale)
☐ Public (retail) ☐ Other (specify) ▶ ☒ N/A

17a Has the applicant ever applied for an employer identification number for this or any other business? ☐ Yes ☒ No
Note: If "Yes," please complete lines 17b and 17c.

17b If you checked "Yes" on line 17a, give applicant's legal name and trade name shown on prior application, if different from line 1 or 2 above.
Legal name ▶ Trade name ▶

17c Approximate date when and city and state where the application was filed. Enter previous employer identification number if known.
Approximate date when filed (mo., day, year) | City and state where filed | Previous EIN

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.

Business telephone number (include area code)

Fax telephone number (include area code)

Name and title (Please type or print clearly) ▶ JAMES G. BOYD

Signature ▶ [signature] Date ▶ 11/19/99

Note: Do not write below this line. For official use only.

| Please leave blank ▶ | Geo. | Ind. | Class | Size | Reason for applying |
|---|---|---|---|---|---|
| | | | | | |

For Paperwork Reduction Act Notice, see page 4. Form SS-4 (Rev. 2-98)

GOVERNMENT EXHIBIT 38

GOVERNMENT EXHIBIT 57 1:07 06-06-07

0615



ADMIN000615

Form **SS-4** (Rev February 1998) Department of the Treasury Internal Revenue Service

# Application for Employer Identification Number

(For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, certain individuals, and others. See instructions.)

▶ Keep a copy for your records.

EIN 57-1088089

OMB No. 1545-0003

*Please type or print clearly.*

1 Name of applicant (legal name) (see instructions)
JBIZ PARTNERS

2 Trade name of business (if different from name on line 1)

3 Executor, trustee, "care of" name

4a Mailing address (street address) (room, apt., or suite no.)
16 BUCKINGHAM DRIVE

5a Business address (if different from address on lines 4a and 4b)

4b City, state, and ZIP code
CHARLESTON, SC 29407

5b City, state, and ZIP code

6 County and state where principal business is located
CHARLESTON COUNTY, SC

7 Name of principal officer, general partner, grantor, owner, or trustor — SSN or ITIN may be required (see instructions) ▶
JERRY ZUCKER, SSN 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

8a Type of entity (Check only one box.) (see instructions)
*Caution: If applicant is a limited liability company, see the instructions for line 8a.*

- [ ] Sole proprietor (SSN)
- [X] Partnership
- [ ] REMIC
- [ ] State/local government
- [ ] Church or church-controlled organization
- [ ] Other nonprofit organization (specify) ▶ (enter GEN if applicable)
- [ ] Other (specify) ▶
- [ ] Personal service corp.
- [ ] National Guard
- [ ] Farmers' cooperative
- [ ] Estate (SSN of decedent)
- [ ] Plan administrator (SSN)
- [ ] Other corporation (specify) ▶
- [ ] Trust
- [ ] Federal government/military

8b If a corporation, name the state or foreign country (if applicable) where incorporated | State | Foreign country

9 Reason for applying (Check only one box.) (see instructions)
- [X] Started new business (specify type) ▶ PARTNERSHIP
- [ ] Hired employees (Check the box and see line 12.)
- [ ] Created a pension plan (specify type) ▶
- [ ] Banking purpose (specify purpose) ▶
- [ ] Changed type of organization (specify new type) ▶
- [ ] Purchased going business
- [ ] Created a trust (specify type) ▶
- [ ] Other (specify) ▶

10 Date business started or acquired (month, day, year) (see instructions)
NOVEMBER 16, 1999

11 Closing month of accounting year (see instructions)
DECEMBER

12 First date wages or annuities were paid or will be paid (month, day, year). *Note: If applicant is a withholding agent, enter date income will first be paid to nonresident alien. (month, day, year)* ▶ N/A

13 Highest number of employees expected in the next 12 months. *Note: If the applicant does not expect to have any employees during the period, enter -0-. (see instructions)* ▶

| Nonagricultural | Agricultural | Household |
|---|---|---|
| 0 | 0 | 0 |

14 Principal activity (see instructions) ▶ INVESTMENTS

15 Is the principal business activity manufacturing? ☐ Yes ☒ No
If "Yes," principal product and raw material used ▶

16 To whom are most of the products or services sold? Please check one box. ☐ Business (wholesale) ☐ Public (retail) ☐ Other (specify) ▶ ☒ N/A

17a Has the applicant ever applied for an employer identification number for this or any other business? ☐ Yes ☒ No
*Note: If "Yes," please complete lines 17b and 17c.*

17b If you checked "Yes" on line 17a, give applicant's legal name and trade name shown on prior application, if different from line 1 or 2 above.
Legal name ▶ Trade name ▶

17c Approximate date when and city and state where the application was filed. Enter previous employer identification number if known.
Approximate date when filed (mo., day, year) | City and state where filed | Previous EIN

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.

Business telephone number (include area code)

Fax telephone number (include area code)

Name and title (Please type or print clearly.) ▶ JERRY ZUCKER

Signature ▶ [signature] Date ▶ 11/18/99

*Note: Do not write below this line. For official use only.*

| Please leave blank ▶ | Geo. | Ind. | Class | Size | Reason for applying |
|---|---|---|---|---|---|
| | | | | | |

For Paperwork Reduction Act Notice, see page 4. ISA Form SS-4 (Rev. 2-98)

STF FED0740F



CONFIDENTIAL

M0263712
SIDL141373

Form **8821**
(Rev September 1998)
Department of the Treasury
Internal Revenue Service

# Tax Information Authorization

▶ IF THIS AUTHORIZATION IS NOT SIGNED AND DATED, IT WILL BE RETURNED.

OMB No 1545-1165
For IRS Use Only
Received by:
Name
Telephone ( )
Function
Date / /

**1 Taxpayer information.**

Taxpayer name(s) and address (please type or print)
JBJZ PARTNERS
16 BUCKINGHAM DRIVE
CHARLESTON, SC 29407

Social security number(s)
Employer identification number
Daytime telephone number
Plan number (if applicable)

**2 Appointee.**

(Name and address (please type or print)
LAURA LIGHTHOLDER, JENKENS & GILCHRIST
225 WEST WASHINGTON, SUITE 2600
CHICAGO, IL 60606

CAF No.
Telephone No. 312-425-3928
Fax No. 312-425-3909
Check if new: Address ☐ Telephone No. ☐

**3 Tax matters.** The appointee is authorized to inspect and/or receive confidential tax information in any office of the IRS for the tax matters listed on this line.

| (a) Type of Tax (Income, Employment, Excise, etc.) | (b) Tax Form Number (1040, 941, 720, etc.) | (c) Year(s) or Period(s) | (d) Specific Tax Matters (see instr.) |
|---|---|---|---|
| FEIN | SS-4 | | |
| | | | |
| | | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. (See the instructions on page 2.) ▶ ☐
If you checked this box, skip lines 5 and 6.

**5 Disclosure of tax information** (you must check box 5a or b unless box 4 is checked):

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box ▶ ☐

**b** If you do not want any copies of notices or communications sent to your appointee, check this box ▶ ☐

**6 Retention/revocation of tax information authorizations.** This tax information authorization automatically revokes all prior authorizations for the same tax matters you listed above on line 3 unless you checked the box on line 4. If you do not want to revoke a prior tax information authorization, you MUST attach a copy of any authorizations you want to remain in effect AND check this box ▶ ☐
To revoke this tax information authorization, see the instructions on page 2.

**7 Signature of taxpayer(s).** If a tax matter applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters/periods covered.

[signature] 11/18/55
Signature Date
JERRY ZUCKER
Print Name Title (if applicable)

Signature Date
Print Name Title (if applicable)

## General Instructions

*Section references are to the Internal Revenue Code unless otherwise noted.*

**Change To Note.** New column (d) is added to line 3 for specific tax matters. Use column (d) to specify tax information that is to be provided by the IRS. See the line 3 instructions on page 2.

**Purpose of form.** Form 8821 authorizes any individual, corporation, firm, organization, or partnership you designate to inspect and/or receive confidential information in any office of the IRS for the type of tax and the years or periods you list on this form.

Form 8821 does not authorize your appointee to advocate your position with respect to the Federal tax laws; to execute waivers, consents, or closing agreements; or to otherwise represent you before the IRS. If you want to authorize an individual to represent you, use Form 2848, Power of Attorney and Declaration of Representative, instead of Form 8821. You may file your own tax information authorization without using Form 8821, but it must include all the information that is requested on the form.

**Taxpayer identification numbers (TINs).** TINs are used to identify taxpayer information with corresponding tax returns. It is important that you furnish correct names, social security numbers (SSNs), individual taxpayer identification numbers (ITINs), or employer identification numbers (EINs) so that the IRS can respond to your request.

**Fiduciaries.** A fiduciary (trustee, executor, administrator, receiver, or guardian) stands in the position of a taxpayer and acts as the taxpayer. Therefore, a fiduciary does not act as an appointee and should not file Form 8821. File Form 56, Notice Concerning Fiduciary Relationship, to notify the IRS of the existence of a

For Privacy Act and Paperwork Reduction Act Notice, see page 2. Form **8821** (Rev. 9-98)
ISA
STF FED7148F.1



M0263713
CONFIDENTIAL SIDL141374

Form **2553**
(Rev September 1997)
Department of the Treasury
Internal Revenue Service

# Election by a Small Business Corporation

**(Under section 1362 of the Internal Revenue Code)**
**▶ For Paperwork Reduction Act Notice, see page 2 of instructions.**
**▶ See separate instructions.**

OMB No 1545-0146

**Notes:** 1. *This election to be an S corporation can be accepted only if all the tests are met under Who May Elect on page 1 of the instructions; all signatures in Parts I and III are originals (no photocopies), and the exact name and address of the corporation and other required form information are provided.*

2. *Do not file Form 1120S, U.S. Income Tax Return for an S Corporation, for any tax year before the year the election takes effect.*

3. *If the corporation was in existence before the effective date of this election, see Taxes an S Corporation May Owe on page 1 of the instructions*

## Part I Election Information

**Please Type or Print**

Name of corporation (see instructions): JBJZ INVESTORS Inc.

Number, street, and room or suite no (If a PO box, see instructions ): 16 BUCKINGHAM DRIVE

City or town, state, and ZIP code: CHARLESTON, SC 29407

A Employer identification number: 57-1088087

B Date incorporated: NOVEMBER 16, 1999

C State of incorporation: DELAWARE

D Election is to be effective for tax year beginning (month, day, year) ▶ 11 16/99

E Name and title of officer or legal representative who the IRS may call for more information: DONNA M. GUERIN, ESQ.

F Telephone number of officer or legal representative: 312-425-3939

G If the corporation changed its name or address after applying for the EIN shown in A above, check this box ▶ ☐

H If the election takes effect for the first tax year the corporation exists, enter month, day, and year of the earliest of the following: (1) date the corporation first had shareholders, (2) date the corporation first had assets, or (3) date the corporation began doing business ▶ 11/16/99

I Selected tax year: Annual return will be filed for tax year ending (month and day) ▶ 12/31

If the tax year ends on any date other than December 31, except for an automatic 52-53-week tax year ending with reference to the month of December, you must complete Part II on the back. If the date you enter is the ending date of an automatic 52-53-week tax year, write "52-53-week year" to the right of the date. See Temporary Regulations section 1.441-2T(e)(3).

| J Name and address of each shareholder, shareholder's spouse having a community property interest in the corporation's stock, and each tenant in common, joint tenant, and tenant by the entirety (A husband and wife (and their estates) are counted as one shareholder in determining the number of shareholders without regard to the manner in which the stock is owned ) | K Shareholders' Consent Statement. Under penalties of perjury, we declare that we consent to the election of the above-named corporation to be an S corporation under section 1362(a) and that we have examined this consent statement, including accompanying schedules and statements, and to the best of our knowledge and belief, it is true, correct, and complete. We understand our consent is binding and may not be withdrawn after the corporation has made a valid election. (Shareholders sign and date below ) Signature | Date | L Stock owned: Number of shares | L Stock owned: Dates acquired | M Social security number or employer identification number (see instructions) | N Share-holder's tax year ends (month and day) |
|---|---|---|---|---|---|---|
| JERRY ZUCKER<br>16 BUCKINGHAM DRIVE<br>CHARLESTON, SC 29407 | [signature] | 11-18/99 | 90 | 11/16/99 | 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 | 12 31 |
| JAMES G. BOYD<br>3520 BOHICKET ROAD<br>JOHNS ISLAND, SC 29455 | [signature] | 11-18-99 | 10 | 11/16/99 | 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 | 12/31 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Under penalties of perjury, I declare that I have examined this election, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Signature of officer ▶ [signature] Title ▶ President Date ▶ 11/18/99

BY: JERRY ZUCKER

See Parts II and III on back.

ISA
STF FED4688F 1

Form **2553** (Rev 9-97)



JG-CL0148290

# EXHIBIT G39

The InterTech Group®

November 19, 1999

Ms. Donna M. Guerin
Jenkens & Gilchrist
225 W. Washington
Suite 2600
Chicago, Illinois 60606-3418

Dear Ms. Guerin:

Pursuant to your request, enclosed please find the documents which you sent to Mr. Zucker and Mr. Boyd for signature.

If you need anything else, please let me know.

Yours very truly,

*Charlotte Crosby*

Charlotte Crosby

CC/dbm

Enclosures

GOVERNMENT EXHIBIT 39

GOVERNMENT EXHIBIT 10d[illegible]

P.O. Box 5205, North Charleston, SC 29405 • (843) 744-5174 • Fax (843) 747-4092

# EXHIBIT G40

The InterTech Group®

November 22, 1999

Ms. Melinda Gipe
Wachovia
P. O. Box 700
Charleston, S. C. 29402

Dear Melinda:

Please accept this letter as your authority to transfer $3,150,000.00 from my line of credit to my Wachovia account, Account No.: 080157100, for value on November 22, 1999.

If you have any questions, please give me a call.

Yours very truly,

Jerry Zucker

JZ/cc

GOVERNMENT EXHIBIT 40

GOVERNMENT EXHIBIT 1027

P.O. Box 5205, North Charleston, SC 29405 • (843) 744-5174 • Fax (843) 747-4092



Z001311

**INSTRUCTIONS TO WIRE INTO YOUR**
**DEUTSCHE BANK ALEX. BROWN ACCOUNT:**

**ALLFIRST**
**BALTIMORE, MARYLAND**
**ABA 052-000-113**
**ACCOUNT # 068-8761-8-00**
**FOR FURTHER CREDIT TO ACCOUNT#: 222-10153-12**
**ACCOUNT TITLE: JZ Buckingham Investments LLC**

**Zucker, Jerry**

$3,150,000.00

Wire 11-23-99

OK

J. Z—— 11/23/99

Christy to wire









Z001316

# EXHIBIT G41

RCV BY:CONFIDENTIAL ;11-23-99 ; 5:58 ; 312 424 6019→ CONFIDENTIAL;# 1 IZB01357

Deutsche Banc Alex. Brown

Deutsche Bank

BT Alex. Brown Incorporated
The USG Building
222 West Adams Street, Suite 1900
Chicago IL 60606
Tel 312 424-6000

TO: Ray Knight

FAX #:

FROM: CARRIE YACKEE
DEUTSCHE BANC ALEX. BROWN

PHONE: (312) 424-6021 or (800) 201-7574

FAX: (312) 424-6019

DATE: 843-747-4091

PAGES TO FOLLOW:

COMMENTS:

GOVERNMENT EXHIBIT 41

PENGAD 800-631-6989

This information is based on sources believed to be reliable, but is not guaranteed as to accuracy and does not purport to be complete. This information is not intended to be used as the primary basis for making investment decisions. Any opinions expressed in this report are subject to change. This report is not to be construed as a representation or as an offer or the solicitation of an offer by us to sell or buy any security. Additionally, because we do not render legal or tax advice this report should not be regarded as such.

Deutsche Bank

Global Risk Strategy

# USD/JPY DIGITAL OPTIONS

*Indicative Terms and Conditions*

23 November 99

G S OWL CREEK INVESTMENTS LLC

222-10102-1-4

$ CALL

***Swap 1:***

**Counterparty A:** Deutsche Bank AG

**Counterparty B:** [ ]

**Trade Date:** 23 Nov. 1999

**Maturity Date:** 22 Dec. 1999

**Rate Determination Date:** 22 Dec. 1999 10:00 A.M New York

**Payout Delivery Date:** 27 Dec. 1999

**Payout Amount:** USD 42,000,000

**Initial Exchange:**

**Counterparty A Pays:** USD 0

**Counterparty B Pays:** USD 21,000,000

**Final Exchange:**

**If spot USD/JPY is trading at or above 105.87 as determined by the Calculation Agent:**

**Counterparty A Pays:** USD 42,000,000

**Counterparty B Pays:** USD 0

**Calculation Agent:** Deutsche Bank Global Foreign Exchange

***Swap 2:***

**Counterparty A:** Deutsche Bank AG

**Counterparty B:** [ ]

**Trade Date:** 23 Nov. 1999

**Maturity Date:** 22 Dec. 1999

**Rate Determination Date:** 22 Dec. 1999 10:00 A.M. New York

**Payout Delivery Date:** 27 Dec. 1999

**Payout Amount:** USD 39,375,000

**Initial Exchange:**

**Counterparty A Pays:** USD 19,950,000

**Counterparty B Pays:** USD 0

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

Global Risk Strategy Group +44171 545 1222; Reuters DBOL

Deutsche Bank

Global Risk Strategy

**Final Exchange:**

**If spot USD/JPY is trading at or above 105.89 as determined by the Calculation Agent:**

| | |
|---|---|
| **Counterparty A Pays:** | **0** |
| **Counterparty B Pays:** | **USD 39,375,000** |
| **Calculation Agent:** | **Deutsche Bank Global Foreign Exchange** |

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

**Global Risk Strategy Group +44171 545 1222; Reuters DBOL**

Deutsche Bank

Global Risk Strategy

# EUR/USD Digital Options

*Indicative Terms and Conditions*

23 November 99

TFD OBERLIN INVESTMENTS LLC

222-10103-1-3

$ CALL

***Swap 1:***

| | |
|---|---|
| **Counterparty A:** | Deutsche Bank AG |
| **Counterparty B:** | [ ] |
| **Trade Date:** | 23 Nov. 1999 |
| **Maturity Date:** | 22 Dec. 1999 |
| **Rate Determination Date:** | 22 Dec. 1999 10:00 A.M New York |
| **Payout Delivery Date:** | 27 Dec. 1999 |
| **Payout Amount:** | USD 6,000,000 |
| **Initial Exchange:** | |
| Counterparty A Pays: | USD 0 |
| Counterparty B Pays: | USD 3,000,000 |
| **Final Exchange:** | |

**If spot EUR/USD is trading at or below 1.0134 as determined by the Calculation Agent:**

| | |
|---|---|
| Counterparty A Pays: | USD 6,000,000 |
| Counterparty B Pays: | USD 0 |
| **Calculation Agent:** | Deutsche Bank Global Foreign Exchange |

***Swap 2:***

| | |
|---|---|
| **Counterparty A:** | Deutsche Bank AG |
| **Counterparty B:** | [ ] |
| **Trade Date:** | 23 Nov 1999 |
| **Maturity Date:** | 22 Dec. 1999 |
| **Rate Determination Date:** | 22 Dec. 1999 10:00 A.M. New York |
| **Payout Delivery Date:** | 27 Dec. 1999 |
| **Payout Amount:** | USD 5,625,000 |
| **Initial Exchange:** | |
| Counterparty A Pays: | USD 2,850,000 |
| Counterparty B Pays: | USD 0 |

This document does not constitute an offer or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

**Global Risk Strategy Group +44171 545 1222; Reuters DBOL**

Deutsche Bank | Global Risk Strategy

**Final Exchange:**

**If spot EUR/USD is trading at or below 1.0132 as determined by the Calculation Agent:**

| | |
|---|---|
| **Counterparty A Pays:** | **0** |
| **Counterparty B Pays:** | **USD 5,625,000** |
| **Calculation Agent:** | **Deutsche Bank Global Foreign Exchange** |

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

**Global Risk Strategy Group +44171 545 1222; Reuters DBOL**

# EXHIBIT G42

Deutsche Bank

Global Risk Strategy

# USD/JPY DIGITAL OPTIONS

*Indicative Terms and Conditions*

23 November 99

JZ BUCKINGHAM INVESTMENTS LLC

222-10153-1-2

$ CALL

***Swap 1:***

**Counterparty A:** Deutsche Bank AG

**Counterparty B:** [ ]

**Trade Date:** 23 Nov. 1999

**Maturity Date:** 22 Dec. 1999

**Rate Determination Date:** 22 Dec. 1999 10:00 A.M New York

**Payout Delivery Date:** 27 Dec. 1999

**Payout Amount:** USD 50,000,000

**Initial Exchange:**

**Counterparty A Pays:** USD 0

**Counterparty B Pays:** USD 25,000,000

**Final Exchange:**

**If spot USD/JPY is trading at or above 106.19 as determined by the Calculation Agent:**

**Counterparty A Pays:** USD 50,000,000

**Counterparty B Pays:** USD 0

**Calculation Agent:** Deutsche Bank Global Foreign Exchange

***Swap 2:***

**Counterparty A:** Deutsche Bank AG

**Counterparty B:** [ ]

**Trade Date:** 23 Nov. 1999

**Maturity Date:** 22 Dec. 1999

**Rate Determination Date:** 22 Dec. 1999 10:00 A.M. New York

**Payout Delivery Date:** 27 Dec. 1999

**Payout Amount:** USD 46,875,000

**Initial Exchange:**

**Counterparty A Pays:** USD 23,750,000

**Counterparty B Pays:** USD 0

GOVERNMENT EXHIBIT 42

PENGAD 800-631-6989

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

**Global Risk Strategy Group +44171 545 1222; Reuters DBOL**

Deutsche Bank

Global Risk Strategy

**Final Exchange:**

**If spot USD/JPY is trading at or above 106.21 as determined by the Calculation Agent:**

| | |
|---|---|
| **Counterparty A Pays:** | **0** |
| **Counterparty B Pays:** | **USD 46,875,000** |
| **Calculation Agent:** | **Deutsche Bank Global Foreign Exchange** |

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

**Global Risk Strategy Group +44171 545 1222; Reuters DBOL**



Produced by Plaintiff to United States on 8/31/2005

Deutsche Bank

Global Risk Strategy

# EUR/USD Digital Options

*Indicative Terms and Conditions*

23 November 99

J2 Buckingham Investments LLC

222-10153-1-2

$ CALL

***Swap 1:***

Counterparty A: Deutsche Bank AG

Counterparty B: [ ]

Trade Date: 23 Nov. 1999

Maturity Date: 22 Dec. 1999

Rate Determination Date: 22 Dec. 1999 10:00 A.M New York

Payout Delivery Date: 27 Dec. 1999

Payout Amount: USD 40,000,000

Initial Exchange:

Counterparty A Pays: USD 0

Counterparty B Pays: USD 20,000,000

Final Exchange:

If spot EUR/USD is trading at or below 1.0123 as determined by the Calculation Agent:

Counterparty A Pays: USD 40,000,000

Counterparty B Pays: USD 0

Calculation Agent: Deutsche Bank Global Foreign Exchange

***Swap 2:***

Counterparty A: Deutsche Bank AG

Counterparty B: [ ]

Trade Date: 23 Nov. 1999

Maturity Date: 22 Dec. 1999

Rate Determination Date: 22 Dec. 1999 10:00 A.M. New York

Payout Delivery Date: 27 Dec. 1999

Payout Amount: USD 37,500,000

Initial Exchange:

Counterparty A Pays: USD 19,000,000

Counterparty B Pays: USD 0

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

Global Risk Strategy Group +44171 545 1222; Reuters DBOL

Deutsche Bank

Global Risk Strategy

**Final Exchange:**

**If spot EUR/USD is trading at or below 1.0121 as determined by the Calculation Agent:**

| | |
|---|---|
| **Counterparty A Pays:** | **0** |
| **Counterparty B Pays:** | **USD 37,500,000** |
| **Calculation Agent:** | **Deutsche Bank Global Foreign Exchange** |

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

**Global Risk Strategy Group +44171 545 1222; Reuters DBOL**



Produced by Plaintiff to United States on 8/31/2005

Deutsche Bank

Global Risk Strategy

# EUR/USD Digital Options

*Indicative Terms and Conditions*

23 November 99

JGB BOCHICKET INVESTMENTS LLC

222-10154-1-1

$ CALL

**Swap 1:**

| | |
|---|---|
| Counterparty A: | Deutsche Bank AG |
| Counterparty B: | [ ] |
| Trade Date: | 23 Nov. 1999 |
| Maturity Date: | 22 Dec. 1999 |
| Rate Determination Date: | 22 Dec. 1999 10:00 A.M New York |
| Payout Delivery Date: | 27 Dec. 1999 |
| Payout Amount: | USD 10,000,000 |
| Initial Exchange: | |
| Counterparty A Pays: | USD 0 |
| Counterparty B Pays: | USD 5,000,000 |
| Final Exchange: | |

If spot EUR/USD is trading at or below 1.0123 as determined by the Calculation Agent:

| | |
|---|---|
| Counterparty A Pays: | USD 10,000,000 |
| Counterparty B Pays: | USD 0 |
| Calculation Agent: | Deutsche Bank Global Foreign Exchange |

**Swap 2:**

| | |
|---|---|
| Counterparty A: | Deutsche Bank AG |
| Counterparty B: | [ ] |
| Trade Date: | 23 Nov. 1999 |
| Maturity Date: | 22 Dec. 1999 |
| Rate Determination Date: | 22 Dec. 1999 10:00 A.M. New York |
| Payout Delivery Date: | 27 Dec. 1999 |
| Payout Amount: | USD 9,375,000 |
| Initial Exchange: | |
| Counterparty A Pays: | USD 4,750,000 |
| Counterparty B Pays: | USD 0 |

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

Global Risk Strategy Group +44171 545 1222; Reuters DBOL

Deutsche Bank | Global Risk Strategy

**Final Exchange:**

**If spot EUR/USD is trading at or below 1.0121 as determined by the Calculation Agent:**

| | |
|---|---|
| **Counterparty A Pays:** | **0** |
| **Counterparty B Pays:** | **USD 9,375,000** |
| **Calculation Agent:** | **Deutsche Bank Global Foreign Exchange** |

This document does not constitute an offer, or an invitation to offer, or a recommendation to enter into any transaction. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser or in a fiduciary capacity in respect of this proposed transaction or any other transaction with you unless otherwise expressly agreed by us in writing. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in the light of your own objectives and circumstances, including the possible risks and benefits of entering into such transaction. You should also consider seeking advice from your own advisers in making this assessment.

**Global Risk Strategy Group +44171 545 1222; Reuters DBOL**

** TOTAL PAGE.06 **





Produced by Plaintiff to United States on 8/31/2005

# EXHIBIT G43

# Jenkens & Gilchrist

A PROFESSIONAL CORPORATION

225 WEST WASHINGTON
SUITE 2600
CHICAGO, ILLINOIS 60606

(312) 425-3900
TELECOPIER (312) 425-3909

www.jenkens.com

AUSTIN, TEXAS
DALLAS, TEXAS
HOUSTON, TEXAS
LOS ANGELES, CALIFORNIA
SAN ANTONIO, TEXAS
WASHINGTON, D.C.

FROM THE DESK OF:
Donna M. Guerin
(312) 425-3939

| RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|
| Jerry Zucker | | 843.571.4647 | |

• MESSAGE •

Please execute the attached documents (note that the Assignment Agreement requires two signatures) and send me a copy by fax (312-425-3909) and mail or overnight the originals to me as soon as possible. Please contact me if you have any questions. Thank you.

GOVERNMENT EXHIBIT 1053

NOTICE OF CONFIDENTIALITY

GOVERNMENT EXHIBIT 43

The information contained in and transmitted with this facsimile is

1. SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE;
2. ATTORNEY WORK PRODUCT; OR
3. CONFIDENTIAL.

It is intended only for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, or use of or reliance upon the information contained in and transmitted with this facsimile by or to anyone other than the recipient designated above by the sender is *unauthorized* and *strictly prohibited*. If you have received this facsimile in error, please notify Jenkens & Gilchrist, a professional corporation by telephone at (312) 425-3900 immediately. Any facsimile erroneously transmitted to you should be immediately returned to the sender by U.S. Mail, or if authorization is granted by the sender, destroyed.

Time: [illegible] Date: November 26, 1999 Employee No.: Billing #: Total Pages (+ cover): 16

JZ Buckingham Investments LLC

November ___, 1999

Deutsche Banc Alex Brown
Attn: Mr. David Parse
222 West Adams Street
Suite 1900
Chicago, IL 60606

To Whom It May Concern:

Please use this letter as your authorization to wire transfer $____________ from my account JZ Buckingham Investments LLC, Account No. 222-10153-12, to the following entity:

Deutsche Bank AG NY Branch
ABA #: 026-003-780
For Acct Of: DBAB-NY
Acct #: 100450210032
Ref: FX Options

Thank you for your attention to this matter.

Sincerely,

Jerry Zucker, Member

CHICAGO 1 v 1, 4 



JG-CL0147877

**JZ Buckingham Investments LLC**

November 24, 1999

**VIA TELECOPY (312) 424-6019**

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JZ Buckingham Investments LLC
Account No. 222-10153-12

Dear Mr. Parse:

Please note from the attached assignment that the option positions in the above-referenced account have been assigned to JBJZ Partners, Account No. 222-10155-10 effective as of November 24, 1999. Please reflect such assignment in your records.

Thank you.

Very truly yours,

Jerry Zucker, Member

CHICAGO 15632 v 1, 45149.00001



JG-CL0147878

JZ Buckingham Investments LLC

November 24, 1999

VIA TELECOPY (312) 424-6019

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JZ Buckingham Investments LLC
Account No. 222-10153-12

Dear Mr. Parse:

This letter constitutes your authorization to transfer all remaining cash from the above-referenced account, JZ Buckingham Investments LLC to JBJZ Partners, Account No. 222-10155-10 effective immediately.

Thank you.

Very truly yours,

Jerry Zucker, Member

CHICAGO 169G2 v 1, 45149.00001

# ASSIGNMENT AGREEMENT

THIS AGREEMENT is made the 24th day of November, 1999

BETWEEN:

(1) JZ BUCKINGHAM INVESTMENTS LLC whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "Original Party").

(2) DEUTSCHE BANK AG acting through its ChicagoBranch with an office at 222 West Adams Street, Suite 1900, Chicago, Illinois 60606 (the "Counterparty").

(3) JBJZ PARTNERS whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "New Party").

WHEREAS:

(A) By the transaction(s) made by telephone and evidenced by exchanges of letter, Telex or SWIFT confirmations, brief details of which are set out in the Schedule to this Agreement (the "Original Transactions") the Counterparty and the Original Party assumed the rights and potential future contractual duties set out therein.

(B) It is the desire of the parties, that subject to the terms of this Agreement the New Party shall be assigned the financial position of the Original Party and shall assume the rights and potential future contractual duties equivalent to those of the Original Party under the Original Transactions (such resulting transactions shall be the "New Transactions").

IN CONSIDERATION OF THE COVENANTS, ASSUMPTIONS AND ACKNOWLEDGEMENTS RECORDED HEREIN THE PARTIES HEREBY AGREE THAT:

IT IS HEREBY AGREED as follows:

1. The parties hereto agree that with effect on and from November 24, 1999 (the "Effective Date");

1.1 The Original Party hereby assigns, transfers and conveys to the New Party the financial positions described as the Original Transactions set out in the Schedule to this Agreement.

1.2 The New Party undertakes to the Counterparty to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the Counterparty in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transactions.

1.3 As of the Effective Date the Counterparty undertakes to the New Party to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the New Party in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transaction(s).

2. Each party will bear its own costs and expenses (including without limitation, all legal costs and expenses) incurred by it in connection with the negotiation, preparation and execution of this Agreement.

CHICAGO 16902 v 1, 45449.00004

3. This Agreement may be executed in counterparts, each of which will be deemed an original.

4. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

IN WITNESS whereof the parties hereto have caused this Agreement to be duly executed the day and year first written.

SIGNED for and on behalf of
JZ BUCKINGHAM INVESTMENTS LLC

X ______________________________
Jerry Zucker, Member

SIGNED for and on behalf of
DEUTSCHE BANK AG acting
through its Chicago Branch

______________________________

SIGNED for and on behalf of
JBJZ PARTNERS

X ______________________________
Jerry Zucker, General Partner

CHICAGO 1/5932 v 1, 45149.00001

## SCHEDULE

## DESCRIPTION OF ORIGINAL TRANSACTIONS

**Original FX Digital Option Transactions:**

| Transaction | Trade Date | Termination Date | Premium Amount | Reference Number |
|---|---|---|---|---|
| 1. | 23 Nov 99 | 22 Dec 99 | $20,000,000 | ex27919A |
| 2. | 23 Nov 99 | 22 Dec 99 | $19,000,000 | ex27919A |

# Deutsche Bank AG New York Branch

24 November, 1999

**Foreign Exchange Digital Option Transaction**
**Our ref: ex27919A**

JZ BUCKINGHAM INVESTMENTS LLC
Care of David Parse
DB Alex Brown
222 West Adams Suite 1900
Chicago, IL 60606
312-424-6020

Deutsche Bank AG New York Branch
31 West 52nd Street
New York NY 10019

Telephone: 212-474-8000
Fax: 212-474-8550
Swift: DEUT US 33

Ladies and Gentlemen:

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on the Trade Date referred to below (the "Transaction"). The parties acknowledge and agree that B.T. Alex Brown has acted as introducing broker to Party A with respect to this Transaction.The Transaction consists of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii) and Section 4. Certain definitions and provisions which are applicable to more than one element of the Transaction are detailed in Section 1. The terms of the Transaction to which this Confirmation relates are as follows:

1. Section 1 – General Terms

| | |
|---|---|
| Notional Amount: | USD 40,000,000 |
| Trade Date: | 23 November 1999 |
| Termination Date: | 22 December 1999, subject to modification in accordance with the Following Business Day Convention. |
| Business Days: | In New York |
| Calculation Agent: | Party A |
| Currency Pair: | EUR/USD |

2. Section 1 – First Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | Zero |
| Party B Initial Exchange Amount: | USD 20,000,000 |
| Initial Exchange Date: | 26 November 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | USD 40,000,000 |
| Party B Final Exchange Amount: | Zero |
| First Range Level: | USD 1.0123 per EUR 1.00 |
| First Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(A) If the Spot Rate is, on the First Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the First Range Level (such event being a "First Digital Option Trigger Event"), then upon the occurrence of such First Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a First Digital OptionTrigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of the First Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the First Digital Option Trigger Event and provide details of the occurrence of such First Digital Option Trigger Event. A failure to give such notice shall not, however, prejudice the occurrence of the First Digital OptionTrigger Event.

3. Section 1 – Second Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | USD 19,000,000 |
| Party B Initial Exchange Amount: | Zero |
| Initial Exchange Date: | 26 November 1999, subject to adjustment in accordance with the Following Business Day Convention |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | Zero |
| Party B Final Exchange Amount: | USD 37,500,000 |
| Second Range Level: | USD 1.0121 per EUR 1.00 |
| Second Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the Spot Rate is, on the Second Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the Second Range Level (such event being a "Second Digital Option Trigger Event"), then upon the occurrence of such Second Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a Second Digital Option Trigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of a Second Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the Second Digital Option Trigger Event and provide details of the occurrence of such Second Digital Option Trigger Event. A failure to give such notice shall not however prejudice the occurrence of the Second Digital Option Trigger Event.

Section 2 - Other Provisions

(i) For the purposes of this Transaction only, the following provision shall apply:

"Subparagraph (ii) of Section 2 (c) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.

(ii) Offices:

(a) The Office of Party A for the Transaction is New York; and
(b) The Office of Party B for the Transaction is Delaware.

3. Representations:

Each party represents to the other party as of the date that it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(ii) Assessment and Understanding. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts the terms and conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of the Transaction.

(iii) Status of Parties. The other party is not acting as a fiduciary for or adviser to it in respect of this Transaction.

4. ISDA Agreement:

If you and we are parties to either an ISDA Interest Rate and Currency Exchange Agreement (for which purposes this Transaction shall constitute a "Swap Transaction") or an ISDA Master Agreement (in each case an "Agreement") then this Confirmation supplements forms part of and is subject to such Agreement. If you and we are not yet parties to an Agreement then this Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form") with such modifications as you and we will in good faith agree. Upon execution by Party A and Party B of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation. Until we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation) shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement on the Trade Date of the first such Transaction between us in such form with the Schedule thereto (i) specifying only that (a) the governing law is New York law and (b) the Termination Currency is U.S. Dollars, (ii) incorporating the addition to the definition of "Indemnifiable Tax" contained in (page 48 of) the ISDA "Users Guide to the 1992 ISDA Master Agreements" and (iii) incorporating any other modifications to the ISDA form specified below.

5. Definitions:

The definitions and provisions contained in the 1991 ISDA Definitions (as amended by the 1997 Supplement) as published by the International Swaps and Derivatives Association, Inc (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions (the "FX Definitions") as published by the International Swaps and Derivatives Association, Inc., the Emerging Markets Traders Association and The Foreign Exchange Committee (the "1998 Definitions", and together with the Swap Definitions, the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1998 Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours faithfully,
for and on behalf of
Deutsche Bank AG, New York

By: [signature]
Name: [signature]
Title: AVP

By: [signature]
Name: Penny Parker
Title: Director

Confirmed as of the date first above written:
JZ BUCKINGHAM INVESTMENTS LLC

By: X
Name:
Authorised Signatory

By:
Name:
Authorised Signatory

For any query relating to this Confirmation please contact: 212-469-4033



JG-CL0147885

# ASSIGNMENT AGREEMENT

THIS AGREEMENT is made the 24th day of November, 1999

BETWEEN:

(1) JZ BUCKINGHAM INVESTMENTS LLC whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "Original Party").

(2) DEUTSCHE BANK AG acting through its ChicagoBranch with an office at 222 West Adams Street, Suite 1900, Chicago, Illinois 60606 (the "Counterparty").

(3) JBJZ PARTNERS whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "New Party").

WHEREAS:

(A) By the transaction(s) made by telephone and evidenced by exchanges of letter, Telex or SWIFT confirmations, brief details of which are set out in the Schedule to this Agreement (the "Original Transactions") the Counterparty and the Original Party assumed the rights and potential future contractual duties set out therein.

(B) It is the desire of the parties, that subject to the terms of this Agreement the New Party shall be assigned the financial position of the Original Party and shall assume the rights and potential future contractual duties equivalent to those of the Original Party under the Original Transactions (such resulting transactions shall be the "New Transactions").

IN CONSIDERATION OF THE COVENANTS, ASSUMPTIONS AND ACKNOWLEDGEMENTS RECORDED HEREIN THE PARTIES HEREBY AGREE THAT:

IT IS HEREBY AGREED as follows:

1. The parties hereto agree that with effect on and from November 24, 1999 (the "Effective Date");

1.1 The Original Party hereby assigns, transfers and conveys to the New Party the financial positions described as the Original Transactions set out in the Schedule to this Agreement.

1.2 The New Party undertakes to the Counterparty to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the Counterparty in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transactions.

1.3 As of the Effective Date the Counterparty undertakes to the New Party to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the New Party in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transaction(s).

2. Each party will bear its own costs and expenses (including without limitation, all legal costs and expenses) incurred by it in connection with the negotiation, preparation and execution of this Agreement.

3. This Agreement may be executed in counterparts, each of which will be deemed an original.

4. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

CHICAGO 16632 v 1, 45149.00009

IN WITNESS whereof the parties hereto have caused this Agreement to be duly executed the day and year first written.

SIGNED for and on behalf of
JZ BUCKINGHAM INVESTMENTS LLC

X ______________________________
Jerry Zucker, Member

SIGNED for and on behalf of
DEUTSCHE BANK AG acting
through its Chicago Branch

______________________________

SIGNED for and on behalf of
JBJZ PARTNERS

X ______________________________
Jerry Zucker, General Partner

**SCHEDULE**

**DESCRIPTION OF ORIGINAL TRANSACTIONS**

**Original FX Digital Option Transactions:**

| Transaction | Trade Date | Termination Date | Premium Amount | Reference Number |
|---|---|---|---|---|
| 1. | 23 Nov 99 | 22 Dec 99 | $25,000,000 | ex27920A |
| 2. | 23 Nov 99 | 22 Dec 99 | $23,750,000 | ex27920A |

# Deutsche Bank AG New York Branch

24 November, 1999

**Foreign Exchange Digital Option Transaction**
**Our ref: ex27920A**

JZ BUCKINGHAM INVESTMENTS LLC
Care of David Parse
DB Alex Brown
222 West Adams Suite 1900
Chicago, IL 60606
312-424-6020

Deutsche Bank AG New York Branch
31 West 52nd Street
New York NY 10019

Telephone: 212-474-8000
Fax: 212-474-8560
Swift: DEUT US 33

Ladies and Gentlemen:

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on the Trade Date referred to below (the "Transaction"). The parties acknowledge and agree that B.T. Alex Brown has acted as introducing broker to Party A with respect to this Transaction. The Transaction consists of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii) and Section 4. Certain definitions and provisions which are applicable to more than one element of the Transaction are detailed in Section 1. The terms of the Transaction to which this Confirmation relates are as follows:

1. **Section 1 – General Terms**

| | |
|---|---|
| Notional Amount: | USD 50,000,000 |
| Trade Date: | 23 November 1999 |
| Termination Date: | 22 December 1999, subject to modification in accordance with the Following Business Day Convention. |
| Business Days: | In New York |
| Calculation Agent: | Party A |
| Currency Pair: | USD/JPY |

2. **Section 1 – First Digital Option Transaction**

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | Zero |
| Party B Initial Exchange Amount: | USD 25,000,000 |
| Initial Exchange Date: | 26 November 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | USD 50,000,000 |
| Party B Final Exchange Amount: | Zero |
| First Range Level: | JPY 106.19 per USD 1.00 |
| First Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(A) If the Spot Rate is, on the First Rate Determination Date at 10:00 a.m. local time in New York, greater than or equal to the First Range Level (such event being a "First Digital Option Trigger Event"), then upon the occurrence of such First Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a First Digital OptionTrigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of the First Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the First Digital Option Trigger Event and provide details of the occurrence of such First Digital Option Trigger Event. A failure to give such notice shall not, however, prejudice the occurrence of the First Digital OptionTrigger Event.

3. Section 1 – Second Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | USD 23,750,000 |
| Party B Initial Exchange Amount: | Zero |
| Initial Exchange Date: | 26 November 1999, subject to adjustment in accordance with the Following Business Day Convention |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | Zero |
| Party B Final Exchange Amount: | USD 48,875,000 |
| Second Range Level: | JPY 106.21 per USD 1.00 |
| Second Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the Spot Rate is, on the Second Rate Determination Date at 10:00 a.m. local time in New York, greater than or equal to the Second Range Level (such event being a "Second Digital Option Trigger Event"), then upon the occurrence of such Second Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a Second Digital Option Trigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of a Second Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the Second Digital Option Trigger Event and provide details of the occurrence of such Second Digital Option Trigger Event. A failure to give such notice shall not however prejudice the occurrence of the Second Digital Option Trigger Event.

Section 2 - Other Provisions

(i) For the purposes of this Transaction only, the following provision shall apply:

"Subparagraph (ii) of Section 2 (c) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.

(ii) Offices:

(a) The Office of Party A for the Transaction is New York; and
(b) The Office of Party B for the Transaction is Delaware.

3. Representations:

Each party represents to the other party as of the date that it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(ii) Assessment and Understanding. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts the terms and conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of the Transaction.

(iii) Status of Parties. The other party is not acting as a fiduciary for or adviser to it in respect of this Transaction.

4. ISDA Agreement:

If you and we are parties to either an ISDA Interest Rate and Currency Exchange Agreement (for which purposes this Transaction shall constitute a "Swap Transaction") or an ISDA Master Agreement (in each case an "Agreement") then this Confirmation supplements forms part of and is subject to such Agreement. If you and we are not yet parties to an Agreement then this Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form") with such modifications as you and we will in good faith agree. Upon execution by Party A and Party B of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation. Until we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation) shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement on the Trade Date of the first such Transaction between us in such form with the Schedule thereto (i) specifying only that (a) the governing law is New York law and (b) the Termination Currency is U.S., Dollars, (ii) incorporating the addition to the definition of "Indemnifiable Tax" contained in (page 48 of) the ISDA "Users Guide to the 1992 ISDA Master Agreements" and (iii) incorporating any other modifications to the ISDA form specified below.

5. Definitions:

The definitions and provisions contained in the 1991 ISDA Definitions (as amended by the 1997 Supplement) as published by the International Swaps and Derivatives Association, Inc (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions (the "FX Definitions") as published by the International Swaps and Derivatives Association, Inc., the Emerging Markets Traders Association and The Foreign Exchange Committee (the "1998 Definitions", and together with the Swap Definitions, the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1998 Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours faithfully,
for and on behalf of
Deutsche Bank AG, New York

| | |
|---|---|
| By: [signature] | By: [signature] |
| Name: | Name: PERRY PORTER |
| Title: | Title: DIRECTOR |

Confirmed as of the date first above written:
JZ BUCKINGHAM INVESTMENTS LLC

| | |
|---|---|
| By: X | By: |
| Name: | Name: |
| Authorised Signatory | Authorised Signatory |

For any query relating to this Confirmation please contact: 212-469-4033



JG-CL0147891

# EXHIBIT G44

The InfoTech Group

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

NAME: Donna Guerin

COMPANY: Jenkens & Gilchrist

FAX NO.:

FROM: Charlotte Crosby

DATE: 11-30-99

I am sending from a Xerox 7020 fax machine. IT IS AUTOMATIC. If you are not receiving the pages, or have any problem during transmission or receiving, please contact Charlotte Crosby at (843)744-5174

Number of Pages (including cover): 26

Per instruction of Ray Knight.

## CONFIDENTIALITY CAUTION:

This message is intended only for the use of the individual or entity to which it is addressed and contains information that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address at our cost.

GOVERNMENT EXHIBIT 44

P.O. Box 5205, North Charleston, SC 29405 • (843) 744-5174 • Fax (843) 747-4092

GOVERNMENT EXHIBIT 1061

The InfoTech Group®

November 30, 1999

Ms. Donna M. Guerin
Jenkens & Gilchrist
225 West Washington
Suite 260
Chicago, Illinois 60606

Re: JBJZ Partners

Dear Ms. Guerin:

Enclosed please find the executed documents which were faxed to Mr. Zucker and Mr. Boyd on November 26, 1999 regarding the above referenced matter.

If you need anything else, please let me know.

Yours very truly,

Charlotte Crosby

Charlotte Crosby

CC/dbm

Enclosures

P.O. Box 5205, North Charleston, SC 29405 • (843) 744-5174 • Fax (843) 747-4092

# ASSIGNMENT AGREEMENT

THIS AGREEMENT is made the 24th day of November, 1999

BETWEEN:

(1) JGB BOHICKET INVESTMENTS LLC whose office is at 3870 Bohicket Road, Johns Island, South Carolina 29455 (the "Original Party").

(2) DEUTSCHE BANK AG acting through its Chicago Branch with an office at 233 West Adams Street, Suite 1900, Chicago, Illinois 60606 (the "Counterparty").

(3) JBJZ PARTNERS whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "New Party").

WHEREAS:

(A) By the transaction(s) made by telephone and evidenced by exchange of letter, Telex or SWIFT confirmations, brief details of which are set out in the Schedule to this Agreement (the "Original Transactions") the Counterparty and the Original Party assumed the rights and potential future contractual duties set out therein.

(B) It is the desire of the parties, that subject to the terms of this Agreement the New Party shall be assigned the financial position of the Original Party and shall assume the rights and potential future contractual duties equivalent to those of the Original Party under the Original Transactions (such resulting transactions shall be the "New Transactions").

IN CONSIDERATION OF THE COVENANTS, ASSUMPTIONS AND ACKNOWLEDGEMENTS RECORDED HEREIN THE PARTIES HEREBY AGREE THAT:

IT IS HEREBY AGREED as follows:

1. The parties hereto agree that with effect on and from November 24, 1999 (the "Effective Date"):

1.1 The Original Party hereby assigns, transfers and conveys to the New Party the financial positions described as the Original Transactions set out in the Schedule to this Agreement.

1.2 The New Party undertakes to the Counterparty to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the Counterparty in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transactions.

1.3 As of the Effective Date the Counterparty undertakes to the New Party to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the New Party in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transaction(s).

2. Each party will bear its own costs and expenses (including without limitation, all legal costs and expenses) incurred by it in connection with the negotiation, preparation and execution of this Agreement.

3. This Agreement may be executed in counterparts, each of which will be deemed an original.

4. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

CHICAGO [illegible]

**JGB Bohlckat Investments LLC**

November 24, 1999

**<u>VIA TELECOPY (312) 424-6019</u>**

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JGB Bohlckat Investments LLC
<u>Account No. 222-10154-11</u>

Dear Mr. Parse:

This letter constitutes your authorization to transfer all remaining cash from the above-referenced account, JGB Bohlckat Investments LLC to JBJZ Partners, Account No. 222-10155-10 effective immediately.

Thank you.

Very truly yours,

James G. Boyd, Member

[illegible]

JGB Bohicket Investments LLC

November 24, 1999

VIA TELECOPY (312) 424-6019

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JGB Bohicket Investments LLC
Account No. 222-10154-11

Dear Mr. Parse:

Please note from the attached assignment that the option positions in the above-referenced account have been assigned to JBJZ Partners, Account No. 222-10155-10 effective as of November 24, 1999. Please reflect such assignment in your records.

Thank you.

Very truly yours,

James G. Boyd, Member

CHICAGO 11902 v 1, 44316.00009

**JGB Boldklot Investments LLC**

November ___, 1999

Deutsche Banc Alex Brown
Attn: Mr. David Parse
222 West Adams Street
Suite 1900
Chicago, IL 60606

To Whom It May Concern:

Please use this letter as your authorization to wire transfer $______________ from my account JGB Boldklot Investments LLC, Account No. 222-10154-11, to the following entity:

Deutsche Bank AG NY Branch
ABA #: 026-003-780
For Acct Of: DBAB-NY
Acct #: 100450210032
Ref: FX Options

Thank you for your attention to this matter.

Sincerely,

James G. Boyd, Member

(i) **Assessment and Understanding.** It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts the terms and conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of the Transaction.

(iii) **Status of Parties.** The other party is not acting as a fiduciary for or adviser to it in respect of this Transaction.

4. **ISDA Agreement:**

If you and we are parties to either an ISDA Interest Rate and Currency Exchange Agreement (for which purposes this Transaction shall constitute a "Swap Transaction") or an ISDA Master Agreement (in each case an "Agreement") then this Confirmation supplements forms part of and is subject to such Agreement. If you and we are not yet parties to an Agreement then this Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form") with such modifications as you and we will in good faith agree. Upon execution by Party A and Party B of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation. Until we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation) shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement on the Trade Date of the first such Transaction between us in such form with the Schedule thereto (i) specifying only that (a) the governing law is New York law and (b) the Termination Currency is U.S. Dollars, (ii) incorporating the addition to the definition of "Indemnifiable Tax" contained in (page 48 of) the ISDA "Users Guide to the 1992 ISDA Master Agreements" and (iii) incorporating any other modifications to the ISDA form specified below.

5. **Definitions:**

The definitions and provisions contained in the 1991 ISDA Definitions (as amended by the 1997 Supplement) as published by the International Swaps and Derivatives Association, Inc (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions (the "FX Definitions") as published by the International Swaps and Derivatives Association, Inc., the Emerging Markets Traders Association and The Foreign Exchange Committee (the "1998 Definitions", and together with the Swap Definitions, the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1998 Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours faithfully,
for and on behalf of
Deutsche Bank AG, New York

By: [signature]
Name:
Title:

By: [signature]
Name: [handwritten]
Title: Director

Confirmed as of the date first above written:
JGD [illegible] INVESTMENTS LLC

By: [signature]
Name:
Authorized Signatory

By:
Name:
Authorized Signatory

For any query relating to this Confirmation please contact: 212-469-4033

TOTAL P.10



JG-CL0147937

2. Section 1 – Second Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | USD 4,730,000 |
| Party B Initial Exchange Amount: | Zero |
| Initial Exchange Date: | 26 November 1999, subject to adjustment in accordance with the Following Business Day Convention |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | Zero |
| Party B Final Exchange Amount: | USD 9,273,000 |
| Second Range Level: | USD 1.0121 per EUR 1.00 |
| Second Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the Spot Rate is, on the Second Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the Second Range Level (such event being a "Second Digital Option Trigger Event"), then upon the occurrence of such Second Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a Second Digital Option Trigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of a Second Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the Second Digital Option Trigger Event and provide details of the occurrence of such Second Digital Option Trigger Event. A failure to give such notice shall not however prejudice the occurrence of the Second Digital Option Trigger Event.

Section 2 - Other Provisions

(i) For the purposes of this Transaction only, the following provision shall apply:

"Subparagraph (ii) of Section 2 (a) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.

(ii) Offices:

(a) The Office of Party A for the Transaction is New York; and
(b) The Office of Party B for the Transaction is Delaware.

3. Representations:

Each party represents to the other party as of the date that it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

# Deutsche Bank AG New York Branch

24 November, 1999

Foreign Exchange Digital Option Transaction
Our ref: [illegible]7821A

JGB [illegible] INVESTMENTS LLC
Care of David Parse
BD Alex Brown
[illegible] West Adams Suite 1800
Chicago, IL 60606
312-[illegible]-[illegible]

Deutsche Bank AG New York Branch
31 West 52nd Street
New York NY 10019

Telephone: 212-474-[illegible]
Fax: 212-474-[illegible]
Swift: DEUT US 33

Ladies and Gentlemen:

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on the Trade Date referred to below (the "Transaction"). The parties acknowledge and agree that B.T. Alex Brown has acted as introducing broker to Party A with respect to this Transaction. The Transaction consists of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii) and Section 4. Certain definitions and provisions which are applicable to more than one element of the Transaction are detailed in Section 1. The terms of the Transaction to which this Confirmation relates are as follows:

1. Section 1 – General Terms

| | |
|---|---|
| Notional Amount: | USD 10,000,000 |
| Trade Date: | 23 November 1999 |
| Termination Date: | 22 December 1999, subject to modification in accordance with the Following Business Day Convention. |
| Business Days: | In New York |
| Calculation Agent: | Party A |
| Currency Pair: | EUR/USD |

2. Section 2 – First Digital Option Transaction

(i) [illegible]



JG-CL0147875

# SCHEDULE

## DESCRIPTION OF ORIGINAL TRANSACTIONS

**Original FX Digital Option Transactions:**

| Transaction | Trade Date | Termination Date | Premium Amount | Reference Number |
|---|---|---|---|---|
| 1. | 23 Nov 99 | 22 Dec 99 | $5,000,000 | cx27921A |
| 2. | 23 Nov 99 | 22 Dec 99 | $4,750,000 | cx27921A |

CHICAGO [illegible]

IN WITNESS whereof the parties hereto have caused this Agreement to be duly executed the day and year first written.

SIGNED for and on behalf of
JGB BO[illegible] INVESTMENTS LLC

X

Jimmy G. Boyd, Member

SIGNED for and on behalf of
DEUTSCHE BANK AG acting
through its Chicago Branch

SIGNED for and on behalf of
JBJZ PARTNERS

X

Jimmy G. Boyd, General Partner

JZ Buckingham Investments LLC

November ___, 1999

Deutsche Banc Alex Brown
Attn: Mr. David Parse
222 West Adams Street
Suite 1900
Chicago, IL 60606

To Whom It May Concern:

Please use this letter as your authorization to wire transfer $____________ from my account JZ Buckingham Investments LLC, Account No. 222-10153-12, to the following entity:

Deutsche Bank AG NY Branch
ABA #: 026-003-780
For Acct Of: DBAB-NY
Acct #: 100450210032
Ref: FX Options

Thank you for your attention to this matter,

Sincerely,

Jerry Zucker, Member

CHICAGO 1[illegible]



JG-CL0147919

# JZ Buckingham Investments LLC

November 24, 1999

VIA TELECOPY (312) 424-6019

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JZ Buckingham Investments LLC
Account No. 222-10153-12

Dear Mr. Parse:

Please note from the attached assignment that the option positions in the above-referenced account have been assigned to JBJZ Partners, Account No. 222-10155-10 effective as of November 24, 1999. Please reflect such assignment in your records.

Thank you.

Very truly yours,

Jerry Zucker, Member

CHICAGO 11102 v 1, 41518.00001



JG-CL0147903

# JZ Buckingham Investments LLC

November 24, 1999

VIA TELECOPY (312) 424-6019

Mr. David Parse
Deutsche Banc Alex. Brown
222 West Adams Street
Suite 1900
Chicago, IL 60606

Re: JZ Buckingham Investments LLC
Account No. 222-10153-12

Dear Mr. Parse:

This letter constitutes your authorization to transfer all remaining cash from the above-referenced account, JZ Buckingham Investments LLC to JBJZ Partners, Account No. 222-10155-10 effective immediately.

Thank you.

Very truly yours,

Jerry Zucker, Member

CHICAGO 16102 v 1, 40168.00001

# ASSIGNMENT AGREEMENT

**THIS AGREEMENT** is made the 24th day of November, 1999

**BETWEEN:**

(1) **JZ BUCKINGHAM INVESTMENTS LLC** whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "**Original Party**").

(2) **DEUTSCHE BANK AG** acting through its Chicago Branch with an office at 222 West Adams Street, Suite 1900, Chicago, Illinois 60606 (the "**Counterparty**").

(3) **JBJZ PARTNERS** whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "**New Party**").

**WHEREAS:**

(A) By the transaction(s) made by telephone and evidenced by exchanges of letter, Telex or SWIFT confirmations, brief details of which are set out in the Schedule to this Agreement (the "Original Transactions") the Counterparty and the Original Party assumed the rights and potential future contractual duties set out therein.

(B) It is the desire of the parties, that subject to the terms of this Agreement the New Party shall be assigned the financial position of the Original Party and shall assume the rights and potential future contractual duties equivalent to those of the Original Party under the Original Transactions (such resulting transactions shall be the "New Transactions").

IN CONSIDERATION OF THE COVENANTS, ASSUMPTIONS AND ACKNOWLEDGEMENTS RECORDED HEREIN THE PARTIES HEREBY AGREE THAT:

**IT IS HEREBY AGREED** as follows:

1. The parties hereto agree that with effect on and from November 24, 1999 (the "Effective Date"):

1.1 The Original Party hereby assigns, transfers and conveys to the New Party the financial positions described as the Original Transactions set out in the Schedule to this Agreement.

1.2 The New Party undertakes to the Counterparty to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the Counterparty in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transactions.

1.3 As of the Effective Date the Counterparty undertakes to the New Party to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the New Party in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transaction(s).

2. Each party will bear its own costs and expenses (including without limitation, all legal costs and expenses) incurred by it in connection with the negotiation, preparation and execution of this Agreement.

3. This Agreement may be executed in counterparts, each of which will be deemed an original.

4. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

IN WITNESS whereof the parties hereto have caused this Agreement to be duly executed the day and year first written.

SIGNED for and on behalf of
JZ BUCKINGHAM INVESTMENTS LLC

X [signature]
Jerry Zucker, Member

SIGNED for and on behalf of
DEUTSCHE BANK AG acting
through its Chicago Branch

____________________________

SIGNED for and on behalf of
JBJZ PARTNERS

X [signature]
Jerry Zucker, General Partner

CHICAGO 18102 v 1, 46369.00001

# SCHEDULE

## DESCRIPTION OF ORIGINAL TRANSACTIONS

Original FX Digital Option Transactions:

| Transaction | Trade Date | Termination Date | Premium Amount | Reference Number |
|---|---|---|---|---|
| 1. | 23 Nov 99 | 22 Dec 99 | $20,000,000 | ox27919A |
| 2. | 23 Nov 99 | 22 Dec 99 | $19,000,000 | ox27919A |

# Deutsche Bank AG New York Branch

24 November, 1999

Foreign Exchange Digital Option Transaction
Our ref: c0279192A

JZ BUCKINGHAM INVESTMENTS LLC
Care of David Parse
DB Alex Brown
222 West Adams Suite 1800
Chicago, IL 60606
312-424-6020

Deutsche Bank AG New York Branch
31 West 52nd Street
New York NY 10019

Telephone: 212-474-8000
Fax: 212-474-8580
Swift: DEUT US 33

Ladies and Gentlemen:

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on the Trade Date referred to below (the "Transaction"). The parties acknowledge and agree that B.T. Alex Brown has acted as introducing broker to Party A with respect to this Transaction.The Transaction consists of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii) and Section 4. Certain definitions and provisions which are applicable to more than one element of the Transaction are detailed in Section 1. The terms of the Transaction to which this Confirmation relates are as follows:

1. Section 1 – General Terms

| | |
|---|---|
| Notional Amount: | USD 40,000,000 |
| Trade Date: | 23 November 1999 |
| Termination Date: | 22 December 1999, subject to modification in accordance with the Following Business Day Convention. |
| Business Days: | In New York |
| Calculation Agent: | Party A |
| Currency Pair: | EUR/USD |

2. Section 1 – First Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | Zero |
| Party B Initial Exchange Amount: | USD 20,000,000 |
| Initial Exchange Date: | 26 November 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | USD 40,000,000 |
| Party B Final Exchange Amount: | Zero |
| First Range Level: | USD 1.0123 per EUR 1.00 |
| First Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(A) If the Spot Rate is, on the First Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the First Range Level (such event being a "First Digital Option Trigger Event"), then upon the occurrence of such First Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a First Digital OptionTrigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of the First Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the First Digital Option Trigger Event and provide details of the occurrence of such First Digital Option Trigger Event. A failure to give such notice shall not, however, prejudice the occurrence of the First Digital OptionTrigger Event.

3. Section 1 – Second Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | USD 18,000,000 |
| Party B Initial Exchange Amount: | Zero |
| Initial Exchange Date: | 28 November 1999, subject to adjustment in accordance with the Following Business Day Convention |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | Zero |
| Party B Final Exchange Amount: | USD 37,500,000 |
| Second Range Level: | USD 1.0121 per EUR 1.00 |
| Second Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the Spot Rate is, on the Second Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the Second Range Level (such event being a "Second Digital Option Trigger Event"), then upon the occurrence of such Second Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a Second Digital Option Trigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of a Second Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the Second Digital Option Trigger Event and provide details of the occurrence of such Second Digital Option Trigger Event. A failure to give such notice shall not however prejudice the occurrence of the Second Digital Option Trigger Event.

Section 2 - Other Provisions

(i) For the purposes of this Transaction only, the following provision shall apply:

"Subparagraph (ii) of Section 2 (c) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.

(ii) Offices:

(a) The Office of Party A for the Transaction is New York; and
(b) The Office of Party B for the Transaction is Delaware.

3. Representations:

Each party represents to the other party as of the date that it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(ii) Assessment and Understanding. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts the terms and conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of the Transaction.

(iii) Status of Parties. The other party is not acting as a fiduciary for or adviser to it in respect of this Transaction.

4. ISDA Agreement:

If you and we are parties to either an ISDA Interest Rate and Currency Exchange Agreement (for which purposes this Transaction shall constitute a "Swap Transaction") or an ISDA Master Agreement (in each case an "Agreement") then this Confirmation supplements forms part of and is subject to such Agreement. If you and we are not yet parties to an Agreement then this Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form") with such modifications as you and we will in good faith agree. Upon execution by Party A and Party B of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation. Until we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation) shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement on the Trade Date of the first such Transaction between us in such form with the Schedule thereto (i) specifying only that (a) the governing law is New York law and (b) the Termination Currency is U.S. Dollars, (ii) incorporating the addition to the definition of "Indemnifiable Tax" contained in (page 48 of) the ISDA "User's Guide to the 1992 ISDA Master Agreements" and (iii) incorporating any other modifications to the ISDA form specified below.

5. Definitions:

The definitions and provisions contained in the 1991 ISDA Definitions (as amended by the 1997 Supplement) as published by the International Swaps and Derivatives Association, Inc (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions (the "FX Definitions") as published by the International Swaps and Derivatives Association, Inc., the Emerging Markets Traders Association and The Foreign Exchange Committee (the "1998 Definitions", and together with the Swap Definitions, the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1998 Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours faithfully,
for and on behalf of
Deutsche Bank AG, New York

By: [signature]
Name: [signature]
Title: AVP

By: [signature]
Name: Peter Parker
Title: Director

Confirmed as of the date first above written:
JZ BUCKINGHAM INVESTMENTS LLC

By: [signature]
Name:
Authorised Signatory

By:
Name:
Authorised Signatory

For any query relating to this Confirmation please contact: 212-469-4033

# ASSIGNMENT AGREEMENT

**THIS AGREEMENT** is made the 24th day of November, 1999

**BETWEEN:**

(1) **JZ BUCKINGHAM INVESTMENTS LLC** whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "Original Party").

(2) **DEUTSCHE BANK AG** acting through its ChicagoBranch with an office at 222 West Adams Street, Suite 1900, Chicago, Illinois 60606 (the "Counterparty").

(3) **JBJZ PARTNERS** whose office is at 16 Buckingham Drive, Charleston, South Carolina 29407 (the "New Party").

**WHEREAS:**

(A) By the transaction(s) made by telephone and evidenced by exchanges of letter, Telex or SWIFT confirmations, brief details of which are set out in the Schedule to this Agreement (the "Original Transactions") the Counterparty and the Original Party assumed the rights and potential future contractual duties set out therein.

(B) It is the desire of the parties, that subject to the terms of this Agreement the New Party shall be assigned the financial position of the Original Party and shall assume the rights and potential future contractual duties equivalent to those of the Original Party under the Original Transactions (such resulting transactions shall be the "New Transactions").

IN CONSIDERATION OF THE COVENANTS, ASSUMPTIONS AND ACKNOWLEDGEMENTS RECORDED HEREIN THE PARTIES HEREBY AGREE THAT:

IT IS HEREBY AGREED as follows:

1. The parties hereto agree that with effect on and from November 24, 1999 (the "Effective Date");

1.1 The Original Party hereby assigns, transfers and conveys to the New Party the financial positions described as the Original Transactions set out in the Schedule to this Agreement.

1.2 The New Party undertakes to the Counterparty to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the Counterparty in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transactions.

1.3 As of the Effective Date the Counterparty undertakes to the New Party to perform the potential future contractual duties and be bound by the terms of the New Transaction(s) in favor of the New Party in every way as if the New Party were and had been a party to the Original Transaction(s) as the Original Party on identical terms to the terms of the Original Transaction(s).

2. Each party will bear its own costs and expenses (including without limitation, all legal costs and expenses) incurred by it in connection with the negotiation, preparation and execution of this Agreement.

3. This Agreement may be executed in counterparts, each of which will be deemed an original.

4. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

CHICAGO 11902 v 1, 40141.00000



JG-CL0147908

IN WITNESS whereof the parties hereto have caused this Agreement to be duly executed the day and year first written.

SIGNED for and on behalf of
JZ BUCKINGHAM INVESTMENTS LLC

Jerry Zucker, Member

SIGNED for and on behalf of
DEUTSCHE BANK AG acting
through its Chicago Branch

SIGNED for and on behalf of
JBJZ PARTNERS

Jerry Zucker, General Partner

CHICAGO 1ESCS v 1, 4E4O/00021

## SCHEDULE

## DESCRIPTION OF ORIGINAL TRANSACTIONS

Original FX Digital Option Transactions:

| Transaction | Trade Date | Termination Date | Premium Amount | Reference Number |
|---|---|---|---|---|
| 1. | 23 Nov 99 | 22 Dec 99 | $25,000,000 | ex27920A |
| 2. | 23 Nov 99 | 22 Dec 99 | $23,750,000 | ex27920A |

CHICAGO 14902 v 1, 41348.00001

# Deutsche Bank AG New York Branch

24 November, 1999

**Foreign Exchange Digital Option Transaction**
**Our ref: ex27920A**

JZ BUCKINGHAM INVESTMENTS LLC
Care of David Parse
DB Alex Brown
222 West Adams Suite 1500
Chicago, IL 60606
312-424-6323

Deutsche Bank AG New York Branch
31 West 52nd Street
New York NY 10019

Telephone: 212-474-8000
Fax: 212-474-8350
Swift: DEUT US 33

Ladies and Gentlemen:

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on the Trade Date referred to below (the "Transaction"). The parties acknowledge and agree that B.T. Alex Brown has acted as introducing broker to Party A with respect to this Transaction. The Transaction consists of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii) and Section 4. Certain definitions and provisions which are applicable to more than one element of the Transaction are detailed in Section 1. The terms of the Transaction to which this Confirmation relates are as follows:

1. **Section 1 – General Terms**

| | |
|---|---|
| Notional Amount: | USD 60,000,000 |
| Trade Date: | 23 November 1999 |
| Termination Date: | 22 December 1999, subject to modification in accordance with the Following Business Day Convention. |
| Business Days: | In New York |
| Calculation Agent: | Party A |
| Currency Pair: | USDJPY |

2. **Section 1 – First Digital Option Transaction**

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | Zero |
| Party B Initial Exchange Amount: | USD 25,000,000 |
| Initial Exchange Date: | 25 November 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | USD 60,000,000 |
| Party B Final Exchange Amount: | Zero |
| First Range Level: | JPY 108.19 per USD 1.00 |
| First Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention. |

(A) If the Spot Rate is, on the First Rate Determination Date at 10:00 a.m. local time in New York, greater than or equal to the First Range Level (such event being a "First Digital Option Trigger Event"), then upon the occurrence of such First Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a First Digital OptionTrigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of the First Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the First Digital Option Trigger Event and provide details of the occurrence of such First Digital Option Trigger Event. A failure to give such notice shall not, however, prejudice the occurrence of the First Digital OptionTrigger Event.

--11010--

2. Section 1 – Second Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | USD 23,780,000 |
| Party B Initial Exchange Amount: | Zero |
| Initial Exchange Date: | 28 November 1999, subject to adjustment in accordance with the Following Business Day Convention |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | Zero |
| Party B Final Exchange Amount: | USD 48,875,000 |
| Second Range Level: | JPY 105.21 per USD 1.00 |
| Second Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 27 December 1999, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the Spot Rate is, on the Second Rate Determination Date at 10:00 a.m. local time in New York, greater than or equal to the Second Range Level (such event being a "Second Digital Option Trigger Event"), then upon the occurrence of such Second Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a Second Digital Option Trigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of a Second Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the Second Digital Option Trigger Event and provide details of the occurrence of such Second Digital Option Trigger Event. A failure to give such notice shall not however prejudice the occurrence of the Second Digital Option Trigger Event.

Section 2 – Other Provisions

(i) For the purposes of this Transaction only, the following provision shall apply:

"Subparagraph (ii) of Section 2 (c) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.

(ii) Offices:

(a) The Office of Party A for the Transaction is New York; and
(b) The Office of Party B for the Transaction is Delaware.

3. Representations:

Each party represents to the other party as of the date that it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.



JG-CL0147906

through independent professional advice), and understands and accepts the terms and conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of the Transaction.

(iii) Status of Parties. The other party is not acting as a fiduciary for or adviser to it in respect of this Transaction.

4. ISDA Agreement:

If you and we are parties to either an ISDA Interest Rate and Currency Exchange Agreement (for which purposes this Transaction shall constitute a "Swap Transaction") or an ISDA Master Agreement (in each case an "Agreement") then this Confirmation supplements forms part of and is subject to such Agreement. If you and we are not yet parties to an Agreement then this Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form") with such modifications as you and we will in good faith agree. Upon execution by Party A and Party B of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation. Until we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation) shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement on the Trade Date of the first such Transaction between us in such form with the Schedule thereto (i) specifying only that (a) the governing law is New York law and (b) the Termination Currency is U.S. Dollars, (ii) incorporating the addition to the definition of "Indemnifiable Tax" contained in (page 48 of) the ISDA "Users Guide to the 1992 ISDA Master Agreements" and (iii) incorporating any other modifications to the ISDA form specified below.

5. Definitions:

The definitions and provisions contained in the 1991 ISDA Definitions (as amended by the 1997 Supplement) as published by the International Swaps and Derivatives Association, Inc (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions (the "FX Definitions") as published by the International Swaps and Derivatives Association, Inc., the Emerging Markets Traders Association and The Foreign Exchange Committee (the "1998 Definitions", and together with the Swap Definitions, the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1998 Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours faithfully,
for and on behalf of
Deutsche Bank AG, New York

By:
Name:
Title: AVP

By:
Name: [illegible]
Title: Director

Confirmed as of the date first above written:
JZ BUCKINGHAM INVESTMENTS LLC

By:
Name:
Authorised Signatory

By:
Name:
Authorised Signatory

For any query relating to this Confirmation please contact: 212-469-4033



JG-CL0147907