**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**UNITED STATES' REPLY TO PLAINTIFF'S RESPONSE TO UNITED STATES' MOTION TO PARTIALLY EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DON M. CHANCE**

DENNIS M. DONOHUE
Chief Senior Litigation Counsel
U.S. Department of Justice, Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 4

ISSUE I. Plaintiff's Response in No Way Validates the Reliability of Dr. Chance's Probability Comparison Method . . . . . . . . . . 4

A. The Chance Report's Probability Comparison Method is Unreliable Because it Fails to Take into Account That Profit Reasonableness is Inextricably Linked to the Price Paid for the Asset . . . . . . . . . . 4

B. Plaintiff's Opposition is Based on a Red Herring . . . . . . . . . . 7

C. Chance's Probability Comparison Method Fails the *Daubert* Factors . . . . . . 8

1. Factor 1 - Testable Hypothesis . . . . . . . . . . 8

2. Factor 3 - Known or Potential Rate of Error . . . . . . . . . . 11

3. Factor 5 - Existence of Standards Controlling Method's Operation . 12

4. Factor 6 - Relationship of Technique to Reliable Methods . . . . . . . . 12

5. *Daubert II* Factor - Opinion Developed for Purposes of Testifying . . 13

ISSUE II. The Kolbe Declaration Offered in Support of the *Daubert* Motion Should Be Considered by the Court in Determining the Admissibility of Chance's Expert Report and Testimony . . . . . . . . . . 15

A. The Court Has Wide Latitude in Considering Evidence on Whether or Not an Expert's Methodology is Reliable and Therefore His Opinion is Admissible . . . . . . . . . . 15

B. Dr. Kolbe First Voiced His Criticism of Don Chance's Comparison of Probability Method in His Rebuttal Report. . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*350 W.A. LLC v Chubb Group of Ins.*, 2997 WL 4365502 (S.D. Cal., 2007) . . . . . . . . . . . . . . . 15

*Allgood v. General Motors Corp.*, 2006 W.L. 2669337 (S.D. Ind. 2006) . . . . . . . . . . . . . . . . 15

*United States v. Alatorre*, 22 F.3d 1098, 1102-03 (9th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . 16

*Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995) . . . . . . . . . . . . . 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . 1

*In re: Hanford Nuclear Restoration Litigation*, 292 F.3d 1124, 1138-39 (9th Cir.2002) . . . . . . 16

*Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir.2006) . . . . . . . . . . . . . . . . . . . 16

### FEDERAL STATUTES

R. Civ. Proc. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

R. Civ. Proc. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RCFC, Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RCFC, Rule 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

---

JZ Buckingham Investments LLC as Tax Matters Partner
of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

---

**UNITED STATES' REPLY TO PLAINTIFF'S RESPONSE TO UNITED STATES' MOTION TO PARTIALLY EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DON M. CHANCE**

The United States moved to partially exclude the expert report and any testimony of Dr. Don M. Chance pertaining to whether or not the COBRA options at issue in this litigation had a reasonable possibility of profit.[1] Plaintiff devotes much of its response to the part of Dr. Chance's methodology which was not even the subject of this motion. Specifically, they raise a variety of irrelevant arguments to the effect that Dr. Chance's use of a variant of the so-called Black-Scholes-Merton Model (BSM) to calculate option payout probabilities is a well accepted practice in the field of economics.

Tellingly, plaintiff makes no real attempt to focus on, much less defend the reliability of,

---

[1]Docket Entry ("D.E.") 155. Hereafter referred to as the "Chance *Daubert* Motion." See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

the part of Chance's methodology that is the subject of this motion. The part of his methodology at issue here is his use of payoff probabilities for Google and the S&P 500 Index to determine the profit reasonableness of the COBRA options. Plaintiff says virtually nothing about the reliability in the field of economics of this "probability comparison" method. Nor could it because it has absolutely no foundation in standard economic principles. Dr. Chance's probability comparison method woefully fails to meet the *Daubert* tests for reliability. Thus, his opinion that the paired digital options at issue in this litigation had a reasonable possibility for profit should not be admitted into evidence.

Moreover, plaintiff's assertion that the Court should not consider Dr. Kolbe's Declaration in assessing the reliability of Dr. Chance's methodology is meritless. The Court has great latitude in what evidence to consider in resolving a *Daubert* motion. The case law makes clear that the Court is not limited to original or rebuttal reports in making its determination on this "reliability' issue. Furthermore, Dr. Kolbe's declaration attached to our motion contains the same criticisms of Dr. Chance's expert report originally raised in his rebuttal report. Given that Dr. Kolbe's original declaration and his reply declaration attached hereto are directly related to the reliability of Dr. Chance's probability comparison, the Court can, in its discretion, consider these documents in ruling on the reliability of the Chance probability comparison methodology.

## INTRODUCTION

Dr. Chance provided an expert report[2] opining that the paired foreign exchange digital options in issue in this litigation (the "Cobra Options") had a reasonable possibility of profit. The methodology used to reach this opinion involved: (1) determining the profit probabilities on

[2]Hereafter referred to as the "Chance Report." It is attached to the Chance *Daubert* Motion as Exhibit 1, Gov. App. 3.

publicly traded options on the S&P 500 Index and Google stock; (2) determining the profit probabilities for the paired foreign exchange digital options in issue in this litigation; and (3) opining that a probability of profit for the COBRA options is reasonable if it lies within the range observed for the publicly traded options. Step one and two will sometime be referred to as the probability calculation method. Step three will sometimes be referred to as the probability comparison method or the comparison of payoff probabilities' method.

Plaintiff's response vigorously defends Chance's probability calculation method. Little to nothing in Plaintiff's response, and attached Chance Declaration,[3] however, defends Chance's probability comparison method. The reason is quite obvious. Chance's probability comparison method is nowhere to be found in the economic literature. It is not based on standard economic principles. And it cannot be tested. In short, it does not provide any meaningful economic insight into whether or not COBRA options had a reasonable possibility of profit. For the reasons set out in the original motion and this reply, an order should therefore be entered granting the United States' motion to partially exclude the expert report and testimony of Dr. Chance, specifically prohibiting the introduction of Chance's report and testimony on whether or not the COBRA transactions showed a reasonable possibility of profit.

[3]Hereafter referred to as the "Chance Declaration." It is attached to Plaintiff's Response at pl.dc.app. 356 - 371.

## ARGUMENT

## I

## PLAINTIFF'S RESPONSE IN NO WAY VALIDATES THE RELIABILITY OF DR. CHANCE'S PROBABILITY COMPARISON METHOD

Plaintiff's response, and the Chance Declaration, provide no economic justification for the reliability of the Chance probability comparison method. The fundamental problem with the Chance Report's methodology is not *how* the profit probabilities that underlie its analysis were calculated, but to *what use* they were put, which is the part of the Chance Report's methodology which is without foundation in economic principle.

### A. The Chance Report's Probability Comparison Method Is Unreliable Because it Fails to Take into Account That Profit Reasonableness Is Inextricably Linked to the Price Paid for the Asset.

Dr Kolbe notes in his reply declaration that "[t]he flaw [in the Chance methodology] comes not in the step where the Chance Report computes the probabilities, it comes in the step in which it compares probabilities from options on Google and S&P 500 index options to the probabilities of the paired digital options in the present dispute without consideration of whether the COBRA options were priced in a way that was consistent with their probabilities."[4] That step of the Chance Report's methodology has absolutely no support in the economic literature and is the one which miserably fails the *Daubert* tests of reliability. The point can be succinctly summed up, as does Dr. Kolbe, as follows:

> It is... without foundation in economic principle to assume that because publicly traded options have a particular range of profit probabilities, any profit probability within that range on some other option is *per se* "reasonable" *regardless of how the price at which that other option is*

[4]Kolbe Reply Declaration, p. 6-7, Gov. Reply. App. 9-10.

> *bought or sold relates to its market value*.[5]

Chance's own example purportedly used to defend his comparison of probabilities' method[6] can be used to show why it is not a reliable method – and thus cannot be can be used to support his opinion that the COBRA options had a reasonable possibility of profit As Dr. Kolbe points out:

> [Chance's] ... example postulates a wager in which a roll of a die that comes up 1, 2 or 3 yields nothing while a roll of 4, 5 or 6 receives a payment of $10.[7] Dr. Chance observes that the profit *probability* is the same regardless of how much you pay for the right to play this game, as long as you pay less than $10.[8] . This is perfectly true, but it begs the question of whether that probability is properly classified as "reasonable."
>
> That is, suppose you pay $9 for the right to pay this game, a possibility the Chance Declaration's example explicitly mentions. You have a 50-50 chance of winning $10, so your expected profit is [(0.5 × $10) − $9] = ($5 − $9) = −$4. There is nothing in economics that says that such a wager provides a "reasonable" probability of profit. In what sense could it be economically "reasonable" to overpay by 80 percent ($4/$5) of the fair price of a bet?[9]

Although Dr. Kolbe's example of a payment of $9 for a one-in-six chance to win $10 is an example of why the probability comparison method is wholly unreliable, a slightly varied example can make the same point. Dr. Chance's method just as equally could be used to support a payment of one cent ($.01) or $9.99 for a one-in-two ("50-50") chance to win a $10. Dr. Chance's probability comparison method would claim both bets as reasonable because both have a probability that is observable somewhere in the market. Obviously, the investment of one cent

---

[5]Kolbe Reply Declaration, p. 7, Gov. Reply. App. 10 (Emphasis added).

[6]*See* Chance Declaration, p. 4, pl.dc.app.000359.

[7]Chance Declaration, p. 4, pl.dc.app.000359.

[8]Kolbe Reply Declaration, p. 7, Gov. Reply. App. 10.

[9]*Id.*

($.01) for a 50-50 chance of making $10 is a great investment but spending $9.99 for a 50-50 chance of winning $10 (earning one cent profit) makes no sense at all. The $9.99 cost has no economic relationship to the 50-50 chance of making $10.

But to illustrate clearly why the Chance Report's comparison methodology is unreliable in this case, it is necessary to extend Dr. Kolbe's above examples to add the equivalent of the public option markets for Google stock and the S&P 500 index, on which the Chance report relies. As Dr Kolbe explains:

> Suppose that the right to win $10 from the roll of a fair die were issued as a publicly traded security in financial markets. To consider the Chance Report's methodology, we need to imagine there are different such securities with different probabilities of winning. For example, suppose one type of bet, "Wager A," pays off if the die comes up with a 5 or 6, that "Wager B" pays off with a 4, 5 or 6 (as in the original example), and that "Wager C" pays off with a 3, 4, 5 or 6.
>
> The payoff probabilities of these three options are ⅓, ½ and ⅔, respectively. One would expect Wager A to trade for about ($10 × ⅓) = $3.33, Wager B for about ($10 × ½) = $5, and Wager C for about ($10 × ⅔) = $6.67...[10]

These profit probabilities are, of course, "reasonable" at these prices, since each probability is consistent with the price paid and the potential payoff.[11] Thus for each wager, the economic conclusion as to whether the probability of profit is "reasonable" is inextricably linked to the price paid for the wager.[12] However, in this analogy, the Chance Report's methodology states that *because* the range of probabilities from the publicly traded wagers goes as low as ⅓, the profit probability of any *privately traded* wager as low as ⅓ is reasonable no matter what the

---

[10]Kolbe Reply Declaration, p. 8, Gov. Reply. App. 11.

[11]*Id.*

[12]*Id.*

price paid for it, just as long as the price is less than the potential payoff.[13] It is this probability comparison step which is the novel part of the Chance Report's methodology, not its calculation of the probabilities, and this comparison step, as Dr. Kolbe notes, is simply without foundation in economic principles.

The above examples make eminently clear that Chance's probability comparison method is inherently unreliable because it does not take into account the costs paid for the investment being considered.[14] In short, the fundamental flaw in the Chance method of comparison of probabilities is that it ignores that profit reasonableness is inextricably linked to the price paid for an asset. This is the fundamental reason why his probability comparison method cannot be validated by standard economic principles.[15]

**B. Plaintiff's Opposition Is Based on a Red Herring.**

Plaintiff and Dr. Chance repeatedly misstate the United States's position on this motion. For example, plaintiff states "[n]otwithstanding the widely accepted model Dr. Chance used as a

---

[13]*Id.*

[14]The price paid for the options is a critical issue in this litigation because it our position that the taxpayers significantly overpaid for their COBRA options, *i.e.*, paid amounts which were materially more than their market values. Plaintiff argues that Dr. Kolbe contradicts himself on the treatment of the alleged excess amount paid for the options, on the one hand calling the overpayment an excessive fee and on the other, referring to it as an excessive price paid. Plaintiff's assertion is based on a fundamental misunderstanding of option pricing. The price of an over-the-counter option routinely includes a fee to the bank involved. If this fee is excessive, however, as it was here, the buyer of the options will wind up paying a price for the options that materially exceeds their market values. Thus, as Dr. Kolbe put it [b]oth statements are true, because ..[the bank's] material fees are the *reason* that the prices paid for the options materially exceed their values. Kolbe Reply Declaration, p. 11, Gov. Reply. App. 14.

[15]In fact, Dr. Chance himself admitted the method has no bearing on whether an investment is a good or bad investment. *See* Deposition of Don C. Chance, dated September 6, 2007, attached as Gov. Ex. 2, Chance *Daubert* Motion, pp. 166, ll. 2-23, and p. 204, ll. 17 to p. 205, ll. 11; Gov. App. 142-143 and 158 - 159 (hereinafter "Chance Deposition").

basis for determining profit probabilities for the digital options (the BSM Model) the government argues that Dr. Chance's methodology is unreliable and must be excluded."[16] As repeated throughout our initial brief, the United States has made it clear that the part of Dr. Chance's methodology which is unreliable is his comparisons of option probabilities to determine profit reasonableness – not his calculation of the option probabilities. The United States has never argued the Black-Scholes-Merton Model ("BSM") is *not* widely accepted in calculating probabilities. The problem is that nowhere in Chance's Expert Report, Chance's Rebuttal Report or Chance's Declaration is there an economic justification that his probability comparison method is widely accepted, or even accepted anywhere in the field of economics, as a basis for determining profit reasonableness.

**C. Chance's Probability Comparison Method Fails the *Daubert* Factors.**

Plaintiff argues that Chance's methodology meets the *Daubert* factors which seek to test the reliability of the expert's methodology or its validation in his field of expertise. The general problem with plaintiff's various arguments is that they focus on the part of the Chance methodology which we do not challenge, *i.e.*, Chance's calculation of the payoff probabilities – and for the most part, simply ignore Chance's use of his range of payoff probabilities for Google and S&P 500 Index options to conclude that the COBRA options had a reasonable possibility of profit.

**1. Factor 1 – Testable Hypothesis**

As discussed in our initial brief,[17] Chance's probability comparison method does not have

---

[16]Plaintiff's Response, p. 5.

[17]Def. Brief, pp. 18-19.

a testable hypothesis. This is because the method embodies a test for whether a "reasonable probability of a profit" exists that is effectively impossible to fail.[18] That is, under the method, a probability of profit is "reasonable" if it falls within the range of profit probabilities observed in the market, regardless of anything else.[19] But, as Dr. Kolbe observes, financial markets are immense, so some option, somewhere, can be found with almost any probability of profit.[20] Chance seems to recognize this, noting that probabilities extend in the market for as low as .2%.[21]

In response, plaintiff asserts that Chance put some limits on the options he selected,[22] which restricts his method to applying to all options. Although this argument is at least addressed to the part of the Chance methodology at issue on this motion, *i.e.*, his probability comparison method, it is nonetheless still meritless. This is because these so-called limits do not alter the fact that the Chance probability comparison method is still impossible to fail – albeit now within the range of options that it is designed to apply. As Dr. Kolbe points out, "[a] sample of options that conformed to the limits cited in the Plaintiff Response would always exist that still provided a test that was essentially impossible to fail."[23]

---

[18]Kolbe Declaration, Chance *Daubert* Motion, Gov. Ex. 3, p. 9, Gov. App. 202.

[19]*Id.*

[20]*Id.*

[21]Chance Deposition, pp. 242-245, Gov. App. 175-76.

[22]Plaintiff argues that Dr. Chance did not select just any option (to compare to the COBRA options), he picked out "only options with a time to expiration roughly corresponding to those of the digital options in question, that were well recognized in the market and collected data only for options that traded at least 100 contracts a day." See Plaintiff's Response, p. 14.

[23]Kolbe Reply Declaration, p. 12-13, Gov. Reply App. 15-16.

Plaintiff further claims that Chance's method "identifies and quantifies parameters for profit probability on transactions that have been proven by the market to be reasonable as the Government expert himself acknowledges."[24] Here, however, plaintiff changes its focus back to Chance's calculation of probabilities – the aspect of his method we do not challenge – not his comparison of probabilities' method. Specifically, plaintiff is referring to the fact that the BSM Model is a well accepted method of computing probabilities, and that one can assume, unless shown otherwise, that market traded options are considered to have a reasonable possibility of profit.[25] While true, this recognition certainly does not support plaintiff's jump in logic that the BSM Model can be used to determine whether or not an investment in a *non-market traded* option has a reasonable possibility of profit just because it shares a payoff probability with a market traded option. As noted above, the fundamental reason this quantum leap in economic logic cannot be made is because the Chance method of comparison of probabilities of public-traded options to non-public traded options *completely ignores* the price paid for the non-publicly traded options.

One can assume one is paying a fair price for market traded options because the market forces exchange traded options to trade at or near the BSM determined price.[26] Nowhere has plaintiff shown that same assumption can be made for non market traded options.

---

[24]See Plaintiff's Response, p. 14.

[25]See Chance *Daubert* Motion Brief at p. 16 and Kolbe Declaration at Gov. App. 200.

[26]In the Chance Report Appendix, Chance notes that if an option trades at any other value than its BSM value, other traders will enter the market and bring the price down to the BSM value. *See* Chance Expert Report, page 48, Appendix A. Chance never claims the COBRA Options were traded on the market not that he has determined that the COBRA Options are priced close to the BSM method.

**2. Factor 3 – Known or Potential Rate of Error**

Chance's probability comparison method also fails to satisfy factor 3, the potential error rate of the method. This factor addresses how often the method will reach an erroneous conclusion. As previously discussed, the Chance Report's comparison method will essentially never find an option that will not have a "reasonable possibility of profit."[27] Plaintiff denies that this is a problem because a test is not rendered unreliable because it does not produce erroneous results.[28]

Contrary to plaintiff's assertion, it is a problem. If it is assumed that options do exist in the actual world which do *not* have a reasonable possibility of profit, (*e.g.*, options, as here, which are priced materially in excess of their market values), then it logically follows that the Chance Report's method will reach an erroneous conclusion. Moreover, in a sample of options that all fail to have a "reasonable probability of profit," the error rate of the Chance Report's method will be 100 percent.[29] Here again, this factor also emphasizes the total unreliability of the Chance Report's comparison method, particularly as applied to the facts of this case.

As pointed out in Dr. Kolbe's Reply Declaration:[30]

> A test may have two types of errors, finding something to be true when it is actually false and finding something to be false when it is actually true. It is correct that the Chance Report's comparison test will essentially never erroneously find an option's profit profitability to be unreasonable when it is actually reasonable, because the methodology will essentially never find *any* profit probability to be unreasonable. But this means it will essentially *always*

---

[27]Kolbe Declaration, p. 10, Gov. App. 203.

[28]Plaintiff's Reply, p.15.

[29]Kolbe Declaration, p. 10, Gov. App. 203.

[30]Kolbe Reply Declaration, p. 13, Gov. Reply. App. 16.

> erroneously find profit probabilities to be reasonable when they are actually unreasonable, unless the definition of "unreasonable" is such that there actually are no "unreasonable" profit probabilities (in which case, why waste resources conducting a test at all?). If "unreasonable" profit probabilities exist, the Chance Report's error rate in detecting them will effectively be 100 percent.[31]

Chance's probability comparison method cannot be tested for an error rate, because its basic assumption that any probability observed is reasonable (whether it is based on the market or not) if the same probability is observed in the market, cannot be economically validated. The probability comparison method is not reliable because it has no economic means of validation.

**3. Factor 5 - Existence of Standards Controlling the Method's Operation**

Plaintiff claims that standards exist controlling Dr. Chance's method of comparing probabilities because standards exist controlling the computation of probabilities under the BSM model. As discussed, here again plaintiff, whether wittingly or not, confuses the part of Dr. Chance's methodology that is the subject of this *Daubert* motion. His comparison method of determining reasonable possibility of profit is at issue on this motion – not his use of a variant of the BSM model to calculate payout probabilities.[32] There is no dispute that the Black-Scholes-Merton model or its recognized variations have reliable and controlling standards. Plaintiff, however, has made no attempt to satisfy its burden that Chance's comparison method also has controlling standards. In fact, as previously discussed, it manifestly does not.

**4. Factor 6 – Relationship of Technique to Reliable Methods**

The sixth factor, how the method relates to other methods, is also not satisfied. As discussed here and in our opening brief, the Chance Report's probability calculation approach is

---

[31]This point was noted in the Kolbe Declaration in Section V, but it is not addressed in the Plaintiff's Response.

[32]Kolbe Reply Declaration, p. 13-14, Gov. Reply. App.16-17.

grounded in standard economic principles, but his probability comparison method does not take into account the essential link between profit probability and the price paid for the right to receive the potential profit. That link is broken for the options in this dispute, since they did not trade at market value. Thus, as Dr. Kolbe observes, these basic principles have not been shown to be reliable in the way the Chance Report's method applies to them.[33]

Plaintiff's response cites the Chance Declaration and Dr. DeRosa's book in defending the relationship of the technique in applying the BSM model to determine probability of payoffs.[34] Once again, as frequently noted in this reply, the BSM model is not being challenged.

What is being attacked, and not defended by plaintiff, is that the second aspect of Dr. Chance's methodology reflects nothing more than a simple comparison. Dr. Chance simply compared the profit probabilities of the digital options to those of publicly traded options. Neither plaintiff nor Dr. Chance defend this method by cites to other authorities. Given that it is a vacuous comparison, not based on a reliable methodology, it is nothing more than unsubstantiated opinion, and certainly not admissible in evidence.

**5. *Daubert II* Factor – Opinion Developed for Purposes of Testifying**

In *Daubert II*, the Ninth Circuit mentioned an additional factor: whether the expert is proposing to testify about matters growing naturally and directly out of research conducted independent of the litigation, or whether the expert's opinion has been developed expressly for purposes of testifying.[35] Here there has been no showing that the Chance probability comparison

---

[33]Kolbe Declaration, p. 9, Gov. App. 202.

[34]Plaintiff's Response, p. 18.

[35]*Daubert II*, 43 F.3d at 1317.

method of evaluating reasonable probability of profit has ever been applied outside of this litigation. Plaintiff defends the BSM Model, which is not being attacked.[36]

While, as Dr. Kolbe notes, "[t]he fact that a standard principle or tool is being applied to a novel situation does not, *by itself*, in any way impair the economic validity of the analysis,"[37] as discussed, the reliability of the probability comparison method is already fatally suspect by virtue of its failure of various bedrock "reliability" factors.

Given these circumstances, the fact there has been no showing that the Chance Report's method was published in some objective source such as a "learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like-to show that they have followed the ...method" is certainly relevant to its reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) *("Daubert II")*. Equally relevant to its reliability is the fact that there has been no showing that Chance's method was not developed expressly for purposes of testifying in this litigation. *Daubert II*, 43 F.3d at 1317.

In sum, the foregoing analysis makes eminently clear that the Chance Report's method is not based on a reliable method of determining *reasonable* possibility of profit as applied to the facts of this litigation.

---

[36]Plaintiff's Response, p. 19.

[37]Kolbe Declaration, pp. 8-9, Gov. App. 200-01 (Emphasis added).

## II.

## THE KOLBE DECLARATIONS OFFERED IN SUPPORT OF THE *DAUBERT* MOTION SHOULD BE CONSIDERED BY THE COURT IN DETERMINING THE ADMISSIBILITY OF CHANCE'S EXPERT REPORT AND TESTIMONY

Plaintiff's first response to the United States' motion to exclude Dr. Chance's opinion on profit reasonableness of the COBRA transactions was to attack Dr. Kolbe's opening declaration as inadmissible as a late filed rebuttal report. Plaintiff is wrong.[38] First, the Court has wide latitude in what evidence to consider in determining whether or not expert testimony is based on a reliable method. It is perfectly appropriate to consider Dr. Kolbe's Declarations on this motion involving a preliminary evidential admissibility issue. Second, the plaintiff is wrong in claiming that Dr. Kolbe did not raise the issue of the economic soundness of Dr. Chance's methodology of comparing payoff probabilities in determining profit reasonableness in his rebuttal report. The Court should therefore consider Dr. Kolbe's declarations in resolving this motion.

### A. The Court Has Wide Latitude in Considering Evidence on Whether or Not an Expert's Methodology Is Reliable and Therefore His Opinion Is Admissible.

The Court's gate-keeper function in determining the admissibility of an expert opinion does not require a party to first submit an expert rebuttal report to challenge the reliability of a method on which the opinion is based. See *Brooks v. Outboard Marine Corp., 234 F.3d 89*, 91 (2nd Cir. 2000). In *350 W.A. LLC v Chubb Group of Ins.*, 2997 WL 4365502 (S.D. Cal. 2007) the court denied a motion to strike a declaration submitted by the plaintiff in support of a *Daubert*

---

[38]Plaintiff does not cite any authority of this position. Presumably it is based on Rules 26 and 37, Federal Rules of Civil Procedure or RCFC (See *Allgood v. General Motors Corp.*, 2006 WL 2669337 (S.D. Ind. 2006) (Denying motion under Rule 37 of the Fed. Rul. of Civ. Proc. to strike a declaration submitted in support of *Daubert* motion as purportedly an improper effort to supplement the experts' original disclosures of opinions as required under Rule 26(a)(2)).

motion. The defendant argued that the declaration contained evidence not previously disclosed, and also contained opinions and statements not previously disclosed during discovery. But the court rejected the argument, stating:

> In considering a party's challenge to an expert witness, a district may hold a Daubert hearing to assess the relevance and reliability of an expert's proposed testimony. *United States v. Alatorre*, 22 F.3d 1098, 1102-03 (9th Cir.2000); see also *Daubert*, 509 U.S. 579, ... In addition, trial courts may exercise discretion in "determining how to evaluate the relevance and reliability of expert opinion testimony ...." *Alatorre*, 22 F.3d at 1102-03 (9th Cir.2000) . Indeed, "[t]he law grants a district court ... broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination," and "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); see also *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir.2006). In determining whether an expert's proposed testimony is relevant and reliable, "the trial court may consider ... offers of proof, affidavits, stipulations, or learned treatises, in addition to testimonial or other documentary evidence (and, of course, legal argument)." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir.2000); see also *In re: Hanford Nuclear Restoration Litigation*, 292 F.3d 1124, 1138-39 (9th Cir.2002).

The court went on to apply the settled rule that it, in its discretion, can consider any documentary evidence in evaluating the reliability and relevance of proposed expert testimony:

> The district court has broad authority to consider declarations and other documentary evidence in assessing the relevance and reliability of an expert's proposed testimony. *Kumho Tire Co.*, 526 U.S. at 142, 152. Here, Defendant objects to a declaration and certain exhibits which Plaintiff submitted to support the relevance and reliability of Poppendiek's proposed testimony. The Court concludes that Plaintiff properly submitted the evidence to support Poppendiek's proposed testimony, and further, that the Court can consider it in exercising its broad discretion in determining how to evaluate the relevance and reliability of proposed expert testimony. See *Kumho Tire Co.*, 526 U.S. at 142, 152; *Oddi*, 234 F.3d at 154; *In re: Hanford Nuclear Restoration Litigation*, 292 F.3d at 1138-39.

Dr. Kolbe has submitted two Declarations on this *Daubert* motion. Both are precisely focused on the issue of the validation in the field of economics of Dr. Chance's method of utilizing

a range of payoff probabilities for publicly-traded options to determine the profit reasonableness of the non-publicly traded COBRA options at issue here. As such, these declarations are highly relevant to the evidential issue of admissibility on this motion, and the Court can, in its discretion, consider them in evaluating the reliability of Dr. Chance's probability comparison method.

### B. Dr. Kolbe First Voiced His Criticism of Dr. Chance's Comparison of Probability Method in His Rebuttal Report.

Contrary to plaintiff's position, Dr. Kolbe went to great lengths in his rebuttal report to demonstrate that the Chance Report's method of determining reasonable possibility of profit was not economically sound. Dr. Kolbe's Rebuttal Summary of Findings on page 2 stated:

> **Chance Report's Conclusion on Reasonable Probability of Profit**: Profit is revenue minus cost. The Chance Report's methodology for addressing whether there was a reasonable probability of profit ignores the stated or actual cost of these particular options. It therefore cannot even determine if the expected profit is positive, let alone "reasonable." The probabilities of exchange-traded options the Chance Report examines are reflected in the market prices of those options, but the COBRA options did not trade at market value. The Chance and Hess Reports' option valuation methodologies themselves confirm this. The failure to address this fact in any way in its profit reasonableness methodology renders the Chance Report's conclusions on this topic meaningless.

Continuing on page 11, Dr. Kolbe stated:

> The probability of payoff is a key input to both the dollar and the percentage return, but so too is the dollar cost of the option. "Profit", the quantity the Chance Report purports to analyze, is just the dollar return. One cannot even decide if the profit is positive, let alone "reasonable," without consideration of the cost of the investment. The Chance Report simply ignores the second half of the equation.
>
> Put differently, the Chance Report's Table 6 describes a wide range of probabilities, but it does not report the market prices of the options that underlie those probabilities. The market prices of the lower-probability options will be lower, all else equal, so that Equation [1] applied to those options would still yield a positive value for the expected dollar return.... Similarly, the market prices of the higher-probability options will be higher, so that the expected dollar and percentage returns offer just-fair compensation for the risks borne. One of the most basic findings of financial economics is that asset prices in well-functioning capital markets equilibrate to offer just-fair rates of return for the risks investors must bear.

> ...
>
> *But the options in this case did not trade at market prices*. As discussed at length in Section III of my original report, the stated prices of the components and the actual price for the net position were well in excess of the actual values of these options. Since the prices actually stated or charged were well above market value, the expected “profits” were negative, not positive....
>
> Therefore, the profit probabilities for the options in this case were unreasonably low because they produced materially negative expected rates of return. By failing to consider the price paid (and the fees), the Chance Report’s methodology overlooks this vital fact.
>
> In short, it is economically impossible to assess whether the profit probability on these options was“reasonable” without taking account of the prices paid for them. The Chance Report omits this key step and so reaches an unwarranted and economically insupportable conclusion. (Footnotes excluded).

A review of the Kolbe Declarations reflect identical conclusions and reasoning regarding Dr. Chance’s use of his probability comparison method to assess the profit reasonableness of the COBRA options.

In sum, the Court has great latitude in considering evidence to determine whether or not Dr. Chance’s proposed testimony relating to the COBRA options profit reasonableness should be admitted in evidence. Additionally, the Kolbe Declarations are not late rebuttal reports. The opinions and underlying reasons of Dr. Kolbe’s concerns regarding Dr. Chance’s probability comparison method were set forth in great detail in Dr. Kolbe’s Rebuttal Report. Plaintiff cannot claim surprise, nor does it. Regardless, the Court can consider the Kolbe Declarations in assessing the reliability of Dr. Chance’s probability comparison methodology.

## CONCLUSION

Chance's opinion that there existed a reasonable possibility of profit is not based on a reliable method. The Court should preclude plaintiff from introducing at trial that portion of Chance's expert report and any accompanying testimony regarding the reasonableness of profit of the COBRA options.

Respectfully submitted,

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008, I electronically filed the foregoing United States' Reply in Support of its Motion to Partially Exclude the Expert Report and Opinions of Don A. Chance with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

/s/ Dennis M. Donohue
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov