IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **JZ Buckingham Investments, LLC, as Tax Matters Partner of JBJZ Partners, A South Carolina general partnership,** | § | |
| **Plaintiff,** | § | **Case No. 05-231 T** |
| | § | **Chief Judge Edward Damich** |
| **v.** | § | |
| **United States of America,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S REPLY TO THE UNITED STATES' RESPONSE TO ITS MOTION TO EXCLUDE GOVERNMENT EXPERT DAVID LARUE**

David LaRue's testimony is simply not salvageable under *Daubert* and its progeny.[1] The Government fails to establish a *single* link between Larue's testimony and any disputed legal issue in this case. This lack of relevancy is fatal to LaRue's admissibility. The Government also fails to cure the reliability problems associated with LaRue's spongy methodology in evaluating the tax reporting and his lack of familiarity with IRS review processes. Its dubious attempt to avoid these problems by rewriting LaRue's testimony is unavailing, as the rewrite does nothing to bolster LaRue's helpfulness. Further, despite the Government's exasperations, this Court is perfectly capable of reviewing tax returns and drawing its own inferences from documentary evidence. These facts should prompt this Court to grant Plaintiff's Motion and exclude LaRue's testimony.

## I. Summary of LaRue's Testimony

LaRue's "opinions" are comprised of the following: (1) factual narrative about the transactions at issue (Transactions); (2) observations about the tax reporting of the Transactions;

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999).

(3) an opinion on the adequacy of the disclosure of the Transactions on the tax returns; and (4) an opinion on whether there was an effort to reduce or eliminate the risk of IRS detection and audit.

## II. Grounds for Exclusion

In order to be admissible, expert testimony must be both relevant and reliable.[2] A review of LaRue's report and testimony reveals that his opinions are (1) not relevant because they bear no relation to any disputed issue in this case, (2) fraught with unreliable conclusions, resulting from an undefined standard and lack of expertise in IRS review processes, and (3) not helpful because they convey factual summaries and simple inferences that will not assist this Court in adjudicating these cases.

### A. LaRue's opinions are not relevant because they have no bearing on any disputed issue in these proceedings.

LaRue's testimony is irrelevant because its only conceivable application is to penalties, which are not at issue in these cases.[3] The Government agrees that penalties are not at issue, but claims that LaRue's testimony survives because it somehow bears on the economic-substance determination.[4] This is the *sole* argument that Government raises on the issue of relevancy.

As this Court is aware, the economic substance doctrine is a two-prong test[5] that examines (1) whether the transaction had a reasonable possibility for a profit, and (2) whether the taxpayer had a business purpose of the transaction.[6] The first prong is an objective inquiry, while the second prong is a subjective inquiry.

The Government recognizes the subjective nature of the business-purpose prong,[7] but then curiously argues that the manner in which *Ernst & Young* reported the transactions is

---

[2] Fed. R. Evd. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999).
[3] Pl. Mem. at 15.
[4] Opposition at 30.
[5] Whether the test is conjunctive or disjunctive is debatable.
[6] *See, e.g., Compaq Computer Corp. v. Comm'r,* 277 F.3d 778, 781-782 (5th Cir. 2001).
[7] Opposition at 31.

somehow relevant to *taxpayers'* business purpose.[8] The fallacy of this argument is obvious. There is a fatal disconnect between the taxpayer's personal motivations behind, and beliefs about, the Transactions and Ernst & Young's thought processes and decisions in reporting the Transactions on the tax returns. This disconnect is especially poignant here, where there is no indication that the underlying taxpayers participated in, or were privy to, any of the tax reporting decisions by Ernst & Young.[9] Moreover, the Government cites no authority, and Plaintiff is aware of none, that has *ever* considered the tax reporting of a disputed transaction in connection with the subjective, business-purpose determination. The logical explanation, of course, is that the federal courts share the belief that the tax reporting is simply not relevant to such determination.

**B. LaRue's opinions are not helpful because, at best, they purport to show a simple correlation between disclosure on the tax returns and audit detection.**

LaRue's testimony is strikingly similar to the excluded testimony in *U.S. v. Portsmouth Paving Corp*.[10] That case involved an anti-trust action against several individuals and companies for conspiracy to allocate contracts and rigging contract bidding. The defendants proffered expert testimony to suggest an innocent explanation for the bidding patterns during the course of the alleged conspiracy.[11] The expert purported to demonstrate that the bidding reflected the realities of the market areas and the companies' capacity to compete in the contract bidding. The

[8] *Id*.
[9] LaRue recalls only one email that shows any type of communication to E&Y clients about the tax reporting of COBRA. LaRue Depo., vol. 2, at 48:1-12 and 108:14-25. This email does not name any of the underlying taxpayers in this case and merely states that "[E&Y's] decision to use a coordinated preparation of transaction tax returns was well received. Our clients liked the fact that we were paying close attention to coordinating the reporting of similar transactions and achieving efficiency in determining proper wording and disclosure issues." LaRue Report at 100. Further, there is no indication that any of the internal documents that LaRue relied upon in rendering his opinions were shared with the taxpayers.
[10] 694 F.2d 312 (4th Cir. 1983).
[11] *Portsmouth*, 694 F.2d at 323.

district court excluded the expert testimony, and the Fourth Circuit affirmed.[12] The Circuit court found that the proffered testimony did little than to correlate higher contracting costs with longer hauling distances, which lay jurors were fully able to understand and appreciate.[13]

The Government is offering the same type of expert testimony here with LaRue. His testimony offers nothing more than (1) an explanation for the manner in which the Transactions were reported, and (2) a simple correlation between tax return disclosures and the likelihood of IRS detection and audit. This Court is perfectly capable of understanding this basic relationship without the assistance of expert testimony. Thus, like the testimony in *Portsmouth*, LaRue's testimony is not helpful and should be excluded.

**C. LaRue's opinions lack reliability because he fails to apply a sound methodology and lacks expertise on the subject of IRS return selection and review processes.**

In addition to being relevant, admissible expert testimony must also be reliable.[14] This requires that the expert have expertise in the relevant area and employ a sound methodology in reaching his or her conclusions.[15]

There are material deficiencies in LaRue's expertise and methodology that rendered his opinions unreliable: (1) LaRue lacks specialized experience or knowledge in the IRS return selection process, having never worked for the IRS, having no knowledge about IRS auditor or classifier training, having never studied or learned IRS classifier protocols or guidelines, having no experience with IRS return classifiers, having never represented a taxpayer in the course of an audit, and having prepared only a handful of tax returns in his lifetime,[16] and (2) LaRue failed to

---

[12] *Id*.
[13] *Id*.
[14] Fed. Rul. Evd. 702.
[15] *Daubert*, 509 U.S. at 593; *Raynor v. Merrell Pharms*, 104 F.3d 1371, 1375 (D.C. Cir. 1997); *Deimer v. Cincinnati Sub-Zero Prods*, 58 F.3d 341, 344-45 (7th Cir. 1995); *Oxford Gene Tech. Ltd v. Mergen Ltd*., 345 F.Supp.2d 431, 435 (D. Del. 2004).
[16] Pl. Mem. at 20-21.

employ a sound methodology, basing his opinions largely in part on the tax returns' failure to disclose items that the returns *were not required* to disclose under any instruction, law, or regulation.[17]

The Government raises—and LaRue confesses to—yet another deficiency: LaRue's opinions are based on unverifiable assumptions. As the Government explains, the IRS employs a multi-stage review process. Stage one is DIF scoring. Tax returns receiving a high DIF score proceed to stage two, where they are reviewed as the IRS Service Center by "classifiers." If the DIF score does not reach a certain level, the return does not proceed to Stage 2. Against this backdrop, LaRue rendered a series of opinions that had certain disclosures been made on the returns, the disclosures would have significantly increased risk of audit and detection.[18] These opinions, however, assume either that the returns, as filed, received a detectable DIF score, or that had the returns contained additional disclosures, they would have received such a score. These assumptions cannot be tested, given that DIF scoring is a highly-guarded secret at the IRS.[19] LaRue owns up to this problem, admitting in his declaration that because of IRS DIF scoring, there is no way of knowing whether any disclosure or nondisclosure, or combined effect thereof, will increase, decrease, or have no effect on the actual risk of IRS detection and audit.[20]

The Government and LaRue attempt to skirt these reliability problems by modifying LaRue's testimony as being based on the "perceptions (of [the return selection] process) of tax professionals having the same level of knowledge and experience as those who were involved in the design and in the reporting of the various elements of the Transaction on the Returns."[21]

[17] Pl. Mem. at 18-19.
[18] LaRue Report at 72, 75, 78, 79, 80, 82, 86, 88, 89-90, 97-98.
[19] Opposition at 9; LaRue Declaration, Ex 1, Page 7, n. 15.
[20] LaRue Declaration, Opposition, Ex. 1, page 8, n. 15.
[21] Opposition at 10 (citing LaRue Declaration ¶ 23.4), 18, and 27; *see also* LaRue Declaration, Opposition, Ex. 1, ¶¶ 13.1, 14.1, 23.4, and 35.

Putting aside that this "perception" testimony is far removed from any disputed issue in these cases, this effort is tantamount to a rewrite of LaRue's opinions. On at least 16 different occasions, LaRue unconditionally opined in his report that, "In my opinion, the risk of detection and audit by the IRS would have increased significantly if [this or that] information had been disclosed."[22] LaRue reiterated these opinions during his deposition,[23] testifying unequivocally that (i) "it would be reasonable to conclude that the fees were capitalized with the effect of reducing the possibility of detection and audit by the IRS,"[24] and (ii) "I believe that the risk of detection and audit, and the selection of the returns for consideration to be audited, would have been increased if adequate disclosures had been made on the returns, yes."[25] There is <u>no</u> caveat in his report or deposition testimony that his opinion is being given "from the perception of other tax professionals." This rewrite is not only unduly prejudicial to Plaintiff but also unforgivably tardy—nearly a year after his report and nine months after his deposition. This Court should not permit the Government to tailor its expert's testimony on a de-facto basis in an attempt to avoid exclusion.

Moreover, the "perceptions" of other tax professionals is akin to the "what others might think" testimony that the courts have relegated as speculative and inadmissible. For example, in *In Re Rezulin Products Liability Litigation*,[26] the court excluded expert testimony regarding how the physician community understood the contents of a drug label and what was known by the medical community about the risks and benefits of the drug.[27] The court identified the testimony

[22] LaRue Report at 72, 75, 78, 79, 80, 82, 86, 88, 89-90, 97-98.
[23] LaRue Depo. at 38:25 - 39:6, 150:19 - 151:2, 115: 13-17, 169: 5-8; *see also* LaRue Depo., vol. 2, at 68:21 - 69:1, 88: 17-21.
[24] LaRue Depo. at 169: 5-8.
[25] Vol. 2, page 88: 17-21.
[26] 309 F.Supp.2d 531 (S.D.N.Y. 2004).
[27] *Id*. at 555-556.

as "what doctors might think" testimony which was impermissibly speculative.[28] Similarly, in *Highland Capital Management, L.P. v. Schneider*,[29] the court excluded as speculative the testimony of a former AUSA regarding his view of the "considerations a prosecutor should take into account in prosecuting a securities violation."[30] LaRue offers the same type of opinions here regarding how the community of tax professionals might view or consider the reporting of the Transactions. Thus, even assuming this Court entertains LaRue's after thoughts, such testimony is a classic example of speculative testimony that should be excluded.

### D. LaRue's factual summaries and inferences from documentary evidence are not helpful to this Court and should also be excluded.

The central issue regarding admissibility is whether or not the expert testimony will be helpful to the Court.[31] LaRue's narratives about the transactions and their reporting, as well as his inferences drawn from email correspondence, are simply not helpful to this Court, and thus, should likewise be excluded.

LaRue spends much of his report summarizing the various aspects of the transactions and the manner in which they were reported. These summaries do little (if anything) in aiding the Court in this case. The details about the Transactions are set forth clearly and succinctly in Plaintiff's Complaint, and more elaborate descriptions of the Transactions appear in the Jenkens & Gilchrist and Brown & Wood opinions. In fact, the tax opinions provide a convenient roadmap for this Court to easily navigate through and understand the components of the transactions.[32] LaRue's regurgitation of the facts is therefore redundant and not helpful.[33]

---

[28] *Id*. at 556.
[29] 379 F. Supp.2d 461 (S.D.N.Y. 2005).
[30] *Id*. at 471.
[31] Fed. Rul. Evd. 702.
[32] *See* tax opinion excepts attached as Exhibits 1, 2, 3, and 4 to this Reply.
[33] *See Highland Capital*, 379 F.Supp.2d at 469 ("an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based on record evidence").

LaRue's summary of the tax reporting is likewise superfluous. The Government claims that only experts can review tax returns and that it would be impossible to understand the returns without an expert.[34] This is a tall tale. This Court is well-equipped to review the tax returns to determine whether or not something is present on the paper.[35] In fact, this Court is undoubtedly accustomed to reviewing tax returns, as tax cases are a significant part of its limited jurisdiction. Moreover, any conceivable assistance this Court may need can, and should, come from the Government, who can provide its spin without the assistance of LaRue.

The remaining tidbits of LaRue's opinions are nothing more than simple inferences drawn from the review of internal correspondences at the professional firms, namely Ernst & Young. This Court is perfectly capable of drawing its own inferences from such evidence.

The court's decision in *In Re Rezulin Products Liability Litigation*[36] is instructive on these points. There, consumers brought products liability actions against the pharmaceutical companies regarding the effects of the drug Rezulin. The plaintiffs proposed to introduce expert testimony on (1) chronological history of the drug, reciting selected regulatory events, meetings, labeling changes, and approval and withdrawal decisions, (2) the drug company's failure to adequately disclose certain lab results in their FDA submissions; and (3) an alleged effort to conceal scientific studies about the drug's effects. The court excluded item (1) on the grounds that it was a mere factual summary and not helpful.[37] The court likewise excluded (2) and (3), finding that the opinions were based on the experts' review of the FDA submission and "in-house documents, memos and emails," respectively, which amounted to nothing more than

---

[34] Opposition at 2.
[35] The case upon which the Government relies to support LaRue's factual summaries, *U.S. v. West*, 58 F.3d 133 (5th Cir. 1995), is distinguishable because it involved a jury trial, and these cases will be tried from the bench.
[36] 309 F.Supp.2d 531 (S.D.N.Y. 2004).
[37] *Id*. at 551.

simple inferences drawn from documents, which could be presented and argued by counsel.[38] The court therefore found that the opinions were not helpful and inadmissible.[39]

The parallels between LaRue's testimony and the excluded testimony in *Rezulin* are remarkable. LaRue is offering a (1) factual summary of the transactions (i.e., drug history), and (2) his opinion on the adequacy of the tax disclosure (i.e., FDA disclosures) and their perceived effect of reducing the risk of detection and audit (i.e., effort to conceal drug effects). And like the experts in *Rezulin*, LaRue is basing his opinion on the review of regulatory filings and "in-house documents, memos and emails" of Ernst & Young and other professional firms involved the Transactions. This type of testimony, grounded in narratives and simple inferences, offers nothing of value, and in line with *Rezulin*, this Court should exclude it.

**E. Plaintiff's criticisms about the relevancy and reliability of LaRue's opinions go to heart of admissibility, not the weight of evidence.**

This Court should give short shrift to the Government's attempts to categorize Plaintiff's criticisms of LaRue as relating to the weight that this Court should give LaRue's testimony, not its admissibility.[40] As set forth above and in its initial motion, Plaintiff's critiques of LaRue's testimony are essentially that his opinions (1) have no bearing on any disputed legal issue in this case and are otherwise not helpful, and (2) are based on a malleable methodology, zero expertise, and unverifiable assumptions about top-secret IRS DIF scoring. These criticisms are core to LaRue's relevancy and reliability, which go to the heart of the admissibility question under the Federal Rules and *Daubert*.

---

[38] *Id*. at 554, 549-550.
[39] *Id*.
[40] Opposition at 7.

## III. Conclusion

LaRue's testimony is beyond saving, as his opinions have no relevancy to any disputed issue in this case. The alleged link to the economic-substance doctrine is mythical, as LaRue's focus on the tax reporting has no bearing on the taxpayer's subjective business purposes for the Transactions. LaRue's opinions are also inherently unreliable, based on an unsound methodology, no relevant experience or specialized knowledge, and impossible assumptions about DIF scoring. Further, the Government's attempt to cure these reliability cancers is not only inappropriate, but also futile, as its rewrite of LaRue's testimony based upon "perceptions" is speculative and otherwise not helpful to this Court. Finally, LaRue's factual summaries and inferences offer little, if any, insight beyond what this Court is capable of understanding based on a simple review of the pleadings, tax returns, and other documentary evidence. Accordingly, this Court should grant Plaintiff's Motion and exclude LaRue's report and testimony.

Respectfully submitted,

By: s/Joel N. Crouch
Joel N. Crouch
Texas State Bar No. 05144220

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowscollier.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2008, a copy of the foregoing Reply was served upon counsel listed below via electronic means.

Dennis Donahue
John Lindquist
David M. Steiner
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

Joseph Pitzinger, Esq.
Jonathan Blacker, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

s/Joel N. Crouch
Joel N.Crouch