Jenkens & Gilchrist
A PROFESSIONAL CORPORATION
225 WEST WASHINGTON STREET
SUITE 2600
CHICAGO, ILLINOIS 60606-3418
(312) 425-3900
FACSIMILE (312) 425-3909
www.jenkens.com

AUSTIN, TEXAS
(512) 499-3800
DALLAS, TEXAS
(214) 855-4500
HOUSTON, TEXAS
(713) 951-3300
LOS ANGELES, CALIFORNIA
(310) 820-8800
SAN ANTONIO, TEXAS
(210) 246-5000
WASHINGTON, D.C.
(202) 326-1500

January 31, 2000

**CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGED**

Mr. James G. Boyd
3520 Bohicket Road
Johns Island, South Carolina 29455

Dear Mr. Boyd:

You have requested us to review the United States federal income tax consequences of a number of transactions in which you have been involved and to provide our opinion regarding certain material United States federal income tax issues. Such transactions are described below under the heading "Facts."

In connection with this opinion, we have examined such matters of law, and such corporate, limited liability and partnership records and such other agreements, certificates, instruments and documents, and we have made such other inquiries of officers, owners and representatives of the entities involved, as we have deemed necessary to render the opinions set forth herein. We have without any investigation or independent confirmation relied upon and assumed the accuracy of the responses to such inquiries and such certificates, corporate, limited liability company and partnership records and other documents with respect to factual matters.

**FACTS**

In particular, our opinion is based upon the following facts:

ZEY000064

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION



1. On November 23, 1999, you, through a Delaware limited liability company wholly owned by you, JGB Bohicket Investments LLC ("JGBLLC"), entered into certain over-the-counter, non-publicly traded European style foreign currency option positions on the Euro (the "Options") with Deutsche Bank AG New York Branch ("Bank"), an unrelated substantive counter party. Specifically, you bought digital options on the Euro/U.S. Dollar exchange rate at a strike price of U.S.$1.0123 per 1.0 Euro with an expiration date of December 22, 1999, a settlement date of December 27, 1999 and a payoff amount of $10,000,000.00, and paid a premium of $5,000,000.00 and (referred to herein as the "Long Option"). Additionally, you sold a digital option on the Euro/U.S. Dollar exchange rate at a strike price of U.S.$1.0121 per 1.0 Euro and received a premium of $4,750,000.00, with an expiration date of December 22, 1999, a settlement date of December 27, 1999, and a payoff amount of $9,375,000.00 (referred to herein as the "Short Option").

2. On November 24, 1999, you contributed the Options to JBJZ Partners, a South Carolina general partnership (the "Partnership") as a contribution to capital.

3. On December 22, 1999, the Partnership's Option positions terminated in accordance with their terms.

4. On various dates in December, 1999, the Partnership purchased Canadian Dollars (the "Foreign Currency") as an investment.

5. On December 22, 1999, you contributed 500 shares of Cisco Systems Inc. (the "Short Term Shares") to the Partnership as a contribution to capital. You have represented that you had held these Shares for less than six months. Also on December 22, 1999, the other partner of the

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION



Partnership contributed 4,500 shares of Cisco Systems Inc. (the "Long Term Shares") as a contribution to capital. The other partner has represented that he had held the Long Term Shares for more than one year. (The Short Term Shares and the Long Term Shares will hereinafter be collectively referred to as the "Shares".)

6. On December 27, 1999, you contributed your interest in the Partnership to JBJZ Investors, Inc. ("JBJZ INC."), a Delaware corporation in which you are a 10% shareholder, as a contribution to its capital.

7. On December 27, 1999, the Partnership was dissolved and liquidated. As a distribution in liquidation of the Partnership, all of the Foreign Currency and the Shares were distributed to JBJZ INC.

8. On December 28, 1999, JBJZ INC. sold all of its investment in the Foreign Currency which it received upon the liquidation of the Partnership and on December 28, 1999, JBJZ INC. sold all of its investment in the Shares which it received upon the liquidation of the Partnership.

**OPINION**

Based on the following discussion and analysis and subject to the qualifications, limitations and assumptions set forth herein, we are of the opinion that under current U.S. federal income tax law it is more likely than not that:

A. JGBLLC, as a single member limited liability company, should be disregarded as an entity for federal income tax purposes.

B. Investing in the Options should not be taxable and the Options should be treated as separate instruments for federal income tax purposes.

C. The Partnership should be classified as a partnership for federal income tax purposes.

D. Your contribution of the Options and the Short Term Shares to the Partnership should not result in a taxable gain or loss.

E. The Short Option should not be a liability within the meaning of section 752 of the Internal Revenue Code of 1986, as amended (the "Code").

F. Your basis in your interest in the Partnership after the contribution of the Options should include the cost of the Long Option contributed, without adjustment for the Short Option.

G. An adjustment to your adjusted basis in your Partnership interest should be required as a result of the expiration of the Options, due to the recognition of ordinary income on such expiration under Code section 1234.

H. Your contribution of your interest in the Partnership to JBJZ INC. should not be a taxable transaction and JBJZ INC.'s basis in the Partnership interest contributed by you should be equal to your basis in such interest as of the date of such contribution.

I. Your basis in your interest in JBJZ INC. should be increased by an amount equal to the adjusted basis of your interest in the Partnership as of the date of contribution.

J. The liquidation of the Partnership should not result in gain or loss recognition.

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION

Mr. James G. Boyd
January 31, 2000
Page 5

K. The liquidation of the Partnership should result in an allocation of the Partnership's "outside" basis to the properties distributed by it in liquidation. In this case, the properties consisted of cash, an investment in the Foreign Currency and an investment in the Shares.

L. The disposition by JBJZ INC. of allof the Foreign Currency received in liquidation of the Partnership should result in an ordinary loss and the disposition by JBJZ INC. of all of the Shares received in liquidation of the Partnership should result in a short term capital loss, of which 10% will be short term capital loss, and 90% will be long term capital loss.

M. The step transaction and sham transaction doctrines should not apply to the transactions described herein.

N. Code sections 707(a)(2)(B), 165(c), 465, 469 and 1092 should not apply to the transactions described herein.

O. Treasury Regulation section ("Treas. Reg. sec.") 1.701-2 should not apply to the transactions described herein.

The opinions set forth above are subject to the following qualifications, limitations and exceptions:

No opinion is expressed about the tax treatment of the described transaction for purposes of any state or local income tax, or any tax other than the United States federal income tax.

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION



Any misstatement of a material fact or omission of any fact that may be material or any change in any of the facts referred to may require a modification of all or a part of our opinions.

Our opinions are limited to the matters expressly set forth herein and no opinion may be implied or inferred beyond the matters so stated. The opinions expressed herein are based upon our interpretation of current law. The opinions expressed herein are not binding on the Internal Revenue Service (the "IRS" or the "Service") or the courts, and there can be no assurance that the IRS and the courts will not take a position contrary to the opinions expressed herein. We do not undertake to advise you of any changes in law which may occur after the date hereof. The Code, the regulations promulgated thereunder, and the administrative position of the IRS are subject to change either prospectively or retroactively. Such changes could render certain or all of the opinions expressed herein inapplicable.

For purposes of all of the above opinions, we are relying on the truth of the representations of you and/or partners or representatives of the Partnership or authorized officers of JBJZ INC.

The opinions expressed herein are furnished by us solely for your benefit and for the benefit of the Partnership and JBJZ INC. and they may not be relied upon or delivered to any person other than you, JGBLLC, the Partnership and JBJZ INC. and your successors or assigns without our express, prior written approval.

**REPRESENTATIONS**

You and/or partners of the Partnership and/or authorized officers of JBJZ INC. have represented the following:

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION



a. You entered into the purchase and sale of the Options for substantial nontax business reasons, including (i) to produce overall economic profits because of your belief that the Euro/U.S. Dollar exchange rate relationship would change; and (ii) your belief that the most direct way, with the most leverage, to realize gain from expected changes in currency prices was the purchase and sale of the Options.

b. You contributed the Options to the Partnership for substantial nontax business reasons, including, but not limited to, potential diversification of the risks of certain investments, the desire to co-invest as partners with the other co-partners and for your convenience.

c. Your contribution of your interest in the Partnership to JBJZ INC. was made for substantial nontax business reasons.

d. Neither you, JGBLLC, the Partnership, nor JBJZ INC. were obligated to engage in any transaction to which our opinions herein relate upon the completion of any other of such transactions.

e. Prior to their contribution, the Short Term Shares had been held by you for less than six months, and the Long Term Shares had been held by the other partner of the Partnership for more than one year.

f. To the best of your knowledge, you have provided to us all the facts and circumstances necessary for us to form our opinion.

Jenkens & Gilchrist
A PROFESSIONAL CORPORATION



**APPLICABLE LAW**

Our analysis of the applicable United States federal income tax law with respect to the above-stated facts and in support of each of the lettered opinions as set forth on pages 3 through 5 hereof is attached, with each attachment lettered to correspond to each such opinion.

Based on the foregoing and subject to the qualifications, limitations and assumptions set forth herein, we are of the opinion that the described tax consequences have substantial authority and that it is more likely than not that you will prevail if challenged by the IRS.

Very truly yours,

Jenkens & Gilchrist

JENKENS & GILCHRIST

ZEY000071

## A. SINGLE MEMBER LIMITED LIABILITY COMPANY DISREGARDED FOR FEDERAL INCOME TAX PURPOSES

***General***

The IRS issued revised regulations promulgated under Code section 7701 on December 17, 1996 (the "Classification Regulations"). T.D. 8697. In general, these regulations provide that, effective January 1, 1997, any domestic business entity which is not a corporation and which has a single owner will be disregarded as an entity separate from its owner unless the entity elects otherwise. Treas. Reg. sec. 301.7701-3(b)(1)(ii).

***JGB Bohicket Investments LLC***

JGBLLC was formed under a Certificate of Formation filed with the State of Delaware on November 16, 1999. JGBLLC is a domestic entity which is not a corporation and you own 100% of the membership interest in JGBLLC. Under the rules provided in the Treasury Regulations, JGBLLC should be disregarded as a separate entity. Neither you nor JGBLLC elected nor intend to elect to be classified as a partnership or as an association taxable as a corporation. Accordingly, it is more likely than not that the IRS should regard you as the owner of the assets held in the name of JGBLLC.

## B. INVESTING IN THE OPTIONS IS NOT TAXABLE AND THE OPTIONS SHOULD CONSTITUTE SEPARATE TRANSACTIONS

You sold the Short Option on November 23, 1999. Receiving an option premium is more likely than not, not a taxable transaction, as the option writer cannot determine whether the option will be exercised or will lapse. In Rev. Rul. 58-234,1958-1 C.B. 279, the Service held that no income, gain, profits, or earnings are derived from the receipt of either a "put" or "call" option premium unless and until the option expires without being exercised, or is terminated upon payment by the optionor of an amount less than the premium.

Also, on November 23, 1999 you bought the Long Option. This is a mere investment transaction, the taxation of which will more likely than not also be determined upon its exercise or lapse.

Once the Options are exchanged or lapse, their taxation will more likely than not be governed by Code section 1234.

In determining the tax consequences of the transactions involving the Options, a threshold issue concerns whether each of the Long Option and the Short Option would be regarded as separate transactions or instead would be somehow integrated into a single transaction.

First, the timing of income, gains, deduction and losses from a hedging transaction must match those of the hedged transaction. Treas. Reg. sec. 1.446-4. A hedge is a transaction entered into in the normal course of a taxpayer's trade or business. It does not appear that an entity involved in the Option transactions will hedge the economic risk with any other entity involved in the transaction. Specifically, both the Partnership and Bank retain real net economic risk which neither will hedge with the other. Also, since you entered into the Long Option and the Short Option as an investment

activity, and not as a trade or business, it is more likely than not that the hedging regulations will not be applicable. See Treas. Reg. sec. 1.445-4(a) and Treas. Reg. sec. 1.1221-2(b).

Second, even where one transaction may significantly offset the risk of the other, this factor alone is generally not sufficient to integrate otherwise separate transactions that would be given separate effect. See, e.g., Code section 1092 (deferring the loss on one "leg" of a straddle until gain is recognized on the other, but not netting the offsetting positions); Code section 1258 (recharacterizing as ordinary income certain gain attributable to the time value of a taxpayer's investment transaction, but not recharacterizing it as a borrowing) and Code section 1259 (describing treatment of a constructive sale).

Third, Code section 988 transactions, which involve foreign currency transactions, may not be integrated. Specifically, Treas. Reg. sec. 1.988-1(e) provides in relevant part:

> [T]he amount of exchange gain or loss from a section 988 transaction shall be separately computed for each section 988 transaction, and such amount shall not be integrated with gain or loss recognized on another transaction (whether or not such transaction is economically related to the section 988 transaction).

As discussed below in Section G, the acquisition and disposition of each of the Long Option and the Short Option are Code section 988 transactions.

Fourth, a critical factor in determining if two instruments should be treated as one is whether they can be transferred or assigned independently of one another. For example, Code section 269B provides for the special treatment of a stapled entity, which occurs where the stock of one entity cannot be traded without trading the stock of the other entity. Here, however, each Option is not a stapled entity as described under Code section 269B because it can be transferred, assigned, or

ZEY000074

liquidated independently of the other. It does not appear that Congress has attempted to treat non-stapled entities as a single entity.

Finally, courts have long recognized that a taxpayer can hold long and short positions in property at the same time, and that each position is a separate property. See Smith v. Commissioner, 78 T.C. 350 (1983), aff'd, 820 F.2d 1220 (4th Cir. 1987) (holding that each leg of a straddle should be treated as separate property, regardless of whether the legs were acquired at different times or at the same time); see also, Stoller v. Commissioner, 994 F.2d 855 (DC Cir. 1993), aff'g in part and rev'g in part, 60 TCM 1554 (1990) (respecting separate contracts as stand-alone transactions); Richardson v. Commissioner, 121 F.2d 1 (2d Cir. 1941) (finding that long and short positions can be held simultaneously); Rev. Proc. 65-29, 1965-2 CB 1023; Rev. Rul. 78-182, 1978-1 CB 265.

Based on the foregoing, the Options will be more likely than not treated as separate instruments for federal income tax purposes.

ZEY000075

C. CLASSIFICATION OF THE PARTNERSHIP AS A PARTNERSHIP FOR FEDERAL INCOME TAX PURPOSES

In determining the tax consequences of the transactions involving the Partnership, a threshold issue is its classification for federal tax purposes. Code section 7701(a)(2) defines the term "partnership" to include a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of the Code, a trust, estate or corporation. See also Code section 761(a). The term "partner" includes a member in such a syndicate, group, pool joint venture or organization. Code section 7701(a)(2). The classification of an entity as a partnership under state law is not determinative of its classification for federal tax purposes.

Under the Classification Regulations, effective January 1, 1997, any business entity which is not classified as a corporation for federal tax purposes, and which has two or more owners can choose to be classified as either a partnership or an association taxable as a corporation, and if no such election is made, will by default be classified as a partnership. Treas. Reg. sec. 301.7701-2, -3. Entities which are classified as corporations for federal tax purposes include (1) a business entity organized under a Federal or State statute, or under a statute of a federally recognized Indian tribe, if the statute describes or refers to the entity as incorporated or as a corporation, body corporate or body politic; (2) an entity which elects to be classified as an association; (3) a business entity organized under a State statute, if the statute describes or refers to the entity as a joint stock company or joint-stock association; (4) an insurance company; (5) a State-chartered business entity conducting banking activities; (6) a business entity wholly owned by a state or political subdivision thereof; (7) a business entity that is taxable as a corporation under a provision of the Code other than section


ZEY000075

ZEY000076

7701(a)(3); and (8) certain foreign entities, as more fully provided in the Treasury Regulations. Treas. Reg. sec. 301.7701-2(b).

***The Partnership***

JBJZ Partners, a South Carolina general partnership, was formed under and governed by an Agreement of General Partnership dated November 16, 1999 (the "Partnership Agreement"). Two persons owned equity interests in the Partnership. Neither the Partnership nor any partner has filed an election to treat the Partnership as an association taxable as a corporation. The Partnership did not constitute a corporation under any other provision of the Treasury Regulations. Accordingly, the IRS should regard the Partnership as a partnership rather than a corporation for tax purposes.

***Potential IRS Arguments***

There are three grounds on which the IRS conceivably could argue that the Partnership should not be treated as a partnership for federal tax purposes. First, the IRS might allege that the Partnership lacked a profit motive. To this end, the IRS perhaps would claim that the partners used the Partnership to serve tax purposes. Second, the IRS could allege that no true partnership existed. For reasons set forth below, you should prevail if the IRS challenges the classification of the Partnership on either of these grounds. Finally, the IRS might argue that the Partnership should be disregarded pursuant to the Subchapter K anti-abuse regulation. That regulation is analyzed separately in this opinion.

It is generally understood that to qualify as a partnership for tax purposes, the organization must have a profit objective. Hence, a venture formed to pursue a hobby or artistic interest, instead of economic profits, has been held not to constitute a partnership for income tax purposes. Ewing v. Commissioner, 20 T.C. 216 (1953), affd., 213 F.2d 438 (2d Cir. 1954). However, the Tax Court

has treated a tax shelter limited partnership as a partnership for tax purposes despite its determination that the entity lacked a profit motive. Brannen v. Commissioner, 78 T.C. 471, 512 n. 16 (1982), affd 722 F 2d 695 (11th Cir. 1984). See also National Commodity & Barter Association v. United States, 843 F.Supp. 655 (D. Colo 1993) (membership organization that carried on financial operations and tax protester activities lacked profit motive but was classified as a partnership). In addition, the IRS has on at least one occasion indicated that the absence of a joint profit motive does not prevent an arrangement from being a partnership for tax purposes. In PLR 7903084, the IRS classified an arrangement between co-owners of environmental protection equipment as a partnership, even though the arrangement lacked a joint profit motive. In reaching this conclusion, the IRS stated that the classification principles set forth in Treas. Reg. sec. 301.7701-2 "were developed without reference to, and do not definitely cover, unincorporated organizations (other than trusts) that are engaged in not-for-profit activities." The IRS has also ruled that an unincorporated organization with no profit objective may be classified as a partnership. PLR 9108025 (November 26, 1990).

Assuming that a profit objective is required of entities classified as partnerships for tax purposes, it has been represented that the Partnership possessed that objective. Moreover, as noted below, objectively the Partnership has a realistic ability to profit through changes in values of the various options it holds. In any event, the presence of a tax motive in the formation or use of a partnership historically has never prevented a partnership from classification as such for tax purposes. See, e.g., Commissioner v. Culbertson, 337 U.S. 733 (1949); Slifka v. Commissioner, 182 F 2d 345 (2d Cir. 1950).

The question of whether a partnership actually exists was recently addressed in the case of ASA Investerings Partnership v. Commissioner, T.C. Memo. 1998-305. There, the Tax Court held

that no partnership existed for federal income tax purposes between Allied Signal Inc. and a foreign commercial bank. In that case, the partnership, which was primarily capitalized with contributions from such foreign partner, invested in high-grade, floating-rate private placement notes ("PPNs"). The PPNs were subsequently sold in an installment sale in which the consideration was cash and LIBOR-indexed installment notes. Due to the structure of the sale, a large portion of the PPNs' tax basis was allocated to the LIBOR notes. Additional financial instruments were purchased by the partnership, and later Allied Signal purchased most of the foreign partner's interest in the partnership. The LIBOR notes were distributed to Allied Signal, which subsequently sold such notes, generating a large capital loss. While a partnership agreement had been entered into by the parties, other agreements regarding the economics of the series of transactions were also in place. The result of such other agreements was that the foreign partner was to get a certain specified return on its contribution to the partnership. The Court held that to form a valid partnership the parties must have intended to join together in the present conduct of an enterprise, and found, as a factual matter, that the purported partners of ASA had divergent business goals. The Court found that, considering all of the facts and circumstances, the foreign partner was, in reality, a creditor to Allied Signal, rather than its partner.

In the case of the Partnership, each of the partners intended to join together in the common purpose of profiting from the investment in foreign currency option positions and other financial instruments and investments and sharing the losses and profits therefrom. No partner's share was guaranteed or limited. Also, each partner shared proportionality in the income, gain, loss and deductions of the Partnership. Accordingly, the analysis employed by the court in ASA should be inapplicable and the partnership should be respected.