IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-231 T
(Chief Judge Damich)

JZ Buckingham Investments LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership,

Plaintiff,

v.

United States of America,

Defendant.

# APPENDIX

| # | Description | Pages |
|---|---|---|
| Exhibit A | Declaration of Andrew J. Kreiger | 001-012 |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| CARLOS E. SALA and<br>TINA ZANOLINI SALA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 05-cv-00636-LTB-KLM |

DECLARATION OF ANDREW J. KRIEGER

I, Andrew J. Krieger, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. I have personal knowledge of the representations made in this declaration.

2. I was the trader responsible for implementing Mr. Sala's tax shelter transaction. Sometime in 1999 or 2000 I was introduced to the idea for the shelter by Michael Schwartz.

3. I was deposed in the above-captioned case on October 26 and 27, 2006 and again on April 17, 2007.

4. In 2007, I was first contacted by the United States Attorney's Office for the Southern District of New York ("USAO"). I learned that the USAO was conducting an investigation into certain tax shelter transactions relating to a pending criminal case involving Ernest & Young tax shelters.

5. I thereafter met with the USAO, and provided certain information under a proffer agreement providing that my statements could not be used against me. I informed the USAO

GOVERNMENT EXHIBIT A



3300714.1

about my involvement in the tax shelters at issue in the pending criminal case. I also informed the USAO that some of my testimony in Mr. Sala's case was false, misleading and incomplete.

6. Sometime before the trial in this matter, I learned that my deposition testimony was to be offered by one or both of the parties. I knew that parts of my deposition testimony were false, misleading and incomplete. I therefore authorized my counsel, Jay Fischer of Fischer Porter Thomas & Reinfeld P.C., to advise the parties that some of my testimony was inconsistent with what I knew to be the true facts regarding the motivations behind the shelter transaction at issue in Mr. Sala's case. I was continuing to review my testimony for other specific inconsistencies. My counsel so advised the parties by letter dated February 27, 2008, a true and accurate copy of which is annexed hereto as Exhibit A. I was not willing to be re-interviewed by the parties or provide sworn testimony in this case at that time because my truthful statements would have incriminated me.

7. Subsequently, I authorized my counsel to advise counsel for the parties in Mr. Sala's case of further specific inconsistencies and possible inconsistencies. My counsel did so by a letter dated March 12, 2008, a true and accurate copy of which is annexed hereto as Exhibit B. At that time I was still reviewing the testimony. I still was not willing to be re-interviewed or to provide sworn testimony in this matter.

8. On May 21, 2008, I executed a non-prosecution cooperation agreement with the Government. Among other things, the agreement requires me to provide truthful information and testimony about my activities involving tax shelters, and it provides that if I do so, I will not be prosecuted for those activities or for the false testimony I gave in this matter. I am required to

fully cooperate with the USAO, the Tax Division of the United States Department of Justice and the Internal Revenue Service.

9. I was advised by my counsel that until I entered into this agreement, I should not provide sworn testimony on any of my tax shelter activity, including Mr. Sala's transaction. Had I been called to testify prior to the execution of this agreement, I would have followed my counsel's instruction, asserted my Fifth Amendment right, and refused to testify. Further, in the weeks prior to and during Mr. Sala's trial, which I understand began on March 10, 2008 and concluded on March 19, 2008, I was out of the country with no immediate plans to return. I have been residing in Dubai continuously since August 2007.

10. As part of the Sala transaction, I engaged in several call-spread and put-spread option structures in October 2000, which were used to generate the tax basis for Mr. Sala and the other participants, including myself. I will collectively refer to these as the "tax trades."

11. At the time of my deposition, I purposely avoided all discussions of tax matters and purposely downplayed the tax motives behind the tax trades or the "investment program." In fact, I was aware that the primary motivation for entering into these tax trades and the "investment program" was to generate tax savings. As a result, certain portions of my deposition were intentionally false, misleading, and incomplete.

12. If now called to testify in Mr. Sala's case, my truthful testimony would be substantially different from my deposition testimony in several areas. Some examples of truthful testimony are summarized briefly below with citations to examples of contrary testimony in the deposition:

a. The primary purpose of the tax trades was to generate tax losses for the participants and not to generate positive economic returns. (Dep. Testimony 505:6-15). The tax benefits were not "incidental" to the tax trades, the initial "test period," the remaining trades in 2000 or the remainder of the "investment program." But for the need to generate tax losses for the participants, I would not have executed the tax trades. Regardless of market conditions, I was required to liquidate the positions by the predetermined structure of the transaction. (Dep. Testimony 429:3-21). I believed that had I testified truthfully at my deposition as to these facts, my testimony might have undermined Mr. Sala's tax case.

b. Based upon my conversations with Michael Schwartz, I understood that I was required to purchase roughly equal amounts of long and short options to generate tax losses for the transaction participants, including Mr. Sala. The amount of long option premiums I was instructed to purchase as part of the tax trades intentionally approximated the tax losses sought by the participants. (Dep. Testimony 161:12-14 and 165:8-166:23). The face amounts of the long options were significant and I would not have entered into trades with these face amounts but for the need to purchase options with such large premiums.

c. Indeed, because the face amounts were so significant, the normal transaction costs that Refco would have charged would have made the trades cost prohibitive. Therefore, I arranged for my company, Beckenham Trading Company (BTC), and not Refco, to assume the risk of the trades and to do so without charging any fees. These trades would not have been economically feasible if we had to incur Refco transaction costs. In addition, had BTC charged execution fees, it would have been significantly harder to ensure a profit at year end.

d. Given the size of the premium relative to the amount of capital in the account I could not have separated the long and short options.

e. A thirty or even a ninety-day test period in 2000 was not a realistic test of my trading program. Rather, the term "test period" was coined by Mr. Schwartz for the benefit of the IRS and in an attempt to disguise the real purpose of the tax trades. (Dep. Testimony 428:20-23). The primary purpose was not to ease people gently into foreign exchange trading. (Dep. Testimony 246:20-247:3).

f. The transactions that gave rise to the tax losses, including the structure imposed on the participants and the use of an S corporation and a general partnership, were not designed to assist in the creation of a profit or for any purpose other than the creation of tax losses. (Dep. Testimony 453:9-20 and 513:9-515:17). Instead, everything that occurred in 2000 consisted of predetermined steps required by Mr. Schwartz, all for the purpose of generating tax basis and a tax loss for the participants.

g. Mr. Schwartz explained to me that the trading accounts were required to be liquidated at year end to generate the tax losses and that the transaction was structured to achieve this end. There was no sound trading or business reason to liquidate the trades by year end under my trading strategy and absent the requirement that these be liquidated to generate a tax loss in 2000, the positions would not have been prematurely unwound. (Dep. Testimony 263:1-4 and 515:7-516:22).

h. I was a participant in the same tax shelter transaction that Mr. Sala participated in. (Dep. Testimony 261:1-9). My primary motivation in participating in the shelter was to generate a tax loss in 2000, which I claimed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 22, 2008 in Englewood Cliffs, New Jersey.

Andrew J. Krieger
ANDREW J. KRIEGER

JAY D. FISCHER
ARTHUR L. PORTER, JR.
ALAN C. THOMAS **
JOEL J. REINFELD †
DONALD H. LARSEN **

DOMINICK MINERVINO *
AARON E. ALBERT

OF COUNSEL

EDDIE RAYNORD HADDEN **
HOWARD R. DAVIS
REENA FORST ¤
PETER H. TILEM ◆
BART J. EAGLE *

* N.Y. BAR ONLY
** N.J. BAR ONLY
¤ N.Y., N.J. & D.C. BARS
▪ N.J. & PA. BARS
† N.J., N.Y. & AZ. BARS
◆ N.Y. & C.T. BARS

FISCHER PORTER & THOMAS, P.C.
ATTORNEYS AT LAW
440 SYLVAN AVENUE, SUITE 130
ENGLEWOOD CLIFFS, NJ 07632-2700
TELEPHONE: (201) 569-5959
TELECOPIER: (201) 871-4544
WWW.FPMTLAW.COM

SENDER'S E-MAIL ADDRESS:
jfischer@fpmtlaw.com

250 WEST 57TH ST., SUITE 1619,
NEW YORK, NY 10107-1606
TELEPHONE: (212) 545-1921
TELECOPIER: (212) 545-9102

158 NORTH MAIN ST.
NEW CITY, NY 10956-3850
TELEPHONE: (845) 708-0501
TELECOPIER: (845) 639-3202

2065 BOSTON POST RD.
LARCHMONT, NY 10538-3944
TELEPHONE: (914) 833-9785
FACSIMILE: (914) 833-9786

70 BLOOMFIELD AVENUE
PINE BROOK, NJ 07058-9737

PLEASE RESPOND TO
ENGLEWOOD CLIFFS, NJ OFFICE

February 27, 2008

**VIA ELECTRONIC MAIL**

dhallett@c-hlaw.com
Darrell D. Hallett, Esq.
Chicoine & Hallett
Waterfront Place One, Suite 803
1011 Western Avenue
Seattle, WA 98104

david.n.geier@usdoj.gov
David N. Geier, Esq.
United States Department of Justice
Tax Division
Civil Trial Section, Western Region
PO Box 683 - Ben Franklin Station
Washington, DC 20044

Re: Sala v. United States
Case No. 05-cv-00636-LTB-PAC

Gentlemen:

As you know, we represent Andrew Krieger whose deposition was taken in the above matter. We wish to advise you that subsequent to the deposition, Mr. Krieger was questioned extensively by the United States Attorney who is investigating the Ernst and Young tax shelter matter. We have learned recently that the trial of the above matter is scheduled to begin on or about March 11th.

Having had some time to consider questions raised in the *Sala* deposition, it appears Mr. Krieger provided information to the United States government that may be inconsistent with information provided in the depositions. For example, it is now Mr. Krieger's view, based upon his review and reevaluation of the circumstances, that the programs in which Mr. Sala was involved were essentially tax driven as opposed to profit driven. This, of course, does not change any of Mr. Krieger's testimony as to what Mr. Sala told Mr. Krieger regarding his (Sala's) motivation nor does it affect any testimony provided in the deposition as to the lack of any knowledge on Mr. Krieger's part as to the

ultimate utilization by Sala of any gains and/or losses in the preparation of any tax returns.

We are in the process of making a more detailed review of Mr. Krieger's deposition and subsequent information provided by Mr. Krieger and, to the extent that there are other specific areas in which there are material inconsistencies and/or modifications in Mr. Krieger's deposition testimony, we shall advise you at the earliest possible date.

Very truly yours,

Jay D. Fischer

JDF:ll

FISCHER PORTER THOMAS & REINFELD, P.C.

ATTORNEYS AT LAW
440 SYLVAN AVENUE, SUITE 130
ENGLEWOOD CLIFFS, NJ 07632-2700
TELEPHONE: (201) 569-5959
TELECOPIER: (201) 871-4544
WWW.FPMTLAW.COM

JAY D. FISCHER
ARTHUR L. PORTER, JR.
ALAN C. THOMAS **
JOEL J. REINFELD †
DONALD H. LARSEN **

DOMINICK MINERVINI ▪
AARON E. ALBERT
MARJORIE E. KLEIN

OF COUNSEL

EDDIE RAYNORD HADDEN **
HOWARD P. DAVIS
REENA FORST ▫
PETER H. TILEM ◆
BART J. EAGLE *

* N.Y. BAR ONLY
** N.J. BAR ONLY
▫ N.Y., N.J. & D.C. BARS
▪ N.J. & PA. BARS
◆ N.Y. & C.T. BARS
† N.J., N.Y. & AZ. BARS

250 WEST 57TH ST., SUITE 1619
NEW YORK, NY 10107-1606
TELEPHONE: (212) 545-1921
TELECOPIER: (212) 545-9102

155 NORTH MAIN ST.
NEW CITY, NY 10956-3850
TELEPHONE: (845) 708-0501
TELECOPIER: (845) 639-3202

2065 BOSTON POST RD.
LARCHMONT, NY 10538-3944
TELEPHONE: (914) 833-9785
FACSIMILE: (914) 833-9786

70 BLOOMFIELD AVENUE
PINE BROOK, NJ 07058-9737
TELEPHONE: (973) 227-2777
FACSIMILE: (973) 227-5440

PLEASE RESPOND TO
ENGLEWOOD CLIFFS, NJ OFFICE

SENDER'S E-MAIL ADDRESS:
jfischer@fpmtlaw.com

March 12, 2008

**VIA ELECTRONIC MAIL**

dhallett@c-hlaw.com
Darrell D. Hallett, Esq.
Chicoine & Hallett
Waterfront Place One, Suite 803
1011 Western Avenue
Seattle, WA 98104

david.n.geier@usdoj.gov
David N. Geier, Esq.
United Stated Department of Justice
Tax Division
Civil Trial Section, Western Region
Washington, DC 20004

Re: ANDREW KRIEGER

Gentlemen:

Peter Tilem of Counsel to our firm has reviewed the Andrew Krieger depositions in the Sala case and has put together a list of areas that are inconsistent with statements that were made by Krieger to the United States Attorney's Office. Below are excerpts from the depositions that he believes are inconsistent. The United States Attorney's office has reviewed this list and agree that the statements in this list are inconsistent but have their own additions which are highlighted below.

## Page 427, Lines 3-15

THE WITNESS: I recall that
the investors were testing the waters
and that they wanted to watch the trading,
have a chance to get to experience the
strategy for a few months.
And, at which point, they would

FISCHER PORTER THOMAS & REINFELD, P.C.

March 12, 2008
Page 2

then either have the option to go in voluntarily into the longer term program, which would be five years or they would automatically be required to, if they went through the entire test period and we showed substantial or reasonable profits; is what I understand.

### *Page 428, Lines 20-23*

THE WITNESS: With regards to the program itself, achieving the tax loss was completely irrelevant. Our purpose was to make money.

### *Page 429, Lines 14-21*

Question: In your mind, at the time that the program was implemented; to what extent, if any, was achieving a tax loss, a goal that you had with respect to the operation of the program?

Answer: It wasn't

Question: What was the goal?

Answer: The goal is simply to generate good returns because we wanted to manage money.

<u>Page 453, Lines 9-20</u>

Question: Why?
Answer: Because everything that Mr. Sala stated, as well as my own view for my own investment, was that this was an investment program that was designed and geared to make money.

I had been trading professionally for a long time and, historically, we made money over time. And that I understood there might be incidental tax benefits, but they were exactly that; they were incidental and not the primary reason for investing.

Page 505, Lines 7-15

Question: Looking at your purpose with respect to those transactions, and if it's different with respect to different transactions, please tell me on Exhibit-11, what was the purpose of entering into those transactions.

Answer: The purpose was to earn profits.

In addition to the foregoing, members of the United States Attorney's Office wanted us to include the below listing. When they reviewed the transcript they reviewed it to determine whether Andrew Krieger's testimony today would be different from how he testified in the Sala deposition. We did not review the deposition using their test but only using the test of whether he actually stated something in his meetings with the United States Attorney's Office that was inconsistent with his testimony in the Sala deposition. Other than the first line in the following listing, we do not necessarily agree that the other items warrant consideration; however we include them in the interest of completeness.

Page 165 Line 4 through 166 line 23.
Page 161 lines 3-14
Page 246 line 20 through 247 line 13
Page 261 Line 2-9
Page 263 Line 2-4
Page 456 Line 4 through 457 Line 5
Page 513 Line 8 through 514 Line 17
Page 515 Line 7 through 516 Line 22

You should note the following important caveats:

1. Neither we nor the United States Attorney's Office have had an opportunity to thoroughly review the transcript with Mr. Krieger because of the fact that he lives far away.

2. That because of the urgency of the Sala trial we are not in a position to present an exhaustive list of inconsistencies but have done our best to identify the inconsistencies given the time considerations and the fact that our client resides far away.
3. That we have only discussed some of the testimony with our client but not all.
4. That if given immunity his testimony may differ in other areas.

Please contact me if you have any additional questions about this.

Very truly yours,

Jay D. Fischer

cc: Deborah Landis, Deborah.Landis@usdoj.gov
Andrew Krieger

JDF/lc