# In the United States Court of Federal Claims

No. 05-231 T
(Filed: October 8, 2008)

*********************************************

| | |
|---|---|
| **JZ BUCKINGHAM INVESTMENTS LLC,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |

*********************************************

## OPINION AND ORDER

Before the Court in this partnership tax case are three motions concerning Plaintiff's discovery requests:  (1) Plaintiff's Motion to Compel Defendant to Comply with Rule 30(b)(6) Notice for Deposition and Production of Documents ("Plaintiff's motion to compel Defendant"), (2) Plaintiff's Motion to Compel Non-Party Jenkens & Gilchrist ("J&G") to Produce Certain Information Pursuant to This Court's Opinion of August 9, 2007 ("Plaintiff's motion to compel J&G"), and (3) Defendant's Cross-Motion for a Protective Order and for an Order to Quash Plaintiff's Subpoena ("Defendant's cross-motion").  For the reasons set forth below, Plaintiff's motion to compel J&G is GRANTED IN PART and DENIED IN PART, Plaintiff's motion to compel Defendant is DENIED, and Defendant's cross-motion is GRANTED.

## I.    Background

JZ Buckingham Investments, LLC ("JZ") and JGB Bohicket Investments, LLC ("JGB"), were partners in JBJZ Partners for the tax year ending December 27, 1999.  Compl. ¶¶ 1, 2, 4.  In 2004, the Internal Revenue Service ("IRS") issued a Notice of Final Partnership Administrative Adjustment ("FPAA") in regard to JBJZ Partners' 1999 tax return, alleging deficiencies in JBJZ Partners' tax calculations.  *Id.* ¶ 7.  JZ then filed this action pursuant to 26 U.S.C. ("I.R.C.") § 6226(a) to request a redetermination of the FPAA.  *Id.* ¶ 11.

### A.    J&G's Involvement in the Transactions at Issue

As part of the 1999 transactions at issue in the FPAA, JZ and JGB each entered into foreign currency option positions, purchasing a long option and selling a short option, then contributed these options to JBJZ Partners.  *Id.* ¶¶ 17-18, 27-28.  For the purpose of computing their tax bases in JBJZ Partners, JZ and JGB treated the long and short options as separate options instead of as a single net option.  Pl.'s Mem. in Supp. Cross-Mot. to Compel, 6/06/07, at

3.  Plaintiff sought and received from J&G, a firm specializing in tax law, opinions purporting to confirm the legality of this treatment of the transactions at issue.  *Id.* at 4.

In March 2007, J&G reached a Non-Prosecution Agreement with the Department of Justice ("DOJ") that resolved investigations into J&G's involvement in promoting tax shelter schemes.  Def.'s Opp'n to Pl.'s Mot to Compel J&G at 6.  The agreement, which is confidential and has not been presented to the Court, is allegedly contingent upon a "Closing Agreement" between J&G and the IRS in which J&G agreed to pay the IRS a $76 million promoter penalty.  J&G's Opp'n to Pl.'s Mot. to Compel J&G at 2.

### B.      The Court's Opinion and Order of August 9, 2007

Shortly after the settlement was reached, Plaintiff served a subpoena on J&G seeking information on the Closing Agreement and the IRS's treatment of the currency options in computing J&G's $76 million penalty.  Pl.'s Mot. to Compel J&G at 1.  Plaintiff suspects that the IRS treated the options separately in computing J&G's penalty, but is treating the same options as a single net transaction in this case.  *Id.*  J&G filed a motion to quash the subpoena in May 2007, and Plaintiff responded with a cross-motion to compel J&G's compliance with the subpoena.

The Court issued an Opinion and Order on August 9, 2007, ("the Opinion") granting Plaintiff's motion to compel J&G and denying J&G's motion to quash.  Op. at 15.  The Court determined that the information sought in Plaintiff's subpoena (with the exception of the Closing Agreement itself) is relevant to this litigation, that Plaintiff has a need for the information, that the request is adequately described and not overly broad, and that J&G would not be unduly burdened by the request.  *Id.*  However, the Opinion specifically did not address whether J&G should be compelled to request documents directly from the IRS, as the parties had not presented arguments concerning whether IRS documents are within J&G's "control" for purposes of Rule 45 of the Rules of the United States Court of Federal Claims ("RCFC").[1]  *Id.* at n.15.  The Court thus stated that "[s]hould Plaintiff determine after deposition that there are responsive documents or other information within [J&G's] 'control' that are not being produced, Plaintiff may file a motion to compel in which it addresses the meaning of 'control.'"  *Id.*

### C.      Events Subsequent to the Court's Opinion

Pursuant to the Opinion, Plaintiff took the deposition of John Gilliam, J&G's designated representative and one of the few remaining employees of J&G, which is undergoing dissolution.  Mr. Gilliam stated that, in preparing for his deposition, he had found no further documents relevant to how the IRS calculated J&G's penalty and stated that J&G had never asked the IRS how the $76 million penalty was calculated.  App. to Pl.'s Mot. to Compel J&G at Ex. 23 ("Gilliam Dep.") at 7-9, 12.  Prior to his deposition, Mr. Gilliam had also inquired as to whether Davis, Polk & Wardwell ("Davis Polk"), one of the firms that represented J&G during settlement

---

[1]  RCFC 45 provides for the production of documents that are in the "possession, custody or control" of the individual upon whom a subpoena is served.

negotiations with the IRS, had any communications or documents concerning the IRS's penalty calculation. J&G's Opp'n to Pl.'s Mot. to Compel J&G at Ex. 1 ("Gilliam Decl.") ¶ 9. Mr. Gilliam was told that Davis Polk did not have any such communications or documents, with the exception that an IRS representative once mentioned to Mario Verdolini, a Davis Polk attorney, that the IRS calculated J&G's settlement amount by considering the options separately rather than as a single net transaction (i.e., inconsistently with Defendant's present position and consistently with Plaintiff's position). Gilliam Dep. at 10. In regard to whether J&G would submit the necessary forms to obtain information concerning the penalty calculation directly from the IRS, Mr. Gilliam stated that J&G would be willing to request the information Plaintiff seeks only if the IRS does not object or if ordered to do so by this Court.[2] Gilliam Decl. ¶ 12-13.

Mr. Verdolini of Davis Polk was then deposed and confirmed that the conversation with the IRS representative did take place. Pl.'s Reply to Mot. to Compel J&G at Ex. 4 ("Verdolini Dep.") at 22. During his deposition, Mr. Verdolini stated that he had searched his files and instructed multiple other attorneys at Davis Polk in both the litigation and tax departments to search their files for information responsive to Mr. Gilliam's request and to Mr. Verdolini's notice of deposition. Verdolini Dep. at 9-10. The only responsive document that Mr. Verdolini found was an email exchange with an IRS representative that had occurred after Mr. Gilliam's deposition. Verdolini Dep. at 14-16. Mr. Verdolini produced this document at his deposition. *Id.* Mr. Verdolini also stated that Davis Polk was in possession of documents from McDermott, Will, & Emery ("McDermott Will"), the firm that represented J&G prior to Davis Polk and several months before the settlement negotiations with the IRS began. Verdolini Dep. at 12-13; J&G's Sur-Reply to Pl.'s Mot. to Compel J&G at Ex. 1 ("Verdolini Decl.") ¶ 3. However, Mr. Verdolini indicated that none of the McDermott Will documents were responsive to Plaintiff's discovery requests. *See* Verdolini Dep. at 14, 29 (stating that the email is the only responsive, "[n]on-privileged" document in Davis Polk's possession). As an attachment to J&G's sur-reply, Mr. Verdolini provided a declaration to clarify and reiterate his deposition testimony. In his declaration, Mr. Verdolini states that "the only non-privileged material in Davis Polk's possession that discusses how the March 2007 penalty was calculated is the October 31, 2007 email exchange," and that the McDermott Will documents in Davis Polk's possession do not contain information related to the March 2007 penalty computations. Verdolini Decl. ¶¶ 3-4; Verdolini Dep. at 39.

---

[2] Mr. Gilliam also stated that an IRS representative warned him that requesting documents responsive to Plaintiff's subpoena from the IRS and producing them to Plaintiff would be considered a violation of the terms of the Closing Agreement by the IRS and could result in exposing J&G to criminal liability by violating the terms of J&G's non-prosecution agreement with the DOJ. However, in the Government's reply to its cross-motion seeking a protective order, the Government stated that "the IRS did not (and does not) object to any J&G disclosures that are ordered by a court." Reply to Def.'s Cross-Mot. at 8-9 n.14.

## II.     Plaintiff's Motion to Compel J&G

Plaintiff's subpoena to J&G directed J&G to produce all non-privileged documents that are within J&G's or its counsel's possession, custody, or control relating to "Jenkens & Gilchrist's agreement to a $76 million tax penalty for promoting tax shelters" and "the Internal Revenue Service's position regarding the penalty."  Non-Party Jenkens & Gilchrist's Brief in Support of Motion to Quash, 5/16/2007, Appendix ("App. to J&G's Mot. to Quash") at 7, 8, 11.[3] In its present motion to compel J&G, Plaintiff requests that this Court (1) order J&G to instruct its outside counsel, particularly McDermott Will, to make a diligent search for responsive documents in their possession, (2) order J&G to provide a privilege log of any privileged, but otherwise responsive documents found in J&G's or its counsel's possession, and (3) order J&G to formally request that the IRS produce any responsive documents directly to Plaintiff.  Pl.'s Mot. to Compel J&G at 4.

### A.     Plaintiff's Motion to Compel J&G to Request Documents in Possession of Outside Counsel

J&G does not dispute that it has "control" over documents in the possession of its counsel, as that term is used in RCFC 45, but rather argues that further efforts to comply with the subpoena would be wasteful and "unduly burdensome" because neither Davis Polk nor its previous counsel, McDermott Will, have any non-privileged responsive documents that have not already been produced.[4]  J&G's Opp'n to Pl.'s Mot. to Compel J&G at 1, 8.  J&G also argues that it should not be required to produce redacted documents or a privilege log because the subpoena only requested production of non-privileged documents.  J&G's Sur-Reply to Pl.'s Mot. to Compel J&G at 7-8.

#### 1.     Additional Searching for Documents in Counsel's Possession

First, in regard to production of documents, the Court finds that, based on the testimony and declarations of Mr. Gilliam and Mr. Verdolini, an order requiring J&G to instruct Davis Polk to make yet another search for documents responsive to Plaintiff's request for production would be senseless.  At their depositions, both Mr. Gilliam and Mr. Verdolini described their efforts to search for documents, and Plaintiff has not convinced the Court the searches were incomplete or

---

[3] On June 17, 2008, Plaintiff filed a motion for leave to replace the subpoena originally attached to Plaintiff's motion with a different subpoena.  Evidently, the subpoena originally attached to Plaintiff's pending motion as "Exhibit 1" was not the subpoena presently at issue and was attached in error.  The subpoena that is the subject of Plaintiff's present motion is the same subpoena discussed in the Court's August 9, 2007 Opinion.  Though the Court granted Plaintiff's motion for leave to file the correct subpoena, for the sake of clarity, the Court will cite to the copy of the subpoena attached as an exhibit to J&G's brief in support of its motion to quash.

[4] Federal courts have consistently held that documents in the possession of an individual's attorney are within the "control" of that individual.  *See, e.g., American Soc. For Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 200); *In re Ruppert,* 309 F.2d 97, 99 (6th Cir. 1962).

insufficient.  *See* Gilliam Dep. at 7, 10; Verdolini Dep. at 9-10.  It is clear that J&G and Davis Polk do not believe that Davis Polk has any further responsive documents in its possession.

Additionally, the Court does not share Plaintiff's suspicion that McDermott Will may have responsive documents in its possession that should be produced.  McDermott Will did not represent J&G when the $76 million penalty was negotiated or agreed upon in March 2007.  In this sense, Mr. Verdolini's statements in his declaration, made under oath, indicate that he does not believe McDermott Will would have responsive documents that should be produced.  *See* Verdolini Decl. ¶ 3.  In addition, in briefing on its 2007 cross-motion to compel, Plaintiff represented to the Court quite unequivocally that its subpoena seeks only information "narrowly confined to the issue of how the government calculated the I.R.C. § 6707 'civil penalty' [that Jenkens & Gilchrist] agreed to pay the IRS pursuant to the [March 2007] Closing Agreement." Op. at 8 n.8 (quoting Plaintiff's Mem. in Supp. Mot. to Compel J&G, 6/06/07, at 7).  Although Mr. Verdolini testified that he was in possession of McDermott Will files which concerned penalty computations *in general*, Plaintiff has not presented any convincing rationale for its belief that McDermott Will is in possession of non-privileged documents concerning *in particular* the computation of J&G's $76 million penalty that occurred in March 2007, after McDermott Will ceased its representation of J&G.  Thus, the Court also finds that an order requiring J&G to instruct McDermott Will to search its own files for responsive documents is not warranted.

## 2.    Production of a Privilege Log

Plaintiff also demands that J&G "redact privileged portions of documents containing non-privileged information, or at a minimum, [produce] a log that describes the documents withheld and the privilege asserted in sufficient detail to enable Plaintiff to contest the claim and the Court to address any issues that may arise as a result."  Pl.'s Reply to Mot. to Compel J&G at 5-6.  J&G insists that Plaintiff is not entitled to a privilege log because the subpoena requested only non-privileged documents.  J&G's Sur-Reply to Pl.'s Mot. to Compel J&G at 7.

Paragraph 2, subsection (a)(vi) of Plaintiff's subpoena clearly requests that any privileged document be identified in writing along with a statement of "the basis for [J&G's] assertion of privilege or other grounds for exclusion with respect to each document claimed to be privileged or otherwise not subject to production."  App. to J&G's Mot. to Quash at 9.  Though J&G is correct that the portion of Plaintiff's subpoena that actually requests production of documents asks only for "non-privileged documents," subsection 2(a)(vi) of Plaintiff's subpoena requests an explanation for why otherwise responsive documents are believed to be privileged.  *Id.* at 8.  The Court notes that no section of Plaintiff's subpoena requests that documents be redacted to render them "non-privileged."

The Court finds that production of a privilege log is warranted because, contrary to J&G's assertions during briefing on the 2007 motion to quash, it now seems that J&G or its counsel may have privileged documents that would otherwise be responsive to Plaintiff's subpoena.  In the Court's August 9, 2007 Opinion, the Court treated J&G's assertions of attorney-client and work-product privilege as moot because, relying on Plaintiff's affirmation that it sought only non-privileged documents relating to "communications by the IRS to Jenkens

& Gilchrist," J&G stated that it no longer needed to assert any privilege because J&G simply did not have any responsive documents. J&G's Reply to Mot. to Quash, 6/25/07, at 3. Based in part on J&G's assertion, the Court decided not to quash or modify the subpoena, but stated that "[s]hould additional attorney-client or work product privilege issues arise during or after deposition, the Court will address them at that time." Op. at 9. During Mr. Verdolini's recent deposition, however, Mr. Verdolini answered a question about whether Davis Polk had any documents relating to the $76 million penalty calculation with the specific limitation that Davis Polk has no responsive "non-privileged" documents. *See* Verdolini Dep. at 14, 29. To the Court, this suggests that Davis Polk might have documents that it believes are privileged, but otherwise responsive. This would be, of course, contrary to J&G's assertion in its reply brief on the 2007 motion to quash. Because of this apparent inconsistency, the Court finds that requiring J&G (and Davis Polk) to produce a privilege log in accordance with RCFC 26(b)(5) and paragraph 2(a)(vi) of the subpoena is warranted.

### B.    Plaintiff's Motion to Compel J&G to Request Documents from the IRS

Plaintiff also requests that the Court direct J&G to execute IRS Form 8821, instructing the IRS to produce to Plaintiff any documents that "describe, explain and/or illustrate" J&G's penalty calculation. Pl.'s Mot. to Compel J&G at 10. In the Court's previous Opinion, the issue of whether IRS documents are in J&G's "control" for discovery purposes was not briefed or considered. Op. at 15 n.15. Therefore, because the Court's 2007 Opinion already addressed all other pertinent factors under RCFC 26 and 45, the Court will now address only whether the documents are in J&G's "control."[5]

When a taxpayer subjected to a request for production of documents does not possess copies of its own tax return or related information and would have to obtain them from the IRS, I.R.C. § 6103 applies. *See Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 719, 722 (2000) ("Section 6103 does not prohibit the disclosure of tax return information that comes from a source other than the IRS."). Section 6103(c) states that the IRS "may … disclose … return information with respect to [any] taxpayer, to such person or persons as the taxpayer may designate in a request for or consent to such disclosure." Generally, "return information" is to be construed broadly to include many types of documents relating to the tax liabilities of a taxpayer. *See* 26 U.S.C. § 6103(b)(2)(A) (defining "return information"); *see also, Mallas v. United States*, 993 F.2d 1111, 1118 (4th Cir. 1993). J&G and Defendant do not appear to contest that the subpoena is directed to "return information."

Plaintiff points out that, in at least one instance, the Federal Circuit has considered the word "control," with respect to the production of documents, to mean "the legal right to obtain

---

[5] J&G attempts to reopen the issue of whether production of the requested information would constitute an undue burden by noting Mr. Gilliam's fear that production might result in a default under the Closing Agreement with the IRS. However, the Court believes this argument to be moot in light of the Government's statement on the record that it would not object to J&G requesting its return information relevant to Plaintiff's document request if the Court ordered J&G to do so.

the documents requested on demand." Pl.'s Mem. in Supp. Mot. to Compel J&G at 6 (citing *Cochran v. UWATEC USA, Inc.* 102 F.3d 1224, 1229-30 (Fed. Cir. 1996) (quoting *Searock v. Stripling*, 736 F.2d 650, 663 (11th Cir. 1984))).  Plaintiff has not argued that the term "control" should be interpreted any more broadly than this.  *See Id.* at 6, 7 (citing *Cochran*, 102 F.3d at 129-30; ); *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1997)).[6]  And, in making its argument that J&G does in fact have "control" over documents in the possession of the IRS, Plaintiff simply assumes that, under I.R.C. § 6103, "J&G has an unconditional right to its own return information … as well as to designate a person to whom the IRS must disclose the requested information." Pl.'s Reply to Mot. to Compel J&G at 8.  Plaintiff does not advance any other basis, statutory or otherwise, for a finding that J&G has "control" over documents in the IRS's possession.

        J&G argues that an obstacle to finding that J&G has a "legal right" under § 6103(c) to obtain return information from the IRS is that § 6103(c) appears on its face to only set forth instances in which the IRS is *permitted* to disclose return information, but does not expressly *require* disclosure.  *See Cochran*, 102 F.3d at 1229-30; *see also* 8A Charles A. Wright, et al., *Federal Practice & Procedure* § 2210 (2d ed. 2008) (distinguishing legal right from mere ability to obtain).  This is most evident when § 6103(c) is compared with § 6103(e)(1):  subsection (e)(1) states that the IRS "shall" disclose a taxpayer's "return" to that taxpayer, but subsection (c) states only that the IRS "may" disclose a taxpayer's "return information."  However, in its reply, Plaintiff does not address why § 6103(c) uses the ostensibly permissive term "may" and does not explain the basis for its assumption that J&G has an "unconditional right" to force disclosure of its return information.  Nor does Plaintiff attempt to reconcile its assertion that § 6103 provides an "unconditional" right with the express language in § 6103 which allows the IRS to withhold return information if disclosure would "seriously impair Federal tax administration."

        The arguments made by Plaintiff do not persuade the Court that "may" in § 6103 should be interpreted to give J&G an unconditional right to force disclosure of its return information.  Therefore, the Court concludes that an order compelling J&G to request its return information from the IRS is not warranted.

### C.    Conclusion

        The Court GRANTS Plaintiff's motion to compel J&G to the extent it seeks a privilege log.  J&G is therefore ORDERED to submit a privilege log in accordance with paragraph 2(a)(vi) of Plaintiff's subpoena and RCFC 26(b)(5), for documents which are asserted to be privileged but would otherwise be responsive to Plaintiff's document request.  J&G shall submit the privilege log to Plaintiff on or before **November 7, 2008**.  Plaintiff's motion is DENIED in all other respects.

---

        [6] In one sentence of an introductory section of one of Plaintiff's briefs, Plaintiff alludes to an interpretation of "control" as including the "practical ability to obtain" documents. Pl.'s Mem. in Supp. Mot. to Compel at 1.  However, in the remainder of Plaintiff's briefing, Plaintiff does not present any argument based on this interpretation and does not attempt to convince the Court why it should be applied.

### III.    Plaintiff's Motion to Compel Defendant

In its motion to compel Defendant, Plaintiff requests that this Court order Defendant to comply with a notice of deposition under RCFC 30(b)(6) and subpoena Plaintiff served on April 23, 2007.[7]  Pl.'s Mot. to Compel Def. ¶ 5.  Plaintiff's subpoena directs the IRS to designate a deponent to testify regarding, and produce documents relevant to, the matters identified in Requests 1(a), (c), and (d) of Exhibit A to the subpoena.  Requests 1(a), (c), and (d) can be summarized as directed to one or more of the following categories of information:

(1) Defendant's legal and factual positions regarding Treas. Reg. §1.752-6T and Treas. Reg. §1.752-6;

(2) Defendant's legal and factual positions regarding whether, prior to the issuance of these regulations, there was substantial authority for the position that a contingent obligation did not constitute a liability within the meaning of I.R.C. §752;

(3) Defendant's legal and factual positions regarding whether each of the sold and purchased options at issue in this case are to be treated separately or as a single net transaction;

(4) Defendant's legal and factual positions regarding whether options such as those at issue in this case are to be treated separately or as a single net transaction for purposes of calculating promoter penalties; and

(5) The names of tax advisors and firms that issued tax opinions regarding transactions that are similar to those at issue in this case which the IRS rejected as the basis for a good faith defense to penalties.

App. to Pl.'s Mot. to Compel Def. at 16-17.

In response to Plaintiff's motion to compel, Defendant filed a cross-motion for a protective order and for an order to quash Plaintiff's RCFC 30(b)(6) notice of deposition and subpoena.  In regard to the deposition sought by Plaintiff, Defendant argues that no IRS personnel have knowledge of the legal and factual positions recited in the subpoena and that ordering the deposition of a person who does have such knowledge, Defendant's counsel, would be inappropriate as, among other things, a violation of work product privilege.  Def.'s Cross-Mot. & Opp'n to Pl.'s Mot. to Compel Def. at 2, 11-13.  Defendant points out that legal contentions are more appropriately examined through contention interrogatories, rather than "contention depositions."  Because Defendant has already provided responses to Plaintiff's contention interrogatories which Plaintiff did not contest, Defendant argues that a contention deposition would not now be appropriate.  *Id.*  Defendant further asserts that Plaintiff's RCFC 30(b)(6) notice does not actually request the production of any documents, so an order compelling Defendant to produce documents would not be warranted.  *Id.* at 20.

_____

[7] The notice of deposition and subpoena that Plaintiff served on the IRS is distinct from the subpoena Plaintiff served on J&G and was not discussed in the August 9, 2007 Opinion.

A.      **Plaintiff's Request for an RCFC 30(b)(6) Deposition from the IRS**

Because Plaintiff has limited the testimony requested for topics (1) through (4) to "Defendant's legal and factual position[s]," the Court finds that these requests seek contention deposition testimony.[8]  App. to Pl.'s Mot. to Compel Def. at 16-17; *see In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 384 (E.D. Pa. 2006) (finding that a 30(b)(6) deposition directed to a party's legal or factual position is "the functional equivalent" of deposing that party's attorney).  While questions regarding legal and factual contentions are not prohibited in a deposition, contention interrogatories are the favored avenue for this type of discovery.  *Exxon Research v. United States*, 44 Fed. Cl. 597, 601 (1999); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation."); *BB&T Corp. v. United States*, 233 F.R.D. 447,449 (M.D.N.C. 2006) ("Because of their intrusive, disruptive nature, contention depositions of a party's attorney are not favored."); *but see Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 46-47 (2006)(requiring corporate designee to submit to Rule 30(b)(6) deposition regarding contention discovery).  In *Exxon Research*, this Court explained that "[w]hether a 30(b)(6) deposition or contention interrogatories are more appropriate is decided on the facts of each case."  44 Fed. Cl. at 601 (citing *United States v. Taylor*, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996)).

The Court holds that Plaintiff should have attempted to obtain the information it seeks, to its satisfaction, through interrogatories before requesting a contention deposition.  Plaintiff served contention interrogatories in 2006 seeking essentially the same information that Plaintiff now seeks through its present motion.  *See* Pl.'s Reply to Mot. to Compel Def. at 5-7; App. to Pl.'s Mot. to Compel Def. at 182-232.  The topics the Court summarized above from Plaintiff's RCFC 30(b)(6) notice were also the subject of at least Plaintiff's interrogatories #1, 2, 3, 7, 9, 14, 21, 26, 29, 30, and 31.  *Id.*  As Defendant points out, its responses to these interrogatories were submitted in August and October of 2006, well before the close of discovery, yet Plaintiff never filed a motion challenging the responses.  As the Court in *BB&T Corp.* aptly stated, "until a party has first shown that the interrogatory process cannot be used, it may not seek to use depositions for contention discovery."  233 F.R.D. at 449.  Here, as Plaintiff did not first attempt to compel better responses to its contention interrogatories, Plaintiff has not demonstrated that a contention deposition is "the most cost-effective, least burdensome manner" to obtain "information that is sufficiently complete to meet the needs of the parties and the court."  *Exxon Research*, 44 Fed. Cl. at 601 (quoting *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991)).

---

[8]  The information sought with respect to topic (5) appears to be no longer relevant in this case in light of the Court's January 17, 2008 Opinion denying Defendant's motion to amend its answer to assert a counterclaim for penalties.  Plaintiff has not asserted that information relating to topic (5) is relevant to anything other than a defense to an assertion of penalties.  *See* Pl.'s Mem. in Supp. Mot. to Compel Def. at 18-19; Pl.'s Reply to Mot. to Compel Def. at 5.  Regardless, as discussed below, Plaintiff has already sought information relating to topic (5), as well as topics (1) to (4), through interrogatories.

**B.      Plaintiff's Request for Documents from the IRS**

In its motion to compel Defendant, Plaintiff also seeks an order compelling Defendant to produce documents relevant to the summarized topics listed above.  Pl.'s Mem. in Supp. Mot. to Compel Def. at 1.  In response, Defendant asserts that Plaintiff's subpoena cannot be read as containing any request for documents and that, "given the expiration of the discovery period, the time for amending the notice and subpoena has long since passed."  Def.'s Cross-Mot. & Opp'n to Mot. to Compel Def. at 20.

The Court does not agree with Plaintiff that "a request for documents… appeared on the face of the subpoena."  Pl.'s Reply to Mot. to Compel Def. at 3.  The subpoena states only that the 30(b)(6) witness was "commanded to testify to the matters set forth in and to produce the materials listed on Exhibit A."  App. to Pl.'s Mot. to Compel Def. at 11.  As the Court explained above, Exhibit A to the subpoena was primarily directed to Defendant's contentions.  The Exhibit does not refer to any documents or "materials."[9]  *Id.*  Only topic number (5) listed above (found in subsection (d) of Exhibit A) could reasonably be construed to request production of a document, in that Plaintiff demands "[t]he names of tax advisors and firms."  However, Plaintiff sought essentially the same list in its interrogatory # 14, and did nothing to challenge Defendant's response to that interrogatory.  In addition, in response to a document request, Defendant apparently has already either produced to Plaintiff any documents that exist relating to the topics summarized above, including documents it obtained from promoters of the COBRA transactions, or a privilege log listing those documents Defendant did not produce.  Def.'s Cross-Mot. & Opp'n to Pl.'s Mot. to Compel Def. at 22; Pl.'s Reply to Mot. to Compel Def. at 4.  The Court therefore does not find that an order compelling Defendant to produce documents relating to the topics of Plaintiff's deposition notice is warranted.

**C.      Conclusion**

In light of the above, Plaintiff's motion to compel Defendant is DENIED in its entirety.  Consequently, the Court GRANTS Defendant's cross-motion for a protective order from Plaintiff's notice of deposition and for an order quashing the associated subpoena.  Defendant need not respond to Plaintiff's April 23, 2007 notice of deposition and subpoena.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

[9] In contrast, while the notice of deposition and subpoena that Plaintiff served on J&G identically stated that the witness was "commanded to testify to the matters set forth in and to produce the materials listed on Exhibit A," Exhibit A of that subpoena included an additional paragraph specifically stating that the deponent was required to "produce and to permit inspection and copying of all documents, communications, or both relating to the [listed topics]."  App. to Pl.'s Mot. to Compel J&G at 7, 11.